**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHANIE JONES, JONESWORKS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, and JOHN DOES 1-10, <br><br> Defendants. | Civ. Action No. 1:25-cv-00779-LJL <br> rel. 1:24-cv-10049-LJL <br> (Consolidated for pretrial purposes with 1:25-cv-00449-LJL) <br><br> **DEFENDANT WAYFARER STUDIOS LLC'S ANSWER TO COMPLAINT, COUNTERCLAIMS, AND** <u>**JURY TRIAL DEMAND**</u> |

Defendant Wayfarer Studios LLC ("Wayfarer" or "Defendant"), by and through its undersigned counsel, hereby answers, for itself alone and no others, the Complaint of Plaintiffs Stephanie Jones ("Jones") and Jonesworks LLC ("Jonesworks") (together with Jones, "Plaintiffs") as follows:

<u>**THE COMPLAINT'S ALLEGATIONS**</u>

1.      Answering the allegations in paragraph 1 of the Complaint, Defendant denies such allegations.

2.      Answering the allegations in paragraph 2 of the Complaint, Defendant admits Baldoni is an actor, director, and producer, and that Baldoni and Wayfarer Studios, LLC ("Wayfarer") are former clients of Jonesworks. As to the remaining allegations in this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

3.      Answering the allegations in paragraph 3 of the Complaint, Defendant admits Baldoni directed and co-starred in the film *It Ends With Us* (the "Film"), and admits that Abel was

the primary point of contact at Jonesworks on both the Baldoni and Wayfarer accounts. As to the remaining allegations in this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

4.    Answering the allegations in paragraph 4 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

5.    Answering the allegations in paragraph 5 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

6.    Answering the allegations in paragraph 6 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

7.    Answering the allegations in paragraph 7 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

8.    Answering the allegations in paragraph 8 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

9.    Answering the allegations in paragraph 9 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

10.    Answering the allegations in paragraph 10 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

11.    Answering the allegations in paragraph 11 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

12.    Answering the allegations in paragraph 12 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

13.    Answering the allegations in paragraph 13 of the Complaint, Defendant admits terminating Jones and Jonesworks, and denies Baldoni or Wayfarer breached their contract with

Jonesworks or owe any amounts to Jonesworks. As to the remaining allegations in the paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

14.   Answering the allegations in paragraph 14 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

15.   Answering the allegations in paragraph 15 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

16.   Answering the allegations in paragraph 16 of the Complaint, Defendant denies such allegations.

17.   Answering the allegations in paragraph 17 of the Complaint, Defendant admits such allegations.

18.   Answering the allegations in paragraph 18 of the Complaint, Defendant admits such allegations.

19.   Answering the allegations in paragraph 19 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

20.   Answering the allegations in paragraph 20 of the Complaint, Defendant admits Defendant Melissa Nathan ("Nathan") and her company offer crisis management and communication services. As to the remaining allegations in the paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations

21.   Answering the allegations in paragraph 21 of the Complaint, Defendant admits such allegations except denies that Baldoni was a producer of the Film.

22.   Answering the allegations in paragraph 22 of the Complaint, Defendant admits such allegations.

23.     Answering the allegations in paragraph 23 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

24.     Answering the allegations in paragraph 24 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

25.     Answering the allegations in paragraph 25 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

26.     Answering the allegations in paragraph 26 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

27.     Answering the allegations in paragraph 27 of the Complaint, Defendant admits Jones is the founder, president, and owner of marketing and communications agency Jonesworks. As to the remaining allegations in the paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

28.     Answering the allegations in paragraph 28 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

29.     Answering the allegations in paragraph 29 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

30.     Answering the allegations in paragraph 30 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

31.     Answering the allegations in paragraph 31 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

32.     Answering the allegations in paragraph 32 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

33.     Answering the allegations in paragraph 33 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

34.     Answering the allegations in paragraph 34 of the Complaint, Defendant admits Jonesworks was engaged in 2018 to provide public relations services to Baldoni, and was engaged to provide public relations services to Wayfarer in 2020. Defendant denies all remaining allegations in the paragraph.

35.     Answering the allegations in paragraph 35 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in paragraph 35 require a response, Defendant denies such allegations.

36.     Answering the allegations in paragraph 36 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in paragraph 36 require a response, Defendant denies such allegations.

37.     Answering the allegations in paragraph 37 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in paragraph 37 require a response, Defendant denies such allegations.

38.     Answering the allegations in paragraph 38 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in paragraph 38 require a response, Defendant denies such allegations.

39.     Answering the allegations in paragraph 39 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in paragraph 39 require a response, Defendant denies such allegations.

40.     Answering the allegations in paragraph 40 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent they require a response, Defendant admits that as of February of 2018, $5,000/month was paid to Jonesworks for public relations services for Baldoni personally, and that beginning in May of 2020 when Wayfarer engaged Jonesworks, Jonesworks sent a monthly invoice, itemized separately for Wayfarer and Baldoni, that was paid each month as due. As to all remaining allegations in the paragraph, to the extent they require a response, Defendant denies such allegations.

41.     Answering the allegations in paragraph 41 of the Complaint, Defendant admits Abel became the primary point of contact for Baldoni and Wayfarer during the time they were represented by Jonesworks and worked closely with Baldoni, Wayfarer, and Heath, who is the current CEO of Wayfarer. As to all remaining allegations, Defendant denies such allegations.

42.     Answering the allegations in paragraph 42 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

43.     Answering the allegations in paragraph 43 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

44.     Answering the allegations in paragraph 44 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

45.     Answering the allegations in paragraph 45 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

46.     Answering the allegations in paragraph 46 of the Complaint, Defendant admits such allegations.

47.     Answering the allegations in paragraph 47 of the Complaint, Defendant admits the Film began production in 2023, and that Defendant directed and played the male lead of the Film.

Defendant denies all of the remaining allegations in the paragraph.

48.    Answering the allegations in paragraph 48 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

49.    Answering the allegations in paragraph 49 of the Complaint, Defendant admits the Film was released in August 2024, and that the text quoted in the paragraph is contained in the article cited by Plaintiffs in footnote 1.  As to the remaining allegations in the paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

50.    Answering the allegations in paragraph 50 of the Complaint, Defendant denies any such allegations, and specifically denies any on-set misbehavior.

