**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stephanie Jones, Jonesworks LLC, | Case No.: Civ. Action No. 1:25-cv-00779-LJL |
| *Plaintiffs*, | |
| v. | |
| Jennifer Abel, Melissa Nathan, Justin Baldoni, Wayfarer Studios LLC, and John Does 1-10, | |
| *Defendants*. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS JENNIFER ABEL'S COUNTERCLAIMS AND CERTAIN AFFIRMATIVE DEFENSES

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 4

LEGAL STANDARD ...................................................................................................... 8

ARGUMENT ................................................................................................................... 8

I.  Abel's California Statutory Claims and Defenses Must be Dismissed Because Abel Agreed That New York Law Would Govern These Disputes....................... 8

  A.  The New York Choice-Of-Law Clause Is Valid and Enforceable .......... 9

  B.  New York Law Requires Dismissal of Abel's Counterclaims 1 Through 5 ......... 11

II. Abel's Tort Claims Must Be Dismissed ........................................................... 13

  A.  Abel Cannot Claim that Her Employer Looking at Work Texts on a Work Phone Invaded Her Privacy......................................................... 14

  B.  Abel's Distress, If Any, Arises From Being Caught Red-Handed And Does Not Give Rise to Tort Claims .......................................... 17

    1.  Abel Fails To Allege Legally-Cognizable Severe Emotional Distress......................................................................... 18

    2.  Abel Alleges No Extreme or Outrageous Conduct ................... 19

    3.  Abel's Negligence-Based Claim Fails Because She Alleges No Negligence Nor Specific Breach of Duty .................... 21

  C.  Abel's Fraud Claim Fails In Every Possible Way ................................ 22

  D.  Sitting Across a Conference Table from an Attorney to be Terminated for Misconduct Is Not False Imprisonment ..................... 24

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*ABB, Inc. v. Havtech, LLC*,
   112 N.Y.S.3d 713 (N.Y. App. Div. 2019) .................................................................. 12

*Alcorn v. Anbro Eng., Inc.*,
   2 Cal. 3d 493 (1970) ...................................................................................................... 20

*Angie M. v. Superior Court*,
   37 Cal. App. 4th 1217 (1995) ....................................................................................... 20

*Arrington v. Liz Claiborne, Inc.*,
   688 N.Y.S.2d 544 (N.Y. App. Div. 1999) ................................................................... 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 8, 17, 19, 21

*BDO Seidman v. Hirshberg*,
   712 N.E.2d 1220 (N.Y. 1999) ....................................................................................... 13

*BDO U.S.A., P.C. v. Rojas*,
   No. 24 Civ. 101 (CM), 2024 WL 3236822 (S.D.N.Y. June 27, 2024) ................ 9, 13

*Beckwith v. Dahl*,
   205 Cal. App. 4th 1039 (2012) ..................................................................................... 24

*Behnke v. State Farm Gen. Ins. Co.*,
   196 Cal. App. 4th 1443 (2011) ..................................................................................... 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (1955) ......................................................................................................... 8

*Brown v. Riverside Church in City of New York*,
   216 N.Y.S.3d 144, 152 (N.Y. App. Div. 2024) .......................................................... 20

*Capstone Logistics Holdings, Inc. v. Navarrete*,
   No. 17-CV-4819 (GBD), 2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018), *aff'd
   and remanded in part*, 796 F. App'x 55 (2d Cir. 2020) ........................................... 11

*Christensen v. Superior Court*,
   54 Cal.3d 868 (1991) ............................................................................................... 18, 19

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
   187 F.3d 229 (2d Cir. 1999) .......................................................................................... 22

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir. 1989)...................................................................................5

*Davidson v. City of Westminster*,
    32 Cal. 3d at 209...........................................................................................20

*Destfino v. Kennedy*,
    2008 WL 4810770 (E.D. Cal. Nov.3, 2008)...................................................20

*Destfino v. Reiswig*,
    No. CV-F-08-1269 LJO DLB, 630 F.3d 952 (9th Cir. 2011).........................20

*DiVittorio v. Equide Etractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987)........................................................................22

*Easton v. Sutter Coast Hosp.*,
    80 Cal. App. 4th 485 (2000).....................................................................24, 25

*Elite Phys. Services, LLC v. Citicorp Payment Services, Inc.*,
    No. 06 CIV. 2447 (BSJ), 2009 WL 10669137 (S.D.N.Y. Oct. 9, 2009) ................23

*Elson v. Consol. Edison Co. of New York*,
    641 N.Y.S.2d 294 (N.Y. App. Div. 1996) ....................................................24

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ........................................................................14

*Fellows v. Nat'l Enquirer*,
    42 Cal. 3d 234 (1986)....................................................................................17

*Fermino v. Fedco, Inc.*,
    7 Cal. 4th 701 (1994)...............................................................................24, 25

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
    414 F.3d 325 (2d Cir. 2005) ......................................................................9, 11

*Hamlett v. Santander Consumer USA Inc.*,
    931 F. Supp. 2d 451,457 (E.D.N.Y. 2013) ...................................................14

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009).............................................................................17

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996)............................................................................22

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ..................................................................................14

*Howell v. New York Post Co.*,
  612 N.E.2d 699 (N.Y. 1993) ........................................................................ 14

*Huggins v. Longs Drug Stores California, Inc.*,
  6 Cal. 4th 124 (1993) ............................................................................ 18, 21

*Hughes v. Pair*
  46 Cal. 4th 1035 (1993) ......................................................................... 19, 20

*Jackson v. Mayweather*,
  217 Cal. Rptr. 3d 234 (Ct. App. 2017) ...................................................... 17

*Janken v. GM Hughes Elecs.*,
  46 Cal. App. 4th 55 (1996) ........................................................................ 21

*Kelly–Zurian v. Wohl Shoe Co.*
  22 Cal. App. 4th 397 (1994) ...................................................................... 18

*Lanzi v. Brooks*,
  388 N.Y.S.2d 946 (N.Y. App. Div. 1976), *aff'd*, 373 N.E.2d 384 43 N.Y.2d
  778 (N.Y. 1977) ........................................................................................ 23

*Laub v. Faessel*,
  745 N.Y.S.2d. 534(N.Y. App. Div. 2002) ................................................... 24

*Lawler v. Montblanc N. Am., LLC*,
  704 F.3d 1235 (9th Cir. 2013) .................................................................... 21

*LGCY Power, LLC v. Superior Ct.*,
  75 Cal. App. 5th 844 (2022) ....................................................................... 12

*Lively v. Wayfarer Studios LLC*,
  No. 1:24-cv-10049 (S.D.N.Y.) ................................................................. 7, 10

*Lopez v. Trahan*,
  225 N.Y.S.3d 232 (N.Y. App. Div. 2025) ................................................... 18

*Mandarin Trading Ltd. v. Wildenstein*,
  944 N.E.2d 1104 (N.Y. 2011)..................................................................... 23

*Martin v. Citibank, N.A.*,
  762 F.2d 212 (2d Cir. 1985) ....................................................................... 20

