**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stephanie Jones, Jonesworks LLC, | Case No.: Civ. Action No. 1:25-cv-00779-LJL |
| *Plaintiffs*, | |
| v. | |
| Jennifer Abel, Melissa Nathan, Justin Baldoni, Wayfarer Studios LLC, and John Does 1-10, | |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS WAYFARER STUDIOS LLC'S COUNTERCLAIMS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ...................................................................................................4

LEGAL STANDARD ..............................................................................................................8

ARGUMENT ...........................................................................................................................8

I.     Wayfarer's Breach of Contract Counterclaim Should Be Dismissed for Failure to State a Claim ................................................................................................................8

     A.     Wayfarer Fails to Plausibly Allege Any Breach by Plaintiffs ................................8

     B.     Wayfarer Fails to Plausibly Allege Any Harm It Suffered...................................13

     C.     Even If Wayfarer Plausibly Alleged Breach, Which It Has Not, the Speak Out Act Bars Enforcement of the Confidentiality Clause .....................................16

     D.     Wayfarer Has Not Alleged a Material Breach That Would Excuse Its Own Performance .......................................................................................................18

II.    Wayfarer's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed as Duplicative of Its Breach of Contract Claim............20

CONCLUSION.......................................................................................................................23

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Art Cap. Grp., LLC v. Carlyle Inv. Mgmt. LLC*,
  55 N.Y.S.3d 54 (N.Y. App. Div. 2017) ...................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................8, 19, 20

*Awards.com, LLC v. Kinko's, Inc.*,
  834 N.Y.S.2d 147 (N.Y. App. Div. 2007), *aff'd*, 925 N.E.2d 926 (N.Y. 2010) ....................15

*Bausch & Lomb Inc. v. Bressler*,
  977 F.2d 720 (2d Cir. 1992)...............................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................8

*Bluffs Homeowners' Ass'n v. Frador Mktg., Inc*,
  809 N.Y.S.2d 329 (N.Y. App. Div. 2006) ...................................................................19

*Boyce v. Soundview Tech. Grp., Inc.*,
  464 F.3d 376 (2d Cir. 2006)...............................................................................14

*Canzona v. Atanasio*,
  989 N.Y.S.2d 44 (N.Y. App. Div. 2014) ...................................................................9

*Cordero v. Transamerica Annuity Serv. Corp.*,
  39 N.Y.3d 399 (2023) ........................................................................................23

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)...............................................................................21

*Fasolino Foods Co. v. Banca Nazionale del Lavoro*,
  961 F.2d 1052 (2d Cir. 1992)..............................................................................21

*Gordon v. Dino De Laurentiis Corp.*,
  529 N.Y.S. 777, 779 (N.Y. App. Div. 1988) ...........................................................9

*Harris v. Provident Life & Acc. Ins. Co.*,
  310 F.3d 73 (2d Cir. 2002)................................................................................21

*James Wood Gen. Trading Establishment v. Coe*,
  297 F.2d 651 (2d Cir. 1961)...............................................................................13

*Joshi v. Trs. of Columbia University in New York*,
515 F. Supp. 3d 200 (S.D.N.Y. 2021)......................................................................15

*Kenford Co. v. Erie Cnty.*,
493 N.E.2d 234 (N.Y. 1986)...................................................................................14

*Lamoureux v. Trustco Bank*,
592 F. Supp. 3d 14 (N.D.N.Y. 2022).................................................................9, 13

*Lan Sang v. Ming Hai*,
951 F. Supp. 2d 504 (S.D.N.Y. 2013).....................................................................12

*Lively v. Wayfarer Studios LLC et al.*,
No. 1:24-cv-10049-LJL, ECF 1 ...........................................................1, 11, 17, 18

*Markatos v. Citibank, N.A.*,
No. 24-CV-0803, 2024 WL 5154487 (S.D.N.Y. Dec. 18, 2024) ...........................11

*Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*,
392 F.3d 520 (2d Cir. 2004).............................................................................13, 16

*Northwell Health, Inc. v. Lexington Insurance Company*,
550 F. Supp. 3d 108 (S.D.N.Y. 2021).....................................................................11

*Oakley v. Morton*,
11 N.Y. 25 (N.Y. 1854) ...........................................................................................18

*Parker Waichman LLP v. Squier, Knapp & Dunn Commc'ns, Inc.*,
28 N.Y.S.3d 603 (N.Y. App. Div. 2016) ................................................................10

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013).................................................................................8, 11

*Sebro Packaging Corp. v. S.T.S. Industries*,
461 N.Y.S. 2d 812 (N.Y. App. Div. 1983) ..............................................................12

*Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*,
706 F. Supp. 3d 409 (S.D.N.Y. 2023).....................................................................15

*VFS Fin., Inc. v. Falcon Fifty LLC*,
17 F. Supp. 3d 372 (S.D.N.Y. 2014)........................................................................18

*Wallert v. Atlan*,
141 F. Supp. 3d 258 (S.D.N.Y. 2015)......................................................................11

*Wilder v. World of Boxing LLC*,
310 F. Supp. 3d 426 (S.D.N.Y. 2018), *aff'd*, 777 F. App'x 531 (2d Cir. 2019).....................16

*Zink v. Mark Goodson Prods., Inc.*,
    689 N.Y.S.2d 87 (N.Y. App. Div. 1999) .............................................................15

*Zurich American Life Insurance Co. v. Nagel*,
    590 F. Supp. 3d 702 (S.D.N.Y. 2022)....................................................................13

## **Rules / Statutes**

42 U.S.C. § 19401(6)...............................................................................................17

42 U.S.C. §§ 19401–4..........................................................................................2, 16

42 U.S.C. § 19402(1)...............................................................................................16

42 U.S.C. § 19402(4)...............................................................................................16

42 U.S.C. § 19403(a)..........................................................................................16, 18

Fed. R. Civ. P. 12(b)(6).............................................................................3, 8, 12, 13, 16

