

Wayfarer Studios LLC

▮▮▮▮▮▮

Dear ▮▮▮▮,

This agreement (the "Agreement") confirms that Wayfarer Studios LLC (the "Client") is retaining JONESWORKS, LLC. and/or its affiliates (the "Company") as its exclusive public relations counsel to provide strategic communications services as described on the attached Schedule A (the "Services").

The initial term of Client's engagement of Company as contemplated in this Agreement shall commence on May 7, 2020 (the "Commencement Date") and conclude on May 6, 2021(the "Term"). This agreement shall automatically renew for additional one-year periods ("Extension Period(s)") unless notice is received by either party ninety (90) days prior to the expiration of the Initial Term of this Agreement, or any Extension Period. (The Initial Term and Extension Period(s) are hereinafter referred to as the "Term").

Company shall provide the Services in a professional manner and in accordance with the goals mutually established by Client and Company. Company shall take reasonable steps to keep Client informed of its progress, including current and upcoming placements. Nonetheless, Client understands and agrees that outside factors may affect the implementation of the Services and Company cannot make any representations or warranties that Client's desired placements or publicity will appear in media whenever or wherever desired.

As consideration for the Services, Client hereby agrees to pay the Company a sum of $20,000 ("Services Fee"). This first month's Services Fee shall be due at the signing of the agreement. If additional public relations services are requested (i.e., services other than those designated on Exhibit A), an additional fee shall be negotiated in good faith between Client and Company prior to the provision of such additional services and such fee shall be payable after mutual agreement regarding the fee therefor and in advance of the provision of such services.

FKKS:2677728v.2                                                                                                                       27179.100

Client understands and agrees that Client is responsible for all of Company's reasonable and customary third party costs and expenses incurred in connection with the Services as well as all travel costs including, but not limited to, airline transportation and accommodations ("Expenses") provided that Company shall not incur Expenses on Client's account greater than five hundred dollars ($500.00) in each instance or twenty five hundred dollars ($2,500) in aggregate in any given month with Company's prior written approval. Any and all air travel shall be no less than business class and all hotel accommodations shall not be less than four stars. It is specifically stipulated and agreed that a Company representative shall be entitled to attend any and all press opportunities originated by Company.

In addition, in the event that Company secures a speaking engagement or lecture whereby Client or Client's designee is a speaker, Client hereby agrees to pay the Company 20% of the total fee due to Client in connection therewith ("Speaking Fees"). Further, to the extent that Company develops creative material to pitch to production companies or other third parties, Company's designee, Stephanie Jones ("Jones") shall be attached as no less than a Co-Executive Producer on any project based on or derived from such creative materials and Jones shall be entitled to the customary Co-Executive Producer fees for the applicable form of media production ("Producer Fees").

In addition to the Services, it is hereby understood by Client and Company that Company shall use its best efforts to facilitate meetings, deals, and relationships with relevant third parties. In connection with the foregoing, to the extent that Company secures a Third Party Agreement (as defined below) for Client that Client accepts in its sole discretion, Company shall receive a commission fee of ten percent (10%) of the gross compensation due to Client in connection with such Third-Party Agreement (the "Commission"). For each Third-Party Agreement, (a) such Commission entitlement shall extend for as long as Client accrues compensation under such Third Party Agreement, irrespective of the Term, expiration or termination of this Agreement; and (b) Client shall remit to Company the Commission payments on terms to be mutually agreed by Client and Company in good faith. As used herein, "Third Party Agreement" means an agreement entered into by or on behalf of Client with a third party and shall include, but be limited to, an agreement regarding Client's merchandising, testimonial, and/or commercial tie-in rights, among other rights Client may license to a third party ("License Rights"). In connection with the foregoing and with respect to the License Rights, Company shall perform one or more of the following services (a) aid/advise in the creation of merchandise (b) implementation of the License Rights and (c) design/market merchandise.

With respect to the Services Fee, Client will be billed monthly in advance and payment shall be due to Company no later than ten (10) business days' of Client's receipt thereof. With respect to Expenses, Client will be billed monthly and payment shall be due to Company no later than ten (10) business days' of Client's receipt thereof. Client

acknowledges and agrees that in the event that payments due to Company hereunder are not received in accordance with this Agreement, Company reserves the right and is entitled to suspend any services hereunder, including the Services, until such time as all outstanding payments are received by Company.

