**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stephanie Jones, Jonesworks LLC, | Case No.: Civ. Action No. 1:25-cv-00779-LJL |
| *Plaintiffs*, | |
| v. | |
| Jennifer Abel, Melissa Nathan, Justin Baldoni, Wayfarer Studios LLC, and John Does 1-10, | |
| *Defendants*. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS JENNIFER ABEL'S AMENDED COUNTERCLAIMS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................1

FACTUAL BACKGROUND ..................................................................................5

LEGAL STANDARD ............................................................................................7

ARGUMENT .........................................................................................................8

I.    Abel's Hacking Claims Fail Because She Makes No Plausible Factual Allegations that Jonesworks Hacked Anything...............................................................8

    A.    Abel's Implausible and Vague Allegations Fail Rule 8 Standards.........................8

    B.    To the Extent Abel Alleges Any Conduct by Jonesworks at All, Those Acts Did Not Violate Any of the Alleged Statutes .................................10

    C.    Abel's Claims Fail Numerous Additional Statutory Requirements.....................12

        1.    Abel's Alleged Harms Are Not Cognizable Under the CFAA.................12

        2.    Messages on the iPhone are not "In Electronic Storage" under the SCA.....................................................................................................13

        3.    Abel Alleges No Plausible Intent to Defraud .............................13

        4.    Abel Does Not Plausibly Allege Any Jurisdictional Nexus to California .................................................................................14

        5.    Abel's Jumbled Statutory Copy-and-Paste Fails Under Section 502 ........14

        6.    Abel Fails to Plausibly Allege that Jonesworks Intercepted any Messages ...............................................................................15

II.    Abel's Tort Claims Must Be Dismissed .............................................15

    A.    Abel Cannot Claim that Her Employer Looking at Work Texts on a Work Phone Invaded Her Privacy ................................................15

    B.    Jonesworks Cannot "Convert" Something Abel Never Owned and Voluntarily Transferred ...........................................................19

    C.    Abel's Distress, If Any, Arises From Being Caught Red-Handed And Does Not Give Rise to Tort Claims ..................................................20

        1.    Abel Fails To Allege Legally-Cognizable Severe Emotional Distress..................................................................................21

        2.    Abel Alleges No Extreme or Outrageous Conduct....................22

        3.    Abel's Negligence-Based Claim Fails Because She Alleges No Negligence Nor Specific Breach of Duty ..................................23

    D.    Abel's Fraud Claim Fails In Every Possible Way ................................24

CONCLUSION......................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Achtman v. Kirby, McInerney & Squire, LLP,*
  464 F.3d 328 (2d Cir. 2006)......................................................................8

*Alcorn v. Anbro Eng., Inc.,*
  2 Cal. 3d 493 (1970) ...............................................................................22

*Angie M. v. Superior Court,*
  37 Cal. App. 4th 1217 (1995) ..................................................................22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).............................................7, 10, 12, 13, 18, 22, 24

*Beckwith v. Dahl,*
  205 Cal. App. 4th 1039 (2012) ................................................................25

*Behnke v. State Farm Gen. Ins. Co.,*
  196 Cal. App. 4th 1443 (2011) ................................................................24

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................7, 12

*In re Best Re-Mfg. Co.,*
  453 F.2d 848 (9th Cir. 1971) ...................................................................19

*Brown v. Riverside Church in City of New York,*
  216 N.Y.S.3d 144 (N.Y. App. Div. 2024) ...............................................22

*Christensen v. Superior Court,*
  54 Cal.3d 868 (1991) .........................................................................20, 22

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,*
  187 F.3d 229 (2d Cir. 1999).....................................................................24

*Colavito v. New York Organ Donor Network, Inc.,*
  860 N.E.2d 713 (N.Y. 2006).....................................................................19

*Davidson v. City of Westminster,*
  32 Cal. 3d 197 (1982) ..............................................................................22

*Destfino v. Kennedy,*
  2008 WL 4810770 (E.D. Cal. Nov. 3, 2008), *aff'd sub nom. Destfino v.*
  *Reiswig,* 630 F.3d 952 (9th Cir. 2011).....................................................22

*Deutsch v. Hum. Res. Mgmt., Inc.*,
2020 WL 1877671 (S.D.N.Y. Apr. 15, 2020).........................................................................9

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001).................................................................................8

*El Olmari v. Buchanan*,
2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) ....................................................................12

*Elite Phys. Services, LLC v. Citicorp Payment Services, Inc.*,
2009 WL 10669137 (S.D.N.Y. Oct. 9, 2009).....................................................................25

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ............................................................................................16

*Fellows v. Nat'l Enquirer*,
42 Cal. 3d 234 (1986) .......................................................................................................18

*Fink v. Time Warner Cable*,
2009 WL 2207920 (S.D.N.Y. July 23, 2009) ....................................................................10

*In re Forchion*,
130 Cal. Rptr. 3d 690 (Cal. Ct. App. 2011) ......................................................................20

*Freedom Fin. Co. v. New York Tel. Co.*,
285 N.Y.S.2d 163 (N.Y. App. Div. 1967) ..........................................................................19

*G.S. Rasmussen & Assocs., v. Kalitta Flying Serv., Inc.*,
958 F.2d 896 (9th Cir. 1992) ............................................................................................20

*Garcia v. City of Laredo, Tex.*,
702 F.3d 788 (5th Cir. 2012) ............................................................................................13

*Global Imaging Acquisitions Grp., LLC v. Rubenstein*,
2017 WL 11673437 (E.D. Wis. Aug. 16, 2017) .................................................................12

*Goodman v. Goodman*,
2022 WL 17826390 (S.D.N.Y. Dec. 21, 2022) ............................................................12, 15

*Hamlett v. Santander Consumer USA Inc.*,
931 F. Supp. 2d 451 (E.D.N.Y. 2013) ...............................................................................15

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009)................................................................................................18

*Harris v. TD Ameritrade Inc.*,
338 F. Supp. 3d 170 (S.D.N.Y. 2018)......................................................................21, 24, 25

*Heiting v. Taro Pharms. USA, Inc.*,
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) .................................................................8

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) ........................................................................................16

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2019) .............................................................................10

*Howell v. New York Post Co.*,
  612 N.E.2d 699(N.Y. 1993).................................................................................15

*Huggins v. Longs Drug Stores California, Inc.*,
  6 Cal. 4th 124 (1993) .....................................................................................20, 23

*Hughes v. Pair*,
  46 Cal. 4th 1035,1039 (2009) .........................................................................21, 22

*Jackson v. Mayweather*,
  217 Cal. Rptr. 3d 234 (2017) ..............................................................................18

*Janken v. GM Hughes Elecs.*,
  46 Cal. App. 4th 55 (1996) .................................................................................23

*Kelly–Zurian v. Wohl Shoe Co.*,
  22 Cal. App. 4th 397 (1994) ...............................................................................21

*Kiss v. Torres*,
  *2024 WL 1210941 (S.D.N.Y. Mar. 19, 2024)*.....................................................16

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) .........................................................................10, 15

*Kopperl v. Bain*,
  2010 WL 3490980 (D. Conn. Aug. 30, 2010) .....................................................10

*Laub v. Faessel*,
  745 N.Y.S.2d. 534 (N.Y. App. Div. 2002) ..........................................................25

*Lawler v. Montblanc N. Am., LLC*,
  704 F.3d 1235 (9th Cir. 2013) ............................................................................23

