## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE JONES, JONESWORKS LLC,<br><br>      Plaintiffs,<br><br>v.<br><br>JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, and JOHN DOES 1-10,<br><br>      Defendants. | Civ. Action No. 1:25-cv-00779-LJL<br>rel. 1:24-cv-10049-LJL<br>(Consolidated for pretrial purposes with 1:25-cv-00449-LJL) |

## JENNIFER ABEL'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS HER AMENDED COUNTERCLAIMS

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................ 2

III.  LEGAL STANDARD ....................................................................................... 7

IV.   ABEL'S DATA PRIVACY CLAIMS ARE ADEQUATELY PLEADED ...................... 7

    A.    Abel States a Claim Under the Stored Communications Act ................................. 8

    B.    Abel States a Claim Under the Federal Wiretap Act ............................................. 9

    C.    Abel States a Claim Under California Penal Code Section 502 ........................... 10

        1.    Jonesworks Relies on Outdated Law .................................................. 10

        2.    Jonesworks' Jurisdictional Argument Fails ................................................ 11

V.    ABEL'S TORT CLAIMS ARE ADEQUATELY PLEADED ........................................ 12

    A.    California Law Applies to Abel's Tort Claims ..................................................... 12

    B.    Abel's Invasion of Privacy Claims Are Adequately Pleaded .............................. 14

        1.    Abel States a Claim for Intrusion Upon Seclusion and Invasion of Privacy
Under the California Constitution .................................................................. 14

        2.    Abel States a Claim for False Light ............................................................. 16

    C.    Abel States a Claim for Conversion ..................................................................... 16

    D.    Abel's Emotional Distress Claims Are Adequately Pleaded ............................... 18

        1.    Abel States a Claim for Intentional Infliction of Emotional Distress ........... 18

        2.    Abel States a Claim for Negligent Infliction of Emotional Distress ............. 19

    E.    Abel States a Claim for Promissory Fraud .......................................................... 20

VI.   CONCLUSION ................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*In re Accellion, Inc. Data Breach Litig.*,
    713 F. Supp. 3d 623 (N.D. Cal. 2024) ................................................................20

*Action Security Service, Inc. v. America Online, Inc.*,
    2005 WL 8167630 (M.D. Fla. Mar. 23, 2005) ..................................................17

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013) ..............................................................13

*AEI Life LLC v. Lincoln Ben. Life Co.*,
    892 F.3d 126 (2d Cir. 2018) ............................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................7

*Astroworks, Inc. v. Astroexhibit, Inc.*,
    257 F. Supp. 2d 609 (S.D.N.Y. 2003) ............................................................17

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
    11 F.4th 972 (9th Cir. 2021) ............................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................7

*Biden v. Ziegler*,
    737 F. Supp. 3d 958 (C.D. Cal. 2024) ............................................................11

*Boris v. Perez*,
    2012 WL 13013038 (C.D. Cal. Aug. 16, 2012) ..............................................17

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ............................................................11

*Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.*,
    18 F. Supp. 3d 966 (N.D. Iowa 2014) ............................................................17

*Condit v. Dunne*,
    316 F. Supp. 2d 344 (S.D.N.Y. 2004) ............................................................13

*Conley v. Roman Catholic Archbishop of San Francisco*,
    85 Cal. App. 4th 1126 (2000) ..........................................................................18

*Costanza v. Seinfeld*,
  181 Misc. 2d 562 (Sup. Ct. 1999), *aff'd as modified*, 279 A.D.2d 255 (2001) ...................... 13

*Curto v. Medical World Communications*,
  2006 WL 1318387 (E.D.N.Y. May 15, 2006) .......................................................... 15

*De Havilland v. FX Networks, LLC*,
  21 Cal. App. 5th 845 (2018) ............................................................................. 13

*DeIuliis v. Engel*,
  2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ........................................................ 13

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987) ............................................................................. 20

*Express Companies, Inc. v. Mitel Techs., Inc.*,
  2013 WL 5462334 (S.D. Cal. Sept. 30, 2013) ........................................................ 17

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ............................................................................. 14

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ........................................................................... 11

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
  414 F.3d 325 (2d Cir. 2005) .............................................................................. 12

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*,
  2022 WL 1997207 (S.D.N.Y. June 6, 2022) ..................................................... 12, 13

*Fletcher v. Western Nat'l Life Ins. Co.*,
  10 Cal. App. 3d 376 (1970) ............................................................................... 19

*In re Fontainebleau Hotel Corp.*,
  508 F.2d 1056 (5th Cir. 1975) ........................................................................... 17

*Franco v. Diaz*,
  51 F. Supp. 235 (E.D.N.Y. 2014) ....................................................................... 20

*Fraser v. Nationwide Mut. Ins. Co.*,
  352 F.3d 107 (3rd Cir. 2003) .............................................................................. 9

*Freedom Mortg. Corp. v. Tschernia*,
  2021 WL 1163807 (S.D.N.Y. Mar. 26, 2021) ........................................................ 17

*In re GE/CBPS Data Breach Litig.*,
  2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) .......................................................... 20

*Gilbert v. Seton Hall Univ.*,
  332 F.3d 105 (2d Cir. 2003) .............................................................................. 13

*Hately v. Watts*,
   917 F.3d 779 (4th Cir. 2019) ................................................................................9

*Hernandez v. Hillsides, Inc.*,
   47 Cal.4th 272 (2009) ......................................................................................14

*Hill v. Nat'l Collegiate Athletic Assn.*,
   7 Cal. 4th 1 (1994) ..........................................................................................14

*Horton v. Greenwich Hosp.*,
   2014 WL 956468 (S.D.N.Y. 2014) ...................................................................13

*Howell v. New York Post Co., Inc.*,
   81 N.Y.2d 115 (1993) .......................................................................................18

*In re Invs. Funding Corp. of New York Sec. Litig.*,
   100 F.R.D. 64 (S.D.N.Y. 1983) ..........................................................................7

*Jackson v. Mayweather*,
   10 Cal. App. 5th 1240 (2017), *as modified* (Apr. 19, 2017) ...........................16

*Kesner v. Dow Jones & Co., Inc.*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021) ..............................................................13

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) .........................................................................................13

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012).................................................................................7

*KOVR-TV, Inc. v. Superior Court*,
   31 Cal. App. 4th 1023 (1995) ...........................................................................18

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) ..........................................................................17

*La Luna Enters., Inc. v. CBS Corp.*,
   74 F. Supp. 384 (S.D.N.Y. 1999)......................................................................14

