# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE JONES and JONESWORKS LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, and JOHN DOES 1-10, <br><br> Defendants. | Civ. Action No. 1:25-cv-00779-LJL <br> rel. 1:24-cv-10049-LJL <br> (Consolidated for pretrial purposes with 1:25-cv-00449-LJL) |

## DEFENDANT WAYFARER STUDIOS LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 1

LEGAL STANDARD...................................................................................................... 3

ARGUMENT .................................................................................................................. 4

   I.   WAYFARER HAS STATED A CLAIM FOR BREACH OF CONTRACT ................... 4

      A. Wayfarer Adequately Alleges Plaintiffs Breached the Agreement................................ 4

         1.Wayfarer's First Claim for Breach of the Confidentiality Provision Is Adequately Pleaded.................................................................................................................. 5

      B. Wayfarer's Second Claim Adequately Pleads Plaintiffs Breached the Agreement By Failing to Perform Its Services in A Professional Manner............................................. 7

      C. The Breach of Contract Claims Adequately Plead Damages........................................ 9

      D. The Speak Out Act Is Inapplicable to Wayfarer's Breach of Commercial Service Contract Claims............................................................................................................ 11

      E. Wayfarer Adequately Pleaded Performance and Alternatively Excuse from Performance.................................................................................................................. 12

   II.   WAYFARER HAS STATED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING............................................... 13

   III.   WAYFARER'S DEFAMATION CLAIM IS ADEQUATELY PLEADED................... 15

      A. California Law Applies to Wayfarer's Defamation Claim ......................................... 15

      B. Wayfarer Adequately Pleads a Defamation Claim Under California or New York Law ................................................................................................................................... 18

   IV.   PLAINTIFFS ARE NOT ENTITLED TO RECOVER ATTORNEY'S FEES ........... 22

CONCLUSION.............................................................................................................. 24

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris*,
973 F. Supp. 2d 467 (S.D.N.Y. 2013) ........................................................................................18

*AEI Life LLC v. Lincoln Ben. Life Co.*,
892 F.3d 126 (2d Cir. 2018) ......................................................................................................15

*Antifun Ltd. T/A Premium Vape v. Wayne Indus. LLC*,
616 F. Supp. 3d 291 (S.D.N.Y. 2022) .......................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................................4, 6

*BAE Sys. Info. & Elec. Sys. Integration Inc. v. L3Harris Cincinnati Elecs. Corp.*,
716 F. Supp. 3d 206 (S.D.N.Y. 2024) .......................................................................................14

*Baker v. L.A. Herald Examiner*,
42 Cal. 3d 254 (1986) ..........................................................................................................19, 20

*Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*,
No. 14-CV-9687 (VEC), 2016 WL 4916969 (S.D.N.Y. Feb. 11, 2016) .......................................9

*In re Barclays Liquidity Cross and High Frequency Trading Litig.*,
390 F. Supp. 3d 432 (S.D.N.Y. 2019) .........................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................................4, 6

*Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO),
2024 WL 4893277 (S.D.N.Y. Nov. 26, 2024) ...........................................................................24

*Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*,
194 F.R.D. 76 (W.D.N.Y. 2000) ..................................................................................................7

*Brady v. NYP Holdings, Inc.*,
No. 21-cv-3482 (LJL), 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) (Liman, J.) ..................23, 24

*Brian v. Richardson*,
87 N.Y.2d 46 (1995) ...........................................................................................................19, 20

*Bryks v. Canadian Broad. Corp.*,
928 F. Supp. 381 (S.D.N.Y. 1996) ............................................................................................17

*Carroll v. Trump*,
590 F. Supp. 3d 575 (S.D.N.Y. 2022)..................................................................23

*Celle v. Filipino Reporter Enters.*,
209 F.3d 163 (2d Cir. 2000)..............................................................................19

*Chau v. Lewis*,
771 F.3d 118 (2d Cir. 2014)...............................................................................20

*Condit v. Dunne*,
316 F. Supp. 2d 344 (S.D.N.Y. 2004)................................................................16

*Condit v. Dunne*,
317 F. Supp. 2d 344 (S.D.N.Y. 2004).........................................................16, 17

*Corbett v. Guardian Worldwide Moving Co.*,
164 F.R.D. 323 (E.D.N.Y. 1995)........................................................................22

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
478 F. Supp. 3d 456 (W.D.N.Y. 2020)................................................................4

*Evans v. Select Portfolio Servicing, Inc.*,
No. 18-CV-5985 (PKC) (SMG), 2020 WL 5848619 (E.D.N.Y. Sept. 30, 2020)..........................9

*Faber v. Metro. Life Ins. Co.*,
648 F.3d 98 (2d Cir. 2011).................................................................................3

*Fantozzi v. Axsys Techs., Inc.*,
2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008)......................................................14

*Faulkner v. Beer*,
463 F. 3d 130 (2d Cir. 2006)..............................................................................12

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
414 F.3d 325 (2d Cir. 2005)........................................................................15, 16

*Flamm v. Am. Ass'n of Univ. Women*,
201 F.3d 144 (2d Cir. 2000)..............................................................................19

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*,
No. 20-CV-5120 (LJL), 2022 WL 1997207 (S.D.N.Y. June 6, 2022) .........................................16

*Foman v. Davis*,
371 U.S. 178 (1962)...........................................................................................25

iii

*Gilbert v. Seton Hall Univ.*,
332 F.3d 105 (2d Cir. 2003)...........................................................................................16

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985)............................................................................................4

*Gross v. N.Y. Times*,
82 N.Y.2d 146 (1993) ......................................................................................................20

*Horton v. Greenwich Hosp.*,
2014 WL 956468 (S.D.N.Y. 2014)...................................................................................17

*Jensen v. Hewlett-Packard Co.*,
14 Cal. App. 4th 958 (1993) .............................................................................................18

*John v. Whole Foods Mkt. Grp., Inc.*,
858 F.3d 732 (2d Cir. 2017)...............................................................................................9

*Joshi v. Trs. of Columbia Univ. in N.Y.*,
515 F. Supp. 3d 200 (S.D.N.Y. 2021)..............................................................................11

*Kesner v. Dow Jones & Co., Inc.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021)..............................................................................16

*Klaxon Co. v. Stentor Elect. Mfg. Co.*,
313 U.S. 487 (1941).........................................................................................................16

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020)..........................................................................................23, 24

*La Luna Enters., Inc. v. CBS Corp.*,
74 F. Supp. 2d 384 (S.D.N.Y. 1999)................................................................................18

*Lamoureux v. Trustco Bank*,
592 F. Supp. 3d 14 (N.D.N.Y. 2022)..............................................................................6, 9

