**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stephanie Jones, Jonesworks LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> Jennifer Abel, Melissa Nathan, Justin Baldoni, Wayfarer Studios LLC, and John Does 1-10, <br><br> *Defendants*. | Case No.: Civ. Action No. 1:25-cv-00779-LJL |

<u>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS WAYFARER STUDIOS LLC'S AMENDED COUNTERCLAIMS**</u>

# TABLE OF CONTENTS

**Page**

ARGUMENT ...................................................................................................................1

I.     Wayfarer Did Not Adequately Plead Plaintiffs Breached the Agreement ........................1

II.    Wayfarer Did Not Adequately Plead Harm ....................................................................3

III.   Wayfarer Does Not Legitimately Contest the Applicability of the Speak Out Act ............4

IV.    Wayfarer's Performance Was Not Excused .....................................................................4

V.     Wayfarer's Implied Covenant Claim Must Be Dismissed ................................................5

VI.    New York Law Applies to Wayfarer's Defamation Counterclaim .....................................6

       A.     There Is No Actual Conflict Between California and New York Law ...................6

       B.     New York's Interest Analysis Test Weighs in Favor of New York Law ...............7

VII.   Even Under California Law, Wayfarer's Defamation Counterclaim Fails ........................8

VIII.  New York's Anti-SLAPP Law Warrants Fees for Plaintiffs ...............................................9

IX.    Further Amendment by Wayfarer Would Be Futile .......................................................10

CONCLUSION ..............................................................................................................10

# TABLE OF AUTHORITIES

## Cases

*Adelson v. Harris*,
    774 F.3d 803 (2d Cir. 2014)...................................................................................10

*Art Cap. Grp., LLC v. Carlyle Inv. Mgmt. LLC*,
    55 N.Y.S.3d 54 (N.Y. App. Div. 2017) ...................................................................2

*Bacudio v. Contreras*,
    2024 WL 4328824 (C.D. Cal. Sept. 20, 2024) .........................................................8

*Baffert v. Wunderler*,
    2024 WL 5237442 (S.D. Cal. June 6, 2024)..............................................................8

*Bluffs Homeowners' Ass'n v. Frador Mktg., Inc.*,
    809 N.Y.S.2d 329 (N.Y. App. Div. 2006) ...............................................................4

*Bobulinski v. Tarlov*,
    758 F. Supp. 3d 166 (S.D.N.Y. 2024)......................................................................9

*Brian v. Richardson*,
    660 N.E.2d 1126 (N.Y. 1995) ..................................................................................7

*Broadspring, Inc. v. Congoo, LLC*,
    2014 WL 4100615 (S.D.N.Y. Aug. 20, 2014) .........................................................7

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005).....................................................................................5

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004).....................................................................7

*Crittendon v. Muldrow*,
    2023 WL 2743582 (N.D. Cal. Mar. 31, 2023).........................................................8

*Curley v. AMR Corp.*,
    153 F.3d 5 (2d Cir. 1998).........................................................................................6

*Feitosa v. Keem*,
    2023 WL 2267055 (W.D.N.Y. Feb. 28, 2023) ....................................................6, 7

*Fin. One Pub. Co. v. Lehman Bros*,
    414 F.3d 325 (2d Cir. 2005).................................................................................6, 7

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009) ...................................................................................7

*Hall v. EarthLink Network, Inc.*,
  396 F.3d 500 (2d Cir. 2005).................................................................................6

*Heilbut v. Cassava Scis., Inc.*,
  2025 WL 919654 (S.D.N.Y. Mar. 26, 2025) ........................................................9

*Jacob v. Lorenz*,
  626 F. Supp. 3d 672 (S.D.N.Y. 2022)...................................................................8

*Kenford Co. v. Erie Cnty.*,
  493 N.E.2d 234 (N.Y. 1986)..................................................................................3

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018)..................................................................................10

