UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Stephanie Jones, Jonesworks LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>Jennifer Abel, Melissa Nathan, Justin Baldoni, Wayfarer Studios LLC, and John Does 1-10,<br><br>*Defendants*. | Case No.: Civ. Action No. 1:25-cv-00779-LJL |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS JENNIFER ABEL'S AMENDED COUNTERCLAIMS**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................................1
I.    Abel Offers No Defense Of Her Failure to Satisfy Rule 8 ...................................................1
II.    None of Abel's Arguments Rescue Her Hacking Claims.....................................................3
       A.    Abel Cannot Write the Hacking Out of Anti-Hacking Statutes..............................3
       B.    Abel Alleges No Interception of Any Communication ...........................................4
       C.    Abel's Section 502 Arguments Are Meritless .........................................................5
       D.    Section 502 Does Not Apply Outside California......................................................6
III.    Abel's Arguments In Favor of Her Tort Claims Are Unavailing .........................................7
       A.    Abel's Privacy Tort Claims Are Not Adequately Pled............................................7
       B.    A Phone Number Abel Voluntarily Transferred Cannot be Converted...................8
       C.    Abel's Arguments Regarding Her Emotional Distress Claims Is Unsuccessful .........................................................................................................9
       D.    Abel's Rule 9(b) Argument Is a Non Sequitur .......................................................10
IV.    The Court Should Deny Abel's Request to Again Amend Her Pleading ...........................10
CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
  713 F. Supp. 3d 623 (N.D. Cal. 2024) ................................................................................10

*Action Security Service, Inc. v. America Online, Inc.*,
  2005 WL 8167630 (M.D. Fla. Mar. 23, 2005) ......................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................2, 3, 4, 9

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
  11 F.4th 972 (9th Cir. 2021) ..................................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................................2, 3

*Boris v. Perez*,
  2012 WL 13013038 (C.D. Cal. Aug. 16, 2012) .....................................................................8

*Brodsky v. Apple Inc.*,
  2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .......................................................................6

*Business Edge Group, Inc. v. Champion Mortgage Co.*,
  519 F.3d 150 (3d Cir. 2008) ...................................................................................................8

*In re Carrier IQ, Inc.*,
  78 F. Supp 3d 1051 (N.D. Cal. 2015) ....................................................................................6

*Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.*,
  18 F. Supp. 3d 966 (N.D. Iowa 2014) (Iowa law) .................................................................8

*Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*,
  643 F. Supp. 3d 421 (S.D.N.Y. 2022) ....................................................................................5

*In re DoubleClick Inc. Priv. Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................................................................................3

*Fletcher v. Western Nat'l Life Ins. Co.*,
  10 Cal. App. 3d 376 (1970) ...................................................................................................9

*In re Fontainebleau Hotel Corp.*,
  508 F.2d 1056 (5th Cir. 1975) ...............................................................................................8

*Freedom Fin. Co. v. New York Tel. Co.*,
  285 N.Y.S.2d 163 (N.Y. App. Div. 1967) ..................................................................................8

*In re GE/CBPS Data Breach Litig.*,
  2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ............................................................................10

*Hill v. Nat'l Collegiate Athletic Assn.*,
  7 Cal. 4th 1, 865 P.2d 633 (1994) ..............................................................................................7

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ......................................................................................................5

*Krock v. Lipsay*,
  97 F.3d 640 (2d Cir. 1996) .........................................................................................................7

*United States ex rel. Ladas v. Exelis, Inc.*,
  824 F.3d 16 (2d Cir. 2016) .......................................................................................................10

*Lee v. Saul*,
  2020 WL 7029264 (S.D.N.Y. Aug. 31, 2020) ........................................................................4, 8

*Lindsay-Stern v. Garamszegi*,
  2016 WL 11745948 (C.D. Cal. Oct 13, 2016) ...................................................................3, 4, 6

*Lipin v. Bender*,
  193 A.D.2d 424 (1st Dep't 1993) ...............................................................................................4

