**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stephanie Jones, Jonesworks LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> Jennifer Abel, Melissa Nathan, Justin Baldoni, Wayfarer Studios LLC, and John Does 1-10, <br><br> *Defendants*. | Case No.: Civ. Action No. 1:25-cv-00779-LJL |

### JOINT STIPULATION ON THE PROTOCOL FOR DISCOVERY OF ELECTRONICALLY-STORED INFORMATION AND HARD COPY DOCUMENTS

To facilitate the exchange of electronically-stored information, documents, and hard copy documents pursuant to Fed. R. Civ. P. 26, Stephanie Jones and Jonesworks LLC ("Jones Parties") and Wayfarer Studios LLC, Justin Baldoni, Melissa Nathan, and Jennifer Abel (the "Wayfarer Parties," and together with the Jones Parties, the "Parties") in *Jones et al. v. Abel et al.*, U.S. District Court for the Southern District of New York (Case No. 1:25-cv-00779-LJL) hereby stipulate to the following Protocol for Discovery of electronically-stored information, documents, and hardcopy documents ("ESI Protocol" or "Stipulation") in the above-captioned consolidated cases.

## I.    COOPERATION

1.    The Parties commit to cooperate in good faith to effectuate the provisions of this Stipulation.

2.    This Stipulation shall not enlarge or affect the proper scope of discovery in these cases, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.    Additionally, this

Stipulation does not alter or expand the preservation obligations of the Parties.

3.       The Parties acknowledge their duty to work together cooperatively throughout the discovery process.  Consistent with their obligations under applicable Federal Rules of Civil Procedure and the Court's rules and guidelines, the Parties will first attempt to resolve disputes regarding the issues set forth herein before filing a motion with the Court, or otherwise seeking relief.  If a Producing Party cannot comply with any aspect of this Stipulation, such Party shall inform the Requesting Party in writing, before the time of production, as to why compliance with the Stipulation is not possible.  No Party may seek relief from the Court concerning compliance or lack thereof with the Stipulation unless it has conferred with other affected Parties.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

4.       Nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain Documents, or to move for an appropriate Order on the grounds that the sources are not reasonably accessible because of undue burden or cost.

## II.    DEFINITIONS

The following definitions, together with the Uniform Definitions in Discovery Requests set forth in Local Civil Rule 26.3, shall apply in this Stipulation:

1.       **"Action"** means *Jones et al. v. Abel et al.*, U.S. District Court for the Southern District of New York (Case No. 1:25-cv-00779-LJL).

2.       **"Communication"** refers to the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

3.       **"Document"** or **"Documents"** is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed.

R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term. See Local Civil Rule 26.3.

4.    **"Electronic Document(s) or Data"** refers to Documents or data existing in electronic form at the time of collection, including but not limited to: email, Messaging Communications (defined below), mobile phone data, word processing files (*e.g.,* Microsoft Word or Google Docs), computer presentations (*e.g.,* PowerPoint slides), spreadsheets *(e.g.,* Excel), and image files (*e.g.,* GIF, JPEG, PNG).

5.    **"Electronically-stored Information" or "ESI,"** as used herein, refers to computer-generated information or data, stored in or on any storage Media (defined below), from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form that is clearly legible and suitable for use as exhibits ("Reasonably Usable Form"), including information or data located on computers, mobile phones, file servers, database servers, digital or optical disks, tapes, USB drives, or other real or virtualized devices or Media, as such information is defined in the Federal Rules of Civil Procedure, including Rule 34(a).  The Parties agree to meet and confer in good faith, if necessary, to resolve any disputes about whether ESI has been produced in a Reasonably Useable Form.

6.    **"Extracted Text"** refers to the text electronically extracted from a Document and includes all header, footer, and Document body information, when reasonably available.

7.    **"Film"** refers to the feature length motion picture entitled It Ends With Us, based on the book written by Colleen Hoover, that is referenced throughout this Action.

8.    **"Hard Copy Documents"** means Documents existing in tangible form, including but not limited to paper Documents.

9.    **"Litigant(s)"** means any Party (as defined in Local Civil Rule 26.3 of the Local

Rules of the United States District Courts for the Southern and Eastern Districts of New York) to the Action.

10.    **"Load File" or "Unitization File"** refers to an electronic file containing information identifying a set of scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.  A Load File or Unitization File will also contain data relevant to the individual Documents, including extracted and user-created metadata.

11.    **"Media"** refers to an object or device, including, but not limited to, a digital or optical disc, tape, computer, or other device, irrespective of whether in the Producing Party's physical possession, on which data is or was stored.

