# EXHIBIT A



**PRYOR CASHMAN LLP**

7 Times Square, New York, NY 10036-6569   Tel: 212-421-4100   Fax: 212-326-0806

New York | Los Angeles | Miami

pryorcashman.com

**Daniel J. Pohlman**

Direct Tel: 212-326-0823
dpohlman@pryorcashman.com

October 17, 2025

<u>By Email</u>

Kristin Tahler
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Fl.
Los Angeles, CA 90017

    Re:    ***Jones et al. v. Abel et al.*, Case No. 1:25-cv-00779-LJL**
            <u>***Lively v. Wayfarer Studios LLC et al.*, No. 1:24-cv-10049-LJL**</u>

Counsel:

      We write in response to your letter dated October 15, 2025, and its accompanying subpoena. As set forth below, your letter contains multiple misapprehensions, undue aspersions, and outright misrepresentations. All warrant correction. Notwithstanding our desire to correct the record, we are glad to work with you in good faith and to confer regarding potential supplementation of our production of records, even as we note that fact discovery is closed in this action.

      I.    **Misapprehensions and Other Misstatements in Your Letter**

      *First*, and most importantly, your letter falsely asserts that Ms. Case's deposition "revealed a shocking extent of spoliation of evidence material to Jonesworks' claims." You seem to take the position that Signal messages were not collected and produced by Ms. Case. As you are aware (or should be aware), that is false. Ms. Case's phone was fully imaged, the Signal messages on her phone were processed, those messages were accounted for in search term hit reports, and responsive Signal messages were produced to you. Ms. Case's testimony was accurate, in that she did not personally conduct such a search for Signal messages, but incorrect regarding our process. We can represent (and again, a review of the materials already in your possession will confirm) that Signal was among the sources searched. That fact—one that you knew or should have known—renders much of your letter baffling and improper.

      Further, regarding Signal, as you should be aware (given its salience in this litigation), the Signal disappearing messages feature functions on a group basis. This means that if *any* participant activates the disappearing messages feature, all messages sent while the feature is active are automatically deleted after a predetermined interval, irrespective of who enabled the feature. Your



Kristin Tahler
October 17, 2025
Page 2

conflation of chat participants using this feature with the legal standard for spoliation is baseless. You have reason to know this, too, given that, by order, entered on August 29, 2025 (Lively Dkt. 727 at p. 5–6), Judge Liman correctly observed that parties to this dispute were not obligated to preserve self-deleting Signal messages exchanged before litigation.

*Second*, your letter mischaracterizes Ms. Case's testimony regarding the Business Insider article *Who's Afraid of Stephanie Jones?*—testimony that made unmistakably clear the extremely limited nature of her involvement as an off-record source. (Case Tr. 297:18–24.) Ms. Case did not send any information to Business Insider herself and was not "integrally involved in planting or providing information." Her only involvement in any information transmitted was limited to her off-record conversation (about which she testified in detail) and formatting a list of names that were provided to her that may have ultimately been sent to a reporter (something that Ms. Case lacks knowledge of) (Case Tr. 301:6–10; 316–317). Further, as is made clear by Ms. Case's testimony, the only issue she discussed with the Business Insider reporter involved the toxic working conditions she observed while employed at Jonesworks (Case Tr. 301:11–25), and nothing she stated differed (in level, detail, or content) from numerous existing public accounts of Ms. Jones's conduct (Case Tr. 490:18–22).

*Third*, you assert that our "clear understanding of Ms. Case's role calls into serious question counsel's good faith" and make reference to "pointed questions" that should have elicited the exact information that Ms. Case ultimately admitted. To be direct: this is spurious and false. No such direct "pointed questions" were asked. You do not point to any written communication or any record of a meet and confer where any misrepresentation (or omission) was made. Indeed, notwithstanding that counsel for Ms. Jones has advanced its (mistaken and incorrect, Case Tr. 377:18–22) view that Ms. Case created websites at issue in this case, (including in public filings), the only "pointed question" asked of us was whether we knew who created the websites at issue. As is clear from Ms. Case's testimony, neither Ms. Case, nor our firm, as her counsel, knows who ultimately created the websites at issue (Case Tr. 374:12–16; 382:10–15). The failure of Ms. Jones's representatives to ask "pointed questions" is their own. We further reject your position that we, at any point, caused a "tremendous and needless waste of judicial and counsel resources"—as set forth in our prior submissions to the Court (Jones Dkt. 94; Jones Dkt. 95), it was in actuality Ms. Jones's strategic delay in pursuing compliance with the initial subpoena which caused a significant waste of resources.

Taken together, your ungrounded allegations are troubling. They certainly are not constructive. We ask that in the future you take greater care in assessing information readily available to you before leveling accusations of malfeasance as to either Ms. Case or us, as her counsel.



Kristin Tahler
October 17, 2025
Page 3

## II.    Our Good Faith Effort to Confer on Additional Production

Notwithstanding, we are willing to meet and confer regarding an additional review and production of information responsive to your second subpoena. We will respond to your subpoena formally in writing. But, as an initial matter, you seek information regarding individuals with whom Ms. Case does not recall having any involvement, including Peter Comisar, Christian Lanng, Joe Dunn, Alex Nikolas, and Michael Milosh. As a result, it is likely that there are no responsive communications regarding those individuals to produce. Similarly, as to the Business Insider article, given Ms. Case's limited role, we expect any additional documents to be limited, to the extent they even exist. We further note that your demand seeks documents concerning Ms. Case's professional work product for clients that have no bearing on the narrow allegations in this action and is therefore improper.

In any event, we are earnest in our desire to discuss the potential parameters of a second-round search in a constructive manner. Please advise as to your availability to begin that process.

Very truly yours,

Daniel J. Pohlman