**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHANIE JONES, JONESWORKS LLC, | Civ. Action No. 1:25-cv-00779-LJL |
| Plaintiffs, | |
| v. | **PLAINTIFFS' ANSWER TO JENNIFER ABEL'S SECOND AMENDED COUNTERCLAIMS** |
| JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, and JOHN DOES 1-10, | |
| Defendants. | |

Plaintiffs/Counterclaim-Defendants Stephanie Jones and Jonesworks LLC ("Jonesworks" and with Jones, the "Jones Parties") answer the Second Amended Counterclaims ("Counterclaims") filed by Defendant/Counterclaim-Plaintiff Jennifer Abel ("Abel") as follows:

## PARTIES

1.     The Jones Parties admit that Jennifer Abel is an individual who resides in Beverly Hills, California.

2.     The Jones Parties admit that Stephanie Jones is an individual residing in Greenwich, Connecticut.

3.     The Jones Parties admit that Jonesworks is a Delaware limited liability company with its principal place of business in New York, New York, and that Jonesworks' members are not citizens of California.

4.     The allegations in Paragraph 4 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

5.     The allegations in Paragraph 5 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

## JURISDICTION AND VENUE

6.     The allegations in Paragraph 6 are legal conclusions and therefore no response is required.  For the avoidance of doubt, the Jones Parties deny that Abel is entitled to any relief or that there is any value associated with Abel's claims.

7.      The allegations in Paragraph 7 are legal conclusions and therefore no response is required.

8.      The allegations in Paragraph 8 are legal conclusions and therefore no response is required.

9.      The allegations in Paragraph 9 are legal conclusions and therefore no response is required.

## GENERAL ALLEGATIONS

10.     The Jones Parties admit that Jonesworks is a New York-based public relations firm founded by Stephanie Jones, who serves as its CEO, but otherwise deny that Paragraph 10 provides a complete and/or accurate description of the matters purportedly described therein.

11.     The Jones Parties deny that the allegations of Paragraph 11 provide a complete and/or accurate description of the matters purportedly described therein.

12.     The Jones Parties admit that Stephanie Jones is married to Jason Hodes, who is a partner at William Morris Endeavor.  The Jones Parties deny that the remaining allegations present a complete and/or accurate characterization of the matters purportedly described therein.

13.     The Jones Parties admit that when Jonesworks hired Jennifer Abel, she worked for R&CPMK.  The Jones Parties deny that Stephanie Jones "poached" Jennifer Abel.  The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations.

14.     The Jones Parties admit that Abel was connected to Jonesworks through a recruiter. The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations.

15.     The Jones Parties deny that Stephanie Jones had become embroiled in a dispute with another public relations firm for stealing its clients using deceptive and unscrupulous means and deny the allegations regarding Jones' "reputation."  The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations.

16.     The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16.

17.     The Jones Parties admit that Abel was hired on July 9, 2020, with the title of Vice President and deny that the remaining allegations present a complete and/or accurate characterization of the matters purportedly described therein.

18.     The Jones Parties admit that as a condition of her employment, Abel executed a Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement (the "Abel NDA").

19.     The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19.

20.     Paragraph 20 purports to summarize and quote from a document, the contents of which speak for itself.

21.     Paragraph 21 purports to summarize and quote from a document, the contents of which speak for itself.

22.     The Jones Parties deny the allegations in Paragraph 22.

23.     The Jones Parties deny the allegations in Paragraph 23.

24.     The Jones Parties deny the allegations in the last sentence of Paragraph 24 and lack knowledge sufficient to admit or deny the first sentence of Paragraph 24 as it relates to Abel's purported state of mind.  The Jones Parties deny that the remaining allegations in Paragraph 24 represent a complete and/or accurate characterization of the matters purportedly described therein.

25.     The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations purporting to compare Jonesworks to "most workplaces" or the allegations in the second sentence of Paragraph 25.   The Jones Parties admit that Abel's 2021 Employment Agreement governs the terms of her employment with Jonesworks but otherwise deny that the allegations of Paragraph 25 represent a complete and/or accurate description of the matters purportedly summarized therein.

