**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stephanie Jones, Jonesworks LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　　-against-<br><br>Jennifer Abel, Melissa Nathan, Justin<br>Baldoni, Wayfarer Studios LLC, and John<br>Does 1-10<br>　　　　　　Defendants. | Civil Action No. 1:25-cv-779 |

## STEPHANIE JONES AND JONESWORKS LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 3

LEGAL STANDARD ................................................................................................................. 8

ARGUMENT .............................................................................................................................. 9

I.     THE JONES PARTIES HAVE GOOD CAUSE FOR THE PROPOSED
AMENDMENT ............................................................................................................. 10

II.    THE WAYFARER PARTIES CANNOT MEET THEIR BURDEN TO SHOW
PREJUDICE, UNDUE BURDEN, OR FUTILITY ....................................................... 13

     A.    The Proposed Amendments Do Not Prejudice the Wayfarer Parties Nor
Cause Undue Burden ........................................................................................... 13

     B.    The Proposed Amendments Are Not Futile ........................................................ 15

          1.    Defamation ............................................................................................... 16

          2.    Tortious Interference ................................................................................ 20

          3.    Violation of the Illinois Eavesdropping Statute ....................................... 21

CONCLUSION .......................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) ...................................................................................... 13

*Bumpus v. N.Y.C. Transit Auth.*,
883 N.Y.S.2d 99 (2d Dep't 2009) ........................................................................17, 18

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000) ...................................................................................... 15

*Enzymotec Ltd. v. NBTY, Inc.*,
754 F.Supp.2d 527 (E.D.N.Y. 2010) ........................................................... 11, 12, 13

*Foman v. Davis*,
371 U.S. 178 (1962) ...............................................................................................8, 13

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*,
304 F.R.D. 170 (S.D.N.Y. 2014) ................................................................................ 9

*Ghost v. Wilson et al.*,
Case No. 24STCV17314 (Cal. Sup. Ct.) ..................................................................... 6

*Grant v. Citibank (S.D.) N.A.*,
2010 WL 5187754 (S.D.N.Y. Dec. 6, 2010) .............................................................. 9

*Grochowski v. Phoenix Const.*,
318 F.3d 80 (2d Cir. 2003) .......................................................................................... 8

*Hickey Freeman Tailored Clothing, Inc. v. Chargeurs, S.A.*,
2018 WL 5729297 (S.D.N.Y. Nov. 1, 2018).....................................................8, 9, 10

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007) ........................................................................................ 9

*Kronos, Inc. v. AVX Corp.*,
81 N.Y.2d 90 (1993) .................................................................................................. 21

*Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*,
2025 WL 2781280 (S.D.N.Y. Sept. 30, 2025) .......................................................... 15

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2014) .................................................................................8, 16

*MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*,
    157 F.3d 956 (2d Cir. 1998) ......................................................................................9

*Mandala v. NTT Data, Inc.*,
    88 F.4th 353 (2d Cir. 2023) ......................................................................................8

*Mason Tenders Dist. Council v. Phase Constr. Servs., Inc.*,
    318 F.R.D. 28 (S.D.N.Y. 2016) ...............................................................................16

*Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*,
    392 F.2d 380 (2d Cir. 1968) ....................................................................................12

*Molo Design, Ltd. v. Chanel, Inc.*,
    2024 WL 2982924 (S.D.N.Y. June 12, 2024) ..................................................8, 9, 10

*Monex Fin. Servs. Ltd. v. Dynamic Currency Conversion, Inc.*,
    859 N.Y.S.2d 904 (Sup. Ct. 2008) .....................................................................20, 21

*Morelli v. Alters*,
    2020 WL 6508858 (S.D.N.Y. Nov. 5, 2020) ...........................................................12

*Olaf Soot Design, LLC v. Daktronics, Inc.*,
    299 F. Supp. 3d 395 (S.D.N.Y. 2017)........................................................................9

*Oscar v. BMW of N. Am., LLC*,
    2011 WL 6399505 (S.D.N.Y. Dec. 20, 2011) .........................................................12

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000) ....................................................................................12

*Permatex, Inc. v. Loctite Corp.*,
    2004 WL 1354253 (S.D.N.Y. June 17, 2004) .........................................................11

*Richardson Greenshields Sec., Inc. v. Lau*,
    825 F.2d 647 (2d Cir. 1987) ..............................................................................12, 13

*Soroof Trading Dev. Co. v. GE Microgen, Inc.*,
    283 F.R.D. 142 (S.D.N.Y. 2012)..............................................2, 8, 9, 10, 13, 14, 15

*State Teachers Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981) ....................................................................................14

*This LLC v. HolaBelle, Inc.*,
    2024 WL 4871688 (D. Conn. Nov. 22, 2024) .........................................................14

*VIP Pet Grooming Studio, Inc. v. Sproule*,
    224 A.D.3d 78 (2d Dep't 2024)................................................................................16

*Whitehurst v. 230 Fifth, Inc.*,
    998 F. Supp. 2d 233 (S.D.N.Y. 2014) .......................................................21

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011) ...........................................................8, 16

## **Rules / Statutes**

Fed. R. Civ. P. 12(b)(6) .......................................................................... 15

Fed. R. Civ. P. 15 ......................................................................... 1, 13, 17

