# EXHIBIT 17
FILED UNDER SEAL

Case 1:25-cv-00779-LJL    Document 202-1    Filed 12/15/25    Page 1 of 20

CONFIDENTIAL

Page 1

```
 1               UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF NEW YORK
 2
     BLAKE LIVELY,                )
 3       PLAINTIFF                )    CASE NO.
                                  )    1:24-CV-10049-LJL
 4   VS.                          )    (CONSOLIDATED WITH
                                  )    1:25-CV-00449-LJL
 5   WAYFARER STUDIOS LLC,        )
     JUSTIN BALDONI, JAMEY        )
 6   HEATH, STEVE SAROWITZ,       )
     IT ENDS WITH US MOVIE        )
 7   LLC, MELISSA NATHAN,         )
     THE AGENCY GROUP PR          )
 8   LLC, AND JENNIFER ABEL,      )
         DEFENDANTS               )
 9   _____    )    _____
     JENNIFER ABEL,               )
10       THIRD-PARTY              )
     PLAINTIFF                    )
11                                )
     VS.                          )
12                                )
     JONESWORKS LLC               )
13       THIRD-PARTY              )
     DEFENDANT                    )
14
          ORAL AND VIDEOTAPED DEPOSITION OF JED WALLACE
15                          OCTOBER 10
                           CONFIDENTIAL
16
17       ORAL AND VIDEOTAPED DEPOSITION OF JED WALLACE,
18   produced as a witness at the instance of the Jonesworks
19   and duly sworn, was taken in the above styled and
20   numbered cause on Friday, October 10, 2025, from 9:06
21   a.m. to 2:25 p.m., before Janalyn Elkins, CSR, in and
22   for the State of Texas, reported by computerized
23   stenotype machine, at the offices of Jackson Walker, 100
24   Congress Avenue, Suite 1100, Austin, Texas, pursuant to
     the Federal Rules of Civil Procedure and any provisions
25   stated on the record herein.
```

```
 1                 A P P E A R A N C E S
 2    FOR BLAKE LIVELY:
          MICHAEL J. GOTTLIEB
 3        MELISSA TAUSTINE
          AARON E. NATHAN
 4        WILKIE FARR & GALLAGHER LLP
          1875 K Street NW
 5        Washington, DC  20006
          Tel:  (202) 303-1000
 6        Mgottlieb@wilkie.com
 7    AND
 8        LAURA PRATHER
          HAYNES AND BOONE, LLP
 9        98 San Jacinto Boulevard, Suite 1500
          Austin, Texas  78701
10        Tel:  (512) 867-8400
          Laura.prather@haynesboone.com
11
      FOR JED WALLACE:
12        CHARLES L. BABCOCK
          JACKSON WALKER, LLP
13        1401 McKinney, Suite 1900
          Houston, Texas  77010
14        Tel:  (713) 752-4210
          cbabcock@jw.com
15
      FOR JONESWORKS, LLC
16        KRISTIN TAHLER
          MORGAN ANSTASIO
17        QUINN EMANUEL URQUHART & SULLIVAN, LLP
          865 Figueroa Street, 10th Floor
18        Los Angeles, California  90017
          Tel:  (213) 443-3000
19        kristintahler@quinnemanuel.com
20    FOR WAYFARER STUDIOS, LLC, JUSTIN BALDONI, JAMEY HEATH,
      STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA
21    NATHAN, JENNIFER ABEL, AND THE AGENCY GROUP PR, LLC
          MILES COOLEY
22        THERESA TROUPSON
          LINER FREEDMAN TAITELAN & COOLEY, LLP
23        1801 Century Park West, 5th Floor
          Los Angeles, California  90067
24        Tel:  (310) 201-0045
          mcooley@lftcllp.com
25
```

CONFIDENTIAL

Page 3

1  Also Present:
       TIMOTHY DESADIER (Videographer)
2      MAGGIE KANE (Concierge)
       ALICE BUTTRICK
3      AUTUMN ADAMS-JACK
       BRYAN FREEDMAN
4      WERKENTHIN
       KRISTIN BENDER
5      LINDSEY STRASBERG
       MICHAELA CONNOLLY
6      TORI EMERY
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL

