**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Stephanie Jones, Jonesworks LLC,<br><br>      Plaintiffs,<br><br>    -against-<br><br>Jennifer Abel, Melissa Nathan, Justin Baldoni, Wayfarer Studios LLC, and John Does 1-10<br>      Defendants. | Civil Action No. 1:25-cv-779 |

**STEPHANIE JONES AND JONESWORKS LLC'S REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii
I.   THE JONES PARTIES HAVE DEMONSTRATED DILIGENCE ..................................... 1
II.  THE WAYFARER PARTIES CANNOT SHOW PREJUDICE ........................................... 4
    A.   The Defamation Claim Is Timely And Well-Pleaded. ............................................... 6
    B.   The Well-Pleaded Tortious Interference Claim Is Not Duplicative. ......................... 7
    C.   The Complaint States A Viable Eavesdropping Claim. ............................................ 9
CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Baker v. Goldman Sachs & Co.*,
669 F.3d 105 (2d Cir. 2012) ........ 5

*Calvin Klein Tr. v. Wachner*,
129 F. Supp. 2d 248 (S.D.N.Y. 2001) ........ 8

*Carvel Corp. v. Noonan*,
3 N.Y.3d 182 (2004) ........ 8

*Christians of Cal. v. Clive Christian N.Y.*,
2014 WL 3605526 (S.D.N.Y. July 18, 2014) ........ 4

*Clean Coal Techs. v. Leidos*,
377 F. Supp. 3d 303 (S.D.N.Y. 2019) ........ 9

*Enzymotec Ltd. v. NBTY, Inc.*,
754 F. Supp. 2d 527 (E.D.N.Y. 2010) ........ 3

*Fresh Del Monte Produce v. Del Monte Foods*,
304 F.R.D. 170 (S.D.N.Y. 2014) ........ 4

*Germain v. M & T Bank Corp.*,
111 F. Supp. 3d 506 (S.D.N.Y. 2015) ........ 7

*Giuffre v. Maxwell*,
221 F. Supp. 3d 472 (S.D.N.Y. 2016) ........ 5

*Heinsohn v. Carabin & Shaw, P.C.*,
832 F.3d 224 (5th Cir. 2016) ........ 9

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013) ........ 7

*Joseph v. Bute*,
2019 WL 181302 (E.D.N.Y. Jan. 9, 2019) ........ 7

*Kassner v. 2nd Ave. Deli.*,
496 F.3d 229 (2d Cir. 2007) ........ 3, 4

*Lively v. Wayfarer Studios LLC*,
No. 24-cv-10049 (S.D.N.Y.), ECF No. 715 ........ 9

*Mills v. Polar Mol.*,
    12 F.3d 1170 (2d Cir. 1993) ................................................................................................10

*Oguejiofo v. Open Text*,
    2010 WL 1904022 (S.D.N.Y. May 10, 2010) ....................................................................10

*Oscar v. BMW*,
    2011 WL 6399505 (S.D.N.Y. Dec. 20, 2011) ......................................................................2

*Parker v. Columbia Pictures*,
    204 F.3d 326 (2d Cir. 2000) (Opp. ) ....................................................................................3

*Perez v. Escobar Const.*,
    342 F.R.D. 378 (S.D.N.Y. 2022) ......................................................................................4, 6

*RBG Mgmt. Corp. v. Vill. Super Mkt.*,
    692 F. Supp. 3d 135 (S.D.N.Y. 2023) ..................................................................................9

*Richardson Greenshields Sec., Inc. v. Lau*,
    825 F.2d 647 (2d Cir. 1987) ................................................................................................2

*Sokol Holdings v. BMD Munai*,
    2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009) ......................................................................2

*Unique Sports Gen. v. LGH-III, LLC*,
    2005 WL 2414452 (S.D.N.Y. Sept. 30, 2005) ..................................................................7, 8

## Rules / Statutes

28 U.S.C. § 1367 ............................................................................................................................9

Ill. Comp. Stat. Ann. § 5/14-1(d) ..................................................................................................10

Ill. Comp. Stat. Ann. § 5/14-2(a)(2) ..............................................................................................10

