```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/26/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                              :

STEPHANIE JONES, et al.,              :
                              :

              Plaintiffs,     :

                              :         25-cv-779 (LJL)

    -v-                  :

                              :     OPINION AND ORDER

JENNIFER ABEL, et al.,         :

              Defendants.   :
                              :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Stephanie Jones ("Jones") and Jonesworks LLC ("Jonesworks" and with Jones, "Plaintiffs" or the "Jones Parties") move, pursuant to Federal Rules of Civil Procedure 15 and 16, to amend their complaint. Dkt. No. 191. For the reasons that follow, the motion is denied.

## BACKGROUND

### I.    The Complaint

Jonesworks is a Delaware limited liability company that is engaged in the business of public relations. Dkt. No. 1-1 ¶ 17. Jones is its founder, owner and CEO. *Id.* ¶¶ 18, 27. Jennifer Abel ("Abel") is a former employee of Jonesworks. *Id.* ¶ 19. Jonesworks terminated her employment in August 2024, after which she established a competing public relations agency, RWA Communications, of which she is the founder and CEO. *Id.* ¶¶ 19, 95. Melissa Nathan ("Nathan") is a long-time crisis manager who has previously worked at several public relations firms, *id.* ¶ 42; she is the founder of The Agency Group PR LLC ("TAG") which offers crisis management services to celebrities and other high-profile individuals and companies, *id.* ¶¶ 20, 45. Justin Baldoni ("Baldoni") is a professional actor and director and the co-founder of Wayfarer Studios LLC ("Wayfarer"); he was also the director, co-star, and producer of the film

It Ends With Us which was released in August 2024.  *Id.* ¶¶ 21, 29.  Wayfarer is an independent entertainment production studio which develops, produces, and finances feature films and other original media content.  *Id.* ¶ 22.

The complaint alleges that, while she was an employee of Jonesworks, Abel joined with Nathan to launch a smear campaign to plant negative stories about Baldoni's co-star in the film, Blake Lively ("Lively") in press outlets including the Daily Mail and the New York Post's Page Six and to create negative content about Lively on social media platforms, such as Reddit and TikTok.  *Id.* ¶ 57.  The complaint also alleges that Abel and Nathan engaged in a campaign to attack and disparage Jones, using many of the same tactics they were using against Lively, in order to eliminate Jones as a competitor and to siphon away her clients for themselves.  *Id.* ¶ 61.  Among other things, the complaint alleges that Abel and Nathan contrived to have the Business Insider publish a hostile article about Jones which was intended to have Jonesworks clients, including Baldoni and Wayfarer, end their relationship with Jonesworks.  *Id.* ¶ 76.  The article published by Business Insider on August 15, 2024, was highly critical of Jones and referenced and amplified an anonymous disparaging website, "stephaniejonesleaks.com" which had recently been posted online.  *Id.* ¶ 88.  Abel and Nathan worked in concert with persons identified in the complaint only as "John Does 1–10," to publish that website and a second defamatory website posted in September 2024 named www.stephaniejoneslies.com.  *Id.* ¶ 92.

The complaint asserts eight causes of action.  The first cause of action asserts that Abel breached her employment agreement with Jonesworks, *id.* ¶¶ 107–12, and the second cause of action asserts that Nathan, Baldoni, and Wayfarer tortiously interfered with Jonesworks' employment agreement with Abel, *id.* ¶¶ 113–21.  The third cause of action alleges that Wayfarer and Baldoni breached the public relations agreement that they had with Jonesworks

(the "Wayfarer Agreement"), *id.* ¶¶ 122–30, and the fourth cause of action alleges that Abel and Nathan tortiously interfered with the Wayfarer Agreement, *id.* ¶¶ 131–37.  The fifth cause of action asserts that Abel was a faithless servant of Jonesworks, *id.* ¶¶ 138–43, and the sixth cause of action alleges that Abel breached her fiduciary duties to Jonesworks, *id.* ¶¶ 144–47.  The seventh cause of action is for defamation against Abel; it alleges that Abel made defamatory statements about Jones to certain third parties, including participants in the public relations industry, between September and December 2024.  *Id.* ¶¶ 148–55.  Finally, the eighth cause of action alleges that the John Doe defendants created and published the two false and defamatory websites about the Jones Parties (www.stephaniejonesleaks.com and www.stephaniejoneslies.com) (the "Jones Websites") as well as more than a dozen follow-on disparaging social media accounts.  *Id.* ¶¶ 156–66.

