# Dkt. No. 130-2

# EXHIBIT B

Planet Depos
We Make It Happen™

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# Transcript of Blake Lively

**Date:** July 31, 2025
**Case:** Lively -v- Wayfarer Studios, LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767 | **Email:** transcripts@planetdepos.com
**www.planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x

BLAKE LIVELY,

Plaintiff,

v.

| | |
|---|---|
| WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, STEVE SAROWITZ, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, THE AGENCY GROUP PR LLC, a Delaware Limited Liability Company, JENNIFER ABEL, an individual, JED WALLACE, an individual, and STREET RELATIONS INC., a California Corporation | Civ. Action No. 1:24-cv-10049-LJL (Consolidated for pretrial purposes with 1:25-cv-00449-LJL) Rel. 1:25-cv-00779-LJL |

Defendants.

- - - - - - - - - - - - - - - x

Videotaped Deposition of BLAKE LIVELY

New York, New York

Wednesday, July 30, 2025

10:15 A.M.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Pages: 1 - 294

Reported By: Anita M. Trombetta, RMR, CRR, California CSR No. 14647

Videotaped deposition of BLAKE LIVELY, held at the offices of:

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
212.728.8000

Pursuant to notice, before Anita M. Trombetta, a Certified Shorthand Reporter in the State of California, RMR, CRR, and Notary Public in and for the State of New York.

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

ESRA A. HUDSON, ESQUIRE
STEPHANIE ROESER, ESQUIRE
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East
Century City, CA 90067
310.312.4381

-and-

MICHAEL J. GOTTLIEB, ESQUIRE
KRISTIN BENDER, ESQUIRE (Washington, D.C.)
AARON E. NATHAN, ESQUIRE (New York)
MICHAELA CONNOLLY, ESQUIRE (New York)
WILLKIE FARR & GALLAGHER LLP
2029 Century Park East
Los Angeles, CA 90067
202.303.1442

-and-

LINDSEY STRASBERG, ESQUIRE
SLOANE OFFER WEBER & DERN
10100 Santa Monica Boulevard, Suite 750
Los Angeles, CA 90067
310.248.5100

(Appearances continued on next page.)

A P P E A R A N C E S C O N T I N U E D

ON BEHALF OF WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, and JENNIFER ABEL:

BRYAN J. FREEDMAN, ESQUIRE
ELLYN GAROFALO, ESQUIRE
LINER FREEDMAN TAITELMAN COOLEY LLP
1801 Century Park West, 5th Floor
Los Angeles, CA 90067-6408
310.201.0005
-and-
SUMMER BENSON, ESQUIRE
MITCHELL SCHUSTER, ESQUIRE
KEVIN A. FRITZ, ESQUIRE
MEISTER SEELIG & FEIN PLLC
125 Park Avenue, 7th Floor
New York, NY 10017
310.201.0005

(Appearances continued on next page.)

A P P E A R A N C E S  C O N T I N U E D

ON BEHALF OF WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, and JENNIFER ABEL:

MITRA AHOURAIAN, ESQUIRE
AHOURAIAN LAW
2029 Century Park E #14
Los Angeles, CA 90067
310.376.7878

ATTORNEYS FOR STEPHANIE JONES AND JONESWORKS LLC:

MAAREN A. SHAH, ESQUIRE
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
212.849.7452

(Appearances continued on next page.)

A P P E A R A N C E S   C O N T I N U E D

ATTORNEYS FOR DEFENDANTS STREET RELATIONS, INC. and JED WALLACE:

CHARLES L. BABCOCK, ESQUIRE
JOEL GLOVER, ESQUIRE
JACKSON WALKER LLP
1401 McKinney St # 1900
Houston, TX 77010
713.752.4210

