# Dkt. No. 209_Part 2

# Exhibit 5
# Tahler Decl. Ex. 3
# Proposed Redactions

# EXHIBIT 3

FILED UNDER SEAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE JONES, JONESWORKS LLC,<br><br>*Plaintiffs*,<br>v.<br><br>JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, AND JOHN DOES 1-10,<br><br>*Defendants*. | Case No. 1:25-cv-00779-LJL |

**PLAINTIFFS 'FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO**

**DEFENDANT MELISSA NATHAN**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Stephanie Jones and Jonesworks LLC (collectively, "Plaintiffs") hereby request that Defendant Melissa Nathan ("Defendant") produce the Documents requested herein on or before April 7, 2025 to Quinn Emanuel Urquhart & Sullivan LPP, 295 Fifth Avenue, New York, NY 10016. The documents requested are to be produced according to the definitions and instructions herein.

**DEFINITIONS**

The following definitions shall be used in construing the meaning of these Document Requests:

1. "Action" means any and all proceedings related to the above-captioned litigation.

2. "Communication" or "Communications" shall be construed to the fullest extent permissible under the Federal Rules of Civil Procedure and shall include the recording, conveyance, or exchange of information of any kind by or with any Person for any purpose by any written, verbal, or electronic means or method, including, without limitation, any letters,

discussions, conversations, meetings, conferences, correspondence, memoranda, telephone calls or messages, voicemails, electronic mail or computer-assisted electronic messages (including but limited to e-mail, text messaging, WhatsApp messaging, Signal messaging, Telegram messaging, tweets, instant messaging, iMessage, digital calendar invites, VoIP calls, video conferencing, and post on social media platforms or blogs) or any other form of transmittal of information of any kind, whether authorized or unauthorized, and regardless of whether the foregoing was transmitted through a personal, work, or other device or channel.

3. "Complaint" refers to the complaint filed in this Action on December 24, 2024.

4. "Document" or "Documents" shall be construed to the fullest extent permissible under the Federal Rules of Civil Procedure and mean, without limitation, the original and all copies and translations of any information in any written, recorded, electronic, or graphic form including all memoranda, notes, interoffice and intra-office communications, telegrams, telecopies, letters, reports, stenographic notes, bulletins, notices, emails, text messages or other messaging-application messages, instant messages or other electronic-chat messages, telephonic or personal communications, computer models, spreadsheets, data, accounts, records, calendars, diaries, minutes, contracts or other legal papers, resolutions, written policies or procedures, insurance policies, audio records, photographs, microform, film, and any electronically stored information stored in any medium, including computer backup devices, hard drives, electronic share drives, or any other virtual or physical space.

6. "Person" or "Persons" means, without limitation, any natural Person, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, public corporation, group, organization or any other legal or commercial entity, including each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors,

employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person acting, or purporting to act, with or on behalf of any of the foregoing.

7. "Relating to," when used with respect to any subject, means and includes: analyzing, consisting, constituting, containing, comprising, commenting upon, connected with, concerning, contradicting, dealing with, describing, embodying, establishing, evidencing, identifying, listing, memorializing, pertaining to, purporting, referring to, relating to, regarding, recording, responding to, reflecting, representing, stating, substantiating, showing, supporting, or with respect to, whether in whole or in part or having any logical or factual connection whatsoever with that subject, regardless of whether the factual connection is favorable or adverse to You.

8. "You" and "Your" shall refer to Melissa Nathan and each and all of her current and former agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person acting, or purporting to act, with or on behalf of any of the foregoing.

## INSTRUCTIONS

1. You are requested to produce all non-privileged Documents and other things described below that are within Your possession, custody or control, or in the possession, custody or control of Your attorneys, directors, officers, agents, employees, representatives, associates, division affiliates, partnerships, parents, or subsidiaries, and Persons under their control.

2. Each Request herein shall be construed independently. No Request shall be construed by reference to any other Request for the purpose of limiting the scope of the answers to such Request.

3. Each Document or other thing requested shall be produced in its entirety along with all non-identical versions thereof and without abbreviation or redaction. Further, all

attachments, enclosures, cover letters, memoranda, and appendices shall also be produced. If a Document or other thing responsive to any Request cannot be produced in full, it shall be produced to the extent possible, with an explanation stating why production of the remainder is not possible. Any alteration of a responsive Document or other thing, including notes, underlining, stamps, drafts, revisions, modifications, and other versions, is a separate Document or other thing and is to be produced as a separate Document or other thing. For all Documents and other things, any family relationship should be captured and reflected in the production.

4. To the extent there is any exact duplication, these Requests do not seek Documents and other things already produced in this Action.

5. A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

6. Documents and other things not otherwise responsive to a Request shall be produced if such materials mention, discuss, refer to, or explain the materials called for by a request, or if such materials are attached to materials called for by a Request (*e.g.*, routing slips, transmittal emails, transmittal memoranda, letters, cover letters, comments, evaluations, or similar materials).

7. Each Request shall be answered on the basis of Your entire knowledge, from all sources, after a reasonable and good faith inquiry has been made and a search has been conducted.

8. The Documents sought by these Requests include those contained in the personal email accounts of Your employees, to the extent You identify and can access such accounts after performing a reasonable search.

9. Documents shall be produced in image format, with searchable text load files that

are compatible with Concordance and IPRO. The images shall be single-page, 300 DPI, Group IV .tiff images. The load file shall include for each Document, to the extent practicable, information identifying the custodian file, group shared file, or other source from which the Document was gathered. For each individual Document based on an electronic file, the load file shall, to the extent practicable, contain the corresponding text that is extracted from the electronic file, not generated as an OCR file from the .tiff image(s). In the case of e-mail, the load file shall also include, to the extent practicable, header information including: (1) the individual to whom the communication was directed ("To"); (2) the author of the e-mail communication ("From"); (3) who was copied ("cc") and/or blind copied ("bcc") on such e-mail; (4) the subject line of the email ("Re" or "Subject"); and (5) the date and time sent. For each Document, the load file shall also contain: (1) the beginning Bates number (referring to the first page of the Document); (2) the ending Bates number (referring to the last page of the Document); and in the case of e-mails with attachments, (3) the beginning attachment range number(s) and (4) the ending attachment range number(s), where the "attachment range" records the relationship of e-mails to their attachments. The attachment range should be recorded from the first page of the first Document in the attachment range to the last page of the last Document in the attachment range. In the case of Excel files, the load file should be produced in native format (including all metadata). The right to demand production of any other responsive Documents in their native format (including all metadata) is expressly reserved.

10. Electronic records and computerized information shall be produced in an intelligible format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

11. Selection of Documents from files and other sources and the numbering of such

Documents shall be performed in such a manner as to ensure that the source of each Document can be determined.

12. File folders with tabs or labels or directories of files identifying Documents shall be produced intact with such Documents.

13. Documents attached to each other shall not be separated. All Documents that respond, in whole or in part, to any portion of any Request shall be produced in their entirety, including all addenda, appendices, attachments, and enclosures.

14. If there are no Documents or other things responsive to any particular Request, Your response shall state so in writing.

15. In the event that any Document or other thing called for by these Requests is withheld on the basis of a claim of privilege or immunity, that Document or other thing is to be identified. Any purportedly privileged Document or other thing containing non-privileged material must be produced, redacting only the portion purportedly privileged. The parties shall meet and confer in good faith regarding the scope, format, and exchange of privilege logs.

16. In the event that any Document or other thing responsive to these Requests has been lost, discarded, or destroyed, that Document or other thing is to be identified by stating as completely as possible: (a) the authors or creators of the material, (b) all Persons who received copies of the material, including any indicated and blind copy recipients, (c) the present custodian of the material, (d) the date of the material, (e) the material's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard, and (f) the Persons authorizing and carrying out such destruction or discard.

17. If You have any good faith objections to any Request or any part thereof, the specific nature of the objection and whether it applies to the entire Request or to a part of the

Request shall be stated. If there is an objection to any part of a Request, then the part objected to should be identified and Documents and other things responsive to the remaining unobjectionable part should be timely produced. Further, if You object to part of a Request, You must state the basis of Your objection.

18. These Requests shall be deemed continuing Requests so as to require supplemental responses if You obtain or discover additional Documents or other things between the time of initial production and the time of the trial. Such supplemental production must be made promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary responses and production before trial, to the fullest extent provided for by CPLR 3101(h).

19. Each production shall be submitted with a transmittal letter or email that includes the case caption, production volume name, encryption method/software used, and passwords for any password-protected files.

20. The Relevant Time Period is January 1, 2024, through the present, or such other time period as may be agreed to by the parties or ordered by the Court.

## REQUESTS FOR PRODUCTION

1. All Documents and Communications relating to Jennifer Abel's employment at Jonesworks LLC, including but not limited to the terms of that employment, all contractual obligations, and the termination of that employment.

2. All Documents and Communications pertaining to Jonesworks LLC.

3. All Documents and Communications related to RWA Communications.

4. All Documents and Communications relating to any effort by You or any person acting under your direction or control to obtain the business of any current or former client of Jonesworks LLC.

5. All Documents and Communications relating to any effort by You or any person

acting under your direction or control to hire or contract with any current or former employee of Jonesworks LLC.

6. All Documents and Communications relating to any current or former client of The Agency Group PR LLC who was, at any time, a client of Jonesworks LLC.

7. All Communications relating to any Jonesworks LLC client, including regarding actually or potentially terminating their relationship with Jonesworks LLC.

8. All Communications between You and Justin Baldoni, Jamey Heath, Tera Hanks, Mitz Toskovic or any other officer, employee or agent of Wayfarer Studios LLC from April 1, 2024 to the Present.

9. All Documents and Communications relating to Justin Baldoni, including representation of him, from April 1, 2024 to the Present.

10. All Communications and Documents concerning Jonesworks LLC and Wayfarer Studios LLC and/or Mr. Baldoni, including all Communications between You, Jonesworks, Mr. Baldoni, and Wayfarer Studios LLC regarding the scope of work, payment obligations, or the termination of any contract between Jonesworks LLC and Wayfarer Studios LLC and/or Mr. Baldoni.

11. All Communications and Documents related to monies owed to Jonesworks LLC, including concerning Mr. Baldoni's and Wayfarer Studios's outstanding amounts due, regardless of whether those amounts due are or were in dispute.

12. All Documents and Communications regarding any services to be provided to Mr. Baldoni and Wayfarer Studios, including related to contracts, agreements, or understandings between You and/or The Agency Group PR LLC on the one hand and Mr. Baldoni and/or Wayfarer Studios LLC.

13. All Documents and Communications between January 1, 2022 and the Present related to any actual or potential business relationship between You and Jonesworks LLC, including but not limited to your prospective employment by or contract with Jonesworks LLC.

14. All Documents and Communications regarding RWA Communications LLC, including the formation of that company.

15. All Communications between You and Jennifer Abel relating to Jonesworks LLC or Stephanie Jones.

16. All Communications between You and Jennifer Abel relating to Wayfarer Studios LLC or Justin Baldoni.

17. All Communications between You and Jed Wallace or Street Relations LLC relating to Jonesworks LLC, Stephanie Jones, Wayfarer Studios LLC, Justin Baldoni, Blake Lively, or *It Ends With Us*.

18. All Documents relating to any work done by Jed Wallace or Street Relations LLC concerning Stephanie Jones, Jonesworks LLC, Wayfarer Studios LLC, Justin Baldoni, Blake Lively, or *It Ends With Us*, including but not limited to contracts, invoices, payment records, scope of work, work product, or reports.

19. All Communications with Scooter Braun, HYBE Entertainment, or HYBE America relating to Jonesworks LLC, Stephanie Jones, Wayfarer Studios, Justin Baldoni, or the Action.

20. All Communications with Courtney Engel.

21. All non-privileged Communications with Bryan Freedman, Miles Cooley, Theresa Troupson, Summer Benson, Jason Sunshine, any other attorney, paralegal or employee of Liner Freedman Taitelman & Cooley LLP, Mitchell Schuster, Kevin Fritz, or any other attorney, paralegal or employee of Meister Seelig & Fein PLLC.

22. All Communications with Matthew Mitchell.

23. All Communications with Katie Warren.

24. All Communications with Sara Nathan relating to Jonesworks LLC, Stephanie Jones, Wayfarer Studios, Justin Baldoni, or the Action.

25. All Communications with any reporter, journalist, correspondent, author, documentary filmmaker, or member of the press or media regarding Stephanie Jones or Jonesworks LLC.

26. All Communications with Raquel Harris, Audrey Hixon, Matthew Gibson, Ande Bowser, James Knobloch, Kaeleah Isaac, Madisyn Moore, Johnny Gines, Serena Zuniga, Jaclyn Reilly, Kirsti Yess, Josephine Sanchez, Emily Mara, or Kirby Allison.

