# Dkt. No. 217

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| STEPHANIE JONES, JONESWORKS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC and JOHN DOES 1-10,<br><br>Defendants. | : | Civ. Action No. 1:25-cv-00779-LJL<br>rel. 1:24-cv-10049-LJL |

**DEFENDANTS AND NON-PARTY JAMEY HEATH'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. PLAINTIFFS ARE NOT ENTITLED TO LEAVE TO AMEND ..... 5

A. Plaintiffs Have Not Shown the Diligence Required By Rule 16 ..... 5

B. Plaintiffs Are Not Entitled to Leave to Amend Under Rule 15 ..... 10

1. Nathan and Heath Would Be Prejudiced by the Late Amendments ..... 10

2. The Proposed Amendments Are Futile ..... 12

a. The Proposed Defamation Claim Is Time Barred ..... 12

b. Plaintiffs Fail to Plead the Elements of Defamation ..... 14

3. The Proposed Tortious Interference Claim Is Deficient ..... 15

a. The Tortious Interference Claim Is Duplicative ..... 15

b. The Tortious Interference Claim Is Not Pled With Specificity ..... 16

c. The Alleged Tortious Interference Is Economically Justified ..... 18

4. The Proposed Eavesdropping Claim Is Deficient ..... 19

a. Plaintiffs Fails to Plead Subject Matter Jurisdiction ..... 19

b. Plaintiffs Do Not Plead Personal Jurisdiction Over Heath ..... 20

c. The Illinois Eavesdropping Act Does Not Apply ..... 21

d. Plaintiffs Do Not Establish a Reasonable Expectation of Privacy ..... 23

e. Plaintiffs Fail to Plead Any Actual Damages ..... 25

IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*16 Casa Duse, LLC v. Merkin*,
791 F.3d 247 (2d Cir. 2015) .......... 18

*Agerbrink v. Model Serv. LLC*,
155 F. Supp. 3d 448 (S.D.N.Y. 2016) .......... 10

*Ameer v. Fleet Mech. Sys.*,
2019 WL 1949858 (S.D.N.Y. Apr. 17, 2019) .......... 20

*Berman v. Morgan Keegan & Co., Inc.*,
2011 WL 2419886 (S.D.N.Y. June 3, 2011) .......... 10

*Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*,
775 F. Supp. 2d 730 (S.D.N.Y. 2011) .......... 15

*Biro v. Conde Nast*,
883 F. Supp. 2d 441 (S.D.N.Y. 2012) .......... 14

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) .......... 10

*Boehner v. Heise*,
734 F. Supp. 2d 389 (S.D.N.Y. 2010) .......... 17

*Bristol-Myers Squibb Co v. Superior Court of California*,
137 S. Ct. 1773 (2017) .......... 21

*Brown Media Corp. v. K&L Gates, LLP*,
586 B.R. 508 (Bankr. E.D.N.Y. 2018) .......... 16

*Bumpus v. N.Y.C. Transit Auth.*,
66 A.D.3d 26 (2d Dep't 2009) .......... 13

*Burch v. Pioneer Credit Recovery, Inc.*,
551 F.3d 122 (2d Cir. 2008) .......... 8

*Cambridge Capital LLC v. Ruby Has LLC*,
565 F. Supp. 3d 420 (S.D.N.Y. 2021) .......... 16

*Camelot SI, LLC v. ThreeSixty Brands Group LLC*,
632 F. Supp. 3d 471 (S.D.N.Y. 2022) .......... 18

*Campbell v. St. Jude Medical, S.C., Inc.*,
2018 WL 5779482 (D. Minn. Nov. 2, 2018) .......... 25

*Cartiga, LLC v. Aquino*,
2025 WL 388804 (S.D.N.Y. Feb. 4, 2025) .......... 18

*Chao v. Mount Sinai Hosp.*,
2010 WL 5222118 (S.D.N.Y. Dec. 17, 2010) .......... 16

*Chase Manhattan Bank, N.A. v. Aldridge*,
906 F. Supp. 870 (S.D.N.Y. 1995) .......... 19

*Chinese Am. Citizens All. Greater New York v. New York City Dep't of Educ.*,
2024 WL 1795390 (S.D.N.Y. Apr. 25, 2024) .......... 13

*Conflict Int'l, Inc. v. Komorek*,
2024 WL 1347577 (S.D.N.Y. Mar. 29, 2024) .......... 17

*Congelados del Cibao v. 3 Kids Corp.*,
2021 WL 4635919 (S.D.N.Y. Oct. 6, 2021) .......... 7

*Cook Au Vin, LLC v. Mid-Century Ins. Co.*,
226 N.E.3d 694 (Ill. App. Ct. 2023) .......... 23

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001) .......... 20

*Drake v. Toyota Motor Corp.*,
2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) .......... 22

*Ellis v. Chao*,
336 F.3d 114 (2d Cir. 2003) .......... 12

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,
2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020) .......... 17

*Fahlund v. Nassau County*,
265 F.Supp.3d 247 (E.D.N.Y. 2017) .......... 14

*Feske v. MHC Thousand Trails Ltd. Partnership, et al.*,
2013 WL 1120816 (N.D. Cal. March 18, 2013) .......... 7

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 10

*Friedman v. Coldwater Creek, Inc.*,
551 F. Supp. 2d 164 (S.D.N.Y. 2008) .......... 17

*Furry Puppet Studio Inc. v. Fall Out Boy*,
2020 WL 4978080 (S.D.N.Y. Feb. 24, 2020) ... 1

*Golden Archer Inv., LLC v. Skynet Fin. Sys.*,
908 F. Supp. 2d 526 (S.D.N.Y. 2012) ... 22

*Goldman v. Barrett*,
733 Fed Appx. 568 (2d Cir. 2018) ... 15

*Grace v. Rosenstock*,
228 F.3d 40 (2d Cir. 2000) ... 12

*Granite State Ins. Co. v. Primary Arms, LLC*,
2025 WL 3533484 (2d Cir. Dec. 10, 2025) ... 23

*Green v. Doukas*,
2001 WL 767069 (S.D.N.Y. June 22, 2001) ... 20

*Grochowski v. Phoenix Constr.*,
318 F.3d 80 (2d Cir. 2003) ... 7, 9

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013) ... 13

*Holmes v. Grubman*,
568 F.3d 429 (2d Cir. 2009) ... 7

*IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*,
783 F.3d 383 (2d Cir. 2015) ... 12

*Johnson v. UBS AG*,
791 F. App'x 240 (2d Cir. 2019) ... 21

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 2009) ... 7

*Jones v. Abel*,
2025 WL 3292468 (S.D.N.Y. Nov. 26, 2025) ... 1, 2

*Kall v. Peekskill City Sch. Dist.*,
2020 WL 2555256 (S.D.N.Y. May 19, 2020) ... 16

*Kiarie v. Dumbstruck, Inc.*,
473 F. Supp. 3d 350 (S.D.N.Y. 2020) ... 11

*Kodak Graphic Communications Canada Co. v. E.I. Du Pont De Nemours and Co.*,
2011 WL 4711968 (W.D.N.Y. Sept. 23, 2011) ........ 8

*Lesnik v. Lincoln Fin. Advisors Corp.*,
2019 WL 6169971 (S.D.N.Y. Nov. 20, 2019) ........ 9

