# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLAKE LIVELY, PLAINTIFF | ) |
| | ) CASE NO. 1:24-CV-10049-LJL |
| VS. | ) (CONSOLIDATED WITH 1:25-CV-00449-LJL |
| WAYFARER STUDIOS LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, THE AGENCY GROUP PR LLC, AND JENNIFER ABEL, DEFENDANTS | ) |
| JENNIFER ABEL, THIRD-PARTY PLAINTIFF | ) |
| VS. | ) |
| JONESWORKS LLC THIRD-PARTY DEFENDANT | ) |

ORAL AND VIDEOTAPED DEPOSITION OF JED WALLACE
OCTOBER 10
CONFIDENTIAL

ORAL AND VIDEOTAPED DEPOSITION OF JED WALLACE, produced as a witness at the instance of the Jonesworks and duly sworn, was taken in the above styled and numbered cause on Friday, October 10, 2025, from 9:06 a.m. to 2:25 p.m., before Janalyn Elkins, CSR, in and for the State of Texas, reported by computerized stenotype machine, at the offices of Jackson Walker, 100 Congress Avenue, Suite 1100, Austin, Texas, pursuant to the Federal Rules of Civil Procedure and any provisions stated on the record herein.

A P P E A R A N C E S

FOR BLAKE LIVELY:
MICHAEL J. GOTTLIEB
MELISSA TAUSTINE
AARON E. NATHAN
WILKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Mgottlieb@wilkie.com
AND
LAURA PRATHER
HAYNES AND BOONE, LLP
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Tel: (512) 867-8400
Laura.prather@haynesboone.com

FOR JED WALLACE:
CHARLES L. BABCOCK
JACKSON WALKER, LLP
1401 McKinney, Suite 1900
Houston, Texas 77010
Tel: (713) 752-4210
cbabcock@jw.com

FOR JONESWORKS, LLC
KRISTIN TAHLER
MORGAN ANSTASIO
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel: (213) 443-3000
kristintahler@quinnemanuel.com

FOR WAYFARER STUDIOS, LLC, JUSTIN BALDONI, JAMEY HEATH, STEVE SAROWITZ, IT ENDS WITH US MOVIE LLC, MELISSA NATHAN, JENNIFER ABEL, AND THE AGENCY GROUP PR, LLC
MILES COOLEY
THERESA TROUPSON
LINER FREEDMAN TAITELAN & COOLEY, LLP
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Tel: (310) 201-0045
mcooley@lftcllp.com

VIDEOGRAPHER: Good morning. We are going on the record at 9:06 a.m. Central Standard Time on October 10, 2025. This is Media Unit 1 of the video-recorded deposition of Jed Wallace taken by counsel for the Plaintiff in the matter of Stephanie Jones, et al. versus Jennifer Abel, et al. Filed in the United States District Court for the Southern District of New York, Case No. 125-CV-00779-LJL. The location of the deposition is 100 Congress Avenue, Austin, Texas. My name is Timothy Desadier representing Veritext, and I am the videographer. The court reporter is Janalyn Elkins from the firm Veritext.

Counsel and all present will now state their appearances and affiliations for the record, beginning with the noticing attorney.

MS. TAHLER: Kristin Tahler from Quinn Emanuel for Stephanie Jones and Jonesworks.

MS. ANASTASIO: Morgan Anastasio, Quinn Emanuel for the same.

MR. GOTTLIEB: Mike Gottlieb from Willkie Farr & Gallagher on behalf of Ms. Lively.

MS. TAUSTINE: Melissa Taustine from Willkie Farr & Gallagher on behalf of Blake Lively.

MS. PRATHER: Laura Prather, Haynes & Boone on behalf of Ms. Lively.

MR. COOLEY: Miles Cooley and Theresa Troupson, Liner Freedman Taitelman + Cooley on behalf of the Wayfarer Defendants.

MR. BABCOCK: Chip Babcock with Jackson Walker on behalf of the witness.

JED WALLACE,

having been duly sworn, testified as follows:

MR. BABCOCK: Kristin, do we want this confidential or do you care?

