# EXHIBIT J

quinn emanuel trial lawyers | los angeles
865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3615**

WRITER'S EMAIL ADDRESS
**kristintahler@quinnemanuel.com**

October 15, 2025

**VIA ELECTRONIC MAIL**

Maxwell Breed
Daniel J. Pohlman
Parmida Enkeshafi
Prior Cashman LLP
7 Times Square, 40th Floor
New York, New York 10036

Re: ***Jones et al. v. Abel et al.*, Case No. 1:25-cv-00779-LJL**
***Lively v. Wayfarer Studios LLC et al.*, Case No. 1:24-cv-10049-LJL**

Counsel:

We write on behalf of Stephanie Jones and Jonesworks, LLC ("Jonesworks") regarding Katie Case's production of documents responsive to our February 18, 2025 subpoena, in light of her deposition testimony. We request that Ms. Case promptly supplement her document production in this matter, or we will seek immediate Court intervention.

As you know, Jonesworks issued a subpoena to Ms. Case on February 18, 2025 requesting, among other things, "all documents and communications related to Jonesworks LLC or Stephanie Jones" and "all documents and communications with or relating to Jed Wallace or Street Relations LLC between May 1, 2024 and the present." Through conferrals with counsel and in moving to compel Ms. Case's compliance with the subpoena, Jonesworks subsequently agreed, and the court ordered a narrower production of documents from Ms. Case and to limit the relevant time period for production to begin on May 1, 2024, and end on January 1, 2025. Jonesworks so narrowed the subpoena in good faith with the understanding that the documents that would be relevant to Jonesworks' claims regarding the planting and publication of the Business Insider article *Who's Afraid of Stephanie Jones?* (which was published in August 2024) and the smear websites and social media handles associated with the Stephanie Jones Leaks and similar websites and accounts (which went live in May 2024) would be adequately captured by this scope.

Yet upon hearing deposition testimony, it has become obvious that Ms. Case's involvement in the events relevant to Jonesworks' claims substantially exceeded the scope of the narrowed requests—a fact that Ms. Case well knew at the time, but that counsel for Jonesworks has only discovered through depositions.[1] Ms. Case's own under oath testimony reveals that Ms. Case was integrally involved in planting and providing information for the Business Insider article, starting in March 2024—earlier than Jonesworks had previously been aware. It is also apparent that Ms. Case had a material role in the creation and drafting of copy for the defamatory website and social media handles regarding Stephanie Jones, as part of a pattern and practice of drafting copy for and assisting with similar smear websites against many individuals, together with Melissa Nathan, Jed Wallace, and Bryan Freedman.

Further, Ms. Case's deposition has revealed a shocking extent of spoliation of evidence material to Jonesworks' claims. For example, Ms. Case testified that Signal was the "primary" mode of communication with Wallace (p. 163:20), and that she communicated with both Wallace and Nathan via Signal regarding work relating to Stephanie Jones (pp. 384:21-385:21, 387:11-389:14). These Signal communications included communications with Wallace and Melissa Nathan, including discussions about Stephanie Jones, beginning at least as early as her employment start date in February 2024 and continuing through her time at TAG (pp. 74-78, 383-389); transmitting content for websites disparaging Stephanie Jones (pp. 383:7-10, 385:2-3); and coordinating with Jed Wallace on the creation of Twitter accounts targeting Stephanie Jones (p. 387:11-19).

Ms. Case further testified that there were group Signal threads among herself, Nathan, and Wallace (pp. 77:21-23, 389:9-12), and that, among other things: Signal's auto-delete function was "deployed" on her device (p. 76:11-15); she has no Signal communications with Wallace that are not deleted (p. 76:16-19); all Signal messages regarding Jones between Case, Nathan, and Wallace are now deleted (p. 385:4-6); and that while the Signal message chains still exist on her device, all messages within those chains have been deleted (p. 396:4-9). Notably, when asked whether she looked for Signal messages in connection with her production obligations in this case, Ms. Case testified, "No." (p. 395:22). This failure to search, combined with the use of auto-delete and the substantive nature of the communications, raises serious concerns about spoliation and the completeness of Ms. Case's production.

---

[1] It should be noted that at the very time we were negotiating in good faith, you were preparing objections to subpoenas to Facebook and other third party social media platforms asserting that the requested discovery could reveal Ms. Case's personal information. Your silence in negotiations on Ms. Case's and the social media platforms' subpoenas despite your clear understanding of Ms. Case's role calls into serious question counsel's good faith. This is particularly so given that pointed questions were asked that should have elicited the exact information that Ms. Case ultimately admitted. Rather than answer truthfully, however, you demurred and obfuscated. At the very least the ensuing motion practice caused in large part by your willful silence constituted a tremendous and needless waste of judicial and counsel resources.

In light of all this, we request that Ms. Case search her files—including text messages, iMessages, Signal, WhatsApp, email, voice notes/voicemails, or any other form of written or recorded communication whatsoever, and produce the following documents and communications:

- All documents and communications with Melissa Nathan, Jed Wallace, Bryan Freedman, Roza Kalantari, or anyone else, regarding or relating to any websites or social media posts concerning or relating to Stephanie Jones, Rebel Wilson, Amanda Ghost, Dwayne "the Rock" Johnson, the Alexander Brothers, Peter Comisar, Christian Lanng, Joe Dunn, Alex Nikolas, Michael Milosh, or relating to any other negative or derogatory website or social media account or post about any other individual or entity;

- All documents and communications regarding or relating to what ultimately became the Business Insider article *Who's Afraid of Stephanie Jones?* or to any other efforts to encourage or place any articles regarding Stephanie Jones or Jonesworks.

Please keep in mind that while we have no desire to burden Ms. Case more than necessary to obtain the evidence relevant to Jonesworks' claims, she remains potentially subject to serious charges of spoliation based on her under oath testimony, and may be subject to being named as a defendant in any amended complaint that Jonesworks may file as a now-identified Doe defendant or otherwise. Any additional evidence that Ms. Case can provide to substantiate her testimony will most certainly be helpful to her own credibility. We therefore write in the spirit of cooperation to avoid Court intervention on this matter and to avoid the need to formally name Ms. Case in a lawsuit. However, absent her cooperation, we will seek to enforce Jonesworks' rights and claims to the full extent necessary.

Please confirm you will accept service of the attached subpoena, or let us know your availability for a meet and confer regarding any legitimate concerns about scope or burden within the next 48 hours. However, it is clear that Ms. Case's own testimony established her involvement in these matters as early as February 2024, and the complete productions from or before that time to the present are proportional to the needs of this case.

Jonesworks reserves all rights, including but not limited to seeking court intervention to compel complete responses and appropriate relief for any spoliation or discovery violations, among others.

Best,

Kristin Tahler

Kristin Tahler