# "EXHIBIT N"

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
CAMILLE M. VASQUEZ, Cal Bar No. 273377
CVasquez@sheppard.com
SAMUEL A. MONIZ, Cal Bar No. 313274
SMoniz@sheppard.com
HONIEH O.H. UDENKA, Cal Bar No. 319103
HUdenka@sheppard.com
MELISSA M. MIKAIL, Cal Bar No. 323212
MMikail@sheppard.com
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Facsimile: 714.513.5130

Attorneys for Plaintiffs and Cross-Defendants
AMANDA GHOST, GREGOR CAMERON,
and VINCE HOLDEN

**Electronically FILED by Superior Court of California, County of Los Angeles
8/25/2026 10:25 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By V. Sino-Cruz, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

AMANDA GHOST, an individual; GREGOR CAMERON, an individual; and VINCE HOLDEN, an individual,

Plaintiffs,

v.

REBEL WILSON, an individual; and DOES 1-50, inclusive,

Defendants.

AND RELATED CROSS-ACTIONS

Case No. 24STCV17314

Assigned for All Purposes to:
Hon. Thomas D. Long, Department 506

**OMNIBUS DECLARATION OF SAMUEL A. MONIZ IN SUPPORT OF MOTIONS TO COMPEL FURTHER RESPONSES TO THIRD SET OF REQUESTS FOR PRODUCTION TO MELISSA NATHAN AND THE AGENCY GROUP PR, LLC**

Date: May 27, 2027
Time: 8:30 a.m.

Reservation Nos.: 868512060008
581988827149

Discovery Cut-Off: December 21, 2026
Final Status Conference: January 4, 2027
Trial Date: January 19, 2027

# DECLARATION OF SAMUEL A. MONIZ

I, Samuel A. Moniz, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am a partner with Sheppard, Mullin, Richter & Hampton LLP, attorneys of record for Plaintiff and Cross-Complainant Amanda Ghost ("Ms. Ghost"), and Plaintiffs Gregor Cameron and Vince Holden (collectively, Ms. Ghost, Mr. Cameron, and Mr. Vince are referred to as "Plaintiffs") in this action.

2. If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

3. This declaration is submitted in support of the concurrently-filed Motions to Compel ("Motions") Third Requests for Production ("RFPs") from Melissa Nathan ("Ms. Nathan") and The Agency Group PR, LLC ("TAG," and collectively, "Cross-Defendants"). Responses to Ms. Ghost's Third Set of Requests for Production were served electronically by Ms. Nathan and TAG on or about July 8, 2026, and true and correct copies of those responses are attached hereto as **Exhibits 1 and 2**. Unless otherwise stated, capitalized terms have the same meaning as in the Motions.

4. Ms. Ghost's operative Cross-Complaint asserts claims for defamation against Rebel Wilson ("Ms. Wilson"), Ms. Nathan, and TAG, and alleges that they collectively participated in causing the publication and dissemination of websites ("Ghost Websites") containing such accusations against Ms. Ghost as that she is involved in "procuring young women for the pleasure of the extremely wealthy." *See, e.g.*, Ms. Ghost's Cross-Complaint in the above-captioned action at paragraph 37. Ms. Wilson, Ms. Nathan, and TAG have all filed papers with this Court denying involvement. For instance, on or about October 31, 2025, Ms. Wilson filed an anti-SLAPP motion with this Court, joined by Ms. Nathan and TAG, in which both Ms. Wilson and Ms. Nathan attested to their lack of involvement in supporting declarations. Copies of Ms. Wilson's and MS. Nathan's declarations are attached hereto as **Exhibits 3 and 4**, respectively.

5. On July 30, 2026, I conducted the first day of Ms. Wilson's deposition. A true and correct copy of excerpts of Ms. Wilson's deposition transcript is attached as collective **Exhibit 5**.