51.    Answering the allegations in paragraph 51 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

52.    Answering the allegations in paragraph 52 of the Complaint, Defendant admits receiving a proposal from TAG, presented on or about August 2024, containing the language quoted, but denies all remaining allegations in the paragraph and specifically denies that the communications and their context are characterized accurately in the Complaint.

53.    Answering the allegations in paragraph 53 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

54.    Answering the allegations in paragraph 54 of the Complaint, Defendant admits Baldoni sent the quoted language included in the paragraph, but specifically denies that the communications and their context are characterized accurately in the Complaint. With respect to all remaining allegations, Defendant denies all such allegations, and specifically denies the allegations contained in the embedded text message in the paragraph.

55.    Answering the allegations in paragraph 55 of the Complaint, Defendant lacks

knowledge or information sufficient to form a belief as to the truth of such allegations.

56.     Answering the allegations in paragraph 56 of the Complaint, Defendant admits Baldoni sent Abel a text containing, in part, the text quoted in footnote 2, but Defendant denies all of the remaining allegations in the paragraph, and specifically denies that the communications and their context are characterized accurately in the Complaint.

57.     Answering the allegations in paragraph 57 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

58.     Answering the allegations in paragraph 58 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

59.     Answering the allegations in paragraph 59 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

60.     Answering the allegations in paragraph 60 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

61.     Answering the allegations in paragraph 61 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

62.     Answering the allegations in paragraph 62 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

63.     Answering the allegations in paragraph 63 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

64.     Answering the allegations in paragraph 64 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

65.     Answering the allegations in paragraph 65 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

66.    Answering the allegations in paragraph 66 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

67.    Answering the allegations in paragraph 67 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

68.    Answering the allegations in paragraph 68 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

69.    Answering the allegations in paragraph 69 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

70.    Answering the allegations in paragraph 70 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

71.    Answering the allegations in paragraph 71 of the Complaint, Defendant admits Heath sent the quoted email but denies the accuracy of its characterization in the Complaint, including any characterization of the communication as hostile. As to the remaining allegations in the paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

72.    Answering the allegations in paragraph 72 of the Complaint, Defendant admits such allegations.

73.    Answering the allegations in paragraph 73 of the Complaint, Defendant denies such allegations.

74.    Answering the allegations in paragraph 74 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

75.    Answering the allegations in paragraph 75 of the Complaint, Defendant admits that Heath sent a communication containing the text quoted therein. Defendant denies all remaining

allegations, and specifically denies that the communication and its context are characterized accurately in the Complaint.

76.    Answering the allegations in paragraph 76 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

77.    Answering the allegations in paragraph 77 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

78.    Answering the allegations in paragraph 78 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

79.    Answering the allegations in paragraph 79 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

80.    Answering the allegations in paragraph 80 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

81.    Answering the allegations in paragraph 81 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

82.    Answering the allegations in paragraph 82 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

83.    Answering the allegations in paragraph 83 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

84.    Answering the allegations in paragraph 84 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

85.    Answering the allegations in paragraph 85 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

86.    Answering the allegations in paragraph 86 of the Complaint, Defendant lacks

knowledge or information sufficient to form a belief as to the truth of such allegations.

87.    Answering the allegations in paragraph 87 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

88.    Answering the allegations in paragraph 88 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

89.    Answering the allegations in paragraph 89 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

90.    Answering the allegations in paragraph 90 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

91.    Answering the allegations in paragraph 91 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

92.    Answering the allegations in paragraph 92 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

93.    Answering the allegations in paragraph 93 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

94.    Answering the allegations in paragraph 94 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

95.    Answering the allegations in paragraph 95 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

96.    Answering the allegations in paragraph 96 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

97.    Answering the allegations in paragraph 97 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

98.     Answering the allegations in paragraph 98 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

99.     Answering the allegations in paragraph 99 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

100.    Answering the allegations in paragraph 100 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

101.    Answering the allegations in paragraph 101 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

102.    Answering the allegations in paragraph 102 of the Complaint, Defendant admits it ceased working with Jonesworks, denies any ongoing contract and denies owing any sums to Jonesworks for its services. As to the remaining allegations in the paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

103.    Answering the allegations in paragraph 103 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

104.    Answering the allegations in paragraph 104 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

105.    Answering the allegations in paragraph 105 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

106.    Answering the allegations in paragraph 106 of the Complaint, Defendant denies such allegations.

107.    Answering the allegations in paragraph 107 of the Complaint, Defendant incorporates by reference its responses in the foregoing paragraphs.

108.    Answering the allegations in paragraph 108 of the Complaint, the allegations

require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

109.    Answering the allegations in paragraph 109 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

110.    Answering the allegations in paragraph 110 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

111.    Answering the allegations in paragraph 111 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

112.    Answering the allegations in paragraph 112 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

113.    Answering the allegations in paragraph 113 of the Complaint, Defendant incorporates by reference its responses in the foregoing paragraphs.

114.    Answering the allegations in paragraph 114 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the

allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

115.    Answering the allegations in paragraph 115 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

116.    Answering the allegations in paragraph 116 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

117.    Answering the allegations in paragraph 117 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

118.    Answering the allegations in paragraph 118 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

119.    Answering the allegations in paragraph 119 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

120.    Answering the allegations in paragraph 120 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

121.    Answering the allegations in paragraph 121 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the

allegations in the paragraph require a response, Defendant denies such allegations.

122.    Answering the allegations in paragraph 122 of the Complaint, Defendant incorporates by reference its responses in the foregoing paragraphs.

123.    Answering the allegations in paragraph 123 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant admits Wayfarer contracted with Jonesworks for certain communications and public relations services, and denies the remaining allegations in the paragraph.

124.    Answering the allegations in paragraph 124 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

125.    Answering the allegations in paragraph 125 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

126.    Answering the allegations in paragraph 126 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

127.    Answering the allegations in paragraph 127 of the Complaint, Defendant admits a representative of Wayfarer terminated Jonesworks' representation of Defendant and Baldoni on or about August of 2024.  To the extent that the allegations in this paragraph state a legal conclusion, they require no response.  Defendant denies all of the remaining allegations in the paragraph.

128.    Answering the allegations in paragraph 128 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the

allegations in the paragraph require a response, Defendant denies such allegations.