*Mindspirit, LLC v. Evalueserve Ltd.*,
  346 F. Supp. 3d 552 (S.D.N.Y. 2018)...................................................... 9, 11

*Ministers & Missionaries Benefit Board v. Snow*,
  45 N.E.3d 917 (N.Y. 2015)...................................................................... 9, 11

*Nelson v. Tucker Ellis, LLP*,
    48 Cal. App. 5th 827 (2020) ................................................................................. 16

*New York Univ. v. Cont'l Ins. Co.*,
    662 N.E.2d 763(N.Y. 1995) ................................................................................. 23

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ................................................................................ 17

*Pacini v. Nationstar Mortg., LLC*,
    No. C 12-04606 SI, 2013 WL 2924441 (N.D. Cal. June 13, 2013) ....................... 17

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................. 15

*Parvi v. City of Kingston*,
    362 N.E.2d 960 (N.Y. 1977) ................................................................................. 24

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv.t Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ............................................................................ 8, 23

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ........................................................................................... 18

*Sanchez-Scott v. Alza Pharms.*,
    86 Cal. App. 4th 365 (2001) ................................................................................. 16

*Semore v. Pool*,
    217 Cal. App. 3d 1087 (1990) .............................................................................. 21

*Shroyer v. New Cingular*,
    622 F.3d 1035 (9th Cir. 2010) .............................................................................. 23

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ......................................................................................... 16

*Small v. Fritz Cos.*,
    30 Cal. 4th 167 (2003) ......................................................................................... 22

*Smith v. Allstate Ins. Co.*,
    160 F. Supp. 2d 1150 (S.D. Cal. 2001) ............................................................... 23

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017) ................................................................. 15

*Smith v. Lanza*,
    No. 21-CV-08785-JST, 2022 WL 20243472 (N.D. Cal. Apr. 18, 2022) ................ 21

*So v. Shin*,
    212 C.A.4th 652 (2013) ................................................................................................20

*Spence v. Maryland Cas. Co.*,
    995 F.2d 1147 (2d Cir. 1993) .....................................................................................21

*Stampf v. Long Island R.R. Auth.*,
    No. CV-07-3349 (SMG), 2010 WL 2517700 (E.D.N.Y. June 14, 2010) ...............21

*Stevens & Co. LLC v. Espat*,
    No. 24-CV-5223, 2025 WL 950989 (S.D.N.Y. Mar. 28, 2025) ..................3, 9, 10, 11, 12, 13

*Stewart v. Electrolux Home Prods., Inc.*,
    304 F. Supp. 3d 894 (E.D. Cal. 2018) ......................................................................23

*Stuto v. Fleishman*,
    164 F.3d 820 (2d Cir. 1999) ................................................................................18, 19

*Sunbelt Rentals, Inc. v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) .....................................................................15

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .....................................................................................22

*Takahashi v. Bd. of Trustees of Livingston*,
    783 F.2d 848 (9th Cir. 1986) .....................................................................................21

*TBG Ins. Services Corp. v. Sup. Ct.*,
    96 Cal. App. 4th 443 (2002) .....................................................................................15

*Truman v. Brown*,
    434 F. Supp. 3d 100 (S.D.N.Y. 2020) ......................................................................20

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014) ......................................................................................19

*United States v. Moseley*,
    980 F.3d 9 (2d Cir. 2020).......................................................................................9, 11

*Vail v. City of New York*,
    No. 18-CV-9169 (JPO), 2020 WL 127639 (S.D.N.Y. Jan. 10, 2020) .....................20

*Vogel v. Felice*
    127 Cal. App. 4th 1006 (2005) .................................................................................17

*Walia v. Holder*,
    59 F. Supp. 3d 492 (E.D.N.Y. 2014)....................................................................18, 21

*Wiener v. Unumprovident Corp.*,
  202 F. Supp. 2d 116 (S.D.N.Y. 2002) ......................................................... 18

*Willis Re Inc. v. Herriott*,
  550 F. Supp. 3d 68 (S.D.N.Y. 2021) ................................................. 9, 10, 12

*Wilson v. Houston Funeral Home*,
  42 Cal.App.4th 1124 (1996) ..................................................................... 24

## Statutes

California Labor Code Section 925 ................................................................. 12

Speak Out Act, 42 U.S.C. § 19401 *et seq.* ................................................. 16

## Other Authorities

Fed. R. Civ. P. 8 ........................................................................................... 20

Fed. R. Civ. P. 9(b) ...................................................................................... 22

Fed. R. Civ. P. 12(b)(6) .................................................................................. 8

## PRELIMINARY STATEMENT



*Stephanie Jones to Jennifer Abel* (Counterclaims ¶ 65)

In her soap opera script masquerading as counterclaims, Jennifer Abel follows a reactionary, dramatic, and immature—but sadly familiar—playbook of filing legally faulty and baseless claims as a vehicle for her self-serving public narrative. Abel's counterclaims are nothing but a master-class in dissembling and diversion: a "nothing is my fault" retort that seeks to avoid accountability for her unethical and unlawful actions revealed in Jonesworks' Complaint. Abel has no response for her duplicitous campaign to ruin Jones' reputation and steal Jonesworks' clients:



Dkt. 36, Defendant Jennifer Abel's Answer to Complaint, Counterclaims, and Jury Trial Demand ("Answer" and "Counterclaims"), at Answer ¶ 4. Instead, she resorts to hyperbolic fantasy—seeking to rewrite history with a series of falsities, attempted character assassination of Jones, and defamatory accusations about supposed "leaks" when, in reality, there was no leak. The text messages she wrote on a company phone were produced by the company in response to a lawfully delivered subpoena. Try as she might, Abel cannot distract from the reality that these text messages do not in fact reveal Abel's own private and personal information, but instead reveal a vicious campaign to "bury" and "destroy" Blake Lively on behalf of Justin Baldoni and Wayfarer Studios

and to "go[] to war" with Jones. And that these are text messages that she has now been forced to *admit* in this case that she and Nathan wrote. *See* Answer ¶¶ 55, 97. In other words, Abel is doing exactly what she intended all along and has now admitted in this case: "go[] out of J[ones]W[orks] with a BANG." *Id.* ¶ 97.