Fed. R. Civ. P. 8................................................................................................12, 20

## **Other Authorities**

168 Cong. Rec. H8518-25 ........................................................................................17

168 Cong. Rec. H8519 (daily ed. Nov. 16, 2022) ......................................................16

## PRELIMINARY STATEMENT

Wayfarer's counterclaims are devoid of any footing in the law or reality, and serve only as a transparent vehicle to vent Wayfarer's anger over the exposure of its co-founder Justin Baldoni's well-publicized sexual harassment of co-star Blake Lively, and Wayfarer's own direct involvement in the retaliatory, vindictive smear campaign that followed. Irate not at Baldoni's wrongdoing, but that it was widely covered in the press, Wayfarer now seeks to punish those who brought the truth to light, baldly and improperly pinning the blame on Jonesworks and its founder Stephanie Jones under the false pretext of alleged "leaks." But far from a victim, Wayfarer was a principal actor in a covert, calculated scheme to not only sabotage Lively in the press, but also Jonesworks from within: colluding with a rogue employee and ultimately jumping ship without justification and refusing to pay Jonesworks in violation of plain contractual commitments. Wayfarer's counterclaims seek to deflect the spotlight from its starring role, alongside former Jonesworks employee Jennifer Abel, in a coordinated effort to further its severe damage to Jonesworks' business, defame Jones, and induce the breach of multiple contracts.

Even pausing to consider Wayfarer's counterclaims on their own terms reveals that they do not approach stating a viable claim for relief. Wayfarer's breach of contract counterclaim primarily rests on specious allegations that Jones and Jonesworks leaked "confidential information" in breach of the services agreement between Jonesworks and Wayfarer. This fails on numerous fronts. First, there was no leak. "Confidential Information" as defined in the agreement excludes "information (a) which is or later becomes publicly available through no wrongful act of Company." Dkt. 39-1 at 3. That is exactly what occurred here: information was produced pursuant to a subpoena. *See* Complaint, Dkt. 1-1 ¶ 14; Complaint, *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL, Dkt. 1 ¶ 9 n.3. Wayfarer willfully avoids this reality to advance its publicity-seeking leak narrative, but it cannot change the subpoena. Second, Wayfarer admits in

its counterclaims that the information produced was "*Abel's private communications*," not Wayfarer's confidential information.[1] Dkt. 39 ¶ 51. This alone is self-defeating of its breach of contract claim. Third, Wayfarer's false allegations are hopelessly vague as Wayfarer fails to allege what any purported "confidential" information actually *was*. This is for good reason. Under no construction could information exposing a vindictive sexual harassment and retaliation conspiracy, primarily orchestrated by Abel and Melissa Nathan working to "bury" and "destroy" Lively, constitute Wayfarer information subject to protection. Finally, Wayfarer's counterclaims attempt to wield the confidentiality provision of the services agreement between Jonesworks and Wayfarer to suppress disclosures concerning Lively's harassment at the hands of Wayfarer's co-founder, as well as the company's own role in the ensuing retaliation campaign—while punishing Jones and Jonesworks for cooperating with a legal process that brought those facts to light. This effort is squarely prohibited by the federal Speak Out Act, which prohibits the enforcement of pre-dispute nondisclosure clauses in matters involving sexual harassment and retaliation, and, accordingly, renders the confidentiality clause of the Wayfarer agreement unenforceable.

The irony is thick: Wayfarer does not deny the public scrutiny of Baldoni due to his mistreatment of women, the ensuing smear campaign against Lively in the wake of such mistreatment, and the public reporting of the smear campaign and its genesis. It does not take issue with Baldoni's gross mistreatment of Lively. Instead, Wayfarer cries foul that the campaign came to light and seeks to punish and retaliate against Jones and Jonesworks for compelled disclosures. This effort to chill disclosure, shift blame, and distance itself from its own conduct and its co-

---

[1]    As Jones and Jonesworks' contemporaneously filed motion to dismiss the Abel counterclaims makes clear, Abel had no right or expectation of privacy in the communications from her company phone, nor were the communications revealing multiple smear campaigns private or personal communications.

founder's blatant harassment is offensive. Wayfarer and Baldoni must be held to account for their acts, and their agreement with Jonesworks cannot overcome the law to prevent that.

Wayfarer also alleges that Jones "failed to render services 'in a professional manner and in accordance with [Wayfarer's] goals,'" despite the counterclaims themselves making it clear that Jones worked tirelessly on Baldoni and Wayfarer's behalf to pursue a positive agenda in seeking to counteract negative press about Baldoni—press that stemmed from Baldoni's own wrongdoing, which Wayfarer even admits was unbeknownst to Jones at the time. Dkt. 39 ¶ 62. Wayfarer's breach of contract claim also fails because it unilaterally—and wrongfully—purported to terminate the very agreement it now accuses Jones and Jonesworks of breaching. In August 2024, months before the agreement's end date, Wayfarer purported to cut ties with Jonesworks without providing the requisite notice or opportunity to cure, and then ceased paying its monthly fees to Jonesworks in blatant violation of its contractual obligations. Its counterclaim hinges on the legally untenable theory that its own non-performance was excused, despite offering no factual allegations establishing a material breach by Jones or Jonesworks that could remotely justify such termination or non-performance. In short, Wayfarer has failed to plausibly plead a breach of contract claim to withstand a Rule 12(b)(6) motion to dismiss.

Wayfarer's implied covenant of good faith and fair dealing counterclaim fares no better. It is duplicative of its breach of contract claim, premised on the exact same factual allegations, and it invents an implied duty that does not exist. Wayfarer has not alleged that the agreement was not performed in good faith. Instead, Wayfarer has alleged a misguided breach of contract claim, which fails for the parade of reasons set forth above and herein. Under well-settled New York law, a separate implied covenant claim must be dismissed.