Throughout Client's engagement of Company hereunder, Client may disclose or provide Company with confidential, proprietary and/or sensitive information about Client, its customers or other related parties ("Confidential Information"). Company shall use reasonable and diligent efforts to keep Confidential Information confidential provided that Company may disclose such information to third parties to the extent necessary to fulfill its obligations under this Agreement or to its legal representatives. Company shall not use such information for any purpose beyond the performance of Company's services hereunder unless otherwise required by law or a court of competent jurisdiction. Company may, however, use Client's name as part of its client list and publicly acknowledge that it is undertaking work for Client pursuant to this Agreement without specifying the nature of Services. For the avoidance of doubt, Confidential Information shall not include information (a) which is or later becomes publicly available through no wrongful act of Company, (b) known by Company prior to Client's disclosure to Company in connection with this Agreement or (c) independently developed by Company without reliance on information disclosed by Client. Notwithstanding the foregoing, Company is not liable for any third party's disclosure of Client's Confidential Information so long as such third party did not obtain the Confidential Information as a result of Company's breach or failure to uphold its obligations hereunder. Upon the expiration or termination of this Agreement and at the request of Client, Company shall return or destroy all of Client's Confidential Information in Company's possession and shall upon request of Client send a certification as to such return or destruction.

During the Term and for the one year (1) period following the expiration or termination of this Agreement, each party agrees not to (a) solicit or attempt to solicit for employment any officer, employee or agent of the other party (collectively, an "Employee") or (b) employ or attempt to employ, or otherwise induce or attempt to induce any Employee of the other party to terminate such Employee's employment or engagement with such party, without such party's prior written consent (collectively, the "Non- Solicitation Obligation").

Either party may terminate this Agreement upon the other party's material breach of this Agreement provided that the non-breaching party shall furnish notice of such breach to the breaching party and the breaching party shall have ten (10) days from receipt of such notice to cure the breach. If the breach is not cured within such ten (10) day period, the breaching party may terminate this Agreement immediately. Notwithstanding the foregoing, it is stipulated that if either party violates the Non-Solicitation Obligation, the non-violating party may terminate this Agreement

immediately, without any such cure period. In the event of a termination of this Agreement, Client shall remain liable for all payments due for all Services rendered and Expenses incurred up to the date of termination provided that if the Agreement terminates on a date other than the first of a month, the Services Fee for the final month shall be pro-rated accordingly.

Company shall have no obligation to indemnify Client for any third party claims, losses, damages, actions, liabilities or costs ("Losses") against Client arising out of, resulting from or in connection with Company's representation of Client, the Services or this Agreement unless such Losses are the result of the gross negligence or willful misconduct of Company. Without limiting the foregoing, Company shall not be liable for any delay in or omission of publication or transmission, or for any error in any press or other publication, to the extent that such delay, omission or error is outside Company's control or is the result of any third party's action or inaction. The indemnity provision herein shall survive the expiration and termination of this Agreement.

The parties shall use good faith efforts to resolve any disputes arising in connection with this Agreement and the relationship established hereunder amongst them. To the extent that the parties cannot reach a timely resolution (which shall be no later than twenty (20) days), any such disputes shall be submitted to final and binding arbitration in New York, New York. Such arbitration shall be conducted in compliance with the rules of the American Arbitration Association. Each party shall be responsible for its own costs in connection with such arbitration. Notwithstanding the foregoing, in the event of a breach or threatened breach of the Non-Solicitation Obligation, in addition to all other available remedies, the non-breaching party shall be entitled to injunctive relief from a court of competent jurisdiction without being required to post a bond and without being required to show the inadequacy of money damages.  This Agreement shall be governed by, construed under and enforced in accordance with the laws of the State of New York applicable to agreements made and to be fully performed therein.

Sincerely,

Stephanie Jones, President

Agreed to and Accepted:

_____
[REDACTED]

Date:

May 6th, 2020

## SCHEDULE A

|  |  |
|---|---|
| Press Materials | - Assist in developing, writing and updating communication materials related to all press outreach such as biographies, media kits, boilerplates, press releases, and key messaging<br>- Manage media and press communications |
| Inter-Agency Programs | Advise on any marketing and campaign strategies to ensure brand messaging is consistent, opportunities are maximized, and the strongest press angles aligned |
| Executive Visibility | Position and utilize Wayfarer Studios key executives as thought-leaders and change agents in the film and television industry |
| On-Going/Proactive Outreach | - Develop a 12-month media and communications strategy to further drive awareness<br>- Strategize and execute select film and television project announcements<br>- Conduct proactive feature pitching to top-tier print, broadcast and online media outlets<br>- Conduct media monitoring and competitor tracking for industry press<br>- Conduct regular check-on calls surrounding the status of Wayfarer Studios projects, events and news |
| Measurement and Evaluation | - Clip and Service media as published<br>- Create monthly clip books and activity reports that detail account activity and media impressions<br>- Create and maintain a media library on behalf of Wayfarer Studios |