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
  83 F. Supp. 3d 501 (S.D.N.Y. 2015)......................................................................9

*Lopez v. Trahan*,
  225 N.Y.S.3d 232 (N.Y. App. Div. 2025) ...........................................................21

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ........................................................................8

*Martin v. Citibank, N.A.*,
    762 F.2d 212 (2d Cir. 1985)..........................................................................22

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ........................................................................18

*Nexans Wires S.A. v. Sark–USA, Inc.*,
    166 Fed. App'x 559 (2d Cir. 2006) ..............................................................13

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ..........................................................11

*Ott v. Fred Alger Mgmt., Inc.*,
    2012 WL 4767200 (S.D.N.Y. Sept. 27, 2012)..........................................10, 20

*Pacini v. Nationstar Mortg., LLC*,
    2013 WL 2924441 (N.D. Cal. June 13, 2013) ..............................................18

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .........................................................9, 12

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ...................................................................................21

*Price v. Operating Eng'rs Loc. Union No. 3*,
    125 Cal. Rptr. 3d 220 (2011) ........................................................................18

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
    587 F. Supp. 2d 548 (S.D.N.Y. 2008)....................................................11, 13, 15

*Sacerdote v. New York Univ.*,
    9 F.4th 95 (2d Cir. 2021) ..............................................................................17

*Sachdev v. Singh*,
    2016 WL 768861 (S.D.N.Y. Feb. 26, 2016)...................................................14

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988)............................................................................15

*Sanchez-Scott v. Alza Pharms.*,
    86 Cal. App. 4th 365 (2001) .........................................................................18

*Semore v. Pool*,
    217 Cal. App. 3d 1087 (1990) ......................................................................24

*Shroyer v. New Cingular*,
  622 F.3d 1035 (9th Cir. 2010) ............................................................. 25

*Shulman v. Grp. W Prods., Inc.*,
  18 Cal. 4th 200 (1998) ......................................................................... 18

*Slenderella Systems of Berkeley, Inc. v. Pacific Tel. & Tel. Co.*,
  286 F.2d 488 (2d Cir. 1961) ................................................................. 19

*Smith v. Allstate Ins. Co.*,
  160 F. Supp. 2d 1150 (S.D. Cal. 2001) ................................................ 25

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) .................................................. 16

*Smith v. Lanza*,
  2022 WL 20243472 (N.D. Cal. Apr. 18, 2022) .................................... 24

*So v. Shin*,
  212 Cal. App. 4th 652 (2013) ............................................................... 22

*Spence v. Maryland Cas. Co.*,
  995 F.2d 1147 (2d Cir. 1993) ............................................................... 23

*Stampf v. Long Island R.R. Auth.*,
  2010 WL 2517700 (E.D.N.Y. June 14, 2010) ...................................... 24

*In re StarNet, Inc.*,
  355 F.3d 634 (7th Cir. 2004) ............................................................... 19

*Stewart v. Electrolux Home Prods., Inc.*,
  304 F. Supp. 3d 894 (E.D. Cal. 2018) .................................................. 25

*Stuto v. Fleishman*,
  164 F.3d 820 (2d Cir. 1999) ..................................................... 20, 22, 23

*Sunbelt Rentals, Inc. v. Victor*,
  43 F. Supp. 3d 1026 (N.D. Cal. 2014) ...................................... 11, 12, 16

*Takahashi v. Bd. of Trustees of Livingston*,
  783 F.2d 848 (9th Cir. 1986) ............................................................... 23

*TBG Ins. Services Corp. v. Sup. Ct.*,
  96 Cal. App. 4th 443 (2002) ................................................................. 17

*Thyroff v. Nationwide Mut. Ins.*,
  864 N.E.2d 1272 (N.Y. 2007) .............................................................. 19

*TI Ltd. v. Chavez*,
    2020 WL 7078839 (S.D. Cal. Dec. 3, 2020)..................................................................14

*Truman v. Brown*,
    434 F. Supp. 3d 100 (S.D.N.Y. 2020)......................................................................22

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014)......................................................................................22

*Underhill v. Kornblum*,
    2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ........................................................10

*United Rentals, Inc. v. Wilper*,
    626 F. Supp. 3d 546 (D. Conn. 2022)........................................................................9

*Vail v. City of New York*,
    2020 WL 127639 (S.D.N.Y. Jan. 10, 2020) ...........................................................22

*Van Buren v. United States*,
    593 U.S. 374 (2021)..........................................................................................9, 10, 13

*Vogel v. Felice*
    127 Cal. App. 4th 1006 (2005) ...............................................................................18

*Voris v. Lampert*,
    446 P.3d 284 (Cal. 2019) ........................................................................................19

*Walia v. Holder*,
    59 F. Supp. 3d 492 (E.D.N.Y. 2014) .................................................................20, 23

*Wiener v. Unumprovident Corp.*,
    202 F. Supp. 2d 116 (S.D.N.Y. 2002).....................................................................21

*William Gottlieb Mgmt Co., LLC v. Carlin*,
    2024 WL 1311854 (S.D.N.Y. March 26, 2024) ......................................................13

*Yukos Cap. S.A.R.L. v. Feldman*,
    977 F.3d 216 (2d Cir. 2020)......................................................................................13

*Zaratzian v. Abadir*,
    2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014), aff'd, 694 F. App'x 822 (2d Cir.
    2017) ........................................................................................................................15

## Rules/Statutes

Fed. R. Civ. P. 8..........................................................................................................8, 9, 12

Fed. R. Civ. P. 9(b) ...........................................................................................................13

California Penal Code Section 27 ................................................................................14

California Penal Code Section 502 ........................................................8, 10, 11, 12, 13, 14

Computer Fraud and Abuse Act (CFAA)
     18 U.S.C. § 1030 *et seq*. (1986).......................................................8, 9, 10, 11, 12, 13

Speak Out Act
     42 U.S.C. § 19401 (2022). ..................................................................................17

Stored Communications Act (SCA)
     18 U.S.C. § 2701 *et seq*. (1986).........................................................8, 10, 11, 12, 13

Wiretap Act
     18 U.S.C. § 2510 *et seq*. (1986).....................................................8, 10, 11, 12, 13, 15

## PRELIMINARY STATEMENT

Jennifer Abel's counterclaims are a rotating game of whack-a-mole, where the minute one baseless theory is debunked, another even more implausible theory pops up in its place. In her amended counterclaims, Abel abandons *six* of the misguided counterclaims she originally filed against Jones and Jonesworks—including the fantastical story that she was "falsely imprisoned" by her former employer during her termination meeting. Instead, she now claims—even more desperately—that she was hacked by Jonesworks acting as a "spy." This new theory follows the familiar pattern and has an obvious purpose: to draw attention away from the text messages that she cannot and does not deny she wrote, that form the basis of Jones's well-founded claims against her, for which she has no viable defense.

Those text messages conclusively corroborate that Abel brazenly conspired to steal Jonesworks' clients and documents, and trash her employer on her way out the door, Answer ¶ 4[1]:



[…]

They reveal that she made no effort to hide her malice against Jonesworks or her plan to "go to war" with Jonesworks and "hold[] them hostage" on her way out the door, *id.* ¶ 11, 102:

---

[1]  Defendant Jennifer Abel's Answer to Complaint, Amended Counterclaims, and Jury Trial Demand ("Answer" and "Am. Countercl."), Dkt. 50, *Jones v. Abel*, No. 1:25-cv-00779-LJL (S.D.N.Y. Mar. 20, 2025).