*Lazar v. Superior Ct.*,
   12 Cal. 4th 631 (1996) .....................................................................................20

*Lee v. Bankers Tr. Co.*,
   166 F.3d 540 (2d Cir. 1999)..............................................................................13

*Lee v. Hanley*,
   61 Cal.4th 1225 (2015) .....................................................................................16

*Leventhal v. Knapek*,
   266 F.3d 64 (2d Cir.2001).................................................................................15

iv

*Lindsay-Stern v. Garamszegi*,
2016 WL 11745948 (C.D. Cal. Oct. 13, 2016)................................................8, 11

*Lipin v. Bender*,
193 A.D.2d 424 (1st Dep't 1993)..........................................................8

*Lively v. Wayfarer Studios et al.*,
1:24-cv-10049 (S.D.N.Y. Jan. 31, 2025) ............................................5

*Machleder v. Diaz*,
801 F.2d 46 (2d Cir. 1986).................................................................13

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*,
48 Cal. 3d 583 (1989) .........................................................................19

*Miller v. Fairchild Indus., Inc.*,
797 F.2d 727 (9th Cir. 1986) ..............................................................19

*Mintz v. Mark Bartelstein and Associates, Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) ........................................11, 15

*Molien v. Kaiser Found. Hosps.*,
27 Cal. 3d 916 (1980) ........................................................................20

*of Gemini Real Estate Advisors LLC v. La Mack*,
2017 WL 1215753 (S.D.N.Y. Mar. 31, 2017) ....................................9

*Pappas v. Tzolis*,
20 N.Y.3d 228 (2012) .........................................................................16

*Petrone v. Davidoff Hutcher & Citron, LLP*,
150 A.D.3d 776 (2d Dep't 2017) ........................................................16

*Plotnik v. Meihaus*,
208 Cal. App. 4th 1590 (2012) ...........................................................19

*Press v. Primavera*,
685 F. Supp. 3d 216 (S.D.N.Y. 2023)................................................13

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
587 F. Supp. 2d 548 (S.D.N.Y. 2008)..........................................8, 9, 15

*Schwartz v. ADP, Inc.*,
2021 WL 3172029 (M.D. Fla. July 26, 2021) ....................................8

*Scollar v. City of New York*,
160 A.D.3d 140 (1st Dep't 2018) ........................................................18

*Matter of Sec. Inv. Props., Inc.*,
559 F.2d 1321 (5th Cir. 1977) ............................................................17

*Smith v. YETI Coolers, LLC*,
   754 F. Supp. 3d 933 (N.D. Cal. 2024) ................................................................13

*Stevens & Co. LLC v. Espat*,
   2025 WL 950989 (S.D.N.Y. Mar. 28, 2025) (Liman, J.) ..................................12, 13

*Stewart v. Jackson & Nash*,
   976 F.2d 86 (2d Cir. 1992)...................................................................................20

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026 (N.D. Cal. 2014) ................................................................7, 8

*Tantaros v. Fox News Network, LLC*,
   2018 WL 2731268 (S.D.N.Y. May 18, 2018) .......................................................9

*TBG Ins. Servs. Corp. v. Superior Ct.*,
   96 Cal. App. 4th 443 (2002) ..............................................................................15

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ........................................................................8, 20

*Thyroff v. Nationwide Mut. Ins. Co.*,
   8 N.Y.3d 283 (2007) .........................................................................................17

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) .............................................................................10

*United States v. Moseley*,
   980 F.3d 9 (2d Cir. 2020) ...................................................................................12

*Vasarhelyi v. New Sch. for Soc. Rsch.*,
   230 A.D.2d 658 (1st Dep't 1996) .......................................................................18

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) ...........................................................................11

*Yukos Capital S.A.R.L. v. Feldman*,
   977 F.3d 216 (2d Cir. 2020)................................................................................9

*Zaratzian v. Abadir*,
   2014 WL 4467919 (S.D.N.Y. Sept. 2, 2024), *aff'd,* 694 F. App'x 822 (2d Cir. 2017) ..............................................................................................................9, 10

## **Rules/Statutes**

Fed. R. Civ. P. 8 ................................................................................................20

Fed. R. Civ. P. 9(b) ...................................................................................2, 20, 22

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 7, 20

Fed. R. Civ. P. 15(a)(2) ........................................................................................... 2, 7

18 U.S.C. § 2511(1)(a) ................................................................................................. 9

18 U.S.C. § 2520(a) ...................................................................................................... 9

18 U.S.C. § 2701(a)(1) ................................................................................................. 8

18 U.S.C. § 2707(a) ...................................................................................................... 8

Cal. Civ. Code § 1710(4) ............................................................................................ 20

California. Penal Code § 27 ........................................................................................ 11

California Penal Code § 501 ....................................................................................... 10

California Penal Code § 502 .................................................................................. *passim*

Computer Fraud and Abuse Act
   18 U.S.C. § 1030, et seq. ........................................................................................ 6

Federal Wiretap Act
   18 U.S.C. § 2510, *et seq.* ............................................................................. 1, 6, 9, 10

Stored Communications Act
   18 U.S.C. § 2701, *et seq.* .............................................................................. 1, 8, 6, 9

Defendant and Counterclaimant Jennifer Abel ("Abel") respectfully submits this memorandum of law in opposition to Plaintiffs and Counterclaim-Defendants Jonesworks LLC and Stephanie Jones' (together, "Jonesworks") motion to dismiss her amended counterclaims ("Am. Countercl.") (Dkt. 50) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (the "Motion" or "Mot.") (Dkt. 56).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Jennifer Abel's Amended Counterclaims arise from the theft of her private data by her former employer, Jonesworks, and its principal, Stephanie Jones (together, "Jonesworks"). Having pillaged Abel's personal iCloud and email accounts, Jonesworks has undertaken a malicious campaign to villainize and humiliate her and destroy her professional reputation. Mission accomplished. Abel now asserts claims for violations of multiple data privacy statutes as well as common law claims for invasion of privacy, infliction of emotional distress, and fraud. Its feigned outrage notwithstanding, Jonesworks' arguments for dismissal are weak and convoluted.

As set forth below, Abel amply satisfies her pleading burden. As for Abel's data privacy claims, Jonesworks violated the Stored Communications Act ("SCA") by accessing Abel's text messages and emails from cloud-based servers owned by Apple and Google without authorization and the Federal Wiretap Act ("FWA") by intercepting her messages in real-time, through iCloud, after Abel's termination and the seizure of her phone.