*Lee v. Bankers Trust Co.*,
166 F.3d 540 (2d Cir. 1999).............................................................................................17

*LoanStreet, Inc. v. Troia*,
2023 WL 5836237 (S.D.N.Y. Sept. 8, 2023)....................................................................24

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015).............................................................................................25

*Markatos v. Citibank, N.A.*,
760 F. Supp. 3d 70 (S.D.N.Y. 2024)............................................................................6

*Moyer v. Amador Valley Joint Union High School District*,
225 Cal. App. 3d 720 (1990) ...............................................................................19, 20

*Murray Eng'g P.C. v. Remke*,
2018 WL 3773991 (S.D.N.Y. Aug. 9, 2018) .............................................................4

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
551 F. Supp. 3d 408 (S.D.N.Y. 2021).......................................................................23

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
442 F.3d 101 (2d Cir. 2006)......................................................................................13

*Okun v. Superior Court*,
29 Cal. 3d 442 (1981) ................................................................................................19

*Press v. Primavera*,
685 F. Supp. 3d 216 (S.D.N.Y. 2023)........................................................................16

*Reeves v. American Broad. Co.*,
719 F.2d 602 (2d Cir. 1983).......................................................................................17

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
53 F. Supp. 3d 705 (S.D.N.Y. 2014).........................................................................20

*Saggio v. Select Portfolio Servicing, Inc.*,
2015 WL 6760132 (E.D.N.Y. Nov. 5, 2015).............................................................14

*Savage v. Pacific Gas & Electric Co.*,
21 Cal. App. 4th 434 (1993) ......................................................................................18

*Seelig v. Infinity Broad. Corp.*,
97 Cal. App. 4th 798 (2002) ......................................................................................19

*Slaughter v. Friedman*,
32 Cal. 3d 149 (1982) ................................................................................................19

*Steinhilber v. Alphone*,
68 N.Y.2d 283 (1986) ...........................................................................................19, 20

*Stevens & Co. LLC v. Espat*,
No. 24-CV-5223, 2025 WL 950989 (S.D.N.Y. Mar. 28, 2025) (Liman, J.) ................16

v

*Summit Bank v. Rogers*,
206 Cal. App. 4th 669 (2012) ................................................................................18

*TileBar v. Glazzio Tiles*,
723 F. Supp. 3d 164 (E.D.N.Y. 2024) ...............................................................9, 10

*United States v. Moseley*,
980 F.3d 9 (2d Cir. 2020)......................................................................................15

*Weller v. American Broadcasting Companies, Inc.*,
232 Cal. App. 3d 991 (1991) ................................................................................19

*Xcellence, Inc. v. Arkin Kaplan Rice LLP*,
No. 10-CV-3304 (HB), 2011 WL 1002419 (S.D.N.Y. Mar. 15, 2011)........................10

*Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*,
341 F. Supp. 2d 258 (S.D.N.Y. 2004) ...................................................................13

*Zink v. Mark Goodson Prods., Inc.*,
689 N.Y.S. 2d 87 (1st Dep't 1999) .......................................................................11

*Zurich Am. Life Ins. Co. v. Nagel*,
538 F. Supp. 3d 396 (S.D.N.Y. 2021)..............................................................10, 11

**Statutes**

42 U.S.C. § 19401 .........................................................................................11, 18, 19

42 U.S.C. § 19403 ...................................................................................................11

New York Civil Rights Law § 70-a(1) .....................................................................23

**Other Authorities**

168 Cong. Rec. H8518-01 .......................................................................................11

Fed. R. Civ. P. 7(b)(1)(C) ........................................................................................22

Fed. R. Civ. P. 11 .............................................................................................30, 31

N.Y. C.P.L.R. § 3211(g), (h) ...................................................................................23

Fed. R. Civ. P. 12 ........................................................................................... *passim*

425450.1

## INTRODUCTION

Plaintiffs and Counter-Defendants Jonesworks LLC and Stephanie Jones' ("Plaintiffs") Motion to Dismiss Wayfarer Studio LLC's ("Wayfarer") Amended Counterclaims (Dkt. 54) improperly argues facts which are outside the four corners of the Amended Counterclaims (Dkt. 51) and distorts or simply ignores factual allegations that, if acknowledged, would be fatal to Plaintiffs' Motion.  The Court should not be misled.  As shown below, the Amended Counterclaims' factual allegations, when accepted as true as they must be under Rule 12(b)(6), are more than sufficient to plausibly state Wayfarer's asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, and defamation.

## FACTUAL BACKGROUND

In or about May 2020, Wayfarer engaged Jonesworks, a New York-based public relations firm founded by Stephanie Jones who serves as its CEO.  Dkt. 51, Am. Counterclaims ¶ 13.  The parties' written engagement agreement (the "Agreement") required Jonesworks to provide such services "in a professional manner and in accordance with the goals mutually established by [Wayfarer] and [Jonesworks]."  *Id*. ¶ 15.  The Agreement included a confidentiality clause which required Jonesworks to protect the confidential, sensitive, and proprietary information of Wayfarer and related parties and bound Jonesworks to use such information solely in the performance of Jonesworks' services to Wayfarer, unless otherwise required by law.  *Id*. ¶ 16.  Jennifer Abel ("Abel"), then a Jonesworks vice president, was primarily responsible for the Wayfarer account.  *Id*. ¶ 27.

In 2023-2024, Wayfarer produced the film "It Ends With Us" (the "Film").  Blake Lively was cast in the lead role of Lily Bloom.  *Id*. ¶¶ 20-23.  Justin Baldoni ("Baldoni"), one of the co-founders of Wayfarer, was director of the Film, as well as its co-star.  During production, Lively

hijacked control of the Film and precipitated a press uproar that created a significant public relations crisis for Wayfarer in the summer of 2024. *Id.* ¶¶ 24-25. Abel continued to work with Wayfarer to address the public relations issues caused by Lively and to negotiate a truce between Wayfarer and Lively, ensuring that neither party would engage in negative press relations aimed at the other. *Id.* ¶ 39. Although Jones had not previously worked on Wayfarer's account for years, she unilaterally inserted herself into the crisis in the summer of 2024, purporting to represent Wayfarer's interests. *Id.* ¶¶ 36-37. Jones' efforts were not effective as they were not coordinated with Abel and Wayfarer's public relations work, and she often disregarded Wayfarer's express directives and goals. For instance, Jones contacted a Daily Mail reporter concerning a story about Baldoni and Lively, despite having been instructed that Wayfarer and Lively had called a public relations truce. *Id.* ¶ 40. Jones' conduct caused a crisis of its own, leaving Wayfarer to smooth over the reports that a Wayfarer representative (Jones) had been communicating negative information about Lively. *Id.* ¶ 41. When Wayfarer instructed Jones to stop communicating on its behalf, Jones ignored the directive and contacted Sony Entertainment executives. *Id.* ¶¶ 42-43.