*Kinsey v. New York Times Co.*,
  991 F.3d 171 (2d Cir. 2021)..............................................................................7, 8

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ..............................................................................7

*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020)....................................................................................9

*United States ex rel. Ladas v. Exelis, Inc.*,
  824 F.3d 16 (2d Cir. 2016).................................................................................10

*LaNasa v. Stiene*,
  2025 WL 893456 (2d Cir. Mar. 24, 2025) ...........................................................7

*Lee v. Bankers Trust Co.*,
  166 F.3d 540 (2d Cir. 1999)..................................................................................7

*Mann v. Abel*,
  885 N.E.2d 884 (N.Y. 2008)..................................................................................7

*Mariah Re v. Am. Fam. Mut. Ins. Co.*,
  52 F. Supp. 3d 601 (S.D.N.Y. 2014)......................................................................3

*Markatos v. Citibank, N.A.*,
  760 F. Supp. 3d 70 (S.D.N.Y. 2024).......................................................................3

*Parker Waichman LLP v. Squier, Knapp & Dunn Commc'ns, Inc.*,
  28 N.Y.S.3d 603 (N.Y. App. Div. 2016) ...............................................................2

*Paucek v. Shaulis*,
  2025 WL 1298457 (D.N.J. May 6, 2025) ..............................................................9

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   946 F. Supp. 2d 957 (N.D. Cal. 2013) ........................................................7

*Ramiro Aviles v. S & P Glob., Inc.*,
   380 F. Supp. 3d 221 (S.D.N.Y. 2019) ........................................................6

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
   977 F.2d 47 (2d Cir. 1992) ........................................................................10

*Spencer-Smith v. Ehrlich*,
   347 F.R.D. 606 (S.D.N.Y. 2024) ...............................................................6

*Thompson v. Mun. Credit Union*,
   2022 WL 2717303 (S.D.N.Y. July 13, 2022) ...........................................10

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N.D. Cal. 2014) .......................................................9

*Zervos v. Trump*,
   94 N.Y.S.3d 75 (N.Y. App. Div. 2019) ......................................................6

## Statutes

42 U.S.C. § 19402(1) .....................................................................................4

N.Y. Civ. Rights Law § 70-a(1) ................................................................9, 10

## Other Authorities

Fed. R. Civ. P. 11 ........................................................................................10

Fed. R. Civ. P. 12(b)(6) .................................................................................3

The Opposition confirms what Plaintiffs exposed in their Motion[1]: Wayfarer's Amended Counterclaims are nothing more than a play for media attention to perpetuate a distraction narrative—not an effort at serious litigation. Desperate to prolong that narrative and avoid any consideration of Plaintiffs' legitimate and revealing claims, Wayfarer in Opposition continues to insist in conclusory fashion that its engagement letter *must* have been breached and it *must* have been defamed, relying solely on baseless speculation. This transparent effort to find a scapegoat for the damage Wayfarer and its co-conspirators caused is unavailing and Wayfarer cannot maintain its claims.

The Motion showed that the Amended Counterclaims suffer from many fatal flaws. They fail to identify any confidential information that was disclosed—let alone improperly disclosed— or articulate a single way Plaintiffs acted unprofessionally; do not plead a concrete injury flowing from Plaintiffs' purported conduct; assert an implied covenant claim that is both duplicative and legally unsound; and advance a defamation claim that is deficient under the substantively identical standards of New York and California law. The Opposition half-heartedly attempts to disguise these deficiencies with ineffective conjecture, but this effort only underscores the fundamental shortcomings of the Amended Counterclaims and why they must be dismissed.