*Luis v. Zang*,
  833 F.3d 619 (6th Cir. 2016) ......................................................................................................5

*Pure Power Boot Camp v. Warrior Fitness Boot Campt*,
  587 F. Supp. 2d 548 (S.D.N.Y. 2008) ........................................................................................4

*Rotstein v. Cable & Wireless, Inc.*,
  2002 WL 691458 (Cal. App. 4 Dist. Apr. 24, 2002) ..................................................................8

*Scollar v. City of New York*,
  74 N.Y.S.3d 173 (N.Y. App. Div. 2018)) ..................................................................................9

*In re StarNet, Inc.*,
  355 F.3d 634 (7th Cir. 2004) ......................................................................................................8

*Steve Jackson Games, Inc. v. United States Secret Service*,
  36 F.3d 457 (5th Cir. 1994) ........................................................................................................5

*Sunbelt Rentals*, *Inc. v. Victor*,
  43 F. Supp. 3d 1026 (N.D. Cal. 2014). ...................................................................................3, 4

*Tantaros v. Fox News Network, LLC*,
 2018 WL 2731268 (S.D.N.Y. May 18, 2018) ..................................................................5

*In the Matter of Toll Free Service Access Codes*,
 2005 WL 2138620 (F.C.C. Sept. 2, 2005) ......................................................................8

*United States v. Christensen*,
 828 F.3d 763 (9th Cir. 2015) ..........................................................................................6

*Vasarhelyi v. New Sch. For Soc. Rsch.*,
 646 N.Y.S.2d 795 (N.Y. App. Div. 1996) ......................................................................9

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
 433 F.3d 1199 (9th Cir. 2006) ........................................................................................6

*Yukos Capital S.A.R.L. v. Feldman*,
 977 F.3d 216 (2d Cir. 2020) ...........................................................................................4

*Zaratzian v. Abadir*,
 2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014) ..................................................................5

**Statutes**

Cal. Pen. Code § 27 ....................................................................................................................7

Cal. Pen. Code § 502 .........................................................................................................5, 6, 7

Stored Communications Act ..................................................................................................3, 4

Wiretap Act ..............................................................................................................................4, 5

**Other Authorities**

Fed. R. Civ. P. 8 .....................................................................................................................1, 2

Fed. R. Civ. P. 9(b) ...................................................................................................................10

Jennifer Abel changes her story so much it is hard to keep track of what her claims even are. This is telling, because if her claims contained even a modicum of truth or factual basis, they would not—and could not—continually and constantly morph. Yet after multiple attempts, Abel cannot—and in some cases, does not even attempt to—support or explain the basis for her claims. Abel functionally abandons her Computer Fraud and Abuse Act claim, not even bothering to rebut Plaintiffs' Motion and thereby admitting the futility of this claim.[1] This follows her similar abandonment of previously-pled but entirely faulty claims for false imprisonment and California statutory protections, which she dropped wholesale in response to Plaintiffs' first motion to dismiss. Even where she haphazardly throws arguments at the wall, these arguments are wholly unavailing. Indeed, unable to identify *any* actual actions Jonesworks took that could constitute hacking, she recasts her hacking claims as "data privacy" claims in direct contradiction of Congress and courts' plain statements. Unable to point to anything even in her own Amended Counterclaims that could support her allegation that Jonesworks cast her in a false light, Abel seeks to rewrite that claim on the fly in Opposition. Abel's Opposition follows the same pattern as her Amended Counterclaims: it seeks to substitute genericisms and platitudes for concrete arguments and legal authority. This scattershot approach to pleading fails to meet even the bare minimum pleading standards required to state a claim, and the Amended Counterclaims should be dismissed.

## ARGUMENT

**I.    Abel Offers No Defense Of Her Failure to Satisfy Rule 8**

Throughout her Opposition, Abel doubles down on her generic, fact-free, and conclusory allegations, asserting time and again that they are sufficient to plead the multitude of claims that she brings. *E.g.*, Opp at 15 (arguing vague allegations that Jonesworks "accessed and obtained all

---

[1]    Courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018).