12.    **"Messaging Communications"** refers to mobile messages (*e.g.,* SMS, iMessage, WhatsApp, Telegram, Signal), channel-based communications (*e.g.,* Slack, Teams), synchronous chat (*e.g.,* Teams, Jabber, Google Chat), collaboration tools (*e.g.,* SharePoint, wikis), social media (*e.g.,* X, Facebook, Instagram, TikTok), and communications in online meetings (*e.g.,* Zoom, Teams, WebEx).

13.    **"Native Format"** refers to the format of Electronic Documents and/or ESI in which information or data was generated and/or was used by the Producing Party in the usual course of its business and in its regularly conducted activities.  Where ESI is not stored in a portable Native Format, a Reasonably Useable Form of such ESI should be provided with available metadata (*e.g.,* creation date), subject to Section IV.1.a.

14.    **"Non-Messaging Communications"** refers to all Electronic Documents or Data other than Messaging Communications.

15.    **"Non-Related Third Parties"** refers to any third parties who are not Related

4

Third Parties.

16.    **"OCR Text"** refers to text generated through an optical character recognition process.

17.    **"Producing Party"** refers to a Party in the above-captioned consolidated cases from which production of ESI or hard copy Documents are sought.

18.    **"Protective Order"** refers to the Court-ordered protective order in the Action, dated March 13, 2025 (ECF No. 125).

19.    **"Related Third Parties"** refers to any third-party individual on the cast of the Film, and the individuals identified in Exhibit B.[1]

20.    **"Requesting Party"** refers to a Party in the above-captioned cases seeking production of ESI or hard copy Documents.

## III.    SEARCH PROTOCOL

The Parties will meet and confer within a reasonable period of time after entry of this Stipulation in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information. To that end, the Parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g.,* search terms, Technology-Assisted Review, predictive coding). The Parties shall not seek Court intervention without first attempting to resolve any disagreements in good faith.

---

[1] Exhibit B is not affixed hereto in consideration of the individuals' privacy interests; the Parties are happy to provide a copy of Exhibit B to the Court upon request.

1.    **Collection of Documents.**    Documents and categories of Documents and Communications that are likely to contain information relevant to the above-captioned Action and responsive to a Party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a Party's document management, shall be collected without the use of search terms or other agreed-upon advanced search methodology (*e.g.,* analytics, predictive coding, Technology-Assisted Review). The aforementioned shall not prevent a Party from using date filters beginning in December 1, 2022, to collect email accounts, Google Workspace, Fileshares, and cloud document repositories (i.e., Dropbox, PhotoShelter, Frame.io), where doing so will not negatively impact the collection of potentially responsive information. The Parties agree to meet and confer regarding any other source in advance of collection. For the avoidance of doubt, date restrictions shall not be used for Messaging Communications.

2.    **Search Methodology.**

a.    For Messaging Communications, the Parties agree that, subject to Section IV(4) below, the production of complete ESI for Messaging Communications includes relevant messages from all participants in a conversation and not just from the participants that are identified as custodians.  For clarity, this shall not serve to expand production of Messaging Communications beyond those in the possession, custody, and control of the responding party.

b.    For all Non-Messaging Communications, including, for example, email Communications or word processing Documents, the Parties agree that potentially responsive ESI shall be searched through the use of search terms or other limiters, including, by way of example only, date ranges and email domains in Metadata fields, as a means of limiting the

volume of information to be reviewed for responsiveness.[2]

        c.     The Parties recognize that Messaging Communications may contain information that is relevant to the Action and responsive to a Party's document requests, and should be considered in the production of ESI, but that such communications may be less conducive to the use of search terms as a means of identifying all relevant and responsive materials given the nature of the type of Communication.  The Parties recognize that a manual review of Messaging Communications is burdensome and may be unduly burdensome and expensive where it is less likely to lead to relevant, admissible evidence.  Accordingly, the Parties agree to conducting a manual review of all unprivileged Messaging Communications between and among any Litigant and another Litigant or Related Third Party.[3] For purposes of manual search of Messaging Communications under this Paragraph III.2.c., Wayfarer Studios LLC shall be limited to Jamey Heath, Justin Baldoni, Steve Sarowitz, and Tera Hanks, and Jonesworks LLC shall be limited to Stephanie Jones and Gordon Duren. Subject to the foregoing, the Parties also agree to relying on search terms or other limiters, including, by way of example only, date ranges and phone numbers in Metadata fields for (i) Messaging Communications with Non-Related Third Parties; and (ii) all Non-Messaging Communications by, among, and between Litigants and/or Related Third Parties.