26.     The Jones Parties admit that, at the commencement of Abel's employment, Jonesworks provided Abel with a company-issued phone and covered the associated service charges for that device, and that device was the property of Jonesworks.  The Jones Parties deny that Abel owned the phone number referenced in this Paragraph and state that the phone number was owned by her prior employer and merely ported to the Jonesworks plan.  The remaining allegations in Paragraph 26 either purport to state legal conclusions, to which no response is

required, or include allegations that the Jones Parties lack knowledge or information sufficient to form a belief as to their truth or falsity.

27.    The Jones Parties deny the allegations in the first sentence of Paragraph 27 and deny that the remaining allegations present a complete and/or accurate description of the matters purportedly described therein.

28.    The Jones Parties admit that on November 22, 2021, Abel executed a modified Employment Agreement ("2021 Employment Agreement"), which document speaks for itself. Jonesworks denies the remaining allegations.

29.    The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29.

30.    Paragraph 30 purports to summarize a document, the contents of which speaks for itself.

31.    Paragraph 31 purports to summarize documents, the contents of which speaks for itself.

32.    The Jones Parties deny that "Abel performed no work for Jonesworks in the State of New York" and that she "performed the overwhelming majority of her work within the State of California." The Jones Parties admit that Abel has worked out of Jonesworks' Los Angeles office. The remaining allegations are either legal conclusions to which no response is required or allegations to which the Jones Parties lack knowledge or information sufficient to form a belief as to their truth or falsity.

33.    The Jones Parties deny the allegations in Paragraph 33.

34.    The Jones Parties deny the allegations in Paragraph 34.

35.    The Jones Parties deny the allegations in Paragraph 35.

36.    The Jones Parties deny that the allegations in Paragraph 36 present a complete and/or accurate presentation of the matters purportedly described therein.

37.    The Jones Parties admit that on May 8, 2024, a defamatory website containing false allegations called "Stephanie Jones Leaks" went live, along with various social media accounts. The Jones Parties deny the remaining allegations, including any implication as to the truth, accuracy, or source of the content published on those platforms.

38.    The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38.

39.    The Jones Parties deny that the allegations in Paragraph 39 present a complete and/or accurate presentation of the matters purportedly described therein.

40.    The Jones Parties deny the allegations in Paragraph 40.

41.    The Jones Parties deny the allegations in Paragraph 41.

42.    The Jones Parties deny the allegations in Paragraph 42.

43.    The Jones Parties deny the allegations in Paragraph 43.

44.    The Jones Parties deny the allegations in Paragraph 44.

45.     The Jones Parties deny that the allegations of Paragraph 45 provide a complete and/or accurate description of the matters purportedly described therein.

46.     The Jones Parties deny the allegations in Paragraph 46.

47.     The Jones Parties deny the allegations in Paragraph 47.

48.     The Jones Parties deny the allegations in Paragraph 48.

49.     The Jones Parties deny the allegations in Paragraph 49.

50.     The Jones Parties deny the allegations in Paragraph 50.

51.     The Jones Parties deny the allegations in Paragraph 51.

52.     The Jones Parties deny the allegations in Paragraph 52.

53.     The Jones Parties admit that on July 10, 2024, Abel purported to resign during a Zoom call and subsequently sent an email regarding her purported resignation on July 26, 2024. The Jones Parties admit that Abel suggested a six-week transition period and communicated her intention to start her own business in the future, and deny the remaining allegations.

54.     The Jones Parties deny that Stephanie Jones "promised" to "release" Abel's phone number when "Abel had first joined Jonesworks." The allegations in Paragraph 54 otherwise purport to summarize a document, the contents of which speak for itself.

55.     The Jones Parties deny the allegations in Paragraph 55.

56.     The Jones Parties deny the allegations in Paragraph 56.

57.     The Jones Parties admit that Jones received certain of Abel's call and text message logs.  The Jones Parties deny the remaining allegations.

58.     The Jones Parties deny that this Paragraph states a complete and/or accurate characterization of the matters purportedly described therein.

59.     The Jones Parties deny the allegations in Paragraph 59.

60.     The Jones Parties admit that on August 21, 2024, Jonesworks terminated Abel's employment in the presence of Jonesworks' counsel and a digital forensics contractor and otherwise deny that Paragraph 60 presents a complete and/or accurate description of the events purportedly described therein.