Fed. R. Civ. P. 15(a) ................................................................... 8, 12, 16

Fed. R. Civ. P. 15(b)(2) ............................................................................ 15

Fed. R. Civ. P. 15(c) ................................................................... 16, 17, 19

Fed. R. Civ. P. 16 .................................................... 1, 2, 8, 9, 12, 13

Ill. Comp. Stat. Ann. 5/14-2(a)(2) .......................................................21

Ill. Comp. Stat. Ann. 5/14-6 .................................................................21

Illinois Eavesdropping Act, 720 Ill. Comp. Stat. §§ 14-2(a) .........................21

N.Y. C.P.L.R. § 1024 ................................................................ 17, 18, 19

N.Y. C.P.L.R. § 215(3).............................................................................17

Plaintiffs Stephanie Jones and Jonesworks LLC ("Jonesworks," and together with Jones, the "Jones Parties") respectfully submit this memorandum of law in support of their motion for leave to amend their complaint pursuant to Federal Rules of Civil Procedure ("Rules") 15 and 16.[1]

## INTRODUCTION

The Jones Parties respectfully move for leave to file an amended complaint to add newly identified defendants and assert narrow additional claims based on facts that have only recently been uncovered in discovery that were not available before the deadline to amend. The proposed amendments arise directly from documents and testimony obtained in the late stages of discovery, including evidence the Wayfarer Parties withheld despite their discovery obligations. The Jones Parties do not expect their proposed amendment, or the targeted new allegations and claims contained therein, to require any additional discovery, or to affect the existing case schedule or orderly administration of this case. To the contrary, the new allegations and claims are supported by discovery already taken on the Jones Parties' existing claims that has been thoroughly examined by the parties to date.

The proposed amendments arise directly from documents evidencing that Nathan ███████ ██████████████████████████████████████████████ to harm Jones and Jonesworks, including by intending to use that article to try to ████████████████████ ███████████████████████████ The September 2025 deposition of a former employee of Nathan revealed that she, at Nathan's instruction and in coordination with Jed Wallace, helped create the defamatory websites about the Jones Parties—just as she had done at least two other times, again at Nathan's instruction and in coordination with Wallace, against other

---

[1]  A copy of the proposed amended complaint is attached as Exhibit 1 to the accompanying declaration of Kristin Tahler, and a redline comparing the proposed amended complaint to the original complaint is attached as Exhibit 2.

individuals.  This evidence requires identification of Nathan as a previously-pled Doe Defendant, and supports the additional tortious interference claim against her.  The narrow claim added against proposed defendant Jamey Heath (Wayfarer's CEO), who is already a named defendant in the *Lively* matter, arises from his production for the first time—just days before his October deposition and nearly three months after the deadline to substantially complete document production—of an illegal audio recording of a phone call between Heath and Jones about facts at issue in the parties' existing claims, which is the first time that Jones discovered that Heath had been surreptitiously recording her.  At his October 9, 2025 deposition, Heath admitted that he was in Illinois at the time of the recording and had not informed Jones that she was being recorded, revealing new facts supporting a statutory eavesdropping claim under Illinois law.

The Jones Parties could not have known about this evidence or moved to amend before the April 18, 2025 deadline to amend the pleadings under the existing case schedule, and are moving now promptly after the close of fact discovery and before any other dispositive deadlines—including summary judgment or trial—have even been set.  Under Rule 16, good cause exists where the moving party demonstrates diligence and shows that the deadline could not have been reasonably met despite good faith efforts.  Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment.  And courts routinely grant leave to amend where, as here, the basis for amendment arises from facts learned in discovery that were not previously available to the moving party.  *See, e.g.*, *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012).  While many of the newly added allegations and supporting evidence could fairly be encompassed and addressed within the existing Complaint, and indeed arose from discovery on that Complaint, they also give rise to new claims and against specific defendants that could not have been known before the supporting evidence was uncovered in discovery.  The prudent and orderly administration of

the case weigh in favor of permitting this amendment at this stage of the case, and the Jones Parties have ample good cause to amend now.

With good cause satisfied, there is no basis to deny amendment. The Wayfarer Parties cannot meet their burden to show prejudice or futility. The proposed amendments are based on newly uncovered evidence, rather than new theories, and they conform the pleadings to the factual record as it now stands. Moreover, permitting amendment will not prejudice the Wayfarer Parties or unduly delay the proceedings (particularly given that the parties have neither summary judgment nor trial dates currently scheduled); rather, it will ensure that this case is adjudicated on its merits and in light of the complete evidentiary picture. Finally, the amendments are not futile: each new or refined claim is timely and supported by specific factual allegations developed in discovery and would withstand a motion to dismiss. The motion to amend should be granted.