Page 6

| | |
|---|---|
| 1 | VIDEOGRAPHER: Good morning. We are going |
| 2 | on the record at 9:06 a.m. Central Standard Time on |
| 3 | October 10, 2025. This is Media Unit 1 of the |
| 4 | video-recorded deposition of Jed Wallace taken by |
| 5 | counsel for the Plaintiff in the matter of Stephanie |
| 6 | Jones, et al. versus Jennifer Abel, et al. Filed in the |
| 7 | United States District Court for the Southern District |
| 8 | of New York, Case No. 125-CV-00779-LJL. The location of |
| 9 | the deposition is 100 Congress Avenue, Austin, Texas. |
| 10 | My name is Timothy Desadier representing Veritext, and I |
| 11 | am the videographer. The court reporter is Janalyn |
| 12 | Elkins from the firm Veritext. |
| 13 | Counsel and all present will now state |
| 14 | their appearances and affiliations for the record, |
| 15 | beginning with the noticing attorney. |
| 16 | MS. TAHLER: Kristin Tahler from Quinn |
| 17 | Emanuel for Stephanie Jones and Jonesworks. |
| 18 | MS. ANASTASIO: Morgan Anastasio, Quinn |
| 19 | Emanuel for the same. |
| 20 | MR. GOTTLIEB: Mike Gottlieb from Willkie |
| 21 | Farr & Gallagher on behalf of Ms. Lively. |
| 22 | MS. TAUSTINE: Melissa Taustine from |
| 23 | Willkie Farr & Gallagher on behalf of Blake Lively. |
| 24 | MS. PRATHER: Laura Prather, Haynes & Boone |
| 25 | on behalf of Ms. Lively. |

CONFIDENTIAL

Page 7

1         MR. COOLEY:  Miles Cooley and Theresa
2  Troupson, Liner Freedman Taitelman + Cooley on behalf of
3  the Wayfarer Defendants.
4         MR. BABCOCK:  Chip Babcock with Jackson
5  Walker on behalf of the witness.
6               JED WALLACE,
7  having been duly sworn, testified as follows:
8         MR. BABCOCK:  Kristin, do we want this
9  confidential or do you care?
10        MS. TAHLER:  Yeah, no, I think -- I think
11 we should designate it confidential.
12        MR. BABCOCK:  Okay.  And -- and I believe
13 there's an -- an agreement that the deposition will last
14 no longer than four hours.
15        MS. TAHLER:  Yes, there's that agreement.
16        MR. BABCOCK:  Okay.
17        MS. TAHLER:  And there may be moments of
18 AEO, but it doesn't look like that's going to be an
19 issue today, because I don't think we have any clients
20 on.
21        MR. BABCOCK:  Great.  Perfect.
22              EXAMINATION
23   Q.  (BY MS. TAHLER)  All right.  Good morning,
24 Mr. Wallace.
25   A.  Good morning.

CONFIDENTIAL

Page 26

1   Katie Case?
2       A.  I don't recall.
3       Q.  Was it within the last year?
4       A.  No.
5       Q.  Within the last five years?
6       A.  Yeah, I don't recall.
7       Q.  About how many times do you recall
8   communicating with Katie Case?
9       A.  I -- I have no idea.
10      Q.  Did you work with Katie Case in connection with
11  work that you did for ▮▮▮▮▮▮▮?
12      A.  Not that I recall.
13      Q.  Do you recall Katie Case having any involvement
14  in work that you did for ▮▮▮▮▮▮▮?
15      A.  Not that I recall.
16      Q.  Is it possible?
17      A.  I'd need more details.  I'm not certain.
18      Q.  What about ▮▮▮▮▮▮▮▮▮▮▮▮ did Katie
19  Case have any -- did you do any work related to ▮▮
20  ▮▮▮▮▮▮▮ with Katie Case?
21              MR. COOLEY:  Objection.
22              THE WITNESS:  Yeah, not that I recall.
23      Q.  (BY MS. TAHLER)  Do you recall being on a
24  Signal chat with Katie Case and Melissa Nathan in August
25  of 2024?