Ill. Comp. Stat. Ann. § 5/14-6 ......................................................................................................10

Rule 15 ............................................................................................................................................3

Rule 15(b)(2) ...................................................................................................................................6

Rule 16 ............................................................................................................................................3

The Jones Parties respectfully submit this reply in further support of their motion for leave to amend, ECF No. 191.[1] Discovery revealed that Melissa Nathan was one of the Doe Defendants responsible for creating the defamatory smear websites and social media accounts (the "Websites") targeting the Jones Parties, and that she created the Websites as part of her vindictive efforts to ▮▮▮▮▮▮▮▮ Stephanie Jones. The limited proposed amendments seek to conform the pleadings to the existing discovery record and ensure this case is adjudicated on the merits, as is the strong preference of courts in this Circuit. The Motion should be granted.

I.  **THE JONES PARTIES HAVE DEMONSTRATED DILIGENCE**

As their lead argument, the Wayfarer Parties summarily claim (at 6) that the Jones Parties "knew or should have known … the facts necessary to bring" claims for tortious interference and defamation against Nathan in December 2024." This is nonsensical. While the Jones Parties knew and alleged in December 2024 that Nathan fed information to *Business Insider*, they did not and could not have known at that time that Nathan was the ringleader and instigator, all in a concerted campaign to harm Jones. For example, until discovery in this action, the Jones Parties could not have known—and did not know—the facts giving rise to the tortious interference claim, including that Nathan: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and used the false and derogatory attack websites she created against Jones ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*, ECF No. 195-1 ¶¶ 57-63, 70, 80, 94. The Jones Parties similarly could not have known—and did not know—the facts supporting the amended defamation claim: that Nathan instructed the Former

---

[1] Capitalized terms not otherwise defined have the same meaning as in the Memorandum.

Employee to write the copy for the Websites and follow-on social media accounts; told the Former Employee what specific defamatory statements the site should include; published the Websites; and engaged in search engine optimization efforts to maximize their visibility and the harm to Jones. *E.g., id.* ¶¶ 85, 94-103. While long known to Nathan (yet still denied), these damning facts were only revealed to the Jones Parties long after the deadline to amend had passed.[2] ECF No. 194 ("Mem.") at 11-12 (citing *e.g., Richardson Greenshields Sec. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (cataloguing cases granting leave to amend following delays of three to five years)).

The Wayfarer Parties claim (at 8, 14 n.4) that the Jones Parties "did not serve discovery requests seeking documents concerning the Websites or the Business Insider Article until July 16, 2025." This is false. In March 2025, the Jones Parties served Nathan with broad requests for documents relating to the article and Websites. ECF No. 193-3. It was then Nathan who artificially restricted her productions to obstruct the Jones Parties' investigation, requiring additional requests. Mem. at 4-5. Nathan then failed to provide responsive information to the Jones Parties' April 2025 interrogatories relating to Nathan's involvement—first refusing to answer, before supplementing her responses on July 30, 2025, to state (falsely, according to the Former Employee's testimony and documents in Nathan's possession[3]) that she "[REDACTED]." Ex. 1. The Jones Parties worked to uncover the Websites' perpetrators from inception, and they have diligently investigated Nathan's involvement in the Websites and article. ECF Nos. 195-12, 195-13 (responses prepared January 2025); Mem. at 4-7, 10-12.

---

[2] The cases upon which the Wayfarer Parties rely, where the parties seeking to amend waited **years** after knowing all the facts in support of their amendments before attempting to assert the claims are thus inapposite. *Sokol Holdings v. BMD Mumai*, 2009 WL 2524611, at *9 (S.D.N.Y. Aug. 14, 2009); *Oscar v. BMW*, 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011).

[3] Nathan's obstruction apparently continues. The Jones Parties understand that the Former Employee provided bates-stamped documents to Nathan in December 2025 that are responsive to the Jones Parties' requests but that were never then produced by Nathan to the Jones Parties.