## II.    The Proposed Amended Complaint

The proposed amended complaint adds a new cause of action against Nathan for tortious interference with prospective business relations in connection with the August 15, 2024 Business Insider article and the Jones Websites, Dkt. No, 195-1 ¶¶ 185–91, and adds Nathan to what had previously been the eighth cause of action for defamation in connection with the Websites, id. ¶¶ 210–20.  It also names Jamey Heath ("Heath"), the CEO of Wayfarer, as a new defendant, in a cause of action alleging violation of Illinois consolidated Statutes Chapter 720 §§ 5/14-2 and 5/14-6, which prohibit eavesdropping.  *Id.* ¶¶ 221–26.  The Jones Parties allege that on or about August 8, 2024, Heath secretly recorded a telephone call that he had with Jones.  Dkt. No. ¶ 137.  At the time, Heath was in Chicago, Illinois.  ¶¶ 137, 223.  The Jones Parties allege that Abel surreptitiously participated in the phone call and fed statements to Heath which he then repeated to Jones.  ¶ 137.

## PROCEDURAL HISTORY

Plaintiff filed the summons and complaint in this action in New York State Supreme Court, New York County, on December 24, 2024.  Dkt. Nos. 1, 1-1.  On January 27, 2025, Defendants removed the case to this Court, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  Defendants answered the complaint on March 20, 2025.  Dkt. Nos. 37–39.  The Wayfarer Studios and Abel each filed amended answers and counterclaims on April 24, 2025.  Dkt. Nos. 50–51.  The Court held a post-discovery conference on December 9, 2025.  Dkt. No. 197.

Plaintiffs filed this motion to amend on December 8, 2025.  Dkt No. 191.  Plaintiffs also filed a memorandum of law in support of the motion and the declaration of Kristin Tahler.  Dkt. Nos. 192–93.  Defendants filed a memorandum of law in opposition to the motion and the declaration of Kevin Fritz in opposition on January 8, 2026.  Dkt. Nos. 216–19.  On January 22, 2016, Plaintiff filed a reply memorandum of law and the declaration of Kristin N. Tahler in further support of their motion to amend.  Dkt. Nos. 223–26.

## LEGAL STANDARD

As a general matter, under Rule 15(a), "[l]eave to amend a complaint [is to] be freely given when justice so requires." *Dougherty v. Town of N. Hempsted Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002) (citing Fed. R. Civ. P. 15(a)).  The court may deny such a motion only on grounds of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).  "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

"If the [proposed] amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party 'at any time, on just terms,' also comes into play."

4

*Molo Design, Ltd. v. Chanel, Inc.*, 2024 WL 2982924, at \*3 (S.D.N.Y. June 12, 2024) (quoting

*Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012)).

Under Rule 21, a court may allow a party to be added or removed "at any time, on just terms."

Fed. R. Civ. P. 21. "In deciding whether to permit joinder, courts apply the same standard of

liberality afforded to motions to amend pleadings under Rule 15." *N.Y. Wheel Owner LLC v.*

*Mammoet Holding B.V.*, 2020 WL 4926379, at \*21 (S.D.N.Y. Aug. 21, 2020) (quoting

*Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 412 (S.D.N.Y. 2008)).

"The generous approach that courts take to Rule 15 and Rule 21 motions does not extend

to motions filed after a previously ordered deadline has run. Parties structure their approach to

litigation based on case management plans and are entitled to rely upon them being enforced

absent some good reason why they should not be." *Cheng v. Via Quadronno LLC*, 2022 WL

1210839, at \*2 (S.D.N.Y. Apr. 25, 2022); *see Parker v. Columbia Pictures Indus.*, 204 F.3d 326,

339–40 (2d Cir. 2000) ("By limiting the time for amendments, [Rule 16(b)] is designed to offer a

measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the

pleadings will be fixed'" (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983

amendment). "When a party files a motion to amend after the pleading deadline set forth in the

case management plan and scheduling order, Fed. R. Civ. P. 16(b) governs and the party must

establish 'good cause' to amend its pleadings." *Pristine Jewelers NY, Inc. v. Broner*, 492 F.