ALSO PRESENT:
JUSTIN BALDONI
STEVE SAROWITZ
MELISSA NATHAN
JENNIFER ABEL
JAMEY HEATH
ENRIQUE CASAS, Videographer

negative stories about you? 15:40:11
ATTORNEY HUDSON: Objection. 15:40:12
A Once again, I'm not Melissa Nathan, so I 15:40:14
can't speak to all that she did. 15:40:21
Q Do you know anything that she did to 15:40:24
contribute to negative stories coming out about 15:40:30
you? 15:40:32
ATTORNEY HUDSON: Objection. 15:40:33
A I have an understanding, yes. 15:40:35
Q And where is your understanding from? 15:40:39
ATTORNEY HUDSON: Well, objection to the 15:40:41
extent it calls for attorney-client privileged 15:40:43
communications, in which case I instruct you not 15:40:45
to answer. 15:40:47
A Well, there are elements that don't 15:40:50
involve privileged communications. Documents. 15:40:53
Q Which documents? 15:41:00
A Text messages, emails. 15:41:02
Q You're talking about the documents that 15:41:07
were obtained from Jennifer Abel's phone? 15:41:09
ATTORNEY HUDSON: Objection. 15:41:13
A The Jonesworks documents. 15:41:14
Q How did you obtain the Jonesworks 15:41:17
documents? 15:41:21
ATTORNEY HUDSON: Objection. 15:41:22

A Can you be more specific? 15:41:23
Q Sure. 15:41:24
Did Leslie Sloane call you and tell you that she received information from Stephanie Jones about a smear campaign or something similar to that? 15:41:25 15:41:29 15:41:38 15:41:39
A She did not. 15:41:39
Q Did you learn from Leslie Sloane that there were text messages in Jen Abel's phone? 15:41:40 15:41:46
A No. 15:41:51
Q Who did you learn that from? 15:41:52
A Ashley Avignon. 15:41:53
Q Who is that? 15:41:56
A She's a friend of mine. 15:41:58
Q And what did she tell you? 15:42:00
A She said that a woman that she knows named Stephanie Jones was trying to get in touch with me. She gave me more details. 15:42:04 15:42:13 15:42:20
Q When did she tell you that? 15:42:25
A Late August of 2024. 15:42:27
Q And did she tell you that in writing or on the telephone? 15:42:32 15:42:37
A On the phone. 15:42:38
Q And what else did she tell you? 15:42:39
A She told me that she works with a woman in 15:42:47

a -- I think she's an interior designer and -- the woman's name is Stephanie Jones -- and that she's a publicist, and that she has a phone which contains the most disturbing messages she's ever read in her 20 to 30-plus-year career, that as a mother and woman, she was sobbing reading the messages. 15:42:56 15:43:01 15:43:06 15:43:12 15:43:18 15:43:26 15:43:28

That she thought that I deserved to see what had been done to me. She said that she had reached out to my publicist, Leslie Sloane, to share the same, and was not -- and was brushed off. But she said that she felt like I should see these messages and that they were on a phone that she had ownership of because it was a company phone. 15:43:31 15:43:35 15:43:40 15:43:47 15:43:59 15:44:04 15:44:08 15:44:14

Q Stephanie -- did you speak with Stephanie Jones? 15:44:14 15:44:16

A No. This was relayed to me through Ashley. 15:44:16 15:44:20

Q And did you get a hold of those documents? 15:44:20

ATTORNEY HUDSON: Objection. 15:44:24

A Eventually, yes. 15:44:25

Q When was that? 15:44:28

A Fall of 2024. 15:44:29

Q When you say "fall," can you be more 15:44:32

specific? 15:44:34
A I don't know exactly, but I would guess 15:44:36
October. 15:44:39
Q So you got this phone call in August; is 15:44:40
that correct? 15:44:47
A Yes. 15:44:47
Q And did you -- you had no conversations 15:44:48
with Stephanie Jones? 15:44:54
A I did. 15:44:55
Q When did you talk to Stephanie Jones for 15:44:56
the first time? 15:45:00
A Likely a few days later, I would guess. 15:45:00
Somewhere within a week. 15:45:07
Q Still in August? 15:45:08
A I don't know if it was early September at 15:45:10
this point. It could still be late August, early 15:45:15
September, somewhere in there. 15:45:18
Q And was it just the two of you on the 15:45:19
phone? 15:45:22
A I believe Ashley was on the phone as well. 15:45:22
Q And what did Stephanie Jones tell you on 15:45:28
that call? 15:45:32
A She reflected more of what -- the 15:45:33
sentiment that I already shared with you, she 15:45:46
reiterated that. 15:45:49

She said that she felt like as a mother and as a woman, that I needed to see these messages. 15:45:52 15:46:02 15:46:08