27. All Documents and Communications, or other materials received by You in response to a subpoena issued and served by You in the above-captioned action, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

DATED: March 6, 2025
New York, New York

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By : <u>*/s/ Kristin Tahler*</u>

Kristin Tahler
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
kristintahler@quinnemanuel.com

Maaren A. Shah
295 5th Avenue
New York, New York 10016
(212) 849-7000
maarenshah@quinnemanuel.com

Nicholas Inns (*pro hac vice*)
1300 I Street NW
Suite 900
Washington, D.C. 20005
(202) 538-8000
nicholasinns@quinnemanuel.com

*Attorneys for Plaintiffs Stephanie Jones and Jonesworks, LLC*

# Exhibit 6
# Tahler Decl. Ex. 6
# Proposed Redactions

# EXHIBIT 6

FILED UNDER SEAL

## Morgan Anastasio

| | |
|---|---|
| **From:** | Jason Sunshine <jsunshine@lftcllp.com> |
| **Sent:** | Friday, July 25, 2025 7:46 PM |
| **To:** | Nicholas Inns; Danielle Lazarus; Morgan Anastasio; Maaren Shah; Kristin Tahler; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com |
| **Cc:** | Bryan Freedman; Ellyn Garofalo; Amir Kaltgrad; Kim Zeldin; Tamar Yeghiayan; Brian Turnauer; Summer Benson; Cortni Davis; Joanna Rivera; Vaneta Birtha; Christina Puello; Local MS. Counsel; Amit Shertzer; Local KAF. Counsel; mitra@ahouraianlaw.com; Theresa Troupson; Rose Khatchikian |
| **Subject:** | RE: Jones v. Abel |
| **Attachments:** | 2025.07.25 Wayfarer Parties' Amended Initial Disclosures (Jonesworks Action) (438088.6).PDF |

**[EXTERNAL EMAIL from jsunshine@lftcllp.com]**

---

Counsel:

The Wayfarer Parties' second amended initial disclosures is attached. We will serve a hit report on Monday.

As part of document collection and review, we collected documents and ESI from the following custodians/sources:

**Wayfarer Studios LLC:** Tera Hanks (email, mobile device, Google Drive) , Andrew Calof (email, Google Drive), John Logan Pierson (email, Google Drive), Mitz Toskovic (email, mobile device, Google Drive), Imene Meziane (email, Google Drive), Ashmi Dang (email, mobile device, Google Drive), Brian Singer (email, Google Drive), Jarriesse Blackmon (email, mobile device, Google Drive), Cynthia Barnes-Slater (email, Google Drive), Allison Rojas (email, Google Drive), Ahmed Musiol (email, mobile device, Google Drive), Shekinah Reese (email, mobile device, Google Drive), AJ Marbory (email, mobile device, Google Drive), Dion Suleman (email, mobile device), Justin Baldoni (email, mobile device, Google Drive, computer hard drive), Jamey Heath (email, mobile device, Google Drive, computer hard drive), and Steve Sarowitz (email, mobile device).

**Justin Baldoni:** see above

**Melissa Nathan:** email, mobile device, computer hard drive

**Jennifer Abel:** email, mobile device, computer hard drive

The search terms applied across the collected data are as follows:

| |
|---|
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND (Jen* w/3 Abel) AND (employ* OR agreement OR contract OR terimat* OR depart* OR confidentiality OR loyalty OR non-compete OR non-solicitation OR proprietary OR "business list" OR "marketing strategies" OR "financial information" OR RWA OR "The Agency Group PR LLC" OR TAG OR "Melissa Nathan" OR "Justin Baldoni" OR "Jamey Heath" OR "Tera Hanks" OR "Mitz Toskovic" OR Wayfarer OR "Scooter Braun" OR "Hybe" OR "Courtney Engel" OR "Matthew Mitchell" OR "Katie Warren" OR "Sara Nathan" OR "Raquel Harris" OR "Audrey Hixon" OR "Matthew Gibson" OR "Ande Bowser" OR "James Knobloch" OR "Kaeleah Isaac" OR "Madisyn Moore" OR "Johnny Gines" OR "Serena Zuniga" OR "Jaclyn Reilly" OR "Kirsti Yess" OR "Josephine Sanchez" OR "Emily Mara" OR "Kirby Allison") |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Lively" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Blake" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "BL" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "MN" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Melissa" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Nathan" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Wayfarer" AND (agreement OR terminat* OR payment OR "It Ends With Us" OR IEWU OR "Justin Baldoni" OR RWA OR "The Agency Group PR LLC" OR TAG OR "Melissa Nathan" OR "Jennifer Abel" OR "Jed Wallace" OR "Street Relations" OR www.stephaniejoneslies.com OR www.stephaniejonesleaks.com OR "Katie Warren" OR SEO OR "Connor Surmonte" OR "Whitney Danhauer" OR "Sara Nathan" OR "Scooter Braun" OR "Hybe" OR "Steve Sarowitz" OR "Courtney Engel" OR "Raquel Harris" OR "Audrey Hixon" OR "Matthew Gibson" OR "Ande Bowser" OR "James Knobloch" OR "Kaeleah Isaac" OR "Madisyn Moore" OR "Johnny Gines" OR "Serena Zuniga" OR "Jaclyn Reilly" OR "Kirsti Yess" OR "Josephine Sanchez" OR "Emily Mara" OR "Kirby Allison") |

| |
|---|
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Baldoni" AND (agreement OR terminat* OR payment OR "It Ends With Us" OR IEWU OR "Justin Baldoni" OR RWA OR "The Agency Group PR LLC" OR TAG OR "Melissa Nathan" OR "Jennifer Abel" OR "Jed Wallace" OR "Street Relations" OR www.stephaniejoneslies.com OR www.stephaniejonesleaks.com OR "Katie Warren" OR SEO OR "Connor Surmonte" OR "Whitney Danhauer" OR "Sara Nathan" OR "Scooter Braun" OR "Hybe" OR "Steve Sarowitz" OR "Raquel Harris" OR "Audrey Hixon" OR "Matthew Gibson" OR "Ande Bowser" OR "James Knobloch" OR "Kaeleah Isaac" OR "Madisyn Moore" OR "Johnny Gines" OR "Serena Zuniga" OR "Jaclyn Reilly" OR "Kirsti Yess" OR "Josephine Sanchez" OR "Emily Mara" OR "Kirby Allison") |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "IEWU" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "It Ends With Us" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND (Justin w/3 Baldoni) AND (agreement OR terminat* OR payment OR "It Ends With Us" OR IEWU OR "Justin Baldoni" OR RWA OR "The Agency Group PR LLC" OR TAG OR "Melissa Nathan" OR "Jennifer Abel" OR "Jed Wallace" OR "Street Relations" OR www.stephaniejoneslies.com OR www.stephaniejonesleaks.com OR "Katie Warren" OR SEO OR "Connor Surmonte" OR "Whitney Danhauer" OR "Sara Nathan" OR "Scooter Braun" OR "Hybe" OR "Steve Sarowitz" OR "Raquel Harris" OR "Audrey Hixon" OR "Matthew Gibson" OR "Ande Bowser" OR "James Knobloch" OR "Kaeleah Isaac" OR "Madisyn Moore" OR "Johnny Gines" OR "Serena Zuniga" OR "Jaclyn Reilly" OR "Kirsti Yess" OR "Josephine Sanchez" OR "Emily Mara" OR "Kirby Allison") |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "premiere" AND ("It Ends With Us" OR IEWU) |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Daily Mail" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Sloane" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Leslie" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Reynolds" |
| ("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND "Ryan" |

("Jonesworks" OR (Stephanie w/3 Jones) OR "JW") AND ("RWA" OR "departure" OR "last day" OR "separation" OR "resign*" OR "termin*")

Thanks,
Jason

Jason H. Sunshine, Esq.
LINER FREEDMAN TAITELMAN + COOLEY LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Tel: (310) 201-0005
Direct: (310) 201-4285
Cell: [redacted]

Fax: (310) 201-0045
Web: www.lftcllp.com

*Please note that LFTC's domain name has changed from ftllp.com to lftcllp.com. Emails sent from this domain are not spam.*

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and, as such, is privileged and confidential. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

---

**From:** Nicholas Inns <nicholasinns@quinnemanuel.com>
**Sent:** Friday, July 25, 2025 3:15 PM
**To:** Jason Sunshine <jsunshine@lftcllp.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>; Morgan Anastasio <morgananastasio@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com
**Cc:** Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com; Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>
**Subject:** RE: Jones v. Abel

Jason,

Thank you for your phone call with Dani. As discussed, we will exchange hit reports on Monday and search terms/custodial sources today. Below are the search terms and custodial sources employed in the course of generating our production, including indicating where we manually reviewed:

We performed manual reviews of the following:

1. Jennifer Abel's emails in July and August 2024 without respect to sender/recipient
2. Jennifer Abel's text messages in July and August 2024 without respect to sender/recipient
3. Jennifer Abel's text messages throughout the entire relevant time period with the following counterparties (to the extent responsive messages existed; a name listed below does not mean that responsive text messages with that counterparty exist or that they even exist in the first place):
    1. Stephanie Jones
    2. Justin Baldoni
    3. Melissa Nathan
    4. Katie Case
    5. Matthew Mitchell
    6. Jamey Heath
    7. Tera Hanks
    8. Josh Greenstein
    9. Sara Nathan
    10. Breanna Koslow
4. Gordon Duren's text messages throughout the entire relevant time period with the following counterparties (to the extent responsive messages existed; a name listed below does not mean that responsive text messages with that counterparty exist or that they even exist in the first place):
    1. Stephanie Jones
    2. Justin Baldoni
    3. Melissa Nathan
    4. Katie Case
    5. Matthew Mitchell

    6. Jamey Heath
    7. Jennifer Abel
    8. Breanna Koslow
5. Stephanie Jones's text messages throughout the entire relevant time period with the following counterparties (to the extent responsive messages existed; a name listed below does not mean that responsive text messages with that counterparty exist or that they even exist in the first place):
    1. Justin Baldoni
    2. Jamey Heath
    3. Tera Hanks
    4. Milicia Toskovic
    5. Jennifer Abel
    6. Melissa Nathan
    7. Leslie Sloane
    8. Blake Lively
    9. Katie Case
    10. Breanna Koslow
    11. Megan Twohey
    12. Danny/Daniel Greenberg
    13. Josh Greenstein
    14. James Vituscka
6. Henry Hargitai's text messages throughout the relevant time period
7. Matt Gibson's text messages throughout the relevant time period
8. Nicholas Inns's emails from August 2024 through the end of the relevant time period (responsive to RFP 131)
9. Kristin Tahler's emails from August 2024 through the end of the relevant time period (responsive to RFP 131)

We used the following search terms to target Ms. Jones's and Mr. Duren's texts with persons who are NOT the above:

1. Baldoni
2. Justin
3. JB
4. Lively
5. Blake
6. BL
7. "It Ends With Us"
8. IEWU
9. Sarowitz
10. Heath
11. Jamey
12. Nathan
13. Melissa
14. Wallace
15. Jed
16. "Street Relations"
17. TAG
18. Wayfarer
19. Leslie
20. Sloane
21. Sony
22. "Daily Mail"
23. "New York Times"

24. NYT
25. Jen*
26. "Vision PR"
27. Whitesell
28. Greenberg
29. Emanuel
30. Zavala
31. WME
32. Gianetti
33. Greenstein
34. Twohey
35. McIntire
36. Tate
37. Vituscka
38. Edgeworth

We applied the below search terms to the emails of Matthew Mitchell, Ande Bowser, Stephanie Jones, Henry Hargitai, Matt Gibson, Gordon Duren, James Knobloch, and Jen Abel (outside of July and August 2024):

1. Baldoni
2. Justin
3. JB
4. Lively
5. Blake
6. BL
7. "It Ends With Us"
8. IEWU
9. Sarowitz
10. Heath
11. Jamey
12. Nathan
13. Wallace
14. "Street Relations"
15. To or from domain @tagpr.com
16. To or from domain @streetrelations.com
17. To or from domain @wayfarerstudios.com

Custodial sources:
Stephanie Jones mobile device
Gordon Duren mobile device
Henry Hargitai mobile device
Jennifer Abel mobile device
Stephanie Jones Jonesworks emails
Gordon Duren Jonesworks email
Jennifer Abel Jonesworks email
Henry Hargitai Jonesworks email
Matthew Mitchell Jonesworks email
Matthew Gibson Jonesworks email
James Knobloch Jonesworks email
Ande Bowser Jonesworks email
Nicholas Inns Quinn Emanuel email
Kristin Tahler Quinn Emanuel email
Jonesworks systems

Best,
Nick

---

**From:** Jason Sunshine <jsunshine@lftcllp.com>
**Sent:** Friday, July 25, 2025 12:22 PM
**To:** Danielle Lazarus <daniellelazarus@quinnemanuel.com>; Morgan Anastasio <morgananastasio@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com
**Cc:** Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com; Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>
**Subject:** RE: Jones v. Abel

**[EXTERNAL EMAIL from jsunshine@lftcllp.com]**

---

Danielle,

We are on board with your proposal and will plan for an exchange by end of day. As for the supplemental interrogatory responses, we intend to serve on Monday.

Thanks,
Jason


Jason H. Sunshine, Esq.
LINER FREEDMAN TAITELMAN + COOLEY LLP
1801 Century Park West, 5th Floor
Los Angeles, California  90067
Tel: (310) 201-0005
Direct: (310) 201-4285
Cell: [redacted]
Fax: (310) 201-0045
Web: www.lftcllp.com


*Please note that LFTC's domain name has changed from ftllp.com to lftcllp.com. Emails sent from this domain are not spam.*


The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and, as such, is privileged and confidential. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.


---

**From:** Danielle Lazarus <daniellelazarus@quinnemanuel.com>
**Sent:** Thursday, July 24, 2025 3:22 PM
**To:** Jason Sunshine <jsunshine@lftcllp.com>; Morgan Anastasio <morgananastasio@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com
**Cc:** Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad

<akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com; Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>
**Subject:** RE: Jones v. Abel

Jason,

We agree to a mutual exchange of search terms and custodial sources as long as it also includes a hit report for the search terms used. Let us know.

Also, please confirm when you will provide your amended/supplemental interrogatory responses. Thank you.