*Locke v. Aston*,
31 A.D.3d 33 (1st Dep't 2006) ........ 22

*Locsmondy v. Arrow Pneumatics*,
2001 WL 109810 (N.D. Ill. Feb. 5, 2001) ........ 25

*Lucente v. Int'l Bus. Machs. Corp.*,
310 F.3d 243 (2d Cir. 2002) ........ 12

*Luethke v. Seagram Co., Ltd.*,
2000 WL 1880324 (S.D.N.Y. Dec. 28, 2000) ........ 15

*MacDraw, Inc. v. CIT Grp. Equip. Fin.*,
157 F.3d 956 (2d Cir. 1998) ........ 10

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) ........ 10

*Media Logic USA, LLC v. Prinova US, LLC*,
76 Misc.3d 1218(A) (Sup. Ct. Albany Cty. 2022) ........ 20, 25

*Oscar v. BMW of N. Am., LLC*,
2011 WL 6399505 (S.D.N.Y. Dec. 20, 2011) ........ 6

*Parker v. Columbia Pictures Indus.*,
204 F.3d 326 (2d Cir. 2000) ........ 6, 7, 9

*People v. Clark*,
6 N.E.3d 154 (Ill. 2014) ........ 22

*People v. Johnson*,
2021 WL 1894498 (Ill. App. Ct. May 11, 2021) ........ 23

*People v. Lasher*,
58 N.Y.2d 962 (1983) ........ 23

*RBG Mgmt. Corp. v. Village Super Market, Inc.*,
692 F. Supp. 3d 135 (S.D.N.Y. 2023) ........ 18

*Robertson v. Fluerinord*,
2024 WL 4728544 (S.D.N.Y. Nov. 8, 2024) ........ 13

*S. Telecom Inc. v ThreeSixty Brands Group, LLC*,
2021 WL 979567 (S.D.N.Y. Mar. 16, 2021) .......... 10

*Schnepf v. Jerome H. Siegel, M.D., P.C.*,
1998 WL 474132 (S.D.N.Y. July 11, 1998) .......... 11

*Scholastic, Inc. v. Stouffer*,
124 F. Supp. 2d 836 (S.D.N.Y. 2000) .......... 15

*Schwartz v. Hitrons Sols., Inc.*,
397 F. Supp. 3d 357 (S.D.N.Y. 2019) .......... 19

*Sojka v. Mudge*,
2025 WL 2211705 (S.D.N.Y. July 1, 2025) .......... 20

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
2009 WL 2524611 (S.D.N.Y. Aug. 14, 2009) .......... 6

*Soroof Trading Dev. Co. v. GE Microgen, Inc.*,
283 F.R.D. 142 (S.D.N.Y. 2012) .......... 7

*Spiegel v. Schulmann*,
604 F.3d 72 (2d Cir.2010) .......... 21

*Taormina v. Thrifty Car Rental*,
2016 WL 7392214 (S.D.N.Y. Dec. 16, 2016) .......... 20

*Tescher v. Experian Information Solutions, Inc.*,
2022 WL 18107432 (S.D.N.Y. Dec. 15, 2022) .......... 10

*Tongkook America, Inc. v. Shipton Sportswear Co.*,
14 F.3d 781 (2d Cir. 1994) .......... 19

*Tucker v. Lorieo*,
291 A.D.2d 261 (1st Dep't 2002) .......... 14

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
455 Fed. Appx. 102 (2d Cir. 2012) .......... 16, 17

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 21

*Walker v. GlaxoSmithKline, LLC*,
161 A.D.3d 1419 (3d Dep't 2018) .......... 14

*Zapadinsky v. Blue Diamond Growers*,
2023 WL 5116507 (E.D. Wis. Aug. 7, 2023) ........ 22

**Statutes**

28 U.S.C. § 1332 ........ 19

720 ILCS 5/14-6 ........ 25

720 ILCS 5/14-1(d) ........ 23

N.Y. Penal Law 250.00 ........ 23

**Rules**

CPLR 215(3) ........ 13

CPLR Section 301 ........ 20

CPLR Section 302(a)(3) ........ 21

CPLR Section 1024 ........ 13, 14

Fed. R. Civ. P. 16 ........ Passim

## I. INTRODUCTION

Eight months after the April 18, 2025 deadline set by the Rule 16 Scheduling Order and two months after fact discovery closed, Plaintiffs move to add two new claims against Melissa Nathan ("Nathan") and add Jamey Heath ("Heath") as a new defendant to a third new claim. Leave should be denied. Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The language of Rule 16(b)(4) makes clear that the Court may modify a scheduling order only if there is a showing of good cause. Fed. R. Civ. P. 16(b)4). The primary consideration in determining whether good cause exists "is whether the moving party can demonstrate diligence." *Jones v. Abel*, 2025 WL 3292468, at *2 (S.D.N.Y. Nov. 26, 2025); *see Furry Puppet Studio Inc. v. Fall Out Boy*, 2020 WL 4978080, at *1-2 (S.D.N.Y. Feb. 24, 2020).

Plaintiffs fail to satisfy their burden to establish good cause and diligence. This Court has previously recognized that waiting six weeks after discovering the underlying facts before taking action "demonstrates a lack of diligence." *Jones*, 2025 WL 3292468, at * 2. There can be no dispute that Plaintiffs knew the facts underlying their proposed defamation and tortious interference with prospective business relations claims against Nathan from the inception of this action, because those allegations were included in their December 24, 2024 Complaint. Plaintiffs did not seek discovery into Nathan's alleged involvement with planting a negative article about Stephanie Jones ("Jones") and the publication of purportedly defamatory statements on certain websites until July 16, 2025, ***after*** the statute of limitations for defamation expired and nearly a year after the publication of the article. Plaintiffs then waited months until after they admittedly learned of the facts they claim were necessary to bring this motion.

Plaintiffs attempt to sidestep the Rule 16(b) diligence requirement by relying on the more lenient standard for leave to amend under Rule 15(a), focusing on an alleged lack of prejudice to

Nathan and Heath, and that amendment is not futile. But those considerations are only relevant if the Plaintiffs first establish that they were diligent, which they have not done. *See Jones*, 2025 WL 3292468, at *2. Even under the more lenient Rule 15 standard, amendment should not be permitted. Nathan and non-party Heath would be prejudiced by the addition of these claims which would require re-opening discovery (which has closed) to re-depose Jones and depose third parties. Additionally, the claims Plaintiffs seek to add are legally insufficient and thus amendment is futile. First, the one-year statute of limitations for defamation has expired and the proposed claim against Nathan does not "relate back" to the existing claims. Plaintiffs also fail to identify Nathan's allegedly defamatory statements and when the statements were made as required to plead defamation. Second, Plaintiffs' newly contrived tortious interference with prospective business relations claim against Nathan is duplicative of the proposed defamation claim and the allegations make it clear that any purported interference by Nathan was at least partially economically justified. Finally, Plaintiffs' proposed claim against Heath for violation of Illinois Consolidated Statutes Chapter 720 §§ 5/14-2 and 5/14-6 (the "Illinois Eavesdropping Act") is deficient because: (1) Plaintiffs have not met the $75,000 threshold for subject matter jurisdiction; (2) Plaintiffs failed to adequately allege the Court's personal jurisdiction over Heath; (3) Illinois law does not apply; (4) Plaintiffs fail to plead a reasonable expectation of privacy; and (5) Plaintiffs fail to plead actual damages from the allegedly wrongful recording as required to plead a violation of the Illinois Eavesdropping Act. Hence, Plaintiffs' motion for leave to amend should be denied.