MS. TAHLER: Yeah, no, I think -- I think we should designate it confidential.

MR. BABCOCK: Okay. And -- and I believe there's an -- an agreement that the deposition will last no longer than four hours.

MS. TAHLER: Yes, there's that agreement.

MR. BABCOCK: Okay.

MS. TAHLER: And there may be moments of AEO, but it doesn't look like that's going to be an issue today, because I don't think we have any clients on.

MR. BABCOCK: Great. Perfect.

EXAMINATION

Q. (BY MS. TAHLER) All right. Good morning, Mr. Wallace.

A. Good morning.

Q. My name is Kristin Tahler. I represent Stephanie Jones and Jonesworks in this. Is your full name, sir, Jed Avery Wallace?
A. It is.
Q. And you understand that today, you're under oath just as you were yesterday, right?
A. I do.
Q. And you're required to give full and truthful testimony?
A. I do.
Q. Is there any reason that you can't give full and truthful testimony today?
A. No.
Q. Is there anything that would impede your ability to recall past events?
A. No.
Q. So the same rules apply as of -- as yesterday, so I'm not going to go through that in detail with you, but just a couple of things. One, if you -- if I ask a question and you don't understand, please ask for clarification. Otherwise, I'm going to assume that you understood it.
A. Okay.
Q. Okay? And then the second, and you did a great job with this yesterday, so I don't think it will be a

Katie Case?

A. I don't recall.

Q. Was it within the last year?

A. No.

Q. Within the last five years?

A. Yeah, I don't recall.

Q. About how many times do you recall communicating with Katie Case?

A. I -- I have no idea.

Q. Did you work with Katie Case in connection with work that you did for Rebel Wilson?

A. Not that I recall.

Q. Do you recall Katie Case having any involvement in work that you did for Rebel Wilson?

A. Not that I recall.

Q. Is it possible?

A. I'd need more details. I'm not certain.

Q. What about the Alexander Brothers, did Katie Case have any -- did you do any work related to the Alexander Brothers with Katie Case?

MR. COOLEY: Objection.

THE WITNESS: Yeah, not that I recall.

Q. (BY MS. TAHLER) Do you recall being on a Signal chat with Katie Case and Melissa Nathan in August of 2024?

if requested?

MR. COOLEY: Objection.

THE WITNESS: I -- I cannot do that.

Q. (BY MS. TAHLER) Do you know people who can do that?

MR. COOLEY: Objection.

THE WITNESS: Not that I recall.

Q. (BY MS. TAHLER) We're going to mark a couple of exhibits now, so bear with me while we go through that.

A. Okay.

MS. ANASTASIO: We're at 41.

THE REPORTER: 42.

MS. ANASTASIO: 42. So this will be 42.

(Exhibit Nos. 42-46 were marked.)

Q. (BY MS. TAHLER) Mr. Wallace, you've been handed several exhibits. Before we get into the details of the exhibits, are you familiar generally that in May 2024, a website and a number of social media accounts that were unfavorable to Stephanie Jones appeared online?

A. I don't know the specifics, but I've heard that.

Q. Where did you hear that from?

A. I believe the lawsuit. And early on, a

conversation with Stephanie.

Q. You've been handed a printout of the website that I'm referring to, a second website that was put up, and then a Twitter account, a Facebook account, and a Pinterest account, all that link back to that website.

Have you seen these documents before online?

A. Can -- can I read through them?

Q. Yeah. I'm not going to ask you detailed questions about the website, so you don't have to --

A. Okay.

Q. -- read the whole thing. But if you want to familiarize yourself.

A. Okay. Thanks.

Q. Mr. Wallace, you've just reviewed Exhibits 42 through 46, which are a series of websites and negative social media accounts about Stephanie Jones.

Have you seen these documents online before today?

A. I did see this website.

Q. You did see Exhibit 42?

A. I believe so.

Q. When did you see Exhibit 42?

A. I don't recall.

Q. Were you involved in the creation of

Exhibit 42?