On August 13, 2026, and August 14, 2026, I conducted the first two days of Ms. Nathan's deposition. True and correct copies of excerpts of Ms. Nathan's depositions transcripts are attached as collective **Exhibit 6**. Based on those depositions, it is my understanding that both witnesses have testified that Ms. Nathan and TAG were retained to provide public relations services to Ms. Wilson in connection with her dispute with Ms. Ghost, which is the subject, at least in part, of the above-captioned action. I understood Ms. Nathan to testify at deposition that she had no familiarity with Ms. Ghost before being engaged to act on Ms. Wilson's behalf.

6. In the course of discovery in this action, documents have been produced which appear to reflect that Ms. Nathan and TAG communicated with the media on Ms. Wilson's behalf about Ms. Ghost on multiple occasions. In addition, documents have been produced in this action which support the inference that Ms. Wilson, Ms. Nathan, and TAG were involved in the publication of the Ghost Websites, including a document produced by TAG and Nathan which reflects Ms. Nathan writing a message to Ms. Wilson in the approximate timeframe when the Ghost Websites are alleged to have been published: "110USD for untraceable site – satellite, ghost server, ghost hosting, full build, maintaining, and full algorithmic push…." A later message from Ms. Nathan to Ms. Wilson reflected on the same document appears to clarify the cost of the "untraceable site" as $110,000 ("110k Sorry ! huge difference" [sic]). I understand that Ms. Nathan and her counsel acknowledged and confirmed the authenticity of this document in her deposition. A copy of certain messages reflecting these and related communications, as produced in discovery by Ms. Nathan and TAG, is attached hereto as **Exhibit 7 and 8**. Another document obtained in discovery reflects that Ms. Nathan and another individual, Jed Wallace, were sent what appears to be a draft of the language that appeared on the websites via email by one of Ms. Nathan's subordinates at TAG, Katherine Case. A copy of this email, as produced in discovery by Ms. Nathan and TAG, is attached hereto as **Exhibit 9**. Ms. Nathan authenticated these document in deposition.

7. In the course of her deposition, which I conducted, Ms. Wilson testified that at one point she had inquired with Ms. Nathan and TAG about a website to be identified as rebelwilson.com, which Ms. Wilson suggested would be used to sell her merchandise and memoir.

To the extent that Ms. Wilson intends to claim that she had no involvement in the Ghost Websites, and that messages reflecting her request for an "untraceable site" actually relate to a purported "rebelwilson.com," further discovery on those topics is warranted.

8. I am aware from public filings in other cases that allegations of involvement in the creation of websites have been made against Ms. Nathan and/or TAG by other persons. On or about March 3, 2026, I conducted the deposition of third-party Katherine Case, who testified, in part, that she formerly worked for Ms. Nathan and TAG, and that she was requested by Ms. Nathan to assist in the preparation of written copy of at least two websites, including the Ghost Websites. I have reviewed unsealed testimony from Ms. Case in the New York Action, which appears to reflect that Ms. Nathan caused her to participate in at least three websites. Attached as **Exhibit 10** is a copy of a Complaint filed against Ms. Nathan in Los Angeles Superior Court, Case No. 26SMCV00684, reflecting that similar allegations of involvement in the creation of a website are being made against her by another party, Alexa Nikolas. Attached as **Exhibit 11** is a copy of excerpts of a deposition transcript obtained by my office, which I understand to have been unsealed and publicly available in a lawsuit from the Southern District of New York involving Ms. Nathan and others, reflecting additional testimony by third-party Katherine Case about her alleged role in preparing text for websites at Melissa Nathan's instruction.

9. Based on my understanding of the issues in this case, I believe that the requested discovery will materially assist Ms. Ghost in obtaining relevant information and preparing the case for trial, including to address such elements of her defamation claim as publication, falsity, and, to the extent required, actual malice. I believe that the requested documents are also relevant to testing the credibility of witnesses, including Ms. Nathan. I believe that good cause exists for the requested discovery and production of relevant documents.

10. I spent no less than four hours preparing the Motion and supporting papers for the Motions to Compel against Ms. Nathan and TAG. Further, I expect to spend no less than three hours preparing additional papers prior to the hearing on the Motions. I further expect to spend no less than 1 additional hour preparing for and arguing at the hearing. My standard billing rate is $1,410 per hour.