129.    Answering the allegations in paragraph 129 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

130.    Answering the allegations in paragraph 130 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

131.    Answering the allegations in paragraph 131 of the Complaint, Defendant incorporates by reference its responses in the foregoing paragraphs.

132.    Answering the allegations in paragraph 132 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

133.    Answering the allegations in paragraph 133 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

134.    Answering the allegations in paragraph 134 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

135.    Answering the allegations in paragraph 135 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

136.    Answering the allegations in paragraph 136 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the

allegations in the paragraph require a response, Defendant denies such allegations.

137.    Answering the allegations in paragraph 137 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

138.    Answering the allegations in paragraph 138 of the Complaint, Defendant incorporates by reference its responses in the foregoing paragraphs.

139.    Answering the allegations in paragraph 139 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

140.    Answering the allegations in paragraph 140 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

141.    Answering the allegations in paragraph 141 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

142.    Answering the allegations in paragraph 142 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

143.    Answering the allegations in paragraph 143 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

144.    Answering the allegations in paragraph 144 of the Complaint, Defendant

incorporates by reference its responses in the foregoing paragraphs.

145.    Answering the allegations in paragraph 145 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

146.    Answering the allegations in paragraph 146 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

147.    Answering the allegations in paragraph 147 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

148.    Answering the allegations in paragraph 148 of the Complaint, Defendant incorporates by reference its responses in the foregoing paragraphs.

149.    Answering the allegations in paragraph 149 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

150.    Answering the allegations in paragraph 150 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

151.    Answering the allegations in paragraph 151 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

152.    Answering the allegations in paragraph 152 of the Complaint, the allegations

require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

153.    Answering the allegations in paragraph 153 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

154.    Answering the allegations in paragraph 154 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

155.    Answering the allegations in paragraph 155 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

156.    Answering the allegations in paragraph 156 of the Complaint, Defendant incorporates by reference its responses in the foregoing paragraphs.

157.    Answering the allegations in paragraph 157 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

158.    Answering the allegations in paragraph 158 of the Complaint, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

159.    Answering the allegations in paragraph 159 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

160.    Answering the allegations in paragraph 160 of the Complaint, the allegations

require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

161.    Answering the allegations in paragraph 161 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

162.    Answering the allegations in paragraph 162 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

163.    Answering the allegations in paragraph 163 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant denies such allegations.

164.    Answering the allegations in paragraph 164 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

165.    Answering the allegations in paragraph 165 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

166.    Answering the allegations in paragraph 166 of the Complaint, the allegations require no response because they merely state a legal conclusion. To the extent that any of the

allegations in the paragraph require a response, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein.

167.    Answering paragraph 167 of the Complaint, the paragraph requires no response as it states relief sought and is not an allegation. To the extent the paragraph requires a response, Defendant denies.

168.    Answering paragraph 168 of the Complaint, the paragraph requires no response as it states relief sought and is not an allegation. To the extent the paragraph requires a response, Defendant denies.

## AFFIRMATIVE AND OTHER DEFENSES

By alleging the following affirmative and other defenses, Defendant is not in any way agreeing or conceding that it has the burden of proof or burden of persuasion on any of these issues. As separate and distinct defenses to Plaintiffs' Complaint, and each purported cause of action contained therein, Defendant alleges as follows:

### FIRST DEFENSE

169.    The Complaint, and each claim alleged therein, fails to state facts sufficient to constitute any claim for relief against Defendant.

### SECOND DEFENSE

170.    The Complaint, and each claim alleged therein, is barred as Plaintiffs lack standing to sue.

### THIRD DEFENSE

171.    The Complaint, and each claim alleged therein, is barred as Plaintiffs have waived their claims.

## FOURTH DEFENSE

172.    The Complaint, and each claim alleged therein, is barred as Plaintiffs are estopped from asserting their claims.

## FIFTH DEFENSE

173.    The Complaint, and each claim alleged therein, is barred as Plaintiffs acted and continue to act with unclean hands.

## SIXTH DEFENSE

174.    The Complaint, and each claim alleged therein, is barred as Plaintiffs have not been damaged in any way or at all as a result of any alleged acts or omissions of Defendant.

## SEVENTH DEFENSE

175.    The Complaint, and each claim alleged therein, is barred in whole or in part by the First Amendment of the Constitution of the United States of America.

## EIGHTH DEFENSE

176.    The Complaint, and each claim alleged therein, is barred by reason of Plaintiffs' consent.

## NINTH DEFENSE

177.    The Complaint, and each claim alleged therein, is barred as Plaintiffs have failed to undertake reasonable measures to mitigate the damages they claim to have incurred. Any recovery by Plaintiffs must be diminished to the extent that any alleged damages could have been avoided if such measures had been undertaken.

## TENTH DEFENSE

178.    Defendant is informed and believes, and on that basis alleges, that Plaintiffs would be unjustly enriched if recovery were to be had on this Complaint.

## ELEVENTH DEFENSE

179.     Plaintiffs have not been damaged in any amount alleged, or in any amount whatsoever, and are not entitled to any general, compensatory, statutory, punitive, or other damages or any other relief as a result of any of the allegations set forth in the Complaint.

## TWELFTH DEFENSE

180.     The acts and/or omissions of Plaintiffs excused any alleged act or alleged failure to act on the part of Defendant.

## THIRTEENTH DEFENSE

181.     If Defendant had any alleged obligations or legal dues, which Defendant hereby expressly denies, Defendant has appropriately, completely, and fully performed and discharged any alleged obligations and any alleged legal duties arising out of the matters alleged in the Complaint.

## FOURTEENTH DEFENSE

182.     The damages and injuries, if any, suffered by Plaintiffs were directly and proximately caused solely by the acts or omissions of individuals or entities other than Defendant. The acts and omissions of such other individuals or entities are superseding or intervening causes of loss or damages, if any, suffered by Plaintiff. As a consequence thereof, Plaintiffs are barred from recovery against Defendant herein.

## FIFTEENTH DEFENSE

183.     The damages and injuries, if any, suffered by Plaintiffs were directly and proximately caused solely by the reckless, negligent, and wrongful conduct of individuals or entities other than Defendant. As a consequence thereof, Plaintiffs are barred from recovery herein.