Notwithstanding Abel's hand-waving and false denials of wrongdoing, what is most revealing is what Abel now admits. Despite trying to distance herself from the *Business Insider* take-down piece against Jones, Abel now *admits* that she repeatedly "spoke with [*Business Insider* reporter Katie] Warren between July 30, 2024 and August 12, 2024," *id.* ¶ 78, *admits* that she went out of her way to ensure the article omitted the positive statement Baldoni and Wayfarer had previously written in support of Jones, *id.* ¶ 81, *admits* that she exchanged messages with Nathan the day before the article was published, including boasting with Nathan about the harmful effects it would have, *id.* ¶ 84:



and even *admits* that *Business Insider* writer Warren thanked her for helping with hit piece once it was published, *id.* ¶ 86:



She also **admits** that she entered into the 2021 Employment Agreement and worked under its terms—including reaping all the benefits it provided her—for more than three years. Counterclaims ¶¶ 25, 64. Having accepted an executive position of "Partner" with Jonesworks—and the compensation and benefits that went along with it—Abel cannot now avoid the obligations she agreed to in exchange—which included the reasonable and ordinary obligations to not steal or disclose Jonesworks' confidential information and not poach Jonesworks' employees and clients. Lacking any conceivable defense to her brazen violations of these obligations, and of her duties of loyalty to Jonesworks, Abel now seeks to argue that those obligations do not bind her. But they do. Having agreed to and obtained the benefits of her contract with her New York employer under New York law, and after flagrantly breaching it, Abel cannot renege on that agreement because she now sees strategic advantages in doing so. To the contrary, the Second Circuit and New York law routinely enforce the bargains that employees—like Abel here—willingly struck. Indeed, a mere two weeks ago, this Court expressly rejected a similar effort to use California statutes to override a New York contract—the very same tactic Abel attempts here. *Stevens & Co. LLC v. Espat*, No. 24-CV-5223, 2025 WL 950989, at *5 (S.D.N.Y. Mar. 28, 2025) (Liman, J.). So, too, should this Court reject Abel's tactics.

The smorgasbord of torts that Abel alleges also fail on their face. Not only does New York not even recognize the privacy-based torts Abel tries to allege, but no court has supported the theory that Abel advances: that she somehow had a legally recognized reasonable expectation of privacy against her employer in communications made on a company-owned phone. Simply put, Abel had no right to privately use her company phone to undermine and hide things from her employer, conduct a secret business for her own benefit against her employer's interests, and seek to harm her employer's public reputation and private business interests. And Jonesworks did

nothing wrong in retrieving that phone when it fired Abel and reviewing and producing its contents in response to legal process—which revealed, in Abel's own words, in black and white, in text after text, the clear evidence of outrageous misconduct that Abel now stands accused of. For this same reason, Abel's "false light" claims similarly cannot stick. Abel may wish that the world did not know about her unethical and unlawful acts, but the light that Abel has been cast in is unavoidably true.

The remainder of Abel's claims are equally infirm. Abel does not actually identify any specific acts that allegedly distressed her and could plausibly meet the extraordinarily high bar required to sustain a claim for infliction of emotional distress. Her promissory fraud claim too relies on impermissibly amorphous allegations of "harm," and also requires time travel, asserting that when Abel transferred her phone number to Jonesworks in 2020, she relied on alleged "promises" made in 2024. Abel's false imprisonment claim also collapses under its own weight and for good reason. A meeting with an employment lawyer in an office conference room to be terminated for stealing confidential documents could not be false imprisonment.

Having been finally called to account for her actions and having no viable defense, Abel has turned to defense by smokescreen. None of her counterclaims have legal merit, and the Court should dismiss them (and her corresponding affirmative defenses) in their entirety.

## FACTUAL BACKGROUND

Jonesworks LLC ("Jonesworks") is a well-known New York-based public relations and communications agency founded by Stephanie Jones, who is also its CEO. Counterclaims ¶¶ 3, 10. In addition to numerous athletes, business leaders, and companies, Jonesworks has represented a variety of entertainment clients, including Wayfarer and its co-founder, Baldoni. Answer ¶ 2.

Jennifer Abel is a public relations veteran with more than 16 years of experience. Counterclaims ¶ 13. In 2020, seeking to advance her own career, she moved from R&CPMK—

where she was just one of 53,000 employees—to New York-based Jonesworks—where she was entrusted with a leadership position in the firm's Los Angeles office. *Id.* ¶¶ 13-14, 17. Upon joining the company and accepting a company-purchased and -owned phone, Abel elected to transfer her phone number to that phone. *Id.* ¶ 68.

In 2021, Abel renegotiated the terms of her employment. *Id.* ¶ 25. This 2021 Employment Agreement expressly "supersede[d] all prior understandings, agreements, or representations by or among" Jonesworks and Abel, including the offer letter and non-disclosure agreement she signed when first joining the company.[1] 2021 Employment Agreement § 11.13. Although still legally an employee, she was referred to as a "Partner" and compensated as such. Counterclaims ¶ 65; 2021 Employment Agreement § 4. Abel's base salary increased from $160,000 to $180,000 per year, and she received additional annual cash bonuses and phantom equity in the form of a further bonus based on the distributions Jonesworks made to its members and a share of any proceeds if the company was sold. 2021 Employment Agreement. *Id.* §§ 4.1-4.2, 4.6-4.7. That is, Abel received the benefits of a partner without the burden of buying equity or taking on partnership risk.

Through the contract, Abel willingly agreed that any disputes she might have with Jonesworks, the New York-based company which she had joined, would be decided under New York law. *Id.* § 11.7. Abel also agreed to entirely routine terms commensurate with her elevated position, including that she not steal or divulge the company's trade secrets, *id.* § 6.1, not compete with Jonesworks while working for the company or for six months after leaving, *id.* § 6.2, and not

---

[1] Although Abel selectively and misleadingly quotes excerpts from her 2021 Employment Agreement in her counterclaims, by referencing that agreement, she incorporated it into her counterclaims and the Court can thus consider it in its entirety. *See, e.g., Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989).

try to poach Jonesworks' clients or employees, *id.* § 6.3. Abel expressly agreed that these covenants were reasonable, including their time limits and geographic scope. *Id.* § 6.7.

Abel's counterclaims are laden with histrionic complaints about all aspects of her employment at Jonesworks. Not only is this irrelevant, it is unsupported by reality. Abel worked at the company for more than four years, never voicing any of the concerns that she now pleads in the new version of revisionist history that populates her counterclaims. *See* Counterclaims ¶¶ 41-63. Abel devotes paragraphs to wholly-unsupported character assassination and baseless personal insults against Jones—none of which excuses her conduct or supports her claims—and which is also flatly contradicted by the communications that she herself cites in support, writing to Jones around the time of her prospective departure, *id.* ¶ 65:

> With all of this said, the facts remain—I respect you immensely. I feel so grateful for the opportunities you have given me with your premiere clients and how you have lifted me up as your partner. I would not have had the opportunity to be in many of the rooms that I have been in without you opening the door. This company you have built is exceptional, and I hold our teams with the highest regard. I know I didn't do it by myself, but I do take pride in what I have contributed to your LA office and the team I have been building and managing over the past four years, along with the new clients and opportunities I have procured.