Wayfarer's counterclaims are not just meritless—they are retaliatory. They are a shameless

attempt to create the classic smokescreen and shift the limelight from Wayfarer and its CEO's bad acts. Wayfarer actively participated in and facilitated a campaign to destroy Lively, Jones, and Jonesworks, and now seeks to evade their legal obligations to Jones and Jonesworks through faulty counterclaims. Wayfarer's gambit should not be countenanced, and the Court should dismiss the counterclaims with prejudice.

## FACTUAL BACKGROUND

Jonesworks LLC ("Jonesworks") is a public relations and communications agency founded by Stephanie Jones, who is also its CEO. Defendant Wayfarer Studios LLC's Answer to Complaint, Counterclaims, and Jury Trial Demand, Dkt. 39, ¶ 10.[2] Jonesworks has represented a variety of entertainment clients, including Wayfarer Studios LLC ("Wayfarer") and its co-founder, actor and director Justin Baldoni. *Id.* ¶¶ 11, 13, 18.

In May 2020, Wayfarer and Jonesworks entered into a written services agreement (the "Agreement"). Dkt 39-1. Pursuant to the Agreement, Wayfarer agreed to pay Jonesworks a monthly fee of $20,000 in exchange for Jonesworks' provision of public relations and communications services, and an additional $5,000 per month for services provided to Baldoni. Dkt. 39 (Answer) ¶ 40; Dkt. 39 ¶¶ 13, 14; Dkt. 39-1 at 1.

The Agreement states that Jonesworks will be Wayfarer's "exclusive public relations counsel to provide strategic communications services as described on the attached Schedule A (the 'Services')." Dkt. 39 at 1. Schedule A to the Agreement enumerates various such services to be provided by Jonesworks, including "manag[ing] media and press communications," "[a]dvis[ing] on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities

---

[2]    Unless expressly indicated, citations to Dkt. 39 and the paragraphs therein will refer to Wayfarer's counterclaims.

are maximized, and the strongest press angles aligned," "[d]evelop[ing] a 12-month media and communications strategy to further drive awareness," "[c]onduct[ing] proactive feature pitching to top-tier print, broadcast and online media outlets," and "[c]onduct[ing] media monitoring and competitor tracking for industry press." *Id.* at 5. The Agreement further sets forth that "[Jonesworks] shall provide the [strategic communications services] in a professional manner and in accordance with the goals mutually established by [Wayfarer] and [Jonesworks]." *Id.* at 1.

The Agreement also provides:

> Throughout [Wayfarer's] engagement of [Jonesworks] hereunder, [Wayfarer] may disclose or provide [Jonesworks] with confidential, proprietary and/or sensitive information about [Wayfarer], its customers or other related parties ("Confidential Information"). [Jonesworks] shall use reasonable and diligent efforts to keep Confidential Information confidential provided that [Jonesworks] may disclose such information to third parties to the extent necessary to fulfill its obligations under this Agreement or to its legal representatives. [Jonesworks] shall not use such information for any purpose beyond the performance of [Jonesworks'] services hereunder unless otherwise required by law or a court of competent jurisdiction . . . Notwithstanding the foregoing, [Jonesworks] is not liable for any third party's disclosure of [Wayfarer's] Confidential Information so long as such third party did not obtain the Confidential Information as a result of [Jonesworks'] breach or failure to uphold its obligations hereunder.

*Id.* at 3.

In mid-2024, Jonesworks and Jones were providing public relations services for Wayfarer and Baldoni in connection with the forthcoming movie *It Ends With Us*, starring and directed by Baldoni and produced by Wayfarer. Dkt. 39 ¶¶ 19, 32. As the premiere drew closer, Wayfarer and Baldoni found themselves in a public relations crisis, with news outlets speculating about possible tension between Lively and Baldoni, fueled in part by the *It Ends With Us* cast unfollowing Baldoni on social media. *Id.* ¶ 32. Jonesworks employee Jennifer Abel was Jonesworks' point person on the Wayfarer account, entrusted with the role by Jones, given Abel's seniority and experience. *Id.* ¶ 27. Although not running point, Jones regularly participated in meetings, calls, and written correspondence. *Id.* ¶¶ 10–11, 13, 27, 32. Jones, however, was pursuing a positive agenda, while,

unbeknownst to her, Abel and Melissa Nathan were running a shadow campaign for Wayfarer and Baldoni to take down Lively. *Id.* ¶ 46.

On August 8, 2024, a reporter from the *Daily Mail* informed Abel and Jones that she was "working on a story surrounding the recent rumors that there was a feud between It Ends With Us costars Blake Lively and Justin Baldoni" based on "[p]eople on social media [] talking about how they didn't pose together at the premiere or do any press together." *Id.* ¶ 40. Upon receiving the message, which was after the story was published, Jones offered to call the reporter, whom she knew, to let her know that "this is a nothing burger" and to "get this fixed" since the reporter "has been nice and fixed things for us in the past." *Id.* Jones thereafter informed Wayfarer CEO Jamey Heath and Baldoni via email that she "left word" for the reporter, having returned a missed called believed to be (but not in fact) the reporter's. *See id.* Jones never called or connected with the Daily Mail reporter. *See id.* ¶ 45.

Jones' press strategy focusing on "promot[ing] positive narratives," however, was not aligned with Wayfarer's secret agenda of taking down Lively. *Id.* ¶ 46. Accordingly, Wayfarer and Baldoni told Jones to stand down, while Abel and Nathan, whom Baldoni had hired to manage his crisis public relations, falsely informed Sony, the studio distributing *It Ends With Us*, and Leslie Sloane, Lively's publicist, that Jones had leaked information and was "communicat[ing] negatively to media." *Id.* ¶ 40–41. This was abjectly false, as Jones confirmed at the time to Wayfarer's president, Tera Hanks: she never leaked ***any information*** about Baldoni or Wayfarer to the *Daily Mail* or ***any other outlet***. *Id.* ¶ 45. Nevertheless, falsely accused and seeking to quash the perpetuation of a false narrative, Jones naturally contacted Sony to inform them that she did not do so. *Id.* ¶ 43.