And they uncover that, unsatisfied with only stealing clients, she also set about to steal Jonesworks' confidential documents, even boasting of her ability to evade the security measures the company took to stop her by using "hundreds" of different emails to infiltrate Jonesworks' systems, *id.* ¶ 98:



Indeed, her two-faced and scornful behavior was not just reserved for Jonesworks. Despite publicly hitching her wagon to Baldoni, behind his back, she was trashing him too, *id.* ¶¶ 5-6, :





Even her co-conspirator, Nathan, could not escape Abel's treachery, *id.* ¶ 63:



Abel's Amended Counterclaims are only the latest episode in this unbroken chain of fantasy in her quest to rewrite history. But her newest story suffers from the same fundamental flaw as her last: it is not true, and it cannot, in any event, support the newly invented counterclaims she asserts. Each and every one of those counterclaims should be dismissed with prejudice.

*First*, her effort to convert the entirely routine practice of her employer recovering the

phone it had provided to her during her employment into a smorgasbord of hacking claims fails. The fact is that Jonesworks produced documents recovered from the phone in response to a lawful subpoena—which even Abel now accepts. And in any event, Abel herself **admits** that the phone itself belonged to Jonesworks, that she returned it voluntarily, and that she provided Jonesworks with the passcode to access it. Am. Countercl. ¶ 64. Even Abel's own allegations prove that Jonesworks didn't, and couldn't have, hacked anything. The very circumstances that Abel pleads doom her claims from the outset: any hypothetical access using credentials Abel voluntarily provided cannot, as a matter of law, be unauthorized.

*Second*, the torts Abel alleges also fail. Not only does New York not even recognize the privacy-based torts Abel tries to allege, but no court anywhere has espoused the theory that Abel advances: that she somehow had a legally recognized reasonable expectation of privacy against her employer in work-related communications made on a company-owned phone. Simply put, Abel had no right to privately use her company phone to undermine and hide things from her employer, conduct a secret business for her own benefit against her employer's interests, and seek to harm her employer's public reputation and private business interests. And Jonesworks did nothing wrong in retrieving that phone when it fired Abel and later producing documents in response to a subpoena—which revealed, in Abel's own words, in black and white, in text after text, the clear evidence of outrageous misconduct that Abel now stands accused of. For this same reason, Abel's "false light" claims similarly cannot stick. Abel may wish that the world did not know about her unethical and unlawful acts, but the light that Abel has been cast in is unavoidably true.

*Lastly,* the remainder of Abel's claims are equally infirm. Abel had no property interest in the phone number that she now claims Jonesworks somehow "converted." Abel does not actually

identify any specific acts that allegedly distressed her and could plausibly meet the extraordinarily high bar required to sustain a claim for infliction of emotional distress. Her promissory fraud claim too relies on impermissibly amorphous allegations of unspecified "harm."

Having been called to account for her actions and having no viable defense, Abel has turned to defense by smokescreen. None of her round two counterclaims have legal merit, and the Court should dismiss them in their entirety and with prejudice.

## **FACTUAL BACKGROUND**

Jennifer Abel joined Jonesworks LLC ("Jonesworks")—a well-known New York-based public relations and communications agency founded by Stephanie Jones—in 2020. Am. Countercl. ¶¶ 3, 10, 13-14, 17. Upon joining the company and accepting a company-purchased and -owned phone, Abel elected to transfer her phone number to that phone and transfer her number from her own personal account with the phone company to Jonesworks' company phone plan. *Id.* ¶ 26. Abel elected to configure the Jonesworks-owned phone to access her Apple ID/iCloud account and email accounts. *Id.*

In 2021, Abel renegotiated the terms of her employment in exchange for increased compensation as part of a 2021 Employment Agreement that expressly "supersede[d] all prior understandings, agreements, or representations by or among" Jonesworks and Abel. *Id.* ¶ 28; *see also* 2021 Employment Agreement § 11.13. Through the contract, Abel willingly agreed that any disputes she might have with Jonesworks would be decided under New York law. *Id.* § 11.7. Abel also agreed to standard terms commensurate with her position, including that she not steal or divulge the company's trade secrets, *id.* § 6.1, not compete with Jonesworks while working for the company or for six months after leaving, *id.* § 6.2, and not try to poach Jonesworks' clients or employees, *id.* § 6.3. Abel expressly agreed that these covenants were reasonable. *Id.* § 6.7.

Abel's counterclaims are laden with histrionic complaints about all aspects of her

employment at Jonesworks that are both irrelevant and unsupported by reality. Abel worked at the company for more than four years, never voicing he concerns that she now claims in this latest version of her revisionist history. *See* Am. Countercl. ¶¶ 34-52. Only further confirming her opportunistic effort to rewrite history and shift her narrative when the facts are no longer convenient, she excised from her Amended Counterclaims her previously pled admission that she thought highly of Jones up to the time of her prospective departure, Dkt. 36, Countercl. ¶ 65:

> With all of this said, the facts remain—I respect you immensely.  I feel so grateful for the opportunities you have given me with your premiere clients and how you have lifted me up as your partner.  I would not have had the opportunity to be in many of the rooms that I have been in without you opening the door.  This company you have built is exceptional, and I hold our teams with the highest regard. I know I didn't do it by myself, but I do take pride in what I have contributed to your LA office and the team I have been building and managing over the past four years, along with the new clients and opportunities I have procured.

In July 2024, Abel informed Jones of her intent to leave Jonesworks. Am. Countercl. ¶ 53. At first, the planned departure was amicable, as Jonesworks arranged for Abel's transition and Abel made logistical arrangements—including, for the first time, asking that her phone number be released from the company's account. *See id.* ¶¶ 55-57. But in mid-August 2024, Jonesworks learned, after inquiring into suspicious file transfers on its computer systems, that Abel had been downloading dozens of proprietary documents from the company's systems to her personal laptop, which she had no reason or authorization to access let alone surreptitiously misappropriate. Jonesworks swiftly responded and, on August 21, 2024, with counsel, terminated Abel. *Id.* ¶ 59. To terminate Abel, Jonesworks took the common and reasonable step of requesting that Abel meet with its legal counsel and chief of staff, asked to review the personal laptop that she had been using for company business and used to download Jonesworks' documents (which she agreed to in writing), and asked her to sign termination forms (which she did, including falsely signing a statement that she had not retained any Jonesworks documents despite plain forensic evidence proving that she had been emailing documents to herself weeks before her termination). *Id.* ¶¶ 61, 63. Once again seeking to skirt accountability for her decisions, Abel incoherently and fantastically

characterizes that this attorney asking her to sign termination paperwork as "coercion and threats" that allegedly placed her "under extreme duress," and tries to disavow the consequences of her voluntary compliance and signature on documents. *Id.* ¶ 62. At the conclusion of the meeting, Abel alleges that Jonesworks' chief of staff asked her to return her company-owned phone—which she did—and asked her for the passcode to that phone—which she provided without question. *Id.* ¶ 64.