Jonesworks also violated California Penal Code § 502 through its willful misuse of Abel's private data. Jonesworks' jurisdictional argument carries no weight because its misconduct occurred in California and was directed toward a California citizen. Although Jonesworks invokes the New York choice of law provision in Abel's employment agreement, it neglects to consider the limited scope of the provision, which does not extend to Abel's tort claims. Abel also readily

shows sufficiently outrageous conduct to sustain her intentional infliction of emotional distress claim and breach of a duty underpinning her negligent infliction of emotional distress claim. Abel's conversion claim, based on Jonesworks' theft of her longtime personal phone number, likewise passes muster. Finally, Abel pleads fraud with the requisite particularity, alleging the who, what, when, and where required under Rule 9(b) of the Federal Rules of Civil Procedure.

The Court should deny Jonesworks' Motion as to Abel's second through tenth claims for relief. Abel's counterclaims satisfy the applicable pleading standards and warrant adjudication on the merits. However, should the Court find any aspect of Abel's pleading insufficient, Abel respectfully requests leave to amend her counterclaims to cure any perceived deficiencies, consistent with the liberal standard for amendment under Federal Rule of Civil Procedure 15(a)(2).

## II.    FACTUAL BACKGROUND

Jennifer Abel was a Vice President of Jonesworks LLC, a prominent New York-based public relations and communications agency founded by Stephanie Jones, beginning in 2020. Am. Countercl. ¶¶ 3, 10, 13-14, 17. Jonesworks has represented, at various times, Dwayne "The Rock" Johnson, Jeff Bezos, Lauren Sanchez, Venus Williams, Tom Brady, and Chris Hemsworth. *Id.* ¶ 11. Abel was poached by Jonesworks after 12 years at a publicly traded, multinational marketing firm to oversee Jonesworks' talent team and build out its Los Angeles office. *Id.* ¶¶ 13-14, 17. Abel became a leader of the California operation and, within two years, had grown the Los Angeles headcount from four employees to 12. *Id.* ¶ 27. For the entirety of her tenure, Abel largely managed Jonesworks' work for Wayfarer Studios and Justin Baldoni. *Id.* ¶¶ 71-72.

Behind closed doors, however, Jonesworks was a troubled work environment led by an erratic and mercurial leader. *Id.* ¶¶ 22-24, 34-36, 41-44. Jones' worst excesses were largely hidden from view due to draconian non-disclosure agreements, Jones' threats, and a climate of fear pervading Jonesworks' past and present clients and employees. *Id.* ¶ 36. In or around May 2024,

the chaos burst into public view, as news outlets began to report that Jonesworks was hemorrhaging clients, and a website called "Stephanie Jones Leaks" went live disclosing a litany of disturbing allegations about Jones' behavior and business practices. *Id.* ¶¶ 36-37, 45. At around the same time, Jones learned that Business Insider was working on an unflattering story about her. *Id.* ¶¶ 39-40. The torrent of negative publicity sent Jones into a tailspin. *Id.* ¶¶ 47-48. Jones began lashing out at Abel, often in bizarre ways, *id.* ¶¶ 47-49, as well as perceived adversaries, including current and former employees, journalists deemed hostile, and clients who had fired Jonesworks. *Id.* ¶¶ 48, 50, 52. This conduct included, among other things, creating fake social media accounts to these individuals, planting negative stories about them, and falsifying allegations of misconduct. *Id.*

On July 10, 2024, Abel notified Jonesworks that she intended to resign as of August 23, 2024. *Id.* ¶ 53. Jones took the news poorly. *Id.* ¶¶ 54, 56. Still, Abel was committed to departing on amicable terms. *Id.* ¶ 55. In her final week, Abel arranged the release of her phone number and personal data upon her departure. *Id.* ¶ 57. That was critically important because, upon joining Jonesworks, Abel was issued a company-owned iPhone to serve as her primary communication device and encouraged to transfer her personal phone number to the Jonesworks corporate phone plan. *Id.* ¶ 26. This made her primary phone number accessible only through the company-issued device. *Id.* Because it was her sole mobile phone, Abel configured the iPhone to access her personal Apple ID/iCloud and personal email accounts. *Id.* This integration resulted in the continuous synchronization of her private emails, text messages, photos, documents, contacts, calendar entries, and other app data associated with her Apple ID and email accounts onto the company-owned device. *Id.* ¶¶ 26, 57-58. As a result, the iPhone became a hybrid device, serving as the central point for both her personal and professional digital communications and data. *Id.*

Throughout her employment, Jonesworks did not provide Abel with any written policies, guidelines, or instructions regarding the use of company-owned devices for personal purposes. *Id.*

3

¶¶ 25-26, 57-58. There were no documented restrictions or advisories concerning the integration of personal accounts, the storage of personal data, or the expectation of privacy in relation to personal information stored on company devices. *Id.* In the absence of any such policies or warnings, Abel had no reason to believe that her personal data would be subject to access or review by Jonesworks, and she used the device for both work and personal matters. *Id.* Jonesworks was fully aware that by virtue of this arrangement, Abel's private digital information would be comingled with her work-related data on a device it owned. *Id.* Jonesworks assured Abel multiple times, including during her final week, that it had no problem releasing her phone number and personal data. *Id.* ¶ 57.

On August 21, 2024, Abel walked into the Jonesworks Los Angeles office and was confronted by Jonesworks' chief of staff, an attorney, a digital forensics expert, and a physically imposing security guard. *Id.* ¶ 59. They ushered Abel into a conference room, with the security guard posted just outside its doors. *Id.* ¶ 60. Abel did not believe she was free to leave. *Id.* There, Abel was presented with documents, which she was instructed to review and sign. *Id.* ¶ 61. The attorney told her that Jonesworks suspected she had engaged in misconduct and requested consent to search Abel's personal laptop, warning that Jonesworks would have grounds to sue if she refused. *Id.* Under duress, Abel signed the documents and provided her personal laptop. *Id.* ¶ 63. A search of Abel's laptop turned up nothing of note. *Id.* Thereafter, the Jonesworks chief of staff ordered her to surrender her iPhone and provide the passcode. *Id.* ¶ 64. Abel was told her passcode was needed to facilitate the release of her phone number. *Id.* She did not consent to a search of the device. *Id.* Because she was ambushed, she had no opportunity to wipe the device or log out of her personal accounts. *Id.* Intimidated and shell-shocked by the experience and desperate to leave, Abel asked for confirmation that Jonesworks would release her phone number—which she received—and then complied, surrendering the device and disclosing her passcode to the