Abel informed Jones that she was leaving to start her own company. *Id.* ¶ 30. Shortly thereafter, on August 21, 2024, Jonesworks abruptly terminated Abel, threatened her, seized her phone and marched her out of the Jonesworks office. *Id.* ¶ 48. On the same day, Lively's publicist, Leslie Sloane ("Sloane"), called Wayfarer's confidentially retained crisis management consultant, Melissa Nathan. Sloane told Nathan she should anticipate a lawsuit based on text messages Sloane had seen between Nathan and Abel, stored on Abel's improperly seized cell phone. *Id.* ¶ 54. Wayfarer alleges on information and belief that Jones falsely told Sloane that Wayfarer had orchestrated a malicious "smear campaign" to destroy Lively's reputation as

2

retaliation for Lively's sexual harassment allegations. *Id*. ¶ 55. Jones knew or should have known from numerous texts and emails that her statements were false and that by August 2024, Wayfarer was scarcely engaging with the press, much less engaging in a smear campaign against Lively. *Id*. ¶ 55.

Wayfarer further alleges, on information and belief, that on August 21, 2024 or shortly after seizing Abel's cell phone, the Jones Parties transmitted the entirety of Abel's communications, including Wayfarer's confidential and sensitive information, to Sloane, Lively, and Ryan Reynolds (the "Lively Parties"). *Id*. ¶ 56. On September 27, 2024, working hand in glove with the Jones Parties, the Lively Parties initiated a sham legal proceeding in New York state court captioned *Vanzan, Inc. v. Does 1-10, inclusive*, Index No. 655130/2024 (the "*Vanzan* action"), for the sole purpose of obtaining subpoena power to provide legal cover for Jones' disclosure of confidential information to the Lively Parties. *Id*. ¶¶ 61, 63. As a result of the Jones Parties' conduct including, without limitation, the disclosure of Wayfarer's confidential information in breach of the Agreement, Wayfarer has been harmed, including by being falsely cast as an enabler of sexual misconduct and the architect of a vicious retaliation campaign against a victim of such misconduct. *Id*. ¶ 64.

## LEGAL STANDARD

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face."' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## ARGUMENT

## I.    WAYFARER HAS STATED A CLAIM FOR BREACH OF CONTRACT

"To make out a claim for breach of contract under New York law, the complaint must allege facts which show '(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages."' *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.,* 478 F. Supp. 3d 456, 461-62 (W.D.N.Y. 2020).  "At the pleading stage, '[a] plaintiff's burden is slight,"' and courts have "recognized that relatively simply allegations will suffice to plead a breach of contract claim even *post-Twombly* and *Iqbal*." *Murray Eng'g P.C. v. Remke,* 2018 WL 3773991, at *6 (S.D.N.Y. Aug. 9, 2018).

Plaintiffs argue that Wayfarer has failed to adequately allege Plaintiffs breached the Agreement and that Wayfarer suffered damages, and that Wayfarer has not "alleged a material breach excusing its own performance."  As discussed below, none of these arguments has merit.

### A.    Wayfarer Adequately Alleges Plaintiffs Breached the Agreement.

Wayfarer alleges Plaintiffs breached the Agreement by (1) disclosing Wayfarer's confidential and sensitive proprietary information; and (2) failing to perform its strategic communications services and its role as Wayfarer's public relations representative "in a professional manner and in accordance with the goals mutually established by [Wayfarer] and [Jonesworks]."  Am. Counterclaims ¶ 15.  Plaintiffs claim that the allegations that they breached

4

the Agreement are not "plausible."

     1.     **Wayfarer's First Claim for Breach of the Confidentiality Provision Is Adequately Pleaded.**

     With respect to the first claim for breach of the confidentiality provision of the Agreement, Plaintiffs argue that Wayfarer's Amended Counterclaims are "hopelessly vague" in that they fail to identify what confidential information was disclosed or how the disclosure violated the Agreement.  Mot. 7-8, 10.  This is a mischaracterization. Wayfarer's Amended Counterclaims set forth a detailed factual narrative describing the nature, method, and recipients of the alleged disclosure.  Specifically, [[[and among other things, the Amended Counterclaims identify confidential communications with Abel including internal discussions, strategic communications and sensitive opinions about ongoing public relations crises which were disclosed to third parties, including the Lively Parties, and were ultimately used to harm Wayfarer's business and reputation.  Further, Wayfarer alleges that the Jones Parties confiscated Abel's iPhone on August 21, 2014, obtained her passcode under false pretenses and accessed, copied, and monitored her communications—including text messages and emails containing the confidential information—stored on her iCloud account and provided the data to the Lively Parties.  Am. Counterclaims ¶¶ 53-54.

     Plaintiffs hang their hat on the claim that the Plaintiffs disclosed Wayfarer's confidential information in response to a ***lawful*** subpoena in the sham *Vanzan* action.  Mot. 8, 9.  Plaintiffs would have this Court simply ignore the allegations that the Jones Parties disclosed confidential information obtained from Abel's seized (and improperly accessed) phone to the Lively Parties ***before*** any subpoena was issued, and that they disclosed it "***for a second time***" after receiving the sham subpoena.  Am. Counterclaims ¶¶ 56, 61, 63 (emphasis added).  In other words, by

myopically focusing on the later-issued subpoena, the Motion sidesteps Wayfarer's core allegations: that the damaging disclosure of confidential information occurred before any subpoena was issued, and that the subpoena was later used as a pretextual attempt to legitimize the earlier, unauthorized disclosure.

In short, the Amended Counterclaims are not, as Plaintiffs argue, "speculative and conclusory" and "built on speculation, inference and generalities."  Mot. 11-12.  Rather, the pleading identifies the confidential information at issue, how it was obtained, the timing and context of the disclosure, and the specific third parties to whom it was provided.  Am. Counterclaims ¶¶ 53-65.  These allegations are not mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action," but rather provide a concrete factual basis for the claim, as required by federal pleading.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This level of detail is more than sufficient to give fair notice of the claim and the grounds upon which it rests.  *See Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 27 (N.D.N.Y. 2022); *Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 79 (S.D.N.Y. 2024) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint . . . and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face . . . .") (quotations omitted).