## **ARGUMENT**

### I.    **Wayfarer Did Not Adequately Plead Plaintiffs Breached the Agreement**

As Plaintiffs showed in the Motion, both of Wayfarer's contract claims must be dismissed. *First*, Wayfarer did not adequately plead its breach of contract counterclaim concerning the Agreement's confidentiality provision. Despite the Opposition's posturing, Opp. at 5, the

---

[1]  As used herein, "Motion" refers to Plaintiffs' Motion to Dismiss Wayfarer's Amended Counterclaims, Dkt. 54, and "Opposition" refers to Wayfarer's Opposition to Plaintiffs' Motion to Dismiss Amended Counterclaims, Dkt. 58. Citations to Dkt. 51 and the paragraphs therein refer to Wayfarer's Amended Counterclaims. Capitalized terms used herein have the same meanings as set forth in the Motion.

Amended Counterclaims do not identify any of Wayfarer's "internal discussions, strategic communications, [] sensitive opinions," or any other sources of information that were purportedly disclosed by Plaintiffs, let alone demonstrate that any such information was "confidential" per the Agreement. The law is clear that a party must ***specifically*** allege what was disclosed and why it is confidential. *See Art Cap. Grp., LLC v. Carlyle Inv. Mgmt. LLC*, 55 N.Y.S.3d 54, 55 (N.Y. App. Div. 2017) (dismissing confidentiality claim where plaintiff did not "identify what confidential information was allegedly misused by defendant").

Wayfarer's theory that Plaintiffs disclosed confidential information "before any subpoena was issued," Opp. at 5, is pure conjecture. It hinges entirely on Wayfarer's speculation about a single alleged phone call between Sloane and Nathan—in which no Wayfarer principal even allegedly took part. Even if the Court indulged such speculation, which it should not, the Amended Counterclaims plead no facts showing that any supposed disclosure was wrongful, and never directly allege that Sloane saw any of Wayfarer's information, let alone confidential information. *See Parker Waichman LLP v. Squier, Knapp & Dunn Commc'ns, Inc.*, 28 N.Y.S.3d 603, 603 (N.Y. App. Div. 2016) (allegations defendants disclosed confidential information, thereby causing harm, "too vague and conclusory to sustain a breach of contract cause of action.").[2]

*Second*, Wayfarer's claim that Plaintiffs breached the Agreement's provision requiring Jonesworks to provide services "in a professional manner and in accordance with the goals mutually established" by Jonesworks and Wayfarer, Opp. at 7–9, fares no better. Although Wayfarer wishes this provision required Plaintiffs to "follow Wayfarer's instructions," Opp. at 7–8, it requires only professionalism aligned with mutually set goals—not blanket obedience. The

---

[2] The closest the Amended Counterclaims come is the vague assertion that Sloane told Nathan that she could expect to be sued "based on what [Sloane] had already seen and what Jones had told her"—without ever identifying what, exactly, Sloane purportedly "had [] seen" or "heard," let alone alleging she "had [] seen" or "heard" any confidential information about Wayfarer. Dkt. 51 ¶ 54.

Amended Counterclaims do not specify how taking a long-planned vacation, attempting to return a call to someone Jones mistakenly believed was a *Daily Mail* reporter (but was not, as confirmed by phone records Jones provided to Wayfarer), or the purported contents of alleged emails to Sony constitute a breach of that provision. Opp. at 8; Dkt. 51 ¶ 45. Wayfarer's convenient dissatisfaction in hindsight does not allow it to baselessly allege breach. And despite the Opposition's assertion that Plaintiffs "acted contrary to Wayfarer's interests and goals," Opp. at 9, the Amended Counterclaims never identify any such goal, let alone plead facts showing Jonesworks did not act in furtherance of any of the goals actually identified in the Agreement. *See* Dkt. 51-1 at 5; *Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 84–85 (S.D.N.Y. 2024) (dismissing breach of contract claim that failed to link alleged misconduct to the actual terms of the contract).