1

of [Abel's] private data and personal information" are sufficient). Rule 8 requires that a pleading contain "a short and plain statement of the claim," which must comprise "more than labels and conclusions"— a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'[N]aked assertion[s]' devoid of 'further factual enhancement'" do not suffice; claims must be support by "factual content." *Id.* (*quoting Twombly*, 550 U.S. at 556-57).

The Amended Counterclaims fall short of this threshold standard, and Abel's Opposition's parroting of those insufficient allegations does not salvage them. For example, Abel argues that her invasion of privacy claims are adequately plead because they allege that Jonesworks "obtained all of her private data and personal information, including her text messages, personal emails, photos, notes, browsing history, and sensitive medical and financial information." Opp. at 15 (citing Am. Countercl. ¶¶ 66-67). But Abel offers no "further factual enhancement" supporting this "naked assertion." *Iqbal*, 556 U.S. at 678. She does not point to even a single example of a personal email, item of browsing history, photo, note, medical information, or financial information that Jonesworks allegedly accessed, nor does she explain any basis for allegedly having come to understand that this has happened. Opp at 15. Likewise, to defend her emotional distress claims, she argues that Jonesworks "abused its position of power to obtain Abel's private communications, emails, and personal photos under false pretenses," but cites only to a single paragraph in her complaint that merely repeats those words without any factual enhancement. Opp. at 18 (citing Am. Countercl. ¶ 67). And for her numerous hacking claims, she points only to her vague allegations that "Jonesworks accessed her communications stored on cloud-based servers owned by Apple and Google." *Id.* at 8. She does not specify a single communication

accessed, let alone when it was accessed, how, by whom, or what reason she has to believe this happened at all. Unable to muster anything more than vague generalities and "formulaic recitations" of elements, Abel's claims should be dismissed. *Twombly*, 550 U.S. at 555.

## II. None of Abel's Arguments Rescue Her Hacking Claims

### A. Abel Cannot Write the Hacking Out of Anti-Hacking Statutes

After abandoning her CFAA claim, Abel vainly attempts to save her remaining statutory claims by recharacterizing them as "data privacy" claims to excuse her failure to allege any actual conduct that could comprise violations of these anti-hacking statutes. Opp. at 7-12; *see, e.g.*, *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001) (SCA enacted to prevent hacking). But this semantic sleight of hand fails; each of Abel's claims requires affirmative action on the part of Jonesworks before any liability can attach—that is, they require hacking. Abel alleges none, instead making only the conclusory allegation, with no factual specificity or basis, that Jonesworks, for example, "had unrestricted access to everything stored on Abel's phone." Am. Countercl. ¶ 67. These are precisely the type of allegations that *Iqbal* demands that this court reject.

Abel's attempt to distinguish *Sunbelt Rentals* is unpersuasive. Despite baldly asserting that, unlike *Sunbelt Rentals*, Abel's claim is based on "the employer's willful conduct," she does not identify a single willful act Jonesworks took to supposedly access Abel's accounts. Opp. at 8. This is because the Amended Counterclaims do not allege any. As in *Sunbelt Rentals*, even if any "messages appeared on" the Jonesworks iPhone, they did so "as a result of [Abel's] act of syncing" the phone to her accounts, not any intentional act by Jonesworks. *Sunbelt Rentals*, *Inc. v. Victor*, 43 F. Supp. 3d 1026, 1030 (N.D. Cal. 2014). The cases Abel cites are inapposite. Opp. at 8. In *Lindsay-Stern v. Garamszegi*, 2016 WL 11745948 (C.D. Cal. Oct 13, 2016), the court did not "criticize" *Sunbelt Rentals*' "cursory treatment of evolving privacy issues." Opp. at 8. Instead, the court distinguished the conclusory allegations of *Sunbelt Rentals* from specific, expert evidence