        3.     **Technologies.**  No Producing Party shall use Predictive Coding/Technology-Assisted Review for the purpose of culling Documents to be reviewed or produced without

---

[2] The Parties are amenable to conferring on alternative search methodologies where search terms are not appropriate.

[3]  Notwithstanding the foregoing, nothing herein shall be construed as a waiver of any right to object to a production, including, without limitation, on grounds that it is burdensome.  The Parties reserve the right to request and agree to negotiate, as necessary, an expanded scope of this manual review.

notifying the Requesting Party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.  This paragraph does not prohibit a Party from using Predictive Coding/Technology-Assisted Review or other artificial intelligence technologies to prioritize and streamline their document review process.

## IV.    PRODUCTION

1.    **ESI Production Format.**

a.    <u>General</u>.  The Parties generally agree to produce responsive, non-privileged, relevant Documents as set forth herein and in **Exhibit A**.  However, the Parties are not obligated to include metadata for any Document that does not contain such metadata in the original, if it is not possible to automate the creation of metadata when the Document is collected or processed.  The Parties reserve their rights to object to any request for the creation of metadata for Documents that do not contain metadata in the original.  The Parties agree not to degrade the searchability of Documents as part of the document production process.  Notwithstanding the foregoing, the Parties shall perform Optical Character Recognition (OCR) on images and PDFs that do not already have extracted text.

b.    <u>Production Format</u>.    The following provisions shall govern the production, format, and procedure for ESI, subject to the other provisions contained herein.

i.    B/W 300 DPI Single-Page Group IV Tiff images, except for documents containing graphics, images, or emojis, and, consistent with Section IV(1)(c) below, Messaging Communications, color JPEG images with EXIF compression, 300 dpi or higher, and 24-bit color depth;

ii.    Delimited Load Files for Documents (.DAT) containing a field with the full path and filename to native and text files along with the metadata fields identified

8

in **Exhibit A**, to the extent that the fields can be extracted. The Parties are not obligated to manually populate any of the fields in **Exhibit A**, if such fields cannot be reasonably extracted from a Document;

   iii. Load files for images (.OPT) containing the Bates number and file path;

   iv. Document level .txt files for all Documents containing Extracted Text, or OCR Text if Extracted Text is unavailable, or if the Document has been redacted;

   v. Bates number and Confidentiality designation (if any) on the face of the image; and

   vi. Compression file styles (*e.g.,* .ZIP) shall be decompressed in a reiterative manner to ensure that, for example, a .ZIP within a .ZIP is decompressed to the lowest possible level of compression, resulting in individual folders and/or files.

   c. <u>Messaging Communications</u>. Messaging Communications shall be produced as color images in Relativity Short Message Format ("RSMF") or in a substantially analogous format, such as Chat Card ("RSMF or Similar"). For all Messaging Communications:

   i. The metadata fields listed in **Exhibit A** for RSMF or Similar shall be produced, along with Extracted Text, even if such Metadata fields are not populated for the underlying native messages;

   ii. Messaging Communications that span more than one day shall be split into 24-hour RSMF or Similar segments;

   iii. The Parties may use RSMF or Similar slicing to remove material that is not relevant per Fed. R. Evid. 401, or includes a mix of responsive and non-responsive

material, provided that:

        1)    All attachments to a produced RSMF or Similar slice shall be included in the production.

        2)    The date and time metadata produced for a sliced RSMF message shall be the values for the sliced message only, not for the full 24-hour segment from which it was sliced.

        3)    Relevant material withheld pursuant to a claim of attorney-client privilege or attorney work product protection, or any other applicable privilege or immunity, shall not be Sliced, but instead should be redacted or withheld. Such information shall be identified in a privilege log as set forth in Section IV(7).

    d.    <u>Native ESI and Hidden Text.</u>

    i.    Spreadsheets (*e.g.,* Excel, Lotus, Google Sheets, CSV) and audio or video media files (*e.g.,* .WAV, .MP3, .MP4, .MOV, .WMV, .MPEG), shall be produced in Native Format.

    ii.    If a Document is produced in Native Format, a single-page Bates stamped image slipsheet shall be produced, stating the document has been produced in Native Format and endorsed with the corresponding Bates number and confidentiality designation (if any).

    iii.    If production in Native Format of any Document(s) initially produced in image is reasonably necessary (*e.g.,* to decipher the complete meaning, context, or content, or confirm accuracy), a Party may request production of the original Document in Native Format. The Parties agree to meet and confer in good faith with respect to any such reasonable request for specific Documents in Native Format.

iv.    All hidden text (*e.g.,* tracked changes, hidden columns, comments, notes, markups) will be expanded, extracted, and rendered in the image, including, but not limited to, the inclusion of any notes or comments contained within any PowerPoint slides/presentations that are produced in the image.