61.     Paragraph 61 purports to quote from a deposition transcript, the contents of which speaks for itself.

62.     The Jones Parties admit that during the August 21, 2024 meeting, Abel was asked to provide her company-issued phone and the passcode necessary to access it, as well as other company property, as is standard practice when employees in possession of company property leave Jonesworks, and that she complied.  The Jones Parties deny the allegations in the second and third sentences of Paragraph 62 and lack knowledge sufficient to admit or deny the truth or falsity of the allegations in the last sentence of Paragraph 62.

63.     The Jones Parties deny the allegations in Paragraph 63.

64.     The Jones Parties deny the allegations in Paragraph 64.

65.    The Jones Parties admit they have not "released" the phone number on Abel's company phone, and deny that Abel has any entitlement to it. The Jones Parties otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 65.

66.    The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity regarding whether Abel's device was "logged into all of her accounts, registered to her iCloud, and contained all of her photos, text messages, and emails." The Jones Parties deny the remaining allegations.

67.    The Jones Parties deny the allegations in Paragraph 67.

68.    The Jones Parties admit that Jonesworks engaged a digital forensics contractor to preserve data from the company-issued phone used by Abel. The Jones Parties deny the remaining allegations contained in this paragraph.

69.    Paragraph 69 purports to summarize a document, the contents of which speak for itself.

70.    Paragraph 70 purports to summarize a document, the contents of which speak for itself. The Jones Parties deny the remaining allegations in Paragraph 70.

71.    The Jones Parties deny the allegations in Paragraph 71.

72.    The Jones Parties deny the allegations in Paragraph 72.

73.    The Jones Parties admit that certain communications were produced during discovery in this litigation, the contents of which speak for themselves, and that Jonesworks

engaged a digital forensics contractor to preserve data from the company-issued phone previously used by Abel.  The Jones Parties deny the remaining allegations.

74.    The Jones Parties deny the allegations in Paragraph 74.

75.    The Jones Parties deny the allegations in Paragraph 75.

76.    The Jones Parties deny the allegations in Paragraph 76.

77.    The Jones Parties admit that while Abel was employed at Jonesworks, she worked on the Justin Baldoni and Wayfarer Studios LLC ("Wayfarer") accounts.  The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations.

78.    The Jones Parties admit that Abel became the primary Jonesworks point of contact for Baldoni and Wayfarer.  The Jones Parties deny the remaining allegations.

79.    The Jones Parties admit that Jonesworks experienced certain losses and was damaged due to the August 15, 2024 *Business Insider* article titled "Who's afraid of Stephanie Jones?" and the "Stephanie Jones Leaks" website and social media accounts.  The Jones Parties deny the remaining allegations.

80.    The Jones Parties admit that Jones participated in certain meetings, calls, and written correspondence with representatives of Wayfarer and Baldoni.  The Jones Parties deny the remaining allegations.

81.    The Jones Parties admit that Abel retained Melissa Nathan and The Agency PR Group LLC ("TAG") to assist Wayfarer and Baldoni, over Jones's objection and against her

advice.  The Jones Parties lack knowledge or information sufficient to admit or deny the allegations in the third, fourth, and fifth sentence of Paragraph 81 and deny the remaining allegations in this Paragraph.

82.    The Jones Parties admit that Jones objected to the proposed engagement of Nathan and TAG due to Nathan's unethical practices and that Abel disparaged Nathan to Jones and other individuals.  The Jones Parties lack knowledge sufficient to admit or deny the allegations in Paragraph 82 relating to Abel's state of mind, and deny that the remaining allegations contained in this Paragraph represent a complete and/or accurate description of the matters purportedly described therein.

83.    The allegations in Paragraph 83 purport to summarize a document, the contents of which speaks for itself.

84.    The Jones Parties deny the allegations in Paragraph 84.

85.    The Jones Parties deny the allegations in Paragraph 85.

86.    The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 86.

87.    The Jones Parties deny the allegations in Paragraph 87.

88.    The Jones Parties deny that the allegations in Paragraph 88 present a complete and/or accurate description of the matters purportedly described therein.