## BACKGROUND

On December 24, 2024, the Jones Parties filed a complaint in New York State court against Jennifer Abel, Melissa Nathan, Justin Baldoni, and Wayfarer Studios LLC ("Wayfarer" and with Abel, Nathan, and Baldoni, the "Wayfarer Parties"). *See* ECF No. 1-1 (the "Complaint" or "Compl."). The Complaint alleges, among other things, that Abel and Nathan conspired to steal Jonesworks' clients and breached and tortiously interfered with Jonesworks' contracts. Compl. at Counts I-IV. The Complaint also includes a defamation claim against John Does 1-10 for creating and publishing two false and defamatory websites about the Jones Parties— www.stephaniejonesleaks.com and www.stephaniejoneslies.com—as well as more than a dozen follow-on disparaging social media accounts (together, the "Jones Defamatory Websites"). *Id.* at Count VIII. On December 31, 2024, Blake Lively filed a complaint against the Wayfarer Parties, Heath, and others for orchestrating a digital smear campaign against her, including in retaliation

for reporting Baldoni's misconduct on the set of the movie *It Ends With Us*. *Lively v. Wayfarer Studios LLC*, No. 1:24-cv-10049-LJL, ECF No. 1.

The Wayfarer Parties removed the Complaint to this Court. ECF No. 1. On February 3, 2025, the Court largely adopted the Case Management Plan and Scheduling Order filed in the related *Lively* matter, including an April 18, 2025 deadline for the amendment of pleadings. *Lively*, ECF No. 58.[2] The Court has not yet set dates for trial, the proposed joint pretrial order, or motions for summary judgment in this action. ECF No. 21. On March 20, 2025, Nathan answered the Jones Parties' complaint and denied any involvement in creating or publishing the Jones Defamatory Websites or in planting a *Business Insider* article hostile to Jones. ECF No. 37 ¶¶ 76, 92. That same day, Abel and Wayfarer filed counterclaims against the Jones Parties, ECF Nos. 36, 39, which the Jones Parties moved to dismiss, ECF Nos. 44, 46. The Jones Parties' motion to dismiss Wayfarer's counterclaims (ECF No. 46) remains pending.

The Jones Parties served requests for production on Nathan, including for Nathan's communications with Jed Wallace about Jones, documents relating to Nathan's knowledge or involvement in the *Business Insider* article "Who's Afraid of Stephanie Jones?", and documents pertaining to the Jones Defamatory Websites, including related to Nathan's "knowledge of or involvement in the creation, operation, or content" of those sites. Ex. 3 at RFP No. 7; Ex. 4 at RFP Nos. 38-39. The Wayfarer Parties, including Nathan, agreed to produce documents in response to all the Jones Parties' requests, but their resulting productions were largely belated and deficient.

By the July 1, 2025 deadline for the substantial completion of discovery (*Lively* ECF No. 58), for example, Nathan had produced only 144 documents. Ex. 5. That was by design. Nathan

---

[2]  Docket entries to the *Lively* matter are prefaced by "*Lively*, ECF No." All other citations to "ECF No." are to the docket in this action.

used hyper-narrow search terms to artificially restrict her productions. Ex. 6 (including search terms that would identify only documents about the websites that used Jones' or Jonesworks' full name **and** the full website url **and** Baldoni's or Wayfarer's name). As a result, plainly responsive documents were never produced by Nathan in this action. On August 6, 2025, Nathan produced documents ███████████████████████████████ (that Nathan herself described as a "KILL STORY" about Jones), designated as attorneys' eyes only under the protective order in this action (ECF No. 30), so the Jones Parties' counsel could not share or discuss this information with their clients. Exs. 7-8; *see also* Ex. 1 at ¶ 74.

The Jones Parties promptly challenged the sufficiency of the Wayfarer Parties' productions and, on August 11 and August 15, 2025, entered into agreements with Nathan for her to run specific search terms, including terms related to the Jones Defamatory Websites. Exs. 9-10. At the time the Jones Parties negotiated these agreements, the only information they had about Nathan's involvement in the Jones Defamatory Websites was her answer denying involvement. Nathan then violated this agreement, failing to produce the agreed-upon documents timely or at all. *See* ECF No. 124 (describing Nathan failure as of September 17 to produce Signal messages as agreed).

On September 5, 2025, the Jones Parties deposed a third-party that was a former employee of both Jonesworks and Nathan. Ex. 11. That former employee testified under oath that she wrote the copy for what became the Jones Defamatory Websites as an employee of Nathan and at Nathan's request, and that Wallace assisted in creating social media posts related to those websites. *Id.* at 375:11-17, 386:14-387:19. That former employee further testified that, also at Nathan's request, she ███████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████ *Id.* at 505:8-21; *see also* Ex. 12.

That former employee also described ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████. Ex. 11 at 156:13-159:11; Ex. 13.  A website attacking Ghost later appeared online

with ████████████████████████████████████████. *Compare*, Ex. 13, *with*,

Ex. 14.  Ghost, who was and remains in a legal dispute with Wilson over a film, has since sued

Nathan for her role in creating the smear website against her.  *Ghost v. Wilson et al.*, Case No.

24STCV17314 (Cal. Sup. Ct.).

Nathan designated all of this revealing testimony as attorneys' eyes only.  On September

9, 2025, Nathan agreed to remove the attorneys' eyes only designation from the documents

evidencing ████████████████████████████████████████████████. Ex.

15.  In light of the former employee's testimony, on September 10, the Jones Parties requested that

the Wayfarer Parties conduct supplemental searches of Nathan's files for documents relating to

the Jones Defamatory Websites, including for documents reflecting payments made in connection

with the Websites.  Tahler Decl. ¶ 28.  Nathan refused, claiming her production was complete.  *Id.*

The Jones Parties challenged Nathan's attorneys' eyes only designation of the former employee's

deposition testimony, but Nathan refused to remove that designation.  The Jones Parties

subsequently moved, and the Court ordered the testimony de-designated over Nathan's opposition

on September 19.  ECF Nos. 113, 127.