1   if requested?
2            MR. COOLEY:  Objection.
3            THE WITNESS:  I -- I cannot do that.
4       Q.  (BY MS. TAHLER)  Do you know people who can do
5   that?
6            MR. COOLEY:  Objection.
7            THE WITNESS:  Not that I recall.
8       Q.  (BY MS. TAHLER)  We're going to mark a couple
9   of exhibits now, so bear with me while we go through
10  that.
11      A.  Okay.
12           MS. ANASTASIO:  We're at 41.
13           THE REPORTER:  42.
14           MS. ANASTASIO:  42.  So this will be 42.
15           (Exhibit Nos. 42-46 were marked.)
16      Q.  (BY MS. TAHLER)  Mr. Wallace, you've been
17  handed several exhibits.  Before we get into the details
18  of the exhibits, are you familiar generally that in
19  May 2024, a website and a number of social media
20  accounts that were unfavorable to Stephanie Jones
21  appeared online?
22      A.  I don't know the specifics, but I've heard
23  that.
24      Q.  Where did you hear that from?
25      A.  I believe the lawsuit.  And early on, a

CONFIDENTIAL

Page 39

1    conversation with Stephanie.
2        Q.  You've been handed a printout of the website
3    that I'm referring to, a second website that was put up,
4    and then a Twitter account, a Facebook account, and a
5    Pinterest account, all that link back to that website.
6            Have you seen these documents before
7    online?
8        A.  Can -- can I read through them?
9        Q.  Yeah.  I'm not going to ask you detailed
10   questions about the website, so you don't have to --
11       A.  Okay.
12       Q.  -- read the whole thing.  But if you want to
13   familiarize yourself.
14       A.  Okay.  Thanks.
15       Q.  Mr. Wallace, you've just reviewed Exhibits 42
16   through 46, which are a series of websites and negative
17   social media accounts about Stephanie Jones.
18           Have you seen these documents online before
19   today?
20       A.  I did see this website.
21       Q.  You did see Exhibit 42?
22       A.  I believe so.
23       Q.  When did you see Exhibit 42?
24       A.  I don't recall.
25       Q.  Were you involved in the creation of

Page 40

1    Exhibit 42?
2        A.  No.
3        Q.  Were you involved at all in getting Exhibit 42
4    online?
5        A.  No.
6        Q.  Were you involved at all in the copy that is
7    drafted for Exhibit 42?
8        A.  No.
9        Q.  Did you contribute to its existence in any way?
10       A.  No.
11       Q.  We've discussed Katie Case earlier,
12   Mr. Wallace.  Are you aware that Katie Case testified in
13   this matter?
14       A.  I don't know the specifics.  I'm aware she
15   testified.
16       Q.  Have you reviewed her testimony?
17       A.  I have not.
18       Q.  You understand Ms. Case testified under oath
19   under penalty of perjury, do you?
20       A.  Okay, yeah.
21       Q.  Like you are today?
22       A.  Yes.
23       Q.  And I will represent to you -- were you on a
24   Signal chat with Ms. Case and Ms. Nathan in 2024, in May
25   of 2024?

Page 43

1           (Brief recess.)
2           VIDEOGRAPHER: Back on the record. Time is
3    10:08.
4       Q.  (BY MS. TAHLER) Mr. Wallace, when we broke, we
5    were looking at a series of websites and social media
6    accounts related to Ms. Jones. Could you look at what's
7    been marked as Exhibit 44?
8       A.  Yes.
9       Q.  Exhibit 44 is a series of tweets related to the
10   stephaniejonesleaks website.
11           Do you see that?
12      A.  Tweets or accounts?
13      Q.  Accounts. Apologies.
14      A.  Yes.
15      Q.  Did you have any involvement of any tweets that
16   went into this -- that were posted onto any of those
17   accounts?
18           MR. COOLEY: Objection, form.
19           THE WITNESS: Yeah, I did not.
20      Q.  (BY MS. TAHLER) Ms. Case testified that she
21   drafted tweets about Ms. Jones and posted to one of
22   those sites. Are you aware of that?
23      A.  I am not.
24      Q.  Did you have any involvement with Ms. Case in
25   tweets that were posted to any of those accounts?

CONFIDENTIAL

Page 44

1   A.  I did not.
2   Q.  I'll represent to you that Katie Case testified
3   that she spoke with you in connection with the tweets.
4   Does that refresh any recollection that you worked with
5   Ms. Case in connection with tweets that were posted to
6   any of the accounts in Exhibit 44?
7            MR. BABCOCK:  Objection.
8            THE WITNESS:  It does not.
9   Q.  (BY MS. TAHLER)  Mr. Wallace, are you -- is it
10  your testimony today that if Katie Case testified under
11  oath that she spoke to you in connection with tweets
12  that were posted to one of the accounts in Exhibit 44
13  that Ms. Case gave false under-oath testimony?
14           MR. BABCOCK:  Objection.
15           THE WITNESS:  Yeah, I have no idea what her
16  testimony was.
17           MR. COOLEY:  Same.
18           THE WITNESS:  Can't answer that.
19  Q.  (BY MS. TAHLER)  I'm representing to you that
20  Ms. Case testified that she worked with you in
21  connection with tweets that were posted to one of the
22  accounts at Exhibit 44.  And I'm asking you if it is
23  your testimony that Ms. Case testified about that
24  falsely?
25           MR. BABCOCK:  Objection.