2

These efforts to uncover the information necessary to assert the proposed new claims fit comfortably within the precedent finding good cause. *See* Mem. at 11-12. The Wayfarer Parties fail to address this authority, instead pretending (at 7-8) that the Jones Parties do not argue good cause. But it is the Wayfarer Parties who are mistaken and who misstate the law. Under the Wayfarer Parties' faulty theory, amendment would be diligent only if the Jones Parties sought piecemeal amendments after each new fact was learned. That is not what the law requires. Instead, cases in this Circuit make clear what matters is when the party seeking to amend knew all facts necessary to amendment—a standard met by the Jones Parties. *See Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (diligence where some facts relevant to amendment known for years but all facts necessary to amend not gathered until approximately two months before amendment). Indeed, it wasn't until the Jones Parties' expert report, finalized and served on November 21, 2025, confirmed that the same online contributor promoted the Jones defamatory Websites and the Amanda Ghost and Alexander Brothers websites, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, that the Jones Parties had all information necessary to amend.

Moreover, not only is good cause met, but when a scheduling order is in place, Rule 15 does not disappear. Rule 15's lenient standard must be "balanced" against Rule 16's good cause requirement. *Kassner v. 2nd Ave. Deli.*, 496 F.3d 229, 244 (2d Cir. 2007). Indeed, following *Parker v. Columbia Pictures*, 204 F.3d 326, 340 (2d Cir. 2000) (Opp. at 6-9), the Second Circuit has affirmed that diligence "is not … the only consideration" on a motion to amend, and that a district court can properly consider "other relevant factors including … whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 244. The Wayfarer Parties' argument that lack of diligence ends the inquiry simply can "not [be] reconcile[d]" with this precedent and is unavailing. *Fresh Del Monte Produce v. Del*

3

*Monte Foods*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014). For this reason as well, amendment should be permitted to ensure this case is resolved on the merits and conformed to the existing proof.[4]

## II. THE WAYFARER PARTIES CANNOT SHOW PREJUDICE

The Wayfarer Parties' argument (at 10) that they would be prejudiced because the amendments would require "significant additional discovery" is meritless. *First*, as discussed above (at 2-3), the Jones Parties already completed discovery into the article and Websites. So too have the Wayfarer Parties. Indeed, the Wayfarer Parties long ago requested documents relevant to the Jones Parties' allegations, including the defamation claim and thus necessarily the truth or falsity of the Websites, Ex. 2 at No. 2, and have never claimed that the Jones Parties' resulting productions were deficient. The Wayfarer Parties also already deposed the Jones Parties and others (including the Former Employee) about the at-issue statements. The Wayfarer Parties do not explain why additional discovery (which the Wayfarer Parties elsewhere argue relates to claims captured in the original Complaint) is justified now or why the existing discovery record is incomplete (because it is not). *Perez v. Escobar Const.*, 342 F.R.D. 378, 382 (S.D.N.Y. 2022) (no prejudice where "defendants' argument is inadequate to show that there is any need to re-open discovery or that there would be any effect on summary judgment briefing"); *Christians of Cal. v. Clive Christian N.Y.*, 2014 WL 3605526, at *6 (S.D.N.Y. July 18, 2014) (no prejudice where "[t]he proposed copyright claim arises out of the same transaction as the other claims"). Expert discovery on the defamation and tortious interference claims similarly requires no expansion, Mem. at 14, and the Wayfarer Parties' suggestion (at 12) that "expert discovery would [] be implicated" on the

---

[4] For this reason, the Wayfarer Defendants' preoccupation with the Court's prior order denying the motion to compel the production of certain document is misplaced. The Jones Parties "did not know and could not reasonably have known" the facts supporting amendment when the deadline to amend passed, *Soroof Trading*, 283 F.R.D. 147, 149 (S.D.N.Y. 2012), and amendment is nevertheless warranted because the Wayfarer Parties would not be prejudiced.

4

tortious interference claim relies on further misrepresentation, as the Jones Parties' damages expert report (and the Wayfarer Parties' rebuttal) addresses ████████ ████████.