Supp. 3d 130, 131–32 (S.D.N.Y. 2020) (citing *Sherman v. Fivesky, LLC*, 2020 WL 5105164, at

\*1 (S.D.N.Y. Aug. 31, 2020)). "This is not a forgiving standard." *Mangahas v. Eight Oranges*

*Inc.*, 2023 WL 3170404, at \*3 (S.D.N.Y. May 1, 2023). "To show good cause, a movant must

demonstrate diligence before filing her motion, such that despite the movant's effort, the

deadline to amend the pleadings could not have been reasonably met." *Scott v. Chipotle*

5

*Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014); *see Grochowski v. Phoenic Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) ("A finding of good cause depends on the diligence of the moving party").  "[T]he good cause standard of Rule 16 is not satisfied when the proposed amendment rests on information that the party knew or should have known, in advance of the deadline." *Sherman*, 2020 WL 5105164, at *1 (quoting *DeCastro v. City of New York*, 2020 WL 4932778, at *7 (S.D.N.Y. Aug. 24, 2020)).

"The Court 'also may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [non-movants].'" *Weng v. HungryPanda US, Inc.*, 2021 WL 1750305, at *2 (S.D.N.Y. May 4, 2021) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)).  "[T]he Second Circuit has held that 'a lack of diligence is . . . reason alone to deny leave to amend.'" *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 322–23 (S.D.N.Y. 2024) (quoting *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021) (summary order)).  However, "in appropriate circumstances, a district court has discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for amendments in a Rule 16 scheduling order." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014); *accord Shi Ming Chen v. Hunan Manor Enter., Inc.*, 437 F. Supp. 3d 361, 365 (S.D.N.Y. 2020) ("we have discretion to apply the more liberal standard that applies to motions to amend under Fed. R. Civ. P. 15 rather than the more exacting standard that applies to extending a deadline set under Fed. R. Civ. P. 16"); *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003).  "Even if good cause is established . . ., a court may deny a motion to amend if the proposed amendment 'would be futile, unduly prejudicial, or otherwise improper. . . .'" *DeCastro*, 2020 WL 4932778, at *7

(quoting *Youngers v. Virtus Inv. Partners Inc.*, 2017 WL 5991800, at *6 (S.D.N.Y. Dec. 4, 2017)).

## DISCUSSION

Defendants argue that the Jones Parties have failed to satisfy the "good cause" standard for amendment under Rule 16.  Dkt. Nos. 217 at 1.  They further argue that, even if the Jones Parties had good cause for their untimely amendment, the motion should be denied because they would suffer prejudice by having to reopen discovery, and because amendment would be futile.  *Id.* at 2.  Defendants argue that the Jones Parties' defamation claim is untimely and their tortious interference claim is duplicative of its defamation claim and fails for other reasons.  *Id.* at 2, 12–14, 15–16.  They assert that the Court does not have subject matter or personal jurisdiction with respect to the claim against Heath which they also argue fails on its merits.  *Id.* at 2, 19–25.

The Jones Parties have failed to show good cause for their late motion to add the defamation and tortious interference claims.  Instead, the late addition of those claims is the product of undue delay and a lack of diligence.  Such an addition would also cause undue prejudice to Defendants and the defamation claim in particular is futile.  The Jones Parties have good cause for the late motion to add the claim against Heath but that claim is futile because the Court lacks personal and subject matter jurisdiction, and because the Jones Parties do not allege damages.  Accordingly, the motion to amend is denied.