She warned me about the people involved, and said that she would like to get me the documents. And I said it was really important to me to obtain them in a way that was legal and to be -- that lawyers needed to coordinate that. 15:46:11 15:46:23 15:46:34 15:46:41 15:46:51

She said she owned the phone but agreed. And she said that she would reach out to counsel. 15:46:57 15:47:04

Q Did Stephanie Jones tell you that she was -- that Wayfarer was her client? 15:47:08 15:47:16

A I don't know. I knew that they at least had been her client. 15:47:20 15:47:26

Q You -- is it correct in saying that you knew that Stephanie Jones was the PR company working for Wayfarer? 15:47:30 15:47:33 15:47:36

ATTORNEY HUDSON: Objection. 15:47:37

A I believe so. 15:47:39

Q And you ultimately got ahold of those documents, correct? 15:47:53 15:47:57

A I did. 15:48:01

Q What is Vanzam? 15:48:02

A It's a corporate entity through which we run our household or personal employees and 15:48:04 15:48:10

security. 15:48:13
Q And who assisted in helping to get those 15:48:20
documents for you? 15:48:22
ATTORNEY HUDSON: Objection. 15:48:23
A Well, my lawyers. 15:48:31
Q Anyone else? 15:48:34
A Just the people I mentioned. 15:48:35
Q And what are those documents -- you 15:48:41
actually just got them and saw them and reviewed 15:48:55
them; is that correct? 15:48:57
A Yes. 15:48:57
Q And you reviewed them in or around 15:48:58
October; is that right? 15:49:01
A Yes. 15:49:01
Q And what did those documents tell you? 15:49:02
ATTORNEY HUDSON: Objection? 15:49:04
A It's a very broad question. 15:49:11
Can you be more specific? 15:49:12
Q Sure. 15:49:13
Did anything in those documents actually 15:49:14
state that something was done to create negative 15:49:18
press about you? 15:49:21
ATTORNEY HUDSON: Objection. 15:49:23
A Yes. 15:49:23
Q What was in those documents that said 15:49:25

Docusign Envelope ID: DE7B032E-D677-411C-9805-A4E675FC823D

Deposition of Blake Lively – Errata Sheet
Date: 7/31/2025
Case: *Lively v. Wayfarer Studios, LLC, et al.*
Job No. 593044

| **Page** | **Line** | **Correction/Change** | **Reason** |
|---|---|---|---|
| 139 | 22-23 | I remember hearing that from Justin, yes. | Clarification of transcription/grammar |
| 142 | 1-2 | But I remember just wanting to disappear when that happened. | Clarification of transcription/grammar |
| 147 | 12 | Ashley Avignone | Correction of spelling error |
| 150 | 23 | What is Vanzan? | Correction of spelling error |
| 163 | 1 | and said "This is what we would need." | Correction of transcription/grammar |
| 202<br>203 | 24-25<br>2-3, 5, 12, 15 | It Ends With Us LLC | Correction of spelling error |
| 204<br>205<br>223<br>225<br>226<br>227<br>228<br>229<br>240<br>261<br>274<br>275 | 11-12<br>24<br>14<br>12, 20-21<br>1,8, 9-10, 11-12<br>10, 13-14, 15<br>4, 14-15<br>22-23<br>18-19<br>8<br>13<br>3, 9-10 | It Ends With Us | Correction of spelling error |
| 213 | 13-14 | The first marketing event for the film was one that happened without me. | Clarification of transcription/grammar |
| 216 | 11-13 | Have you ever told anyone that you were in talks with Sony about obtaining the rights to the sequel? | Correction of spelling error |
| 276 | 23 | I believe Danni Maggin. | Correction of spelling error |




9/2/2025
Date

Initials

CONFIDENTIAL

Docusign Envelope ID: DE7B032E-D677-411C-9805-A4E675FC823D

No. 593044

Re: Deposition of **Blake Lively**
Date: 7/31/2025
Case: Lively -v- Wayfarer Studios, LLC, et al.
Return to: transcripts@planetdepos.com

## ACKNOWLEDGMENT OF DEPONENT

I, Blake Lively, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me and any corrections appear on the attached Errata sheet signed by me.

9/2/2025 — DocuSigned by: 290359148C184D8...

(Date) (Signature)