Best,
Danielle

**Danielle Lazarus**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP

295 Fifth Avenue
New York, NY 10016
212-849-7464 Direct
212-849-7000 Main Office Number
212-849-7100 Fax
daniellelazarus@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Jason Sunshine <jsunshine@lftcllp.com>
**Sent:** Wednesday, July 23, 2025 9:05 PM
**To:** Morgan Anastasio <morgananastasio@quinnemanuel.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com
**Cc:** Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com; Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>
**Subject:** RE: Jones v. Abel

**[EXTERNAL EMAIL from jsunshine@lftcllp.com]**

---

Counsel:

Attached please find Wayfarer Studios LLC's and Jennifer Abel's Amended Initial Disclosures. As per yesterday's email, we are prepared to provide you with a list of custodians and the sources of collection as to each as well as the search terms applied across the collected documents and ESI. However, we would like the exchange to be mutual. Please confirm your agreement. We are ready when you are. As for the documents listed in Appendix A, your understanding is correct.

Thanks,

Jason

Jason H. Sunshine, Esq.
LINER FREEDMAN TAITELMAN + COOLEY LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Tel: (310) 201-0005
Direct: (310) 201-4285
Cell: [redacted]
Fax: (310) 201-0045
Web: www.lftcllp.com

*Please note that LFTC's domain name has changed from ftllp.com to lftcllp.com. Emails sent from this domain are not spam.*

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and, as such, is privileged and confidential. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

---

**From:** Morgan Anastasio <morgananastasio@quinnemanuel.com>
**Sent:** Wednesday, July 23, 2025 12:45 PM
**To:** Jason Sunshine <jsunshine@lftcllp.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com
**Cc:** Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com; Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>
**Subject:** RE: Jones v. Abel

Thanks, Jason. We agree with a Monday exchange.

---

**From:** Jason Sunshine <jsunshine@lftcllp.com>
**Sent:** Wednesday, July 23, 2025 3:26 PM
**To:** Morgan Anastasio <morgananastasio@quinnemanuel.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com
**Cc:** Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com; Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>
**Subject:** RE: Jones v. Abel

**[EXTERNAL EMAIL from jsunshine@lftcllp.com]**

---

Confirming receipt of this. Regarding the privilege log, we will be prepared for the exchange on Monday. Can you confirm your agreement to that date?

Jason H. Sunshine, Esq.
LINER FREEDMAN TAITELMAN + COOLEY LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Tel: (310) 201-0005
Direct: (310) 201-4285
Cell: [redacted]
Fax: (310) 201-0045
Web: www.lftcllp.com

*Please note that LFTC's domain name has changed from ftllp.com to lftcllp.com. Emails sent from this domain are not spam.*

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and, as such, is privileged and confidential. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

---

**From:** Morgan Anastasio <morgananastasio@quinnemanuel.com>
**Sent:** Wednesday, July 23, 2025 9:01 AM
**To:** Jason Sunshine <jsunshine@lftcllp.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com
**Cc:** Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com; Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>
**Subject:** RE: Jones v. Abel

Jason,

Thank you for your email. First, we agree with your narrowing only those interrogatories seeking the identities of everyone "with knowledge" of certain things to mean individuals with whom the responding party communicated with directly or who otherwise participated in the given occurrence. Please provide updated interrogatory responses for every interrogatory you previously served only objections by Monday, June 28, at the latest, in light of the August 1 motion to compel deadline.

Second, we disagree with your description of the June 13 and June 18 meet and confers. After you raised search terms for the first time two weeks before the substantial completion deadline, we mutually agreed to re-visit search terms in the event one of our productions was deficient. For all the reasons in our July 18 letter, your production is deficient, and search terms are thus appropriately raised now. That said, and while reserving our right to later request you run our proposed search terms, we will agree to receive the search terms you ran, as long as you also provide (i) the total hit report for those search terms as well as (ii) the additional information requested in our letter, including (a) your custodians; (b) the repositories searched for each such custodian; and (c) the total numbers of documents collected from each custodian. Moreover, as requested in the letter, please identify any request for production for which a party does not have responsive documents. Please provide this information, as requested in our letter, by end of the day today.

Finally, thank you for the information regarding the documents in Appendix A to our letter. We understand from your response that for each document with an "Document Could Not Be Imaged" slip sheet, you are unable to image or provide the native file for those documents. Please confirm our understanding.

Thank you,
Morgan

---

**From:** Jason Sunshine <jsunshine@lftcllp.com>
**Sent:** Tuesday, July 22, 2025 10:56 PM
**To:** Morgan Anastasio <morgananastasio@quinnemanuel.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>; Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com
**Cc:** Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com; Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>
**Subject:** RE: Jones v. Abel

**[EXTERNAL EMAIL from jsunshine@lftcllp.com]**

---

Counsel:

I am following up on our earlier meet and confer. We are prepared to supplement our clients' responses to all of the remaining interrogatories (which is to say, the ones to which we had previously served only objections). A necessary caveat is that we will construe those interrogatories seeking the identities of everyone "with knowledge" of certain things to mean individuals with whom the responding party communicated with directly or who otherwise participated in the given occurrence. That is because these are the subject of highly publicized litigation and extensive media coverage such that furnishing the entire universe of people "with knowledge" of such things is simply unrealistic. As for your request that we run new search terms and provide you with a hit list, we respectfully decline. When we first met and conferred on June 13 (and then again on June 18), we proposed exchanging search terms, but you did not believe it to be necessary at the time. Accordingly, we prepared our own (reasonable) search terms and produced documents pursuant thereto. While we are prepared to share them with you as a compromise, we will not agree to run an entirely new set with three days remaining before the completion of our production. That is especially true given the overbreadth apparent on the face of your proposed terms (e.g., "movie"). Not only is the request neither feasible nor reasonable, it is also not necessary, as our existing search terms captured tens of thousands of documents and, once our production is complete, will have resulted in a complete and fulsome satisfaction of our clients' discovery obligations.

Regarding the documents cited in your Appendix A, the majority originate from custodians' mobile devices and reflect inherent technical limitations. Most are message attachments, including a significant number of "pluginPayloadAttachments," which are placeholder files automatically inserted by Apple when a message contains a link. If the linked content was stored locally on the device, we were able to collect and produce it. If not, only the placeholder, which is essentially an empty file with no text or native content, was available and produced. Other mobile-related documents involve files that could not be imaged or reviewed due to corruption or unsupported formats, such as empty Apple system files (for example, plist files). The remaining documents come from non-mobile sources and primarily consist of corrupt native files that could not be opened, imaged, or text-extracted.

**Thanks,**

Jason

Jason H. Sunshine, Esq.
LINER FREEDMAN TAITELMAN + COOLEY LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Tel: (310) 201-0005
Direct: (310) 201-4285
Cell: [redacted]
Fax: (310) 201-0045
Web: www.lftcllp.com

*Please note that LFTC's domain name has changed from ftllp.com to lftcllp.com. Emails sent from this domain are not spam.*

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and, as such, is privileged and confidential. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

---

**From:** Morgan Anastasio <morgananastasio@quinnemanuel.com>
**Sent:** Monday, July 21, 2025 3:16 PM
**To:** Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com; Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Jason Sunshine <jsunshine@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com
**Cc:** Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>
**Subject:** RE: Jones v. Abel

Thank you, we will send a zoom for that time.

---

**From:** Theresa Troupson <ttroupson@lftcllp.com>
**Sent:** Monday, July 21, 2025 6:16 PM
**To:** Morgan Anastasio <morgananastasio@quinnemanuel.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com; Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Jason Sunshine <jsunshine@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com
**Cc:** Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>
**Subject:** RE: Jones v. Abel

**[EXTERNAL EMAIL from ttroupson@lftcllp.com]**

---

Apologies for the confusion. I meant that we are available 10:30 am pt/1:30 pm **et.**

Theresa M Troupson
Partner
LINER FREEDMAN TAITELMAN + COOLEY LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone: (310) 201-0005
Facsimile: (310) 201-0045
Web: www.lftcllp.com

*Please note that LFTC's domain name has changed from FTLLP.com to LFTCLLP.com. Emails sent from this domain are not spam.*

---

**From:** Morgan Anastasio <morgananastasio@quinnemanuel.com>
**Sent:** Monday, July 21, 2025 3:12 PM
**To:** Theresa Troupson <ttroupson@lftcllp.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com; Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Jason Sunshine <jsunshine@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com
**Cc:** Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>
**Subject:** RE: Jones v. Abel

Thanks Theresa. Confirming whether you mean you are available 10:30 am pt/1:30 pm **et**, or whether you are available at 10:30 am pt as well as 1:30 pm pt (4:30 pm et)?

If 1:30 pm et works for you, I'll send a zoom for that time. Thanks.

---

**From:** Theresa Troupson <ttroupson@lftcllp.com>
**Sent:** Monday, July 21, 2025 6:01 PM
**To:** Morgan Anastasio <morgananastasio@quinnemanuel.com>; Rose Khatchikian <rkhatchikian@lftcllp.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com; Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Jason Sunshine <jsunshine@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com
**Cc:** Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>
**Subject:** RE: Jones v. Abel

**[EXTERNAL EMAIL from ttroupson@lftcllp.com]**

---

Counsel,

We can be available tomorrow at 10:30 a.m. PT/1:30 p.m. PT tomorrow. Please circulate a Zoom or dial in.

Thanks,

Theresa M Troupson
Partner
LINER FREEDMAN TAITELMAN + COOLEY LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Telephone:  (310) 201-0005
Facsimile:  (310) 201-0045
Web:  [www.lftcllp.com](http://www.lftcllp.com)

*Please note that LFTC's domain name has changed from FTLLP.com to LFTCLLP.com.  Emails sent from this domain are not spam.*

---

**From:** Morgan Anastasio <morgananastasio@quinnemanuel.com>
**Sent:** Monday, July 21, 2025 12:14 PM
**To:** Rose Khatchikian <rkhatchikian@lftcllp.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com; Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Jason Sunshine <jsunshine@lftcllp.com>; Theresa Troupson <ttroupson@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com
**Cc:** Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>
**Subject:** RE: Jones v. Abel

Counsel – please let us know when you can make yourself available for a meet and confer on these issues before 3:15 pm et tomorrow, as required by the Judge's rules.

Best,
Morgan

---

**From:** Morgan Anastasio
**Sent:** Friday, July 18, 2025 3:15 PM
**To:** Rose Khatchikian <rkhatchikian@lftcllp.com>; matthew@umklaw.com; anthony@umklaw.com; jonas@umklaw.com; Bryan Freedman <bfreedman@lftcllp.com>; Ellyn Garofalo <egarofalo@lftcllp.com>; Amir Kaltgrad <akaltgrad@lftcllp.com>; Kim Zeldin <kzeldin@lftcllp.com>; Jason Sunshine <jsunshine@lftcllp.com>; Theresa Troupson <ttroupson@lftcllp.com>; Tamar Yeghiayan <tyeghiayan@lftcllp.com>; Brian Turnauer <bturnauer@lftcllp.com>; Summer Benson <sbenson@lftcllp.com>; Cortni Davis <cdavis@lftcllp.com>; Joanna Rivera <jrivera@lftcllp.com>; Vaneta Birtha <vbirtha@lftcllp.com>; Christina Puello <cpuello@lftcllp.com>; Local MS. Counsel <ms@msf-law.com>; Amit Shertzer <as@msf-law.com>; Local KAF. Counsel <kaf@msf-law.com>; mitra@ahouraianlaw.com
**Cc:** Maaren Shah <maarenshah@quinnemanuel.com>; Kristin Tahler <kristintahler@quinnemanuel.com>; Nicholas Inns <nicholasinns@quinnemanuel.com>; Danielle Lazarus <daniellelazarus@quinnemanuel.com>
**Subject:** Jones v. Abel

Counsel,

Please see the attached correspondence.

Best regards,

Morgan

**Morgan L. Anastasio**
*Associate* (she/her)
**Quinn Emanuel Urquhart & Sullivan, LLP**

295 Fifth Avenue
New York, NY 10016
212-849-7021 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
morgananastasio@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# Exhibit 7
# Tahler Decl. Ex. 11
# Proposed Redactions

# EXHIBIT 11

FILED UNDER SEAL

** C O N F I D E N T I A L **
* CONTAINS ATTORNEYS' EYES ONLY MATERIAL *
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Case No. 1:24-CV-10049-LJL
(Consolidated with 1:25-cv-00449-LJL)
-----------------------------------x
BLAKE LIVELY,
Plaintiff,
- against -
WAYFARER STUDIOS LLC, a Delaware Limited Liability Company, JUSTIN BALDONI, an individual, JAMEY HEATH, an individual, STEVE SAROWITZ, an individual, IT ENDS WITH US MOVIE LLC, a California Limited Liability Company, MELISSA NATHAN, an individual, THE AGENCY GROUP PR LLC, a Delaware Limited Liability Company, JENNIFER ABEL, an individual, JED WALLACE, an individual, and STREET RELATIONS INC., a California Corporation,
Defendants.
-----------------------------------x
(Caption continued)
September 5, 2025
9:10 a.m.

Videotaped Deposition of KATHERINE CASE, taken by Plaintiff, pursuant to Subpoena, held at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York, before Todd DeSimone, a Registered Professional Reporter and Notary Public of the State of New York.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Civ. Action No. 1:25-cv-779
-----------------------------------x
STEPHANIE JONES and JONESWORKS LLC,

Plaintiffs,

- against -

JENNIFER ABEL, MELISSA NATHAN,
JUSTIN BALDONI, WAYFARER STUDIOS LLC,
and JOHN DOES 1-10,

Defendants.