## II. <u>BACKGROUND</u>

On December 24, 2024, the Jones Parties filed a complaint against the Wayfarer Parties. *See* ECF No. 1-1 (the "Complaint" or "Compl."). The Complaint alleges eight causes of action: (1) Count I for breach of contract of the employment agreement between Jonesworks and Abel

(the "Abel Employment Agreement"); (2) Count II for tortious interference with the Abel Employment Agreement against Nathan, Wayfarer and Baldoni; (3) Count III for breach of contract of the engagement agreement between Jonesworks and Wayfarer (the "Wayfarer Agreement"); (4) Count IV for tortious interference with the Wayfarer Agreement against Abel and Nathan; (5) Count V for faithless servant against Abel; (6) Count VI for breach of fiduciary duty against Abel; (7) Count VII for defamation against Abel; and (8) Count VIII for defamation against Defendants John Doe 1-10. (*Id.*, ¶¶ 107- 166).

Among other things, the Complaint alleges that Nathan "contrived" to plant a negative story about Jones in a *Business Insider* article called "Who's Afraid of Stephanie Jones?" (the "*Business Insider* Article") (*id.*, ¶¶ 68- 78) and that Nathan and non-party Jed Wallace ("Wallace") purportedly acted "in concert" with Does 1-10 to publish allegedly defamatory statements on websites about Plaintiffs (the "Websites"). (*Id.*, ¶¶ 92-94).

On December 31, 2024, Blake Lively filed a complaint against the Wayfarer Parties, Heath, and others in the action entitled *Lively v. Wayfarer Studios LLC*, No. 1:24-cv-10049-LJL (S.D.N.Y.) (the "Lively Action"), for allegedly orchestrating a digital smear campaign against her in retaliation for reporting supposed misconduct on the set of the film *It Ends With Us* (the "Film"). On February 3, 2025, the Court in this action largely adopted the Case Management Plan and Scheduling Order filed in the Lively Action, including an April 18, 2025 deadline for the amendment of pleadings. (*Lively*, ECF No. 58).[1]

On July 16, 2025, the Jones Parties served Nathan with document requests for material relating to Nathan's knowledge of or involvement in the *Business Insider* Article and documents pertaining to Nathan's "knowledge of or involvement in the creation, operation, or content" of the

[1] Docket entries to the Lively Action are prefaced by "*Lively*, ECF No." All other citations to "ECF No." are to the docket in this action.

Websites. (ECF No. 193-4 at RFP Nos. 38-39). As of the July 1, 2025 deadline for the substantial completion of discovery (*Lively,* ECF No. 58), the Jones Parties had not moved to compel or otherwise claimed that Nathan's production was inadequate. (ECF No. 193- 5). Nathan produced additional documents on August 6, 2025, which she designated as "attorneys' eyes only" under the protective order in this action (ECF No. 30) because the new documents included information about her other clients.[2] According to the Jones Parties, the August production included documents purportedly showing Nathan conspiring to plant the *Business Insider* Article. (Mem. at 10).

On September 5, 2025, the Jones Parties deposed Katherine Case ("Case"), a former employee of Jonesworks and Nathan's PR agency The Agency Group ("TAG"). (ECF No. 193-11). Nathan designated Case's testimony as "attorneys' eyes only" as the examination implicated work performed for other TAG accounts that do not concern this matter. The Jones Parties claim that Case's testimony evidences Nathan's involvement with the Websites. (Mem. at 10). The Jones Parties subsequently moved to have this "attorneys' eyes only" designation removed, and the Court ordered the testimony de-designated over Nathan's opposition on September 19, 2025. (ECF Nos. 113, 127). The Jones Parties deposed Nathan on September 30, 2025, and Wallace on October 10, 2025. Each denied having any personal involvement in the Websites. (ECF No. 193-16 at 131:20-135:4, 137:3-139:12, 142:15; ECF No. 193-17 at 26:10-22, 38:16-40:10, 43:4-45:2, 75:8-76:3, 102:10-104:1).

In a November 26, 2025 Memorandum and Order, this Court denied the Jones Parties' motion to compel Case to produce further materials relating to the Websites in response to a subpoena dated October 17, 2025. (ECF No. 188) (the "Case MTC Order"). The Jones Parties argued that they sought materials in response to information obtained from the depositions of Case,

[2] Nathan's company (TAG) and Jonesworks are both in the business of public relations and related services.

Nathan and Wallace. (*Id*. at 1-2). However, the Court held that the Jones Parties should have issued the subpoena as soon as possible after Case's September 5, 2025 deposition and "the decision to wait an additional six weeks before doing so demonstrates a lack of diligence." (*Id*. at 5). In response to the Jones Parties' contention that there would be no prejudice because there was not yet a deadline for summary judgment motions, the Court noted:"[T]hat does not mean that the parties are free to continue to issue pretrial fact subpoenas up to the moment of summary judgment. The absence of prejudice alone is insufficient to show the presence of good cause." (*Id*.).

On October 5, 2025, prior to his deposition in the Lively Action, Heath produced a recording of an August 8, 2024 telephone conversation with Jones who was in London. (ECF No. 193-18). At the time the call was made, Jonesworks was still representing Wayfarer in connection with the public relations crisis developing around the Film and in connection with matters unrelated to the Lively fiasco. During his deposition, Heath explained that he recorded his call with Jones because of increasing concerns over Jones' conduct. (ECF No. 193-19 at 88:10-25; Fritz Decl. Ex. 2 (HEATH_000046697)).

On December 8, 2025, the Jones Parties moved for leave to amend their complaint to add claims for: (1) defamation against Nathan regarding allegedly false statements published on the Websites; (2) tortious interference with prospective business relations against Nathan arising from her purported involvement with the Websites and the *Business Insider* Article; and (3) violation of the Illinois Eavesdropping Act against Heath for his recording of the phone call with Jones.

## III. PLAINTIFFS ARE NOT ENTITLED TO LEAVE TO AMEND

### A. Plaintiffs Have Not Shown the Diligence Required By Rule 16

Plaintiffs' motion for leave to amend the Complaint should be denied due to their lack of diligence necessary to show "good cause" to amend pursuant to Rule 16 of the Federal Rules of Civil Procedure. Especially egregious is Plaintiffs' attempt to add claims for defamation and

tortious interference with prospective business relations against Nathan arising from Nathan's purported planting of the *Business Insider* Article and involvement with the Websites, because Plaintiffs' current Complaint, filed on December 24, 2024, already contains allegations about Nathan's purported involvement therein. Thus, the Jones Parties knew or should have known about the facts necessary to bring these claims not just months prior to the April 18, 2025 amendment deadline, but *at the inception of this case*. This alone is grounds to deny the motion to amend to add these claims. *See Oscar v. BMW of N. Am., LLC*, 2011 WL 6399505, at *2 (S.D.N.Y. Dec. 20, 2011) (a party fails to show good cause when the proposed amendment rests on information "that the party knew, or should have known, in advance of the deadline"); *see also Sokol Holdings, Inc. v. BMB Munai, Inc.*, 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) (collecting cases).