A. No.

Q. Were you involved at all in getting Exhibit 42 online?

A. No.

Q. Were you involved at all in the copy that is drafted for Exhibit 42?

A. No.

Q. Did you contribute to its existence in any way?

A. No.

Q. We've discussed Katie Case earlier, Mr. Wallace. Are you aware that Katie Case testified in this matter?

A. I don't know the specifics. I'm aware she testified.

Q. Have you reviewed her testimony?

A. I have not.

Q. You understand Ms. Case testified under oath under penalty of perjury, do you?

A. Okay, yeah.

Q. Like you are today?

A. Yes.

Q. And I will represent to you -- were you on a Signal chat with Ms. Case and Ms. Nathan in 2024, in May of 2024?

(Brief recess.)

VIDEOGRAPHER: Back on the record. Time is 10:08.

Q. (BY MS. TAHLER) Mr. Wallace, when we broke, we were looking at a series of websites and social media accounts related to Ms. Jones. Could you look at what's been marked as Exhibit 44?

A. Yes.

Q. Exhibit 44 is a series of tweets related to the stephaniejonesleaks website.

Do you see that?

A. Tweets or accounts?

Q. Accounts. Apologies.

A. Yes.

Q. Did you have any involvement of any tweets that went into this -- that were posted onto any of those accounts?

MR. COOLEY: Objection, form.

THE WITNESS: Yeah, I did not.

Q. (BY MS. TAHLER) Ms. Case testified that she drafted tweets about Ms. Jones and posted to one of those sites. Are you aware of that?

A. I am not.

Q. Did you have any involvement with Ms. Case in tweets that were posted to any of those accounts?

A. I did not.

Q. I'll represent to you that Katie Case testified that she spoke with you in connection with the tweets. Does that refresh any recollection that you worked with Ms. Case in connection with tweets that were posted to any of the accounts in Exhibit 44?

MR. BABCOCK: Objection.

THE WITNESS: It does not.

Q. (BY MS. TAHLER) Mr. Wallace, are you -- is it your testimony today that if Katie Case testified under oath that she spoke to you in connection with tweets that were posted to one of the accounts in Exhibit 44 that Ms. Case gave false under-oath testimony?

MR. BABCOCK: Objection.

THE WITNESS: Yeah, I have no idea what her testimony was.

MR. COOLEY: Same.

THE WITNESS: Can't answer that.

Q. (BY MS. TAHLER) I'm representing to you that Ms. Case testified that she worked with you in connection with tweets that were posted to one of the accounts at Exhibit 44. And I'm asking you if it is your testimony that Ms. Case testified about that falsely?

MR. BABCOCK: Objection.

MR. COOLEY: Same.
THE WITNESS: I can't speak to that.
Q. (BY MS. TAHLER) So Ms. Case's testimony could be accurate; is that right?
MR. BABCOCK: Objection.
MR. COOLEY: Same.
THE WITNESS: I can't answer that.
Q. (BY MS. TAHLER) It's possible that Ms. Case spoke to you about tweets that were posted to one of the accounts in Exhibit 44?
A. I don't recall.
Q. So it's possible?
A. I can't answer that.
Q. You can answer yes or no if it's possible.
MR. BABCOCK: Objection.
THE WITNESS: I -- I don't --
MR. COOLEY: Joining.
THE WITNESS: -- have all the details. I'm not certain how to answer that.
Q. (BY MS. TAHLER) There are no more details to give. I'm simply asking you yes or no. Is it possible that Katie Case spoke to you about tweets that were posted to one of the accounts in Exhibit 44?
MR. COOLEY: Objection.
MR. BABCOCK: Same objection.

A. It related to Rebel's claims or related to, you know, her -- the -- her claims on set, I believe.
Q. Rebel's claims on set?
A. I -- Rebel's claims. Let's leave it at that.
Q. Rebel's claims on set of the movie The Deb?
A. I -- I don't recall.
Q. Were Rebel's claims outrageous?
A. I -- I don't recall.
Q. When was this article?
A. I have no idea.
Q. Do you recall whether this discussion was sometime in 2024?
A. I don't know exactly.
Q. We're going to mark 51.
(Exhibit No. 51 was marked.)
MR. BABCOCK: Thank you.
Q. (BY MS. TAHLER) Mr. Wallace, you'll -- you're now marking -- strike that.
You're now reviewing what's been marked as Exhibit 42. It is a --
MR. BABCOCK: 51.
Q. (BY MS. TAHLER) 51, sorry. Exhibit 51, what is a website appearing at amandaghostsucks.com.
MR. BABCOCK: Catchy.
Q. (BY MS. TAHLER) Mr. Wallace, do you recognize

this website?