11. These Motions follow a meet and confer of counsel, which occurred via email and a Zoom call on or about August 10, 2026. The parties did not resolve their disagreements.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 25th day of August, 2026, at Newport Beach, California.

Samuel A. Moniz

# EXHIBIT 7

[redacted] 8/5/2024 3 12 0

**Participants:** [redacted] **Rebel Wilson**; [redacted] **Melissa Nathan (Owner)**; [redacted] Melissa Nathan (Owner)

**First Message:** 8/5/2024 12:54:41 PM

**Last Message:** 8/5/2024 8:39:06 PM

---

[redacted] **Melissa Nathan (Owner)**
Are you on Signal?
8/5/2024 12:54:41 PM

[redacted] **Rebel Wilson**
No
8/5/2024 5:37:42 PM

[redacted] **Melissa Nathan (Owner)**
Ok so:

110USD for untraceable site - satellite, ghost server, ghost hosting, full build, maintaining, and full algorithmic push across all platforms…for 3 months…so much more can be done but the advice given was that's all you need for right now.
8/5/2024 5:39:38 PM

[redacted] **Rebel Wilson**
Just created a signal account if that's helpful
8/5/2024 5:40:36 PM

[redacted] **Rebel Wilson**
Wait - do you mean only $110 in total?
8/5/2024 5:40:53 PM

[redacted] **Melissa Nathan (Owner)**
It's helpful! We prefer using it when we discuss sensitive information.
8/5/2024 5:40:57 PM

[redacted] **Melissa Nathan (Owner)**
110k
Sorry ! huge difference
8/5/2024 5:41:14 PM

[redacted] **Rebel Wilson**
Okay lemme send you a message on Signal
8/5/2024 5:41:18 PM

[redacted] **Rebel Wilson**
My Facebook is the one I don't have acesss to as my sister started it many many years ago
8/5/2024 8:38:18 PM

[redacted] **Rebel Wilson**
And then we lost the password or something so I don't have acesss to it , but it's linked to my Instagram
8/5/2024 8:38:45 PM

[redacted] Rebel Wilson
But I don't ever post on Facebook
8/5/2024 8:38:52 PM

[redacted] Rebel Wilson
I just have Instagram, TikTok and Threads
8/5/2024 8:39:06 PM

# EXHIBIT 8

[redacted] 8/9/2024 3 7 0

**Participants:** [redacted] **Rebel Wilson**; [redacted] **Melissa Nathan (Owner)**;
[redacted] Melissa Nathan (Owner)

**First Message:** 8/9/2024 12:22:49 AM
**Last Message:** 8/9/2024 4:26:37 PM

---

[redacted] **Rebel Wilson**
Question - did you receive the text for the website?
8/9/2024 12:22:49 AM

[redacted] **Rebel Wilson**
I never received any invoice 🤷‍♀️
8/9/2024 12:23:05 AM

[redacted] **Melissa Nathan (Owner)**
Morning, so sorry I was asleep.

We have full text for the website we hadn't heard from you- I know that it was a tough few days your end so I didn't want to keep bugging.

Your business manager has already sorted this with Bryan's office . It will be up shortly once this is done.

I got that shitty story taken down from the Daily Mail

And I'm having a really good one put up which the other side are threatening the Daily Mail with not putting it up, but they're still going to go ahead .

8/9/2024 11:30:12 AM

[redacted] **Rebel Wilson**
Okay thank you Melissa
8/9/2024 4:18:08 PM

[redacted] **Rebel Wilson**
Can you text me the good article when it's up please
8/9/2024 4:18:19 PM

[redacted] **Melissa Nathan (Owner)**
Of course I will.
I've been told the other side are completely flipping out about it so it must be good.
8/9/2024 4:25:30 PM

[redacted] **Melissa Nathan (Owner)**
I hope you're feeling a little bit better.
8/9/2024 4:26:37 PM