## SIXTEENTH DEFENSE

184.    The damages and injuries, if any, suffered by Plaintiffs were directly and proximately caused solely by the intentional misconduct of individuals or entities other than Defendant. As a consequence thereof, Plaintiffs are barred from recovery herein.

## SEVENTEENTH DEFENSE

185.    The Complaint fails to state facts sufficient to permit an award of punitive damages and any such award would violate due process.

## EIGHTEENTH DEFENSE

186.    The Complaint, and each and every cause of action alleged therein, fails to state any facts supporting any claim for punitive or exemplary damages.

## NINETEENTH DEFENSE

187.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part because at all material times, Defendant acted in good faith and without malice based upon all relevant facts and circumstances known by Defendant at the time.

## TWENTIETH DEFENSE

188.    Plaintiffs, and each of their agents, servants, and employees, have failed to bring the causes of action alleged in the Complaint in a timely manner and are therefore barred from recovery against Defendant, in whole or in part, by the equitable doctrine of laches.

## TWENTY-FIRST DEFENSE

189.    Defendant alleges that in the event it is found in some manner legally liable to Plaintiffs as a result of the events or occurrences described in the Complaint, that liability will be solely based upon a derivative, vicarious, or imputed form of liability, not resulting from its own conduct, but instead based upon an obligation imposed upon it by law, or by the conduct of others,

and as such the legal liability of Defendant would be proximately caused by the acts or omissions of others and therefore Defendant is entitled to recover contribution from them.

## TWENTY-SECOND DEFENSE

190.    Defendant alleges that in the event it is found in some manner legally liable to Plaintiffs as a result of the events or occurrences described in the Complaint, that liability will be based solely upon a derivative, vicarious, or imputed form of liability, not resulting from its own conduct, but instead based upon an obligation imposed upon it by law, or by the conduct of others, and as such the legal liability of Defendant would be proximately caused by acts or omissions of others and therefore, Defendant is entitled to recover total and complete implied and/or comparable indemnity from them.

## TWENTY-THIRD DEFENSE

191.    Defendant alleges that in the event \he is found in some manner legally liable to Plaintiffs as a result of the events or occurrences described in the Complaint, that liability will be based solely upon a derivative vicarious, or imputed form of liability, not resulting from its own conduct, but instead based upon an obligation imposed upon it by law, or by the conduct of others, and as such the legal liability of Defendant would be proximately caused by acts or omissions of others and therefore, Defendant is entitled to recover total and complete equitable indemnity from them.

## TWENTY-FOURTH DEFENSE

192.    Any injury or damage to Plaintiff, which Defendant specifically denies, was proximately caused by the negligence, recklessness, or intentional conduct of others who acted as one or more of the Plaintiffs legal counsel, agents, or representatives. Accordingly, if any liability is found on the part of Defendant, then Defendant's liability to Plaintiffs shall be reduced on the

basis of comparative fault.

### TWENTY-FIFTH DEFENSE

193.    Any injury or damage to Plaintiffs, which Defendant specifically denies, was proximately caused by the negligence of Plaintiffs.

### TWENTY-SIXTH DEFENSE

194.    Plaintiffs' alleged damages are too speculative to permit recovery in this case.

### TWENTY-SEVENTH DEFENSE

195.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part by the doctrine of *in pari delicto*.

### TWENTY-EIGHTH DEFENSE

196.    The Complaint, and each and every cause of action alleged against Defendant therein, fails to allege facts sufficient to allow recovery of attorneys' fees from Defendant.

### TWENTY-NINTH DEFENSE

197.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part by the doctrine of waiver.

### THIRTIETH DEFENSE

198.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part because Defendant's conduct was justified or privileged or both under the circumstances.

### THIRTY-FIRST DEFENSE

199.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part by the doctrine of accord and satisfaction.

## THIRTY-SECOND DEFENSE

200.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part because there was a lack of privity between Jones and Defendant.

## THIRTY-THIRD DEFENSE

201.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part by the doctrine of substantial compliance.

## THIRTY-FOURTH DEFENSE

202.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part by the doctrine of frustration of purpose.

## THIRTY-FIFTH DEFENSE

203.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part by the termination of the contract.

## THIRTY-SIXTH DEFENSE

204.    The Complaint, and each and every cause of action alleged therein, is barred in whole or in part by a lack of consideration.

## RESERVATION OF ADDITIONAL DEFENSES

205.    Defendant presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated affirmative or other defenses available. Defendant reserves the right to assert additional defenses in the event that discovery indicates they would be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Wayfarer Studios LLC prays for relief as follows:

1.    That the Complaint be dismissed with prejudice, and Plaintiffs take nothing herein;

2.    That judgment be entered in favor of Defendant and against Plaintiffs;

3.    For costs of suit incurred in this action; and

4.    For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Defendant demands a jury trial on all causes of action so triable.

## COUNTERCLAIMS OF WAYFARER STUDIOS LLC

Wayfarer Studios LLC ("Wayfarer"), by and through undersigned counsel, as and for its counterclaims against Stephanie Jones ("Jones") and Jonesworks LLC ("Jonesworks") (together, "Jonesworks"), alleges as follows based on knowledge as to its own conduct and activities and on information and belief as to all other matters except where otherwise alleged:

## PARTIES

1.    Defendant/Counterclaimant Wayfarer Studios LLC is, and at all times relevant was, a Delaware limited liability company with its principal place of business in Los Angeles, California. None of Wayfarer's members are citizens of New York. All of Wayfarer's members are citizens of either California or Illinois. By virtue of the citizenship of its beneficial owners, Wayfarer is a citizen of California and Illinois.

2.    Plaintiff/Counterclaim-Defendant Stephanie Jones is, and at all times relevant was, an individual residing in Greenwich, Connecticut.

3.    Plaintiff/Counterclaim-Defendant Jonesworks LLC is, and at all times relevant was, a Delaware limited liability company with its principal place of business in New York, New York. None of Jonesworks' members are citizens of California or Illinois.

4.    There exists, and at all times herein mentioned there existed, a unity of interest between Jonesworks and Jones such that any individuality and separateness has ceased, and Jonesworks is the alter ego of Jones.