In July 2024, Abel informed Jones of her intent to leave Jonesworks. *Id.* ¶ 64. At first, the planned departure was amicable, as Jonesworks arranged for Abel's transition and Abel made logistical arrangements for her departure—including, for the first time, asking that her phone number be released from the company's account. *See id.* ¶¶ 66-68. But in mid-August 2024, Jonesworks learned, after inquiring into suspicious file transfers on its computer systems, that Abel had been downloading dozens of proprietary documents from the company's systems to her personal laptop, which she had no reason or authorization to access let alone surreptitiously misappropriate. Jonesworks swiftly responded and, on August 21, 2024, with counsel, terminated Abel. *Id.* ¶ 69. To terminate Abel, Jonesworks took the common and reasonable step of requesting that Abel meet with its counsel and chief of staff, asked to review the personal laptop that she had been using for company business (which she agreed to in writing), and asked her to sign

termination forms (which she did, including falsely signing a statement that she had not retained any Jonesworks documents despite plain forensic evidence proving that she had been emailing documents to herself weeks before her termination). *Id.* ¶¶ 71, 73. Abel's allegations that employment paperwork made her "dissociate" and that a security guard was "blocking the exit" are as incoherent as they are fantastical: No one told her she could not leave (because she did not ask), no one ever prevented her from leaving (because she did not try), and no one engaged in anything but professional conduct; and Abel does not allege otherwise. *Id.* ¶¶ 70, 72. Indeed, Abel admits that the security guard was not even present in the room during her termination meeting. *Id.* ¶ 70. Abel admits that she walked into a conference room where no security guard was present, had a brief meeting with office personnel and counsel, signed paperwork, returned her company phone, and left. *Id.* ¶¶ 71, 75.

Continuing its inquiry into the proprietary documents that Abel had stolen, Jonesworks reviewed the phone and found messages revealing Abel spearheading a campaign to retaliate against Lively for her allegations of sexual harassment against Baldoni, and instigation of a campaign of destruction and defamation against Jones herself. Abel alleges that Jonesworks' review and ultimate revelation of the text messages was unlawful and invaded her privacy, including that Lively's publicist allegedly saw texts from Abel's phone and that her personal information was disclosed. *Id.* ¶ 92. Yet this is contradicted by Abel's admission that the texts were contained on a company-owned phone that she voluntarily relinquished on her termination as required, *id.* ¶¶ 68, 75, and by the fact that the text messages that have been publicly revealed through these legal filings were produced pursuant to a lawfully executed subpoena. *See* Compl., Dkt. 1, *Lively v. Wayfarer Studios LLC*, No. 1:24-cv-10049 (S.D.N.Y. Dec. 31, 2024). Furthermore, Abel specifically identifies no personal information of her own that she alleges was

revealed in violation of her privacy rights; instead, she complains that text messages revealed her

misconduct in participating in an unlawful retaliation campaign behind the back of her employer.

Counterclaims ¶¶ 97-98.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege

facts which, when taken as true, contain sufficient mater "to state a claim of relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (1955). "A pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Furthermore, allegations that do not

make sense and those that are "'naked assertion[s]' devoid of 'further factual enhancement,'" do

not have to be accepted on a motion to dismiss. *Pension Ben. Guar. Corp. v. Morgan Stanley Inv.t

Mgmt. Inc.,* 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

**I.    Abel's California Statutory Claims and Defenses Must be Dismissed Because Abel
Agreed That New York Law Would Govern These Disputes**

Abel's Counterclaims 1 through 5 seek to void her contractual agreement to New York law

and contractual restrictive covenants, based on the application of California statute and law.

Counterclaims ¶¶ 102-43. Abel's Affirmative Defenses 29 through 31 assert defenses on similar

grounds. Answer ¶¶ 197-99. Yet in exchange for receiving the enhanced benefits of an executive

role and "partnership" at Jonesworks, in her 2021 Employment Agreement, Abel agreed to a series

of corresponding obligations and restrictions, and that New York law would govern that contract

and any disputes relating to her employment. The contractual choice-of-law clause and restrictive

covenants are valid, enforceable and binding. Having accepted the benefits under that contract for

years, and now after having breached her corresponding obligations to Jonesworks, Abel seeks to

be instantly relieved of those obligations by eschewing the application of New York law to her New York contract with her New York employer. But New York law does not countenance that result, and Abel's Counterclaims 1 through 5 and Affirmative Defenses 29 through 31 must be dismissed.

### A.    The New York Choice-Of-Law Clause Is Valid and Enforceable

"The validity of a contractual choice-of-law clause is a threshold question that must be determined by the law of the forum"—in this case, New York. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin*., 414 F.3d 325, 332 (2d Cir. 2005); *Stevens & Co. LLC*, 2025 WL 950989, at *5. This Court recently articulated the standard that applies to determine the validity of a contractual choice-of-law provision under New York law: "a choice-of-law provision will be enforced if the chosen law 'has sufficient contacts with the transaction' and there is no 'fraud or violation of public policy.'" *Stevens & Co. LLC,* 2025 WL 950989, at *5 (citing *United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020)); *see also BDO U.S.A., P.C. v. Rojas*, No. 24 Civ. 101 (CM), 2024 WL 3236822, at *6 (S.D.N.Y. June 27, 2024) (recognizing that *Moseley* standard is binding on "every district court within the Circuit"). As this Court rightly noted, "this standard does not contemplate a wide-ranging conflicts analysis to determine the state that is most interested in the transaction, but rather a limited inquiry aimed largely at protecting the interests of New York and its courts, which is consistent with the emphasis in New York decisions on "stability, certainty, predictability and convenience." *Stevens & Co. LLC,* 2025 WL 950989, at *8 (internal quotations and citations omitted). Once this analysis has been satisfied, no further choice-of-law inquiry is required or appropriate. *Id*. at *8-9; *see also Ministers & Missionaries Benefit Bd*. *v. Snow*, 45 N.E.3d 917, 923 (N.Y. 2015); *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 92 (S.D.N.Y. 2021); *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 583 (S.D.N.Y. 2018).

Here, the New York choice-of-law clause in Abel's 2021 Employment Agreement is plainly valid and enforceable, as New York has plentiful contacts with Abel's employment and this dispute. As Abel alleges, "Jonesworks is a well-known New York-based public relations firm." Counterclaims ¶ 10. The Chief Executive Officer and Chief of Staff of Jonesworks are based in New York, and its headquarters and largest office is also in New York. *See id.* at ¶¶ 3, 7, 8. Abel concededly traveled to New York in the performance of her employment at Jonesworks. *Id.* ¶ 31. Abel has also affirmatively availed herself of the protections of this jurisdiction by electing to remove this case from New York Supreme Court to this Court, *see* Dkt. 1, and by initiating her own lawsuit in this Court against a host of defendants in a related case (which asserted numerous claims under New York law, and made a host of allegations relating to Jonesworks and her employment at Jonesworks). *See* First Am. Compl., Dkt. 50, *Lively v. Wayfarer Studios LLC*, No. 1:24-cv-10049 (S.D.N.Y. Jan. 31, 2025). She has now, again, availed herself of this forum by bringing the instant counterclaims in this Court. Counterclaims ¶¶ 152-96. Abel cannot avail herself of this forum when it suits her, yet seek to eschew its law when it does not.