Throughout August 2024, and as coverage of the apparently strained relationship between

Baldoni and the *It Ends With Us* cast continued to mount, Jones advised Wayfarer on a positive approach in navigating the public relations fallout, particularly given that, in her view, Baldoni was "not being represented in these stories," as she informed Hanks. *Id.* ¶ 45. She told Hanks that, accordingly, they "have to fight for every story." *Id.* Jones also told Hanks that she "never leaked anything to any outlet," and even sent Hanks her phone records to show that she did not call the *Daily Mail* or any other media source. *Id.* Jones reiterated that her goal was "to help [Baldoni] and Wayfarer." *Id.*

Consistent with the Agreement and the Services provided by Jonesworks thereunder, on August 14, Jones emailed Heath a recommended media strategy. Jones proposed, among other things, "Flood[ing] the Zone with Positives" to "ensure that we promote positive narratives that media outlets cannot ignore." *Id.* ¶ 46. And as word of Baldoni's harassment towards Lively continued to spread—including in an August 14, 2024 TMZ article titled "Blake Lively Felt Justin Baldoni Fat-Shamed Her, Kissed Too Long During Scene"—Jones offered to contact Harvey Levin, the founder of TMZ, "to get this story fixed/removed if Melissa [Nathan] cannot" in furtherance of the goal of "work[ing] as a team and collectively to tackle the influx the stories…." *Id.* Heath, having adopted the opposite covert strategy to smear Lively, rejected Jones' recommendations and thereafter emailed Jones instructing that she "not respond, contact, or do anything as it pertains to Justin or Wayfarer." *Id.*

On August 21, 2024, Abel was terminated from Jonesworks. *Id.* ¶ 48.

In August 2024, Wayfarer purported to unilaterally terminate the Agreement, advising Jonesworks that the termination would be effective "as of the end of August." *Id.* ¶ 56. Wayfarer's notice to Jonesworks did not provide a legitimate reason for terminating the Agreement, or cite to any provision of the Agreement that was purportedly breached by Jonesworks in seeking to justify

the termination. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege facts which, when taken as true, contain sufficient matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Furthermore, allegations that are nonsensical, as well as assertions that omit critical facts, do not have to be accepted on a motion to dismiss. *See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013) ("Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Wayfarer's threadbare and speculative allegations do not support any legally cognizable claim and must be dismissed under Rule 12(b)(6).

## ARGUMENT

I.    **Wayfarer's Breach of Contract Counterclaim Should Be Dismissed for Failure to State a Claim**

Wayfarer's counterclaim for breach of contract must be dismissed because it fails to adequately allege a material breach by Jones or Jonesworks, fails to identify any specific misconduct undergirding any such breach, and relies on speculative and conclusory assertions unsupported by well-pleaded facts.

### A.    **Wayfarer Fails to Plausibly Allege Any Breach by Plaintiffs**

Wayfarer's breach of contract counterclaim fails because it does not identify with any level of specificity how Jones or Jonesworks breached the parties' Agreement. To sufficiently state a breach of contract claim, a plaintiff must allege both "the provisions of the contract that were

breached" and how those provisions were violated. *Canzona v. Atanasio*, 989 N.Y.S.2d 44, 47 (N.Y. App. Div. 2014); *see also Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 36–37 (N.D.N.Y. 2022) ("Merely attaching a contract does not allege a breach of its terms—the complaint must identify the contractual obligation that was breached and allege how.").

Wayfarer fails on both fronts. Wayfarer's counterclaims assert, in conclusory fashion, that Jonesworks breached the Agreement by sharing Wayfarer confidential information and failing to follow unspecified instructions. Dkt. 39 ¶¶ 26, 49. Both breach theories rest on pure conjecture and speculation with allegations that are too vague and specious to state a claim. For one, Wayfarer does not identify a single piece of concrete, confidential information Jones or Jonesworks allegedly improperly disclosed, or how any such disclosure constituted a breach of any contractual language. And allegations concerning Jones and Jonesworks' purported misuse of Wayfarer's confidential information in Wayfarer's sprawling counterclaims are sparse.

In sum, Wayfarer alleges that "Jones had apparently [] gone through [Abel's phone] and shared confidential information relating to Wayfarer and Baldoni with" Sloane and "other third parties." *Id.* ¶ 49. Wayfarer never states ***what***, exactly, this purportedly "confidential information" was, which in and of itself is fatal to its breach of contract claim. *See, e.g.*, *Art Cap. Grp., LLC v. Carlyle Inv. Mgmt. LLC*, 55 N.Y.S.3d 54, 55 (N.Y. App. Div. 2017) (dismissing claim asserting breach of a confidentiality agreement where plaintiff did "not identify what confidential information was allegedly misused" and made only vague and conclusory allegations concerning any improper disclosure); *Gordon v. Dino De Laurentiis Corp.*, 529 N.Y.S. 777, 779 (N.Y. App. Div. 1988) (dismissing breach of contract claim concerning improper disclosure of confidential information where plaintiffs failed to identify the substance of "any confidential information

imparted to defendant" and "boilerplate," "vague," and "conclusory allegations [were] insufficient to sustain a breach of contract cause of action").