Text messages downloaded to Abel's company phone revealed that Abel had been spearheading a campaign to retaliate against Lively for allegations of sexual harassment against Baldoni, and also instigated a campaign of destruction and disparagement against Jones herself. Abel now alleges that Jonesworks' production of those text messages was unlawful and invaded her privacy. *Id.* ¶ 90. Yet Abel simultaneously admits that the texts were contained on a company-owned phone that she voluntarily relinquished on her termination as required, *id.* ¶¶ 57, 65, and that the text messages that have been publicly revealed through these legal filings were produced pursuant to a lawful subpoena. *See* Compl., Dkt. 1, *Lively v. Wayfarer Studios LLC*, No. 1:24-cv-10049 (S.D.N.Y. Dec. 31, 2024). Furthermore, despite baseless hypotheticals that Jonesworks "could" access her personal communications, *id.* ¶ 67, Abel identifies no personal information whatsoever that was allegedly revealed in violation of any conceivable privacy rights; instead, she complains that text messages revealed her misconduct in participating in an unlawful retaliation campaign during her employment, but behind the back of her employer. *Id.* ¶ 90.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must state sufficient facts, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "a formulaic recitation of the elements of a cause of action" will not suffice, *Twombly*, 550 U.S. at 555, and "legal

conclusions masquerading as factual conclusions will not" defeat a motion to dismiss, *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

## ARGUMENT

### I.    Abel's Hacking Claims Fail Because She Makes No Plausible Factual Allegations that Jonesworks Hacked Anything

The Computer Fraud and Abuse Act ("CFAA") is "designed to target hackers who … disrupt or destroy computer functionality." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130–31 (9th Cir. 2009). The Stored Communications Act ("SCA") was enacted to "prevent hackers from obtaining, altering or destroying certain stored electronic communications." *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001). California Penal Code Section 502 is designed to "combat 'computer crime' and hacking." *Heiting v. Taro Pharms. USA, Inc.,* 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023).

Undeterred by the plain purposes of these statutes, Abel brings a multitude of vague, contradictory, and inapplicable claims seeking to apply hacking statutes to the unremarkable reality of an employer recovering work texts from a work phone. Each claim suffers from fundamental defects that require its dismissal: First, the claims rely wholly on impermissibly vague and hyperbolic allegations to paper over the reality that they are unsupported by ***any*** adequately pled (let alone true) facts. Second, even the most charitable reading of Abel's allegations does not plausibly plead a violation of the statutes. And third, the Amended Counterclaims fail to plead numerous specific statutory requirements.

### A.    Abel's Implausible and Vague Allegations Fail Rule 8 Standards

Abel's allegations of "hacking" are wholly vague and conclusory, and fail even the most lenient Rule 8 standards as a matter of law. For example, Abel alleges in wholly conclusory and unsupported fashion that Jonesworks "bypass[ed] the password protection" on her accounts. Am.

Countercl. ¶ 90. How? Using what technological means? In what circumstances?  She similarly alleges that Jonesworks was "monitoring and intercepting her private communications in real-time." Am. Counterclaims ¶ 69. But, again, how? When? Which communications? And what is her basis for believing or alleging this? These wholly conclusory assertions are utterly devoid of any factual corroboration or grounding as required by Rule 8. And based on what she observed or otherwise supported facts? *See Deutsch v. Hum. Res. Mgmt., Inc.*, 2020 WL 1877671, at *4 (S.D.N.Y. Apr. 15, 2020) (failure to allege how defendants accessed computer system "such as by circumventing a firewall or otherwise hacking through technological barriers" fatal to claim.); *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 513 (S.D.N.Y. 2015) (allegations that failed to "discuss the means by which the [d]efendants allegedly gained access to [the] systems" did not state claim); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014) (claim failed because it lacked "specificity regarding what technical or code-based barriers were in place and as to who overcame those barriers and how").

In a similar vein, Abel conclusorily alleges that Jonesworks accessed protected computers "knowingly and without authorization or consent, *or* in a manner that exceeded their authorization." Am. Countercl. ¶ 114 (emphasis added). This, again, is a conclusion of law and recitation of a statutory element—not an alleged factual basis for her claim. And, further, which is it? And how did the company that owned the phone lack authorization to use it? *See United Rentals, Inc. v. Wilper*, 626 F. Supp. 3d 546, 552 (D. Conn. 2022) ("[W]ithout authorization … appl[ies] to individuals who are not granted any permission from a company to access an electronic device."); *see also Van Buren v. United States*, 593 U.S. 374, 388 (2021) (exceeding authorized access under CFAA requires accessing "a part of the system" to which the person did not have access). And how did Jonesworks allegedly overcome "generally applicable rules regarding

9

access" to those computers? What even were those rules? And how could Jonesworks possibly overcome rules simply by using a passcode that Abel admits she provided to it? *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2019). These "[t]hreadbare recitals of the elements of a cause of action" cannot and do not pass muster under the law.[2] *Iqbal*, 556 U.S. at 678; *see also Underhill v. Kornblum*, 2017 WL 2869734, at \*5 (S.D. Cal. Mar. 16, 2017) (Section 502 claims that are "devoid of facts and application" must be dismissed).

Abel's allegations of harm are equally conclusory and often incoherent. She alleges that she "suffered enormous harm to her personal and professional life," Am. Countercl. ¶ 104, "suffered harm," *id.* ¶ 147, "suffered damages," *id.* ¶ 152, "suffered harm and injury," *id.* ¶ 116, or, in one of her multiplicity of claims, alleges nothing about harm at all. *id.* ¶¶ 118-30. This is facially deficient. Abel must make "factual, non-conclusory allegations stating a plausible claim that defendant's conduct caused specific" harm. *Ott v. Fred Alger Mgmt., Inc.*, 2012 WL 4767200, at \*10 (S.D.N.Y. Sept. 27, 2012) (quoting *Kopperl v. Bain*, 2010 WL 3490980, at \*4 (D. Conn. Aug. 30, 2010)); *Fink v. Time Warner Cable,* 2009 WL 2207920, at \*4 (S.D.N.Y. July 23, 2009) ("merely parrot[ing] the statutory language" is insufficient).  She has not done so, so her claims fail.

### B.    To the Extent Abel Alleges Any Conduct by Jonesworks at All, Those Alleged Acts Did Not Violate Any of the Alleged Statutes

Abel also fails to plausibly allege that Jonesworks engaged in the specific conduct prohibited or required by the applicable statutes to state a claim. The CFAA requires that a person use illicit means to circumvent some "gate" controlling access to a computer. *Van Buren v. United States*, 593 U.S. 374, 390 (2021). The SCA requires that the defendant "access[ed] an electronic

---

[2]  What is more, these threadbare recitals also fatally contradict themselves, as courts have held that the same conduct cannot violate both the Wiretap Act and the SCA, yet Abel vaguely alleges both with no plausible (or any) distinguishing factual allegations. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 877-78 (9th Cir. 2002).

communication service, or obtain[ed] an electronic communication while it is still in electronic storage, without authorization." *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 555 (S.D.N.Y. 2008). The Wiretap Act prohibits intentional acts to intercept communications in "flight" and does not apply to "an electronic communication that has already been delivered." *Id.* at 557-58. And California Penal Code Section 502 only applies when a party "circumvent[s] technical or code-based barriers in place to restrict or bar a user's access." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 950 (N.D. Cal. 2014). Abel's allegations fail to allege any such conduct.

Indeed, courts have flatly rejected the theories of liability attempted here. For example, in *Sunbelt Rentals, Inc. v. Victor*, an employee was issued a company iPhone and iPad during his employment. 43 F. Supp. 3d 1026, 1028 (N.D. Cal. 2014). He linked his personal Apple account to both devices but did not unlink it upon his separation. *Id.* at 1028-29. In that case, messages the employee later sent and received on a separate iPhone and iPad also appeared on the devices he returned to his former employer. *Id.* at 1029. The employee asserted claims under the SCA, Wiretap Act, and Section 502, all of which the court rejected. *Id.* at 1029, 1036.