4

Jonesworks chief of staff. *Id.* ¶ 65. She was then frog-marched out of the building. *Id.*

Abel went straight to a Verizon store a short distance away to coordinate the transfer of her phone number. *Id.* ¶ 66. After confirming to Verizon by phone that Jonesworks was in the process of effectuating the transfer, Jonesworks went dark. *Id.* After four hours of unanswered calls, Abel left Verizon in panic and despair. *Id.* Jonesworks had usurped her phone number and cut off her access to critical accounts protected by two-factor authentication. *Id.* Because Abel's personal accounts were logged in and active on the device, Jonesworks was able to access, monitor, and retrieve her private communications and data without consent and without encountering any technical barriers. Abel was unable to prevent Jonesworks from accessing, copying, or disclosing any of this personal data. *Id.* ¶ 67. Among the data obtained by Jonesworks was all of Abel's text messages, emails, and personal photos. *Id.*

That very day, Jonesworks shared Abel's private communications with Blake Lively's publicist, Leslie Sloane. *Id.* ¶ 90. Abel also learned that Jones had been sharing her private text messages with the entire office, mocking and disparaging her. *Id.* ¶ 68. Very shortly thereafter, Jones disseminated Abel's stolen communications directly to Sloane, Lively, and her husband Ryan Reynolds. *Id.* ¶ 91. Abel's text messages revealed that Abel and others in the Wayfarer Studios circle held Lively in deep disdain. *Id.* ¶ 92. The reasons why are well-documented. *Id.*; *see* Dkts. 50 (First Amended Complaint) & 50-1 (Timeline of Relevant Events), *Lively v. Wayfarer Studios et al.*, 1:24-cv-10049, (S.D.N.Y. Jan. 31, 2025). What they do not reveal is any sort of wrongdoing of the kind alleged by Lively. Am. Countercl. ¶ 92. Regardless, Jones knew full well how Abel's communications would be used by an embattled Lively and her team. *Id.* ¶ 93. Enlisting the help of the New York Times, Lively and her team commissioned a hit on the Wayfarer Parties, including Abel. *Id.*

To create a veneer of legitimacy surrounding their possession of Abel's private text

messages, on September 27, 2024, the Lively Parties initiated a sham lawsuit in the New York State Supreme Court (Index No. 655130/2024). *Id.* ¶ 95. The sham lawsuit was filed on behalf of "Vanzan, Inc.", a corporate entity associated with Lively, and named only Doe defendants. *Id.* ¶ 95. The same day, Jonesworks warned a departing employee not to work for Abel because her business would not be around much longer. *Id.* ¶ 97.

Once the lawsuit was filed, the Lively Parties used it to issue a subpoena on Jonesworks for the private communications extracted from Abel's iCloud and email accounts. *Id.* ¶ 98. By strategically naming only Does instead of the proper defendants, Lively avoided having to give them notice of the subpoena. *Id.* ¶ 98. Neither Lively nor Jonesworks notified Abel that her private communications and personal data was being turned over to the Lively Parties. *Id.* ¶¶ 98-100. Working in concert, Jonesworks and the Lively Parties were able to cover up how Jones obtained the information. *Id.* ¶ 100. Jonesworks retained access to Abel's iCloud until Abel changed her password in January 2025. *Id.* ¶¶ 69-70. From August 21, 2024 through then, Jonesworks was monitoring and intercepting in real-time Abel's text messages through her iCloud account. *Id.*

On December 26, 2024, Jonesworks sued Abel, Wayfarer, Baldoni, and Melissa Nathan in the New York State Supreme Court. The action was removed to the Southern District of New York, where Abel brought counterclaims against Jonesworks. In her operative amended counterclaims, Abel asserts claims for (1) violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030, et seq.), *id.* ¶¶ 105-117; (2) violation of the Stored Communications Act (18 U.S.C. § 2701, et seq.), *id.* ¶¶ 118-130; (3) violation of the Federal Wiretap Act (18 U.S.C. § 2510, et seq.), *id.* ¶¶ 139-149; (4) violation of California Penal Code § 502, *id.* ¶¶ 150-154; (5) invasion of privacy, *id.* ¶¶ 155-164; (6) false light, *id.* ¶¶ 165-174; (7) conversion, *id.* ¶¶ 175-180; (8) intentional infliction of emotional distress, *id.* ¶¶ 181-187; (9) negligent infliction of emotional distress, *id.* ¶¶ 188-197; and (10) promissory fraud, *id.* ¶¶ 198-206.

### III.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Courts apply an "extremely liberal standard" for amending pursuant to Federal Rule of Civil Procedure 15(a)(2). *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires."); *In re Invs. Funding Corp. of New York Sec. Litig.*, 100 F.R.D. 64, 65 (S.D.N.Y. 1983) (describing Rule 15 as embracing an "extremely liberal standard" with respect to amendment).

### IV.     ABEL'S DATA PRIVACY CLAIMS ARE ADEQUATELY PLEADED

Abel asserts statutory claims arising from Jonesworks' unauthorized access, copying, and dissemination of Abel's private communications and data purloined from Abel's confiscated cell phone. Federal and state law prohibits the unauthorized accessing, copying, and disseminating an individual's private text messages and emails without consent. The fact that Jonesworks owned the iPhone did not vest Jonesworks with right to extract Abel's personal data from her non-Jonesworks cloud accounts without consent, which Abel never gave. Abel's claims are well-supported by fact and law and are more than sufficient to survive dismissal.

As a preliminary matter, Jonesworks' Motion relies heavily on a lone, out-of-district case, *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026 (N.D. Cal. 2014), to manufacture a false

impression that Abel's claims are legally deficient. *Sunbelt Rentals* is readily distinguishable. There, the plaintiff failed to plead the detailed allegations present here, *id.* at 1033, and the employer's access resulted from the employee's carelessness, not the employer's willful conduct. *Id.* at 1030. Moreover, *Sunbelt Rentals* is inconsistent with established law[1] and has been criticized for its cursory treatment of evolving privacy issues. *See Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *8 (C.D. Cal. Oct. 13, 2016) (contrasting plaintiff's extensive evidence of wrongdoing with the *Sunbelt Rentals* plaintiff's failure to detail specific wrongful conduct).