Plaintiffs contend that the information stolen from Abel's phone does not qualify as "Confidential Information" under the Agreement and that Wayfarer fails to "tether any alleged disclosure to the language of the Agreement."  Mot. 10.  Yet the Agreement broadly defines "Confidential Information" to include "confidential, proprietary, and/or sensitive information about [Wayfarer], its customers or other related parties."  Am. Counterclaims Ex. 1, at 3.  As

6

noted, the Amended Counterclaims allege that the information disclosed included internal communications, strategic discussions, and sensitive opinions about Wayfarer's crisis management efforts and public relations strategies—precisely the type of "confidential" and "sensitive" information protected by the Agreement. Am. Counterclaims ¶¶ 16, 53-57. What the parties intended in their definition of "Confidential Information," and whether any of the data purloined from Abel's phone fits within that definition, is an issue of fact which cannot be decided in the context of a Rule 12(b)(6) motion to dismiss. *See Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000) ("[Q]uestions of contractual meaning or intent are questions of fact at trial.").

In sum, the Motion mischaracterizes the Amended Counterclaims' allegations regarding the contractually forbidden disclosure of confidential information by ignoring the detailed factual narrative, disregarding what is actually alleged in the Amended Counterclaims including the sequence of events pleaded therein, misstating the contractual definition and scope of the term "Confidential Information," and treating the Amended Counterclaims' allegations as vague or speculative when they are, in fact, specific and detailed. The Amended Counterclaims, when read in their entirety and in the light most favorable to Wayfarer, state a plausible claim for breach of contract. The Motion's selective and incomplete reading of the Amended Counterclaims distorts or ignores the nature of what is alleged and should be rejected.

**B.     Wayfarer's Second Claim Adequately Pleads Plaintiffs Breached the Agreement By Failing to Perform Its Services in A Professional Manner.**

Wayfarer alleges Plaintiffs breached the Agreement by failing to perform strategic communications services as Wayfarer's public relationships representative "in a professional manner and in accordance with the goals mutually established by [Wayfarer] and [Jonesworks]."

7

Am. Counterclaims ¶¶ 76-77.  The Amended Counterclaims allege several ways in which this provision of the Agreement was breached.  Wayfarer alleges that "Jones had been in Europe and largely incommunicado—save for her disastrous efforts at self-preservation—for weeks during the critical month of August when the Film premiered."  Am. Counterclaims ¶ 50.  Wayfarer also alleges that Jones "contacted a Daily Mail reporter about a story they had published about Baldoni and Lively" in violation of Wayfarer's directive and in "blatant disregard of Wayfarer's strategy."  Am. Counterclaims ¶¶ 40-41.  Further, Wayfarer alleges that in response to Jones's "reckless and unauthorized activities," Wayfarer "instructed Jones to cease all activities on behalf of Wayfarer and Baldoni," but Jones insisted that she could do "'whatever she wants' to clear her name" and "emailed a number of key Sony executives working on the Film . . . placing all blame on 'her team.'"  Am. Counterclaims ¶¶ 41-43.[1]  These allegations suffice to state a claim for breach of the Agreement's clause requiring Jonesworks to perform its obligations in a "professional manner," the clause specifically identified in Wayfarer's second claim for breach of contract.

Plaintiffs contend that Wayfarer's second breach of contract claim is only that Plaintiffs breached the Agreement by failing to follow Wayfarer's instruction.  They argue that there is no provision requiring Plaintiffs to follow their client's instructions and therefore the claim fails.  This argument fails for three reasons.  First, it ignores all the allegations of breach in the Amended Counterclaims discussed above.  Second, it oversimplifies Wayfarer's claim with

---

[1] Further, the Amended Counterclaims alleged that Jonesworks disclosed confidential information to the Lively Parties, wrongfully and without any legal obligation to do so, then re-disclosed that information as part of a scheme to use a sham subpoena to provide retroactive legal cover.  On their face, these actions surely violate the Agreement's requirement that Jonesworks conduct its activities on Wayfarer's behalf in a "professional manner and in accordance with [Wayfarer's] goals."  Am. Counterclaims ¶¶ 76-77 & Ex. 1, at 3.

respect to "instructions."  It is not simply that Plaintiffs failed to do as they were told by their client, but that they acted contrary to Wayfarer's interests and goals, thereby breaching the Agreement.  Finally, Plaintiffs' argument is premised on the assumption that the phrase "in a professional manner and in accordance with the goals mutually established by [Wayfarer] and [Jonesworks]" clearly and unambiguously did not require Plaintiffs to follow Wayfarer's instructions.  However, as one of the cases Plaintiffs rely upon noted, when denying the motion to dismiss the majority of the breach of contract claims, a claim should not be dismissed if there is an "arguable claim under the contract," i.e., where the language in the contract is "reasonably susceptible to more than one interpretation." *Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 27 (N.D. N.Y. 2022) (citations and internal quotation marks omitted).  Wayfarer's interpretation of the contract language is reasonable and thus, the motion to dismiss must be denied.

### C.    The Breach of Contract Claims Adequately Plead Damages.

At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to state a claim.  *In re Barclays Liquidity Cross and High Frequency Trading Litig.*, 390 F. Supp. 3d 432, 443-44 (S.D.N.Y. 2019) (applying same standard to Rule 12(b)(1) motion as applied to Rule 12(b)(6) motion and citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017)).  To withstand a challenge under Rule 12(b)(6), a plaintiff "need only plead allegations from which damages attributable to defendant's [breach] might be reasonably inferred." *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14-CV-9687 (VEC), 2016 WL 4916969, at *6 (S.D.N.Y. Feb. 11, 2016); *see also TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 198 (E.D.N.Y. 2024); *Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985 (PKC) (SMG), 2020 WL 5848619, at *15 (E.D.N.Y. Sept. 30, 2020) ("[A] plaintiff is not obligated to show, on a

motion to dismiss, that it actually sustained damages and need only plead allegations from which damages attributable to defendant's breach might be reasonably inferred[.]"). "General pleading that [plaintiff] suffered damages is sufficient to withstand a motion to dismiss." *Xcellence, Inc. v. Arkin Kaplan Rice LLP*, No. 10-CV-3304 (HB), 2011 WL 1002419, at *5 (S.D.N.Y. Mar. 15, 2011).

The same rules apply to damages alleged to result from a breach of a confidentiality agreement. *See Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 402 (S.D.N.Y. 2021) (finding complaints' allegations that employee took confidential information which would cause harm to plaintiff if disclosed were sufficient to allege damages on a motion to dismiss); *see also TileBar*, 723 F. Supp. 3d at 199 (finding sufficient to withstand a motion to dismiss the allegation that disclosure of confidential information "could immeasurably damage [plaintiff's] relationships, business, and goodwill").