## II.    Wayfarer Did Not Adequately Plead Harm

Even if Wayfarer could plausibly allege breach (it cannot), Fed. R. Civ. P. 12(b)(6) requires dismissal because the Amended Counterclaims fail to tether any supposed breaches to any concrete, non-speculative injury. The Opposition unsuccessfully seeks to sidestep this by regurgitating the Amended Counterclaim's speculative assertions of harm, Opp. at 10, but New York law permits recovery only for damages that are "reasonably certain" and "directly traceable to the breach, not remote or the result of any other intervening causes." *Kenford Co. v. Erie Cnty.*, 493 N.E.2d 234, 235 (N.Y. 1986). Yet Wayfarer offers nothing beyond abstractions: it claims "public scorn," an undefined hit to "reputation," and an amorphous threat to its "viability." Opp. at 10. It does not identify, for example, a single distributor it lost, a deal that collapsed, or a dollar of revenue that disappeared because any alleged disclosure or unprofessional act occurred. It is also just as plausible that any alleged harm resulted from something else entirely, including Wayfarer's own conduct, litigation tactics, or other claims asserted against it. Wayfarer also attributes these vague purported harms to ***both*** contractual breaches without any differentiation,

failing to explain how the alleged disclosure of confidential information and unprofessionalism caused the same exact harm. Courts confronted with identically nebulous allegations dismiss at the pleadings stage. *See Mariah Re v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 611, 614 (S.D.N.Y. 2014) ("[F]actual allegations showing damages are essential."); Dkt. 54 at 12–14.

### III.    Wayfarer Does Not Legitimately Contest the Applicability of the Speak Out Act

The Opposition concedes the essential predicates for the Act: (1) the confidentiality covenant predates the PR crisis; (2) the crisis centers on sexual harassment allegations (Dkt. 51 ¶¶ 55, 64, 88, 90); and (3) Wayfarer seeks to punish disclosures concerning that alleged misconduct. Opp. at 11–12. That is precisely the scenario Congress barred. Although case law interpreting the Act is limited due to its recent enactment, Wayfarer notably does not argue that Plaintiffs misread the statute. It offers no substantive rebuttal to the Act's applicability, and no explanation as to why the application of this federal law presents a factual dispute. To the contrary, the issue is plainly one of law: the statutory bar is triggered on the pleadings, and where an NDA is categorically unenforceable under the Act, dismissal is required as a matter of law. Wayfarer's attempt to manufacture factual questions cannot overcome the Act's clear mandate.

Wayfarer's only attempted legal rejoinder, that the Agreement is a "commercial services" contract, Opp. at 11–12, ignores the Act's text, which plainly applies to any nondisclosure clause in any "contract or agreement." 42 U.S.C. § 19402(1). The statute contains no carve out for PR engagements, and courts have not created one. This court should not accept Wayfarer's invitation to defy the statutory text and invent phantom exemptions.

### IV.    Wayfarer's Performance Was Not Excused

Wayfarer's attempt to sidestep its own breach by asserting that its performance was excused due to Plaintiffs' supposed earlier breaches, Opp. at 12–13, collapses under both law and fact. As a threshold matter, New York law is clear: to excuse performance, a party must allege a

*prior* and **material** breach by the counterparty. *See, e.g., Bluffs Homeowners' Ass'n v. Frador Mktg., Inc.*, 809 N.Y.S.2d 329, 330 (N.Y. App. Div. 2006). Wayfarer does not allege that it terminated the Agreement **after** or **because** it knew of any purportedly improper disclosure of its confidential information, or any other material divergence from the terms of the Agreement (let alone allege the precise date on which it advised Plaintiffs that it was terminating the Agreement). *See* Dkt. 51 ¶ 52 (alleging that Wayfarer and Baldoni "advised Jones that they were terminating the Jonesworks Agreement as of the end of August"). And Wayfarer does not contest—because it cannot—that it did not provide Jonesworks the requisite notice and opportunity to cure under the Agreement. Dkt. 54 at 17–18. Wayfarer's revisionist history seeking to justify improperly jumping ship without fulfilling its contractual obligations does not entitle it to disregard a termination provision it did not invoke. Its failure to terminate the Agreement in real time based on any purported disclosure of confidential information or unprofessionalism defeats its claim.