3

that the defendant configured an iPhone to access the Microsoft Exchange server hosting the plaintiff's email account without her permission, and logs showing the defendant's secret iPhone retrieving and deleting messages. *Lindsay-Stern*, 2016 WL 11745948, at *2-3, *8. Abel's allegations are a far cry from the specificity of *Lindsey-Stern* and far more closely resemble the "conclusory assertions" lacking "factual support" that *Sunbelt Rentals* rightly rejected.[2]

Abel's argument that she adequately alleges a SCA violation also fails. Opp. at 8-9. In support of this argument, Abel offers only generic statements that the SCA can, in theory, apply to the "trespass" into cloud accounts. *See id.; see also Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 232 (2d Cir. 2020). This is wrong for two reasons. First, despite Abel's argument that she "alleges that Jonesworks accessed her communications stored on cloud-based servers owned by Apple and Google," Opp. at 8, her actual claim is not tied to such allegations, instead only vaguely alleging that Jonesworks "accessed and obtained" Abel's "data." Am. Countercl. ¶ 127; *see Lee v. Saul*, 2020 WL 7029264, at *2 (S.D.N.Y. Aug. 31, 2020) (opposition to motion to dismiss cannot amend complaint). Second, none of Abel's cases support her argument that baldly pleading "Abel's data was intentionally accessed and obtained by Jonesworks" is sufficient to plead an SCA (or any other) claim. Am. Countercl. ¶ 127. Indeed, that argument is flatly precluded by *Iqbal*'s prohibition of "threadbare recitals" of a claim's elements. *Iqbal*, 556 U.S. at 678.

### B.     Abel Alleges No Interception of Any Communication

Abel's argument that her allegations that Jonesworks "monitor[ed] her text messages in real time, contemporaneously with their transmission" are sufficient to constitute an "interception"

---

[2]  Abel's other cases are farther afield. The discussion in *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548 (S.D.N.Y. 2008), of "implied consent" has nothing to do with what allegations of specific conduct are required to plead violations of the Wiretap Act, SCA, or Section 502. *See id.* at 561. And *Lipin v. Bender*, 597 N.Y.S.2d 340 (N.Y. App. Div.1993) did not even relate to computers or electronic data. *See id.* at 340-41 (plaintiff surreptitiously read privileged papers left unattended in legal office).

under the Wiretap Act is wrong. Opp. at 9-10. Although the Second Circuit has not addressed the question, courts nationwide consistently hold that "interception" is limited to the "acquisition during 'flight'" of electronic communications, that is, before the communications arrive in their destination accounts. *See, e.g.*, *Luis v. Zang*, 833 F.3d 619, 628-29 (6th Cir. 2016); *U.S. v. Steiger*, 318 F.3d 1039, 1048-1050 (11th Cir. 2003); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 460-62 (5th Cir. 1994). Abel alleges no such thing, instead alleging that Jonesworks was viewing the messages in her accounts, not while they were in "flight" to those accounts. Am. Countercl. ¶ 69.

Neither of Abel's cited cases say differently. In *Zaratzian v. Abadir*, 2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014), the defendant used an auto-forwarding feature to cause the email server to forward all emails destined for the plaintiff's account to the defendant as well. *Id.* at *2. That is, the defendant was intercepting the communications—and diverting them to himself—before they arrived at the plaintiff's account. *Id.* And in *Tantaros v. Fox News Network, LLC*, 2018 WL 2731268 (S.D.N.Y. May 18, 2018), the court ***dismissed*** a Wiretap Act claim because the plaintiff failed to allege "an actual interception" of any communication. *Id.* at *7. As in *Tantaros*, Abel has not alleged an interception of her communications, so this claim fails.