e.    <u>Compressed File Types</u>.  Compressed or container file types (*e.g.,* .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted. The compressed files themselves need not be produced.

f.    <u>Embedded Objects</u>.  Embedded files shall be produced as attachments to the Document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the "Is Embedded" metadata field as provided in **Exhibit A**.  Logos and similar graphic elements need not be extracted as separate Documents as long as they are clearly imaged and displayed in the parent Document.

g.    <u>Time</u>.

i.    When processing non-email ESI for an image production, the Producing Party will instruct its vendor to turn off any automatic date stamping.

ii.    When processing ESI, the time zone that the Producing Party has used to normalize time stamps during processing will be provided in the production metadata.

iii.    Parties must produce all ESI in the Eastern Time zone.

iv.    When a metadata field includes a date and/or time, it shall be provided in the following format: MM/DD/YYYY HH:MM:SS.

h.    <u>Family Relationships of Electronic Files</u>.

i.    Each Party shall preserve and appropriately reflect in a Load File the association between an attachment and its parent Document for ESI.

ii.     The Parties shall collect and produce files attached to parent Documents.  If any part of a Document or its attachment is responsive, the entire family, including all attachments, will be produced, provided that Documents may be redacted or slipsheeted on the basis of privilege.  The Parties shall take reasonable steps to ensure that parent-child relationships within a Document family (the association between an attachment and its parent document) are preserved.

iii.     A parent Document, whether it contains attachments or not, containing both privileged and responsive, non-privileged content shall be produced with the privileged information redacted.  Headers (*i.e.,* From/To/CC/BCC/Date/Time) for all emails or texts in the chain shall be produced intact.

iv.     Any non-email attachment withheld on the basis of privilege that is an attachment to an email that has been produced shall either (i) be replaced with a Bates-stamped image placeholder identifying the attachment as withheld as privileged; or (ii) be redacted in full and produced with Bates numbers on each page.

i.     <u>Email Threading</u>.  To further reduce the volume of entirely duplicative content within email threads, the Parties may use email threading analytics technology, which shall permit a Party to produce only the Inclusive emails, defined as those emails within an email thread containing all unique content as determined by commonly-accepted threading analytics tools, provided that the Producing Party ensures that threading does not remove any information or attachments that would have been produced without threading. A Party may reasonably request production of an individual lower included email or emails from a produced email thread, and any such reasonable requests shall not be refused where the Document is available within the Producing Party's Document collection.  For the sake of clarity, if any

portion of the Inclusive email thread is privileged, the privileged information shall be redacted and the non-privileged information shall be produced, with header information included as outlined in Section IV(1)(h). Additionally, any emails or Documents which cannot be threaded must be reviewed in full with all responsive, non-privileged Documents being produced.

   j. <u>Production Stamping</u>. Each page of a Document produced as images shall have a legible, unique Bates Number electronically endorsed onto the image at a location that does not obliterate, conceal, or interfere with any information from the source Document (the "Bates number"). Each file produced in Native Format shall be named by the Bates number, with an image placeholder containing the same Bates number. Documents produced in Native Format may also contain the confidentiality endorsement in the file name.

   i. Bates numbering shall be consistent across the production and be numerically sequential. Each Document produced shall be identified with a Bates number, according to the following protocol:

   1) The first half of the Bates number shall contain a prefix which clearly identifies the Producing Party.

   2) The second half of the Bates number shall contain nine (9) digits, padded with leading zeroes as needed to preserve its length.

   ii. If a Bates number or set of Bates numbers is skipped, the skipped number(s) should be noted with a placeholder.

   iii. Bates numbers shall be sequential within a family.

   iv. ESI produced as images which is subject to a claim that it is protected from disclosure under the Protective Order shall be endorsed on each page of the Document (for images) or in the file name and storage device (for native productions) with

"CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," in compliance with the Protective Order.  The Party shall also include in the Load File (.DAT) a designation that the Document is protected and the level of protection as provided in **Exhibit A.**

   k. <u>Appearance and Content</u>.  Except for Documents containing redactions, no Document may be intentionally manipulated to change how the source Document would have appeared if printed out to a printer attached to a computer viewing the file without prior agreement of the Requesting Party.

   l. <u>Encrypted Files</u>.  To the extent practical, the Producing Party shall take reasonable efforts to ensure that all encrypted files are decrypted prior to processing and searching, and shall produce passwords for any password-protected Documents produced to the extent the passwords are reasonably available or obtainable.

   m. Notwithstanding the foregoing, if any ESI is produced in a form that is not reasonably useable by the Requesting Party, the Requesting Party reserves the right to request the records to be delivered in a different form, about which the Parties will confer if necessary, including, but not limited to, Native Format.