89.    The Jones Parties lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations.

90.     The Jones Parties admit that Stephanie Jones sent an email referenced in this paragraph, the contents of which speaks for itself.  The Jones Parties deny the remaining allegations contained in this Paragraph.

91.     The Jones Parties admit that Jones complied with the request made of her and deny the remaining allegations in Paragraph 91.

92.     The Jones Parties deny the allegations in Paragraph 92.

93.     The Jones Parties deny the allegations in Paragraph 93.

94.     The Jones Parties admit that Jones sought payment to which she was contractually entitled and deny the remaining allegations of this paragraph.

95.     The Jones Parties deny the allegations in Paragraph 95.

96.     The Jones Parties deny the allegations in Paragraph 96.

97.     The Jones Parties deny the allegations in Paragraph 97.

98.     The Jones Parties deny the allegations in Paragraph 98.

99.     The Jones Parties deny the allegations in Paragraph 99.

100.    The Jones Parties deny the allegations in Paragraph 100.

101.    The Jones parties deny the allegations in Paragraph 101.

102.    The Jones Parties deny the allegations in Paragraph 102.

103.    Paragraph 103 purports to summarize a docket, the contents of which speaks for itself.  The Jones Parties deny the remaining allegations contained in this paragraph.

104.    The Jones Parties deny the allegations in Paragraph 104.

105.    The Jones Parties deny the allegations in Paragraph 105.

106.    The Jones Parties deny the allegations in Paragraph 106.

107.    The Jones Parties deny the allegations in Paragraph 107.

108.    The Jones Parties deny the allegations in Paragraph 108.

109.    The Jones Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in this Paragraph regarding Wayfarer or Baldoni and therefore deny them.

110.    The Jones Parties deny the allegations in Paragraph 110.

111.    The Jones Parties deny the allegations in Paragraph 111.

**FIRST CAUSE OF ACTION**

**(Violations of California Penal Code § 502)**

*Against Jones and Jonesworks*

112.    Paragraph 112 requires no response.  To the extent a response is required, the Jones Parties incorporate the above answers as if set forth herein.

113.    The allegations in Paragraph 113 are legal conclusions to which no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

114.    The allegations in Paragraph 114 state a legal conclusion to which no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

115.    The allegations in Paragraph 115 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

116.    The allegations in Paragraph 116 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

## SECOND CAUSE OF ACTION

### (Conversion)

### *Against Jones and Jonesworks*

117.    Paragraph 117 requires no response.  To the extent a response is required, the Jones Parties incorporate the above answers as if set forth herein.

118.    The Jones Parties deny the allegations in Paragraph 118.

119.    The allegations in Paragraph 119 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

120.    The allegations in Paragraph 120 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

121.    The allegations in Paragraph 121 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

122.    The allegations in Paragraph 122 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

## THIRD CAUSE OF ACTION

### (Promissory Fraud)

### *Against Jones and Jonesworks*

123.    Paragraph 123 requires no response.  To the extent a response is required, the Jones Parties incorporate the above answers as if set forth herein.

124.    The allegations in Paragraph 124 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

125.    The allegations in Paragraph 125 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

126.    The allegations in Paragraph 126 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

127.    The allegations in Paragraph 127 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

128.    The allegations in Paragraph 128 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

129.    The allegations in Paragraph 129 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

130.    The allegations in Paragraph 130 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

131.    The allegations in Paragraph 131 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

132.    The allegations in Paragraph 132 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

133.    The allegations in Paragraph 133 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

134.    The allegations in Paragraph 134 are legal conclusions and therefore no response is required.  To the extent a response is required, the Jones Parties deny these allegations.

## AFFIRMATIVE AND OTHER DEFENSES

By alleging the following affirmative and other defenses, the Jones Parties are not in any way agreeing or conceding that they have the burden of proof or burden of persuasion on any of these issues.  As separate and distinct defenses to Abel's Second Amended Counterclaims, and each purported cause of action contained therein, the Jones Parties allege as follows:

## FIRST DEFENSE

135.    The Second Amended Counterclaims, and each claim alleged therein, fail to state facts sufficient to constitute any claim for relief against the Jones Parties.