The Jones Parties deposed Nathan on September 30 and Wallace on October 10.  Despite

the former employee's testimony otherwise, each denied any personal involvement in the Jones

Defamatory Websites, ████████████████████████████████████. Ex. 16 at 131:20-

135:4, 137:3-139:12, 142:15; Ex. 17  at 26:10-22, 38:16-40:10, 43:4-45:2, 75:8-76:3, 102:10-

104:1.  Nathan went so far as to insist that the former employee had testified falsely under oath and perjured herself.  Ex. 16 at 132:14-23, 231:21-233:13. On October 31, Nathan filed an affidavit in *Ghost v. Wilson* incredibly claiming that she had no involvement with that website. Ex. 21.

Meanwhile, the other Wayfarer Parties also made belated productions in violation of this Court's orders.  For example, on October 5, 2025, days before his October 8 and 9 depositions, Heath produced for the first time—in the related *Lively* matter and not in response to the Jones Parties' requests for production—a surreptitiously made recording of a telephone conversation between himself and Jones.  Ex. 18.  On October 9, 2025, Heath admitted at his deposition that he recorded the call while in Illinois without Jones's knowledge or consent and that he had provided this recording to his counsel prior to September 1, 2025.  Ex. 19 at 88:23-25, 106:3-109:19.

The Wayfarer Parties, including Nathan, continued to belatedly produce documents in the *Lively* matter, making thirteen productions since October 9, including a production of documents by Nathan on November 12.  These productions post-date the substantial completion deadline by more than three and four months respectively.  By stipulation among all of the parties, these tardy productions are also part of the discovery record in this matter.  ECF Nos. 87-88.

While the Wayfarer Parties were continuing their late productions, the Jones Parties were also preparing expert reports, including a report that examined search engine optimization ("SEO") efforts of the Jones Defamatory Websites, the Alexander Brothers website, and the Amanda Ghost website, among others.  That report found that the digital footprints for those sites reveal SEO efforts were likely created by the same author or authors.  Ex. 20.  The Jones Parties served this expert report on the Wayfarer Parties on November 21.  The Wayfarer Parties' rebuttal report is due December 22, and the last day for expert depositions is January 16, 2026.  ECF Nos. 152, 153. The Court has not set any deadlines for dispositive motions or a trial date.  ECF No. 28.

## LEGAL STANDARD

Courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. Pro.

15(a)(2).  This is a "permissive standard" that serves the court's "strong preference for resolving

disputes on the merits."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160,

190 (2d Cir. 2014) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)).

Consequently, leave to amend should be granted absent compelling reasons to the contrary, such

as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party … [or]

futility of amendment."  *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 362 (2d Cir. 2023) (quoting

*Foman v. Davis*, 371 U.S. 178, 182 (1962)).

When amendment is sought after a scheduling order deadline, Rule 16(b)(4) imposes an

additional "good cause" requirement.  *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D.

142, 147 (S.D.N.Y. 2012).  Rule 15(a) "must be balanced" against Rule 16(b)'s good cause

requirement.  *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003).  "Good cause is

demonstrated by a showing that despite its having exercised diligence, the applicable deadline

could not have been reasonably met by the plaintiff."  *Soroof Trading*, 283 F.R.D. at 147 (cleaned

up); *see also Molo Design, Ltd. v. Chanel, Inc.*, 2024 WL 2982924, at *3 (S.D.N.Y. June 12, 2024)

(same); *Hickey Freeman Tailored Clothing, Inc. v. Chargeurs, S.A.*, 2018 WL 5729297, at *3

(S.D.N.Y. Nov. 1, 2018) (same).  Thus, where the proposed amendment relies on information that

the party "did not know and could not reasonably have known" before the deadline, courts find

good cause and permit amendment.  *Soroof Trading*, 283 F.R.D. at 149; *Molo Design*, 2024 WL

2982924, at *5-6; *Hickey Freeman*, 2018 WL 5729297, at *5, 13.

Moreover, while the diligence inquiry is "the primary consideration" for whether good

cause is met, it is not "the only consideration."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d

229, 244 (2d Cir. 2007).  Rather, "in the exercise of its discretion under Rule 16(b), [the court] also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  *Id.*  Accordingly, "in appropriate circumstances, a district court has discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for amendments in a Rule 16 scheduling order."  *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014); *Olaf Soot Design, LLC v. Daktronics, Inc.,* 299 F. Supp. 3d 395, 397 (S.D.N.Y. 2017).

The party seeking leave to amend bears the burden to demonstrate good cause, *id.*, or "explain a[ny] delay," *Grant v. Citibank (S.D.) N.A.*, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010) (quoting *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998)). "The non-movant bears the burden of showing prejudice, bad faith and futility of the amendment." *Id.*

## ARGUMENT

Here, the Jones Parties' proposed amended complaint relies on, and would not be possible without, evidence that emerged in late stages of fact discovery.  It cannot be seriously disputed that the Jones Parties could not have made these amendments before April 18, 2025—months before they had the necessary information from Nathan, Heath and others to do so, and in light of Nathan's and others' denials in their filed answers.  Moreover, the Wayfarer Parties cannot meet their burden of establishing that amendment at this stage in the proceedings—before any deadlines for dispositive motions or a trial date have even been set, and based on evidence disclosed and thoroughly addressed in discovery—would unjustly prejudice them.  The motion should be granted.