CONFIDENTIAL

Page 45

1            MR. COOLEY:  Same.
2            THE WITNESS:  I can't speak to that.
3       Q.  (BY MS. TAHLER)  So Ms. Case's testimony could
4   be accurate; is that right?
5            MR. BABCOCK:  Objection.
6            MR. COOLEY:  Same.
7            THE WITNESS:  I can't answer that.
8       Q.  (BY MS. TAHLER)  It's possible that Ms. Case
9   spoke to you about tweets that were posted to one of the
10  accounts in Exhibit 44?
11      A.  I don't recall.
12      Q.  So it's possible?
13      A.  I can't answer that.
14      Q.  You can answer yes or no if it's possible.
15           MR. BABCOCK:  Objection.
16           THE WITNESS:  I -- I don't --
17           MR. COOLEY:  Joining.
18           THE WITNESS:  -- have all the details.  I'm
19  not certain how to answer that.
20      Q.  (BY MS. TAHLER)  There are no more details to
21  give.  I'm simply asking you yes or no.  Is it possible
22  that Katie Case spoke to you about tweets that were
23  posted to one of the accounts in Exhibit 44?
24           MR. COOLEY:  Objection.
25           MR. BABCOCK:  Same objection.

```
 1        Q.  (BY MS. TAHLER)  You're not certain whether or
 2   not a website ▓▓▓▓▓▓▓▓▓▓▓▓ and a website
 3   stephaniejonesleaks are similar?
 4             MR. COOLEY:  Objection.
 5             MR. BABCOCK:  Objection.
 6             THE WITNESS:  Yeah, I -- I don't know.
 7   That's a broad statement.  They both have URL addresses.
 8        Q.  (BY MS. TAHLER)  Okay.  Mr. Wallace, Katie Case
 9   wrote the copy for Exhibit 51; isn't that right?
10        A.  I don't know.
11        Q.  Sitting here today, do you believe it's
12   possible that Ms. Case wrote the copy for Exhibit 41?
13             MR. COOLEY:  Objection.
14             MR. BABCOCK:  Objection.
15             THE WITNESS:  Yeah, I can't speak to that.
16   I'm not sure.
17        Q.  (BY MS. TAHLER)  And you were involved in
18   creating Exhibit 51 as well; isn't that right?
19        A.  That is not right.
20        Q.  You had no involvement in Exhibit 51?
21             MR. COOLEY:  I'm sorry.  One second.
22   Objection.
23             THE WITNESS:  Could you repeat the
24   question, please?
25        Q.  (BY MS. TAHLER)  Yes.  Did you have any
```

Page 76

1    involvement in what came to be Exhibit 51?
2             MR. COOLEY:  Objection.
3             THE WITNESS:  I did not.
4        Q.  (BY MS. TAHLER)  Did you have any discussions
5    with anyone related to what would become Exhibit 51?
6             MR. COOLEY:  Objection.
7             THE WITNESS:  Not that I recall.
8        Q.  (BY MS. TAHLER)  Did you ever discuss
9    Exhibit 51 with Ms. Nathan?
10       A.  Not that I recall.
11       Q.  What about Roza Kalantari?
12       A.  Not that I recall.
13            MS. ANASTASIO:  This will be 52.
14            (Exhibit No. 52 was marked.)
15       Q.  (BY MS. TAHLER)  Mr. Wallace, you are now
16   reviewing what's been marked as KCase-several zeros-4949
17   through 4962.  This is a communication, sir, between
18   Ms. Case and Ms. Nathan.  You are not on the
19   communication, but you are referenced in it.  So if
20   you'd like to review it, I'm going to have some
21   questions.
22       A.  Okay.
23       Q.  Mr. Wallace, have you ever seen Exhibit 52
24   before today?
25       A.  What exhibit?  The entire exhibit?