*Second*, the Wayfarer Parties do not explain how depositions of the gratuitous laundry-list of non-parties, including "the authors and anyone who provided information for the Article" (Opp. at 12) are even arguably relevant. Truth is not a defense to the tortious interference claim, which is premised on Nathan's ████████ ████████ and, as noted above, the Wayfarer Parties discovery included requests related to the defamation claim. Moreover, the Wayfarer Parties do not explain how they could subpoena or depose protected journalistic sources. *Baker v. Goldman Sachs & Co*, 669 F.3d 105, 107-08 (2d Cir. 2012); *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 476 (S.D.N.Y. 2016).[5] Nathan knew ████████ all along (the Jones Parties did not), and Nathan should have listed them on her initial disclosures or sought discovery from them during the discovery period, but did not.

*Third*, the Wayfarer Parties' argument (at 12) that significant new discovery is needed on the eavesdropping claim is similarly overstated. Heath was already deposed on the recording, Mem. at 7, and whether Jones's family members were present during the call is inconsequential (*infra* at 10) and, regardless, could be discovered with a simple interrogatory. There is no basis to reopen the Jones Parties' depositions—especially because the Wayfarer Parties' counsel was in

---

[5] Even if the Wayfarer Parties could demonstrate that additional discovery were relevant or necessary, that discovery would necessarily be more limited than the Wayfarer Parties' claim. Nathan has already used twenty-three of her allocated twenty-five interrogatories on the Jones Parties. Nathan also has already used four of her ten depositions, and has not yet deposed the Jones Parties' three experts. Thus at most, Nathan's discovery would consistent of two interrogatories on Jones and Jonesworks and six depositions.

possession of the recording at the time of Jones's deposition, Mem. at 7, and thus had all the information needed to question Jones about the call and its effect.

*Fourth*, the Wayfarer Parties' premise that additional discovery equates to undue prejudice is faulty. "[T]he need for new discovery is not sufficient to constitute undue prejudice on its own." *Perez*, 342 F.R.D. at 381. Moreover, even if discovery were reopened for some limited purpose, there would be no delay. There are no deadlines for dispositive motions, nor will the case proceed to trial until after the May 2026 six-week trial in *Lively*.[6]

*Finally*, the Jones Parties seek only to conform the pleadings to the existing proof, which Rule 15(b)(2) allows "at any time" so long as the amendment would not cause prejudice by "disadvantag[ing]" the Wayfarer Parties' "in presenting [their] case." Mem. at 15. The Wayfarer Parties do not address this argument or claim that amendment would disadvantage them in presenting their case and have thus waived any opposition to the Jones Parties' request to conform the pleadings to the evidence.

## III. THE PROPOSED AMENDMENTS ARE NOT FUTILE

### A. The Defamation Claim Is Timely And Well-Pleaded.

The Wayfarer Parties' arguments that the defamation claim is futile are easily disposed of. The Wayfarer Parties' claim (at 13) that the Jones Parties failed to seek discovery into the Websites before the statute of limitations expired is wrong for the reasons already explained (at 2-3), including because the Jones Parties issued subpoenas and other document requests to uncover the

---

[6] Although the Jones Parties maintain any additional discovery is not needed, if the Court reopens discovery, it should do so evenly and permit the Jones Parties to similarly request discovery proportional to any limited discovery taken by the Wayfarer Parties.

creator of the Websites before May 2025. *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013); *Joseph v. Bute*, 2019 WL 181302, at *5 (E.D.N.Y. Jan. 9, 2019).[7]

The Wayfarer Parties' argument (at 14-15) that the amendment does not identify what defamatory statements were made and when with sufficient particularity is equally meritless. "Under Rule 8, a complaint for defamation need not specifically plead the alleged defamatory words; rather, the pleading party need only provide the opposing party with 'sufficient notice of the communications complained of to enable [her] to defend [her]self." *Unique Sports Gen. v. LGH-III, LLC*, 2005 WL 2414452, at *9 (S.D.N.Y. Sept. 30, 2005). The amendment does just that—alleging "the specific nature of the remarks made," such as that "███████████████████████████████████████████████████"; "a timeframe" the remarks were made ("May of 2024," "May 6, 2024," and "[d]ays" later); and that Nathan "made the remarks" to the Former Employee and through the Websites, which were read by numerous third parties. *Id.* at *10; ECF No. 195-1 ¶¶ 85-86, 90, 212; *see also Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 537 (S.D.N.Y. 2015).