## I.    The Jones Parties Have No Good Cause for the Late Amendment of the Defamation Claim and the Addition of the Tortious Interference Claim

Defendants argue that Plaintiffs have not shown good cause for their failure to amend to add the tortious interference claim and defamation claim against Nathan within the time period permitted by the Court's case management plan.  The Jones Parties filed this action on December 24, 2024, and the Court's initial Case Management Plan and Scheduling Order was entered in

this case on February 3, 2025, the same day the Court entered a Case Management Plan and Scheduling Order in the related case, *Lively v. Wayfarer Studios, LLC, et al.*, Case No. 24-cv-10049 (S.D.N.Y. filed Dec. 31, 2024).  Dkt. No. 21.  The Court established an April 18, 2025 deadline to file a motion to amend or to join additional parties.  Dkt. No. 21 at 1.  Yet, the Jones Parties did not move to amend until December 8, 2025.  Dkt. No. 191.  Defendants argue that the Jones Parties knew of the facts underlying their proposed defamation and tortious interference with prospective business relations claim from the inception of this case, Dkt. No. 217 at 1, 6, but inexcusably delayed seeking leave to amend.  The Court agrees.

The original complaint alleged that "Abel and Nathan contrived to have the Business Insider publish a hostile article about Jones which was intended to have Jonesworks clients, including Baldoni and Wayfarer, end their relationship with Jonesworks."  Dkt. No. 1-1 ¶ 76.  It also alleged that Abel and Nathan worked in concert with persons identified in the complaint only as "John Does 1-10," to publish the website www.stephaniejonesleaks.com and a second defamatory website posted in September 2024 named www.stephaniejoneslies.com.  *Id.* ¶ 92. The complaint contained a claim for defamation in connection with the Jones Websites as against John Doe 1–10.  *Id.* ¶¶ 156–66.  It alleged that the John Doe defendants created and published the Websites and that they were defamatory.  *Id.*  But it did not contain a claim for defamation against Nathan on the basis of that conduct, or a tortious interference claim against Nathan based on the Business Insider article.

The Jones Parties argue that they could not have filed a motion to amend by the April 18, 2025 deadline set by the Court because documents relating to Nathan's involvement with the Business Insider article were not produced by Nathan until August 6, 2025, and evidence regarding Nathan's involvement in the Website was not known to the Jones Parties until the

deposition of a former employee of Jonesworks and Nathan on September 5, 2025. Dkt. No. 194 at 5. But the Jones Parties have not demonstrated that they exercised any diligence prior to the April 18, 2025 deadline to identify the John Doe defendants or to substantiate their allegation that Nathan contrived to have the Business Insider article published. The Court entered the initial Case Management Plan and Scheduling Order in this case on February 3, 2025, and as of that date the Jones Parties could have served requests for production of documents and interrogatories consistent with this Court's Local Rule 33.1. Dkt. No. 59; L. Civ. R. 33.1. The Court set a deadline for service of requests for production of documents and interrogatories of March 14, 2025. *Id.*

The Jones Parties complain that Nathan did not produce documents regarding the Business Insider article and the Website until August 2025, but the Jones Parties did not request such documents in their original request for production of documents. The Jones Parties served a request for production of documents on Nathan on March 6, 2025. Dkt. No. 193-3. That request listed 27 different categories of documents. The requests that touched on the claims contained in the proposed amendment are the following:

> 2.     All Documents and Communications pertaining to Jonesworks LLC. . .
>
> 7.     All Communications relating to any Jonesworks LLC client, including regarding actually or potentially terminating their relationship with Jonesworks LLC. . .
>
> 25.     All Communications with any reporter, journalist, correspondent, author, documentary filmmaker, or member of the press or media regarding Stephanie Jones or Jonesworks LLC.

Dkt. Nos. 193-3, 195-3. They did not include any requests for information with respect to the Business Insider article. The Jones Parties assert that Nathan "artificially" limited her productions. Dkt. No. 225 at 2. But they do not dispute that it was not until July 2025 when

9

they served a second request for production of documents that they requested documents relating to the Business Insider article and the Websites.  Dkt. Nos. 193-4, 195-4.