-----------------------------------x

A P P E A R A N C E S :

WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington D.C. 20006
Attorneys for Blake Lively
BY: KRISTIN BENDER, ESQ.
kbender@willkie.com
MICHAEL GOTTLIEB, ESQ (Via Zoom)
mgottlieb@willkie.com

- and -

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
BY: MELISSA TAUSTINE, ESQ.
mtaustine@willkie.com
AARON E. NATHAN, ESQ.
anathan@willkie.com

MANATT, PHELPS & PHILLIPS LLP
2049 Century Park East
Suite 1700
Los Angeles, California 90067
Attorneys for Blake Lively
BY: STEPHANIE ROESER, ESQ. (Via Zoom)
sroeser@manatt.com

A P P E A R A N C E S: (Continued)
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street
10th Floor
Los Angeles, California 90017
Attorneys for Stephanie Jones and
Jonesworks, LLC
BY: KRISTIN N. TAHLER, ESQ.
kristintahler@quinnemanuel.com

- and -

QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue
9th Floor
New York, New York 10016
BY: MORGAN ANASTASIO, ESQ.
morgananastasio@quinnemanuel.com

MEISTER SEELIG & FEIN PLLC
125 Park Avenue
7th Floor
New York, New York 10017
Attorneys for Wayfarer Studios
LLC, Justin Baldoni, Jamey
Heath, Steve Sarowitz, It Ends With
Us Movie LLC, Melissa Nathan,
Jennifer Abel, and The Agency Group
PR LLC
BY: MITCHELL SCHUSTER, ESQ.
ms@msf-law.com
KEVIN A. FRITZ, ESQ. (Via Zoom)
kf@msf-law.com

A P P E A R A N C E S: (Continued)

LINER FREEDMAN TAITELMAN + COOLEY, LLP
1801 Century Park West
5th Floor
Los Angeles, California 90067
Attorneys for Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, Jennifer Abel, and The Agency Group PR LLC
BY: BRYAN FREEDMAN, ESQ.
bfreedman@lftcllp.com
KIM S. ZELDIN, ESQ. (Via Zoom)
kzeldin@lftcllp.com
SUMMER BENSON, ESQ. (Via Zoom)
sbenson@lftcllp.com

AHOURAIAN LAW
9465 Wilshire Boulevard
Suite 300
Beverly Hills, California 90210
Attorneys for Wayfarer Studios LLC, Justin Baldoni, Jamey Heath, Steve Sarowitz, It Ends With Us Movie LLC, Melissa Nathan, Jennifer Abel, and The Agency Group PR LLC
BY: MITRA AHOURAIAN, ESQ. (Via Zoom)

JACKSON WALKER LLP
1401 McKinney Street
Suite 1900
Houston, Texas 77010
Attorneys for Jed Wallace and Street Relations Inc.
BY: TORY EMERY, ESQ.
temery@jw.com

A P P E A R A N C E S: (Continued)

PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
Attorneys for The Witness
BY: MAXWELL BREED, ESQ.
mbreed@pryorcashman.com
DANIEL POHLMAN, ESQ.
dpohlman@pryorcashman.com

ALSO PRESENT:

JUSTIN BALDONI (Via Zoom)

JENNIFER ABEL (Via Zoom)

JAMEY HEATH (Via Zoom)

ZACH CZERENDA, Concierge Tech (Via Zoom)

COREY WAINAINA, Videographer

K. CASE - CONFIDENTIAL

THE VIDEOGRAPHER: Good morning everyone. We are going on the record at 9:10 a.m. on Friday, September 5th, 2025. Please note that the microphones are sensitive and may pick up whispering and private conversations.

This is media unit one of the video-recorded deposition of Katherine Case in the matter of Blake Lively versus Wayfarer Studios LLC, et al. This is filed in the United States District Court, Southern District of New York, the case number is 1:24-CV-10049-LJL.

My name is Corey Wainaina representing Veritext Legal Solutions and I am the videographer. The court reporter is Todd DeSimone also from the firm Veritext Legal Solutions. I am not authorized to administer an oath, I am not related to any party in this action, nor am I financially interested in the outcome.

Please be aware that all

K. CASE - CONFIDENTIAL
appearances and affiliations will be noted on the stenographic record, and will the court reporter please swear in the witness.
* * *
K A T H E R I N E   C A S E,
called as a witness, having been first duly sworn, was examined and testified as follows:
EXAMINATION BY MS. BENDER:
Q. Good morning, Ms. Case.
A. Good morning.
Q. Can you please state your full name and address for the record.
A. Katherine Hastings Case, [redacted].
Q. And have you ever been deposed before?
A. No.
Q. And do you understand that you are under oath during this deposition?
A. Yes.
Q. Okay. Do you understand that your testimony today carries the same

K. CASE - CONFIDENTIAL
KCASE-000003856.
You can put that document aside. You are being handed what has been marked Case Exhibit 8.
(Case Exhibit 8 marked for identification.)
MR. FREEDMAN: Did you mark this as 7?
MS. BENDER: It was marked as 7, but we are going to discuss Case Exhibit 8.
Q. Okay. This is Bates stamped KCASE-000004949, a text ranging from August 5th to August 6th, 2024.
Ms. Case, do you recognize this document?
A. I do.
Q. What is it?
A. It seems to be a text thread between myself and Melissa.
Q. Do you have any reason to think this document is not as it was when it was created?
A. No.

Q. If you turn a few pages to where the Bates stamp ends in 53. At 1:58 Melissa says to you "I have to drive to this fucking meeting. Do you think you'll have that copy for Jed today?"

Do you see that?

A. I do.

Q. Is that referring to Jed Wallace?

A. Yes.

Q. What copy were you drafting for Jed Wallace?

A. I believe this is in regards to a client.

Q. Which client?

MR. BREED: W[redacted] will designate it as attorneys' eyes only, please.

THE VIDEOGRAPHER: Okay.

Q. Which client?

A. I believe this was for Rebel Wilson.

Q. Okay. On the next page, at 4:46 p.m., Melissa says "Jed and Bryan asking me for copy lol kill me."

K. CASE - CONFIDENTIAL

Do you see that?

A. I do.

Q. Who is Bryan?

A. I believe Bryan Freedman.

Q. Bryan and Jed were working in collaboration with TAG on the Rebel Wilson account?

A. I didn't work on that account, so I'm not sure.

Q. You worked on the copy that Melissa was requesting for that account, correct?

A. This was a one-off request.

Q. So you did some work on that account, correct?

A. Specifically I assisted with this copy.

Q. And you knew that Jed and Bryan were working together asking for the copy that you were preparing for that account, correct?

MR. BREED: Objection.

MR. FREEDMAN: Objection.

A. Melissa alerted me at that

K. CASE - CONFIDENTIAL

time.

Q. You knew that both Jed and Bryan were to receive the copy, correct?

MR. BREED: Objection.

MS. EMERY: Objection.

A. I knew that Melissa needed the copy.

Q. For whom?

A. In her text message she said Jed and Bryan were looking for it.

Q. Did Mr. Freedman work with TAG and Jed on the Wayfarer account?

A. Not during the summer of 2024.

Q. When is your understanding that Mr. Freedman started that work?

A. It is my understanding that it was following Blake's CRD complaint, Civil Rights Department complaint in December.

Q. When TAG was looking to identify a subcontractor for digital services in connection with the Wayfarer account, did TAG receive multiple quotes for those services?

A. That was communicated to me by

K. CASE - CONFIDENTIAL

prep that they had spoken to anyone representing the Wayfarer parties prior to your preparation?

A. I can't say.

Q. Ms. Case, are you aware of various websites and social media accounts that are disparaging of Ms. Jones?

MR. BREED: Objection.

A. I am aware of websites about Ms. Jones.

Q. Did you create any of the websites that are disparaging of Ms. Jones?

A. No.

Q. Who did?

A. I don't know.

Q. How did you become aware of the websites that are disparaging of Ms. Jones?

MR. BREED: Objection.

MR. FREEDMAN: Objection.

Q. How did you become aware of the websites disparaging Ms. Jones?

A. I received a call from Melissa in early May. It was communicated to me that a website had been requested.

K. CASE - CONFIDENTIAL

Q. A website had been requested?

A. The creation of a website had been requested.

Q. By whom?

MR. FREEDMAN: Objection.

MR. BREED: Let's designate this AEO, please.

MS. TAHLER: We can go off.

THE VIDEOGRAPHER: Yeah.

A. Melissa represented to me that a potential new client had requested the formulation of a website.

Q. Who was that new client?

MR. FREEDMAN: Objection.

A. At the time it was represented to me that it was Dwayne Johnson.

Q. Melissa Nathan told you that Mr. Johnson had requested preparation of a website about Ms. Jones?

MR. FREEDMAN: Objection.

A. She represented to me that he had requested the creation of a website of this nature.

Q. Did she tell you anything else

K. CASE - CONFIDENTIAL

about what Mr. Johnson had requested?

A. Not what he had requested specifically.

Q. Generally what he had requested?

A. Not necessarily what he had requested, but specific language was communicated.

Q. What was that specific language?

A. That Stephanie holds clients hostage, that she leaks clients' secrets, and that she treats her employees poorly, amongst others.

Q. Ms. Nathan told you that Mr. Johnson had said the things that you just said to her?

A. No.

Q. Who did Ms. Nathan say said that Stephanie holds clients hostage?

MR. BREED: Objection.

A. I don't know who might have said that. This language was communicated to me.

K. CASE - CONFIDENTIAL

Q. By Ms. Nathan?

A. The conversation was with her, yes.

Q. It was a conversation?

A. Yes.

Q. Did Ms. Nathan send you any written communications about this?

A. Not about the language to be used, no.

Q. Generally about the websites?

A. At that time, no.

Q. At any time?

A. There was conversation about the copy that I had written based on the information provided, I redrafted and sent back to her.

Q. Did you draft the copy for the website about Ms. Jones?

A. Based on the conversation and the language provided to me, I provided copy.

Q. So yes, you provided -- you wrote the copy that was -- that became the website of Ms. Jones?

K. CASE - CONFIDENTIAL

MR. FREEDMAN: Objection.

A. Based on the language that I was instructed to use.

Q. Did anyone else provide you with that language besides Ms. Nathan?

MR. BREED: Objection.

A. No.

Q. And Ms. Nathan provided all of this language to you orally?

MR. FREEDMAN: Objection.

MR. BREED: Objection.

A. She provided language to reference over the phone, yes.

Q. Did she put anything in writing about the language to be used in the website?

A. No.

Q. What happened -- did she send an audio message?

MR. BREED: Objection.

A. No.

Q. What happened after you provided Ms. Nathan with the copy?

A. I don't know.

K. CASE - CONFIDENTIAL

Q. Did you come to understand that the copy that you had drafted became a website about Ms. Jones?
A. I was made aware of that, yes.
Q. Who made you aware of that?
A. Melissa.
Q. And what did Melissa tell you?
A. She sent me the link.
Q. The link to which website?
A. It might have been the leaks. I don't remember which came first.
Q. She sent it to you how?
A. In a text message.
Q. And that text message sending Stephanie Jones Leaks you recognized as the copy that you had drafted, correct?
A. That's correct.
Q. Did Mr. Johnson pay TAG to create this website?
MR. BREED: Objection.
A. I don't know.
Q. Did Mr. Johnson become a client of TAG?
A. He did not.

K. CASE - CONFIDENTIAL

Q. Do you know if Ms. Nathan had any other conversations with Mr. Johnson other than the one you have already discussed?

MR. BREED: Objection.

MR. FREEDMAN: Objection.

A. I don't know.

Q. Did Ms. Nathan report to you any other conversations with Mr. Johnson other than the one you have already discussed?

MR. FREEDMAN: Objection.

MR. BREED: Objection.

A. No.

Q. Do you recall anything else about that initial conversation with Mr. Johnson other than what you have already testified to?

MR. BREED: Objection. That wasn't the testimony.

A. It wasn't a conversation with Mr. Johnson.

Q. What was it with Mr. Johnson?

A. I never spoke to Mr. Johnson.

K. CASE - CONFIDENTIAL

Q. I had understood that Ms. Nathan had spoken with Mr. Johnson and then Ms. Nathan reported that to you.

MR. BREED: Objection, that wasn't the testimony either.

MR. FREEDMAN: Objection.

MS. TAHLER: I'm asking for clarification.

A. I am not aware of whether or not Melissa spoke with Mr. Johnson. It was communicated to me that the site was at either his or someone affiliated with him's request.

Q. Did she tell you if she ever spoke to him directly?

A. No.

Q. Did she tell you who she spoke to about this?

A. No.

(Case Exhibit 35 marked for identification.)

Q. Ms. Case, you are now reviewing a document that has been marked as Case 35. It is a printout of the website

K. CASE - CONFIDENTIAL
StephanieJonesLeaks.com.
Do you recognize this as the copy that you drafted?
A. I believe so, yes.
Q. Do you know how this went from the copy that you drafted to becoming a website?
A. I do not.
Q. Did Melissa communicate anything to you about how this became a website after you provided her with the copy?
MR. FREEDMAN: Objection.
A. No.
Q. Do you understand there came a time where this website was shut down?
MR. BREED: Objection.
A. No.
Q. Did you understand that there came a time where there was a second website?
A. At the time I wasn't aware that there was a second website, no.
Q. After you provided Ms. Nathan

K. CASE - CONFIDENTIAL

with the copy for Exhibit 35, did you have any other discussions with Ms. Nathan about websites regarding Ms. Jones?

MR. FREEDMAN: Objection.

A. Websites, plural, no. I was asked to help alongside her to draft a handful of tweets for the Twitter page, and I was asked, again, based on language that I was provided to extrapolate that into updates to the website.