Rule 16 governs motions for leave to amend after a scheduling order has been entered, and thus Rule 16 governs Plaintiffs' motion. Rule 16(b) provides that a scheduling order "must" limit the time to amend the pleadings, and that a schedule may be modified "**only for good cause** and with the judge's consent." Fed. R. Civ. P. 16(b) (emphasis added). The Second Circuit is clear that Rule 16 provides that when a deadline in the scheduling order "cannot ***reasonably*** be met despite the ***diligence*** of the party ... where the moving party has demonstrated ***good cause***, the court may grant leave to amend the scheduling order to extend the deadline." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (emphasis added) (citing Fed. R. Civ. P. 16(b) and noting—consistent with "several" circuits—that Rule 16(b) governs motions to amend after the scheduling order deadline).

Rule 16(b) is well established as a heightened standard, because Rule 16 "is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker*, 204 F.3d at 340. The Second Circuit is clear that Rule

16's "standards may not be short-circuited by an appeal to those of Rule 15," as Rule 16 requires a different analysis: an analysis of good cause. *Id.* "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.* In similar contexts to the one here, courts hold that "[a]lthough Rule 15(a) generally is interpreted permissively, [the Plaintiffs] do not enjoy such a liberal interpretation under Rule 16(b)." *Feske v. MHC Thousand Trails Ltd. Partnership, et al.*, 2013 WL 1120816 (N.D. Cal. March 18, 2013) (denying motion to amend complaint to add a new class representative four months beyond the scheduling order deadline after adequacy concerns raised).

The "primary consideration" in the Rule 16 good-cause inquiry is the movant's diligence; if the party was not diligent, the inquiry should end. *Parker*, 204 F.3d at 340; *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003); *Congelados del Cibao v. 3 Kids Corp.,* 2021 WL 4635919, at *1 (S.D.N.Y. Oct. 6, 2021) (Liman, J.). Courts routinely deny leave to amend after a scheduling-order deadline where the movant fails to show diligence in discovering the facts or in seeking amendment. *See, e.g., Holmes v. Grubman*, 568 F.3d 429, 334-35 (2d Cir. 2009); *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147-48 (S.D.N.Y. 2012).

The absence—or presence of—prejudice cannot be used to sidestep the Rule 16(b) diligence requirement. *See Parker*, 204 F.3d at 340 (noting the "good cause" standard may not be "short-circuited" by an appeal to the standard under Rule 15). For motions to amend governed by Rule 16(b), "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 2009) (refusing to find good cause under Rule 16(a) where party received notice long

in advance of the deadline that the complaint did not name all necessary parties). In other words, a district court may consider other relevant factors aside from diligence, including whether the amendment of the pleading will prejudice the defendant, but the absence of prejudice to a nonmoving party does not alone fulfill the good cause requirement of Rule 16(b); the moving party must first show diligence. *See, e.g., Kodak Graphic Communications Canada Co. v. E.I. Du Pont De Nemours and Co.*, 2011 WL 4711968 (W.D.N.Y. Sept. 23, 2011), *report and recommendation adopted*, 2011 WL 6826650 (W.D.N.Y. Dec. 28, 2011) (holding that the lack of prejudice to the nonmoving party does not negate the requirement that the moving party act with diligence to amend its pleadings).

Despite clear guidance from the Second Circuit, Plaintiffs incorrectly argue that the standard of Rule 15 applies for Plaintiffs' untimely amendment. It does not. However, even if Plaintiffs had timely filed their motion to amend the Complaint nine months ago and within the parameters of this Court's Scheduling Order, which they did not, Plaintiffs still fail to satisfy the more lenient Rule 15 standard. Under Rule 15, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citations omitted).

Moreover, according to the Proposed Amended Complaint, Nathan's alleged involvement in the publication of false statements on the Websites occurred in May 2024 (ECF No. 193-1, ¶¶ 84-85), and the *Business Insider* Article was published on August 15, 2024. *Id.*, ¶ 78. Yet the Jones Parties did not serve discovery requests seeking documents concerning the Websites or the *Business Insider* Article until July 16, 2025 (ECF No. 193-4 at RFP Nos. 38-39) – ***after the statute of limitations had run on any defamation claim relating to the Websites***, and nearly a year after

the publication of the *Business Insider* Article. The Jones Parties' lengthy and unexplained delay in seeking discovery regarding these issues, which underlie their proposed claims against Nathan in the current motion for leave to amend the Complaint, further demonstrates their lack of diligence.

Plaintiffs concede that they knew about Nathan's alleged involvement with the *Business Insider* Article at least as early as August 6, 2025, when Nathan produced documents relating to this allegation. (Mem. at 10). Yet Plaintiffs did not move for leave to amend until December 8, 2025, over 4 months after they purportedly learned of this fact. As this Court held in the Case MTC Order, a six-week delay "demonstrates a lack of diligence." (ECF No. 188 at 5). Here, Plaintiffs' delay lasted over *twice as long* and is therefore even stronger evidence of their lack of diligence. *See Lesnik v. Lincoln Fin. Advisors Corp.*, 2019 WL 6169971, at *2 (S.D.N.Y. Nov. 20, 2019) (denying leave to amend where plaintiff provided "no satisfactory explanation" for waiting).

Similarly, Plaintiffs concede that they knew about the recording of the phone call that forms the basis of their proposed Illinois Eavesdropping Act claim against Heath as of October 5, 2025. (ECF No. 193-18). Yet they waited over 2 months to bring this motion – again, longer than the six weeks this Court held evidenced a lack of diligence. (ECF No. 188 at 5). Plaintiffs' longstanding pattern of lack of diligence eviscerates any argument they have to show "good cause" pursuant to Fed. R. Civ. P. 16, and thus their motion for leave to amend should be denied, and the Court should end its inquiry there. *Parker*, 204 F.3d at 340; *Grochowski*, 318 F.3d at 86.[3]

[3] On related noted, the initial Case Management Plan and Scheduling Order was filed by the Court on February 3, 2025. ECF No. 21; Lively ECF No. 58. Lively, Jones and Jonesworks moved to amend the Scheduling Order to extend various discovery dates and the date for motions to compel. Lively ECF No. 403. Jones/Jonesworks did not seek to amend the deadline for amending the Complaint. On July 15, 2025, the Court amended the Scheduling Order, but did not amend the deadline for parties to seek leave to amend their complaints. Lively ECF No. 425. On October 6, 2025, the Scheduling Order was amended with respect to expert disclosures and discovery. ECF No. 142. Again, no amendment was requested or ordered with respect to the deadline for amending the pleadings.

### B. Plaintiffs Are Not Entitled to Leave to Amend Under Rule 15

#### 1. Nathan and Heath Would Be Prejudiced by the Late Amendments

Although Rule 15 provides that leave should be freely given "when justice so requires," (*Foman v. Davis*, 371 U.S. 178, 182 (1962)), amendment should be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of amendment." *Id.*; *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007). Undue delay, bad faith and dilatory motive weigh against amendment. *See Berman v. Morgan Keegan & Co., Inc.*, 2011 WL 2419886, at *4 (S.D.N.Y. June 3, 2011); *S. Telecom Inc. v ThreeSixty Brands Group, LLC*, 2021 WL 979567 *4 (S.D.N.Y. Mar. 16, 2021) (Liman, J.) (denying motion for leave to amend for futility and undue delay which would cause prejudice to the defendants). The failure to show diligence under Rule 16 should weigh heavily against, if not forecloses, amendment under the more liberal requirements set forth Rule 15(a)(2).