A. I do not. Let me read through it, please. Okay.

Q. Mr. Wallace, do you recognize Tab 51 -- or strike that. Excuse me. Exhibit 51?

A. Yeah. I -- I -- I don't recognize it.

Q. Have you ever seen the -- Exhibit 51 before?

A. The website, I have not seen.

Q. Anything else contained in Exhibit 51 that you've seen before?

A. I can't answer that without really digging in. But I don't recall.

Q. I'm just wondering why you clarified the website in your previous answer.

A. Yeah, I mean, just reading through the first page, I saw some of the content.

Q. And have you seen some of the content before?

A. Seems like it's similar to the Daily Mail article.

Q. Other than the Daily Mail article, do you have any recollection of seeing any of the content before?

A. No. Maybe on social media. I'm not certain.

Q. Do you have any recollection of discussing any of the content contained in Exhibit 51 before?

A. I got to dig deeper into the content. I don't

Q. (BY MS. TAHLER) You're not certain whether or not a website amandaghostsucks and a website stephaniejonesleaks are similar?

MR. COOLEY: Objection.

MR. BABCOCK: Objection.

THE WITNESS: Yeah, I -- I don't know. That's a broad statement. They both have URL addresses.

Q. (BY MS. TAHLER) Okay. Mr. Wallace, Katie Case wrote the copy for Exhibit 51; isn't that right?

A. I don't know.

Q. Sitting here today, do you believe it's possible that Ms. Case wrote the copy for Exhibit 41?

MR. COOLEY: Objection.

MR. BABCOCK: Objection.

THE WITNESS: Yeah, I can't speak to that. I'm not sure.

Q. (BY MS. TAHLER) And you were involved in creating Exhibit 51 as well; isn't that right?

A. That is not right.

Q. You had no involvement in Exhibit 51?

MR. COOLEY: I'm sorry. One second. Objection.

THE WITNESS: Could you repeat the question, please?

Q. (BY MS. TAHLER) Yes. Did you have any

involvement in what came to be Exhibit 51?

MR. COOLEY: Objection.

THE WITNESS: I did not.

Q. (BY MS. TAHLER) Did you have any discussions with anyone related to what would become Exhibit 51?

MR. COOLEY: Objection.

THE WITNESS: Not that I recall.

Q. (BY MS. TAHLER) Did you ever discuss Exhibit 51 with Ms. Nathan?

A. Not that I recall.

Q. What about Roza Kalantari?

A. Not that I recall.

MS. ANASTASIO: This will be 52.

(Exhibit No. 52 was marked.)

Q. (BY MS. TAHLER) Mr. Wallace, you are now reviewing what's been marked as KCase-several zeros-4949 through 4962. This is a communication, sir, between Ms. Case and Ms. Nathan. You are not on the communication, but you are referenced in it. So if you'd like to review it, I'm going to have some questions.

A. Okay.

Q. Mr. Wallace, have you ever seen Exhibit 52 before today?

A. What exhibit? The entire exhibit?

THE WITNESS: Yeah, I do not -- I do not understand that.
Q. (BY MS. TAHLER) Do you recall looking at similar websites with respect to Ms. Jones?
MR. COOLEY: Objection.
THE WITNESS: In the earlier exhibits that you shared?
Q. (BY MS. TAHLER) Yes.
A. I -- I recall that.
Q. Okay. Mr. Wallace, we've already discussed a little bit, but who are the Alexander Brothers?
A. Can you be more specific?
Q. Do you know who the Alexander Brothers are?
A. Related to what?
Q. Do you know who Tal Alexander is?
A. Oh, the -- yeah, I know who the Alexander Brothers are.
Q. Who are the Alexander Brothers?
A. Real estate agents, as I understand it.
Q. Were the Alexander Brothers ever your clients?
A. Not my clients.
Q. Did you ever do any type of work on their behalf?
A. Not that I recall.
Q. So it's possible that you did work on their