5.     At all relevant times herein, each of Jones and Jonesworks was the agent, servant, employee, employer, joint-venturer, partner, and/or alter ego of the other and was at all times operating and acting within the purpose and scope of said agency, service, employment, joint venture, partnership, and/or alter ego. Each of Jones and Jonesworks has rendered substantial assistance and encouragement to the other, acting in concert knowing that her/its conduct was wrongful and/or unlawful, and each of Jones and Jonesworks has ratified and approved the acts of the other

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction over the claims for relief asserted in this counterclaim pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and no Counterclaim-Defendant is a citizen of the same state as Counterclaimant for diversity jurisdiction purposes. This Court also has supplemental jurisdiction over the claims for relief asserted in this counterclaim pursuant to 28 U.S.C. § 1367(a) because such claims are so related to claims in the action that they form part of the same case or controversy under Article III of the U.S. Constitution.

7.     This Court may exercise personal jurisdiction over the Counterclaim-Defendants pursuant to Section 301 of the New York Civil Practice Law and Rules ("CPLR") because all of them systemically and continuously conduct and solicit business within New York and have availed themselves of the privileges of conducting business in the State of New York.

8.     This Court may exercise personal jurisdiction over the Counterclaim-Defendants pursuant to CPLR 302 because all of them transact and solicit business within the State of New York and have committed the tortious acts described herein within the State of New York.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because a

substantial part of the events or omissions giving rise to these claims occurred in this District and because the Counterclaim-Defendants are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

### A.    Wayfarer's Relationship with Jonesworks

10.    Jonesworks is a well-known New York-based public relations firm founded by Stephanie Jones, who serves as its CEO.

11.    Long known within the public relations industry for her disarming Southern twang, brass-knuckle tactics, and high turnover of clients and employees, Stephanie Jones has had a successful career in the entertainment industry. Her firm, Jonesworks, has represented, at various times, Dwayne "The Rock" Johnson, Jeff Bezos, Lauren Sanchez, Venus Williams, Tom Brady, and Chris Hemsworth.

12.    Jones is married to Jason Hodes ("Hodes"), a partner at William Morris Endeavor ("WME"), Hollywood's most powerful talent agency. Between her perch atop Jonesworks and his partnership at WME, Jones and Hodes are a bona fide Hollywood power couple.

13.    In or around May 2020, Wayfarer engaged Jonesworks to provide strategic communications services and serve as its public relations representative. The engagement was memorialized in a letter agreement (the "Agreement") effective as of May 7, 2020, for an initial one-year term, automatically renewing thereafter unless terminated. A true and correct copy of the Agreement is attached hereto as **Exhibit** "**A**" and incorporated herein by reference.

14.    In consideration for Jonesworks' provision of services, Wayfarer agreed to pay $20,000/month.

15.    As part of the Agreement, Jonesworks agreed to provide such services "in a professional manner and in accordance with the goals mutually established by [Wayfarer] and

[Jonesworks]."

16.      The Agreement contains a provision requiring Jonesworks to keep confidential Wayfarers' confidential and proprietary information as well as sensitive information concerning Wayfarer or related parties.

> Throughout [Wayfarer's] engagement of [Jonesworks] hereunder, [Wayfarer] may disclose or provide [Jonesworks] with confidential, proprietary and/or sensitive information about [Wayfarer], its customers or other related parties ("Confidential Information"). [Jonesworks] shall use reasonable and diligent efforts to keep Confidential Information confidential provided that [Jonesworks] may disclose such information to third parties to the extent necessary to fulfill its obligations under this Agreement or to its legal representatives. **[Jonesworks] shall not use such information for any purpose beyond the performance of [Jonesworks'] services hereunder** unless otherwise required by law or a court of competent jurisdiction . . . Notwithstanding the foregoing, [Jonesworks] is not liable for any third party's disclosure of [Wayfarer's] Confidential Information **so long as such third party did not obtain the Confidential Information as a result of [Jonesworks'] breach or failure to uphold its obligations hereunder.**"

(emphasis added.)

17.      The Agreement contains a New York choice of law provision.

**B.      Relevant Context Regarding the Film**

18.      Justin Baldoni founded Wayfarer in 2019. From the beginning, Wayfarer was intended to be a different kind of studio, one devoted to producing world-class entertainment with a mission-driven purpose.

19.      In pursuit of that vision, in 2019 Wayfarer acquired the film rights to *It Ends With Us*, a Colleen Hoover novel published in 2016. Nominally positioned as a romance novel, the book explores themes of domestic violence and generational patterns of abuse. Its message resonated deeply with readers and drew a passionate fanbase. The book exploded in popularity in 2021 thanks to the "BookTok" social media phenomenon.

20.      Inspired by the book, Baldoni approached Hoover about the possibility of a film

adaptation. Familiar with his previous work, Hoover told Baldoni that she believed he was the right person for the project and suggested he play the lead role of "Ryle."

21.     Soon after, Wayfarer partnered with Sony to co-finance and distribute the Film. At Wayfarer's and Baldoni's insistence, the Sony deal included a requirement that 1% of the Film's proceeds be donated in support of survivors of domestic violence.

22.     Wayfarer and Baldoni felt a deep sense of responsibility to do justice to Hoover's work and meaningfully capture the experience of "Lily Bloom," the Film's protagonist and a victim of domestic abuse.

23.     Wayfarer cast Blake Lively for the role, entrusting her with that fulfilling that vision.

24.     For reasons now widely known, that turned out to be an unwise decision. Without diving into the full sequence of events, which are the subject of active litigation, Lively ended up stealing control of the movie, hijacking the premiere, and taking aim at the personal and professional reputations of Baldoni and the Wayfarer team in an apparent attempt to drive Wayfarer out of business.

25.     For present purposes, it suffices to say that Wayfarer and Baldoni had significant public relations needs in the summer of 2024, before, during, and after the Film's premiere.

**C.      Jones and Jonesworks Act Against Wayfarer's Interests and Breach the Agreement**

26.     It was at this time that Stephanie Jones—seemingly in the midst of a downward spiral—decided to stir up unnecessary drama and discord, throwing elbows for self-interested reasons, undermining and eventually terminating Jonesworks' point person at Wayfarer, refusing to follow instructions, and generally causing more problems than she was solving. In so doing, Jones ruptured her relationship with the Wayfarer team and Baldoni and ultimately rendered any

continued engagement by Jones or Jonesworks untenable and intolerable. That is especially so given what Wayfarer and Baldoni later learned about the true magnitude of Jones' malice.