Abel's own conduct and allegations in this case demonstrate amply sufficient New York contacts to enforce her contractual choice-of-law clause. *See Stevens & Co. LLC*, 2025 WL 950989, at *8 (contract had a reasonable relationship to New York, despite the former employee living and working in California, because the company was based in New York and the employee did some portion of his work for the company in New York); *Willis Re Inc.*, 550 F. Supp. 3d at 95 (sufficient contacts where company was based in New York and California-based employee reported to New York executive). This holds true despite the fact that Abel alleges that she resided in California during her employment and performed some of her work in California. Counterclaims ¶ 31. As this Court has recognized, and as New York's overriding deference to contractual choice-

of-law clauses underscores, where more than one jurisdiction might have an interest in the dispute, the parties' freedom to choose the governing law should be honored and that contractual choice upheld. *Stevens & Co. LLC*, 2025 WL 950989, at *8.

With regard to the standard's limiting principle, Abel does not allege (nor could she) that the 2021 Employment Agreement was the product of any fraud. *See* Counterclaims ¶¶ 25-29. And a litigant "cannot credibly claim that the application of New York law by a New York court would violate New York's public policy." *Mindspirit, LLC*, 346 F. Supp. 3d at 583–84 (internal quotations and citations omitted). New York public policy is not concerned with, nor trumped by, the public policy interests of other states—here, as Abel alleges, California. *See Stevens & Co. LLC*, 2025 WL 950989, at *9; *Capstone Logistics Holdings, Inc. v. Navarrete*, No. 17-CV-4819 (GBD), 2018 WL 6786338, at *22 (S.D.N.Y. Oct. 25, 2018), *aff'd and remanded in part*, 796 F. App'x 55 (2d Cir. 2020) ("[A] requirement that New York courts consider the fundamental public policy of a foreign law would swallow whole the *Ministers* holding that courts need not engage in conflicts analysis."). Where, as here, the contractual relationship that specifies New York law is with a New York employer, the public policy of New York does not preclude its enforcement. *Id*.

Because New York law "has sufficient contacts with the transaction" and there is no "fraud or violation of public policy" in its application here, *Moseley*, 980 F.3d at 20; *Stevens & Co. LLC,* 2025 WL 950989, at *5, no further choice-of-law analysis is required. *Ministers & Missionaries Benefit Board*, 45 N.E.3d at 923. The valid contractual choice-of-law clause mandating the application of New York law must therefore be applied.

### B.    New York Law Requires Dismissal of Abel's Counterclaims 1 Through 5

"[O]nce a court finds that a contractual choice-of-law clause is valid, the law selected in the clause dictates how the contract's provisions should be interpreted…." *Fin. One Pub. Co.*, 414 F.3d at 332. New York law therefore applies to the parties' contractual disputes. And applying

New York law requires the dismissal of Abel's Counterclaims 1 through 5 and Affirmative Defenses 29 through 31, each of which is premised on the superior application of California law over New York law.

Counterclaims 1 and 2 and Affirmative Defense 29 seek to apply California Labor Code Section 925 to void the contract's choice-of-law and forum selection provisions. But it is New York law, not California law, that applies to the interpretation of the contract. As explained above, New York law mandates the enforcement of the contractual choice of law and forum selection provisions. California law, which may call for the voiding of those provisions in certain circumstances, does not apply here.[2] And "New York law does not provide for consideration of the interests of other states when an agreement is governed by a clause selecting New York law." *Stevens & Co. LLC*, 2025 WL 950989, at *9. For this reason, courts have routinely held in similar situations that "[n]on–New York statutes do not invalidate contracts that chose New York law and are valid and enforceable under New York law." *ABB, Inc. v. Havtech, LLC*, 112 N.Y.S.3d 713, 714 (N.Y. App. Div. 2019); *see also Willis Re Inc.*, 550 F. Supp. 3d at 9092 ("[I]f New York choice-of-law rules call for the Court to apply New York law and the [ ] clauses are enforceable under that law, then [California law] would not come into the picture at all."). Counterclaims 1 and 2, and Affirmative Defense 29, must therefore be dismissed. *Stevens & Co. LLC*, 2025 WL 950989, at *10.

Counterclaims 3 through 5 and Affirmative Defenses 30 and 31 attack the contract's non-

---

[2]    Abel's self-help attempt to unilaterally void the clause (see Counterclaims ¶ 107) has no legal effect on its validity. This tactic is transparently pretextual and unavailing under both New York and California law. *See, e.g., Stevens & Co. LLC*, 2025 WL 950989, at *9 ("California policy does not provide grounds for a New York court to hold a contract unenforceable."); *LGCY Power, LLC v. Superior Ct.*, 75 Cal. App. 5th 844, 864 (2022) ("a violative clause does not become void simply by the employee declaring an intent to void it").

compete and non-solicitation provisions through the application of California law and public policy.[3] But it is well established that non-competition clauses and non-solicit clauses are valid and enforceable under New York law, so long as they are reasonable and "(1) [are] no greater than is required for the protection of the legitimate interest of the employer, (2) do[] not impose undue hardship on the employee, and (3) [are] not injurious to the public." *BDO USA, P.C.*, 2024 WL 3236822, at *5 (quoting *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999)). Indeed, Abel does not seek to avoid the contractual restrictive covenants on the ground that they are allegedly overly broad or unduly burdensome under *BDO* and its progeny. Instead, she alleges only that the restrictive covenants are voidable and illegal under California law and policy. This argument fails, because it is New York law and policy that applies to the contract terms and the parties' contractual dispute. See *Stevens & Company LLC*, 2025 WL 950989, at *10 ("Because New York law governs the contract, and there is no claim that New York law bars [plaintiff] from enforcing the non-compete provision, [plaintiff] cannot be liable merely for seeking to exercise [its] contractual rights.").

Abel's Counterclaims 1 through 5, and Affirmative Defenses 29 through 31, must therefore be dismissed.

## II.    Abel's Tort Claims Must Be Dismissed

The 2021 Employment Agreement's choice of law clause broadly calls for the application of New York law to the parties' performance of their roles in the relationship between Jonesworks

---

[3]    To the extent that Counterclaims 4 and 5 and Affirmative Defenses 30 and 31 also seek to void the contract's choice of law and forum selection provisions in reliance on the application of California law and public policy, they must be dismissed for the same reasons as Counterclaims 1 and 2.

and Abel. As such, New York law applies to Abel's remaining grab bag of tort claims, which uniformly fail, and would also fail even if California law were held to apply.

### A.    Abel Cannot Claim that Her Employer Looking at Work Texts on a Work Phone Invaded Her Privacy

Abel's invasion of privacy claims, Counterclaims 6 and 7, fail on their face. New York does not recognize common law privacy tort claims including, specifically, the two claims Abel brings here: intrusion upon seclusion and false light. *Howell v. New York Post Co.*, 612 N.E.2d 699, 703(N.Y. 1993) (In New York "the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights law; we have no common law of privacy."); *see also Hamlett v. Santander Consumer USA Inc.,* 931 F. Supp. 2d 451,457 (E.D.N.Y. 2013) ("New York has consistently refused to recognize a common law right of privacy … there is no … intrusion upon seclusion under New York law."). They must be dismissed for this reason alone.