What is clear from Wayfarer's counterclaims, however, is that Jones did not leak any confidential information to third parties or the press; Wayfarer pleads nothing concrete to the contrary. To the extent Wayfarer attempts to suggest that Jones disclosed Abel's text messages to Sloane, this averment is baseless and wholly unsupported by the counterclaims. First, Wayfarer fails to allege what these text messages actually contained or how—if at all—they involved confidential information relating to Wayfarer. Second, this suggestion is premised on multiple layers of speculation, none of which even purport to involve Jones or Wayfarer directly: allegedly, according to the counterclaims, Wayfarer's co-defendant Nathan said that Sloane said that Sloane "had seen" (the counterclaims conveniently employ passive voice here) Abel's unspecified text messages. Dkt. 39 ¶ 42. From this vague chain of second-, third-, and fourth-hand statements, Wayfarer leaps to the unfounded conclusion that Jones must have leaked confidential information about Wayfarer to Sloane. This is pure speculation and not a plausible basis for a legal claim. *See Parker Waichman LLP v. Squier, Knapp & Dunn Commc'ns, Inc.*, 28 N.Y.S.3d 603, 603 (N.Y. App. Div. 2016) ("The complaint's boilerplate allegations that defendants disclosed confidential information, thereby causing harm, are too vague and conclusory to sustain a breach of contract cause of action. Moreover, the complaint failed to allege how the alleged breach caused any injury.").

Wayfarer also fails to tether any alleged disclosure to the language of the Agreement. The Agreement's confidentiality provision is narrowly drawn: it obligates Jonesworks only to "use reasonable and diligent efforts to keep Confidential Information confidential," and expressly permits disclosure "to third parties to the extent necessary to fulfill its obligations under this

Agreement or to its legal representatives." Dkt. 39 ¶ 63; Dkt. 39-1 at 3. Wayfarer never alleges that any disclosure fell outside these limits. It does not contend that the information disclosed was not "necessary to fulfill" Jonesworks' obligations, or that it was shared for a prohibited or illegal purpose, or that it was not already known to third parties. *Id.* Nor does it allege that any information even qualified as "Confidential Information" as defined under the Agreement,[3] or that it was not excused per the Agreement, which excludes form the definition of "Confidential Information," material "(a) which is or later becomes publicly available through no wrongful act of Company."[4] Courts routinely dismiss breach of contract claims where, as here, the pleading fails to connect allegations of wrongdoing to the operative contract's actual terms. *See Markatos v. Citibank, N.A.*, No. 24-CV-0803, 2024 WL 5154487, at *10 (S.D.N.Y. Dec. 18, 2024) (dismissing breach of contract cause of action where plaintiff's naked claim that defendant breached the at-issue agreement was "a legal conclusion couched as a factual allegation, and the Complaint does not provide factual allegations sufficient to infer that Defendant breached said duty"); *Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 115 (S.D.N.Y. 2021) ("[A]llegations that merely parrot the language of the contractual provisions alleged to be breached without providing supporting facts are not presumed true."); *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015) ("Merely attaching a contract does not allege a breach of its terms—the complaint must identify the contractual obligation that was breached and allege how.").

---

[3]    Dkt. 39-1 at 3 (defining "Confidential Information" as "confidential, proprietary and/or sensitive information about Client, its customers or other related parties").

[4]    Wayfarer's conclusory assertion that information was not disclosed pursuant to subpoena is plainly insufficient and fails to grapple with contrary averments in legal pleadings that information was provided pursuant to subpoena. *See* Dkt. 1-1 ¶ 14; Complaint, *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL, Dkt. 1 ¶ 9 n.3; *see also Pension Ben. Guar. Corp.*, 712 F.3d at 717–18 ("Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.")

Wayfarer's fallback allegation of breach—that Jones and Jonesworks somehow breached the Agreement by failing to "follow instructions"—fares no better and does not salvage its claim. Dkt. 39 ¶ 26. The counterclaim offers no detail about what "instructions" were purportedly given, who gave them, when, or in what context, how Jones or Jonesworks did not "follow" them, and how this constituted a breach of the Agreement. *Id.* ¶¶ 25–26, 49–50. Indeed, Wayfarer does not point to a single provision in the Agreement that required Jonesworks to obey its "instructions" at all—because no such obligation exists. Instead, the Agreement requires that Jonesworks provide services to Wayfarer "in a professional manner and in accordance with the goals mutually established by [Wayfarer] and [Jonesworks]." Dkt. 39 ¶ 15; Dkt. 39-1 at 1. Wayfarer does not allege any facts intimating that Jonesworks failed to perform its services in a professional manner, or that it disregarded any mutually established goals. Nor does it identify a single deliverable, deadline, or metric of performance that Jonesworks allegedly failed to meet. *See Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 527 (S.D.N.Y. 2013) ("Without stating which specific terms of the contract have been breached, a complaint fails to provide the defendant with sufficient notice to defend the claim. Because Plaintiff's breach of contract claim lacks the specificity required by Rule 12(b)(6) and Rule 8, the claim must be dismissed."); *Sebro Packaging Corp. v. S.T.S. Indus.*, 461 N.Y.S. 2d 812, 812 (N.Y. App. Div. 1983) (dismissing breach of contract claim where "complaint failed to set forth the nature of the contractual obligation alleged to have been violated . . . or the nature of the claimed breach."). To the contrary, Wayfarer's counterclaims themselves allege numerous facts showing Jones and Jonesworks acting in furtherance of the Services set forth in the Agreement—many of which involve developing and executing a press strategy—including where Jones offers to contact multiple reporters authoring potentially negative

stories about Baldoni, and where she sends Wayfarer a multi-point strategy to combat Baldoni's unfavorable media coverage.[5] Dkt. 39 ¶¶ 40, 46.

In short, Wayfarer's breach of contract counterclaim contains no factual allegations that would support a breach of any specific, enforceable contractual duty. It is built instead on speculation, inference, and generalities—alleging a breach not of the Agreement, but of vague, ambiguous, and ever-shifting requirements never memorialized. That is not enough. *See Lamoureux*, 592 F. Supp. 3d at 36–37 (dismissing claim where party failed to link conduct to contract terms). Wayfarer's counterclaim must be dismissed under Rule 12(b)(6).