With respect to the Wiretap Act, the court concluded that "the text messages appeared on his [company] iPhone as a result of [the employee's] act of syncing his new iPhone to his Apple account without first un-linking his [company] iPhone…. [so the employer] did not intentionally capture or redirect [the employee's] text messages to the [company] iPhone" and thus did not "intercept" them. *Id.* at 1030-31. As here, the employee offered no "facts to support [his] otherwise conclusory assertion" that his communications were intercepted. *Id.* at 1031. The court likewise rejected the employee's SCA claim because he presented no facts "to support the conclusory assertion that [the employer] accessed [the employee's] text messages through … Apple's

network." *Id.* at 1032. "To the extent [the employee] claim[ed]"—as Abel does—"that [his employer] accessed his text messages by reviewing the messages on his [company] iPhone…such conduct does not violate the SCA." *Id.; see also Global Imaging Acquisitions Grp., LLC v. Rubenstein*, 2017 WL 11673437, at *12 (E.D. Wis. Aug. 16, 2017) (employer reading texts on company iPhone that employee left logged into Apple account does not violate SCA).

The employee's Section 502 claim also failed because the employee's "fact-barren and vague allegations," which closely resemble Abel's allegations, "are precisely the type of 'threadbare recitals' proscribed by *Twombly* and *Iqbal*." *Sunbelt Rentals, Inc.,* 43 F. Supp. 3d . at 1033. Even read charitably, the employee failed to allege any facts supporting a conclusion that the employer accessed any messages "by circumventing technical or code-based barriers." *Id.*; *see also Perkins,* 53 F. Supp. 3d at 1219 (LinkedIn did not overcome a technical barrier by accessing Google account without re-prompting for a passcode). Abel makes the same vague, conclusory, and insufficient allegations as the *Sunbelt* plaintiff, and those allegations should meet the same end: dismissal.

### C.    Abel's Claims Fail Numerous Additional Statutory Requirements

Abel separately fails to plausibly allege facts to satisfy multiple other requirements of the applicable statutes, each of which provides an independent basis for dismissal.

#### 1.    Abel's Alleged Harms Are Not Cognizable Under the CFAA

Civil damages are only available under the CFAA for the cost of "restoring the data, program, system, or information to its condition prior to the offense." 18 U.S.C. § 1030(e)(11). A plaintiff must plead and prove that there has been damage to "the target computer itself."[3] "Merely losing access does not comport with that understanding of damage" contemplated by the

---

[3]    *El Olmari v. Buchanan*, 2021 WL 5889341, at *14 (S.D.N.Y. Dec. 10, 2021).

CFAA.[4] Here, Abel alleges no such harm, but alleges only that she suffered vague and unsupported privacy and reputational harms—which are excluded by the statute and case law. *See Van Buren*, 593 U.S. at 392; *William Gottlieb Mgmt Co., LLC v. Carlin*, 2024 WL 1311854, at *4 (S.D.N.Y. March 26, 2024); *Nexans Wires S.A. v. Sark–USA, Inc.*, 166 Fed. App'x 559, 563 (2d Cir. 2006).

### 2. Messages on the iPhone are not "In Electronic Storage" under the SCA

The SCA only prohibits obtaining communications while they are "in electronic storage" in "a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a). Federal courts have routinely held that data stored on personal devices does not satisfy this requirement. *See Yukos Cap. S.A.R.L. v. Feldman,* 977 F.3d 216, 232 (2d Cir. 2020); *Pure Power Boot Camp,* 587 F. Supp. 2d at 555; *Garcia v. City of Laredo, Tex.,* 702 F.3d 788, 793 (5th Cir. 2012) (data stored on a cellular telephone do not constitute "electronic storage"). Here, Abel alleges that Jonesworks accessed data "stored" on the Jonesworks-owned iPhone she had used during her employment. *See* Am. Countercl. ¶¶ 64, 67. This fails to allege a violation of the SCA. *Yukos Cap. S.A.R.L.,* 977 F.3d at 232.

### 3. Abel Alleges No Plausible Intent to Defraud

A claim under the CFAA requires that a person access a computer without authorization "knowingly" and with "intent to defraud." 18 U.S.C. § 1030(a)(4). A claim under Section 502 does too. Cal. Penal Code § 502(c)(1). Abel alleges "Jonesworks' conduct constitutes a knowing intent to defraud Abel and her personal data and thereby derive financial gain," Am. Countercl. ¶ 115, and Jonesworks accessed data "in order to devise and execute a scheme and artifice to defraud," *id.* ¶ 151. These threadbare and conclusory allegations fail on their face. *Iqbal*, 556 U.S. at 678. They also independently fail because they lack particularity in alleging the claimed fraud. Fed. R.

---

4    *Goodman v. Goodman*, 2022 WL 17826390, at *7 (S.D.N.Y. Dec. 21, 2022).

Civ. P. 9(b). And they fail a third time because the Amended Counterclaims allege that Jonesworks used the communications to help Lively, a gratuitous allegation that has nothing to do with fraud or Abel or financial gain. Am. Countercl. ¶¶ 92-93; *see also Sachdev v. Singh*, 2016 WL 768861, at *10 (S.D.N.Y. Feb. 26, 2016) (dismissing CFAA claim for failure to allege intent to defraud).

### 4.    Abel Does Not Plausibly Allege Any Jurisdictional Nexus to California

Abel's Section 502 claim fails at the threshold because, despite repeated absurd allegations about Jonesworks "accessing" data, the iCloud, and email accounts, she alleges no nexus between those made-up facts and California. *See* Cal. Penal Code § 27 (geographic scope of penal code). Indeed, Abel alleges the opposite: that the data alleged accessed was located "on remote servers located around the country," Am. Countercl. ¶ 113, that Jonesworks has its principal place of business in New York, *id.* ¶ 3, and that Jones resides in Connecticut, *id.* ¶ 2. Abel makes no mention of access from or into California, which is fatal. *See TI Ltd. v. Chavez,* 2020 WL 7078839, at *6 (S.D. Cal. Dec. 3, 2020) (Section 502 only applied because data allegedly accessed was located in California).

### 5.    Abel's Jumbled Statutory Copy-and-Paste Fails Under Section 502

To plead as broadly and vaguely as possible, Abel copies and pastes miscellaneous words from Section 502, alleging that Jonesworks violated the statute by "knowingly and without permission accessing and causing to be accessed, taking and causing to be taken, copying and causing to be copied, using and causing to be used computer services…." Am. Countercl. ¶ 151. This comprises nothing more than a jumbled recitation of words taken from different subsections of Section 502(c) with no seeming rationale. *Compare id. with, e.g.*, Cal. Penal Code 502(c)(1) ("knowingly accesses … data, computer, computer system, or computer network); *id.* 502(c)(3) ("uses or causes to be used computer services"); *id.* 502(c)(5) ("disrupts or causes the disruption of computer services"). Abel's Frankenstein claim assembled from mismatched pieces of statutory

text provides no notice of which of the 14 subsections of Section 502 she is pursuing, let alone how, requiring dismissal. *See Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988) ("The principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.").