## A.    Abel States a Claim Under the Stored Communications Act

The Stored Communications Act ("SCA") provides a civil remedy against anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided … and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. §§ 2701(a)(1), 2707(a). "[E]ectronic storage" includes both "temporary, intermediate storage … incidental to … electronic transmission," and "storage … for purposes of backup protection." 18 U.S.C. § 2510(17); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004).

Jonesworks argues that data stored on personal devices, such as Abel's iPhone, does not satisfy the requirements for an SCA violation. However, Abel alleges that Jonesworks accessed her communications stored on cloud-based servers owned by Apple and Google. Am. Countercl. ¶¶ 64, 66-70, 89-90, 124, 129. Courts have consistently held that such cloud-based systems are "the types of facilities the SCA generally protects." *Schwartz v. ADP, Inc.*, 2021 WL 3172029, at *2 (M.D. Fla. July 26, 2021) (finding allegations of data obtained from a laptop sufficient to state

---

[1] *See, e.g., Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 561 (S.D.N.Y. 2008) (rejecting implied consent through careless conduct); *Lipin v. Bender,* 193 A.D.2d 424, 426 (1st Dep't 1993) (rejecting the argument that because documents "had been left unsecured, directly in front of the plaintiff, in a public area, ... plaintiff had been 'invited' to read the documents").

a claim under the SCA); *see also Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, 2017 WL 1215753, at \*9 (S.D.N.Y. Mar. 31, 2017) (allegation of emails stored on service provider's systems "are stored communications subject to the SCA"); *Pure Power Boot Camp*, 587 F. Supp. 2d at 555 (same); *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 115 (3rd Cir. 2003) (e-mails stored on the defendant's system was subject to the SCA); *Hately v. Watts*, 917 F.3d 779, 782 (4th Cir. 2019) (SCA protects against illicit access to stored communications in "remote computing operations and large data banks that stored emails"). Abel's allegations that Jonesworks accessed her cloud-based accounts without authorization are sufficient to state a claim under the SCA. *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 232 (2d Cir. 2020).

### B.    Abel States a Claim Under the Federal Wiretap Act

The FWA prohibits the intentional interception, disclosure, or use of wire, oral, or electronic communications except as authorized. 18 U.S.C. § 2511(1)(a). The statute provides a private right of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used." 18 U.S.C. § 2520(a). "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). Courts have interpreted "intercept" to require contemporaneous, or real-time acquisition. *See Tantaros v. Fox News Network, LLC*, 2018 WL 2731268, at \*7 (S.D.N.Y. May 18, 2018); *Zaratzian v. Abadir*, 2014 WL 4467919, at \*6 (S.D.N.Y. Sept. 2, 2024), *aff'd,* 694 F. App'x 822 (2d Cir. 2017).

Jonesworks argues that Abel's federal wiretapping claim fails because she does not plead the simultaneous interception of a communications. Jonesworks is simply wrong. The Amended Counterclaim explicitly states that after Abel left Jonesworks and after Jonesworks seized her phone, Jonesworks accessed her iCloud account and used it to monitor her text messages in real time, contemporaneously with their transmission. Am. Countercl. ¶¶ 69-70. Where multiple

devices are logged into the same iCloud account, both receive messages in real time. This is precisely the type of interception the FWA prohibits. *Zaratzian*, 2014 WL 4467919, at *7 (simultaneous receipt of emails is interception under the FWA).

Jonesworks remained logged into Abel's iCloud account and received her messages as they were sent and received by Abel after she regained access to her account. Am. Countercl. ¶¶ 70, 142. These allegations are sufficient to state a claim under the FWA.

### C.    Abel States a Claim Under California Penal Code Section 502

Section 502 is intended to broadly protect against unauthorized access and misuse of computer data. Cal. Penal Code § 502(a). California Penal Code § 502 imposes liability on whoever "[k]nowingly accesses and without permission … uses any data, computer, computer system, or computer network in order to … wrongfully control or obtain money, property, or data." Pen. Code § 502(c)(1).[2]

#### 1.    Jonesworks Relies on Outdated Law

Jonesworks first argues that because it used the passcode coerced from Abel, it did not circumvent technical or code-based barriers and therefore did not violate Penal Code § 501. However, Jonesworks' argument relies on stale case law requiring circumvention of technical barriers. *See* Mot. at 11 (citing *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 950 (N.D. Cal. 2014)); *see also* Mot. at 12 (citing *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014)). In 2015*,* the Ninth Circuit clarified that "access" under § 502 includes logging in with a valid password and then improperly taking or using information. *United States v. Christensen*, 828 F.3d 763, 788-89 (9th Cir. 2015) (holding that the focus of Penal Code § 502 is

---

[2] Abel also alleges that Jonesworks violated other subsections of Penal Code § 502. For example, Section 502 also imposes liability on any person who takes, copies, or makes use of wrongfully obtained data, *id.* § 502(c)(2), or unlawfully accesses or provides a means for accessing any computer, *id.* § 502(c)(6)-(7). For present purposes, it suffices to address Section 502(c)(1).

the unauthorized taking or use of data rather than unauthorized access); *Biden v. Ziegler*, 737 F. Supp. 3d 958, 976 (C.D. Cal. 2024); *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016).

Abel alleges that Jonesworks obtained and copied data from her iCloud and email accounts without permission, causing her harm. This all that is required to state a claim under Penal Code § 502. Am. Countercl. ¶¶ 151-152; *see Mintz v. Mark Bartelstein and Associates, Inc.*, 906 F. Supp. 2d 1017, 1031-32 (C.D. Cal. 2012) (unauthorized entry into employee's Gmail account violated statute); *Lindsay-Stern*, 2016 WL 11745948, at *5. It is hard to take seriously Jonesworks' contention that it has "no notice" of Abel's accusations or that her allegations of harm were insufficient. Mot. at 15. *See Lindsay-Stern*, 2016 WL 11745948, at *6 (emotional damages cognizable under statute); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1065 (N.D. Cal. 2015) (collection and disclosure of personal information cognizable as damages under the statute).

### 2.    Jonesworks' Jurisdictional Argument Fails

Jonesworks next argues that there is no nexus between their unauthorized access and California. However, for a Section 502 claim, courts apply the "purposeful direction" or "effects" test, which is satisfied where the defendant's intentional acts are aimed at the forum state and cause harm there. *See Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979-80 (9th Cir. 2021); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

Abel is a California resident, based in Los Angeles, who suffered harm in California. Am. Countercl. ¶¶ 32, 104. Jonesworks seized Abel's iPhone in California and upon seizure accessed its data in California. *Id.* ¶¶ 64-65, 90. Thus, the acts occurred "in whole or in part" in California. Pen. Code § 27. California has a strong interest in protecting its residents from tortious injury. *See Biden*, 737 F. Supp. 3d at 972 (quoting *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831, 836 (9th

Cir. 1996). Those allegations are sufficient in themselves to establish liability under Penal Code §
502.