Although Plaintiffs characterize Wayfarer's damages as speculative (Mot. 12-14), the Amended Counterclaims expressly state that, as a direct and proximate result of Plaintiffs' disclosure, Wayfarer suffered reputational and business harm, including public scorn, loss of business opportunities, and damage to its future business prospects, even to the point of casting doubt on Wayfarer's future viability as a studio. Am. Counterclaims ¶¶ 64-65, 73, 80, 86. Wayfarer further alleges that it has publicly "been falsely cast as an enabler of sexual misconduct and the architect of a vicious retaliation campaign against a victim of such misconduct," and that "its very viability as a studio has been thrown into doubt as a direct result of Jones' actions on behalf of Jonesworks." Am. Counterclaims ¶ 64. The Amended Counterclaims also allege a direct causal chain from the theft and disclosure of confidential information to its use by the Lively Parties and the resulting harm to Wayfarer.

10

These allegations are sufficient at the pleading stage, as damages do not need to be proven with specificity until later in the litigation. *See Joshi v. Trs. of Columbia Univ. in N.Y.*, 515 F. Supp. 3d 200, 220 (S.D.N.Y. 2021); *Zurich Am. Life Ins. Co.*, 538 F. Supp. 3d at 402; *Zink v. Mark Goodson Prods., Inc.*, 689 N.Y.S. 2d 87, 88 (1st Dep't 1999).

In short, the Motion severely mischaracterizes the Amended Counterclaims' factual allegations. Wayfarer's breach of contract claims can be dismissed *only* if they fail to provide sufficient factual matter to state a claim to relief that is plausible on its face (*Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570). The Amended Counterclaims meet and exceed this standard.

## D.    The Speak Out Act Is Inapplicable to Wayfarer's Breach of Commercial Service Contract Claims.

Plaintiffs argue that Wayfarer's first claim for breach of the confidentiality clause is barred by the "Speak Out Act," 42 U.S.C. § 19403, which provides that "no nondisclosure clause or nondisparagement clause agreed to before [a sexual harassment dispute] arises shall be judicial enforceable in instances in which conduct is alleged to have violated Federal, Tribal or State law." 42 U.S.C. § 19403(a). The Act's stated purposed is to "empower survivors to come forward, hold perpetrators accountable for abuse, improve transparency around illegal conduct, enable the pursuit of justice, and make workplaces safer and more productive for everyone." 42 U.S.C. § 19401. The legislative history of the law—including materials cited in the Motion— demonstrate that the Speak Out Act is aimed at "forced NDAs in employment and consumer contracts," and that it "simply clarifies that these clauses cannot be enforced unless a survivor chooses to agree to the clause after the dispute arises." 168 Cong. Rec. H8518-01, H8524.

Plaintiffs are unable to provide any authority for the broad expansion of the Speak Out Act to an agreement between business entities to maintain the confidentiality of sensitive

business or proprietary information; in other words, that the Speak Out Act is a blanket bar to all confidentiality agreements, rather than to "agreements between employers and current, former and prospective employees, and independent contractors, and between providers of goods and services and consumers" expressly contemplated by the Speak Out Act.  42 U.S.C. § 19401(6).

Moreover, the applicability of the Speak Out Act to the Agreement and to the claims asserted by Wayfarer is a disputed issue of fact, not appropriate for consideration on a motion to dismiss pursuant to Rule 12(b)(6).  *Faulkner v. Beer*, 463 F. 3d 130, 133 (2d Cir. 2006) (motion to dismiss for failure to state a claim requires "accepting as true all facts alleged in the complaint and drawing all inferences in favor of the plaintiff" and dismissing "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

**E.    Wayfarer Adequately Pleaded Performance and Alternatively Excuse from Performance**

Plaintiffs contend that Wayfarer fails to adequately plead that its alleged breach was excused.  Preliminarily this argument fails because Wayfarer alleges that it performed its obligations under the contract.  Am. Counterclaims ¶¶ 69, 78.

Further, this argument wrongly assumes that Wayfarer's purported breach preceded the Jones' Parties' breaches, thereby excusing the Jones Parties' performance. The Amended Counterclaims expressly plead that the conduct asserted as the basis for the allegations of breach—the disclosure of confidential information on or about August 21, 2024, and the pattern of unprofessional and reckless behavior by Jones—occurred *before* Wayfarer terminated the Agreement with Jonesworks effective at the end of August 2024.  Am. Counterclaims ¶¶ 36-52.

Performance under a contract is excused when a counterparty to the contract first

materially breaches its own obligations under the contract. *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006) ("When a party has breached a contract, that breach may excuse the nonbreaching party from further performance if the breach is 'material.'"). To the extent that the Motion alleges that Jonesworks' own breach of the Agreement did not excuse Wayfarer's *later* termination (and purported breach) of the Agreement, that is irrelevant to the question of whether Wayfarer can assert a claim for the Jones Parties' breach of the Agreement *prior to* any purported breach by Wayfarer. As set forth above, Wayfarer has set forth factual allegations sufficient to establish that the Jones Parties breached their obligations under the Agreement well before Wayfarer decided to terminate the Agreement. Am. Counterclaims ¶¶ 36-52. At the time that the Jones Parties breached the Agreement—first by failing to perform its services in a "professional manner" consistent with Wayfarer's goals, and then by disclosing confidential information—Wayfarer had undertaken no action that even Plaintiffs can claim to have constituted a breach.

## II.   WAYFARER HAS STATED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Plaintiffs next argue that Wayfarer's claim for breach of the implied covenant of good faith and fair dealing (the "implied covenant") should be dismissed as duplicative. This argument fails because (1) Wayfarer has pled this claim in the alternative to its breach of contract claim; and (2) Plaintiffs dispute whether the contract requires them to follow their client's instructions and stated goals.

First, courts in this circuit have recognized that, while a plaintiff cannot ultimately recover on both a breach of contract and breach of implied covenant claim, it may litigate both claims through discovery when the claims are pled in the alternative. *See Xpedior Creditor Tr. v.*

13

*Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d 258, 272 (S.D.N.Y. 2004) (rejecting argument that breach of contract and breach of implied covenant claims must be dismissed as duplicative, because "the Federal Rules explicitly permit a party to plead causes of action in the alternative, 'regardless of consistency.' . . . [W]hile [plaintiff] may not press both claims *to judgment*, it is free to litigate both."); *Fantozzi v. Axsys Techs., Inc.*, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) ("A claim for breach of contract does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing when they are brought in the alternative. A party is only precluded from recovering on both theories at the same time."). Wayfarer pleads its implied covenant claim in the alternative.