## V.    **Wayfarer's Implied Covenant Claim Must Be Dismissed**

Wayfarer's attempt to repurpose its implied covenant claim to retroactively amend the Agreement, Opp at 13–14, is both improper and a fundamental misinterpretation of the law. Implied covenant claims are not tools to rewrite contracts after the fact or supply terms or obligations for which a party wishes it had bargained. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir. 2005) ("The implied covenant…does not add to the contract a substantive provision not included by the parties."). Although Wayfarer asserts that Plaintiffs "disput[ing] the existence of a contractual term"—specifically, "whether the contract requires them to follow their client's instructions and stated goals," Opp. at 13–14—is properly addressed via its implied covenant claim, that is precisely the domain of a breach of contract claim: either a term exists in the contract or it does not. This term does not.

Tellingly, the Opposition fails to engage with the actual elements of an implied covenant

claim, including the requirement to plead that a counterparty did "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Spencer-Smith v. Ehrlich*, 347 F.R.D. 606, 627 (S.D.N.Y. 2024) (Liman, J.). Wayfarer has not alleged any misconduct distinct from that which allegedly breached the Agreement, and an implied covenant claim cannot be pleaded "in the alternative" when it is wholly duplicative of a breach of contract claim, as is the case here. *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 508 (2d Cir. 2005) ("If the allegations do not go beyond the statement of a mere contract breach…no additional claim is actually stated."). Wayfarer's implied covenant claim thus fails.

## VI.    New York Law Applies to Wayfarer's Defamation Counterclaim

### A.    There Is No Actual Conflict Between California and New York Law

New York, and not California, law governs Wayfarer's defamation claim. A choice of law analysis is only required if there is an actual conflict of law. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). An actual conflict of law exists if "the applicable law from each jurisdiction provides different substantive rules," *id.*, and the differences have a "significant possible effect on the outcome of the trial," *Fin. One Pub. Co. v. Lehman Bros.*, 414 F.3d 325, 331 (2d Cir. 2005). "[T]he party claiming that foreign law applies carries the burden of showing a conflict." *Ramiro Aviles v. S & P Glob.*, 380 F. Supp. 3d 221, 271–72 (S.D.N.Y. 2019). "Absent a showing of a discernable difference in the laws of the two states, no choice of law analysis is necessary, and New York law is applicable." *Zervos v. Trump*, 94 N.Y.S.3d 75, 88 (N.Y. App. Div. 2019).

Wayfarer has not met its burden of demonstrating an actual conflict, and the Opposition merely attempts to manufacture one where none exists. Opp. at 17–18. As New York courts have recognized, there is no actual conflict between New York and California defamation law with respect to pleading requirements or expressions of opinion. *Zervos*, 94 N.Y.S.3d at 88 ("California defamation law is the same as New York defamation law in all relevant ways."); *Feitosa v. Keem*,

2023 WL 2267055, at *4 (W.D.N.Y. Feb. 28, 2023) (finding "no difference between the defamation laws of California and New York"); *see also Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 977–78 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015) (same).

Wayfarer cites to no case in which a court applied divergent defamation rules to facts like these.[3] That is because the rules of both states are materially the same: in both, pure expressions of opinion—like the alleged statement here—are non-actionable. *LaNasa v. Stiene*, 2025 WL 893456, at *2 (2d Cir. Mar. 24, 2025); *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009). And both states apply the substantially same test to determine whether a statement is an opinion. *See Knievel v. ESPN*, 393 F.3d 1068, 1075 (9th Cir. 2005); *Brian v. Richardson*, 660 N.E.2d 1126, 1129–30 (N.Y. 1995); *Feitosa*, 2023 WL 2267055, at *5 (opinion "analysis…appears to be substantially the same").[4] Wayfarer's attempt to gin up a conflict thus fails.