## C. Abel's Section 502 Arguments Are Meritless

First, Abel does not even respond to Jonesworks' argument that she does not plausibly allege any "scheme and artifice to defraud," as she must. *See* Cal. Pen. Code. § 502(c)(1); Am. Countercl. ¶ 151(a). This alone is grounds to dismiss the claim. *See Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 425-26 (S.D.N.Y. 2022).

Second, Abel's Opposition only confirms that her Section 502 claim provides insufficient notice. *See* Opp. at 10-11 & n.2. Not only are the Amended Counterclaims devoid of any reference to the subsections Abel now invokes, *see* Am. Countercl. ¶¶ 150-54, to the extent she copied and

5

pasted miscellaneous words from those subsections into her Amended Counterclaims, she did so in an incomprehensible manner that is inconsistent with what she now argues. *Compare, e.g.*, Am. Countercl. ¶ 151(b) ("taking and causing to be taken, copying and causing to be copied … computer services") *with* Opp. at 10 n.2 (arguing Abel alleges that Jonesworks took, copied or made wrongful use of *data*). Likewise, Abel's argument that the Ninth Circuit permitted a specifically-pled Section 502 claim to move forward based on authorized access but unpermitted retrieval of data, *see* Opp at 10-11 (citing *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015)), holds no water. Abel herself makes no such specific allegations, instead alleging in wholly conclusory terms that Jonesworks "without permission obtain[ed] … or otherwise us[ed] Abel's data, computer, computer system, and computer network," Am. Countercl. ¶ 151(a), and failing to allege or argue how Jonesworks could, for example "use" Abel's "computer system" "without permission" without overcoming technical barriers, as courts continue to require post-*Christensen*. *See, e.g.*, *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *9 (N.D. Cal. Aug. 30, 2019).

Third, Abel's cited cases in support of her alleged damages fail. Even if *Lindsay-Stern* correctly concluded that emotional damages were cognizable under Section 502, 2016 WL 11745948, at *6, that holding is irrelevant, as Abel does not allege emotional damages, only that she "suffered damages." Am. Countercl. ¶ 152. And *In re Carrier IQ, Inc.*, 78 F. Supp 3d 1051 (N.D. Cal. 2015) did ***not*** hold that "collection and disclosures of personal information [are] cognizable damages," as the court expressly declined to consider that argument. *Id.* at 1065.

D.   **Section 502 Does Not Apply Outside California**

Abel offers a plethora of half-baked arguments for why a California criminal statute should apply to conduct outside California. Opp. at 11-12. All are deficient. First, Abel relies only on irrelevant personal jurisdiction cases that do not mention Section 502. *Id.* at 11; *see also Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979-80 (9th Cir. 2021); *Yahoo! Inc. v. La Ligue Contre Le*

6

*Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Second, Abel asserts she alleged that Jonesworks "accessed [her iPhone's data] in California," Opp. at 11, but cites three paragraphs in her Amended Counterclaims that say no such thing. *See* Am. Countercl. ¶¶ 64-65 (termination meeting in California, but no access to data), 90 (allegation of data access but no mention of California). California has defined the scope of its Penal Code, including Section 502, and Abel's claim does not fall within that scope, so it must be dismissed. *See* Cal. Pen. Code §§ 27, 502(j).

### III.     Abel's Arguments In Favor of Her Tort Claims Are Unavailing[3]

#### A.     Abel's Privacy Tort Claims Are Not Adequately Pled

Abel argues that the alleged lack of Jonesworks policies about the use of electronic devices permitted her to reasonably have an expectation in privacy in the iPhone owned by her employer. Opp. at 14-15. Even if this were true, which it is not, Abel's admittedly voluntary provision of her passcode to Jonesworks at the time of her termination nullifies such an expectation from that moment forward—that is, for the entire period during which she alleges Jonesworks was invading her privacy. *See* Am. Countercl. ¶ 64; *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Thus, even if Abel plausibly alleged any facts supporting her bald claims that Jonesworks accessed her personal information (which she does not, *see supra* Section I), her claim fails.