   2. **Hard Copy Document Production Format.**

   a. <u>Production</u>.  All Hard Copy Documents shall be scanned and produced as color JPEG images or B/W Tiff images as set forth in Section IV(1)(b)(i).  Multi-page OCR Text for each Hard Copy Document shall also be provided in TXT format.  Software used to generate OCR Text shall maximize text quality, with settings such as "auto-skewing" and "auto-rotation" turned on during the OCR Text-generating process.  Hard Copy Documents shall be produced with standard Load Files, which can be used with commercially available litigation software packages, and with the Default Production Fields as described in Exhibit A.

14

b. <u>Unitization</u>. Hard Copy Documents should be logically unitized (*i.e.,* distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records). Unitization of a Hard Copy Document and any attachments or affixed notes should be maintained as it existed when collected by the Producing Party. Hard Copy Documents and attachments with affixed notes (*i.e.,* Post-its) shall be imaged both with and without the affixed notes so that both the content of the affixed notes and any content obscured by the affixed notes are produced. Unitized Hard Copy Documents shall be produced in the order in which they are kept in the usual course of business. For example, Hard Copy Documents stored in a binder, folder, or similar container should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container. Parties may unitize their Documents using either physical unitization (*i.e.,* based on physical binding or organizational elements present with the original Hard Copy Documents like staples, clips, and binder inserts) or logical unitization (*i.e.,* a manual review to determine what logically constitutes a Hard Copy Document, like page numbers or headers). If unitization cannot be reasonably maintained, the original unitization should be documented in the data Load File or otherwise electronically tracked, if reasonably possible.

c. <u>Custodian</u>. The Producing Party will provide the name of the custodian who had possession of the Hard Copy Document upon its collection.

3. **Deduplication.**

a. <u>General</u>. The Parties shall use reasonable, good-faith efforts to avoid the production of duplicate ESI following industry-standard practices for MD5 or SHA-1

hash comparison. Deduplication must be applied at a family level. For any custodian determined to have a copy of a Document (including emails), Document family, or loose electronic Document in its collection, said custodian value shall be listed in the All Custodians metadata field for every document in the family. Hard Copy Documents shall not be eliminated as duplicates of ESI. To the extent electronic Documents are deduplicated, the Parties agree to produce an All File Paths field containing the file path for the Document and all duplicates. Should the All Custodians or All File Paths metadata fields for Documents previously produced become incomplete due to processing of additional data or production of Documents of additional custodians, an overlay file for the All Custodians and/or All File Paths metadata fields will be produced prior to the deadline for substantial completion of document production, including all the custodians and file paths for the affected Documents.

      b.    <u>No Manual Deduplication</u>. No Party shall identify and/or eliminate electronic duplicates by manual review or any method other than by use of the technical comparison using MD5 or SHA-1 hash values.

    4.    **Redactions.**

      a.    To the extent that a Document contains (a) privileged content; (b) the types of personally identifiable information set forth in Fed. R. Civ. P. 5.2 ("Personally-Identifiable Information"); (c) material that (i) is not relevant per Fed. R. Evid. 401, or (ii) includes a mix of responsive and non-responsive material, the Producing Party may produce that Document in a redacted form.

      i.    Any privilege redactions shall be clearly indicated on the face of the Document with the redaction designation making clear the reason for the redaction (*e.g.,* "Redacted - Privileged").

ii.     Spreadsheets (*e.g.,* Microsoft Excel, Google Sheets) requiring redactions shall be produced with native redactions.

iii.     Personally-Identifiable Information shall be redacted with a black box.

iv.     Any non-responsive redactions shall be clearly indicated on the face of the Document with the redaction designation making clear the reason for the redaction (*e.g.,* "Redacted – NR").

v.     Where a Document contains both responsive and non-responsive content, the Producing Party may redact the non-responsive material as provided herein and produce the responsive content.

vi.     Where a Document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material as provided herein and produce the responsive content and a privilege log as set forth in Section IV(7).

vii.     A Document's status as redacted does not relieve the Producing Party from providing all the metadata required herein unless the metadata withheld contains privileged content; provided, however, that a Party may withhold the following metadata for redacted Documents: Subject, File Name, Attachment Names, All File Path, and MD5 Hash/SHA-1.

viii.     All Documents containing a redaction, whether on an image or within a native Document, shall contain a "Yes" value in the Redacted field as required in the Default Production Fields in **Exhibit A.**

ix.     The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this paragraph.