## SECOND DEFENSE

136.    The Second Amended Counterclaims, and each claim alleged therein, is barred as Abel lacks standing to sue.

## THIRD DEFENSE

137.    The Second Amended Counterclaims, and each claim alleged therein, is barred as Abel has waived her claims.

## FOURTH DEFENSE

138.    The Second Amended Counterclaims, and each claim alleged therein, is barred as Abel is estopped from asserting her claims.

## FIFTH DEFENSE

139.    The Second Amended Counterclaims, and each claim alleged therein, is barred as Abel acted and continues to act with unclean hands.

## SIXTH DEFENSE

140.    The Second Amended Counterclaims, and each claim alleged therein, is barred as Abel has not been damaged in any way or at all as a result of any alleged acts or omissions of the Jones Parties.

## SEVENTH DEFENSE

141.    The Second Amended Counterclaims, and each claim alleged therein, is barred as Abel has failed to undertake reasonable measures to mitigate the damages she claims to have

incurred.  Any recovery by Abel must be diminished to the extent that any alleged damages could have been avoided if such measures had been undertaken.

**EIGHTH DEFENSE**

142.    The Jones Parties are informed and believe, and on that basis allege, that Abel would be unjustly enriched if recovery were to be had on these Second Amended Counterclaims.

**NINTH DEFENSE**

143.    Abel has not been damaged in any amount alleged, or in any amount whatsoever, and is not entitled to any general, compensatory, statutory, punitive, or other damages, including interest, or any other relief as a result of any of the allegations set forth in these Second Amended Counterclaims.

**TENTH DEFENSE**

144.    The acts and/or omissions of Abel excused any alleged act or alleged failure to act on the part of the Jones Parties.

**ELEVENTH DEFENSE**

145.    The damages and injuries, if any, suffered by Abel were directly and proximately caused solely by the acts or omissions of individuals or entities other than the Jones Parties.  The acts and omissions of such other individuals or entities are superseding or intervening causes of loss or damages, if any, suffered by Abel.  As a consequence thereof, Abel is barred from recovery against the Jones Parties.

**TWELFTH DEFENSE**

146.    Abel's alleged damages are too speculative to permit recovery in this case.

**THIRTEENTH DEFENSE**

147.    Abel's claims based upon California statutes are barred because Abel does not allege that the Jones Parties took any wrongful actions within the State of California, and California law does not apply to Abel's claims.

**FOURTEENTH DEFENSE**

148.    The Second Amended Counterclaims, and each claim alleged therein, is barred by Abel's failure to join necessary parties.

**FIFTEENTH DEFENSE**

149.    At all relevant times, Abel consented to or authorized the Jones Parties' alleged conduct, including any access to devices, accounts, or data and the management of the phone number at issue.

**SIXTEENTH DEFENSE**

150.    Abel lacks any ownership or possessory interest in the telephone number or other property alleged to have been converted, and therefore cannot sustain a conversion claim.

## **SEVENTEENTH DEFENSE**

151.    Abel's promissory fraud claim is barred because she did not and could not reasonably rely on any alleged promise, and because the Jones Parties acted in good faith and without intent to defraud.

## **RESERVATION OF ADDITIONAL DEFENSES**

152.    The Jones Parties presently have insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative or other defenses available.    The Jones Parties reserve the right to assert additional defenses in the event that discovery indicates they would be appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, the Jones Parties pray for relief as follows:

1.    That the Second Amended Counterclaims be dismissed with prejudice, and Abel takes nothing herein;

2.    That judgment be entered in favor of the Jones Parties and against Abel;

3.    For costs of suit and attorneys' fees incurred in this action; and

4.    For such other and further relief as the Court may deem just and proper.


Dated: November 21, 2025

By: _/s/ Kristin Tahler_

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Kristin Tahler
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
kristintahler@quinnemanuel.com

Maaren A. Shah
Morgan L. Anastasio
295 5th Avenue
New York, New York 10016
(212) 849-7000
maarenshah@quinnemanuel.com
morgananastasio@quinnemanuel.com

Nicholas Inns (_pro hac vice_)
1300 I Street NW
Suite 900
Washington, D.C. 20005
(202) 538-8000
nicholasinns@quinnemanuel.com

_Attorneys for Plaintiffs Stephanie Jones and
Jonesworks LLC_