## I.    THE JONES PARTIES HAVE GOOD CAUSE FOR THE PROPOSED AMENDMENT

The Jones Parties have good cause to amend the Complaint.  Good cause is satisfied when the party seeking leave to amend, "despite [] having exercised diligence[,] … could not have [] reasonably met" the applicable deadline.  *Soroof*, 283 F.R.D. at 147 (cleaned up).  Thus, where, as here, the "proposed amendment relies on information that the party did not know and could not reasonably have known" before the deadline, courts find good cause and permit amendment.  *Id.* at 150; *see also Molo Design*, 2024 WL 2982924, at *5-6 (same); *Hickey Freeman*, 2018 WL 5729297, at *5, 13 (same).

At the time of the Court's April 18, 2025 amendment deadline, the Jones Parties possessed none of the information that underlies the proposed amended complaint.  Nathan did not produce the documents showing her ███████████████████████████ until August 6, nearly four months after that deadline.  *See* Tahler Decl. ¶¶ 9-10.  Nathan did not agree to remove the attorneys' eyes only designation so that the Jones Parties could share those documents with their clients until September 9.  Ex. 15.

The former employee did not testify that Nathan instructed her to draft the content for the Jones Defamatory Websites, or that Nathan and Wallace instructed and collaborated with her to create and publish other websites, until September 5, nearly five months after the deadline.  Ex. 11, Dep. Tr. at 374:17-383:12.  The Court did not remove the attorney eyes' only designation from that testimony and allow the Jones Parties' counsel to share it with their clients until two weeks after that on September 19.  ECF No. 127.

Heath did not produce his unlawfully made recording of Jones until October 5, nearly six months after the deadline to amend and three months after the substantial completion deadline.  Tahler Decl. ¶ 20.  And Heath did not admit, until another three days later, that he made the

recording in Illinois, without Jones' knowledge and consent, and that he had provided it to his counsel months before it was produced. Ex. 19 at 88:23-25, 106:3-109:19. For their parts, Nathan and Wallace did not deny their involvement in creating the Jones Defamatory Websites and other websites until September 30 and October 10 respectively, over five months after the deadline, with Nathan's most recent denial coming another three weeks after that. Ex. 21. These denials—in the face of significant contrary evidence of a pattern and practice of creating smear websites against Jones and others—render all the more relevant the factual investigation that the Jones Parties undertook following discovery that forensically link these websites and others to the same creators (as further explained in the Jones Parties' expert report). Indeed, during the period leading up to and immediately following the April 18 amendment deadline, Nathan and Heath—not the Jones Parties—possessed documents and information that now provide the factual basis for the proposed amended claims but they did not produce them.

In the face of this record, there can be no serious dispute that the Jones Parties could not have brought these amendments prior to April 18. If that were not enough, the Jones Parties are also moving to amend within only a few months of even beginning to discover the facts underlying the amended claims and mere weeks after completing their investigation—a timeline that courts regularly find satisfy the good cause diligence standard. *See e.g.*, *Permatex, Inc. v. Loctite Corp.*, 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) (approximately two months was diligent); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (plaintiff diligent where some facts relevant to amendment known for two years but all facts necessary to amendment not gathered until approximately two months before amendment); *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (noting liberality in granting leave to amend and cataloguing cases granting leave to amend following delays of three to five years); *Middle Atl.*

*Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir. 1968) (even a "three-year delay from the filing of the initial complaint is an inadequate basis for denying a motion to amend" absent a showing of prejudice or bad faith). In sharp contrast, there is no good cause only where a party relies on facts it knew or should have known before the deadline, which is plainly not the case here. *Oscar v. BMW of N. Am., LLC*, 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011).

Permitting this amendment also accords with the purpose of Rule 16(b), which is to restrict amendment only where necessary "to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Morelli v. Alters*, 2020 WL 6508858, at *1 (S.D.N.Y. Nov. 5, 2020) (*quoting Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (explaining the purpose of Rule 16); *see also Enzymotec*, 754 F. Supp. 2d at 536 (noting that the lenient standard under Rule 15(a) must be balanced against the good cause requirement under Rule 16(b)). That concern is not implicated here, and amendment would thus not run afoul of Rule 16(b)'s purpose.

Indeed, the pleadings in this case remain unfixed regardless of this motion, because the Jones Parties' motion to dismiss Wayfarer's counterclaims remains outstanding. In addition, the Court has not yet set a deadline for dispositive motions or a trial date, allowing the parties and the Court to adapt the schedule to the amended complaint without disruption to an existing case schedule. And no meaningful disruptions are expected here, as the Jones Parties do not anticipate any additional discovery will be made necessary by these amendments. Rather, the proposed amendments arise from the discovery already taken to date responsive to the Jones Parties' original claims and that would be admitted at trial to adjudicate those claims. Rule 16's interest in avoiding uncertainty in pretrial proceedings is no bar to amendment and can be readily addressed through ordinary case management processes after the amendment finalizes the pleadings.