CONFIDENTIAL

Page 102

1  behalf?
2       A.  No, I don't know.  I can't answer one way or
3  the other.  I don't recall.
4       Q.  And I'm just asking yes or no.  Is it possible
5  that you did some sort of work on their behalf?
6              MR. BABCOCK:  Objection.
7              MR. COOLEY:  Join.
8              THE WITNESS:  Yeah, I -- I can't answer
9  that.  I'm not certain.
10      Q.  (BY MS. TAHLER)  Mr. Wallace, did you work on a
11 website related to ███████████████████?
12      A.  I did not.
13             MS. ANASTASIO:  63.
14             (Exhibit No. 63 was marked.)
15             MS. ANASTASIO:  This will be 63.
16      Q.  (BY MS. TAHLER)  Mr. Wallace, you're now
17 reviewing what's been marked as Exhibit 63.  It is a
18 website available at ███████████████████████
19             Do you see that?
20      A.  Yeah, I'm reviewing now.
21      Q.  I'm not going to ask you any detailed questions
22 about it, sir.
23      A.  Okay, yeah.
24      Q.  Mr. Wallace, are you aware that this website
25 came online around ████████████████?

Page 103

1   A. I am not.
2   Q. At the time, ███████████████████████
3   ███████████████████████████████. Are you aware of
4   that?
5   A. I'm not aware of their story.
6   Q. Are you aware whether or not Katie Case had any
7   role in drafting the copy for this website?
8   A. I don't know that.
9   Q. Katie Case testified under oath that she
10  performed work in connection with ████████████████
11  with you and Melissa Nathan -- Nathan. Does that
12  refresh your recollection that you did some work in
13  connection with ████████████████████ in connection
14  with Ms. Case?
15          MR. BABCOCK: Objection.
16          MR. COOLEY: Join.
17          THE WITNESS: Yeah, it does not.
18  Q. (BY MS. TAHLER) Do you recall doing any work
19  for ████████████████████ with Ms. Case?
20  A. I don't recall.
21  Q. Do you have any basis to dispute Ms. Case's
22  under-oath testimony?
23          MR. BABCOCK: Objection.
24          MR. COOLEY: Objection.
25          THE WITNESS: Yeah, I can't do that. Same

CONFIDENTIAL

Page 104

```
1    as earlier answers, not one way or the other.
2         Q.  (BY MS. TAHLER)  Sitting here today, do you
3    have any basis to dispute Ms. Case's under-oath
4    testimony?
5              MR. COOLEY:  Same objection.
6              MR. BABCOCK:  Objection.
7              THE WITNESS:  I -- I don't know what her
8    testimony was, nor do I have any basis to answer that
9    question.
10        Q.  (BY MS. TAHLER)  I'm just telling you -- I'm
11   representing to you that Ms. Case testified that she
12   performed work related to ████████████████ with
13   you and Melissa.  And I'm asking yes or no.  Do you have
14   any basis to dispute that under-oath testimony?
15             MR. BABCOCK:  Object to the question.
16             MR. COOLEY:  Same.
17             THE WITNESS:  Yeah, I can't answer that.  I
18   don't have all the circumstances.
19        Q.  (BY MS. TAHLER)  Can you tell me what
20   circumstances you would need?
21             MR. BABCOCK:  Objection.
22             MR. COOLEY:  Join.
23             THE WITNESS:  No, I can't.
24        Q.  (BY MS. TAHLER)  Mr. Wallace, do you recall our
25   discussing earlier ████████?
```

CONFIDENTIAL

Page 155

1           REPORTER'S CERTIFICATION
            DEPOSITION OF JED WALLACE
2            TAKEN OCTOBER 10, 2025
3           I, Janalyn Elkins, Certified Shorthand
4   Reporter in and for the State of Texas, hereby certify
5   to the following:
6           That the witness, JED WALLACE, was duly sworn
7   by the officer and that the transcript of the oral
8   deposition is a true record of the testimony given by
9   the witness;
10          That the original deposition was delivered to
11  KRISTIN TAHLER;
12          That a copy of this certificate was served on
13  all parties and/or the witness shown herein on
14  _____.
15          I further certify that pursuant to FRCP No.
16  30(f)(i) that the signature of the deponent was not
17  requested by the deponent or a party before the
18  completion of the deposition.
19          I further certify that I am neither counsel
20  for, related to, nor employed by any of the parties in
21  the action in which this proceeding was taken, and
22  further that I am not financially or otherwise
23
24
25

CONFIDENTIAL

Page 156

1  interested in the outcome of the action.
2          Certified to by me this 11th day of October
3    2025.
4
5              *[signature: Janalyn Elkins]*
               JANALYN ELKINS
6              Texas CSR 3631
               Expiration Date 1/31/2027
7              Veritext Legal Solutions
               Firm Registration No. 571
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25