### B.  The Well-Pleaded Tortious Interference Claim Is Not Duplicative.

The Wayfarer Parties' arguments against the tortious interference claim (at 15-19) are similarly unavailing. *First*, this claim is not duplicative because it does not rely on "identical underlying factual content" as the defamation claim. This claim is not based solely on the defamatory statements made in creating and publishing the Websites, but also Nathan's ███████████████████████████████████████████████████████████

---

[7] The Wayfarer Parties do not argue and have thus waived any suggestion that the Jones Parties did not describe the John Doe parties "in such a form as will fairly apprise the party that [she] is the intended defendant." *Hogan*, 738 F.3d at 519.

███████████████—all with the sole intention of harming the Jones Parties. ECF No. 195-1 ¶¶ 57-63, 70, 80, 85, 94. The claim also alleges "specific pecuniary, rather than solely reputational, injury," including ████████████. *Calvin Klein Tr. v. Wachner*, 129 F. Supp. 2d 248, 253 (S.D.N.Y. 2001) (tortious interference claim not duplicative where it alleged "a loss of jeanswear sales to potential customers as a direct result of Mr. Klein's *Larry King Live* interview[, e]ven though defendants' defamation claims also refer to this same loss of business").[8]

*Second*, the Amended Complaint—which "must be presumed true" with "all reasonable inferences [drawn] in the [Jones Parties'] favor"—adequately alleges a claim for tortious interference. *Unique Sports*, 2005 WL 2414452, at *5. The Amended Complaint alleges that Nathan engaged in the underlying conduct "for the purpose of ████████████████ ████████████" and that █████████████████████████████████████████ █████████████████████████████████████. ECF No. 195-1 ¶¶ 57-58, 70, 186, 190-91; *Unique Sports*, 2005 WL 2414452, at *6. It also alleges Nathan used "wrongful means," including stealing the identity of a former Jonesworks employee to create defamatory attack Websites and ████████████████████████████████████████ ██████████████████████████████████████████████████. *E.g.*, *id.* at ¶¶ 60-63, 87; *Unique Sports*, 2005 WL 2414452, at *7; *Calvin Klein*, 129 F. Supp. 2d at 254 ("defamation surely counts as an improper means").[9] And it alleges that Nathan directed her bad acts at Jonesworks' clients, ████████████████. ECF No. 195-1 ¶¶ 57-58, 63, 70.

---

[8] "[T]here is no reason why" the Jones Parties "should be precluded from seeking compensation for such damage [relating to the loss of the mutual client] under two distinct legal theories, so long as no double recovery is permitted." *Calvin Klein*, 129 F. Supp. 2d at 253.

[9] Even if this egregious conduct were insufficient to establish that Nathan's conduct was independently tortious (it is), the claim must survive because the Amended Complaint sufficiently alleges that Nathan "engage[d] in conduct 'for the sole purpose of inflicting intentional harm on [the Jones Parties].'" *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).

*Finally*, the Amended Complaint alleges that Nathan engaged in these bad acts for the "sole purpose to harm" and "████████" the Jones Parties, not for any economic benefit. *E.g.*, *id.* ¶¶ 11, 14, 57, 190 (Nathan's ████████████████████████████████████████ ████████████████████);[10] *Clean Coal Techs. v. Leidos*, 377 F. Supp. 3d 303, 323-24 (S.D.N.Y. 2019) ("allegations of intentionally false communications in the service of personal gain suffice to state that Dr. Paul 'engage[d] in conduct for the sole purpose of inflicting intentional harm'").

C.  **The Complaint States A Viable Eavesdropping Claim.**

The Wayfarer Parties' arguments against the eavesdropping claim similarly fail. *First*, the eavesdropping claim arises under the same facts and circumstances as the other claims in this action, including "Jonesworks' role as representative of the Wayfarer Parties under the Wayfarer Agreement" (Opp. at 24), establishing supplemental jurisdiction under 28 U.S.C. § 1367. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 232-33 (5th Cir. 2016) (the court may invoke supplemental jurisdiction where it is "otherwise clear from the record").