The Jones Parties identify no other factors that would excuse their failure to exercise diligence or to act within the deadlines set by the Court.  They concede that they "knew . . . in December 2024 that Nathan fed information to Business Insider."  Dkt. No. 225 at 1.  They do not explain why, if so, they could not have added the claim that they propose to add now charging her with defamation and tortious interference.  They knew the content of the Business Insider article and do not dispute that they would have known if it interfered with the Jones Parties' business relations.  They need not have known that she "was the ringleader and instigator" or the date on which she started to work on the Business Insider article, *see* Dkt. No. 225 at 1, to plead a claim for tortious interference.  Nor do the Jones Parties persuasively explain why, if they had enough facts to allege that Nathan worked with the John Doe Defendants to publish the Website and knew the content of the Website, they would have had to wait until July 2025 to request documents from Nathan regarding the Website or December 2025 to propose to add Nathan to the defamation claim in their complaint.

The Jones Parties argue that the Court can consider whether even an untimely amendment should be permitted in the event of a lack of prejudice, Dkt, No. 225 at 3–4, but they fail to refute Nathan's argument that she would be prejudiced by the late amendment.  It may be, as the Jones Parties argue, that they have "already completed discovery into the article and Websites," *id.* at 4, and that the Wayfarer Parties "also already deposed the Jones Parties and others . . . about the at-issue statements," *id.*, but Nathan is sued individually and at the time the depositions were taken she would have had no reason to know that the Jones Parties would seek damages from her in her personal capacity for tortious interference and defamation.   It would be

10

unfair to make her defend against the Jones Parties' arguments after all fact discovery in this case has closed.

In addition, as to the defamation claim against Nathan, the motion would be futile. The statute of limitations for defamation claims under New York law is one year. C.P.L.R. 215(3). The limitations period begins accruing when "the libelous material first was published, that is, displayed to a third party." *Tucker v. Wyckoff Heights Med. Ctr.*, 52 F. Supp. 3d 583, 596–97 (S.D.N.Y. 2014) (citation omitted). Rule 15(c)(1)(A) explains that "[a]n amendment to a pleading relates back to the original pleading when . . . the law that provides the applicable statute of limitations allowed relation back." Fed. R. Civ. P. 15(c)(1)(A). "New York law— specifically Section 1024 of the New York Civil Practice Law and Rules—governs whether [an amended pleading] relates back for the purposes of Rule 15(c)(1)(A)." *Gudanowski v. Burrell*, 2023 WL 3061935, at *3 (S.D.N.Y. Apr. 24, 2023). C.P.L.R. 1024 provides that a plaintiff "who is ignorant, in whole or in part, of the name or identity" of the person who has defamed her "may proceed against such person as an unknown party by designating so much of his name and identity as is known," and later substitute the defendant's proper name when it becomes known. However, Section 1024 of the C.P.L.R. only applies if the plaintiff has "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Hogan v. Fischer*, 738 F.3d 509, 518-19 (2d Cir. 2013) (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009)).

Courts thus have dismissed claims as untimely when there is no evidence that the plaintiff has made efforts prior to the running of the statute of limitations to identify the defendant by name. *Fahlund v. Nassau County*, 265 F. Supp. 3d 247, 258 (E.D.N.Y. July 14, 2017); *see Perez-Victorio v. City of New York*, 2022 WL 1307961, at *6 (S.D.N.Y. Apr. 14, 2022); *JCG v.*

11

*Ercole*, 2014 WL 1630815, at \*14 (S.D.N.Y. Apr. 24, 2014); *Giggetts v. Cnty. of Suffolk*, 2021 WL 12329163, at \*5 (E.D.N.Y. Mar. 31, 2021) ("Federal and New York courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe' procedure provided in CPLR § 1024"). "Due diligence in this context 'requires that a plaintiff 'show that he or she made timely efforts to identify the correct party before the statute of limitations expired.'" *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014) (quoting *Strada v. City of New York*, 2014 WL 3490306, at \*5 (E.D.N.Y. July 11, 2014)). "[C]ourts in this District typically find a lack of due diligence only where the plaintiff failed to take 'any action beyond filing his original complaint" prior to the expiration of the statute of limitations.'" *Abreu v. City of New York*, 2018 WL 3315572, at \*5 (S.D.N.Y. July 5, 2018) (quoting *Berman v. Perez*, 2018 WL 565269, at \*3 (S.D.N.Y. Jan. 24, 2018)).