Q. You referred to the Twitter page. What is the Twitter page?

A. I don't recall the specific handle. I was told that at the time the site went public there was a corresponding Twitter page.

Q. Was that Twitter handle @LyingStephJones?

MR. FREEDMAN: Objection.

A. I'm not sure. I don't recall what the Twitter page was.

Q. Melissa told you that there was a corresponding Twitter handle?

A. She asked if I could assist in

K. CASE - CONFIDENTIAL

account.

Does this refresh your recollection that this is the Twitter account that you reviewed where your tweets were posted?

A. To my recollection, I was only aware of one of them. I believe it was Not a Stephanie Fan.

Q. You are aware of the Twitter account Not a Stephanie Fan?

A. To my recollection, that looks like the one that I was aware of.

Q. Your tweets were posted to Not a Stephanie Fan?

A. I don't know.

Q. But you weren't aware of any of the other Twitter accounts in Exhibit 36?

A. No.

MR. BREED: Objection.

Q. Did Melissa create Not a Stephanie Fan?

A. I don't know.

Q. Did she explain to you that a Twitter account was being created?

K. CASE - CONFIDENTIAL

A. There was never a formal explanation. I was simply asked to draft tweets.

Q. Do you know whether Melissa had any other assistance in this?

A. I don't know.

Q. Do you know whether she worked with Jed Wallace on this?

MR. FREEDMAN: Objection.

A. I spoke with Jed in conjunction to Melissa as it related to the tweets.

Q. And what did you and Jed discuss?

MR. FREEDMAN: Objection.

MS. EMERY: Objection.

A. The tweets.

Q. What about the tweets?

A. I provided them via Signal.

Q. Was it your understanding that Jed was going to post the tweets?

MR. FREEDMAN: Objection.

MR. BREED: Objection.

MS. EMERY: Objection.

A. I don't know.

K. CASE - CONFIDENTIAL

not exactly sure what she did; is that correct?

A. That's correct.

Q. Do you have any ill will of Melissa Nathan?

A. No.

Q. Earlier you testified that the Alexander brothers were turned down by TAG as clients?

A. That's my understanding.

Q. Isn't it true that you yourself personally worked for them on the side?

A. I wouldn't qualify it as working with them.

Q. Are you saying you didn't perform any services whatsoever for the Alexander brothers?

A. It was requested that I connect with them to create a website in conjunction with their ongoing litigation.

Q. And that was not for TAG, it was outside of TAG, right?

A. I'm not sure.

Q. Well, Melissa Nathan turned

CERTIFICATION

I, TODD DeSIMONE, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 6th day of September, 2025.

TODD DESIMONE

# Exhibit 8
# Tahler Decl. Ex. 13
# Proposed Redactions

# EXHIBIT 13

FILED UNDER SEAL

## Short Message Report

| Conversations: 1 | Participants: 4 |
|---|---|
| Total Messages: 63 | Date Range: 8/5/2024 - 8/6/2024 |

### Outline of Conversations

[redacted]**/System Message chatroom** • 63 messages between 8/5/2024 - 8/6/2024 • Katherine Case ([redacted]) • Katie Case [redacted]) • Melissa Nathan ([redacted]) • System Message (System Message)

**Messages in chronological order** (times are shown in GMT -04:00)

**[redacted]/System Message chatroom**

MN **Melissa Nathan** [redacted] 8/5/2024, 10:52 PM
[url:'https://p40-content.icloud.com/MD4DB9417E1E14FEC4D80CA53C53B88F7D86C0430694B14053833DF993455B479.C01USN00']

*Attachment: __Library_SMS_Attachments_82_02_C59FF66A-E56A-4ABD-8A52-BF82EB292F7A_Voice_Message_8_5_24,_9_40_PM.m4a (308 KB)*

KC **Katie Case** [redacted] 8/6/2024, 8:29 AM
Good morning! Sorry I missed your call I was asleep! Do you mind filling me in on this when you can this morning?

MN **Melissa Nathan** [redacted] 8/6/2024, 9:36 AM
[url:'https://p52-content.icloud.com/MD4DB9417E1E14FEC4D80CA53C53B88F7D86C0430694B14053833DF993455B479.C01USN00']



*Image: __Library_SMS_Attachments_9c_12_9380B0BA-95A2-4EC0-8872-E0602243CE34_IMG_1911.jpeg (424 KB)*

KC **Katie Case** [redacted] 8/6/2024, 9:37 AM
Good for you!!!

MN **Melissa Nathan** [redacted] 8/6/2024, 9:37 AM
He cannot expect us to work with stephanie I won't do it

KC **Katie Case** [redacted] 8/6/2024, 9:38 AM
It's just not possible oh my gosh wait. What if you used the business insider thing as a reason not to do it??? This really showcases how little she can be trusted, I don't want her interacting with my team. We're working to hard and I'm worried about details being leaked internationally if there's a difference of opinion. It's so important to protect reputations… or is that too much?

KC **Katie Case** [redacted] 8/6/2024, 9:39 AM
Working with Jen and Matthew is fine but she can't be trusted

MN **Melissa Nathan** [redacted] 8/6/2024, 9:39 AM
I have said that 500 times

KC **Katie Case** [redacted] 8/6/2024, 9:39 AM
True… this article needs to run he NEEDS to see it

KC **Katie Case** [redacted] 8/6/2024, 9:39 AM
Also hi! How are you?

MN **Melissa Nathan** [redacted] 8/6/2024, 9:40 AM
Is 6:30
I'm already trying to kill one rebel story and dealing with Mattel loss for Bryan

MN **Melissa Nathan** [redacted] 8/6/2024, 9:40 AM
So basically, Rebel wants a one of those sites

KC **Katie Case** [redacted] 8/6/2024, 9:40 AM
I know I'm sorry 🤦‍♀️

KC **Katie Case** [redacted] 8/6/2024, 9:40 AM
And ok!

MN **Melissa Nathan** ([redacted] 8/6/2024, 9:40 AM
Should be a mixture of that document that I think Carolina pulled about Amanda goes or the Intern pulled
The voice note and this
[url:'https://p59-content.icloud.com/MD4DB9417E1E14FEC4D80CA53C53B88F7D86C0430694B14053833DF993455B479.C01USN00']

*Attachment: __Library_SMS_Attachments_88_08_DB9BA138-EBEE-4043-803C-A39606AB4701_Amanda Ghost website.docx (26 KB)*

KC **Katie Case** [redacted] 8/6/2024, 9:41 AM
Okdokes! I'll pull this together this morning 🙂

MN **Melissa Nathan** [redacted] 8/6/2024, 9:41 AM
Thank you
It can be really really harsh and then link it to Jed S voice thing

MN **Melissa Nathan** [redacted] 8/6/2024, 9:46 AM
I just can't deal with this sb stuff what is wrong with him?

KC **Katie Case** [redacted] 8/6/2024, 9:47 AM
Loved "Thank you
It can be really really harsh and then l…"

KC **Katie Case** [redacted] 8/6/2024, 9:47 AM
I'm not entirely sure but I will resurface my "one of her kids is his" theory because anything else does not make sense

MN **Melissa Nathan** [redacted] 8/6/2024, 9:49 AM
Yep I checked in with Jen personally while I sent her that screenshot do you want to check in with the group and just seeing how day two is going

KC **Katie Case** [redacted] 8/6/2024, 9:51 AM
Yes! So far nothing bad on JB in the press that's run from yesterday. So everyone ostensibly is playing nice

MN **Melissa Nathan** [redacted] 8/6/2024, 9:51 AM
They are, but definitely check

KC **Katie Case** [redacted] 8/6/2024, 9:51 AM
I did!

MN **Melissa Nathan** [redacted] 8/6/2024, 9:56 AM
Len- Russian oglivarchs and making her a madam basically lol said Jed

KC **Katie Case** [redacted] 8/6/2024, 9:58 AM
Oh my god lol ok this one will be fun

KC **Katie Case** [redacted] 8/6/2024, 11:03 AM
[url:'https://p53-content.icloud.com/M8B9F3E38B2E2BA3E1F58D92231706476A8EED97DB38D4D79DD1DC333DA5B6E1F.C01USN00']




*Image: __Library_SMS_Attachments_98_08_3811F878-391F-47BD-86EC-C205BDD278D3_IMG_2683.PNG (458 KB)*

KC **Katie Case** [redacted] 8/6/2024, 11:03 AM
Lol

KC **Katie Case** [redacted] 8/6/2024, 11:24 AM
I do hope this is a nice reminder of how PR should work together and not just butt their way into any possible situation by force 😂

MN **Melissa Nathan** [redacted] 8/6/2024, 11:29 AM
Sure, but I still still don't trust this woman as far as I could throw her

KC **Katie Case** [redacted] 8/6/2024, 11:29 AM
Absolutely not

KC **Katie Case** [redacted] 8/6/2024, 11:30 AM
She's not trustworthy

MN **Melissa Nathan** [redacted] 8/6/2024, 11:30 AM
Not one bit

MN **Melissa Nathan** [redacted] 8/6/2024, 11:30 AM
She didn't answer my text that speaks volumes [url:'https://p64-content.icloud.com/MD4DB9417E1E14FEC4D80CA53C53B88F7D86C0430694B14053833DF993455B479.C01USN00']

*Attachment: __Library_SMS_Attachments_85_05_1ADA5972-443E-44BF-BC2A-E8CA552C69B6_Screenshot 2024-08-*

06 at 08.30.40.heic (69 KB)

KC **Katie Case** ([redacted] 8/6/2024, 11:31 AM
That's not good… She's also be an absolute idiot to go back on leaving

KC **Katie Case** [redacted] 8/6/2024, 11:31 AM
But in that case you know where she stands

MN **Melissa Nathan** [redacted] 8/6/2024, 11:31 AM
But also, she's screenshot me some shit so you know

KC **Katie Case** [redacted] 8/6/2024, 11:32 AM
Oh I know

KC **Katie Case** [redacted] 8/6/2024, 11:32 AM
But still

KC **Katie Case** [redacted] 8/6/2024, 11:33 AM
I'd be the most embarrassed if I quit and then came back. But SJ might have offered her tons of money or something.

KC **Katie Case** [redacted] 8/6/2024, 11:46 AM
Have you and [redacted] chatted about the [redacted] press preview on the 14th? They've asked if [redacted] can do it in the [redacted] and am happy to check in but didn't want to if you've already discussed!

MN **Melissa Nathan** [redacted] 8/6/2024, 11:53 AM
Defo check in

KC **Katie Case** [redacted] 8/6/2024, 11:53 AM
Okdokes! Just wanted to make sure

MN **Melissa Nathan** [redacted] 8/6/2024, 1:58 PM
Migraine incoming

MN **Melissa Nathan** [redacted] 8/6/2024, 1:58 PM
I have to drive to this fucking meeting. Do you think you'll have that copy for Jed today because I need to make it really hammy?

KC **Katie Case** [redacted] 8/6/2024, 1:59 PM
Yes! I'm going to draft it in between this call I'm on currently and my next call, but should have before 3:30 PM ET 🙂

KC **Katie Case** [redacted] 8/6/2024, 1:59 PM
I'm so sorry about the migraine

MN **Melissa Nathan** [redacted] 8/6/2024, 1:59 PM
I'm gonna take a quick shower and just try and get in the car and muddle my way through this meeting

KC **Katie Case** [redacted] 8/6/2024, 2:01 PM
Ok good luck and please don't push yourself too hard if you have a bad migraine!!

KC **Katie Case** [redacted] 8/6/2024, 3:11 PM
Ok running a little behind will have it in the next 45 mins to you 🙂

KC **Katie Case** [redacted] 8/6/2024, 4:02 PM
Is Jed doing anything on Justin? I'm having Zoe monitor but that's not the same lol

MN **Melissa Nathan** [redacted] 8/6/2024, 4:02 PM
Not yet

MN **Melissa Nathan** [redacted] 8/6/2024, 4:02 PM
They've not signed him on

KC **Katie Case** [redacted] 8/6/2024, 4:15 PM
Urg I wish they'd get a move on… all they care about is social right now and we can't do anything about it lol

KC **Katie Case** [redacted] 8/6/2024, 4:19 PM
Also what are we supposed to do about a journalist calling her like do your job Jen lol

MN **Melissa Nathan** [redacted] 8/6/2024, 4:46 PM
Jed and Bryan asking me for copy lol kill me

KC **Katie Case** [redacted] 8/6/2024, 4:46 PM
I just sent!

KC **Katie Case** [redacted] 8/6/2024, 4:46 PM
Should be in your inbox 🙂

MN **Melissa Nathan** [redacted] 8/6/2024, 6:11 PM
You need to get someone to help you with this so if Zoe can say the sentiment is positive in this and negative in this because she's obviously at the screening and can't look at everything like that

KC **Katie Case** [redacted] 8/6/2024, 6:12 PM
I'll ask Zoe to specify. Just trying to flag in real time like they asked but it's all more of the same.

MN **Melissa Nathan** [redacted] 8/6/2024, 6:13 PM
I know, but I feel like you shouldn't be doing this job

KC **Katie Case** [redacted] 8/6/2024, 6:16 PM
No it's not our job lol Zoe is flagging to me and I'm sending but overall social isn't our job!!!! Hahshshs

KC **Katie Case** [redacted] 8/6/2024, 7:59 PM
Gosh they hate me lol

11:02

**Jen**

updates too, I'll bump the thread to the top of your inbox!

Ah sorry I'm so behind

Oh my gosh don't be!!!