While a lack of diligence and undue delay are factors, prejudice is considered the "most important" factor in a Rule 15 determination. Prejudice exists where amendment would require significant additional discovery, cause substantial delay, or alter the litigation's nature on the eve of dispositive motions or trial. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452-53 (S.D.N.Y. 2016); *see also*, *MacDraw, Inc. v. CIT Grp. Equip. Fin.*, 157 F.3d 956, 962 (2d Cir. 1998) (affirming denial of motion for leave to amend complaint where "the proposed negligent misrepresentation claim would require additional discovery, causing undue prejudice to the defendants"); *Tescher v. Experian Information Solutions, Inc.*, 2022 WL 18107432, at *1 (S.D.N.Y. Dec. 15, 2022) ("Allowing Plaintiff's proposed amendment would necessitate yet another extension of the discovery deadlines

in this case to allow the parties sufficient time to conduct [] discovery, causing undue delay to the resolution of this case."); *Schnepf v. Jerome H. Siegel, M.D., P.C.*, 1998 WL 474132, at *4 (S.D.N.Y. July 11, 1998) ("It is clear that if leave to amend were to be granted, defendants would be prejudiced because discovery is closed."). This is true where, as here, a motion to amend seeks to add an entirely new defendant. *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 359-60 (S.D.N.Y. 2020) (collecting cases).

Plaintiffs' amendments would require significant additional discovery, further delaying resolution of this action. For instance, Plaintiffs initially asserted a defamation claim against "John Does." A defamation claim against Nathan would require new discovery on, among other things, whether any of the alleged defamatory statements were true or otherwise privileged, to whom the statements were made, when the statements were made and Plaintiffs purported damages flowing from each allegedly defamatory statement. At the very least: (a) Jones and Joneworks' depositions would have to be reopened; (b) additional written discovery would have to be propounded upon the parties; (c) subpoenas would have to be served upon non-parties, including current and former employees of Jonesworks as well as current and former clients of Jonesworks; and (d) those non-parties would have to be deposed.

The proposed tortious interference with prospective business relations claim against Nathan would also require substantial discovery to determine the non-speculative business opportunities that would have been available to Plaintiffs and the concrete profits that those claimed future opportunities would have generated. While discovery was conducted on Plaintiffs' existing claim for interference with existing contracts, discovery on potential future relationships would open a whole new ballpark of fact discovery on subjects which are irrelevant to the existing claims and thus has not been delved into by any party. For instance, with respect to the *Business*

*Insider* Article: (a) Jones and Jonesworks would have to be re-deposed; (b) subpoenas for documents would have to be issued to *Business Insider* as well as to all sources of information used in the Article (*i.e.*, the people with whom the authors spoke); and (c) the authors and anyone who provided information for the Article would need to be deposed. Expert discovery would also be implicated on the reasonableness of claimed losses from future business relationships.

Finally, Heath is a new party to this lawsuit. Heath would be entitled to discovery relevant to the new eavesdropping claim and his defenses. For instance, under Illinois law, Plaintiffs must prove actual damages from the alleged recording. Thus, crucial discovery – including Plaintiffs' depositions – would be required to establish whether Plaintiffs were damaged by a single recorded call between Heath and Wayfarer's public relations agent (Jones) and the amount of such damages claimed, if any. Heath may also seek non-party discovery from Jones' family members, who were in London with Jones and may have been present during the call – destroying any reasonable expectation of privacy, an essential element of an Illinois eavesdropping claim.

In sum, the extensive additional discovery that would be required by the amendments, long after the close of discovery, would significantly and unduly prejudice Defendants and delay trial.

**2. The Proposed Amendments Are Futile**

In assessing futility of amendment, courts apply the same standard as a Rule 12(b)(6) motion to dismiss; thus, an amendment is futile if it would not survive a motion to dismiss. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Where claims are time-barred or legally deficient as a matter of law, amendment is futile. *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000); *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

**a. The Proposed Defamation Claim Is Time Barred**

New York law provides a one-year statute of limitations for defamation claims. (Mem. at

17); CPLR 215(3). Thus, if the proposed claim for defamation against Nathan does not "relate back" to the Complaint, the claim is untimely. CPLR Section 1024 allows for a Doe substitution on a related party theory after expiration of the stature of limitation party where a plaintiff: (1) "'exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name,'" and (2) "describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant." *Hogan v. Fischer*, 738 F.3d 509, 518-19 (2d Cir. 2013) (quoting *Bumpus v. N.Y.C. Transit Auth.*, 66 A.D.3d 26, 30 (2d Dep't 2009))."John Doe" pleadings "cannot be used to circumvent statutes of limitations." *Chinese Am. Citizens All. Greater New York v. New York City Dep't of Educ.*, 2024 WL 1795390, at *3 (S.D.N.Y. Apr. 25, 2024).

Plaintiffs failed to make a diligent effort to identify Nathan as the unknown defendant prior to the commencement of this action through the date the statute of limitations expired. There is no evidence that Plaintiffs exercised any pre-action due diligence to ascertain the identity of the John Doe defendants. *See Robertson v. Fluerinord*, 2024 WL 4728544, at *11 (S.D.N.Y. Nov. 8, 2024) (rejecting CPLR 1024 relation back argument where plaintiff failed to exercise due diligence to identify Doe defendants within statute of limitations and provided no information regarding pre-filing efforts plaintiff may have made to identify proper party).

The alleged defamatory Websites were published in May 2024. (ECF No. 193-1, ¶ 85). Plaintiffs waited *more than seven months*, until December 24, 2024 to commence this action. (ECF No. 1-1). Plaintiffs then waited *another seven months*, until July 16, 2025, to serve Nathan with requests for documents pertaining to the Websites (and the *Business Insider* article). (ECF No. 193- 4 at RFP Nos. 38-39). Those requests were served *after the statute of limitations expired*, in

May 2025.[4] *See Fahlund v. Nassau County*, 265 F.Supp.3d 247, 258 (E.D.N.Y. 2017) (rejecting CPLR 1024 relation back argument where plaintiff made no effort to ascertain identity of defendant before statute of limitations expired); *Walker v. GlaxoSmithKline, LLC*, 161 A.D.3d 1419, 1421 (3d Dep't 2018) (affirming summary judgment, and rejecting CPLR 1024 relation back argument, where "plaintiff failed to establish that he made timely and diligent efforts to discover defendants' identities prior to when the statute of limitations expired"); *Tucker v. Lorieo*, 291 A.D.2d 261, 261-62 (1st Dep't 2002) (reversing order granting leave to amend where plaintiff waited ten months after filing complaint to seek documents concerning identity of proper defendant and waited more than a year after commencement, long after statute of limitations had expired, to seek leave to amend). According to their Complaint filed a year ago, Plaintiffs believed the John Doe defendants "act[ed] in concert" with Nathan to publish the Websites. (ECF No. 1-1, ¶¶ 92-94). In other words, Plaintiffs knew of Nathan's identity and purported involvement with the Websites when they filed their Complaint in December 2024 but nevertheless waited until after the statute of limitations expired to assert a defamation claim against her. Plaintiffs have not exercised the due diligence necessary to invoke the "relation back" doctrine and amendment to add a defamation claim is futile.