behalf?
A. No, I don't know. I can't answer one way or the other. I don't recall.
Q. And I'm just asking yes or no. Is it possible that you did some sort of work on their behalf?
MR. BABCOCK: Objection.
MR. COOLEY: Join.
THE WITNESS: Yeah, I -- I can't answer that. I'm not certain.
Q. (BY MS. TAHLER) Mr. Wallace, did you work on a website related to the Alexander Brothers?
A. I did not.
MS. ANASTASIO: 63.
(Exhibit No. 63 was marked.)
MS. ANASTASIO: This will be 63.
Q. (BY MS. TAHLER) Mr. Wallace, you're now reviewing what's been marked as Exhibit 63. It is a website available at alexanderbrothersextorted.com.
Do you see that?
A. Yeah, I'm reviewing now.
Q. I'm not going to ask you any detailed questions about it, sir.
A. Okay, yeah.
Q. Mr. Wallace, are you aware that this website came online around August 22nd, 2024?

A. I am not.
Q. At the time, the -- the Alexander Brothers were being accused of sexual misconduct. Are you aware of that?
A. I'm not aware of their story.
Q. Are you aware whether or not Katie Case had any role in drafting the copy for this website?
A. I don't know that.
Q. Katie Case testified under oath that she performed work in connection with the Alexander Brothers with you and Melissa Nathan -- Nathan. Does that refresh your recollection that you did some work in connection with the Alexander Brothers in connection with Ms. Case?
MR. BABCOCK: Objection.
MR. COOLEY: Join.
THE WITNESS: Yeah, it does not.
Q. (BY MS. TAHLER) Do you recall doing any work for the Alexander Brothers with Ms. Case?
A. I don't recall.
Q. Do you have any basis to dispute Ms. Case's under-oath testimony?
MR. BABCOCK: Objection.
MR. COOLEY: Objection.
THE WITNESS: Yeah, I can't do that. Same

as earlier answers, not one way or the other.

Q. (BY MS. TAHLER) Sitting here today, do you have any basis to dispute Ms. Case's under-oath testimony?

MR. COOLEY: Same objection.

MR. BABCOCK: Objection.

THE WITNESS: I -- I don't know what her testimony was, nor do I have any basis to answer that question.

Q. (BY MS. TAHLER) I'm just telling you -- I'm representing to you that Ms. Case testified that she performed work related to the Alexander Brothers with you and Melissa. And I'm asking yes or no. Do you have any basis to dispute that under-oath testimony?

MR. BABCOCK: Object to the question.

MR. COOLEY: Same.

THE WITNESS: Yeah, I can't answer that. I don't have all the circumstances.

Q. (BY MS. TAHLER) Can you tell me what circumstances you would need?

MR. BABCOCK: Objection.

MR. COOLEY: Join.

THE WITNESS: No, I can't.

Q. (BY MS. TAHLER) Mr. Wallace, do you recall our discussing earlier David Bono?

REPORTER'S CERTIFICATION

DEPOSITION OF JED WALLACE

TAKEN OCTOBER 10, 2025

I, Janalyn Elkins, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, JED WALLACE, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the original deposition was delivered to KRISTIN TAHLER;

That a copy of this certificate was served on all parties and/or the witness shown herein on __________________________.

I further certify that pursuant to FRCP No. 30(f)(i) that the signature of the deponent was not requested by the deponent or a party before the completion of the deposition.

I further certify that I am neither counsel for, related to, nor employed by any of the parties in the action in which this proceeding was taken, and further that I am not financially or otherwise

interested in the outcome of the action.

Certified to by me this 11th day of October 2025.

JANALYN ELKINS
Texas CSR 3631
Expiration Date 1/31/2027
Veritext Legal Solutions
Firm Registration No. 571