27.    For almost four years, Jonesworks' work for Wayfarer and Baldoni was managed by Jennifer Abel out of the Jonesworks Los Angeles office. Over time, Abel developed a close and trusting relationship with Baldoni, Wayfarer CEO Jamey Heath, and the rest of the Wayfarer team, particularly as their strategic communications needs became ever more complex in 2024.

28.    At all times during Wayfarer's four-year engagement with Jonesworks, it was very clear to Wayfarer—and Jones largely did not hide—that Jones considered them to be a "lower prestige" client and devoted her attention to clients such as Jeff Bezos and Tom Brady.

29.    Yet by July 2024, things were not going well for Jones. At the same time as Jonesworks was bleeding clients and personnel, Jones learned that Business Insider was working on an unflattering story about her set to be published sometime in August. In addition, Jones' reputation (at least, on information and belief, in her mind) had been severely damaged by the "Stephanie Jones Leaks" website and social media accounts. Jones was desperate to keep her remaining clients.

30.    At around the same time, Abel gave notice to Jones and Jonesworks that she intended to resign and later that she intended to start her own firm.

31.    Given Abel's close relationship with Wayfarer and Baldoni, Jones was undoubtedly concerned they would leave Jonesworks alongside her. And she wanted to make sure that did not happen.

32.    During this period, Wayfarer and Baldoni were in the midst of a massive PR crisis, as news stories began to trickle out speculating about possible tension between Lively and Baldoni (largely due to the cast no longer following him on social media) just as the Film was about to

premiere. Jones started participating in meetings, calls, and written correspondence to reassert her authority over the account and convey her engagement to Wayfarer.

33.    Wayfarer and Baldoni asked Abel to recommend a crisis management specialist. After consulting with Jones, who had no viable ideas, Abel recommended that Wayfarer and Baldoni engage crisis PR expert Melissa Nathan to assist in navigating these choppy waters. Abel had confidence in Nathan, as they had worked together extensively in connection with a different Jonesworks client. The need for crisis PR expertise was particularly acute due to Lively's demand that Baldoni not be permitted to attend the premiere and the threat that Baldoni would be excluded from the press junket with the rest of the cast. Abel learned during her initial discussion with Nathan that, per her media contacts, a negative story was already being "shopped" around to multiple outlets, positioning Baldoni's religion as a "cult" and accusing Baldoni of having "fat shamed" Lively after he asked her personal trainer in private about her weight due to his history of severe back pain.

34.    Even though Abel felt strongly that Nathan was the right choice, she knew that Jones would be unhappy with recommendation. Jones viewed Nathan as a competitor and had a history of bad-mouthing her to anyone who would listen, including to Nathan's own clients. Out of sensitivity for these considerations, Abel advised the Wayfarer team to remain open to other possible options and to decide after meeting Nathan themselves. Abel feared backlash from Jones but felt strongly that Nathan was the best option. When Jones learned that Wayfarer was considering retaining Nathan, she was furious and immediately lashed out at Abel, pressuring her to disparage Nathan as a demonstration of loyalty to Jones. After initially pushing back, Abel eventually relented after Jones called her crying and screaming and engaged in some "light" disparaging of Nathan to placate Jones. Jones then attempted to derail the engagement, exploiting

confidential client information to convince Wayfarer not to move forward with Nathan.

35.    Wayfarer, through its CEO, Heath, acknowledged Jones' position but told her Wayfarer would make its own decision after meeting Nathan.

36.    When Jones inserted herself into the mix in July-August 2024, she was transparently seeking to box out Nathan and Abel. The problem, however, was that Jones had chosen not to be privy to Wayfarer leadership's communications strategy or internal decision-making, having long claimed to be too busy with higher profile clients. Wayfarer was fine with Jones' disengagement, as Abel was their trusted advisor, and they had no interest in being a pawn in Jonesworks office politics.

37.    In addition, Jones had chosen to take a lengthy vacation in Europe during this critical period of the press campaign and premiere of the Film. Even from afar, Jones' efforts were ham-fisted, unwelcome, and sporadic given her distance from Wayfarer's day-to-day business.

38.    As Jones tried to stir up drama and undermine Abel's authority, Wayfarer and Baldoni were focused solely on managing the crisis in front of them.

39.    Leading up to the Film's premiere, Lively's and Baldoni's teams had negotiated an uneasy truce in which neither side would participate in negative coverage of the other. Lively's team had already broken that truce, but the Wayfarer team did not know that then. As far as they were concerned, it was best for Baldoni, Lively, and the Film if both sides agreed to keep the peace, though Wayfarer's team had to date been acting only in defense in responding to press inquiries.

40.    But on August 8, 2024, Jones, in another desperate attempt to re-insert herself, contacted a Daily Mail reporter about a story they had published about Baldoni and Lively. She did so in direct violation of Abel's instruction, per Wayfarer, not to talk to the press given the truce

with Lively's team. Nonetheless, Jones bragged to Wayfarer about "trading calls" with the Daily Mail in an effort to appear engaged on the account. Nathan and Abel were left to deal with the fallout.





41.     This blatant disregard of Wayfarer's strategy sparked a chain of unfortunate developments. Sloane and Sony learned that "someone from Baldoni's team had been communicating negatively to media." It was clearly Jones, and Wayfarer's leadership was livid. As was Sony. All parties were desperate to prevent an all-out slugfest between Lively and Baldoni just as the Film was about to be released to the world. With her reckless and unauthorized activities, Jones had made that scenario much more likely. In response, Wayfarer instructed Jones to cease all activities on behalf of Wayfarer and Baldoni for the time being and to let Abel and another Los Angeles-based Jonesworks employee, Matthew Mitchell, handle the crisis alongside Nathan.

42.     At this time, Nathan started hearing from other journalists that Sloane was planting negative stories about Baldoni and was under the impression that Baldoni's camp had broken the truce. Anxious Sony executives began reaching out to Wayfarer seeking clarity.