Even under California law, Abel's claims still fall short. To state a claim for invasion of privacy under California law, Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is "'so serious ... 'as to constitute an egregious breach of the social norms'" such that the breach is "highly offensive." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). For a common-law claim of intrusion upon seclusion, "a plaintiff must plead that (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]' and (2) the intrusion 'occur[red] in a manner highly offensive to a reasonable person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez* 47 Cal. 4th at 286). "Courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook* 956 F.3d at 601. Abel does not approach either standard.

14

First, Abel admits that she voluntarily transferred her personal phone number to Jonesworks upon hiring and that her newly issued device with that phone number was a company-owned and controlled iPhone. Counterclaims ¶ 180. As a matter of well-settled law, Abel enjoyed no reasonable expectation of privacy in that Jonesworks phone. *See, e.g.*, *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1034 (N.D. Cal. 2014) (dismissing invasion of privacy claim because an employee could not "legitimately claim an expectation of privacy" in a company-owned phone); *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017) (no invasion of privacy claim can lie where a party manifests consent to another party having access to information).

Abel's conclusory allegation that she "had a reasonable expectation of privacy such that the contents of her personal cell phone would remain private" is of no moment because (1) courts rightfully reject such legal conclusions masquerading as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); and (2) Abel's bald allegation that the phone at issue was "personal" is incomprehensible in light of her admissions that the phone was owned by and returned to Jonesworks. *Compare* Counterclaims ¶ 146 (alleging invasion of Abel's "personal cell phone") *with id.* ¶ 68 (Abel "switched to a Jonesworks-issued iPhone"); ¶ 75 (Abel returns phone to Jonesworks on termination). Because both of Abel's invasion of privacy claims relate exclusively to the contents of a company-owned phone in which she enjoyed no reasonable expectation of privacy, her claims fail.

Second, even if Abel had a privacy interest in her company's phone, which she plainly does not, she fails to allege that Jonesworks acted in a way that was a "highly offensive" invasion of that privacy or an "egregious breach of social norms." *See, e.g.*, *TBG Ins. Services Corp. v. Sup. Ct.*, 96 Cal. App. 4th 443, 452 (2002) ("[T]he use of computers in the employment context carries

with it social norms that effectively diminish the employee's reasonable expectation of privacy with regard to the use of his employer's computers.").

At best, Abel alleges generally that her employer reviewed the contents of work communications sent on a company phone and disclosed those contents. *See* Counterclaims ¶ 97. But these text messages were produced pursuant to lawful subpoena, and California courts are clear that employer compliance with a legal subpoena is privileged and cannot constitute an invasion of privacy. *E.g. Nelson v. Tucker Ellis, LLP*, 48 Cal. App. 5th 827, 848 (2020). Even the single inflammatory, yet barren, allegation that Abel's private information was "leaked" based apparently on third- and fourth-hand information, Counterclaims ¶ 92, 98, alleges, at most, that Abel's employer made some disclosures regarding an illegal harassment and retaliation campaign undertaken during Abel's employment on her work phone to the targets of that harassment. This too does not rise to the level of highly offensive or egregious that would meet the standard.[4] *Cf., e.g., Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 237 (1998) (placing microphone on emergency medical rescuer to record conversations with patient without patient's knowledge could constitute highly offensive conduct); *Sanchez-Scott v. Alza Pharms.*, 86 Cal. App. 4th 365, 377-78 (2001) (presence of male drug salesperson during breast examination of female cancer patient without revealing his identity was highly offensive).

Third, Abel's false light claim fails for the additional and independent reason that she does

---

[4]  As detailed in Jonesworks' Motion to Dismiss the separate counterclaims brought by Abel's co-defendant, Wayfarer Studios, any such disclosure would also protected by the recently passed federal Speak Out Act, through which Congress has confirmed that there is a strong public policy in favor of encouraging and protecting the disclosure of information related to sexual harassment. *See* Speak Out Act, 42 U.S.C. § 19401 *et seq.* Any disclosure in furtherance of such public policy cannot possible be considered "highly offensive."

not allege any false or misleading disclosures.[5] "[A] false light claim that rests on the false nature of the publication is substantively equivalent to a libel claim based on the same publication." *Newcombe*, 157 F.3d at 694. "[W]ords constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." *Vogel v. Felice* 127 Cal. App. 4th 1006, 1017 n.3 (2005). Abel throws a single allegation at the wall: "Jones and Jonesworks publicly disclosed information or material regarding Abel's moral character and personal and professional life which showed Abel in a false light." Counterclaim ¶ 153. This merely parrots the tort in generic overstatement and is insufficient. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting *Iqbal*, 556 U.S. at 678)). The thrust of Abel's real complaint appears to be not that Jones said anything false about her, but that Jonesworks revealed ***Abel's own words*** to the public. Far from portraying her in a false light, the publication of her own text messages in her own words has painted her in the truth. Her privacy counterclaims should be dismissed.

## B.   Abel's Distress, If Any, Arises From Being Caught Red-Handed And Does Not Give Rise to Tort Claims

Abel's claims sounding in infliction of emotional distress (Counterclaims 8 and 9) also fail. To allege intentional infliction of emotional distress, Abel must allege (1) "extreme and outrageous conduct;" (2) intent to cause, or reckless disregard of the probability of causing, severe emotional

---

[5]   "Under California law, to state a claim for the tort of false light invasion of privacy plaintiff must plead that (1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, and (2) the publicity was offensive to a reasonable person*." Pacini v. Nationstar Mortg., LLC*, No. C 12-04606 SI, 2013 WL 2924441, at *9 (N.D. Cal. June 13, 2013) (citing *Fellows v. Nat'l Enquirer*, 42 Cal. 3d 234, 238-39 (1986)). "California courts have determined that a false light claim that rests on the false nature of the publication is substantively equivalent to a libel claim based on the same publication." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 (9th Cir. 1998). A false light claim requires that "the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Jackson v. Mayweather*, 217 Cal. Rptr. 3d 234, 256 (2017).

distress; (3) a causal connection; and (4) severe emotional distress. *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991). Negligent infliction of emotional distress requires allegations of: "(1) breach of a duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Walia v. Holder*, 59 F. Supp. 3d 492, 512 (E.D.N.Y. 2014); *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal. 4th 124, 129 (1993) (under California law, negligent infliction of emotional distress "is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply."). Because Abel utterly fails to allege the threshold elements of severe emotional distress or extreme and outrageous conduct, both claims must be dismissed. Her negligence-based claim also requires dismissal for failure to allege the required elements of negligence.

1.     Abel Fails To Allege Legally-Cognizable Severe Emotional Distress

Abel's emotional distress claims fail at the outset because she neglects to plead any sufficient severe emotional distress. "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993); *see also Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 122 (S.D.N.Y. 2002). Instances where courts have found this lofty standard to be adequately met include, for example, a plaintiff suffering anxiety, chest tightness, heart palpitations, panic attacks, depression, and insomnia and being diagnosed with post-traumatic stress disorder, *Kelly–Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 407 (1994), or "repeated visits to the emergency room for asthma, high blood pressure, and a panic attack." *Lopez v. Trahan*, 225 N.Y.S.3d 232, 235 (N.Y. App. Div. 2025).