### B.    Wayfarer Fails to Plausibly Allege Any Harm It Suffered

Even if Wayfarer had identified a breach of the Agreement—which it has not—it still fails to allege any non-speculative damages resulting from that alleged breach. Under New York law, a plaintiff must plead not only a cognizable contractual breach, but also that it suffered actual, proximate, and non-conclusory damages flowing from that breach. *See Zurich American Life Insurance Co. v. Nagel*, 590 F. Supp. 3d 702, 718 (S.D.N.Y. 2022) ("To establish actual damages, plaintiffs must come forward with evidence to establish the existence of actual damages that they suffered that were directly and proximately caused by [defendant's] breach. Speculative or conjectural theories of damage are insufficient." (citation omitted) (citing *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004)); *James Wood Gen. Trading Establishment v. Coe*, 297 F.2d 651, 658 (2d Cir. 1961) ("Damages cannot be based on speculation."). A plaintiff

---

[5]    To the extent Wayfarer suggests that Jones and Jonesworks' breach was premised on Jones not "following instructions" to not speak with certain press outlets, the counterclaims do not ever allege that Jones actually spoke with any reporter. To the contrary, the only allegation concerning Jones' purported interactions with the media in the counterclaims is Jones' text message to Hanks, in which she expressly informs Hanks that she did not speak with any media outlet and provides phone records to prove as much. Dkt. 39 ¶ 45.

must "show a stable foundation for a reasonable estimate of damages to which he is entitled as a result of the breach." *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 391 (2d Cir. 2006) (citations omitted).

Wayfarer's theory of harm is too attenuated, indirect, and speculative to satisfy this standard. At best, the counterclaims hint at—but do not actually allege—the following hopelessly attenuated daisy chain of purported causation: (1) negative media coverage about Wayfarer or its principals appeared in the press; (2) that press was based on unspecified information now claimed to be "confidential"; (3) that information was disclosed by Jones and/or Jonesworks; and (4) the disclosure thereby causing some level of unspecified harm. But Wayfarer does not actually allege this, let alone with the requisite particularity.

The pleading does not identify a single article, statement, or news item containing allegedly harmful information. It does not quote, summarize, or even describe the substance of the supposed press coverage, nor does it allege how the content was false, damaging, or traceable to Jones or Jonesworks. Given the dearth of any specifics regarding the purported information, it unsurprisingly does not approach explaining how any of this amorphous information is "Confidential Information" under the Agreement, let alone how it was purported improperly obtained or disseminated by Jones or Jonesworks. And Wayfarer does not allege any actual consequence—financial, reputational, or otherwise—suffered by Wayfarer as a result.

Instead, Wayfarer relies on inference built atop inference: that Jones or Jonesworks must have been the source of harm simply because they had access to information, and that this harm must have flowed from a contractual breach because it occurred during the course of their business relationship. But courts routinely reject damages that are not "reasonably certain and directly traceable to the breach." *Kenford Co. v. Erie Cnty.*, 493 N.E.2d 234, 235 (N.Y. 1986). Allegations

as these grounded in conjecture, speculation, and post hoc assumptions cannot substitute for facts, particularly where the claimed harm involves media narratives and third-party conduct—factors well beyond the parties' contractual framework and outside the scope of Jonesworks' obligations. *See, e.g.*, *Zink v. Mark Goodson Prods., Inc.*, *Zink v. Mark Goodson Prods., Inc.*, 689 N.Y.S.2d 87, 88 (N.Y. App. Div. 1999) (affirming dismissal of plaintiffs' claim for lost profits since it was predicated upon assumptions, speculation, and conjecture).

Even more telling is what Wayfarer does not allege: it does not claim lost revenue, lost opportunities, increased costs, reputational decline tied to specific events, or any other identifiable economic or actual injury. These omissions are dispositive. *Joshi v. Trs. of Columbia University in New York*, 515 F. Supp. 3d 200, 220 (S.D.N.Y. 2021) ("Under New York law, the inability to prove damages is fatal to a breach of contract claim. . . . In this case, the plaintiff does not allege any specific business opportunities lost as a result of his allegedly damaged reputation. Instead, [plaintiff] claims a more general diminution of his reputation. Such a claim is insufficient to obtain damages on a breach of contract claim.") (citations omitted)); *Awards.com, LLC v. Kinko's, Inc.*, 834 N.Y.S.2d 147, 153–54 (N.Y. App. Div. 2007), *aff'd*, 925 N.E.2d 926 (N.Y. 2010) ("Even if plaintiffs could show that the parties had, in fact, at the time of contracting, contemplated liability for lost profits damages, their claim for such damages would still have been properly dismissed because of its purely speculative nature.").

Ultimately, in addition to the counterclaims' failure to plead how, when, or where any alleged disclosure might have occurred, Wayfarer has also failed to allege any facts connecting a supposed disclosure to any cognizable harm. That failure is independently dispositive. *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 706 F. Supp. 3d 409, 441 (S.D.N.Y. 2023) ("Under New York law, '[c]ausation is an essential element of damages' for breach-of contract

claims. . . . Damages must be 'directly traceable to the breach, not remote or the result of other intervening causes.'") (first quoting *Nat'l Mkt. Share, Inc.*, 392 F.3d at 525; then quoting *Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 445 (S.D.N.Y. 2018), *aff'd*, 777 F. App'x 531 (2d Cir. 2019)). A breach without harm is not a claim; it is a grievance, and one that cannot survive a motion to dismiss under Rule 12(b)(6).