6.    <u>Abel Fails to Plausibly Allege that Jonesworks Intercepted any Messages</u>

The Wiretap Act only prohibits intercepting communications while they are "in flight"—before they are delivered to the recipient's account or device. *See Konop*, 302 F.3d at 878; *Goodman v. Goodman*, 2022 WL 17826390, at *13 (S.D.N.Y. Dec. 21, 2022); *Zaratzian v. Abadir*, 2014 WL 4467919, at *6 (S.D.N.Y. Sept. 2, 2014), aff'd, 694 F. App'x 822 (2d Cir. 2017). Abel makes no such allegations, instead alleging (falsely and in conclusory fashion) that Jonesworks viewed messages ***after*** they arrived in her iCloud or email accounts. *See* Am. Countercl. ¶¶ 69, 70, 90. This does not violate the Wiretap Act. *See, e.g.*, *Pure Power Boot Camp*, 587 F. Supp. 2d at 557.

## II.    **Abel's Tort Claims Must Be Dismissed**

### A.    **Abel Cannot Claim Invasion of Privacy Based on Work Texts on a Work Phone**

Abel's invasion of privacy claims, Counterclaims 5 and 6, fail on their face.[5] New York does not recognize common law privacy tort claims, including, specifically, the two claims Abel brings here: intrusion upon seclusion and false light. *Howell v. New York Post Co.*, 612 N.E.2d 699, 703(N.Y. 1993) (In New York "the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights law; we have no common law of privacy."); *see also Hamlett v. Santander Consumer USA Inc.,* 931 F. Supp. 2d 451, 457-58 (E.D.N.Y. 2013) ("New York has

---

[5]    The 2021 Employment Agreement's choice of law clause calls for the application of New York law to Abel's remaining tort claims, but such claims would fail even under California law.

15

consistently refused to recognize a common law right of privacy … there is no … intrusion upon seclusion under New York law.").

Even under California law, Abel's claims fall short.[6] For a common-law claim of intrusion upon seclusion, "a plaintiff must plead that (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]' and (2) the intrusion 'occur[red] in a manner highly offensive to a reasonable person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez* 47 Cal. 4th at 286). "Courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook* 956 F.3d at 601. Abel does not approach either standard.

First, Abel admits that she voluntarily transferred her phone number to Jonesworks upon hiring and that her newly issued device with that phone number was a company-owned and -controlled iPhone. Am. Countercl. ¶ 57. As a matter of well-settled law, Abel enjoyed no reasonable expectation of privacy in the contents of that company phone. *See, e.g.*, *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1034 (N.D. Cal. 2014) (no invasion of privacy claim because an employee could not "legitimately claim an expectation of privacy" in a company-owned phone); *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017) (no invasion of privacy claim where a party grants another party access to information).

Abel's conclusory allegation that she "had a reasonable expectation of privacy" is of no moment because (1) she had no such expectation in a work phone; (2) this is a legal conclusion masquerading as factual allegations, which is routinely rejected, *Kiss v. Torres, 2024 WL 1210941,*

---

[6]  California invasion of privacy requires Abel to show (1) she possesses a legally protected privacy interest, (2) she maintains a reasonable expectation of privacy, and (3) the intrusion is "so serious ... 'as to constitute an egregious breach of the social norms'" that is "highly offensive." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

*at \*2 (S.D.N.Y. Mar. 19, 2024)*; and (3) Abel admits that the phone was owned by and returned to Jonesworks and used by Abel in the course of her employment, which renders her bald allegation that the phone and data at issue were "personal" nonsensical. *Compare* Am. Countercl. ¶ 158 (alleging invasion of Abel's "personal data") *with id.* ¶ 57 (Abel "switched to a Jonesworks-issued iPhone"); *id.* ¶ 64 (Abel returns phone to Jonesworks). Because both of Abel's invasion of privacy claims relate exclusively to the contents of a company-owned phone in which she enjoyed no reasonable expectation of privacy, her claims fail.

Second, Abel fails to allege that Jonesworks acted in any way that was a "highly offensive" invasion of that privacy or an "egregious breach of social norms," as required. *See, e.g.*, *TBG Ins. Services Corp. v. Sup. Ct.*, 96 Cal. App. 4th 443, 452 (2002) ("[T]he use of computers in the employment context carries with it social norms that effectively diminish the employee's reasonable expectation of privacy with regard to the use of his employer's computers.").

The vast majority of Abel's newly fabricated allegations are nothing more than conclusory speculation that this Court should disregard. *Sacerdote v. New York Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021). Abel's allegation that Jonesworks "**could** read her communications with her fiancé, parents, friends—everyone" notably does not allege any facts (because there are none) to support a conclusion that it ever **did**. Am. Countercl. ¶ 67 (emphasis added). Likewise, Abel's bald allegation that Jonesworks "had been intercepting and monitoring all of her text exchanges" lacks any specificity or purported basis that could tip it into plausibility, including by not identifying a single supposedly "monitored" or "intercepted" message. *Id.* ¶ 70.

Abel's complaint's core grievances include her allegation that Jonesworks provided information to third parties concerning Abel's unlawful actions on behalf of Baldoni including, allegedly, to the targets of those unlawful actions. *See id.* ¶¶90-95. But these allegations relate—

at best—to messages she sent and received regarding an illegal harassment and retaliation campaign undertaken during Abel's employment on her work phone. *See id.* ¶ 90. Again, none of what she alleges is Abel's "personal" information, nor does it rise anywhere near the level of highly offensive or egregious that would meet the required standard.[7] *Cf., e.g.*, *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 237 (1998) (placing microphone on emergency medical rescuer to record conversations with patient without patient's knowledge is highly offensive); *Sanchez-Scott v. Alza Pharms.*, 86 Cal. App. 4th 365, 377-78 (2001) (presence of male drug salesperson during breast examination of female cancer patient without revealing his identity was highly offensive).

Third, Abel's false light claim fails because she does not allege any false or misleading disclosures.[8] "[A] false light claim that rests on the false nature of the publication is substantively equivalent to a libel claim based on the same publication." *Newcombe*, 157 F.3d at 694. "[W]ords constituting an alleged libel must be specifically identified." *Vogel v. Felice* 127 Cal. App. 4th 1006, 1017 n.3 (2005). Abel throws a single allegation at the wall: "Jones and Jonesworks publicly disclosed information or material regarding Abel's moral character and personal and professional life which showed Abel in a false light." Am. Countercl. ¶ 166. This merely parrots the tort and is insufficient. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (quoting *Iqbal*, 556

---

[7]    As detailed in Jonesworks' Motion to Dismiss the counterclaims brought by Wayfarer Studios, any such disclosure would also be protected by the Speak Out Act, through which Congress confirmed a strong public policy in favor of encouraging and protecting the disclosure of information related to sexual harassment. *See* Speak Out Act, 42 U.S.C. § 19401 *et seq.* Any disclosure in furtherance of such public policy cannot be considered "highly offensive."

[8]    "Under California law, to state a claim for the tort of false light invasion of privacy plaintiff must plead that (1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, and (2) the publicity was offensive to a reasonable person." *Pacini v. Nationstar Mortg., LLC*, 2013 WL 2924441, at *9 (N.D. Cal. June 13, 2013) (citing *Fellows v. Nat'l Enquirer*, 42 Cal. 3d 234, 238-39 (1986)). "California courts have determined that a false light claim that rests on the false nature of the publication is substantively equivalent to a libel claim based on the same publication." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 (9th Cir. 1998). A false light claim requires that "the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Jackson v. Mayweather*, 217 Cal. Rptr. 3d 234, 256 (2017) (citing *Price v. Operating Eng'rs Loc. Union No. 3*, 125 Cal. Rptr. 3d, 220, 226 (2011).