## V.   ABEL'S TORT CLAIMS ARE ADEQUATELY PLEADED

### A.   California Law Applies to Abel's Tort Claims

Jonesworks contends that New York law, not California law, governs Abel's counterclaims
and that, as a result, Abel's fifth and sixth causes of action must be dismissed because New York
does not recognize these claims. Mot. at 15-16. Jonesworks bases this argument on a New York
choice of law provision in Abel's 2021 Employment Agreement, which states: "The Agreement
and the performance of the Parties' obligations hereunder will be governed by and construed in
accordance with the laws of the State of New York, without giving effect to any choice of law
principles." Am. Countercl. ¶ 31. The key issues are whether this provision is valid and whether it
applies to all of Abel's counterclaims.

A federal court sitting in diversity applies the forum state's choice of law rules to determine
both the validity and scope of a contractual choice of law provision. *AEI Life LLC v. Lincoln Ben.
Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018); *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414
F.3d 325, 333 (2d Cir. 2005). Under New York law, such a provision is enforceable if the chosen
law has sufficient contacts with the transaction and there is no fraud or violation of public policy.
*United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020). Although Abel lived and worked primarily
in California, the provision may be valid given Jonesworks' New York domicile. *Stevens & Co.
LLC v. Espat*, 2025 WL 950989, at *9 (S.D.N.Y. Mar. 28, 2025) (Liman, J.)

However, the scope of the provision is limited. Under New York law, a contractual choice
of law clause applies only to contract-based claims unless it expressly covers the entire relationship
between the parties. *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 1997207, at *16
(S.D.N.Y. June 6, 2022) (Liman, J.) (quoting *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530,

540 (S.D.N.Y. 2020)). The provision here is limited to "[t]he Agreement and the performance of the Parties' obligations hereunder" and does not reference the broader relationship between the parties. Such a "narrow" provision does not extend to tort or other non-contractual claims. *Fleetwood Servs.*, 2022 WL 1997207, at *16 (quoting *Fin. One Pub. Co.*, 414 F.3d at 335). Thus, New York law applies only to contractual claims. *Stevens*, 2025 WL 950989, at *10.

Because the New York choice of law provision does not reach Abel's tort claims, the Court must conduct a separate choice of law analysis for those claims, applying New York's choice of law rules as the forum state. *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Press v. Primavera*, 685 F. Supp. 3d 216, 225 (S.D.N.Y. 2023). The first step is to determine whether New York and California law conflict. *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 167 (S.D.N.Y. 2021); *Condit v. Dunne*, 316 F. Supp. 2d 344, 352 (S.D.N.Y. 2004). An actual conflict exists where the laws would lead to different outcomes. *Horton v. Greenwich Hosp.*, 2014 WL 956468, at *2 n.1 (S.D.N.Y. 2014).

Here, there is a direct conflict. California recognizes claims for false light and invasion of privacy, while New York does not. *Compare De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 865 (2018) and *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024) with *DeIuliis v. Engel*, 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021) and *Costanza v. Seinfeld*, 181 Misc. 2d 562, 564 (Sup. Ct. 1999), *aff'd as modified*, 279 A.D.2d 255 (2001).

Where such a conflict exists, New York applies the law of the state with the most significant relationship to each claim—a doctrine known as dépeçage. *DeIuliis*, 2021 WL 4443145, at *4. For tort claims, this is generally the plaintiff's domicile, where the injury occurred. *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (quoting *Reeves v. American Broad. Co.*, 719 F.2d 602, 605 (2d Cir. 1983)); *Machleder v. Diaz*, 801 F.2d 46, 51-52 (2d Cir. 1986); *Adelson v. Harris*, 973 F. Supp. 2d 467, 476 (S.D.N.Y. 2013) (quoting *Condit*, 317 F. Supp. 2d at 353).

Here, California's interest is far greater. Abel, the plaintiff, is domiciled in California, the tortious conduct occurred largely in California, and Abel suffered harm and incurred economic losses in California. *La Luna Enters., Inc. v. CBS Corp.*, 74 F. Supp. 384, 389 (S.D.N.Y. 1999).

### B.    Abel's Invasion of Privacy Claims Are Adequately Pleaded

#### 1.    Abel States a Claim for Intrusion Upon Seclusion and Invasion of Privacy Under the California Constitution

To state a claim for intrusion upon seclusion under California common law, a plaintiff must allege that: (1) the defendant "intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]" and (2) the intrusion "occur[red] in a manner highly offensive to a reasonable person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 286 (2009)). Similarly, a claim for invasion of privacy under the California constitution requires a showing that: (1) the plaintiff possesses a legally protected privacy interest, (2) maintained a reasonable expectation of privacy, and (3) the intrusion is "so serious … as to constitute an egregious breach of the social norms," i.e., it was "highly offensive." *Hernandez*, 47 Cal.4th at 286. Intrusion means that the defendant "penetrated some zone of physical or sensory privacy … or obtained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Hernandez*, 47 Cal.4th at 286. (internal quotation makes omitted). Courts often analyze these claims together, focusing on whether there was a reasonable expectation of privacy and whether the intrusion was highly offensive. *In re Facebook*, 956 F.3d at 601. To make that determination, courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 36 (1994).

The allegations against Jonesworks go well beyond mere access to work emails on a company-owned device. Abel alleges that Jonesworks, under false pretenses and without her

consent, accessed and obtained all of her private data and personal information, including her text messages, personal emails, photos, notes, browsing history, and sensitive medical and financial information. Am. Countercl. ¶¶ 66-67. Furthermore, Abel alleges that Jonesworks not only accessed this information but also shared her private communications with others in the office to mock and disparage her, *id.* ¶ 68, and continued to monitor her communications even after her departure from the company. *Id.* ¶¶ 69-70. Abel also alleges that Jonesworks had no internal policies governing its employees' use of electronic devices or reserving the right to monitor such usage. *Id.* ¶¶ 25-26, 57-58. *See TBG Ins. Servs. Corp. v. Superior Ct.*, 96 Cal. App. 4th 443, 452-53 (2002) (advance notice of policy and opportunity to withhold consent are critical to privacy analysis).