Second, this principle is even more apt because Plaintiffs dispute the existence of contract terms, because prematurely dismissing an implied covenant claim could potentially leave the plaintiff without any remedy. *See Saggio v. Select Portfolio Servicing, Inc.*, 2015 WL 6760132, at *5 (E.D.N.Y. Nov. 5, 2015) ("[A] claim for breach of the implied covenant of good faith and fair dealing may be brought in the alternative to a claim for breach of contract 'where there is a dispute over the existence, scope, or enforceability of the putative contract.'"); *Antifun Ltd. T/A Premium Vape v. Wayne Indus. LLC*, 616 F. Supp. 3d 291, 315 (S.D.N.Y. 2022) ("[W]here the parties dispute the existence of a contract, a plaintiff may plead quasi-contract theories in the alternative, even though, in the end, it will not be permitted to recover on both claims.") (citing Fed. R. Civ. P. 8(a)(3)); *BAE Sys. Info. & Elec. Sys. Integration Inc. v. L3Harris Cincinnati Elecs. Corp.*, 716 F. Supp. 3d 206, 223 (S.D.N.Y. 2024) ("[W]hen the existence of a binding agreement covering the conduct that constitutes the breach is in dispute, the plaintiff may bring quasi-contract claims in the alternative."). Plaintiffs dispute Wayfarer's assertions about the terms of the contract. Thus, Wayfarer's alternative claim for breach of the covenant of

good faith and fair dealing should not be dismissed at this stage of the proceedings.

III.    **WAYFARER'S DEFAMATION CLAIM IS ADEQUATELY PLEADED**

Plaintiffs' argument that Wayfarer failed to plead a claim for defamation is premised on the false assumption that the allegations are limited to two words: "smear campaign."  However, the Amended Counterclaims allege that the Jones Parties made statements to others "to the effect that Wayfarer had retaliated against Lively and others for reporting alleged sexual misconduct, including orchestrating a 'smear campaign' by propagating false and misleading narratives about Lively for the purpose of damaging her image and reputation."  Am. Counterclaims ¶ 88.

A.    **California Law Applies to Wayfarer's Defamation Claim**

Plaintiffs assume that New York law applies to Wayfarer's defamation claim. Although the Agreement contains a New York choice-of-law provision, the language of that provision is narrow and limited to the Agreement itself.  Am. Counterclaims Ex. 1, at 4 ("This Agreement shall be governed by, construed under and enforced in accordance with the laws of the State of New York applicable to agreements made and to be fully performed therein.").)  The question, then, is whether the provision is valid and whether its scope extends to all of Wayfarer's counterclaims.

A federal court sitting in diversity applies the choice of law rules of the forum state to determine the validity and scope of a choice of law provision.  *AEI Life LLC v. Lincoln Ben. Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (validity); *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 333 (2d Cir. 2005) (scope).  Under New York law, a choice of law provision is enforceable if the chosen law "has sufficient contacts with the transaction" and there is no "fraud or violation of public policy."  *United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020).  Although Wayfarer is based in California and performs the overwhelming majority of its work in

California, the choice of law provision is likely valid and enforceable under the prevailing law. *Stevens & Co. LLC v. Espat*, No. 24-CV-5223, 2025 WL 950989, at *9 (S.D.N.Y. Mar. 28, 2025) (Liman, J.). However, under New York law, a contractual choice of law provision is applicable only to "causes of action sounding in contract unless the express language of the choice-of-law provision is sufficiently broad as to encompass the entire relationship between the contracting parties." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, No. 20-CV-5120 (LJL), 2022 WL 1997207, at *16 (S.D.N.Y. June 6, 2022) (quoting *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 540 (S.D.N.Y. 2020). Here, the scope of the choice of law provision is limited to "[t]he Agreement"; it does not reference the broader relationship between the parties. This type of "narrow" choice of law provision "'is not broad enough to reach tort claims incident to the contractual relationship' or . . . other non-contractual causes of action." *Fleetwood Servs.*, 2022 WL 1997207, at *16 (quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 335 (2d Cir. 2005)). Accordingly, the choice of law provision "only requires the Court to apply New York law to [] contractual claims." *Stevens & Company LLC*, 2025 WL 950989, at *10.

Because the New York choice of law provision does not apply to Wayfarer's defamation claim, the Court must engage in a choice-of-law analysis to determine what state's substantive law applies to the claim. The choice of law rules of New York, the forum state, apply. *Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003); *see also Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Press v. Primavera*, 685 F. Supp. 3d 216, 225 (S.D.N.Y. 2023). The first step is to determine whether the laws of New York and California conflict. *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 167 (S.D.N.Y. 2021); *see also Condit v. Dunne*, 316 F. Supp. 2d 344, 352 (S.D.N.Y. 2004). "An actual conflict exists where the applicable law

from each jurisdiction provides differing rules that have the potential to affect the outcome of the case significantly." *Horton v. Greenwich Hosp.*, 2014 WL 956468, at *2 n.1 (S.D.N.Y. 2014).

Here, there exist substantive conflicts between the laws of New York and California as to Wayfarer's defamation claim against the Jones Parties. For example, with respect to defamation, "California extends no greater protection to opinions than does the United States Constitution," while "New York law, by contrast, in excess of the United States Constitution, provides for absolute protection of opinions." *Condit v. Dunne*, 317 F. Supp. 2d 344, 352 (S.D.N.Y. 2004). Because there is a substantive conflict between the laws of New York and California as to Wayfarer's defamation claim, the Court must analyze whether to apply New York or California law.

As the laws of New York and California conflict, the Court must determine which law to apply to the defamation claim. *DeIuliis*, 2021 WL 4443145, at *4 ("New York follows the doctrine of dépeçage, under which the choice-of-law analysis is conducted separately for each individual claim."). "In defamation cases, 'New York applies the law of the state with the most significant interest in the litigation.'" *Condit*, 317 F. Supp. 2d at 352 (quoting *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999)). "Under New York choice-of-law rules in defamation cases, 'the state of the plaintiff's domicile will usually have the most significant relationship to the case,' and its law will therefore govern." *Lee*, 166 F.3d at 545 (quoting *Reeves v. American Broad. Co.*, 719 F.2d 602, 605 (2d Cir. 1983)); *see also Bryks v. Canadian Broad. Corp.*, 928 F. Supp. 381, 383 (S.D.N.Y. 1996) (collecting cases). "Although the preference for the plaintiff's domicile is not conclusive, 'the significant contacts [in a defamation case] are, almost exclusively, the parties' domiciles and the locus of the tort.'" *Lee*, 166 F.3d at 545 (quoting *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). The interest of a

17

state in a defamation action is "significant and incontrovertible" where the plaintiffs are citizens

of that state and live and conduct their business there.  *Adelson v. Harris*, 973 F. Supp. 2d 467,

477-78 (S.D.N.Y. 2013).