### B.    New York's Interest Analysis Test Weighs in Favor of New York Law

Even if there were a conflict, New York law applies because it has the most significant interest in this litigation. For torts, New York "applies the law of the state with the most significant interest in the litigation." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). Wayfarer is incorrect in its assertion that the plaintiff's domicile is dispositive of the applicable state's law. Instead, "in cases where an allegedly defamatory statement is published nationally, there is only a presumptive rule that the law of [the] plaintiff's domicile applies, which does not hold true…if

---

[3] The Opposition cites only to *Condit*, a dated case that does not expand upon its finding that New York and California defamation law conflict, including by explaining **how** New York and California's "apparent differences have any significant possible effect on the outcome of the trial" as is required by the Second Circuit's choice-of-law analysis. *Condit v. Dunne*, 317 F. Supp. 2d 344, 352 (S.D.N.Y. 2004); *Fin. One*, 414 F.3d at 331. *Condit* has not been cited by any other case in support of there being an actual conflict between New York and California defamation law in more than a decade—the most recent being an unreported case that similarly did not expand upon *Condit*'s finding, *Broadspring, Inc. v. Congoo, LLC*, 2014 WL 4100615, at *6 (S.D.N.Y. Aug. 20, 2014).

[4]  Whether an allegedly defamatory statement is one of fact or opinion is a question of law in both New York and California. *Gardner*, 563 F.3d at 986; *Mann v. Abel*, 885 N.E.2d 884, 885 (N.Y. 2008); *contra* Opp. at 19.

with respect to the particular issue, some other state has a more significant relationship to the issue or the parties." *Kinsey v. New York Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021).

*Kinsey* is directly on point. Like in *Kinsey*, here, New York has the most significant interest in the litigation because "the alleged defamatory statement emanated from New York"—it was, allegedly, made by Jones, who was and is based in New York (Dkt. 51 ¶¶ 3, 8, 10)—and, as Wayfarer acknowledges, its smear campaign was ultimately reported nationwide by *The New York Times* (*id.* ¶¶ 58-60, 63-64), which "is domiciled in New York." *Kinsey*, 991 F.3d at 178. "New York has strong policy interests in regulating the conduct of its citizens and its media." *Id.*; *see also Jacob v. Lorenz*, 626 F. Supp. 3d 672, 685 (S.D.N.Y. 2022) (applying New York, and not California, law to defamation claim involving statements in *The New York Times*, despite plaintiff being domiciled in California and alleging injury in California). New York law thus applies here, and Wayfarer's defamation claim fails under New York law. *See* Dkt. 54 at 20–25.

## VII.    Even Under California Law, Wayfarer's Defamation Counterclaim Fails

Even if California law were to apply, Wayfarer's defamation claim must be dismissed. *First*, California, like New York, requires a plaintiff to plead ***how*** a challenged statement is false. *See, e.g.*, *Baffert v. Wunderler*, 2024 WL 5237442, at *4 (S.D. Cal. June 6, 2024) (dismissing defamation claim where "the Complaint asserts that the statements are false [but] it does not identify how each statement is false"); *Crittendon v. Muldrow*, 2023 WL 2743582, at *3 (N.D. Cal. Mar. 31, 2023) (dismissing defamation claim where "the pleadings…simply describe[] statements as false, rather than even minimally explaining what makes them so"). Here, the Amended Counterclaims do not allege, whatsoever, how the challenged statement was false, including how a "smear campaign" did not occur, or that Lively was not retaliated against.