Abel's failure to offer any case law in favor of her false light claim dooms her argument. Despite repeating her vague allegation that Jonesworks somehow "create[d] a misleading and damaging impression of Abel's involvement in a supposed smear campaign," she nowhere alleges or argues how that impression was false or what Jonesworks did to create it. *See* Opp. at 16. Abel instead tries to rewrite this claim to now allege that Jonesworks "manipulated, altered, and

---

[3] As detailed in Plaintiffs' motion to dismiss Abel's original counterclaims, the New York choice of law provision in her contract applies to the tort claims she brings here. Dkt. 45 at 8-13. Even if this choice of law provision does not apply, Abel's claims would be subject to New York law as they invoke law intended to "regulate conduct" and the alleged tortfeasors are located in New York. *Krock v. Lipsay*, 97 F.3d 640, 645-46 (2d Cir. 1996). Regardless, Abel's claims fail under both New York and California law, so the Court need not resolve this question.

7

selectively disclosed her private communications." Opp. at 16. But she cannot amend her Amended Counterclaims in her brief, *Lee*, 2020 WL 7029264, at *2, and in any event that argument directly contradicts Abel's own allegations, including that Jonesworks supposedly turned over the entire contents of Abel's phone indiscriminately. *See* Am. Countercl. ¶ 100. With no plausible allegation of falsity, there can be no false light.

### B. A Phone Number Abel Voluntarily Transferred Cannot be Converted

Abel argues that courts have "increasingly recognized that" phone numbers can be subject to conversion. Opp at 16-17. But none of the cases she cites are binding, on point, or applicable. *See, e.g.*, *Action Security Service, Inc. v. America Online, Inc.*, 2005 WL 8167630, at *1 (M.D. Fla. Mar. 23, 2005) (Florida law); *In re Fontainebleau Hotel Corp.*, 508 F.2d 1056, 1059 (5th Cir. 1975) (Texas law, not addressing conversion); *Boris v. Perez*, 2012 WL 13013038 (C.D. Cal. Aug. 16, 2012) (denying application for temporary restraining order premised on ownership of phone number); *Cmty. Voice Line, L.L.C. v. Great Lakes Commc'n Corp.*, 18 F. Supp. 3d 966, 982 (N.D. Iowa 2014) (Iowa law). Abel tellingly does ***not*** address the New York and California courts that have rejected her position.[4] *See, e.g.*, *Rotstein v. Cable & Wireless, Inc.*, 2002 WL 691458, *5-6 (Cal. Ct. App. Apr. 24, 2002) (no conversion of phone number); *Freedom Fin. Co. v. New York Tel. Co.*, 285 N.Y.S.2d 163, 163-64 (N.Y. App. Div. 1967) (no property interest in phone number). Because applicable law holds that phone numbers are not property, Abel's conversion claim fails.

Even more fundamentally, Abel completely ignores the fact that she voluntarily transferred the phone number to a Jonesworks phone and Jonesworks' phone service account when she began working there in 2020, and accepted Jonesworks' payment for that phone and service. Am.

---

[4] She also does ***not*** address the weight of national authority against her. *See, e.g.*, *In the Matter of Toll Free Service Access Codes*, 2005 WL 2138620, at *2 (F.C.C. Sept. 2, 2005) (no property interest in phone numbers); *Business Edge Group, Inc. v. Champion Mortgage Co.*, 519 F.3d 150, 154 (3d Cir. 2008) (same); *In re StarNet, Inc.*, 355 F.3d 634, 637 (7th Cir. 2004) (same).

8

Countercl. ¶ 26. She does not even try to allege that Jonesworks promised to return the number at that time, only vaguely alleging, entirely subjectively, that she "had no problem with this, so long as she could retain ownership of her phone number and bring it with her should she leave Jonesworks." *Id.* Even if the phone number were property (which it is not), Abel cannot sue for conversion where she voluntarily gave that property to Jonesworks.