5.    **Production Media.**

a.    Documents shall be produced via a secure file transfer protocol site, or as the Parties may hereafter agree. Each piece of production shall include a unique identifying label and cover letter or email including the following information:

    i.    Name of the litigation and its case number;

    ii.    Name of the Producing Party;

    iii.    Date of the production in MM/DD/YYYY format;

    iv.    Volume number;

    v.    Bates number range;

    vi.    Highest confidentiality designation; vii. Notes regarding any irregularities in the production; *and*

    vii.    Any replacement productions shall cross-reference the original production volume, clearly identify that it is a replacement, and Bates stamp the documents being replaced using the same Bates numbers which shall now contain an _A suffixed Bates number on each reproduced page.

6.    **Clawback.**

a.    Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document is not a waiver of privilege or protection from discovery in the above-captioned Action or in any other federal or state proceeding.

b.    The Producing Party may assert privilege or protection over produced Documents at any time by notifying the Requesting Party in writing of the assertion of privilege or protection. After being notified, a Party must promptly return or destroy the specified information and any copies it has and may not sequester, use, or disclose the information until

the claim is resolved.  Upon request, a Party shall certify that the specified information has been destroyed, and that neither the Party nor its employees or agents retain any copies of the specified information.

   c. Nothing in this Stipulation shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity (together, "Privileged").  The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of any Documents.

   d. The provisions of Fed. R. Evid. 502(b) do not apply.

   e. A Party receiving any production that it perceives to be potentially Privileged shall refrain from reading, promptly notify the sender or Party whom the Privilege would apply to, and return the material.

   7. **Privilege and Redaction Logs.**

   a. <u>Privilege Log</u>.  Each Document withheld pursuant to a claim of attorney-client privilege or attorney work-product protection, or any other applicable privilege or immunity, shall be identified in a privilege log pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure.

    i. The Party withholding or redacting any responsive Document on the grounds of any privilege or immunity claim shall provide to the other Party a Privilege log which shall contain the following information for each document withheld:

     1) Privilege Log Entry Number;

     2) the date of the email or text, or if an attachment, the date of the parent email or text;

3)      the identity of person(s) who sent, authored, signed, or otherwise prepared the document, and if an email, including their email address (*e.g.,* Jane Doe (jdoe@gmail.com));

4)      the identity of all persons designated as recipients, CCs, or BCCs;

5)      a description of the contents of the Document that, without revealing information that is allegedly privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privilege or immunity; and

6)      the type or nature of the privilege asserted (*e.g.,* attorney-client, work product, common interest, etc.).

ii.      Privilege logs shall be produced no later than three (3) weeks after the deadline for substantial completion of document production.

8.      **Miscellaneous.**

a.      <u>Variance</u>.  Any practice or procedure set forth herein may be varied by agreement of the Parties without order of the Court.  Failure of the Parties to agree on any modifications for good cause shown may be raised with the Court as necessary and in accordance with all applicable rules, including the Federal Rules of Civil Procedure.

b.      <u>General</u>.  The Parties do not waive any objections to the relevance, responsiveness, production, discoverabiity, possession, custody, control, or confidentiality, including (without limitation) objections regarding the burden, overbreadth, or relevance of Document requests, or any other available objection.  Nothing in this Stipulation shall be interpreted to require the disclosure of irrelevant information, relevant information that is

overly burdensome or not proportional to the needs of the Action, or relevant information protected by the attorney-client privilege, work-product immunity, or any other applicable privilege or immunity or that is otherwise not discoverable.

        c.    <u>No Waiver of Rights Regarding Review</u>.  By entering this Stipulation, no Party has released or given up its right to review its Documents for Privilege or any other reason (including to identify non-responsive Documents), and the existence of this Stipulation cannot be used to compel a Party to produce Documents without review.  Moreover, this Stipulation does not mean that the cost of review should not be considered in whether any particular discovery is disproportionate (*i.e.,* that the marginal benefit of the discovery is not as great as the marginal cost of said discovery including review).

        d.    The terms of this Stipulation supersede any technical instructions contained within any discovery requests (*e.g.,* Requests for Production of Documents) in the event of any inconsistencies.