## II.    THE WAYFARER PARTIES CANNOT MEET THEIR BURDEN TO SHOW PREJUDICE, UNDUE BURDEN, OR FUTILITY

With good cause satisfied, there is no barrier to amendment.  Indeed, it is the Wayfarer Parties' burden under Rule 15 to establish that the proposed amendment would cause them unjust prejudice or impose an undue burden, or be futile.  *See Richardson Greenshields Sec.*, 825 F.2d at 653 n.6; *see also Enzymotec*, 754 F. Supp. 2d at 537 (quoting *Foman*, 371 U.S. at 182) (same). *Soroof*, 283 F.R.D. at 152 ("The defendants bear the burden of establishing prejudice.") (*citing Block v. First Blood Assocs.*, 988 F.2d 344, 250 (2d Cir. 1993)).  They cannot do so.

### A.    The Proposed Amendments Do Not Prejudice the Wayfarer Parties Nor Cause Undue Burden

The touchstone under Rule 15 is fairness, not rigidity.   "Prejudice arises when the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Soroof*, 283 F.R.D. at 152 (quoting *Block*, 988 F.2d at 350).  No such prejudice exists here.

*First*, the amendments the Jones Parties seek are narrowly tailored to facts that emerged and were thoroughly ventilated in discovery.  The Jones Parties do not anticipate them requiring any additional factual discovery.  And neither of the topics in the proposed amendment are new terrain:  the Jones Defamatory Sites have always been a central aspect of the Jones Parties' claims in this action, and discovery was always intended to identify the Does responsible for creating, publishing, and disseminating those cites, as well as the defendants' (including Nathan's) involvement in the *Business Insider* article.  Moreover, Heath has already been deposed about the produced recording that forms the basis of the narrow new claim against him—which he, but not the Jones Parties, had known about since before this litigation was filed—and thus similarly requires no additional factual discovery to proceed.

13

In addition, no extension of expert discovery will be required, as the Jones Parties have already served an expert report examining the commonality between the Jones Defamatory Websites and other websites the Jones Parties believe Nathan to have had a hand in creating. The Wayfarer Parties will respond to that report on December 22, and depose the Jones Parties' expert before January 16. On this record, the Wayfarer Parties cannot meet their burden to show that the amendments will require them to "expend significant additional resources to conduct discovery and prepare for trial." *Soroof*, 283 F.R.D. at 152; *see also This LLC v. HolaBelle, Inc.*, 2024 WL 4871688, at *4 (D. Conn. Nov. 22, 2024).

*Second*, allowing amendment will not delay resolution of this case. At present, there are no dates set for dispositive motions or trial. Allowing amendment, therefore, will not disrupt any existing case management order or require the Court to reset critical deadlines. Indeed, the Court noted at the initial scheduling conference that it intended to set this case for trial some time after the trial in the *Lively* case. That trial is currently scheduled to begin on March 9, 2026, and the parties in that case predict that the trial will take up to six weeks. *Lively*, ECF Nos. 45, 58. It has always been anticipated that this case will not proceed to trial until, at the earliest, summer 2026 There will thus be no delay of this date that could amount to undue prejudice. *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (partially reversing denial of motion to amend and finding that an amendment would cause delay, but not undue prejudice because "amended claim was obviously one of the objects of discovery and related closely to the original claim" and no trial date had been set).

*Third*, the Jones Parties seek only to conform the pleadings to the evidence already produced and examined in discovery, which the Rules allow "at any time." Fed. R. Civ. P. 15(b)(2). Rule 15(b)(2) allows a party to amend "at any time" to "conform [the pleadings] to the

evidence and to raise [an] unpleaded issue," when the amendment would not prejudice one's opponent by "disadvantag[ing] its opponent in presenting its case." *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, 2025 WL 2781280, at *14-15 (S.D.N.Y. Sept. 30, 2025) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569-70 (2d Cir. 2000) (no prejudice where "the essential elements of the charge … appear[ed] in the complaint").

No defendant would be disadvantaged in presenting their case if the Jones Parties are permitted to amend because the facts and evidence underlying these claims are already a part of the record on the Jones Parties' existing claims. Nathan has long known that the Jones Defamatory Sites, as well as involvement in the *Business Insider* article, are issues that will be tried, and that the Jones Parties throughout discovery have sought to uncover the Doe identities. And Heath, who produced the recording that forms the basis of the new claim against him, was questioned about that incident at his deposition and was thus on notice of the potential claim against him. Rather than expand this action to include new issues unrelated to the existing claims, permitting amendment will simply conform the pleadings to case evidence that will be admitted at trial in support of the Jones Parties' existing claims.