*Second*, this Court has already determined that it has personal jurisdiction over Heath in the related *Lively* litigation, which involves the same course of conduct and many of the same parties. *Lively v. Wayfarer Studios LLC*, No. 24-cv-10049 (S.D.N.Y.), ECF No. 715 at 7-18; ECF No. 912. Moreover, Heath was acting as Wayfarer's CEO (which is already a party to this action) when he intentionally recorded a conversation with Jones concerning New York business—specifically, matters relating to Jonesworks' representation of Wayfarer and the film's premiere.

---

[10] This evidence of Nathan's animus and "spite" for the Jones Parties easily distinguishes *RBG Mgmt. Corp. v. Vill. Super Mkt.*, 692 F. Supp. 3d 135, 150 (S.D.N.Y. 2023) ("without more specific allegations demonstrating an intent to harm Morton Williams out of spite or through wrongful means, does not permit the Court to infer it acted solely to inflict intentional harm"). Opp. at 18.

9

ECF No. 193-1 ¶ 137. And the effects of Heath's conduct were felt in New York, where Jonesworks is headquartered and where Jones conducted her business.

*Third*, Illinois law applies because Heath has admitted he was in Illinois when he made the recording, and Illinois has a legitimate interest in regulating conduct that occurs within its borders. The cases cited by the Wayfarer Parties do not foreclose application of Illinois law under these circumstances, and the Jones Parties have alleged sufficient facts to support the choice of Illinois law. ECF No. 195-1 ¶¶ 137, 221-26; 720 Ill. Comp. Stat. Ann. 5/14-2(a)(2), 5/14-6.

*Fourth*, the Wayfarer Parties' argument (at 23-25) that Jones had no reasonable expectation of privacy in the surreptitiously recorded call improperly relies on facts outside the pleadings. The Amended Complaint alleges the recorded call was a private telephone conversation between Heath and Jones, ECF No. 195-1 ¶ 222, which the Court must accept as true. *Mills v. Polar Mol.*, 12 F.3d 1170, 1174 (2d Cir. 1993); *Oguejiofo v. Open Text*, 2010 WL 1904022, at *3 (S.D.N.Y. May 10, 2010). The Wayfarer Parties' speculation about others overhearing the conversation or later discussions does not eliminate Jones's reasonable expectation of privacy at the time of the call. 720 ILCS § 5/14-1(d).

*Fifth*, the Wayfarer Parties' argument (at 25) that the Jones Parties fail to plead actual damages ignores the allegations that Heath made an illegal recording of a sensitive, privileged conversation and then weaponized it in litigation against them, as part of the broader conspiracy of misconduct by Abel, Heath, and others directed at the Jones Parties. ECF No. 195-1 ¶¶ 224-26. The improper recording and use of that recording constitutes concrete harm for which damages are recoverable under Illinois law and intertwines with the harm Defendants caused that will be proven at trial. At the motion to amend stage, these allegations are sufficient.

10

## **CONCLUSION**

For all these reasons, the Court should grant the Motion for Leave to Amend.

DATED: January 22, 2026                     QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                             By: *Kristin N. Tahler*
                                             _____
                                                  Kristin N. Tahler
                                                  865 S. Figueroa Street, 10th Floor
                                                  Los Angeles, California 90017
                                                  (213) 443-3000
                                                  kristintahler@quinnemanuel.com

                                                  Maaren A. Shah
                                                  Morgan L. Anastasio
                                                  295 5th Avenue
                                                  New York, New York 10016
                                                  (212) 849-7000
                                                  maarenshah@quinnemanuel.com
                                                  morgananastasio@quinnemanuel.com

                                                  Nicholas Inns (pro hac vice)
                                                  1300 I Street NW
                                                  Suite 900
                                                  Washington, D.C. 20005
                                                  (202) 538-8000
                                                  nicholasinns@quinnemanuel.com

                                                  *Attorneys for Plaintiffs Stephanie Jones and Jonesworks LLC*