The Jones Parties assert that they have exercised due diligence to discover the identity of the Doe parties as well as the origination of the Business Insider article since "the outset of this litigation" in December 2024. Dkt. No. 194 at 18. However, as indicated above, it was not until July 15, 2025 that the Jones Parties asked for documents and communications related to the Websites. Dkt. Nos. 193-4, 195-4. By that time, however, the statute of limitations for defamation had expired. The defamation claim related to the Websites as against Nathan thus would be untimely.

## II.   The Jones Parties' Claims Against Heath are Futile for Failure to Plead Personal Jurisdiction or Damages

The Jones Parties' proposed tenth cause of action alleges a violation of the Illinois eavesdropping statute, Illinois Consolidated Statutes Chapter 720 §§ 5/14-2 and 5/14-6, against Heath. Dkt. No. 195-1 ¶¶ 221–26. The Jones Parties allege that, on August 8, 2024, while Heath

was in Illinois, he recorded a private telephone conversation with Jones without informing her that he was recording the conversation or obtaining her consent. *Id.* Although the Defendants do not dispute that Heath's recording was not produced until October 5, 2025, *see* Dkt. No. 193 ¶ 20; Dkt. No. 193-18,here are numerous defects in this claim.

First, the Court does not have subject matter jurisdiction over the claim. To have subject matter jurisdiction based on diversity of citizenship, the amount-in-controversy must exceed $75,000. 28 U.S.C. § 1332. "When liability among defendants is several, a plaintiff cannot aggregate its claims against individual defendants in order to satisfy the jurisdictional amount in controversy requirement of 28 U.S.C. § 1332. It must satisfy the jurisdictional amount with respect to each defendant." *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 870, 874 (S.D.N.Y. 1995); *see Southeastern Sols. SES Inc. v. Icon Realty NY Corp.*, 2025 WL 1312938, at *1 (S.D.N.Y. May 6, 2025) ("Claims by a plaintiff against multiple defendants cannot be aggregated to meet the amount in controversy requirement of Section 1332 unless the defendants are jointly liable"); *Green v. Doukas*, 2001 WL 767069, at *2 (S.D.N.Y. June 22, 2001) ("the law is clear that plaintiff must satisfy the jurisdictional amount as against each individual defendant."). The party invoking federal jurisdiction must establish to a "reasonable probability" that the amount in controversy exceeds $75,000. *Smulley v. Safeco Ins. Co. of Ill.*, 2022 WL 16753118, at *1 (2d Cir. Nov. 8, 2022) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)). This burden is "hardly onerous," for there is "a rebuttal presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). In order to overcome this presumption, the party opposing jurisdiction must show "to a

13

legal certainty" that the amount recoverable is below the jurisdictional threshold. *Wolde-Meskel*, 166 F.3d at 63. "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Id.* (quoting *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chi.*, 93 F.3d 1064, 1070–71 (2d Cir. 1996)).

That presumption is not met with respect to the Illinois law claim. The proposed amended claim contains no allegations as to damages. Dkt. No. 195-1 ¶¶ 221–26. In its reply brief as to the present motion, the Jones Parties do not directly address Defendants' argument that there is no good faith basis on which to assert at least $75,000 in controversy. Instead, as to damages, they argue that "[t]he improper recording and use of that recording constitutes harm for which damages are recoverable under Illinois law and intertwines with the harm Defendants caused that will be proven at trial." Dkt. No. 223 at 10. "Where, as here, the complaint does not 'specify the particular amount of damages sought,' the Court looks to the facts alleged in the complaint . . . to determine whether 'it appears to a reasonable probability' that the jurisdictional amount has been reached." *Robinson v. Berkshire Life Ins. Co. of Am.*, 2019 WL 1614831, at *2 (S.D.N.Y. Apr. 16, 2019) (quoting *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)). There is nothing in the complaint to suggest a good faith basis on which to believe it is worth at least $75,000. This is confirmed too by the Jones Partis' failure to argue as much in their responsive briefing.