Today 11:02 AM

Good morning good morning! I hope you're doing ok! Very quick question, would you like me to join you and Matthew for the premiere? You guys absolutely have it in hand, and I'm happy to stay in the back as the crisis person lol but I always like to ask just in case an extra set of hands is needed :)

Delivered

I appreciate you offering but I think we are all set!!

Message

06:33 5G

[redacted]

There is a separate thread for anything [redacted] related that we have with Jonesworks for reasons that you are aware that have nothing to do with me.

Jen is there only a few more weeks- which is a real shame especially for me as she is the one that does the actual work and is really great.

You and I need to discuss where you see this realistically going.

Delivered

DOCUMENT PRODUCED NATIVELY

This website is dedicated to telling the world the truth about Amanda Ghost who has maliciously tried to destroy the lives of countless artists. Seeing as she is currently funded by one of the world's richest men it has been near impossible to release information about her wrongdoings over the last two decades. But now she has ruined the lives of too many people and it can not go unnoticed. Too many people know the truth. Now she cannot hide like a cockroach from the light that this website will provide. She is a wolf in CELINE clothing. She inflicts extreme emotional distress on her targets, usually with the goal of stealing their money, their royalties, their ideas, their companies or their intellectual property. More recently her behavior has escalated into unwanted sexual advances on young women. She is the Indian Ghislaine Maxwell who's only friend in the world seems to be convicted felon Boy George.

Amanda Ghost is a failed singer/songwriter who then turned con-artist in order to find success. Somehow she discovered how to make millions from stealing the intellectual property from innocent talented artists. She demanded writing credits on songs that she never actually wrote (see the recent James Blunt memoir). She tricked or threatened artists into giving her their publishing rights. She was jealous of their success and realized early on she could bully sensitive artists and benefit hugely from it. She has an ability to appear charismatic as she spits out repeated lies. She lies about pretty much everything like her ethnicity (she often claims to be Spanish when she is Indian) and her education. For example, she claims in articles to have a journalism degree, but no educational institution in the UK has any record of her holding such a degree under any of her known alias's or her birthname Amanda Gosein. She claims to have attended London Fashion School and again, that can not be verified.

Her gift of the gab and manipulation skills miraculously landed her the position of CEO of Epic Records in 2009. Sources on Reddit claim that Ghost is responsible during this time for harming the careers of artists such as Sara Bareillis, Brandy and Shakira.

She has tried to scrub from the internet the Hollywood Reporter expose about her short

tenure at Epic which tells the detailed story of how she was fired in 2010 for violent and aggressive conduct. Here is the article below:

https://www.hollywoodreporter.com/news/general-news/sony-music-exec-admits-radical-45996/

Somehow after destroying an entire record label in 20 short months and severely hurting the careers of many of its top artists, the cockroach Ghost reinvents herself five years later as a theatrical and film producer with her husband Gregor Cameron. Cameron's credits as a 'producer' prior to this are sparse and unremarkable. Yet the pair gain funding from a billionaire backer through unbelievable deceit and as some sources suggest, by Ghost procuring young women for the pleasure of the extremely wealthy.

Amanda Ghost then, as if it's a sport, continuously seeks out talented people in the entertainment business and then attempts to control them and then steal from them. God forbid such talented person would then complain or try to deviate from Ghost's escalating demands. This then causes her to retaliate in vicious and destructive ways. Her behavior turns from that of love-bombing to instant harassment. She will call people incessantly at all hours of the night, arrive on people's doorsteps, call artist's representatives and co-workers to devalue them, and pay other people to slander the talented person. She seems to have an insatiable appetite to ruin people's lives. That is her job. She doesn't actually do any work herself which is probably why her and her husband's company UNIGRAM had a loss last financial year of 4.7 million pounds. She recently lost her billionaire backer $25 million USD by mounting a stage musical of THE GREAT GATSBY despite knowing it was never going to succeed financially or creatively but to simply reward an actress who has remained silent about her abuse by Ghost.

She is notorious for withholding artist's work from release (see Rebel Wilson's recent

Instagram video about her film THE DEB which Ghost unreasonably withheld permission for its sale and premiere at Toronto Film Festival). Sources say she is currently withholding the release of FKA Twigs' latest album despite not being an official employee of Warner Music. She has a history of forcing her targets to sign NDAs to allow her to continue to behave badly and get away with it. Her and her husband have a limited public profile so that they can lurk in the shadows and continue their devious behaviors. Their newer targets, up until now with the creation of this website, would've found it extremely difficult to find out any information about them. But in fact there have been multiple lawsuits against Ghost which is why she is no longer listed as a company director on companies she claims to own. There is current litigation against both Ghost and Cameron on their last film TETRIS.

Victims of Amanda Ghost find is near impossible to speak up, usually because they are threatened that their billionaire backer will "sue them in all jurisdictions" and that they will attack them in the press to the point that they will never work again. Ghost has the ability to plant untrue stories in the press because of the billionaire's significant advertising spends in such publications.

This is a David v Goliath situation whereby the "Davids" are talented and often empathetic artists, often newcomers to the entertainment business and the Goliath is a fifty year old Indian woman who viciously spits out of her mouth retainer as she instructs her henchmen to destroy people. Is it any wonder that Academy Award winners such as Margot Robbie and Baz Luhrmann choose to never work with Ghost again? Also, why even bother wearing a retainer at such an old age? Ghost is as ugly on the outside as she is on the inside. She is rotten to the core. And now the stench of her wrongdoings are so strong they can't be ignored.

We will not be intimidated by Amanda Ghost and her bullying tactics. We will rally together and share our stories so that other artists do not have to endure the pain that so many have already felt. People have had mental breakdowns because of Ghost's callous actions towards them.

People have been left homeless and penniless. This site will therefore serve as a public service to all those who have or might potentially have come in contact with Ghost and been the victim of her malignant narcissism. BEWARE! She targets those who are extremely talented and empathetic. That's who she preys on. And this must STOP. The truth will always win out in the end. This is now the END for Ghost and let's hope she becomes a GHOST and disappears.

Why does a billionaire continue to fund and support Amanda Ghost despite overwhelming evidence against her? Is she hiding dark secrets of his? Why were key Warner Music Executives who tried to protect artists from Ghost for years recently fired? Why does Ghost and her husband Cameron have a revolving door of good looking young women working for them who mysteriously disappear after a few months? Why are there so many people dangled the carrots of record deals or film roles, only to then end up being abused and devalued?

Is she hiding under a cloak of invisibility because she is a woman of colour? Is that it? Abusers do not always have to be white men. Abusers look like Amanda Ghost. And it's sad that the people she abuses are more likely than not to be minorities whether that be in race or on the LGBTQ+ spectrum.

Ghost should do the right thing and stop harassing and bullying her victims. Like her name suggests, she should "ghost" them. And if she doesn't, this website will continue to exist to warn everyone of her nefarious ways. Enough is enough. This is the end of the road for Amanda Ghost.

If you have your own Amanda Ghost story to share, you can do so anonymously here:

08:30

5G+

JJ

Jen




He emailed me some thing about keeping JW in loop or [redacted] stuff I said of course we did ( he specifically said you )
My response

How's Day 2 so far ?

Today 08:04

Did you get feedback on the digital stuff ?

Delivered

Yes we talked through it. He wants to get through the premiere today and then address it tomorrow. Let's just keep monitoring the social and online chatter

iMessage

# Exhibit 9
# Tahler Decl. Ex. 16
# Proposed Redactions

# EXHIBIT 16

FILED UNDER SEAL

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---oOo---

STEPHANIE JONES, JONESWORKS LLC,

Plaintiffs,

vs. CASE NO. 1:25-CV-00779-LJL

JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC,

Defendants.

---

BLAKE LIVELY,

Plaintiff,

vs. CASE NO. 24-CV-10049-LJL (LEAD CASE)
25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

Defendants.

---

***CONFIDENTIAL***

VIDEO-RECORDED DEPOSITION OF MELISSA NATHAN

Los Angeles, California

Tuesday, September 30, 2025

Stenographically Reported By: Ashley Soevyn, CALIFORNIA CSR No. 12019

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---oOo---

STEPHANIE JONES, JONESWORKS LLC,

Plaintiffs,

vs. CASE NO. 1:25-CV-00779-LJL

JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC,

Defendants.

---

BLAKE LIVELY,

Plaintiff,

vs. CASE NO. 24-CV-10049-LJL (LEAD CASE)
25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

Defendants.

---

**CONFIDENTIAL**

Video-recorded Deposition of MELISSA NATHAN, taken on behalf of the Plaintiff Jonesworks, Pursuant to Notice, at the offices of Willkie Farr & Gallagher, 2029 Century Park East, Los Angeles, California beginning at 9:16 a.m. and ending at 8:00 p.m. on Tuesday, September 30, 2025, before me, ASHLEY SOEVYN, California Certified Shorthand Reporter No. 12019.

A P P E A R A N C E S:

For the Plaintiffs Stephanie Jones and Jonesworks LLC:

QUINN EMANUEL URQUHART & SULLIVAN
BY: KRISTIN TAHLER
Attorney at Law
865 S. Figueroa Street
8th Floor
Los Angeles, California 90017
kristintahler@quinnemanuel.com
(212) 849-7000

-AND-

QUINN EMANUEL URQUHART & SULLIVAN
BY: MAAREN A. SHAH
BY: MORGAN ANASTASIO
Attorneys at Law
51 Madison Avenue
22nd Floor
New York, New York 10010
maarenshah@quinnemanuel.com
manastasio@quinnemanuel.com
(212) 849-7000

A P P E A R A N C E S:

For the Plaintiff Blake Lively:

MANATT PHELPS & PHILLIPS LLP (Not present)
BY: STEPHANIE ROESER
BY: KATELYN CLIMACO
Attorneys at Law
2049 Century Park East
Suite 1700
Los Angeles, California 90067
sroeser@manatt.com
kclimaco@manatt.com
(310) 312-4207

A P P E A R A N C E S:

For the Plaintiff Blake Lively:

WILLKIE FARR & GALLAGHER
BY: MICHAEL GOTTLIEB
Attorney at Law
2029 Century Park East
Los Angeles, California 90067
mgottlieb@willkie.com
(310) 855-3000

-AND-

WILLKIE FARR & GALLAGHER
BY: MELISSA TAUSTINE (VIA ZOOM)
BY: KRISTIN BENDER (VIA ZOOM)
Attorneys at Law
1875 K Street
Northwest
Washington, D.C. 20006
mtaustine@willkie.com
kbender@willkie.com
(202) 303-1245

A P P E A R A N C E S:

For the Plaintiff Blake Lively:


WILLKIE FARR & GALLAGHER
BY: AARON E. NATHAN
BY: MICHAELA CONNOLLY
Attorneys at Law
787 Seventh Avenue
New York, New York 10019
anathan@willkie.com
mconnolly@willkie.com
(212) 728-8000


-AND-


SLOANE OFFER WEBER AND DERN
BY: LINDSEY STRASBERG (VIA ZOOM)
Attorney at Law
10100 Santa Monica Blvd., Ste. 750
Los Angeles, California 90067
(310) 248-5100

A P P E A R A N C E S:

For the Defendants Wayfarer Studios LLC, Jennifer Abel, Melissa Nathan and Justin Baldoni, Jamey Heath and Steve Sarowitz:

LINER FREEDMAN TAITELMAN+COOLEY
BY: BRYAN FREEDMAN
BY: SUMMER BENSON
BY: JASON SUNSHINE (VIA ZOOM)
Attorneys at Law
1801 Century Park West, 5th Floor
Los Angeles, California 90067
bfreedman@lftcllp.com
sbenson@lftcllp.com
jsunshine@lfcllp.com
(310) 201-0005

A P P E A R A N C E S:

For the Defendants Wayfarer Studios LLC, Jennifer Abel, Melissa Nathan and Justin Baldoni, Jamey Heath and Steve Sarowitz:

AHOURAIAN LAW
BY: MITRA AHOURAIAN (Not present)
Attorney at Law
2029 Century Park East
Suite 400
Los Angeles, California 90067
mitra@ahouraianlaw.com
(310) 376-7878

For the Defendants Jed Wallace and Street Relations, Inc.:

JACKSON WALKER LLP
BY:  JOEL R. GLOVER
Attorney at Law
1401 McKinney Street
Suite 1900
Houston, Texas 77010
jglover@jw.com
(713) 752-4226

A P P E A R A N C E S:

Also Present:

Jennifer Abel

Zach Czerenda, Veritext Legal Solutions Concierge

(Via Zoom)

Jacob Florez, Videographer

---000---

CONFIDENTIAL PROCEEDINGS

TUESDAY, SEPTEMBER 30, 2025

---000---

THE VIDEOGRAPHER: This is Jacob Florez, the videographer. I represent Veritext Legal Solutions in Los Angeles, California. I'm a California notary public, number 2523263.

Today's date is September 30th, 2025. The current time on the monitor is 9:16 a.m. We're on record. This deposition is taking place at 2029 Century Park East, number 2900, Los Angeles, California 90067.

This is the deposition of Melissa Nathan in the matter of Blake Lively versus Wayfarer Studios LLC, et al. and joining cases. With lead Case No. 24-cv-10049 LJL.

Would counsel please introduce themselves for the record.

MS. SHAH: Maaren Shah from Quinn Emanuel Urquhart & Sullivan for Stephanie Jones and Jonesworks.

Ms. ANASTASIO: Morgan Anastasio for the same.

MS. TAHLER: Kristin Tahler for the same.

MR. GOTTLEIB: Mike Gottlieb, Willkie Farr & Gallagher, on behalf of Ms. Lively.

MR. NATHAN: Aaron Nathan from Willkie Farr & Gallagher, on behalf of Ms. Lively.