**b. Plaintiffs Fail to Plead the Elements of Defamation**

To plead a defamation claim, a plaintiff must adequately allege: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice); (4) falsity of the defamatory statement; and (5) special damages or per se actionability. *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012). The Complaint

[4] Although Plaintiffs allege they "also served subpoenas on the platforms hosting the websites and social media pages" (Mem. at 18), they neglected to attach those subpoenas to their motion, likely because they, too, were not served in a diligent fashion.

must identify "the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000).

First, Plaintiffs do not attribute a particular statement to Nathan. Rather, Nathan allegedly made or published defamatory statements to at least one other person, and in some cases to multiple persons. (ECF No. 193-1, ¶ 85 ("On May 6, 2024, Wallace and Nathan published the false and defamatory website about Jones and Jonesworks…"); ¶ 91 ("On information and belief, Nathan, Wallace, Kalantari, Skyline and the Doe Defendants published the defamatory statements on the Websites…"); ¶ 211 ("John Does 1-10 and Nathan published or caused to be published the Websites.")). Such group pleading is insufficient to meet the exacting standard for identifying the maker of each communication. *See Luethke v. Seagram Co., Ltd.*, 2000 WL 1880324, at *3 (S.D.N.Y. Dec. 28, 2000) (dismissing defamation claim where plaintiff did not "specif[y] which defendants made the statements").

In addition, with a single exception, Plaintiffs have failed to identify the temporal aspect of the statements with the requisite specificity. *See Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 775 F. Supp. 2d 730, 738 (S.D.N.Y. 2011) (defamation claim stating that one statement was made on August 16, 2009 and the rest were made "on or following August 16, 2009" was insufficiently pled). The Proposed Amended Complaint identifies only one date when a single alleged defamatory statement was made, but no others. (ECF No. 193-1, ¶ 85). Thus, the temporal aspect of the defamation claim is insufficiently pled, and the claim is deficient.

### 3. The Proposed Tortious Interference Claim Is Deficient

#### a. The Tortious Interference Claim Is Duplicative

In *Goldman v. Barrett*, 733 Fed Appx. 568 (2d Cir. 2018), the Second Circuit held that a tortious interference claim must be dismissed as duplicative where it is "premised on identical

underlying factual content" as a defamation claim. *Id*. at 571. Where the alleged harm derives from purported defamatory statements rather than an independent source, the tortious interference claim cannot survive as a separate cause of action because claims sounding in tort are in fact defamation claims "where the entire injury complained of by plaintiff flows from the effect on his reputation." *Id*. at 570; *see also Kall v. Peekskill City Sch. Dist.*, 2020 WL 2555256, at *11 (S.D.N.Y. May 19, 2020); *Chao v. Mount Sinai Hosp.*, 2010 WL 5222118, at *13 (S.D.N.Y. Dec. 17, 2010).

Plaintiffs' proposed claim for tortious interference with prospective business relations is duplicative of the defamation claim. Both claims arise from Nathan's purported publishing of false statements on the Websites. (*Compare* ECF No. 193-1, ¶ 188 *with* ¶¶ 211-213). Most importantly, the alleged harm to Plaintiffs from both claims arises out of the purported effect on Plaintiffs' reputation. (*See id.*, ¶ 191 and ¶ 219). Because the tortious interference claim against Nathan is duplicative of the defamation claim, amendment to add the tortious interference claim is futile and leave to amend should be denied.

**b. The Tortious Interference Claim Is Not Pled With Specificity**

To state a claim for tortious interference with business relations under New York law, a plaintiff must adequately allege that: (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair or improper means; and (4) the defendant's acts injured the relationship. *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 Fed. Appx. 102, 105 (2d Cir. 2012).

First, "at the motion to dismiss stage, a plaintiff must specify some particular, existing business relationship through which plaintiff would have done business but for alleged tortious behavior." *Brown Media Corp. v. K&L Gates, LLP*, 586 B.R. 508, 530 (Bankr. E.D.N.Y. 2018) (internal quotation omitted); *Cambridge Capital LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 474

(S.D.N.Y. 2021) (Liman, J.) (dismissing tortious interference with prospective business relations counterclaim where "[defendant] has not identified any specific business relationship with which [plaintiff] interfered"); *Evliyaoglu Tekstil A.S. v. Turko Textile LLC,* 2020 WL 7774377 *2 (S.D.N.Y. Dec. 30, 2020) (Liman, J.) (dismissing counterclaim that as pled "d[id] not contain sufficient factual material to make out a claim for tortious interference with prospective economic advantage). Plaintiffs fail to specify any business relationships with which Nathan purportedly interfered, referring only to a single unidentified "mutual client." (ECF No. 193-1, ¶¶ 185-91), which is insufficient to plead a tortious interference claim.

Next, for "wrongful means," a plaintiff must demonstrate that the defendant's conduct "amount[ed] to a crime or an independent tort." *Valley Lane Indus. Co.*, 455 Fed. Appx. at 106. Plaintiffs' allegations are woefully short of meeting this standard. Plaintiffs allege that Nathan engaged in a public relations campaign to plant negative and false stories in the press and on the Internet about Plaintiffs. This conduct does not amount to a crime or independent tort. "Pleading the presence of false statements alone is not enough to support a claim for tortious interference." *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008); *see also Boehner v. Heise*, 734 F. Supp. 2d 389, 406 (S.D.N.Y. 2010) ("[N]o reasonable juror could conclude that Plaintiffs satisfy the elements of tortious interference with prospective economic relations merely by showing that Defendants said bad things about them.").

Finally, "conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Valley Lane Indus. Co.*, 455 Fed. Appx. at 107 (quotation omitted). Thus, allegations that are directed at the plaintiff, rather than a third party, "could not satisfy the wrongful means element even if they did sufficiently allege tortious conduct." *Id*. at 106-07; *see also Conflict*

*Int'l, Inc. v. Komorek*, 2024 WL 1347577, at *14 (S.D.N.Y. Mar. 29, 2024) (dismissing claim for tortious interference with prospective economic advantage where the alleged acts were not directed at plaintiff's clients). Here, Plaintiffs' allegations of misconduct are entirely directed at Plaintiffs themselves: Nathan is alleged to have carried out a negative publicity campaign directed at Plaintiffs. (ECF No. 193-1, ¶¶ 186-89). There are no allegations of any conduct by Nathan toward any third parties (including the unidentified "mutual client"). Therefore, Plaintiffs have failed to adequately plead a claim for tortious interference with prospective business relations, this claim is insufficient and the request to add it should be denied.

#### c. The Alleged Tortious Interference Is Economically Justified

A well-recognized defense to a claim for tortious interference with prospective business relations is that the conduct at issue was taken to protect a party's economic interest. "When a defendant has acted with a permissible purpose, such as normal economic self-interest, wrongful means have not been shown, even if the defendant was indifferent to the plaintiff's fate." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quotation omitted). In *RBG Mgmt. Corp. v. Village Super Market, Inc.*, 692 F. Supp. 3d 135 (S.D.N.Y. 2023), for instance, the court dismissed tortious interference with prospective business relations claims where the defendant's actions were motivated by legitimate competitive interests rather than wrongful purpose. *Id*. at 150; *see also Cartiga, LLC v. Aquino*, 2025 WL 388804, at *11 (S.D.N.Y. Feb. 4, 2025); *Camelot SI, LLC v. ThreeSixty Brands Group LLC*, 632 F. Supp. 3d 471, 484 (S.D.N.Y. 2022).