43.     Yet Jones, panicked about being blamed, refused to be sidelined, insisting that she *needed* to contact Sony's and Lively's PR teams to clarify that she had not planted any negative stories about Lively. Heath told her not to do that, to which Jones responded that she could do "whatever she wants" to clear her name and that Wayfarer cannot stop her from making calls. Desperate to salvage her reputation with Lively and Sony, Jones emailed a number of key Sony executives working on the Film to declare that she was in Europe with "her husband, partner at WME Jason Hodes" and placing all blame on "her team." In her attempt to save face, Jones ruptured her relationship with Wayfarer and Baldoni.

44.     Although Jones ultimately agreed to stand down, Wayfarer and Baldoni had lost all trust in her. After parachuting in for self-interested reasons, nearly blowing up the truce with Lively's team, and lashing out when told to stop, Jones became a magnet for drama when it was least needed.

45.     But Jones would not give it a rest. Ironically, given her later attempt to fabricate a "smear campaign" narrative, it was Jones—not Wayfarer, Baldoni, Abel, or Nathan—who started advocating for a more aggressive public relations strategy Her "advice" was not headed.



46.     On or about August 14, 2024, Jones sent an email to Heath further elaborating on her "recommended strategy":

> **Flood the Zone with Positives**: We need to ensure that we promote positive narratives that media outlets cannot ignore. Currently, most stories are heavily biased towards Blake's perspective, leaving Justin unrepresented. It's crucial that we fight for every inch of every story, which requires far more effort than

typical crisis PR want to put forth in our experience working with specialized crisis teams.

**Prepare Alternate Stories**: We should mobilize a robust network of supporters and third-party advocates ready to counter these narratives on deep background as well as some on the record, making it clear that the claims being made are untrue and unfounded.



47.    Over the next week or so, Wayfarer and Jones went back-and-forth, with Wayfarer re-iterating that it did not want Jones acting on its behalf and to leave on-the-ground work to Abel and Nathan.

48.    On August 21, 2024, Wayfarer learned that Jonesworks had suddenly terminated Abel, threatening her, seizing her phone, and marching her out of the Jonesworks Los Angeles office. Wayfarer's CEO immediately reached out to Jones expressing extreme concern. Jones brushed off his alarm and noted that Wayfarer had an "EXCLUSIVE contract . . . [with Jonesworks] through May 2025":

**From:** Stephanie Jones
**Date:** August 21, 2024 at 4:18:33 PM EDT
**To:** Jamey Heath
**Cc:**

**Subject: Jamey's text to Jonesworks**

Hi Jamey,

Justin, Wayfarer, you, Tera and team are extremely important to us. I received your text a little over an hour ago, but I'm currently unable to make calls on my cell at my current location. Im so sorry!

one of our SVPs whom you have cited has been one of your day-to-day senior executives on your account, said he just spoke with you and nothing was urgent. It was about the announcement for the new book adaptation. We're working on placing it on the heels of IEWU.

Your below email is inaccurate. As you know, I have been deeply involved in strategy, planning, account management and high level PR and media comms as well as crisis until you asked me to stop communicating on behalf of Justin and Wayfarer on 8/9/24 and allow only Jennifer, Matthew and team to handle. I've been on set during shoots and have had numerous calls weekly with my team and yours as well as many with Justin, particularly regarding Blake, often at 11pm, 1am ET (New York). My commitment spans not only the past eight years but also the last four since you joined.

This has never been one person but rather it has been a true team effort, with my full support alongside a dedicated team at Jonesworks, including a senior vice president, two senior publicists, several account executives and account coordinators working tirelessly for Justin and Wayfarer.

On August 9, 2024, you indicated that you wanted only Jennifer Abel and and team to communicate on behalf of Justin and Wayfarer. It's my understanding that was retained and began communicating with teams just four days later on August 13, 2024, which demonstrates that I wouldn't have been stepping in "mid-trial."

I have spoken to and I also attempted to reach yesterday about a magazine cover for Justin that I have been working on for the last year now. As I noted below, I have

also made many attempts to contact you through email and phone, but I have not received any responses.

We have an EXCLUSIVE contract with you through May 2025. You contracted a crisis PR firm to handle all crisis-related matters. If you would now like us to help with that we absolutely can and will. Please let me know.

And please know that our team at Jonesworks is well-equipped to manage everything as we always have without missing a beat.

Thank you,
Stephanie

Stephanie Jones
www.jonesworks.com

49.     Notably, on the same day, August 21, 2024, within just *hours* of terminating Abel and seizing her phone, Jones had apparently already gone through it and shared confidential information relating to Wayfarer and Baldoni with Leslie Sloane, Blake Lively's publicist. On information and belief, Jones also shared such information with other third parties, and in no event pursuant to a subpoena or any kind of lawful court order. That day, Sloane contacted Nathan, disclosing that she had seen her text messages about Lively (which could only have come from Abel's phone) and gloating that she should expect to be sued.

50.     As September drew nearer, Wayfarer and Baldoni—with the assistance of Abel and Nathan—continued their tireless efforts to promote the Film, put out fires, and see the project through to the finish line. Jones, on the other hand, was stewing in jealousy towards Abel and resentment towards Wayfarer/Baldoni for their lack of confidence in her.

51.     On information and belief, Jones reached out voluntarily to Lively's team offering what she believed to be ammunition against Wayfarer, Baldoni, Abel, and Nathan. Wielding reams of Abel's private communications—which, with some unscrupulous massaging and creativity—could be sliced, diced, and stripped of context to support a false narrative about them.

52.     At the time, an embattled Lively was licking her wounds after a well-publicized series of promotional missteps and off-putting public appearances that resulted in a cascade of negative publicity. On information and belief, Jones believed, and was ultimately correct, that Lively and her team would be willing participants in her scheme.

53.     In turning over these materials to Lively, Jones knew full well that the blowback would engulf not only Abel and Nathan but also *current Jonesworks clients* Wayfarer and Baldoni. On information and belief, that was precisely the goal.

54.     Although Wayfarer and Baldoni were not yet aware of the magnitude of Jones'

betrayal, Jones clearly expected Wayfarer to terminate the Jonesworks Agreement. Notwithstanding her own despicable and surreptitious conniving, Jones cynically started taking steps transparently intended to make it harder to cut her loose. Those steps included sending email after unwelcome email to Heath and others—long after their relationship had ruptured—to lay the groundwork to contest that she had been detached and nonresponsive for years. This was especially galling, as Jones had been in Europe and largely incommunicado—save for her disastrous efforts at self-preservation—for weeks during the critical month of August when the Film premiered. Wayfarer and Baldoni now viewed Jones as a walking disaster who had demonstrated an astonishing degree of self-absorption, disloyalty, and insubordination during an existential crisis.