Abel's rambling allegations, albeit hyperbolic, cannot meet this standard. She complains of certain alleged working conditions at Jonesworks, including Jones calling at late hours and reprimanding Abel in front of other employees, Counterclaims ¶¶ 58-59, despite conceding that she remained working there for more than four years and wrote to Jones ahead of her departure that: "I respect you immensely. I feel so grateful for the opportunities you have given me with your premiere clients and how you have lifted me up as your partner." *Id.* ¶ 65. She complains of being abruptly terminated by Jonesworks and that the manner of her termination—concededly being asked to meet in an office conference room with employment counsel and Jonesworks' chief of staff, sign some paperwork, and leave—caused her to "dissociate" and "fall into a state of shock." *Id.* ¶ 72. She complains about the public fall-out of her workplace misconduct being revealed through litigation and attendant press reports, even while she aggressively pursues this litigation on her own behalf. *Id.* ¶ 98. And she complains of the inconvenience of losing access to her mobile phone number, as well as certain accounts and contacts for a short period of time, when she had expected to retain access to that number. *Id.* ¶ 76-77. Even in the most permissive light, these allegations cannot sustain her claims. *See Hughes v. Pair*, 46 Cal. 4th 1035,1039 (2009) ("worry, anxiety, upset stomach, concern and agitation" do not constitute severe emotional distress). Her wholly conclusory allegations that she suffered "severe or extreme emotional distress and mental anguish," *see, e.g.,* Counterclaims ¶¶ 165, 176, cannot save the failure to specifically plead such distress. *Iqbal*, 556 U.S. at 663. These claims must be dismissed on this basis alone.

2.    Abel Alleges No Extreme or Outrageous Conduct

Intentional infliction of emotional distress claims are "highly disfavored" under New York law, *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014), and in any event require "extreme and outrageous conduct" under both New York and California law. *Stuto*, 164 F.3d at 827; *Christensen*, 54 Cal. 3d at 903. In New York, "[l]ike its intentional counterpart, a claim for

negligent infliction of emotional distress also requires that the defendant's conduct be extreme and outrageous." *Vail v. City of New York*, No. 18-CV-9169 (JPO), 2020 WL 127639, at *4 (S.D.N.Y. Jan. 10, 2020); *see Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020). To be sufficiently extreme or outrageous, the conduct alleged must "exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982); *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985); *Hughes*, 46 Cal. 4th at 1050-51. Illustrative examples of cases in which courts have found this standard to be met reveal that it is a high threshold. *See, e.g.*, *Angie M. v. Superior Court*, 37 Cal. App. 4th 1217, 1226 (1995); *Alcorn v. Anbro Eng., Inc.*, 2 Cal. 3d 493, 496-97 (1970); *So v. Shin*, 212 Cal. App. 4th 652, 671-73 (2013); *Brown v. Riverside Church in City of New York*, 216 N.Y.S.3d 144, 152 (N.Y. App. Div. 2024).

Abel does not allege any such extreme and outrageous conduct that would be sufficient to meet this required threshold to sustain her claims. Indeed, she does not even allege any specific, identifiable conduct in support of this claim ***at all***. Instead, she only vaguely invokes "[t]he misconduct of Jones and Jonesworks and its officers, directors, employees, and agents." Counterclaims ¶ 163. This alone justifies dismissal. *See Destfino v. Kennedy*, No. CV-F-08-1269 LJO DLB, 2008 WL 4810770, at *3 (E.D. Cal. Nov. 3, 2008), *aff'd sub nom. Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) (rejecting this "form of 'shotgun pleading' that violates Rule 8's requirement of a 'short and plain statement' and interferes with the court's ability to administer justice"). Apart from this, even the supposed misconduct by Jones and Jonesworks that Abel does allege does not approach the required threshold. Her allegations, at most, describe her discomfort with Jones' management style, under which Abel worked for four years taking on ever increasing responsibility and reaping the commensurate rewards. Counterclaims ¶¶ 56-60. The law affirmatively excludes much of this complained-of conduct from forming the basis for emotional

distress claims.[6] *See, e.g., Takahashi v. Bd. of Trustees of Livingston*, 783 F.2d 848, 851 (9th Cir. 1986) (termination as employee insufficient); *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) (managing personnel, even if improperly motivated, insufficient); *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (criticizing work performance insufficient); *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1158 (2d Cir. 1993) (same).

        3.    <u>Abel's Negligence-Based Claim Fails Because She Alleges No Negligence Nor Specific Breach of Duty</u>

Negligent infliction of emotional distress, under both New York and California law, is premised on the breach of a duty owed to a plaintiff. *See Walia* 59 F. Supp. 3d at 512; *Huggins* 6 Cal. 4th at 129. Again, Abel superficially recites the elements of this claim, but makes no specific allegation of what conduct by Jones or Jonesworks allegedly breached any duty owed by them as her employers, and how. Counterclaims ¶¶ 172-74. Much less does she allege any breach that either unreasonably endangered her physical safety or caused her to fear for her physical safety. *See id.* Her failure to allege the required elements of this claim with specificity dooms it to failure. *Iqbal*, 556 U.S. at 663 ("[t]hreadbare recitals of the elements" insufficient).

Further, a claim for negligent infliction cannot be premised on intentional conduct. Yet that is what Abel alleges: "Jones and Jonesworks…***intended*** to cause Abel emotional distress." Counterclaims ¶ 171 (emphasis added); *see Semore v. Pool*, 217 Cal. App. 3d 1087, 1105 (1990); *see also Smith v. Lanza*, No. 21-CV-08785-JST, 2022 WL 20243472, at *3 (N.D. Cal. Apr. 18, 2022); *Stampf v. Long Island R.R. Auth.*, No. CV-07-3349 (SMG), 2010 WL 2517700, at *12 (E.D.N.Y. June 14, 2010) (dismissing NIED claim based on alleged intentional conduct). Abel's

---

[6]    Abel does no more than sling baseless and disparaging allegations about Jones' sleep schedule, Counterclaims ¶ 59, attacking Jones' vindicated concern about Abel stealing clients, *id.* ¶ 58, and magically transforming a tarot card reader at a Jonesworks office party into an alleged "psychic," *id.* ¶ 60.

undisciplined throw-everything-at-the wall approach should not be permitted. She has failed to specifically plead any required element of intentional infliction of emotional distress, and a hand-waving claim of negligence, irreconcilable with intent, cannot mask her failure. These claims should be dismissed.