### C. Even If Wayfarer Plausibly Alleged Breach, Which It Has Not, the Speak Out Act Bars Enforcement of the Confidentiality Clause

Assuming arguendo that Wayfarer has plausibly alleged a breach of the Agreement's confidentiality provision, which it has not, including because there was a subpoena, its claim fails as a matter of law because enforcement of that provision is barred under the Speak Out Act, 42 U.S.C. §§ 19401–4 (2022) (the "Act"). That statute provides: "With respect to a dispute involving sexual assault or sexual harassment, no nondisclosure clause or nondisparagement clause agreed to before the dispute arises shall be judicially enforceable." 42 U.S.C. § 19403(a). This reflects Congress's determination that such provisions "punish the survivor and protect the perpetrator, who is set free to abuse and abuse and abuse again." 168 Cong. Rec. H8519 (daily ed. Nov. 16, 2022). "Nondisclosure clause" is broadly defined to mean any "provision in a contract or agreement that requires the parties to the contract or agreement not to disclose or discuss conduct, the existence of a settlement involving conduct, or information covered by the terms and conditions of the contract or agreement." 42 U.S.C. § 19402(1). "Sexual harassment dispute" is likewise broadly defined to mean any "dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 19402(4).

The Act is designed not only to protect direct victims, but to ensure that witnesses, employees, and third parties are not contractually gagged from participating in investigations, complying with subpoenas, or exposing retaliatory conduct that seeks to chill lawful speech about

abuse. 42 U.S.C.A. § 19401(6) ("Nondisclosure and nondisparagement provisions in agreements . . . can perpetuate illegal conduct by silencing those who are survivors of illegal sexual harassment and assault or illegal retaliation, ***or have knowledge of such conduct***, while shielding perpetrators and enabling them to continue their abuse.") (emphasis added); *see also* 168 Cong. Rec. H8518-25 (legislative history confirming Congress' purpose in broadly removing barriers to the disclosure of information regarding sexual harassment).

What Wayfarer seeks to do here is precisely what the statute prohibits: punish Jones and Jonesworks for complying with legal process and bringing to light the extent of Baldoni's harassment of Lively and Wayfarer's role in retaliating against Lively. Wayfarer's allegations establish that its dispute with Plaintiffs arises in large part from Baldoni's own conduct on the set of *It Ends With Us*, including his sexual harassment of co-star Lively. *See Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL, Dkt. 1. Wayfarer's counterclaims concede that, during a period of intense public scrutiny, Wayfarer faced press inquiries into Baldoni's behavior, including accusations that he "fat-shamed" Lively, kissed her too long during a scene, and acted inappropriately. Dkt. 39 ¶¶ 33–34, 46. These allegations were at the core of a reputational crisis— one Wayfarer tried to suppress.

Wayfarer does not deny that Baldoni was facing public scrutiny due to his mistreatment of women; nor does it deny Baldoni, Wayfarer, Nathan, and Abel's smear campaign against Lively in the wake of such mistreatment. It does not deny that the information that was ultimately reported in the press related to that scrutiny, mistreatment, and smear campaign. Angry not at Baldoni's gross mistreatment of Lively, but instead that it came to light, Wayfarer seeks to punish Jones and Jonesworks under the Agreement's commercial confidentiality clause, claiming that Wayfarer's

misdeeds and retaliation should have never been disclosed.[6] This effort to chill disclosure, shift blame, and distance itself from its own conduct and its co-founder's blatant harassment is repugnant and should be dismissed out of hand.

The counterclaims reveal that what Wayfarer truly objects to is not any breach of confidentiality in the ordinary commercial sense that the Agreement sets forth, but rather that material was ultimately disclosed that evidenced a retaliation campaign orchestrated by Wayfarer and its coconspirators against Lively. According to the counterclaims, Sloane contacted Nathan and said that she had seen Nathan's text messages and she should expect to get sued. Dkt. 39 ¶ 49. That is, Nathan would be sued—and now, has been sued—for administering the campaign of retaliation against Lively for reporting sexual harassment by Baldoni. Disclosure of information revealing the basis for such claims is precisely what the Act is designed to protect and what it in fact protects here. 42 U.S.C.A. § 19403(a).

### D.    Wayfarer Has Not Alleged a Material Breach That Would Excuse Its Own Performance

Under New York law, a party must perform under a contract; their performance is excused only where the other party has materially breached the agreement—that is, where the breach is "so substantial that it defeats the object of the parties in making the contract." *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 379–80 (S.D.N.Y. 2014) (citation omitted). To sufficiently excuse their non-performance, the party must allege specific facts constituting the material breach and the excuse. *See Oakley v. Morton*, 11 N.Y. 25, 33 (N.Y. 1854) ("[I]f an excuse was relied upon,

---

[6]    Wayfarer doubles down on this disgraceful position with the pejorative and false claim that materials were leaked, Dkt. 39 ¶ 49, when in fact texts were produced pursuant to subpoena, Dkt. 1-1 ¶ 14; Complaint, *Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL, Dkt. 1 ¶ 9 n.3.

[plaintiff] should have averred his readiness to perform, and the particular circumstances which constituted such excuse.").

Wayfarer did not plead a material breach on Jones or Jonesworks' behalf excusing it from performing under the Agreement. Wayfarer merely claims that it "advised Jones that they were terminating the Jonesworks Agreement as of the end of August" 2024, and follows with the conclusory allegation that this was justified and excused due to Jonesworks' material breach. Dkt. 39 ¶ 56. First, this is a quintessential example of a barebones allegation of simply the legal standard, which is routinely disregarded as insufficient by courts. *Iqbal*, 556 U.S. at 663. Second, as discussed *supra* Section I.A, the counterclaims do not (because they cannot) plead a material breach of the Agreement on Jonesworks' part that would excuse Wayfarer from performing. Indeed, Wayfarer alleges the opposite—that "they did not yet know just how far Jones had taken things" at the time of termination. Dkt. 39 ¶ 56. Wayfarer cannot have it both ways. Alleging ignorance of Jones's purported conduct (which under no construction could be alleged to constitute a breach) defeats any claim by Wayfarer that they were aware of any, let alone had sufficiently pleaded any, breach substantial enough to justify immediate termination. Wayfarer cannot retroactively manufacture a material breach based on speculation or events allegedly discovered later. *Bluffs Homeowners' Ass'n v. Frador Mktg., Inc.*, 809 N.Y.S.2d 329, 330 (N.Y. App. Div. 2006) ("Plaintiff was also required to establish in support of its motion that defendant breached a material term of the agreement, inasmuch as that was a condition precedent to plaintiff's right to terminate the agreement. Plaintiff failed to do so, and thus failed to establish its entitlement to judgment as a matter of law." (citations omitted)).