U.S. at 678)). Abel's complaints appear to be not that anything false was said about her, but rather that Jonesworks allegedly revealed ***Abel's own words*** to Sloane and Lively. Am. Countercl. ¶¶ 90-93. Far from portraying her in a false light, the publication of her own text messages in her own words has painted her in the truth. Her privacy counterclaims should be dismissed.

### B.    Jonesworks Cannot "Convert" Something Abel Never Owned and Voluntarily Transferred

Conversion requires: "(a) ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Voris v. Lampert*, 446 P.3d 284, 290 (Cal. 2019); *see also Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006). Abel's conversion claim (Amended Counterclaim 7) is based on the false premise that Jonesworks "interfered with Abel's ownership and/or possessory interest in [her] phone number," Am. Countercl. ¶¶ 175-80, when it reclaimed a company-issued iPhone upon Abel's termination, *id*. ¶ 26.

But Abel's claim stumbles at the starting gate. She alleges that she "owns and/or has a possessory interest in the phone number (904) 742-2954." *Id*. ¶ 176.  Courts have consistently held that telephone users do not have a property interest in their phone numbers. *See e.g., In re StarNet, Inc.,* 355 F.3d 634, 637 (7th Cir. 2004) ("No one has a property interest in a phone number."); *Freedom Fin. Co. v. New York Tel. Co.*, 285 N.Y.S.2d 163, 163-64 (N.Y. App. Div. 1967); *Slenderella Systems of Berkeley, Inc. v. Pacific Tel. & Tel. Co.*, 286 F.2d 488, 490-91 (2d Cir. 1961); *In re Best Re-Mfg. Co.*, 453 F.2d 848, 849 (9th Cir. 1971).

This is consistent with New York and California's limitations on recognizing possessory interests in intangible property. *See Thyroff v. Nationwide Mut. Ins.,* 864 N.E.2d 1272, 1278 (N.Y. 2007); *Voris*, 446 P.3d at 290-91. California courts apply a three-part test: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control;

and third, the putative owner must have established a legitimate claim to exclusivity." *G.S. Rasmussen & Assocs., v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 902-03 (9th Cir. 1992). A customer does not have an "exclusive" right to a phone number because she licenses the right to use the number from the telephone company. *See In re Forchion*, 130 Cal. Rptr. 3d 690, 709-10 (Cal. Ct. App. 2011) (domain name is not property but rather the product of a contract for services between the registrant and the registrar). Abel thus had no property right that could be converted.

Abel's claim fails to meet the other two elements as well. Abel admits that she voluntarily transferred the phone number to a phone owned by Jonesworks and to Jonesworks' phone plan. Am. Countercl. ¶ 26. Even crediting Abel's allegations, she nowhere offers any plausible basis to conclude that Jonesworks' retaining the phone number she had transferred was conversion. Abel has also offered nothing but the most conclusory—and thus insufficient—allegations that she vaguely "suffered damages." *Ott v. Fred Alger Mgmt., Inc.*, 2012 WL 4767200, at *10 (S.D.N.Y. Sept. 27, 2012). Failing every element, this claim should be dismissed.

### C. Abel's Distress, If Any, Arises From Being Caught Red-Handed And Does Not Give Rise to Tort Claims

Abel's emotional distress claims (Counterclaims 8 and 9) are equally deficient because they fail to allege the required elements of severe emotional distress, and extreme and outrageous conduct. *See generally, Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991); *Walia v. Holder*, 59 F. Supp. 3d 492, 512 (E.D.N.Y. 2014); *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal. 4th 124, 129 (1993) (under California law, negligent infliction of emotional distress "is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply."). Her negligence-based claim also requires dismissal for failure to allege the required elements of negligence.

1.    Abel Fails To Allege Legally-Cognizable Severe Emotional Distress

"Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (1993); *see also Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 122 (S.D.N.Y. 2002). Instances where courts have found this lofty standard to be adequately met include, for example, a plaintiff suffering anxiety, chest tightness, heart palpitations, panic attacks, depression, insomnia, and being diagnosed with post-traumatic stress disorder, *Kelly–Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 407 (1994), or "repeated visits to the emergency room for asthma, high blood pressure, and a panic attack." *Lopez v. Trahan*, 225 N.Y.S.3d 232, 235 (N.Y. App. Div. 2025).

Abel's rambling allegations, albeit hyperbolic, cannot meet this standard. She complains of certain alleged working conditions at Jonesworks, including Jones calling at late hours and reprimanding Abel in front of other employees, Am. Countercl.¶¶ 47-48, despite conceding that she remained working there for more than four years.[9] She complains of being abruptly terminated by Jonesworks and that the manner of her termination—concededly being asked to meet in a conference room with employment counsel and Jonesworks' chief of staff, sign paperwork, and leave—caused her to "dissociate" and fall into a state of "shock." *Id.* ¶ 62. And she complains of the inconvenience of losing access to her mobile phone number, as well as certain accounts and contacts for a short time. *Id.* ¶¶ 66, 68. Even in the most permissive light, these allegations cannot sustain her claims. *See Hughes v. Pair*, 46 Cal. 4th 1035,1039 (2009) ("[W]orry, anxiety, upset

---

[9]  Abel conspicuously deleted evidence quoted in her original counterclaims admitting that she wrote to Jones before her departure: "I respect you immensely. I feel so grateful for the opportunities you have given me with your premiere clients and how you have lifted me up as your partner."  Countercl. ¶ 65. Abel cannot "'plead around' facts … by omitting them from an amended complaint." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 190 n.18 (S.D.N.Y. 2018).

stomach, concern and agitation" are not severe emotional distress). Her conclusory allegations that she suffered "severe or extreme emotional distress and mental anguish," *see, e.g.,* Am. Countercl. ¶¶ 184, 195, cannot save the failure to specifically plead such distress. *Iqbal*, 556 U.S. at 663.

### 2.    Abel Alleges No Extreme or Outrageous Conduct

Intentional infliction of emotional distress claims are "highly disfavored" under New York law, *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014), and in any event require "extreme and outrageous conduct" under both New York and California law. *Stuto*, 164 F.3d at 827; *Christensen*, 54 Cal. 3d at 903. In New York, "[l]ike its intentional counterpart, a claim for negligent infliction of emotional distress also requires that the defendant's conduct be extreme and outrageous." *Vail v. City of New York*, 2020 WL 127639, at *4 (S.D.N.Y. Jan. 10, 2020); *see Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020). To be sufficiently extreme or outrageous, the conduct alleged must "exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982); *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985); *Hughes*, 46 Cal. 4th at 1050-51. Illustrative examples of cases in which courts have found this standard to be met reveal that it is a high threshold. *See, e.g.*, *Angie M. v. Superior Court*, 37 Cal. App. 4th 1217, 1226 (1995); *Alcorn v. Anbro Eng., Inc.*, 2 Cal. 3d 493, 496-97 (1970); *So v. Shin*, 212 Cal. App. 4th 652, 671-73 (2013); *Brown v. Riverside Church in City of New York*, 216 N.Y.S.3d 144, 152 (N.Y. App. Div. 2024).