These allegations, if true, support the existence of a reasonable expectation of privacy in the personal data and communications at issue. The fact that Abel was logged into her personal accounts on a company device does not, as a matter of law, eliminate her privacy interest in those accounts or their contents. Courts have recognized that employees may retain privacy interests in personal information stored on or accessible from employer-owned devices, particularly when the employer's conduct is egregious or exceeds reasonable business-related boundaries. *Leventhal v. Knapek,* 266 F.3d 64, 74 (2d Cir.2001); *Curto v. Medical World Communications*, 2006 WL 1318387 (E.D.N.Y. May 15, 2006); *Pure Power Boot*, 587 F. Supp. 2d at 560; *Mintz*, 906 F. Supp. 2d at 1033.

The alleged conduct by Jonesworks—accessing, reading, and disseminating Abel's private communications and personal data for the purpose of humiliation and harm—could be found by a reasonable jury to be highly offensive. The scope and nature of the intrusion, including the sharing of private messages with others and the continued monitoring of Abel's communications after her

15

employment ended, support the claim that the intrusion was egregious and violated societal norms regarding privacy.

### 2.    Abel States a Claim for False Light

Under California law, "[f]alse light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1264 (2017), *as modified* (Apr. 19, 2017). Abel alleges that Jonesworks and related parties manipulated, altered, and selectively disclosed her private communications to create a misleading and damaging impression of Abel's involvement in a supposed smear campaign, which Jonesworks *knew was false*. Am. Countercl. ¶¶ 92-93, 101-102, 104. In other words, Jonesworks acted with actual malice. Abel alleges she was harmed by being portraying in a false light. *Id.* ¶¶ 101, 104. These allegations, if proven, are sufficient to state a claim for false light invasion of privacy.

### C.    Abel States a Claim for Conversion

To establish a claim for conversion, a plaintiff must demonstrate: (1) ownership or a right to possess the property in question; (2) that the defendant wrongfully exercised dominion over the property, interfering with the plaintiff's rights; and (3) resulting damages. This standard is recognized under both New York and California law. *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012); *Petrone v. Davidoff Hutcher & Citron, LLP*, 150 A.D.3d 776 (2d Dep't 2017); *Lee v. Hanley*, 61 Cal.4th 1225, 1240 (2015).

Historically, courts were hesitant to recognize conversion claims for intangible property, such as phone numbers, because conversion was traditionally limited to tangible, physical objects. However, the law has evolved to reflect the realities of the digital age. Both New York and

California courts now recognize that intangible property—such as electronic records, domain names, and even websites—can be the subject of a conversion claim. *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283, 292-93 (2007) (recognizing conversion claim of electronic records and noting the old rule's failure to recognize that "[a] document stored on a computer hard drive has the same value as a paper document kept in a file cabinet."); *Freedom Mortg. Corp. v. Tschernia*, 2021 WL 1163807, at *6 (S.D.N.Y. Mar. 26, 2021); *Kremen v. Cohen*, 337 F.3d 1024, 1035 (9th Cir. 2003) (domain name is a species of property subject to conversion); *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 618 (S.D.N.Y. 2003) (website is a species of property subject to conversion).

When it comes to phone numbers, courts have increasingly recognized that they can constitute a unique and valuable property interest, especially when the number is closely associated with an individual and has acquired value through use and publication. Several cases have found that phone numbers may be subject to conversion. *Action Security Service, Inc. v. America Online, Inc.*, 2005 WL 8167630, at *1 (M.D. Fla. Mar. 23, 2005) (denying motion for partial judgment on the pleadings, holding that a phone number could be the subject of a conversion claim); *In re Fontainebleau Hotel Corp.*, 508 F.2d 1056, 1059 (5th Cir. 1975) (holding that "telephone numbers are a valuable asset, just like the hotel's building or furniture."); *Express Companies, Inc. v. Mitel Techs., Inc.*, 2013 WL 5462334, at *8 (S.D. Cal. Sept. 30, 2013) (denying motion to dismiss conversion claim based on wrongful control or disposition of a phone number); *Boris v. Perez*, 2012 WL 13013038 (C.D. Cal. Aug. 16, 2012) (recognizing that a phone number can be converted); *Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.*, 18 F. Supp. 3d 966, 982 (N.D. Iowa 2014) (same principle). *Matter of Sec. Inv. Props., Inc.*, 559 F.2d 1321, 1324 (5th Cir. 1977) (describing phone numbers as a unique property interest, the value of which can increase as the number becomes more widely known).

17

Abel alleges a possessory interest in her long-time personal phone number, which was deeply intertwined with personal and professional lives. Am. Countercl. ¶ 176. She further alleges that Jonesworks wrongfully-exercised control over the number by refusing to release it, thereby interfering with her rights and causing her harm. *Id.* ¶¶ 177-179. These allegations, if true, are sufficient to state a claim for conversion under the modern understanding of property rights in intangible assets.

### D.    Abel's Emotional Distress Claims Are Adequately Pleaded

#### 1.    Abel States a Claim for Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege: (1) extreme and outrageous conduct by the defendant, undertaken with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) severe or extreme emotional distress suffered by the plaintiff; and (3) a causal connection between the defendant's conduct and the plaintiff's distress. *See Conley v. Roman Catholic Archbishop of San Francisco*, 85 Cal. App. 4th 1126, 1133 (2000); *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121 (1993). The standard for "outrageousness" is demanding, requiring conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *KOVR-TV, Inc. v. Superior Court*, 31 Cal. App. 4th 1023, 1028 (1995); *Howell*, 81 N.Y.2d at 122. However, courts recognize that a "deliberate and malicious campaign of harassment or intimidate" or abuse of a position of power can satisfy this standard. *Scollar v. City of New York*, 160 A.D.3d 140, 146 (1st Dep't 2018); *Vasarhelyi v. New Sch. for Soc. Rsch.*, 230 A.D.2d 658, 661 (1st Dep't 1996)

Abel's IIED claim is based on a sustained, malicious campaign by Jonesworks, her former employer, to destroy her reputation and personal life. Jonesworks abused its position of power to obtain Abel's private communications, emails, and personal photos under false pretenses. Am. Countercl. ¶ 67. It then disseminated this sensitive information throughout its office, mocking and

disparaging Abel, and published her private messages—including those with her fiancé, family, and friends—without her consent. *Id.* ¶ 68. Abel was rendered powerless, as Jonesworks had seized her private information and cut off her access to critical accounts, including bank accounts, utilities, and insurance. *Id.* ¶ 66. Jonesworks also retained access to Abel's iCloud account for months, monitoring her communications with clients, loved ones, and counsel, and intentionally leaked her private messages, upending her life. *Id.* ¶¶ 69-70. Abel continues to live in fear, knowing Jonesworks still possesses her sensitive data. *Id.* ¶ 103. These allegations go far beyond mere dissatisfaction with management style, Mot. at 23, and describe conduct that is sufficiently extreme and outrageous to state a claim for IIED.