California has a significant interest because Wayfarer has its principal place of business

in California; Wayfarer suffered injury to its reputation in California; and Wayfarer's economic

losses were felt in California.  *La Luna Enters., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389

(S.D.N.Y. 1999); *Reeves*, 719 F.2d at 605 (applying California law "since the state of the

plaintiff's domicile will usually have the most significant relationship to the case").  Moreover,

as a participant in Hollywood's entertainment industry—the beating heart of which is

indisputably the State of California—Wayfarer's reputation "mattered most in California."

*Condit*, 317 F. Supp. 2d at 354 (plaintiff congressman's "reputation necessarily was a matter of

national significance, but it mattered most in California where he had been elected to office").

Accordingly, California law should apply to Wayfarer's defamation claim.

### B.    Wayfarer Adequately Pleads a Defamation Claim Under California or New York Law

Under either California or New York law, the assertion that Wayfarer retaliated against

Lively for reporting sexual misconduct is not a statement of opinion, but one of fact.

Under California law, to constitute defamation, the offensive publication must consist of

statements of fact, not opinion.  *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695-96 (2012).

A statement is defamatory only if it is capable of being proved true or false. *See Savage v.*

*Pacific Gas & Electric Co.*, 21 Cal. App. 4th 434, 445 (1993); *Jensen v. Hewlett-Packard Co.*,

14 Cal. App. 4th 958, 970-71 (1993).  "Statements do not imply a provably false factual assertion

and thus cannot form the basis of a defamation action if they cannot reasonably be interpreted as

18

stating actual facts[.]" *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809-10 (2002).

But expressions of opinion often imply assertions of fact and are therefore actionable. *Weller v. American Broadcasting Companies, Inc.*, 232 Cal. App. 3d 991, 999 (1991). Thus, a statement in the form of an opinion may be actionable if it is implied that it is based on some undisclosed defamatory facts. *Baker v. L.A. Herald Examiner*, 42 Cal. 3d 254, 266 (1986); *Okun v. Superior Court*, 29 Cal. 3d 442, 451-52 (1981). The issue of whether the statement is fact or opinion is one for the jury. *Slaughter v. Friedman*, 32 Cal. 3d 149, 154 (1982). The dispositive question is whether a reasonable fact finder could conclude that the published statements imply a provably false assertion of fact. *Moyer v. Amador Valley Joint Union High School District*, 225 Cal. App. 3d 720, 724 (1990). To answer that question, the court applies a "totality of the circumstances" test and reviews the "language of the statement" and "the context in which the statement was made[.]" *Baker*, 42 Cal. 3d at 260-61.

To determine whether a statement is an assertion of fact or opinion, courts applying New York law generally consider "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true . . .; and (3) whether . . . the full context of the communication in which the statement appears [is] such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995) (quotations and citations omitted); *accord Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 178-79 (2d Cir. 2000). New York courts focus on the "overall context in which the complained-of assertions were made." *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000). "Context" includes not only "the immediate context in which the disputed words appear," but also "the larger context in which the statements were published." *Brian*, 87 N.Y.2d at 51; *see also Steinhilber v. Alphone*, 68 N.Y.2d 283, 293

(1986) (examining first "the content of the whole communication as well as its tone and its apparent purpose."). If a statement contains opinion, the court must then examine "whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)." *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014). "The actionable element of a 'mixed opinion' . . . is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." *Steinhilber*, 68 N.Y.2d at 290. "The dispositive inquiry . . . is whether a reasonable reader could have concluded that [the statements were] conveying facts[.]" *Gross v. N.Y. Times*, 82 N.Y.2d 146, 152 (1993) (alteration adopted) (quotation marks and citation omitted); *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 719 (S.D.N.Y. 2014).

Regardless of which state's law governs, Plaintiffs' attempt to recast their statements as "opinion" fails. These statements were susceptible to a defamatory meaning, namely that Wayfarer had permitted egregious sexual offenses and then retaliated against their purported victim. Those are statements that are capable of being proven true or false and that are readily understood as having a derogatory meaning about the target of the statement. *Baker v. L.A. Herald Examiner*, 42 Cal. 3d at 266; *Brian*, 87 N.Y.2d at 51. Even with regard to the specific phrase "smear campaign," given that Jones was for a time under contract with Wayfarer, the clear implication of statements about Wayfarer's purported campaign of retaliation against Lively is that Jonesworks knew of information that would give rise to the purported opinion that Wayfarer had in fact engaged in an illegal "smear campaign" against Lively. *Moyer*, 225 Cal. App. 3d at 724; *Steinhilber*, 68 N.Y.2d at 290. The Amended Counterclaims allege that the Jones Parties made statements about Wayfarer that were intended to, and did, convey false and deprecatory assertions of fact against Wayfarer, and the Motion's willful misreading of the

20

Amended Counterclaims is to no avail.

The Motion also asserts that Wayfarer fails to allege that the Jones Parties made a false statement.  But the Amended Counterclaims expressly state: "The statements made by Jones and Jonesworks about Wayfarer were false."  Am. Counterclaims ¶ 91.  The Motion suggests that Wayfarer must do more, seeming to fault Wayfarer for failing to prove a negative.  Mot. 21.  But Wayfarer has alleged that the statements that it engaged in a retaliatory smear campaign against Lively were false in that "not only was [Jones] well aware that Lively had not actually been sexually harassed on set, she also knew that there had not been a 'smear campaign.'"  Am. Counterclaims ¶ 55.  The Amended Counterclaims continue, "Wayfarer was scarcely engaging with the press at all in August 2024, much less carrying out offensive tactics in retaliation for something that never happened."  Am. Counterclaims ¶ 55.  There is no basis for the Motion's statement that the Amended Counterclaims fail to allege facts sufficient to establish that the defamatory statements attributed to the Plaintiffs were actually false.