*Second*, Wayfarer's failure to plead actual malice is fatal under both New York and California law. *See, e.g.*, *Bacudio v. Contreras*, 2024 WL 4328824, at *11 (C.D. Cal. Sept. 20,

2024) (dismissing defamation claim for failure to plead "how [speaker] must have known that her allegedly defamatory statement [] was false"); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014) (dismissing defamation claim for failure to plead "specific allegations…that [speaker] harbored serious subjective doubts as to the validity of his assertions"). As the only basis for this element, the Opposition points to allegations that Jones "was copied on many of Wayfarer's emails and text threads during the relevant period," Opp. at 21–22, but this flounders under *Iqbal*. The Amended Counterclaims not only contain no concrete allegations supporting this conclusory assertion, but the many texts and emails included in the Amended Counterclaims contradict them: there is not a ***single text or email*** showing Jones discussing Wayfarer's smear campaign, and the only pertinent communication including Jones shows that she was encouraging a positive approach. Dkt. 51 ¶ 46. The assertion is also flatly belied by Wayfarer's numerous allegations of Jones' purported lack of involvement with the Wayfarer/Baldoni account. Dkt. 51 ¶ 36 (admitting that Jones was "not [] privy to Wayfarer leadership's communications strategy"); *see also id.* ¶¶ 27-28, 37. Wayfarer cannot have it both ways; its own allegations defeat its actual malice argument, and its defamation counterclaim must be dismissed.

## VIII.   New York's Anti-SLAPP Law Warrants Fees for Plaintiffs

Finally, Plaintiffs are owed attorneys' fees under New York's anti-SLAPP law. Wayfarer's dependence on *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020) is inapposite, as it addresses ***California's*** anti-SLAPP law, not New York's. And Wayfarer's claim that "virtually all of the courts in the Southern District of New York" have determined that New York's anti-SLAPP law's fee-shifting provision does not apply in federal court is false. Opp. at 24. Multiple courts in this Circuit, including very recently, have determined that N.Y. Civ. Rights Law § 70-a(1) does, in fact, apply. *See Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 184-85 (S.D.N.Y. 2024); *Heilbut v. Cassava Scis., Inc.*, 2025 WL 919654, at *9 (S.D.N.Y. Mar. 26, 2025); *cf. Paucek v. Shaulis*, 2025

WL 1298457, at *14 (D.N.J. May 6, 2025).

Additionally, New York's anti-SLAPP statute's fee-shifting provision does not conflict with Fed. R. Civ. P. 11. It awards mandatory attorneys' fees, not permissive sanctions (as does Rule 11). The Supreme Court has expressly held that state statutes containing fee-shifting provisions are applicable in diversity cases, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 ("[A] state statute requiring an award of attorneys' fees should be applied in a case removed from the state courts to the federal courts."), and the Second Circuit has held that attorneys' fees are substantive in nature, *Riordan v. Nationwide*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (Nevada anti-SLAPP statute's "mandatory fee shifting [provision]…does not squarely conflict with a valid federal rule").

## IX.    Further Amendment by Wayfarer Would Be Futile

Leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016). Wayfarer has already amended its counterclaims once, after Plaintiffs moved to dismiss them. Any amendment by Wayfarer, which has long had knowledge of the brunt of the facts underlying its claims—for more than nine months—and which has already failed to cure the pleading defects in their First Amended Counterclaims, would be futile and is unwarranted. *See Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018); *Thompson v. Mun. Credit Union*, 2022 WL 2717303, at *9 (S.D.N.Y. July 13, 2022) (Liman, J.) ("When the plain language of a contract unambiguously forecloses a plaintiff's claim, a district court may determine that re-pleading would be futile.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court dismiss Wayfarer's counterclaims with prejudice.

DATED:    May 29, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Kristin Tahler*

Kristin Tahler
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
kristintahler@quinnemanuel.com

Maaren A. Shah
Danielle Lazarus
295 5th Avenue
New York, New York 10016
(212) 849-7000
maarenshah@quinnemanuel.com
daniellelazarus@quinnemanuel.com

Nicholas Inns (*pro hac vice*)
1300 I Street NW
Suite 900
Washington, D.C. 20005
(202) 538-8000
nicholasinns@quinnemanuel.com

*Attorneys for Plaintiffs Stephanie Jones and*
*Jonesworks, LLC*