### C.   Abel's Arguments Regarding Her Emotional Distress Claims Is Unsuccessful

First, Abel argues that a "'deliberate and malicious campaign of harassment or intimidate' or abuse of a position of power" can constitute extreme and outrageous conduct. Opp. at 18. Both cases she cites only confirm how far short of this standard her allegations fall. In *Scollar v. City of New York*, 74 N.Y.S.3d 173, 176-78 (N.Y. App. Div. 2018), a police sergeant interfered in a custody dispute through two false complaints to child services, an hours-long unsanctioned interrogation, and threats (later carried out) to call the judge presiding over the dispute. And in *Vasarhelyi v. New Sch. For Soc. Rsch.*, 646 N.Y.S.2d 795, 796-97 (N.Y. App. Div. 1996), attorneys singled out the plaintiff for ten hours of hostile, abusive, and degrading interrogation that included threats of the FBI, probing into the plaintiff's personal relationships, and humiliation of her use of English. Abel's generic allegations do not approach the level of either of these cases.

Second, Abel cannot find refuge in the argument that her conclusory allegations of "panic and despair" and "mental anguish" are sufficient. Opp. at 19. Courts demand more than these mere recitals of emotional distress. *Iqbal*, 556 U.S. at 678. Abel's own cases confirm this. For example, in *Vasarhelyi*, the plaintiff suffered "significant weight loss and cessation of menstruation, as well as anxiety and sleeplessness, requiring medication." 646 N.Y.S.2d at 796. Abel's reliance on the 55-year old decision in *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376 (1970), does not change this, as that decision addressed standards applicable to individuals who are known to be more susceptible, which Abel does not argue includes her. *Id.* at 398.

9

Third, none of Abel's cases support her novel argument that an employer has a perpetual duty to protect all of an employee's information. Opp. at 20. In *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *8 (S.D.N.Y. Aug. 4, 2021), the court inappositely considered a former employer's obligation to safeguard personally identifiable information (e.g. social security numbers) that it required employees to provide to it. And *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024), did not relate to an employer's duty at all, but to whether a "special relationship" existed between a software company and consumers.

### D. Abel's Rule 9(b) Argument Is a Non Sequitur

Abel responds to a Rule 9(b) argument that Jonesworks does not make. Opp. at 20-21. In doing so, she seeks to distract from the fact that she has no response, let alone a meritorious one, to the arguments that Jonesworks does make: that she alleges no facts in support of her conclusory allegations that Mr. Duren knew his statements were false when he made them, that she alleges no legally cognizable reliance, and that she alleges no cognizable harm. Dkt. 56 at 24-25.

### IV. The Court Should Deny Abel's Request to Again Amend Her Pleading

Leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016). Abel has already amended her counterclaims once, after Jonesworks first moved to dismiss them. That amendment did not correct the pleadings to address the motion to dismiss, but made wholesale changes, dropping six claims and adding five new ones that are equally if not more faulty. This Court should not permit Abel to continue wildly amending her pleadings in scattershot fashion with no articulated factual or legal grounding, in search of a theory.

## CONCLUSION

For all of these reasons, and those in Plaintiffs' motion, that motion should be granted.

DATED:   May 29, 2025

                                          QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP

By: */s/ Kristin Tahler*
    **QUINN EMANUEL URQUHART &
    SULLIVAN, LLP**

    Kristin Tahler
    865 S. Figueroa Street, 10th Floor
    Los Angeles, California 90017
    (213) 443-3000
    kristintahler@quinnemanuel.com

    Maaren A. Shah
    Danielle Lazarus
    295 5th Avenue
    New York, New York 10016
    (212) 849-7000
    maarenshah@quinnemanuel.com

    Nicholas Inns (*pro hac vice*)
    1300 I Street NW
    Suite 900
    Washington, D.C. 20005
    (202) 538-8000
    nicholasinns@quinnemanuel.com

    *Attorneys for Plaintiffs Stephanie Jones and Jonesworks, LLC*