June 23, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*/s/ Kristin Tahler*
Kristin Tahler
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
kristintahler@quinnemanuel.com

Maaren A. Shah
Danielle Lazarus
295 5th Avenue
New York, New York 10016
(212) 849-7000
maarenshah@quinnemanuel.com
daniellelazarus@quinnemanuel.com

Nicholas Inns (admitted *pro hac vice*)
1300 I Street NW
Suite 900
Washington, D.C. 20005
(202) 538-8000
nicholasinns@quinnemanuel.com

*Attorneys for Plaintiffs Stephanie
Jones and Jonesworks, LLC*

MEISTER SEELIG & FEIN PLLC

*/s/ Bryan J. Freedman*
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
(202) 655-3500
ms@msf-law.com
kaf@msf-law.com

LINER FREEDMAN TAITELMAN +
COOLEY, LLP
Bryan J. Freedman (admitted *pro hac vice*)
Miles M. Cooley (admitted *pro hac vice*)
Theresa M. Troupson (admitted *pro hac vice*)
Summer Benson (admitted *pro hac vice*)
Jason Sunshine
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
(310) 201-0005
bfreedman@lftcllp.com
mcooley@lftcllp.com
ttroupson@lftcllp.com
sbenson@lftcllp.com
jsunshine@lftcllp.com

AHOURAIAN LAW
Mita Ahouraian, Esq. (admitted *pro hac vice*)
2029 Century Park East, 4th Floor
Los Angeles, CA 90076
(310) 376-7878
mitra@ahouraianlaw.com

*Attorneys for Defendants Wayfarer
Studios LLC, Justin Baldoni, Melissa
Nathan, and Jennifer Abel*

SO ORDERED.

Date:

_____
HON. LEWIS J. LIMAN
United States District Judge

<u>**EXHIBIT A**</u>

**I.     PRODUCTION FIELDS**

The following metadata fields will be provided for all Documents in the production, to the extent the metadata is reasonably available and extractable during processing.  Specific metadata associated with redacted Documents may be withheld from the production as provided in Section IV(4)(a)(vii) and as set forth below.  Notwithstanding the subsequent metadata fields, it is understood that the production output shall be substantially similar irrespective of format, and no additional production obligation shall arise merely because a document was extracted using either the RSMF or "non-RSMF" method.

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| **BEGBATES** | ABC_0000000l (Unique ID) | The Bates number associated with the first page of a document. | All | Yes |
| **ENDBATES** | ABC_00000003 (Unique ID) | The Bates number associated with the last page of a document. | All | Yes |
| **BEGATTACH** | ABC_0000001 (Unique ID Parent-Child Relationships) | The Bates number associated with the first page of the parent document. | All | Yes |
| **ENDATTACH** | ABC0000008 (Unique ID Parent- Child Relationships) | The Bates number associated with the last page of the last attachment. | All | Yes |
| **PARENT BATES** | ABC_0000000l (Unique ID) | The Bates number associated with the first page of parent document/email message (will not be populated for documents that am not part of a family)_ | All | Yes |
| **CHILD BATES** | ABC_00000003 (Unique ID) | The Bates number associated with the first page of the child attachment(s); may be more than one Bates number listed depending on number of attachments (will not be populated for documents that are not part of a family) | All | Yes |

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| VOLUME | VOL001 | The name of production volume and/or production media. | All | Yes |
| RECORD TYPE | Options: Email, Attachment, Hard Copy Document, EDocument | The record type of a document. | All | Yes |
| MASTER DATE | MM/DD/YYYY | The date the email, message, or calendar entry was sent or the date the document was created, which date field wiH be propagated to the full family for purpose of sorting email or document families. | All | Yes |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. | Email | Yes |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. | Email | Yes |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. | Email | Yes |
| RECEIVEDTIME | HH:MM | The time the document was received. | Email | Yes |
| CREATEDATE | MM/DD/YYYY | The date the document was created. | EDocument | Yes |
| CREATETIME | HH:MM | The time the document was created. | EDocument | Yes |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. | EDocument | Yes |
| LASTMODTIME | HH:MM | The time the document was last modified. | EDocument | Yes |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. | Email | Yes |
| MEETING STARTT™E | HH:MM | Start time of calendar entry. | Email | Yes |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. | Email | Yes |
| MEETING END TIME | HH:MM | End time of calendar entry. | Email | Yes |
| AUTHOR | jsmith | The author of a document from extracted metadata. | EDocument | Yes |

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| **LAST EDITED BY** | jsmith | The name of the last person to edit the document from extracted metadata. | EDocument | Yes |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. | Email | Yes |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. | Email | Yes |
| **CC** | Joe Smith <jsmith@email.com>; (jones(a),email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a copyee existed. | Email | Yes |
| **BCC** | Joe Smith <jsmith@email.com>; tiones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. | Email | Yes |
| **SUBJECT** | | The subject line of the email/calendar item. | Email | Maybe omitted |
| **MsgID** | | The Unique Message ID. | Email | Yes |
| **RSMF THREAD ID** | | | RSMF | Yes |
| **RSMF BEGIN DATE** | MM/DD/YYYY | | RSMF | Yes |
| **RSMF END DATE** | MM/DD/YYYY | | RSMF | Yes |
| **RSMF MESSAGE COUNT** | Numeric | | RSMF | Yes |
| **RSMF PARENT DATE** | MM/DD/YYYY | RSMF BEGIN DATE value populated for the family. | RSMF | Yes |