### B.    The Proposed Amendments Are Not Futile

The proposed amendments also are not futile. "Amendment is futile if the proposed amended complaint could not survive a motion to dismiss." *Soroof*, 283 F.R.D. at 147. "Assuming the original complaint was filed within the statute of limitations, a court must deny as futile any claims that would be otherwise barred … unless the claims 'relate back'… [and] a proposed amendment is also deemed futile if the proposed claim could not withstand a Rule 12(b)(6) motion to dismiss." *Mason Tenders Dist. Council v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016). Here, all of the proposed claims are legally sufficient on their face, timely under applicable statutes of limitations, and arise from the same nucleus of operative facts already

pleaded in the original complaint.  They are also backed by evidence already uncovered and tested in discovery.  Allowing the Jones Parties to amend the complaint is necessary to ensure that the parties' dispute is fully resolved on the merits and conformed to the existing proof, which is the "strong preference" of courts in this Circuit.  *Loreley*, 797 F.3d at 190 (quoting *Williams*, 659 F.3d at 212); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## 1.    *Defamation*

The Jones Parties seek to amend their defamation claim (original Count VIII) to identify one of the Doe Defendants as Melissa Nathan.  "The elements of a cause of action [alleging] defamation are (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se."  *VIP Pet Grooming Studio, Inc. v. Sproule*, 224 A.D.3d 78, 90 (2d Dep't 2024) (cleaned up).  The proposed Amended Complaint alleges that Nathan conspired with others to author and publish the Jones Defamatory Websites, which contained provably false statements of fact concerning Jones and Jonesworks. Ex. 1 ¶¶ 210-15.  Those statements were published to third parties without privilege, and they exposed the Jones Parties to public contempt and ridicule, causing reputational and economic harm.  *Id.* ¶¶ 211-12, 216-20.  The allegations thus satisfy each required element of defamation under New York law.

The proposed amendments also relate back to the Jones Parties' original complaint and are therefore timely.  As the Second Circuit recognized in *Hogan v. Fischer*, Rule 15(c)(1)(A) permits an amended pleading to relate back when "the law that provides the applicable statute of limitations allows relation back."  738 F.3d 509, 518-19 (2d Cir. 2013); Fed. R. Civ. P. 15(c)(1)(A).  The Rules' Advisory Committee added this provision in 1991 to "make ... clear that [Rule 15] does not

apply to preclude any relation back that may be permitted under the applicable limitations law." *Id.* (quoting Fed. R. Civ. P. 15), Advisory Comm. Notes 1991. Critically, the Committee directed courts to look to the "controlling body of limitations law"—not merely the limitations law's test for relation back. *Id.* "[I]f that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." *Id.*

Because defamation claims under New York law are subject to New York's one-year statute of limitations, *see* N.Y. C.P.L.R. § 215(3), the "controlling body of limitations law" is New York law. Accordingly, under Rule 15(c)(1)(A), this Court must determine whether New York law provides a "more forgiving principle of relation back" for John Doe defendants than the federal standard under Rule 15(c)(1)(C). *Hogan*, 738 F.3d at 518. It does.

New York's Civil Practice Law and Rules creates a special procedure for claims against John Doe defendants. N.Y. C.P.L.R. § 1024 provides:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

As the Second Circuit has recognized, "New York courts have interpreted this section to permit John Doe substitutions *nunc pro tunc.*" *Hogan*, 738 F.3d at 518-19 (citing *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009)). To take advantage of § 1024, a party must meet two requirements. First, the party must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Hogan*, 738 F.3d at 519 (quoting *Bumpus*, 883 N.Y.S.2d at 104). Second, the party must describe the John Doe party "in such form as will fairly apprise the party that [he] is the intended defendant." *Id.*

The Jones Parties easily satisfy both requirements.  *First*, the Jones Parties exercised due diligence prior to the running of the statute of limitations to identify Nathan by name.  From the outset of this litigation in December 2024, the Jones Parties have diligently pursued discovery to uncover the identities of the John Doe defendants as well as the origination of the *Business Insider* article.  Nathan denied involvement in both in her answer.  ECF No. 37 at ¶ 87, 88, 91.  Nevertheless, the Jones Parties served requests for production on Nathan, including for documents pertaining to Nathan's involvement in the *Business Insider* article, as well as "to the websites www.stephaniejonesleaks.com and www.stephaniejoneslies.com, as well as any related social media accounts, including but not limited to [Nathan's] knowledge of or involvement in the creation, operation, or content of the websites or accounts, or any involvement by The Agency Group PR LLC's employees."  Ex. 4 at RFP Nos. 38-39.  Despite agreeing to produce documents in response to all the Jones Parties' requests, Nathan's productions were deficient, excluding documents evidence her involvement in the Jones Defamatory Sites or any others.  The Jones Parties' ongoing efforts to determine the identities of the Doe defendants continued unsuccessfully for months.  But again, despite Nathan's discovery obligations, she systematically withheld responsive documents and used artificially narrow search terms to prevent the Jones Parties' from discovering her involvement and then designated critical deposition testimony as attorneys' eyes only to prevent the Jones Parties' counsel from sharing the results of their investigation with their clients.

The Jones Parties also served subpoenas on the platforms hosting the websites and social media pages.  Because Nathan and her co-conspirators used the names of innocent third parties when registering and creating these defamatory sites, however, the documents the Jones Parties received could not have identified Nathan.  Exs. 22-25.  Thus, the Jones Parties could not have

identified Nathan earlier through any reasonable degree of diligence. *See Hogan*, 738 F.3d at 519 (finding due diligence where plaintiff "diligently sought to identify the John Doe defendants," "submitted multiple discovery requests," and defendants "failed to respond fully").