The only other argument the Jones Parties make to establish the Court's jurisdiction over this matter is that the Court has supplemental jurisdiction under 28 U.S.C. § 1367. Dkt. No. 225 at 9. But the Jones Parties have read that statute only in part. Section 1367(a) of Title 28 provides in part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to

14

claim in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Jones Parties fail to address or cite to the statute's important proviso. The court has supplemental jurisdiction "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute." 28 U.S.C. § 1367(a). And subsection (b) provides that "[i]n any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title [diversity jurisdiction], the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b). Section "1367(b) explicitly excludes supplemental jurisdiction over claims against defendants joined under Rule 20." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 560 (2005).

Second, the Court does not have personal jurisdiction over Heath. At the pleading stage, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). The Court indisputably does not have general jurisdiction over Heath who is alleged to reside in Los Angeles, California. Dkt. No. 195-1 ¶ 29. There is no allegation that the Jones Parties' eavesdropping claim arises out of Heath's transaction of business in New York State under C.P.L.R. 302(a)(1) or that Heath committed a tortious act within New York under C.P.L.R. 302(a)(1). Heath is alleged to have been in Illinois at the time; there is no allegation about Jones' location when the call was recorded. Dkt. No. 195-1 ¶¶ 137, 223. The Jones Parties assert that "the effects of Heath's conduct were felt in New York, where Jonesworks is

15

headquartered and where Jones conducted her business." Dkt. No. 225 at 10. But whether an injury occurred "in" New York for purposes of § 302(a)(3) generally depends on "a situs-of-injury test, which asks [courts] to locate the original event which caused the injury." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (internal quotation marks omitted). "The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Id.* (brackets and internal quotation marks omitted). There is no allegation that the situs of the injury was New York.

Ultimately, the Jones Parties rely on the fact that the Court has already held that it has personal jurisdiction over Heath in the related Lively litigation. Dkt. No. 225 at 9. Curiously, the Jones Parties cite to the Court's opinion granting the motion of the Wallace Parties to dismiss the claims against them for lack of personal jurisdiction. *See Lively v. Wayfarer*, Case No. 24-cv-10049, Dkt. No. 912 (S.D.N.Y. filed Dec. 31, 2024). The Court did not decide, because it was not asked to decide, whether it had personal jurisdiction over Heath on the claims in the Lively case. More importantly, a party can subject himself to jurisdiction in one case without subjecting himself to jurisdiction in all other cases. It is black letter law that, even within a single case, "[a] plaintiff 'must establish the court's jurisdiction with respect to each claim asserted.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)); *see DF Ventures, LLC v. Aaron & Gianna, PLC*, 2024 WL 916343, at *4 (S.D.N.Y. Mar. 4, 2024).

Third, the Jones Parties do not allege damages from Heath's alleged violation of the Illinois Eavesdropping Act. "Civil remedies under the eavesdropping statute include: (1) an injunction prohibiting further eavesdropping, (2) actual damages, and (3) punitive damages." *Campbell v. St. Jude Med., S.C., Inc.*, 2018 WL 5779482, at *10 (D. Minn. Nov. 2, 2018) (citing

720 Ill. Comp. Stat. §§ 5/14–6(a)-(c)).  Punitive damages are available only if the defendant

acted with "'malice, violence, oppression or wanton recklessness' or 'the act complained of

partakes of a criminal or wanton nature.'"  *Id.* (quoting By-*Prod Corp. v. Armen-Berry Co.*, 668

F.2d 956, 961–62 (7th Cir. 1982)).  The Jones Parties do not identify any actual damages they

suffered from the alleged eavesdropping nor do they allege facts that would establish an

entitlement to punitive damages.  They also do not seek injunctive relief.

**CONCLUSION**

The Court need not reach the other arguments raised by the parties.  The Jones Parties'

motion to amend is denied.  The Clerk of Court is respectfully directed to close Dkt. No. 191.


SO ORDERED.

Dated: March 26, 2026
       New York, New York                 _____
                                                LEWIS J. LIMAN
                                           United States District Judge