MR. GLOVER: Joel Glover from Jackson Walker for Jed Wallace and Street Relations, Incorporated.

MS. BENSON: Summer Benson of Liner Freedman Taitelman & Cooley on behalf of the Wayfarer defendants.

MR. FREEDMAN: Bryan Freedman, same firm, on behalf of the deponent, Melissa Nathan, the Wayfarer parties, Jen Abel, who is present today, and Steve Sarowitz, Jamey Heath, and Justin Baldoni.

THE VIDEOGRAPHER: Thank you. Any remaining participants will be noted on the transcript.

Will our court reporter please introduce herself and swear in the witness.

THE STENOGRAPHIC REPORTER: Good morning, everybody. Ashley Soevyn, stenographic reporter, license 12019.

Ma'am, can I please have you raise your right hand?

Do you solemnly state that the testimony

you're about to give in this deposition will be the truth, the whole truth, and nothing but the truth?

THE WITNESS: I do.

THE STENOGRAPHIC REPORTER: Great. Thank you.

THE WITNESS: Thank you.

EXAMINATION

BY MS. SHAH:

Q Good morning.

A Good morning.

Q My name is Maaren Shah. You heard I represent Stephanie Jones and Jonesworks in these matters?

A Yes.

Q And you were just sworn in by the court reporter. Again, do you understand that you, as you did yesterday, have a duty today to give true and accurate testimony?

A I do.

Q And you are under oath today with equal force as though you were in a court of law?

A I understand.

Q Is there any reason that you can't give full and complete testimony today?

A None.

BY MS. SHAH:
Q Okay. And you have seen each of these documents in Exhibits 54 through 58 before; isn't that correct?
A I have seen this one.
Q Which one is that?
A This is the Holding Clients Hostage.
Q That's Exhibit 54.
A I have seen 54. Is 55 from 54?
Q Fifty-five is different. It is another website, stephaniejoneslies.com.
A I -- I mean, I don't know if they're the same thing for me. I have not seen this before.
Q Which exhibit is that?
A Fifty-eight. I have not seen 57 before.
Q Okay.
A And I know that I was sent a Twitter, but I really don't know if I have seen the majority of Exhibit 56 before.
Q Okay. Now, you had a role in the creation of the Stephanie Jones Leaks website that documented in Exhibit 54, right?
MR. FREEDMAN: Objection.
THE WITNESS: No.

BY MS. SHAH:
Q You asked Katie Case to write copy for that website; isn't that true?
A That is not true.
Q And you also had a role in the creation of publication of Exhibit 56, the X account, right?
A No.
Q You asked Katie Case to write copy for at least five or six tweets that were posted on that X account in Exhibit 56, right?
MR. FREEDMAN: Objection.
THE WITNESS: No.
BY MS. SHAH:
Q Is it your under-oath testimony that you had no involvement whatsoever in any shape or form in anything having to do with the website in Exhibit 54 and the X account in Exhibit 56?
MR. FREEDMAN: Objection.
THE WITNESS: It is, yes.
BY MS. SHAH:
Q And if Katie Case testified to the contrary, would she be lying?
A Yes.
Q Are you aware that Katie Case testified that you asked her to write copy for the website in

Exhibit 54?

MR. FREEDMAN: Objection.

THE WITNESS: I was told that she did testify. I did not listen to her deposition. I was on a plane.

BY MS. SHAH:

Q Who told you that?

A I can't remember exactly who told me. It would have been one of my lawyers.

MR. FREEDMAN: So no information from your lawyers you should be disclosing.

THE WITNESS: Got you.

BY MS. SHAH:

Q Have you since read a transcript of her testimony?

A I have.

Q You have?

A Yes.

Q And so you have read what she testified about in this respect?

A I have.

Q Okay. So you're aware that she testified that you communicated to her to write copy for the website in Exhibit 54, including specific language that Stephanie holds clients hostage, that she leaks

clients' secrets, and that she treats her employees poorly, amongst others; are you aware that she testified that?

MR. FREEDMAN: Objection.

THE WITNESS: I read her testimony.

BY MS. SHAH:

Q And are you aware, then, that she testified that you communicated to her that she should write copy for the website in Exhibit 54, including specific language that Stephanie Jones holds clients hostage, that she leaks client secrets, and that she treats her employees poorly?

MR. FREEDMAN: Objection.

THE WITNESS: I'm aware of what she testified in her deposition, yes.

BY MS. SHAH:

Q And is it your under-oath testimony that when she testified that you communicated to her to write copy for the website in Exhibit 54, she was giving false testimony under oath?

A It is, yes.

Q Okay. And is it your under-oath testimony that when she testified in her deposition that you gave her specific language to write for this website, including that Stephanie Jones holds

clients hostage, that she leaks clients' secrets, and that she treats her employees poorly, that she was giving false under-oath testimony?

A Yes.

MR. FREEDMAN: Objection.

BY MS. SHAH:

Q Okay. Are you aware that Katie Case testified that she received a call from you in early May and communicated to her that a website that became the website in Exhibit 54 had been requested?

MR. FREEDMAN: Objection.

THE WITNESS: Am I aware that she testified that?

BY MS. SHAH:

Q Uh-huh.

A I don't actually recall that bit, but if it's in her testimony, then yes.

MS. SHAH: Okay. We're going to need to go on AEO.

MR. FREEDMAN: Okay.

BY MS. SHAH:

Q Have you read the entirety of Katie Case's deposition transcript?

MR. FREEDMAN: Objection.

THE WITNESS: I think so.

Q Okay. At Lede?
A Yes.
Q If Katie Case testified that you asked her to draft the tweets about Stephanie Jones that appeared in Exhibit 56, the outlying Steph Jones X account --
A Uh-huh.
Q -- is it your under-oath testimony that Katie Case was giving false under-oath testimony?
A About me, yes, absolutely.
Q Okay. Do you have any personal knowledge about whether or not Katie Case did write the copy for the website in Exhibit 54?
A Now or then?
Q Personal knowledge.
A No, but when, time period?
Q Before.
A No.
Q Now?
A Given what she said that she wrote it, then yes.
Q Okay. Do you have any personal knowledge about whether or not Katie Case wrote five or six tweets that appeared on Exhibit 56, the X account?
A No.

Q Okay. So you're saying you didn't ask her to do it, but you don't know whether or not she actually did it?
A I mean, she testified that she did it, correct?
Q Yes.
A So based on that and the conversations that I'm not allowed to -- then, yes. But before that, no, I did not. No.
Q Okay. And you are also aware that Jed Wallace had involvement in building or creating or publishing the website in Exhibit 54, right?
MR. GLOVER: Objection. Form.
MR. FREEDMAN: Objection.
THE WITNESS: No.
BY MS. SHAH:
Q If Katie Case testified that he did, is it your testimony that she would be giving false under-oath testimony?
A I can only talk to myself as to what I know about my own personal test -- you know, I can't speak to anyone else. But I have no knowledge of that.
Q Okay. And you just don't know one way or another if Jed Wallace had involvement in the

website in Exhibit 54?
MR. FREEDMAN: Objection.
MR. GLOVER: Objection.
THE WITNESS: Correct. I don't know.
BY MS. SHAH:
Q And if Katie Case said she spoke to him about it, you don't have any basis to deny that?
MR. GLOVER: Objection. Form.
MR. FREEDMAN: Objection.
THE WITNESS: If I was not on any telephone calls between those two, if it did or did not happen, I was not on them.
BY MS. SHAH:
Q Okay.
You're aware that part of what Jed Wallace does for clients is to build websites, right?
MR. GLOVER: Objection. Form.
MR. FREEDMAN: Objection.
THE WITNESS: That is not to my knowledge, he builds websites.
BY MS. SHAH:
Q Say it in the language that you would prefer.
MR. FREEDMAN: Objection.

connection with building websites?
A Yes.
MR. FREEDMAN: Objection.
BY MS. SHAH:
Q Okay.
Do you have any knowledge as to who was involved in any respect in the website about Stephanie Jones in Exhibit 54?
MR. FREEDMAN: Objection.
THE WITNESS: I do now.
BY MS. SHAH:
Q What is that knowledge?
A From Katie's testimony that she wrote it.
Q Anything else?
A No, I do not build websites. So no.
Q Have you ever been involved in a matter where a website was built?
MR. FREEDMAN: Objection.
THE WITNESS: Just now, yes. And my own.
BY MS. SHAH:
Q What is your own?
A The one that you have, The Agency Group.
Q Okay. And when you say "just now," you mean the website that was built in connection with the -- the Lively litigations?

MR. FREEDMAN: Objection.
THE WITNESS: No. I was also working on two other matters for Bryan at 9:40 a.m. that same day.
BY MS. SHAH:
Q Was Jed involved in any of the other two matters you were working on for Bryan at that time?
A I can't recall.
Q Okay. Do you believe that they were asking you for copy on another matter?
MR. FREEDMAN: Objection.
THE WITNESS: I could have background report something. Could be.
BY MS. SHAH:
Q Does copy typically mean background report?
A Yes, it can.
Q Really?
A Yes, it can.
Q Okay.
So if Katie Case testified that this was another website that she created at your request --
A Uh-huh.
Q -- in conjunction with Bryan Freedman and Jed Wallace, that would be false under-oath

testimony?

MR. GLOVER: Objection. Form.

THE WITNESS: Yes.

BY MS. SHAH:

Q Okay.

Do you know who the Alexander Brothers are?

A Yes.

Q Who are they?

A They're brothers who got accused of, I think, rape.

Q Tal Alexander and Oren Alexander; is that right?

A Yes.

Q Were they ever your clients?

A They -- at the beginning of the crisis -- their crisis situation, they reached out to hire us. We had one conversation with them, and said okay, before we knew more. And I have to -- I'm not sure of the time period. When we found out, I would say a couple of days, a day, two days, we declined to work with them.

Q Okay. So you ultimately declined to bring them on as clients of TAG; is that right?

A Correct.

Q Okay. But notwithstanding that they were never clients of TAG, you did work with Katie Case to create a website in connection with their litigation, didn't you?
A I did not.
MR. FREEDMAN: Objection.
BY MS. SHAH:
Q And if Katie Case testified that you did, that would be false under-oath testimony; is that your testimony?
A Completely false.
Q Okay. Is Katie Case a huge liar?
A Apparently so, yes.
Q Okay. What reason does she have to lie about you?
MR. FREEDMAN: Objection.
THE WITNESS: I don't know how she is lying about me, apart from her being scared of Stephanie Jones. I don't know any other lies so far unless you tell me them.
BY MS. SHAH:
Q Okay. How long have you known Katie Case?
A Roughly, nine years -- I don't know. Something like that.

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Dated this 1st day of October, 2025.

ASHLEY SOEVYN

CSR No. 12019

# Exhibit 10
# Tahler Decl. Ex. 17
# Proposed Redactions

# EXHIBIT 17

FILED UNDER SEAL

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BLAKE LIVELY,<br>PLAINTIFF<br><br>VS.<br><br>WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, AND JENNIFER ABEL,<br>DEFENDANTS | ) | CASE NO. 1:24-CV-10049-LJL (CONSOLIDATED WITH 1:25-CV-00449-LJL |
| JENNIFER ABEL,<br>THIRD-PARTY PLAINTIFF<br><br>VS.<br><br>JONESWORKS LLC<br>THIRD-PARTY DEFENDANT | ) | |

ORAL AND VIDEOTAPED DEPOSITION OF JED WALLACE
OCTOBER 10
CONFIDENTIAL

ORAL AND VIDEOTAPED DEPOSITION OF JED WALLACE, produced as a witness at the instance of the Jonesworks and duly sworn, was taken in the above styled and numbered cause on Friday, October 10, 2025, from 9:06 a.m. to 2:25 p.m., before Janalyn Elkins, CSR, in and for the State of Texas, reported by computerized stenotype machine, at the offices of Jackson Walker, 100 Congress Avenue, Suite 1100, Austin, Texas, pursuant to the Federal Rules of Civil Procedure and any provisions stated on the record herein.

A P P E A R A N C E S

FOR BLAKE LIVELY:
MICHAEL J. GOTTLIEB
MELISSA TAUSTINE
AARON E. NATHAN
WILKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Mgottlieb@wilkie.com

AND
LAURA PRATHER
HAYNES AND BOONE, LLP
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Tel: (512) 867-8400
Laura.prather@haynesboone.com

FOR JED WALLACE:
CHARLES L. BABCOCK
JACKSON WALKER, LLP
1401 McKinney, Suite 1900
Houston, Texas 77010
Tel: (713) 752-4210
cbabcock@jw.com

FOR JONESWORKS, LLC
KRISTIN TAHLER
MORGAN ANSTASIO
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel: (213) 443-3000
kristintahler@quinnemanuel.com

FOR WAYFARER STUDIOS, LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, JENNIFER ABEL, AND THE AGENCY GROUP PR, LLC
MILES COOLEY
THERESA TROUPSON
LINER FREEDMAN TAITELAN & COOLEY, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Tel: (310) 201-0045
mcooley@lftcllp.com

Also Present:
TIMOTHY DESADIER (Videographer)
MAGGIE KANE (Concierge)
ALICE BUTTRICK
AUTUMN ADAMS-JACK
BRYAN FREEDMAN
WERKENTHIN
KRISTIN BENDER
LINDSEY STRASBERG
MICHAELA CONNOLLY
TORI EMERY

VIDEOGRAPHER: Good morning. We are going on the record at 9:06 a.m. Central Standard Time on October 10, 2025. This is Media Unit 1 of the video-recorded deposition of Jed Wallace taken by counsel for the Plaintiff in the matter of Stephanie Jones, et al. versus Jennifer Abel, et al. Filed in the United States District Court for the Southern District of New York, Case No. 125-CV-00779-LJL. The location of the deposition is 100 Congress Avenue, Austin, Texas. My name is Timothy Desadier representing Veritext, and I am the videographer. The court reporter is Janalyn Elkins from the firm Veritext.