Plaintiffs' proposed tortious interference claim fails because it alleges that the conduct at issue was undertaken by Nathan at least partly for a legitimate competitive purpose, rather than a wrongful one. Plaintiffs allege that Nathan's negative public relations campaign was done "intending for a mutual client to terminate his relationship with Jones and Jonesworks" (ECF No.

193-1, ¶ 186), and that "[t]he mutual client ultimately and as a result did not renew or enter into an agreement with Jones and Jonesworks that he would have but-for the aforementioned conduct." (*Id.*, ¶ 190). Indeed, Plaintiffs expressly allege that Nathan's motivation was for Nathan to maintain that client. (*Id.*, ¶¶ 56 – 57). By Plaintiffs' own allegations, therefore, the alleged conduct was undertaken for a competitive purpose, and to protect Nathan's relationship with this purported "mutual client." For this additional reason, the claim for tortious interference with prospective business relations is insufficient and the motion to amend to add this claim should be denied.

### 4. The Proposed Eavesdropping Claim Is Deficient

#### a. Plaintiffs Fails to Plead Subject Matter Jurisdiction

Subject matter jurisdiction requires Plaintiffs must plead damages that exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. This amount-in-controversy threshold cannot be aggregated among various defendants; it must be satisfied with respect to each defendant. *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 870, 874 (S.D.N.Y. 1995). "Conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364-65 (S.D.N.Y. 2019). "Dismissal for failure to meet the jurisdictional amount is justified when, as here, it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.*; *see also Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount.").

Plaintiffs' proposed claim for violation of the Illinois Eavesdropping Act fails to establish to a reasonable probability that Heath's recording of a single phone call would or did cause Plaintiffs in excess of $75,000 in damages. In fact, Plaintiffs do not claim *any* damages specifically in connection with this proposed cause of action. Rather, Plaintiffs merely allege in conclusory

fashion that all their claims, *in the aggregate*, exceed $75,000. (ECF No. 193-1, ¶ 31). That is insufficient because "the law is clear that plaintiff must satisfy the jurisdictional amount as against each individual defendant." *Green v. Doukas*, 2001 WL 767069, at *2 (S.D.N.Y. June 22, 2001) (collecting cases). Moreover, Plaintiffs do not allege *facts* sufficient to make damages exceeding $75,000 reasonably probable, as is required. (ECF No. 193-1, ¶¶ 137, 221-26); *Ameer v. Fleet Mech. Sys.*, 2019 WL 1949858, at *2 (S.D.N.Y. Apr. 17, 2019).

Plaintiffs do not allege, for instance, that Heath published, disseminated, or otherwise used the recording in any improper way that would have caused them damage. *See Media Logic USA, LLC v. Prinova US, LLC*, 76 Misc.3d 1218(A) (Sup. Ct. Albany Cty. 2022) (granting summary judgment dismissing Illinois Eavesdropping Act counterclaim for lack of damages where recordings "were not published or disseminated in any way"). Accordingly, Plaintiffs fail to plead to a "legal certainty" that this claim would support damages in excess of $75,000.

### b. Plaintiffs Do Not Plead Personal Jurisdiction Over Heath[5]

Plaintiffs' Proposed Amended Complaint fails to allege personal jurisdiction over Heath under either New York's long-arm statute or the Due Process Clause. "[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The Proposed Amended Complaint does not allege that Heath is domiciled, physically present, or personally does business in New York, as required to support an exercise of general jurisdiction under CPLR Section 301. Plaintiffs' Illinois Eavesdropping Act claim does not arise out of activities that Heath purposely directed at New York. The alleged conduct on which Plaintiffs' claim is based did not take place in New York –

[5] A special appearance is not required to contest personal jurisdiction. *Sojka v. Mudge*, 2025 WL 2211705, at *4 (S.D.N.Y. July 1, 2025); *see also Taormina v. Thrifty Car Rental*, 2016 WL 7392214 (S.D.N.Y. Dec. 16, 2016) (granting motion to dismiss based upon both lack of personal jurisdiction and failure to state a claim).

Heath placed the call from Illinois to Jones in London. (ECF No. 193-1, ¶¶ 137, 222-26). While Jonesworks has its principal place of business in New York, personal jurisdiction turns on a defendant's contacts *with the forum state*, not a defendant's contacts with a plaintiff who resides in the forum. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). Plaintiffs do not adequately allege that either prong of CPLR Section 302(a)(3) is satisfied to support an exercise of specific jurisdiction.

Plaintiffs argue that Heath "is already a named defendant in the *Lively* matter" (Mem. at 2), but it is well-established that participating in other litigation cannot establish specific jurisdiction, which must be based on contacts with the forum related to the claim at issue. "[I]nvolvement in other cases in New York does not create specific jurisdiction because a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction, and those other cases create no connection between the forum and the specific claims at issue here." *Johnson v. UBS AG*, 791 F. App'x 240, 243 (2d Cir. 2019) (quoting *Bristol-Myers Squibb Co v. Superior Court of California*, 137 S. Ct. 1773, 1781 (2017)). Thus, the claim cannot proceed. *See Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir.2010) (affirming district court's order denying leave to amend where amendment would be "futile" because the "plaintiffs had failed to demonstrate personal jurisdiction" over defendant).

**c. The Illinois Eavesdropping Act Does Not Apply**

Even if this Court had jurisdiction over the claim against Heath, the Illinois Eavesdropping Act does not apply. The only "hook" for Plaintiffs' proposed claim under the Illinois Eavesdropping Act was Heath's temporary presence in Illinois when the call in question was made. (ECF No. 193-1, ¶ 223). However, neither Plaintiffs nor Heath are domiciled in Illinois, and neither

are alleged to have any interest in or connection with Illinois. (*Id.*, ¶¶ 24, 29). *See Golden Archer Inv., LLC v. Skynet Fin. Sys.*, 908 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (applying Illinois Eavesdropping Act to scenario where party in New York "reached into Illinois" to record call with party in Illinois *and* "injury was sustained in Illinois"). Because there is no basis to apply the Illinois Eavesdropping Act here, adding the proposed claim is futile.

Plaintiffs lack standing to bring a statutory claim under Illinois law. Indeed, courts routinely hold that a plaintiff is unable "to pursue claims based on statutory causes of action created by states where Plaintiffs neither lived nor were injured." *Zapadinsky v. Blue Diamond Growers*, 2023 WL 5116507, at *10 (E.D. Wis. Aug. 7, 2023); *see also, e.g.*, *Locke v. Aston,* 31 A.D.3d 33, 35-37 (1st Dep't 2006) (holding that New York resident could not assert eavesdropping claim under California law, even though the defendant was located in California at the time she illicitly recorded phone call); *Drake v. Toyota Motor Corp.*, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020) (holding "parties generally lack standing to bring claims under the laws of states other than the ones they reside in."). Given that the purpose of the Illinois law "is to assure Illinois citizens that their conversations would not be recorded by another person without their consent," *People v. Clark*, 6 N.E.3d 154, 158 (Ill. 2014), there is no basis to apply the law to a claim brought by Plaintiffs, who are not alleged to have suffered any injury in Illinois, *see Locke*, 31 A.D.3d at 36 (looking to statute's purpose to determine that plaintiff "is not within the class of persons intended to be protected by the statute.").