55.     After Jones suddenly and unceremoniously fired Abel in the midst of this crisis, leaving Wayfarer in the lurch, communications between Jones and Wayfarer broke down completely. Jones vacillated between insisting that they only speak through lawyers and making erratic and deranged threats to sue, demanding exorbitant payment for work not done, and insisting against evidence that she was doing an amazing job.

56.     Although they did not yet know just how far Jones had taken things, Wayfarer and Baldoni considered her behavior to be a material breach of the Agreement and advised Jones that they were terminating the Jonesworks Agreement as of the end of August.

57.     In December 2024, the Wayfarer team finally learned the full extent of Jones' betrayal. As a result of Jones' deliberate and unlawful disclosure of their private information, which Lively's team exploited to concoct a false and disturbing narrative about them, Wayfarer and Baldoni have been irrevocably harmed. Following the coordinated "drop" of Lively's fantastical Civil Rights Department Complaint and an explosive New York Times article, Wayfarer and Baldoni became objects of public scorn and derision. Baldoni has been wrongfully

labeled as a sex pest, his accolades have been rescinded, and his future projects thrown into doubt. The same is true of Wayfarer, which has been falsely cast as an enabler of sexual misconduct and the architect of a vicious retaliation campaign against a victim of such misconduct. Indeed, its very viability as a studio has been thrown into doubt as a direct result of Jones' actions on behalf of Jonesworks.

58.    In response to Jonesworks' and Jones' profoundly cynical decision to take legal action under these circumstances, Wayfarer now asserts its own claims.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

### Against Jones and Jonesworks

59.    Wayfarer hereby incorporates each and every allegation set forth above as if set forth fully herein.

60.    Wayfarer and Jonesworks are parties to the Agreement, which is a valid and enforceable contract. Jones is Jonesworks' designee under the Agreement.

61.    Under the terms of the Agreement, in exchange for a monthly fee Jonesworks agreed to provide strategic communications and public relations services "in a professional manner and in accordance with the goals mutually established by [Wayfarer and Jones]."

62.    As alleged hereinabove, Jonesworks and Jones, failed to render services "in a professional manner and in accordance with [Wayfarer's] goals" and thereby breached the Agreement.

63.    The Agreement further provided:

Throughout [Wayfarer's] engagement of [Jonesworks] hereunder, [Wayfarer] may disclose or provide [Jonesworks] with confidential, proprietary and/or sensitive information about [Wayfarer], its customers or other related parties ("Confidential Information").

[Jonesworks] shall use reasonable and diligent efforts to keep Confidential Information confidential provided that [Jonesworks] may disclose such information to third parties to the extent necessary to fulfill its obligations under this Agreement or to its legal representatives. **[Jonesworks] shall not use such information for any purpose beyond the performance of [Jonesworks'] services hereunder** unless otherwise required by law or a court of competent jurisdiction . . . Notwithstanding the foregoing, [Jonesworks] is not liable for any third party's disclosure of [Wayfarer's] Confidential Information **so long as such third party did not obtain the Confidential Information as a result of [Jonesworks'] breach or failure to uphold its obligations hereunder.**"

(emphasis added.)

64.    As alleged hereinabove, Jonesworks and Jones egregiously breached the foregoing confidentiality provision by voluntarily and maliciously disclosing Confidential Information (as defined in the Agreement) to third parties, including without limitation Leslie Sloane, for the express purpose of harming the interests of Wayfarer and Baldoni.

65.    The Confidential Information was not disclosed by Jonesworks and Jones pursuant to a subpoena or otherwise required by a court of competent jurisdiction.

66.    Jonesworks and Jones are liable for the subsequent disclosure of said Confidential Information by third parties because such third parties obtained the Confidential Information as a result of Jonesworks' breach of its obligation under the Agreement.

67.    The foregoing breaches were incurable.

68.    Wayfarer has substantially performed the Agreement or was excused from doing so because of Jonesworks' and Jones' actions.

69.    As a direct and proximate result of the foregoing breaches, Wayfarer suffered damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

### Against Jones and Jonesworks

70.     Wayfarer hereby incorporates each and every allegation set forth above as if set forth fully herein.

71.     Wayfarer and Jonesworks are parties to the Agreement, which is a valid and enforceable contract. Jones is Jonesworks' designee under the Agreement.

72.     Wayfarer has substantially performed under the Agreement or was excused from doing so because of Jonesworks' and Jones' actions.

73.     As alleged hereinabove, Jonesworks and Jones engaged in conduct that prevented Wayfarer from receiving the benefits contemplated under the Agreement, including by maliciously feeding its confidential information to hostile third parties for the specific purpose of harming Wayfarer and Baldoni.

74.     In doing so, Jonesworks and Jones did not act fairly or in good faith.

75.     As a direct and proximate result of the foregoing breaches, Wayfarer suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant Wayfarer prays for the following relief:

1.     For a money judgment representing compensatory damages, including consequential damages, lost wages, earnings, and all other sums of money, together with interest on those amounts, in an amount to be proven at trial;

2.     For pre- and post-judgment interest;

3.     For attorneys' fees and costs incurred by Wayfarer, as applicable; and

4.      For such other legal and equitable relief as the Court deems appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Wayfarer demands a jury trial on all causes of action so triable.

Respectfully submitted,

**MEISTER SEELIG & FEIN PLLC**

Dated:  March 20, 2025
        New York, NY

By:____*/s/ Mitchell Schuster*_____
        Mitchell Schuster
        Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
        kaf@msf-law.com

Dated:  March 20, 2025
        Los Angeles, CA

**LINER FREEDMAN TAITELMAN + COOLEY**

By:_____*/s/ Bryan Freedman*_____
        Bryan J. Freedman (*pro hac vice*)
        Miles M. Cooley (*pro hac vice*)
        Theresa M Troupson (*pro hac vice*)
        Summer Benson (*pro hac vice*)
        Jason Sunshine
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
        mcooley@lftcllp.com
        ttroupson@lftcllp.com
        sbenson@lftcllp.com
        jsunshine@lftcllp.com