### C.    Abel's Fraud Claim Fails In Every Possible Way

Under either California or New York law, a claim for promissory fraud requires (1) that there was a material, false representation or promise; (2) made with knowledge of its falsity; (3) an intent to defraud or deceive, (4) that plaintiff reasonably relied upon; (5) causing the plaintiff damages. *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 239 (2d Cir. 1999); *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1452-53 (2011). Once again, Counterclaim 10 pleads none of the requisite elements. First, Abel fails to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Her vague allegation that "Jones and Jonesworks promised Abel that, notwithstanding her use of a Jonesworks-issued cell phone, Abel would retain possession of the actual phone number," Counterclaims ¶ 181, does not allege the who, what, when, where or how for the alleged promise, all of which Rule 9(b) requires. *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996); *see also DiVittorio v. Equide Etractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987); *Swartz v. KPMG LLP,* 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together.").

Second, to the extent the Counterclaims may be read to allege any specific statements, Abel's claimed reliance on those statements is facially implausible. Even taken in the light most favorable to Abel, she alleges at various points that Jonesworks promised that they would release her phone number prior to her termination. Counterclaims ¶¶ 182-83. Her fraud cause of action is silent as to what Abel allegedly did in reliance on this promise, *see id.* ¶¶ 179-90. *See Small v. Fritz Cos.*, 30 Cal. 4th 167, 184 (2003) ("[P]laintiff must allege actions, as distinguished from

unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations."); *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995) (must allege act taken in reliance). But even giving the Counterclaims yet another benefit of the doubt, Abel insinuates (but does not actually allege) that she transferred her phone number to the Jonesworks phone based on these promises. *See* Counterclaims ¶ 68. But that transfer took place in 2020, ***four years before the only alleged fraudulent promises***—a facially implausible allegation that cannot stand. *See Pension Ben. Guar. Corp.,* 712 F.3d at 717-18 (court must apply common sense to the plausibility of allegations).

Third, Abel must—but has not—"set out specific facts in [her] complaint demonstrating that defendants never intended to make good on any of the promises made." *Elite Phys. Services, LLC v. Citicorp Payment Services, Inc.*, No. 06 CIV. 2447 (BSJ), 2009 WL 10669137, at *6 (S.D.N.Y. Oct. 9, 2009); *see also Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) ("Although failure to perform a contract does not constitute fraud, a promise made without intention to perform can be actionable fraud."); *Lanzi v. Brooks*, 388 N.Y.S.2d 946, 947 (N.Y. App. Div. 1976), *aff'd*, 373 N.E.2d 384 (N.Y. 1977) ("Absent a present intent to deceive, a statement of future intentions, promises or expectations is not actionable on the grounds of fraud."); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011). Instead, she generically alleges that "[o]n information and belief, Jones and Jonesworks never intended to perform the promise." Counterclaims ¶ 185. Such vague conclusions are patently insufficient. *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 910 (E.D. Cal. 2018); *Shroyer v. New Cingular*, 622 F.3d 1035, 1042 (9th Cir. 2010) (Fraud "claims predicated on information and belief are not usually sufficiently particular….").

Finally, Abel's generic claim that she "was harmed" is insufficient for lacking any "nexus between [defendant's] alleged misrepresentations and [her] losses." Counterclaims ¶ 187; *Laub v. Faessel*, 745 N.Y.S.2d. 534, 537 (N.Y. App. Div. 2002); *see also Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012) (A plaintiff must have "suffered consequential damages…caused by the actions [the plaintiff] took in reliance on the defendant's misrepresentations."). Abel's paper thin fraud claim should be dismissed.

### D.    Sitting Across a Conference Table from an Attorney to be Terminated for Misconduct Is Not False Imprisonment

Abel likewise fails to allege a plausible false imprisonment claim (Counterclaim 11).[7] The restraint required for false imprisonment can be effectuated by an "exercise of force," the "express or implied threat of force," or by inflicting other forms of "unreasonable duress" on the victim. *Wilson v. Houston Funeral Home*, 42 Cal. App. 4th 1124, 1135 (1996); *see also Elson v. Consol. Edison Co. of New York*, 641 N.Y.S.2d 294, 295 (N.Y. App. Div. 1996) (finding dismissal of false imprisonment claim proper where plaintiff failed to make a prima facie showing of confinement). And a victim's physical confinement must be clearly alleged as must her contemporaneous protest. *See, e.g., Wilson*, 42 Cal. App. 4th at 1135; *Fermino v. Fedco, Inc.,* 7 Cal. 4th 701, 723 (1994) (plaintiff-employee stated a cause of action for false imprisonment where she was held in a windowless interrogation room for over an hour despite repeated requests to leave the room and call her mother and an attempt to leave that was blocked by the security guard); *c.f. Arrington v. Liz Claiborne, Inc.*, 688 N.Y.S.2d 544, 546-47 (N.Y. App. Div. 1999) (no false imprisonment

---

[7]    In California and similarly in New York, to maintain a cause of action for false imprisonment, the moving party must establish: (1) the "nonconsensual, intentional confinement of a person," (2) "without lawful privilege," (3) for an "appreciable period of time, however brief." *Easton v. Sutter Coast Hosp*., 80 Cal. App. 4th 485, 496 (2000); *see also Parvi v. City of Kingston*, 362 N.E.2d 960, 962-3 (N.Y. 1977) (similar elements under New York law).

where employees were questioned by company security and only "believed" door to office was locked and only "felt" that they were not free to leave).

Yet Abel's **sole** reference to restraints on her movement is that a "physically imposing security guard" was standing "just outside"—**never** inside—of the conference room where the group spoke, and was allegedly, but wholly non-specifically, "blocking the exit." Counterclaims ¶¶ 68-70. Abel does not allege, as she must, that she asked to leave or that she was told she **could not** leave; she does not allege that she attempted to leave or that anyone **stopped her,** or that anyone ever touched her. *Id*. Again, Abel merely asserts the legal conclusion—without any supporting facts—that Jonesworks "deprived Abel of freedom of movement by use of physical barrier, force, threat of force, menace and/or unreasonable duress" during the August 21, 2024 meeting at Jonesworks' office, which she concedes *she* solicited in the first place. Counterclaims ¶¶ 68-75, 192. These pleading failures are fatal to her claim.

This claim also fails independently under its second and third elements because Abel had stolen confidential documents and this imminent threat to company property justifies Jonesworks' actions. *See Fermino,* 7 Cal. 4th at 716 (finding that "merchants who detain individuals whom they have probable cause to believe are about to injure their property are privileged against a false imprisonment action" so long as the detention is "carried out for a reasonable time and in a reasonable manner."). Jonesworks' firing of Abel was done reasonably in time and manner, and Abel fails to allege otherwise. *See Easton*, 80 Cal. App. 4th at 496. The false imprisonment claim is therefore legally infirm and should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss Abel's counterclaims in their entirety with prejudice.

DATED:    April 10, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Kristin Tahler*

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Kristin Tahler
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
kristintahler@quinnemanuel.com

Maaren A. Shah
295 5th Avenue
New York, New York 10016
(212) 849-7000
maarenshah@quinnemanuel.com

Nicholas Inns (*pro hac vice*)
1300 I Street NW
Suite 900
Washington, D.C. 20005
(202) 538-8000
nicholasinns@quinnemanuel.com

*Attorneys for Plaintiffs Stephanie
Jones and Jonesworks, LLC*