In reality, Wayfarer itself breached the Agreement when it claimed to terminate without complying with the notice-and-cure provision requiring Wayfarer to provide Jonesworks with

notice of any breach and a ten-day period to cure such breach prior to terminating the Agreement. Dkt. 39-1 at 3 ("Either party may terminate this Agreement upon the other party's material breach of this Agreement provided that the non-breaching party shall furnish notice of such breach to the breaching party and the breaching party shall have ten (10) days from receipt of such notice to cure the breach."). Under New York law, failing to comply with a notice-and-cure provision in and of itself is a material breach of an agreement. *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 727 (2d Cir. 1992) (holding that party materially breached agreement by failing to comply with its notice-and-cure provision). And this is precisely what happened, as demonstrated by Wayfarer's own counterclaims: Wayfarer fails to allege that it ever provided Jonesworks written notice of any breach or afforded Jonesworks the contractually mandated ten-day opportunity to cure. Dkt. 39 ¶¶ 56, 60, 66. Wayfarer only offers the conclusory claim that it "substantially performed the Agreement or was excused from doing so because of Jonesworks' and Jones's actions." *Id.* ¶¶ 68, 72. But, again, merely parroting the legal standard for excusing performance is not sufficient for Wayfarer to state a claim or absolve itself of its own obvious breach of the Agreement. *Iqbal*, 556 U.S. at 687 (2009) ("Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss.").

## II.    Wayfarer's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing Must Be Dismissed as Duplicative of Its Breach of Contract Claim

Wayfarer's counterclaim for breach of the implied covenant of good faith and fair dealing is not an independent cause of action—it is a repackaged contract claim, based on the same conduct and obligations already at issue in its breach of contract counterclaim. Under well-settled New York law, such duplicative claims are not permitted.

The Second Circuit is unequivocal: "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). The principle is straightforward—while New York law recognizes an implied a duty of good faith in every contract, a breach of that duty is not a separate wrong; it "is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992). As the Second Circuit has stressed, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

In *Harris*, the plaintiff brought two claims against her disability insurer: one for breach of contract and one for breach of the implied covenant of good faith and fair dealing, both based on the insurer's refusal to pay benefits. 310 F.3d at 77-78. The Second Circuit affirmed the dismissal of the implied covenant claim, holding that the allegations and injuries in both claims were "duplicative." *Id.* at 81. Because the implied covenant claim was not based on any conduct or duty beyond the insurer's alleged failure to comply with the contract, the court held that it was entirely duplicative of the breach claim and subject to dismissal. *Id.* at 81-83.

That is precisely the case here. Wayfarer's implied covenant claim (Dkt. 39 ¶¶ 70–75) is predicated on the same allegations—often verbatim—that underpin its breach of contract claim (*id.* ¶¶ 59–69): that Jonesworks allegedly disclosed confidential information (*id.* ¶¶ 64, 73) and that Wayfarer substantially performed the Agreement or was excused from doing so (*id.* ¶¶ 68, 72). These allegations all fall squarely within the scope of the plain language of the Agreement, which sets out the confidentiality terms, payment obligations, and scope of services. *Id.* ¶ 63. There

is no allegation of conduct that falls outside the contract, no facts suggesting any bad faith distinct from the alleged breach itself, and no separate duty owed beyond those enshrined in the Agreement.

The deficiency runs deeper than duplication. Wayfarer does not ever actually allege that Jonesworks acted in bad faith in performing the Agreement—it alleges only that Jonesworks breached it. Wayfarer's sole, conclusory allegation that Jonesworks and Jones "maliciously" disclosed confidential information "for the specific purpose of harming Wayfarer and Baldoni" does not, alone, support Wayfarer's claim for breach of the implied covenant of good faith and fair dealing because, notwithstanding the allegation's dramatic flair, it alleges only a breach of the contract, not some separate conduct that had "the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Cordero v. Transamerica Annuity Serv. Corp.*, 211 N.E.3d 663, 670 (N.Y. 2023). Indeed, the counterclaims contain no allegations showing that Jones or Jonesworks did anything other than perform the Agreement in good faith and reasonably until Wayfarer's clear breach. *See, e.g.*, Dkt. 39 ¶¶ 46, 40; *see Cordero*, 39 N.Y.3d at 670 ("[The Court of Appeals] has consistently observed that the [implied] covenant [of good faith and fair dealing] requires the parties to perform under the contract "in a reasonable way"). And like the substance of Wayfarer's implied covenant claim, its form also fails: Wayfarer (wrongly) asserts that Jonesworks violated the Agreement—not that it "act[ed] arbitrarily or irrationally" in performing it. *Cordero*, 39 N.Y.3d at 670; Dkt. 39 ¶¶ 70–75. The counterclaim does not merely duplicate Wayfarer's breach of contract claim—it misstates what the implied covenant even protects.

Wayfarer cannot plead two causes of action for one alleged wrong. Because Wayfarer alleges no additional facts that could give rise to a distinct implied covenant claim, its implied covenant counterclaim is duplicative and must be dismissed.

### **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court to dismiss Wayfarer's counterclaims with prejudice.

DATED:    April 10, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Kristin Tahler*

Kristin Tahler
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
kristintahler@quinnemanuel.com

Maaren A. Shah
295 5th Avenue
New York, New York 10016
(212) 849-7000
maarenshah@quinnemanuel.com

Nicholas Inns (*pro hac vice*)
1300 I Street NW
Suite 900
Washington, D.C. 20005
(202) 538-8000
nicholasinns@quinnemanuel.com

*Attorneys for Plaintiffs Stephanie Jones and Jonesworks, LLC*