Abel does not allege any such extreme and outrageous conduct that would be sufficient to meet this threshold. Indeed, she does not allege any specific, identifiable conduct in support of this claim ***at all***. Instead, she only vaguely invokes "[t]he misconduct of Jones and Jonesworks and its officers, directors, employees, and agents." Am. Countercl. ¶ 182. This alone justifies dismissal. *See Destfino v. Kennedy*, 2008 WL 4810770, at *3 (E.D. Cal. Nov. 3, 2008), *aff'd sub nom*. *Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) (rejecting this "form of 'shotgun pleading' that

violates Rule 8's requirement of a 'short and plain statement' and interferes with the court's ability to administer justice"). Even the supposed misconduct that Abel does allege does not approach the required threshold. Her allegations, at most, describe her after-the-fact discomfort with Jones' management style, under which Abel worked for four years, reaping ever-increasing rewards. Am. Countercl.¶¶ 45-49. The law affirmatively excludes much of this complained-of conduct from forming the basis for emotional distress claims.[10] *See, e.g., Takahashi v. Bd. of Trustees of Livingston*, 783 F.2d 848, 851 (9th Cir. 1986) (termination as employee insufficient); *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) (managing personnel, even if improperly motivated, insufficient); *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (criticizing performance insufficient); *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1158 (2d Cir. 1993) (same). Abel's nonsensical allegation that Jonesworks' counsel asking her to sign documents was "coercion and threats" cannot save this claim. Am. Countercl. ¶ 62; *see Stuto*, 164 F.3d at 829 (coercion and misrepresentation not extreme and outrageous conduct).

### 3.    Abel's Negligence-Based Claim Fails Because She Alleges No Negligence Nor Specific Breach of Duty

Negligent infliction of emotional distress, under both New York and California law, is premised on the breach of a duty owed to a plaintiff. *See Walia* 59 F. Supp. 3d at 512; *Huggins* 6 Cal. 4th at 129. Again, Abel superficially recites the elements of this claim, but makes no specific allegation of what conduct by Jones or Jonesworks allegedly breached any duty owed by them as her employers, and how. Am. Countercl. ¶¶ 191-197. Much less does she allege any breach that either unreasonably endangered her physical safety or caused her to fear for her physical safety. *See id.* Her failure to allege the required elements of this claim with specificity dooms it to failure.

---

[10]    Abel does no more than sling baseless disparaging allegations about Jones' sleep schedule, Am. Countercl. ¶ 48, Jones' vindicated concern about Abel stealing clients, *id.* ¶ 47, and magically transforms a tarot card reader at a Jonesworks office party into an alleged "psychic," *id.* ¶ 49.

*Iqbal*, 556 U.S. at 663 ("[t]hreadbare recitals of the elements" insufficient).

Further, a claim for negligent infliction cannot be premised on intentional conduct. Yet that is what Abel alleges: "Jones and Jonesworks…***intended*** to cause Abel emotional distress." Am. Countercl. ¶ 190 (emphasis added); *see Semore v. Pool*, 217 Cal. App. 3d 1087, 1105 (1990); *Smith v. Lanza*, 2022 WL 20243472, at *3 (N.D. Cal. Apr. 18, 2022); *Stampf v. Long Island R.R. Auth.*, 2010 WL 2517700, at *12 (E.D.N.Y. June 14, 2010). Abel's undisciplined throw-everything-at-the-wall approach should not be permitted. She has failed to specifically plead any required element of intentional infliction of emotional distress, and a hand-waving claim of negligence, irreconcilable with intent, cannot mask her failure. These claims should be dismissed.

### D.    Abel's Fraud Claim Fails In Every Possible Way

A claim for promissory fraud requires (1) a material, false promise; (2) made with knowledge of its falsity; (3) an intent to defraud or deceive, (4) that plaintiff reasonably relied upon; (5) causing damages. *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 239 (2d Cir. 1999); *Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1452-53 (2011). Once again, Abel fabricates a new set of facts in her desperation to save Counterclaim 10 and still fails.

Abandoning her original allegation that Jonesworks supposedly induced her to port her phone number to a Jonesworks phone in 2020 by promising her in 2024 that she "would retain possession of the actual phone number," Countercl. ¶ 181, Abel now alleges that Jonesworks fraudulently induced her to return its property when its chief of staff "promised Abel that if she gave up her Jonesworks-issued iPhone and provided her passcode, Jonesworks would release her number." Am. Countercl. ¶ 199. Abel cannot offer "different and inconsistent facts" to "plead around" her failure to properly state a cause of action for Promissory Fraud at the outset. *Harris*, 338 F. Supp. 3d at 190 n.18. What is more, Abel's claimed reliance—returning Jonesworks' iPhone to it and providing the code to make that phone usable—is not legally cognizable.  Am.

Countercl. ¶ 201. By Abel's own admission, *id.* ¶ 26 , that phone belonged to Jonesworks, and Abel had no right to withhold it, nor Jonesworks any reason to need to induce her to return it. Put another way, Abel alleges that she **declined to steal Jonesworks' property** by refusing to return it on request. Deciding not to commit a crime is not legally cognizable reliance.

Abel also must—but has not—"set out specific facts in [her] complaint demonstrating that defendants never intended to make good on any of the promises made." *Elite Phys. Services, LLC v. Citicorp Payment Services, Inc.*, 2009 WL 10669137, at *6 (S.D.N.Y. Oct. 9, 2009); *see also Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) ("Although failure to perform a contract does not constitute fraud, a promise made without intention to perform can be actionable fraud."). Instead, she generically alleges that "Jonesworks never intended to perform the promise."[11] Am. Countercl. ¶ 201. Such vague conclusions are insufficient. *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 910 (E.D. Cal. 2018).

Finally, Abel's generic claim that she "was harmed" is insufficient for lacking any "nexus between [defendant's] alleged misrepresentations and [her] losses." Am. Countercl. ¶¶ 203-04; *Laub v. Faessel*, 745 N.Y.S.2d 534, 537 (N.Y. App. Div. 2002); *see also Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012) (A plaintiff must have "suffered consequential damages…caused by the actions [the plaintiff] took in reliance on the defendant's misrepresentations."). Abel's overreaching fraud claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss Abel's Amended Counterclaims in their entirety with prejudice.

---

[11]  Seemingly recognizing that her previous, similarly sparse allegation of intent "on information and belief" was even more deficient, Abel conveniently dropped that phrase from her Amended Counterclaims. Counterclaims ¶ 185; *see Shroyer v. New Cingular*, 622 F.3d 1035, 1042 (9th Cir. 2010) (Fraud "claims predicated on information and belief are not usually sufficiently particular."). But such tactical amendments are unavailing. *Harris,* 338 F. Supp. 3d at 190.

DATED:    May 8, 2025

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP


By: _/s/ Kristin Tahler_
   **QUINN EMANUEL URQUHART &**
   **SULLIVAN, LLP**

   Kristin Tahler
   865 S. Figueroa Street, 10th Floor
   Los Angeles, California 90017
   (213) 443-3000
   kristintahler@quinnemanuel.com

   Maaren A. Shah
   Danielle Lazarus
   295 5th Avenue
   New York, New York 10016
   (212) 849-7000
   maarenshah@quinnemanuel.com

   Nicholas Inns (_pro hac vice_)
   1300 I Street NW
   Suite 900
   Washington, D.C. 20005
   (202) 538-8000
   nicholasinns@quinnemanuel.com

   _Attorneys for Plaintiffs Stephanie Jones and_
   _Jonesworks, LLC_