Abel also adequately alleges severe emotional distress. She describes experiencing "panic and despair" upon learning her private information had been usurped and her accounts cut off. Am. Countercl. ¶ 66. She asserts that her "life has been turned upside down" and that she "lives in fear of what is to come," given the hostile actors' possession of her personal data. *Id.* ¶¶ 101, 103. Abel further alleges "severe" and "extreme" emotional distress and "mental anguish" as a direct result of Jonesworks' conduct. *Id.* ¶ 184. These allegations are more than sufficient to meet the pleading standard. The law does not require a specific set of symptoms; any highly unpleasant mental reaction, such as fright, shame, humiliation, or worry, is sufficient. *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970); *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1614 (2012).

### 2.    Abel States a Claim for Negligent Infliction of Emotional Distress

A claim for negligent infliction of emotional distress ("NIED") requires a breach of a legally cognizable duty of care, resulting in foreseeable emotional harm. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 737 (9th Cir. 1986). Physical injury is not required if emotional harm is reasonably

foreseeable. *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 928-30 (1980); *Franco v. Diaz*, 51 F. Supp. 235, 247 (E.D.N.Y. 2014).

Abel's NIED claim arises from Jonesworks' failure to safeguard her personal information. As her employer and custodian of her data, Jonesworks owed Abel a duty to exercise reasonable care in protecting her sensitive information. *See In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *8 (S.D.N.Y. Aug. 4, 2021); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024). Jonesworks breached this duty by disclosing Abel's private information to third parties on multiple occasions, including in response to facially overbroad subpoenas, without notifying Abel or objecting to the requests. *Id.* ¶¶ 90-91, 98-100; s*ee Theofel*, 359 F.3d at 1074-75. As a direct result, Abel's private information was leaked, leading to a "daily stream of death threats and abuse" and causing her to fear for her safety. *Id.* ¶ 101,

### E.    Abel States a Claim for Promissory Fraud

To state a claim for promissory fraud, a plaintiff must allege: (1) a misrepresentation; (2) knowledge of its falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. Promissory fraud arises when a party makes a promise without any intention of performing it, which constitutes an actionable misrepresentation. *See Lazar v. Superior Ct.,* 12 Cal. 4th 631, 638 (1996); Cal. Civ. Code § 1710(4); *Stewart v. Jackson & Nash*, 976 F.2d 86, 88 (2d Cir. 1992).

Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be pleaded with particularity, specifying the time, place, speaker, and content of the alleged misrepresentations. Fed. R. Civ. P. 9(b). However, intent and knowledge may be alleged generally. *Id.* Rule 9(b) is read in conjunction with Rule 8(a), which requires a short and plain statement showing entitlement to relief. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Abel's pleading meets these requirements. She alleges:

- **When:** The fraudulent statements were made on August 21, 2024. Am. Countercl. ¶ 199.

- **Where:** The statements were made at the Jonesworks Los Angeles office. *Id.* ¶¶ 65-66.

- **Who:** The statements were made by Jonesworks' chief of staff, Gordon Duren, and its attorney from Frankfurt Kernit Klein & Selz. *Id.* ¶¶ 59, 65-66, 199.

- **What:** The content of the misrepresentation was a promise that if Abel surrendered her Jonesworks-issued iPhone and provided her passcode, Jonesworks would release her personal phone number and her private data and accounts. *Id.* ¶¶ 64-65, 199.

Abel further alleges that she reasonably relied on these promises, *id.* ¶ 200, and that Jonesworks never intended to perform. Instead, Jonesworks' true intent was to induce Abel to surrender her phone and passcode so it could access, copy, and disseminate her private information and retain her phone number, all to cause chaos in her life. *Id.* ¶ 201.

Abel's allegations are supported by specific facts. Immediately before surrendering the phone, Jonesworks' chief of staff and attorney expressly represented that Jonesworks would release the number if Abel went to a Verizon store, which she did. At Verizon, Jonesworks assured both Abel and Verizon that it was in the process of releasing the number and asked them to wait. Abel never heard from Jonesworks again and left Verizon four hours later in "panic and despair." *Id.* ¶ 66.

As to damages, Abel alleges that Jonesworks usurped her private information and cut off her access to critical accounts protected by two-factor authentication, including bank accounts, utilities, insurance, and other sensitive accounts. *Id.* ¶ 66. Jonesworks also gained unrestricted access to Abel's text messages, emails, and personal photos. *Id.* ¶ 67. As a result, Abel suffered significant harm. *Id.* ¶ 203.

Finally, while Jonesworks may have owned the physical phone, it did not own the personal information and data stored on it. *Id.* ¶¶ 58, 64. Abel would not have surrendered the phone without first securing her data if not for Jonesworks' false promise. *Id.* Her reliance was reasonable under the circumstances. *Id.* ¶¶ 58, 64, 200.

In sum, Abel's allegations are pleaded with the particularity required by Rule 9(b) and sufficiently state a claim for promissory fraud.

## VI.　<u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Jonesworks' Motion in its entirety. If the Court is inclined to grant the Motion to any extent, Abel respectfully requests leave to re-plead.

Respectfully submitted,

Dated:　May 22, 2025　　　　　　**MEISTER SEELIG & FEIN PLLC**
　　　　　New York, NY

By:　*/s/ Mitchell Schuster*
　　　　　Mitchell Schuster
　　　　　Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
　　　　 kaf@msf-law.com

Dated:　May 22, 2025　　　　　　**LINER FREEDMAN TAITELMAN**
　　　　　Los Angeles, CA　　　　　　　**+ COOLEY**

By:　*/s/ Bryan Freedman*
　　　　　Bryan J. Freedman (*pro hac vice*)
　　　　　Miles M. Cooley (*pro hac vice*)
　　　　　Theresa M Troupson (*pro hac vice*)
　　　　　Summer Benson (*pro hac vice*)
　　　　　Jason Sunshine
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
　　　　 mcooley@lftcllp.com
　　　　 ttroupson@lftcllp.com
　　　　 sbenson@lftcllp.com
　　　　 jsunshine@lftcllp.com