Finally, Wayfarer alleges adequately that Plaintiffs acted with actual malice.[2]  Assuming *arguendo* that Wayfarer is in fact a public figure, the Amended Counterclaims' express allegations support actual malice.  With respect to the statement that Wayfarer engaged in a malicious smear campaign to retaliate against Lively for reporting sexual harassment, the Amended Counterclaims allege that "Jones knew that this was false, as not only was she well aware that Lively had not actually been sexually harassed on set, she also knew that there had not been a 'smear campaign.'  This is clear because Jones was copied on many of Wayfarer's emails and text threads during the relevant period and knew full well that Wayfarer was scarcely engaging with the press at all in August 2024, much less carrying out offensive tactics in

---

[2] For purposes of this Motion only, Wayfarer is not contesting Plaintiffs' assertion that Wayfarer is a public figure.

retaliation for something that never happened." Am. Counterclaims ¶ 55. In other words, the Amended Counterclaims allege both that Jones (and therefore Jonesworks) knew that the assertion that Wayfarer deliberately smeared Lively in retaliation for reporting sexual harassment was false, and that she was copied on communications that would have caused her inevitably to believe that the assertion was false—yet the Jones Parties made the assertion anyway. That constitutes the requisite knowledge of falsity for asserting actual malice in the context of defamation.

Notably, the Motion falsely states that the Amended Counterclaims are "devoid" of any allegation that Jones possessed information, ignored known facts, or otherwise acted with the requisite 'subjected awareness of falsity or probably falsity. Mot. 24. Once again, the Motion flatly ignores the actual allegations of the Amended Counterclaims and argues for dismissal based on untrue statements about what is alleged.

Wayfarer has stated a claim for defamation sufficient to proceed past the pleading phase and into discovery. The Motion should be denied with respect to this and all other claims.

## IV. PLAINTIFFS ARE NOT ENTITLED TO RECOVER ATTORNEY'S FEES

Plaintiffs argue that they are entitled to attorney's fees under New York's state anti-SLAPP law. As an initial matter, the request for attorney's fees is barred by Plaintiffs' failure to request such an award in their notice of motion. Fed. R. Civ. P. 7(b)(1)(C); *see also Corbett v. Guardian Worldwide Moving Co.*, 164 F.R.D. 323, 331 n.11 (E.D.N.Y. 1995) (questioning whether a request for attorney's fees could be considered by the court when not raised in the notice of motion and denying fees on other grounds).

Moreover, for all the reasons set forth above, the Motion should be denied entirely, and therefore there can be no entitlement to attorney's fees.

22

Even if the Court were inclined to grant the Motion, the majority of courts in the Southern District of New York rightly hold that the law does not apply to claims such as these.

The Second Circuit has not yet directly addressed the question of whether New York's anti-SLAPP law applies in federal court.  Still, federal district courts in the Second Circuit, including courts in this district, overwhelmingly agree that the holding of *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020), precludes the application in federal court of New York's anti-SLAPP law, which creates a special procedural mechanism (N.Y. C.P.L.R. § 3211(g), (h)) through which defendants can invoke the anti-SLAPP law in a motion to dismiss.  *See, e.g.*, *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021) ("New York's anti-SLAPP law imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure."); *Carroll v. Trump*, 590 F. Supp. 3d 575, 583-85 (S.D.N.Y. 2022). Similarly, New York Civil Rights Law § 70-a(1), which would shift the burden of proof and fees to unsuccessful defamation plaintiffs under New York law, does not apply because it imposes a sanction that conflicts with Rule 11 of the Federal Rules of Civil Procedure.  *Brady v. NYP Holdings, Inc.*, No. 21-cv-3482 (LJL), 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) (Liman, J.). As noted in *Brady*, "Rule 11 permits a court to impose sanctions only after the adverse party has been given notice and a reasonable opportunity to respond [and] to withdraw or correct the challenged paper . . . [New York's] anti-SLAPP provision has no such requirement. A party may seek sanctions without providing any advance notice to the adverse party."  *Id.* at *11.

Furthermore, "under Rule 11, sanctions are permissive," while "[u]nder the anti-SLAPP provision . . . sanctions are mandatory." *Id.* Notably, the standard for avoiding *permissive* sanctions under Rule 11 (requiring only a "nonfrivolous" claim) is lower than the standard for

23

imposing a *mandatory* award of attorney's fees under section 70-a(1) (requiring a "substantial basis in fact and law" to escape award of attorney's fees). *Id.* In effect, the Jones Parties ask the Court to create a rule that would *automatically* sanction *any* plaintiff whose nonfrivolous defamation claims failed on a Rule 12(b)(6) motion, a mandatory sanction entirely inconsistent with Rule 11.

Plaintiffs rely on *Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO), 2024 WL 4893277, at *11-14 (S.D.N.Y. Nov. 26, 2024). There, the court found that the defendant's entitlement to an award of attorney's fees under New York's anti-SLAPP law is substantive and not procedural, and therefore held that applying the state law in federal court would in that respect be consistent with *La Liberte*. Importantly, however, Judge Oetken's ruling acknowledges that his decision in *Bobulinski* conflicts with the decisions of other judges in the Southern District of New York that have found that the New York anti-SLAPP law's fee-shifting provision does not apply in federal court, including this Court's holding in *Brady*. *Bobulinski*, 2024 WL 4893277, at *17 n.24.

In short, while the Second Circuit has not yet expressly addressed the applicability of New York's anti-SLAPP fee-shifting provision in federal court, virtually all of the courts in the Southern District of New York that have done so have found that *La Liberte* applies to bar the application of that law in federal court because it imposes a burden on plaintiffs that is inconsistent with the Federal Rules of Civil Procedure. *See Brady*, 2022 WL 992631 at *11; *see also LoanStreet, Inc. v. Troia*, 2023 WL 5836237, at *6 (S.D.N.Y. Sept. 8, 2023) ("[T]he decisions holding that § 70-a is inapplicable in federal court are not 'aberrant,' but rather reflect the majority view—and the more recent trend—among district courts in this Circuit.").

## **CONCLUSION**

For the foregoing reasons, Wayfarer respectfully requests that the Court enter an order

denying Plaintiffs' Motion in its entirety.  In the event that the Court finds any aspect of the pleading defective, Wayfarer respectfully requests that the Court grant Wayfarer leave to amend. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (leave to amend is granted according to a "permissive standard" that "is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits"); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

Respectfully submitted,

**MEISTER SEELIG & FEIN PLLC**

Dated:  May 22, 2025
New York, NY

By:____*/s/ Mitchell Schuster*_____
      Mitchell Schuster
      Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
       kaf@msf-law.com

Dated:  May 22, 2025
Los Angeles, CA

**LINER FREEDMAN TAITELMAN + COOLEY**

By:_____*/s/ Bryan Freedman*_____
      Bryan J. Freedman (*pro hac vice*)
      Miles M. Cooley (*pro hac vice*)
      Theresa M Troupson (*pro hac vice*)
      Summer Benson (*pro hac vice*)
      Jason Sunshine
1801 Century Park West, 5th Floor

25

Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
mcooley@lftcllp.com
ttroupson@lftcllp.com
sbenson@lftcllp.com
jsunshine@lftcllp.com

425450.1