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| RSMF PARTICIPANTS | Smith, Joe; Doe, Jane | | RSMF | Yes |
| RSMF APPLICATION NAME | Signal; WhatsApp | Name of the application where message resided | RSMF | Yes |
| RSMF DEVICE NAME | | Name of the device messages were collected from | RSMF | Yes |
| RSMF RECORD TYPE | | | RSMF | Yes |
| RSMF MESSAGE DELETED | Yes or No | Indicates if the message was deleted | RSMF | Yes |
| RSMF MESSAGE EDITED | Yes or No | Date and time when the message was edited | RSMF | Yes |
| MESSAGE CONVERSATIO NID | Alphanumeric string | Group the file belongs to, used to identify other messages and attachments in a conversation. | Non-RSMF Messaging Communications | Yes |
| MESSAGE FROM | Joe Smith <+19175551212> | The name, when available, and phone number of the sender of the message. | Non-RSMF Messaging Communications | Yes |
| MESSAGE TO | Joe Smith <+19175551212> | The names, when available, and phone numbers of ALL recipients of the message, including the sender | Non-RSMF Messaging Communications | Yes |
| MESSAGE DATE TIME SENT | MM/DD/YYYY | Date and time when the message was sent. | Non-RSMF Messaging Communications | Yes |
| MESSAGE APPLICATION NAME | Signal; WhatsApp | Name of the application where message resided | Non-RSMF Messaging Communications | Yes |
| MESSAGE DEVICE NAME | | Name of the device messages were collected from | Non-RSMF Messaging Communications | Yes |

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| **MESSAGE TYPE** | | | Non-RSMF Messaging Communications | Yes |
| **MESSAGE DELETED** | Yes or No | Indicates if the message was deleted | Non-RSMF Messaging Communications | Yes |
| **MESSAGE EDITED** | Yes or No | Date and time when the message was edited | Non-RSMF Messaging Communications | Yes |
| **ALL CUSTODIANS** | Smith, Joe; Doe, Jane | All of the agreed-upon custodians of a document from which the document originated, separated by semicolons. | All | Yes |
| **ATTACHMENT COUNT** | Numeric | The number of attachments to a document. | Email, EDocument | Yes |
| **ATTACHMENT NAMES** | Document Name.xls | The file names of the attachments to a parent document | Email, EDocument | Maybe omitted |
| **FILE EXTENSION** | XLS | The file extension of a document. | Emaiil, EDocument | Yes |
| **FILENAME** | Document Name.xls | The file name of a document. | Email, EDocument | Maybe omitted |
| **EMAIL OUTLOOK TYPE** | email, calendar· item, note, task, meeting request, message, etc. | Type of Outlook item, e.g. email, calendar· item, note, task. | Email | Yes |
| **FILE SIZE** | Numeric | The file size of a document (including embedded attachments). | All | Yes |
| **PAGE COUNT** | Numeric | For documents produced as images, the number of pages in the document. For documents produced as natives, page count will be 1 (for placeholder). | All | Yes |

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| **HIDDEN CONTENT** | Yes or No | Denotes presence of Tracked Changes/Hidden Content/Embedded Objects in item(s). | Email, EDocument | Yes |
| **IS EMBEDDED** | Yes or No | The yes/no indicator of whether a file is embedded in another document. | Email, EDocument | Yes |
| **HASH** | Alphanumeric | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-I) should be used throughout production. | Email, EDocument | Maybe omitted |
| **CONFIDENTIAL ITY** | Confidential or Highly Confidential or Blank | The Confidentiality designation assigned to each document. | All | Yes |
| **REDACTED** | Yes or Blank | If a document contains a redaction, this field will display Yes | All | Yes |
| **TIMEZONE PROCESSED** | PST, CST, EST, etc. | The time zone where the documents were located at time of collection. | Email, EDocument | Yes |
| **ALL FILE PATHS** | \Outlook\Smith, Mary\2025 Account Statements | The path(s) from the location(s) in which the document was stored in the ordinary course of business. | Email, EDocument | Maybe omitted |
| **NATIVELINK** | \NATIVES\ABC000001.x ls | The full path to a native copy of a document in the production media. | All | Yes |
| **FULLTEXT** | \TEXT\ABC00000 1.txt | The path to the full extracted text of the document in the production media. | All | Yes |