*Second*, the Complaint described the John Doe defendants "in such form as will fairly apprise" Nathan that she was the intended defendant. The Complaint alleged that certain John Doe defendants created and published two false and defamatory websites about the Jones Parties—www.stephaniejonesleaks.com and www.stephaniejoneslies.com—as well as more than a dozen follow-on disparaging social media accounts. ECF No. 1-1 at ¶ 88. The Complaint further alleged that these Doe Defendants published provably false statements of fact concerning Jones and Jonesworks, statements that were published to third parties without privilege and exposed the Jones Parties to public contempt and ridicule. *Id.* These allegations provided sufficient detail concerning the date, time, nature of the conduct, and role in the defamatory scheme to give Nathan notice that she was the intended defendant. *See Hogan*, 738 F.3d at 519 (finding sufficient notice where complaint "describe[d] with particularity the date, time, and location of the alleged [] incident").

Because the Jones Parties satisfy both requirements of N.Y. C.P.L.R. § 1024, the amendment substituting Nathan's true name for a John Doe designation relates back to the original Complaint and is timely under New York law. Under Rule 15(c)(1)(A), New York's relation-back principle applies, and the defamation claims against Nathan is therefore timely. *See Hogan*, 738 F.3d at 520. The amendment is therefore not futile.

### 2.    *Tortious Interference*

The Jones Parties also seek to add one targeted claim against Nathan for tortious interference with the Jones Parties' prospective business relations, alleging that Nathan deliberately worked to place the negative *Business Insider* article against Jones, in order to use it to convince prospective and existing clients not to work with Jones.  Under New York law, to state a claim for tortious interference with business relationships, "a plaintiff must show (1) the existence of a business relation with a third party, (2) defendant's interference with the relation by use of dishonest, unfair or improper means, and (3) plaintiff sustained damages."  *Monex Fin. Servs. Ltd. v. Dynamic Currency Conversion, Inc.*, 859 N.Y.S.2d 904, at *6 (Sup. Ct. 2008), *aff'd as modified*, 62 A.D.3d 675 (2009).

The proposed Amended Complaints satisfies each element.  First, it alleges that the Jones Parties had ongoing and prospective business relationships with existing and potential clients, including a shared client with Nathan.  Ex. 1 ¶¶ 11, 56-57, 190.  Second, it alleges that beginning in December 2023, Nathan orchestrated a calculated campaign to interfere with these relationships by: ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████; (c) creating and disseminating derogatory the Jones Defamatory Websites; and (d) engaging in search engine optimization to maximize the Websites' visibility and impact.  *Id.* at ¶¶ 186-90.

Third, the proposed Amended Complaint alleges that Nathan acted with wrongful purpose and through improper means.  Discovery revealed that their goal was to ███████████ Jones and use the *Business Insider* article to convince existing or prospective clients to terminate any relationship with Jonesworks.  *Id.* ¶¶ 56-82, 190.  Nathan and her co-conspirators obfuscated their

role in creating the Jones Defamatory Websites to make it look like they were created by an uninvolved former employee. Finally, the Jones Parties allege they were severely damaged, including reputational harm and lost client relations, because of Nathan's actions. *Id.* ¶¶ 190-91. The allegations thus satisfy each required element of tortious interference under New York law. *See Monex Fin. Servs.*, 859 N.Y.S.2d 904; *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90 (1993); *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 261 (S.D.N.Y. 2014).

### 3. *Violation of the Illinois Eavesdropping Statute*

Finally, the Jones Parties seek to assert a narrow claim against Heath for unlawfully recording a phone call with Jones without her consent. To state a claim under the Illinois Eavesdropping Act, a plaintiff must allege that the defendant intentionally recorded a conversation without the consent of all parties to the conversation. 720 Ill. Comp. Stat. Ann. 5/14-2(a)(2); 720 Ill. Comp. Stat. Ann. 5/14-6. The proposed Amended Complaint alleges that on or about August 8, 2024, Heath participated in a private telephone conversation with Jones while Heath was located in Chicago, Illinois. Ex. 1 ¶¶ 222-23. During that call, Heath intentionally recorded the conversation without informing Jones or obtaining her consent to be recorded. *Id.* ¶¶ 222-26. These allegations state a violation of the Illinois Eavesdropping Act, 720 Ill. Comp. Stat. §§ 14-2(a).

The Jones Parties further allege that they first learned of this violation only two months ago, on October 5, 2025, and that Heath validated the allegations in deposition a few days later. The claim is timely, adequately alleged, and arises from the same operative events already at issue in the case, including the relationship between Heath and Wayfarer on the one hand and Jones and Jonesworks on the other. The amendment is therefore not futile.

## CONCLUSION

For all these reasons, the Jones Parties respectfully request that the Court grant their motion for leave to file the proposed Amended Complaint.


DATED: December 8, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By:  */s/ Kristin Tahler*

Kristin Tahler
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
kristintahler@quinnemanuel.com

Maaren A. Shah
Morgan L. Anastasio
295 5th Avenue
New York, New York 10016
(212) 849-7000
maarenshah@quinnemanuel.com
morgananastasio@quinnemanuel.com

Nicholas Inns (pro hac vice)
1300 I Street NW
Suite 900
Washington, D.C. 20005
(202) 538-8000
nicholasinns@quinnemanuel.com

*Attorneys for Plaintiffs Stephanie Jones and Jonesworks LLC*