Counsel and all present will now state their appearances and affiliations for the record, beginning with the noticing attorney.

MS. TAHLER: Kristin Tahler from Quinn Emanuel for Stephanie Jones and Jonesworks.

MS. ANASTASIO: Morgan Anastasio, Quinn Emanuel for the same.

MR. GOTTLIEB: Mike Gottlieb from Willkie Farr & Gallagher on behalf of Ms. Lively.

MS. TAUSTINE: Melissa Taustine from Willkie Farr & Gallagher on behalf of Blake Lively.

MS. PRATHER: Laura Prather, Haynes & Boone on behalf of Ms. Lively.

MR. COOLEY: Miles Cooley and Theresa Troupson, Liner Freedman Taitelman + Cooley on behalf of the Wayfarer Defendants.

MR. BABCOCK: Chip Babcock with Jackson Walker on behalf of the witness.

JED WALLACE,

having been duly sworn, testified as follows:

MR. BABCOCK: Kristin, do we want this confidential or do you care?

MS. TAHLER: Yeah, no, I think -- I think we should designate it confidential.

MR. BABCOCK: Okay. And -- and I believe there's an -- an agreement that the deposition will last no longer than four hours.

MS. TAHLER: Yes, there's that agreement.

MR. BABCOCK: Okay.

MS. TAHLER: And there may be moments of AEO, but it doesn't look like that's going to be an issue today, because I don't think we have any clients on.

MR. BABCOCK: Great. Perfect.

EXAMINATION

Q. (BY MS. TAHLER) All right. Good morning, Mr. Wallace.

A. Good morning.

Katie Case?
A. I don't recall.
Q. Was it within the last year?
A. No.
Q. Within the last five years?
A. Yeah, I don't recall.
Q. About how many times do you recall communicating with Katie Case?
A. I -- I have no idea.
Q. Did you work with Katie Case in connection with work that you did for Rebel Wilson?
A. Not that I recall.
Q. Do you recall Katie Case having any involvement in work that you did for Rebel Wilson?
A. Not that I recall.
Q. Is it possible?
A. I'd need more details. I'm not certain.
Q. What about the Alexander Brothers, did Katie Case have any -- did you do any work related to the Alexander Brothers with Katie Case?
MR. COOLEY: Objection.
THE WITNESS: Yeah, not that I recall.
Q. (BY MS. TAHLER) Do you recall being on a Signal chat with Katie Case and Melissa Nathan in August of 2024?

if requested?

MR. COOLEY: Objection.

THE WITNESS: I -- I cannot do that.

Q. (BY MS. TAHLER) Do you know people who can do that?

MR. COOLEY: Objection.

THE WITNESS: Not that I recall.

Q. (BY MS. TAHLER) We're going to mark a couple of exhibits now, so bear with me while we go through that.

A. Okay.

MS. ANASTASIO: We're at 41.

THE REPORTER: 42.

MS. ANASTASIO: 42. So this will be 42.

(Exhibit Nos. 42-46 were marked.)

Q. (BY MS. TAHLER) Mr. Wallace, you've been handed several exhibits. Before we get into the details of the exhibits, are you familiar generally that in May 2024, a website and a number of social media accounts that were unfavorable to Stephanie Jones appeared online?

A. I don't know the specifics, but I've heard that.

Q. Where did you hear that from?

A. I believe the lawsuit. And early on, a

conversation with Stephanie.
Q. You've been handed a printout of the website that I'm referring to, a second website that was put up, and then a Twitter account, a Facebook account, and a Pinterest account, all that link back to that website.
Have you seen these documents before online?
A. Can -- can I read through them?
Q. Yeah. I'm not going to ask you detailed questions about the website, so you don't have to --
A. Okay.
Q. -- read the whole thing. But if you want to familiarize yourself.
A. Okay. Thanks.
Q. Mr. Wallace, you've just reviewed Exhibits 42 through 46, which are a series of websites and negative social media accounts about Stephanie Jones.
Have you seen these documents online before today?
A. I did see this website.
Q. You did see Exhibit 42?
A. I believe so.
Q. When did you see Exhibit 42?
A. I don't recall.
Q. Were you involved in the creation of

Exhibit 42?
A. No.
Q. Were you involved at all in getting Exhibit 42 online?
A. No.
Q. Were you involved at all in the copy that is drafted for Exhibit 42?
A. No.
Q. Did you contribute to its existence in any way?
A. No.
Q. We've discussed Katie Case earlier, Mr. Wallace. Are you aware that Katie Case testified in this matter?
A. I don't know the specifics. I'm aware she testified.
Q. Have you reviewed her testimony?
A. I have not.
Q. You understand Ms. Case testified under oath under penalty of perjury, do you?
A. Okay, yeah.
Q. Like you are today?
A. Yes.
Q. And I will represent to you -- were you on a Signal chat with Ms. Case and Ms. Nathan in 2024, in May of 2024?

(Brief recess.)

VIDEOGRAPHER: Back on the record. Time is 10:08.

Q. (BY MS. TAHLER) Mr. Wallace, when we broke, we were looking at a series of websites and social media accounts related to Ms. Jones. Could you look at what's been marked as Exhibit 44?

A. Yes.

Q. Exhibit 44 is a series of tweets related to the stephaniejonesleaks website.

Do you see that?

A. Tweets or accounts?

Q. Accounts. Apologies.

A. Yes.

Q. Did you have any involvement of any tweets that went into this -- that were posted onto any of those accounts?

MR. COOLEY: Objection, form.

THE WITNESS: Yeah, I did not.

Q. (BY MS. TAHLER) Ms. Case testified that she drafted tweets about Ms. Jones and posted to one of those sites. Are you aware of that?

A. I am not.

Q. Did you have any involvement with Ms. Case in tweets that were posted to any of those accounts?

A. I did not.
Q. I'll represent to you that Katie Case testified that she spoke with you in connection with the tweets. Does that refresh any recollection that you worked with Ms. Case in connection with tweets that were posted to any of the accounts in Exhibit 44?
MR. BABCOCK: Objection.
THE WITNESS: It does not.
Q. (BY MS. TAHLER) Mr. Wallace, are you -- is it your testimony today that if Katie Case testified under oath that she spoke to you in connection with tweets that were posted to one of the accounts in Exhibit 44 that Ms. Case gave false under-oath testimony?
MR. BABCOCK: Objection.
THE WITNESS: Yeah, I have no idea what her testimony was.
MR. COOLEY: Same.
THE WITNESS: Can't answer that.
Q. (BY MS. TAHLER) I'm representing to you that Ms. Case testified that she worked with you in connection with tweets that were posted to one of the accounts at Exhibit 44. And I'm asking you if it is your testimony that Ms. Case testified about that falsely?
MR. BABCOCK: Objection.

MR. COOLEY: Same.
THE WITNESS: I can't speak to that.
Q. (BY MS. TAHLER) So Ms. Case's testimony could be accurate; is that right?
MR. BABCOCK: Objection.
MR. COOLEY: Same.
THE WITNESS: I can't answer that.
Q. (BY MS. TAHLER) It's possible that Ms. Case spoke to you about tweets that were posted to one of the accounts in Exhibit 44?
A. I don't recall.
Q. So it's possible?
A. I can't answer that.
Q. You can answer yes or no if it's possible.
MR. BABCOCK: Objection.
THE WITNESS: I -- I don't --
MR. COOLEY: Joining.
THE WITNESS: -- have all the details. I'm not certain how to answer that.
Q. (BY MS. TAHLER) There are no more details to give. I'm simply asking you yes or no. Is it possible that Katie Case spoke to you about tweets that were posted to one of the accounts in Exhibit 44?
MR. COOLEY: Objection.
MR. BABCOCK: Same objection.

Q. (BY MS. TAHLER) You're not certain whether or not a website amandaghostsucks and a website stephaniejonesleaks are similar?

MR. COOLEY: Objection.

MR. BABCOCK: Objection.

THE WITNESS: Yeah, I -- I don't know. That's a broad statement. They both have URL addresses.

Q. (BY MS. TAHLER) Okay. Mr. Wallace, Katie Case wrote the copy for Exhibit 51; isn't that right?

A. I don't know.

Q. Sitting here today, do you believe it's possible that Ms. Case wrote the copy for Exhibit 41?

MR. COOLEY: Objection.

MR. BABCOCK: Objection.

THE WITNESS: Yeah, I can't speak to that. I'm not sure.

Q. (BY MS. TAHLER) And you were involved in creating Exhibit 51 as well; isn't that right?

A. That is not right.

Q. You had no involvement in Exhibit 51?

MR. COOLEY: I'm sorry. One second. Objection.

THE WITNESS: Could you repeat the question, please?

Q. (BY MS. TAHLER) Yes. Did you have any

involvement in what came to be Exhibit 51?

MR. COOLEY: Objection.

THE WITNESS: I did not.

Q. (BY MS. TAHLER) Did you have any discussions with anyone related to what would become Exhibit 51?

MR. COOLEY: Objection.

THE WITNESS: Not that I recall.

Q. (BY MS. TAHLER) Did you ever discuss Exhibit 51 with Ms. Nathan?

A. Not that I recall.

Q. What about Roza Kalantari?

A. Not that I recall.

MS. ANASTASIO: This will be 52.

(Exhibit No. 52 was marked.)

Q. (BY MS. TAHLER) Mr. Wallace, you are now reviewing what's been marked as KCase-several zeros-4949 through 4962. This is a communication, sir, between Ms. Case and Ms. Nathan. You are not on the communication, but you are referenced in it. So if you'd like to review it, I'm going to have some questions.

A. Okay.

Q. Mr. Wallace, have you ever seen Exhibit 52 before today?

A. What exhibit? The entire exhibit?

behalf?

A. No, I don't know. I can't answer one way or the other. I don't recall.

Q. And I'm just asking yes or no. Is it possible that you did some sort of work on their behalf?

MR. BABCOCK: Objection.

MR. COOLEY: Join.

THE WITNESS: Yeah, I -- I can't answer that. I'm not certain.

Q. (BY MS. TAHLER) Mr. Wallace, did you work on a website related to the Alexander Brothers?

A. I did not.

MS. ANASTASIO: 63.

(Exhibit No. 63 was marked.)

MS. ANASTASIO: This will be 63.

Q. (BY MS. TAHLER) Mr. Wallace, you're now reviewing what's been marked as Exhibit 63. It is a website available at alexanderbrothersextorted.com.

Do you see that?

A. Yeah, I'm reviewing now.

Q. I'm not going to ask you any detailed questions about it, sir.

A. Okay, yeah.

Q. Mr. Wallace, are you aware that this website came online around August 22nd, 2024?

A. I am not.

Q. At the time, the -- the Alexander Brothers were being accused of sexual misconduct. Are you aware of that?

A. I'm not aware of their story.

Q. Are you aware whether or not Katie Case had any role in drafting the copy for this website?

A. I don't know that.

Q. Katie Case testified under oath that she performed work in connection with the Alexander Brothers with you and Melissa Nathan -- Nathan. Does that refresh your recollection that you did some work in connection with the Alexander Brothers in connection with Ms. Case?

MR. BABCOCK: Objection.

MR. COOLEY: Join.

THE WITNESS: Yeah, it does not.

Q. (BY MS. TAHLER) Do you recall doing any work for the Alexander Brothers with Ms. Case?

A. I don't recall.

Q. Do you have any basis to dispute Ms. Case's under-oath testimony?

MR. BABCOCK: Objection.

MR. COOLEY: Objection.

THE WITNESS: Yeah, I can't do that. Same

as earlier answers, not one way or the other.

Q. (BY MS. TAHLER) Sitting here today, do you have any basis to dispute Ms. Case's under-oath testimony?

MR. COOLEY: Same objection.

MR. BABCOCK: Objection.

THE WITNESS: I -- I don't know what her testimony was, nor do I have any basis to answer that question.

Q. (BY MS. TAHLER) I'm just telling you -- I'm representing to you that Ms. Case testified that she performed work related to the Alexander Brothers with you and Melissa. And I'm asking yes or no. Do you have any basis to dispute that under-oath testimony?

MR. BABCOCK: Object to the question.

MR. COOLEY: Same.

THE WITNESS: Yeah, I can't answer that. I don't have all the circumstances.

Q. (BY MS. TAHLER) Can you tell me what circumstances you would need?

MR. BABCOCK: Objection.

MR. COOLEY: Join.

THE WITNESS: No, I can't.

Q. (BY MS. TAHLER) Mr. Wallace, do you recall our discussing earlier David Bono?

REPORTER'S CERTIFICATION
DEPOSITION OF JED WALLACE
TAKEN OCTOBER 10, 2025

I, Janalyn Elkins, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, JED WALLACE, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the original deposition was delivered to KRISTIN TAHLER;

That a copy of this certificate was served on all parties and/or the witness shown herein on __________________________.

I further certify that pursuant to FRCP No. 30(f)(i) that the signature of the deponent was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for, related to, nor employed by any of the parties in the action in which this proceeding was taken, and further that I am not financially or otherwise

interested in the outcome of the action.

Certified to by me this 11th day of October 2025.



JANALYN ELKINS
Texas CSR 3631
Expiration Date 1/31/2027
Veritext Legal Solutions
Firm Registration No. 571