Given that the Court lacks subject matter jurisdiction over the proposed claim against Heath and lacks personal jurisdiction over him, and given that the Illinois Eavesdropping Act is inapplicable, the Court need not decide whether the laws of the United Kingdom (where Jones was located at the time of the call), New York (where Jonesworks maintains its principal place of

business),[6] or some other jurisdiction applies to any claim by Plaintiffs for eavesdropping and, whether under that law, Plaintiffs can state a claim. For example, New York law permits conversations to be recorded with the consent of only one party. N.Y. Penal Law 250.00; *People v. Lasher*, 58 N.Y.2d 962, 963 (1983).

#### d. Plaintiffs Do Not Establish a Reasonable Expectation of Privacy

Assuming the Illinois Eavesdropping Act applies, the statute only applies where there is an expectation of privacy. 720 ILCS 5/14-1(d) defines a conversation under this statute as "any oral communication between 2 or more persons, whether in person or transmitted between the parties by wire or other means, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." Where there is no expectation of privacy, a claim under the Illinois Eavesdropping Act fails. *See Cook Au Vin, LLC v. Mid-Century Ins. Co.*, 226 N.E.3d 694, 703 (Ill. App. Ct. 2023) (no reasonable expectation of privacy where "Dufner called Meyer to obtain information to process plaintiff's insurance claim, and plaintiff has not alleged that it did not expect Dufner to forward that information to other employees at Mid-Century"); *People v. Johnson*, 2021 WL 1894498, at *11 (Ill. App. Ct. May 11, 2021) (no expectation of privacy where conversation could be overheard or intercepted).

Plaintiffs do not plead a reasonable expectation of privacy because: (1) at the time of the call, Jones was with other individuals, who could overhear her; and (2) both parties contemplated sharing, and in fact did share, the content of the call with others. Thus, the Illinois Eavesdropping Act claim is legally insufficient and the motion to amend to add this claim should be denied.

As Jones noted in contemporaneous communications, she was in London with her family at the time the call was made. (Fritz Decl., Ex. 2 at HEATH_000046705). On the call itself, Jones

---

[6] *See Granite State Ins. Co. v. Primary Arms, LLC*, 2025 WL 3533484, at *1 n.1 (2d Cir. Dec. 10, 2025) (domicile of LLC for choice-of-law analysis is where LLC is headquartered).

stated: "My entire family is here." (ECF No. 193-18 at 8:35). At 6:37-6:39 on the call, Jones can be heard speaking with someone else. (*Id.*). And at various moments on the call – at 1:35-1:50, 10:23-10:47, 11:47 and 12:34-12:35 – other voices on Jones' side of the call, presumably her family members, can be heard. (*Id.*). Accordingly, Jones did not have a reasonably expectation of privacy on the call, the proposed Illinois Eavesdropping Act claim fails.

Further, the purpose of the call between Jones and Heath was to discuss Jonesworks' role as representative of the Wayfarer Parties under the Wayfarer Agreement, whether Plaintiffs were responsible for a leak to the *Daily Mail* and whether or not Plaintiffs should continue to speak publicly on behalf of the Wayfarer Parties. (ECF No. 193-1, ¶¶ 131-37). At various times on the call, Jones indicated her intention to communicate the content of the call with third parties. (ECF No. 193-18 at 0:21-0:25 ("I can call anyone and speak about something they said about Stephanie Jones."); 2:54-3:00 ("I will call Leslie [Blake Lively's PR consultant] and tell her that I heard she said I was leaking things to *Daily Mail* and I want her to know that I haven't."); 5:57-6:09 ("You cannot take my name and my livelihood and my integrity and say that Sony is accusing me and then try to prohibit me from calling Sony."); 12:57-13:05 ("I am going to let Danny [a Sony representative] know that I did not call *Daily Mail*. I can let anybody that I want to know that I did not call.")).

True to her word, Jones did in fact discuss the content of the call extensively with other parties besides Heath. The same day as the call, for example, she engaged in an extensive texting thread with not only Heath but also Abel and Tera Hanks (the latter a representative of the Wayfarer Parties) that covered who was responsible for the *Daily Mail* leak as well as whether Plaintiffs could respond to media inquiries on behalf of the Wayfarer Parties. (Fritz Decl. Ex. 2). The next day, August 9, 2024, Jones emailed Baldoni, Heath and Ms. Hanks on the same topics,

and even bcc'ed her husband. (Fritz Decl. Ex. 1). And on August 14, 2024, as she had threatened to do, Jones reached out to Sony via text regarding the *Daily Mail* leak. (Fritz Decl. Ex. 3).

Because Jones shared the content of the call with others besides Heath, she can have had no reasonable expectation of privacy regarding the call. Thus, the proposed Illinois Eavesdropping Act is deficient and the motion to amend to add it should be denied.

**e. Plaintiffs Fail to Plead Any Actual Damages**

Civil remedies for violation of the Illinois Eavesdropping Act are: (1) injunctive relief, (2) actual damages and (3) punitive damages. 720 ILCS 5/14-6. As noted, Plaintiffs fail to plead actual damages, rendering the claim legally insufficient. *See Campbell v. St. Jude Medical, S.C., Inc.*, 2018 WL 5779482, at *10 (D. Minn. Nov. 2, 2018) (dismissing counterclaim under Illinois Eavesdropping Act where defendant "has not established that it suffered any actual or punitive damages that would entitle it to relief under the eavesdropping statute"); *Media Logic USA, L.L.C.*, 76 Misc.3d 1218(A) (Illinois Eavesdropping Act counterclaim failed where defendant "failed to identify a plausible basis for an award of actual damages"). Notably, even if Plaintiffs sought punitive damages, such damages are warranted only in cases when an individual acts with malice, deliberate violence or gross negligence indicating a wanton disregard for the rights of others, none of which is pleaded or evident from the allegations of this claim. *See Locsmondy v. Arrow Pneumatics*, 2001 WL 109810, at *8 (N.D. Ill. Feb. 5, 2001) (claim under Illinois Eavesdropping Act did not warrant consideration of punitive damages where facts surrounding claim were "completely devoid of wanton or malicious behavior").

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs' motion should be denied in its entirety.

Dated: January 8, 2026

MEISTER SEELIG & FEIN PLLC

_/s/ Kevin Fritz___________________
Mitchell Schuster
Kevin Fritz
Joaquin Ezcurra
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@msf-law.com
kaf@msf-law.com
je@msf-law.com

LINER FREEDMAN TAITELMAN + COOLEY, LLP
Bryan J. Freedman (*pro hac vice*)
Ellyn S. Garofalo (*pro hac vice*)
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
egarofalo@lftcllp.com

SHAPIRO ARATO BACH LLP
Alexandra A.E. Shapiro
Jonathan Bach
1140 Avenue of the Americas, 17th Floor
New York, NY 10036
Tel: (212) 257-4881
Email: ashapiro@shapiroarato.com
jbach@shapiroarato.com