**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHANIE JONES and JONESWORKS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, and JOHN DOES 1-10,<br><br>Defendants. | Civ. Action No. 1:25-cv-00779-LJL<br>rel. 1:24-cv-10049-LJL |

**MELISSA NATHAN'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS <u>AGAINST DEFENDANT MELISSA NATHAN FOR DISCOVERY MISCONDUCT</u>**

# Table of Contents


Page

I. INTRODUCTION ........ 7

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 8

III. PLAINTIFFS' SANCTIONS MOTION IS A THINLY VEILED MOTION FOR RECONSIDERATION. ........ 10

IV. JONES IS NOT ENTITLED TO SANCTIONS UNDER RULES 37 OR 26(g) ........ 13

A. Jones Is Not Entitled to Sanctions Under Rule 37(b). ........ 13

B. Plaintiffs Are Not Entitled to Sanctions Under Rule 37(c)(1). ........ 13

1. Plaintiffs Fail to Show a Violation of Rule 37(c)(1). ........ 13

2. The Severe Sanctions Plaintiffs Seek Would Be Excessive Even if Rule 37(c)(1) Were Violated. ........ 18

C. Plaintiffs Have Not Shown a Violation of Rule 26(g). ........ 20

D. Fee Awards Under Rules 37(c) and 26(g) Are Limited to Expenses Caused by a Proven Violation. ........ 21

V. PLAINTIFFS ARE NOT ENTITLED TO THE SEVERE SANCTIONS THEY SEEK PURSUANT TO THE COURT'S INHERENT AUTHORITY ........ 22

A. Plaintiffs Fail to Show an Objectively False Statement of Fact Made with Willful Intent. ........ 24

B. Testimony Concerning the Websites Is Not Material. ........ 26

C. Even If Plaintiffs Could Establish Perjury, the Extreme Sanctions They Seek Are Unwarranted. ........ 28

VI. CONCLUSION ........ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benamou v. Miles*,
2025 WL 2793669 (E.D.N.Y. Sept. 26, 2025) ....................19

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*,
2020 WL 7342724 (S.D.N.Y. Dec. 11, 2020) ....................18, 23

*Bower v. Weisman*,
674 F. Supp. 109 (S.D.N.Y. 1987) ....................23, 28

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ....................23

*Commercial Data Servers, Inc. v. IBM*,
262 F. Supp. 2d 50 (S.D.N.Y. 2003) ....................18

*Da Silva Moore v. Publicis Groupe*,
287 F.R.D. 182 (S.D.N.Y. 2012) ....................21

*Daval Steel Prods. v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991) ....................13

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir. 2006) ....................14

*EB Safe LLC v. Hurley*,
2019 WL 5260581 (S.D.N.Y. Oct. 18, 2019) ....................26

*Gleason v. Jandrucko*,
860 F.2d 556 (2d Cir. 1988) ....................23

*Grammar v. Sharinn & Lipshie, PC*,
2016 WL 525478 (S.D.N.Y. Feb. 8, 2016) ....................28

*HDI Glob. Ins. Co. v. Kuehne + Nagel, Inc.*,
2024 WL 4987043, at *1 (S.D.N.Y. Dec. 5, 2024) ....................15, 19, 21, 22

*ICN Pharm., Inc. v. Khan*,
2 F.3d 484 (2d Cir. 1993) ....................24

*Jianjun Chen v. 2425 Broadway Chao Rest., LLC*,
331 F.R.D. 568 (S.D.N.Y. 2019) ....................20

**Page(s)**

**Cases**

*King v. Wang*,
2021 WL 5495799 (S.D.N.Y. Nov. 23, 2021) ....................13, 14

*Klayman v. Judicial Watch, Inc.*,
314 F. Supp. 3d 308 (D.D.C. 2018) ....................28

*Lodge v. United Homes, LLC*,
787 F. Supp. 2d 247 (E.D.N.Y. 2011) ....................14, 19, 21

*Metropolitan Opera Ass'n v. Local 100*,
212 F.R.D. 178 (S.D.N.Y. 2003) ....................21

*Montano v. City of Chicago*,
535 F.3d 558 (7th Cir. 2008) ....................26

*New York v. U.S. Dep't of Commerce*,
461 F. Supp. 3d 80 (S.D.N.Y. 2020) ....................21

*Novak v. Wolpoff & Abramson LLP*,
536 F.3d 175 (2d Cir. 2008) ....................18

*Pietrangelo v. Refresh Club, Inc.*,
2022 WL 17616353 (D.D.C. Dec. 13. 2022) ....................25

*Polylok Corp. v. Valley Forge Fabrics, Inc.*,
670 F. Supp. 1210 (S.D.N.Y. 1987) ....................27

*Radecki v.GlaxoSmithKline*,
375 F. App'x 46 (2d Cir. 2010) ....................24

*Recio v. D'Almonte Enterprises Parking Garage, Inc.*,
2025 WL 959351 (S.D.N.Y. Mar. 31, 2025) ....................18

*Ricciuti v. New York Transit Authority*,
70 F. Supp. 2d (S.D.N.Y. 1999) ....................24, 25

*Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*,
280 F.R.D. 147 (S.D.N.Y. 2012) ....................15

*Salahuddin v. Harris*,
782 F.2d 1127 (2d Cir. 1986) ....................13

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
490 F.3d 130 (2d Cir. 2007) ....................19

**Page(s)**

**Cases**

*Slovin v. Target Corp.*,
2013 WL 840865 (S.D.N.Y. Mar. 7, 2013) .......... 28

*United States v. Ben-Shimon*,
249 F.3d 98 (2d Cir. 2001) .......... *passim*

*United States v. Dunnigan*,
507 U.S. 87 (1993) .......... 23, 28

*United States v. Forde*,
740 F. Supp. 2d 406 (S.D.N.Y. 2010) .......... 26, 28

*United States v. Orelien*,
119 F.4th 217 (2d Cir. 2024) .......... 26

*United States v. Zagari*,
111 F.3d 307 (2d Cir. 1997) .......... 26, 28

*Wall v. Constr. & Gen. Laborers' Union*,
2006 WL 197353 (D. Conn. Jan. 24, 2006) .......... 25

*Yukos Capital S.A.R.L. v. Feldman*,
977 F.3d 216 (2d Cir. 2020) .......... *passim*

**Statutes**

18 U.S.C. § 1621 .......... 23

18 U.S.C. § 1623 .......... 26, 28

C.P.L.R. § 215(3) .......... 9, 27

C.P.L.R. § 1024 .......... 9

**Federal Rules of Court Procedure**

Fed. R. Civ. P. 26 .......... 13

Fed. R. Civ. P. 26(a) .......... 18, 21

Fed. R. Civ. P. 26(e) .......... 13, 14

Fed. R. Civ. P. 26(g) .......... 7, 20, 21, 22, 23

**Page(s)**

**Federal Rules of Court Procedure**

Fed. R. Civ. P. 33 ....................20

Fed. R. Civ. P. 37 ....................7, 18, 22, 23, 25

Fed. R. Civ. P. 37(b) ....................7, 13, 18

Fed. R. Civ. P. 37(c) ....................13, 14, 15, 18, 19, 21, 28

Fed. R. Civ. P. 59(e) ....................10, 12

Fed. R. Civ. P. 60(b) ....................10, 12

# I. INTRODUCTION

Plaintiffs Stephanie Jones and Jonesworks LLC (collectively, "Plaintiffs" or "Jones") seek a laundry list of draconian sanctions under Rules 37 and 26(g) of the Federal Rules of Civil Procedure, as well as the Court's inherent power. The motion was allegedly triggered by documents produced by third party Katherine Case in a sham New York state lawsuit contrived by Jones for no apparent purpose but to skirt the discovery cutoff and this Court's prior orders to obtain documents purporting to tie Melissa Nathan to websites that were the subject of Jones' now-dismissed eighth cause of action. Jones opens by averring that "a key question from the outset of this case has been the identity of the individual directing the creations of anonymous smear websites that appeared in May 2024." Directly contradicting this claim, Jones cites her December 24, 2024 complaint which explicitly alleged that Nathan "'worked in concert with' John Does 1-10 'to publish' both Websites. Dkt. 1-1 at ¶ 92." Pls.' Mem. at 11.

The stark disparity between Jones' competing positions—that the Case documents were necessary to identify Nathan as a participant in the Websites and Jones' allegation as early as December 2024 that Nathan was responsible for the Websites—sets the tone for the remainder of the motion which is plagued with misleading facts and argument and distorts or simply ignores governing law. In one of the more glaring examples, Jones seeks sanctions under Rule 37(b)(2), which requires disobedience of a court order. Surely Jones knows that there was no court order for Nathan to disobey and there is no basis in law or fact for Jones' request for sanctions under Rule 37(b). Jones fails to justify her claim for draconian sanctions that would not only effectively terminate Nathan's defense of the existing claims but impose liability on two claims that are not part of this lawsuit and that this Court has already ruled cannot be added.

In fact, Jones' request for sanctions is, at heart, a transparent attempt to end-run the Court's prior rulings. Jones first asks the Court to reinstate Jones' eighth cause of action for defamation, which the Court dismissed after denying her motion to belatedly add Nathan as a defendant. Jones also seeks an order striking Nathan's answer and entering a default judgment against her on the now-dismissed defamation claim and on a claim for intentional interference with prospective business relations which is not part of this case. Jones does not explain – much less cite authority to support – the notion that a default judgment may be entered as a discovery sanction on two claims that were never asserted against Nathan in the complaint. Plaintiffs do not come close to providing valid grounds for the punishing sanctions they seek, which would effectively cripple if not outright deprive Nathan of any ability to defend this action. As shown below, there are a myriad of reasons why Jones' motion should be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 24, 2024, Jones filed suit against Melissa Nathan, Jennifer Abel, Justin Baldoni, and Wayfarer Studios. Dkt. No. 1-1. As pertinent to this sanctions motion, the complaint asserted two claims against Nathan for intentional interference with Jennifer Abel's employment contract and intentional interference with Jonesworks' contract with Wayfarer for public relations services. The eighth cause of action stated a defamation claim against John Doe Defendants arising from websites that allegedly defamed Jones (the "Websites"). On September 5, 2025, Plaintiffs deposed Case, a former Jonesworks employee who subsequently worked with Nathan, in the related *Lively v. Wayfarer Studios*, No. 1:24-cv-10049. Case provided testimony which Jones deems to implicate Nathan in the creation of the Websites. Jones did not subpoena Case for documents or depose Case in this action or move to amend her complaint to add Nathan as a defendant in the eighth cause of action prior to the September 30, 2025 fact discovery cut-off. Dkt.

Nos. 82-84.[1]

On December 8, 2025, Jones belatedly moved to add Nathan as a defendant in Jones' defamation cause of action and add a claim against Nathan for intentional interference with prospective business relations. Dkt. No. 191. On March 26, 2026, the Court denied Plaintiffs' motion for leave to amend. Dkt. No. 234. The Court held that the proposed defamation claim was futile because the one-year statute of limitations under C.P.L.R. § 215(3) had expired, and the relation-back doctrine under C.P.L.R. § 1024 did not save the claim given Plaintiffs' lack of due diligence. *Id*. at 10-12. On September 17, 2026, the Court dismissed the eighth cause of action finding that "where a plaintiff has made no attempt to amend its complaint to include the real identities of John Doe Defendants and discovery has closed, the proper course is to dismiss." Dkt. No. 271 at 3 (quoting *Cox v. Vill. of Pleasantville*, 271 F. Supp. 3d 591, 618 (S.D.N.Y. 2017)). The Court expressly adopted its March 26 findings as law of the case. Dkt. No. 271 at 2 (citing *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)).

Borrowing a tactic from Blake Lively's playbook,[2] Jones attempted to circumvent the discovery cut-off and the Court's prior orders, by filing a sham state court claim against Case and immediately seeking the production of Case's documents that Jones was unable to obtain in this action. Garofalo Decl. Ex. A. Case, in turn, threatened that unless Nathan agreed to indemnify her, she would disclose the materials to Jones in exchange for a dismissal of the state court action. Garofalo Decl. ¶ A. Contrary to Plaintiffs' claims that Nathan has frustrated discovery, Nathan

[1] Discovery was extended to October 10, 2025, solely to allow the depositions of Steve Sarowitz, Jamey Heath, and Baldoni. Dkt. No. 124; *see Lively v. Wayfarer Studios*, Case No. 24-cv-10049, Dkt. No. 770 (S.D.N.Y. filed Sept. 12, 2025).

[2] Lively used a sham state court complaint, *Vanzan v. Does 1-10*, NYSC Index No. 655130/2024, to obtain Jennifer Abel's text messages from Jones prior to filing her complaint against the Wayfarer parties. Once she obtained the text messages, she promptly disclosed them to the New York Times for an article to be published simultaneously with the filing of the complaint.

declined to indemnify Case. *Id*. Case promptly provided the documents to Jones and, in return, Jones dismissed the action, which had been removed to federal court. *Jonesworks LLC v. Case*, S.D.N.Y. Case No. 1:26-cv-07685, Dkt. No. 8. Purportedly based on the documents obtained from Case, Jones seeks a laundry list of sanctions against Nathan, including dispositive sanctions that would, as noted, effectively terminate Nathan's defense of the existing claims and impose liability on the two claims this Court rejected.

## III. <u>PLAINTIFFS' SANCTIONS MOTION IS A THINLY VEILED MOTION FOR RECONSIDERATION</u>.

Plaintiffs seek to resurrect arguments this Court has twice rejected by seeking leave to "plead and pursue their defamation and tortious interference with prospective business relations claims against Nathan." Pls.' Mem. at 22. This Court has already decided—on two separate occasions—that those claims cannot proceed. Plaintiffs go further than merely seeking to plead these claims, they request entry of a default judgment against Nathan on the rejected claims under the guise of a discovery sanction. Rather than identify any legitimate basis for reconsideration under Rule 59(e) or Rule 60(b) (there is none), Plaintiffs repackage the arguments the Court considered and rejected, clothe them in the language of sanctions and request relief that would effectively vacate both Orders. Plaintiffs argue that Nathan's concealment caused the statute to run, and that "[h]ad she produced the [Case documents], Plaintiffs would have known Nathan was the Doe defendant a month before the statute purportedly expired." Pls.' Mem. at 24. Plaintiffs insist they were diligent and "they did not give up" (Pls.' Mem. at 2)—a notion belied by the Court's prior rulings. *See, e.g.*, Dkt. No. 234 at 8-9 (Plaintiffs did "not demonstrate[] that they exercised any diligence prior to the April 18, 2025 deadline to identify the John Doe defendants or to substantiate their allegation that Nathan contrived to have the Business Insider article published"); Dkt. No. 271 at 2. The Court noted that "it was not until July 15, 2025 that the Jones

Parties asked for documents and communications related to the Websites," by which time "the statute of limitations for defamation had expired." Dkt. No. 234 at 12. The September 17 Order confirmed that Plaintiffs "had ample time to attempt to discover the identities of the John Doe Defendants and failed to do so." Dkt. No. 271 at 2. As noted, and as admitted in Plaintiffs' motion, Plaintiffs' December 24, 2024 complaint expressly states that Nathan "'worked in concert with' John Does 1-10 'to publish' both Websites. Dkt. 1-1 at ¶ 92." Pls.' Mem. at 11. It is a mystery how Jones can argue with a straight face that even though she pleaded in December 2024 that Nathan was involved in publishing the Websites, she did not know of Nathan's alleged involvement before Case was deposed or produced documents to Jones on September 16, 2026.

Undeterred Plaintiffs assert that the Court's diligence finding "assumed Nathan's production and sworn denials reflected the true state of the evidence" and that "[t]hey did not." Pls.' Mem. at 23. But the Court's diligence analysis did not turn on what Nathan produced. It turned on what Plaintiffs failed to do: they did not include the Business Insider article in their March 2025 document requests; they did not move to amend until nearly eight months after the deadline; and they did not request documents about the Websites until July 2025. Dkt. No. 234 at 9-10, 12. These were Plaintiffs' own failures and no amount of alleged misconduct by Nathan changes the fact that Plaintiffs knew about Nathan's alleged involvement from the inception of the case yet failed to act within the deadlines the Court set.

Plaintiffs further argue that the Case documents were responsive to their March 2025 Request No. 2 for "[a]ll Documents and Communications pertaining to Jonesworks LLC" and that Nathan's failure to produce—not the breadth of the requests—was the real problem. Pls.' Mem. at 19, 23. The Court has already found that Plaintiffs' March 2025 document requests were insufficient. While it acknowledged that Request No. 2 "touched on the claims contained in the

proposed amendment," it found the requests insufficiently specific to constitute diligent pursuit of the Website-related claims. Dkt. No. 234 at 9-10. The Court noted that Plaintiffs "did not dispute that it was not until July 2025 when they served a second request for production of documents that they requested documents relating to the Business Insider article and the Websites." *Id*. Plaintiffs' argument that their broad, catch-all request should have been enough to satisfy the diligence standard is the same argument the Court already weighed and found wanting. The fact that Nathan may not have produced all responsive documents does not retroactively transform an insufficiently specific discovery request into the diligent pursuit the Court required.

Plaintiffs ask the Court to enter judgment on all claims against Nathan, strike her defenses and deem certain facts established. Pls.' Mem. at 21-22, 24-25. But these sanctions presuppose the viability of claims this Court has already dismissed or denied. Entry of judgment on a defamation claim the Court ruled was time-barred, or on a tortious interference claim the Court denied leave to add, requires first vacating the Orders that preclude those claims. Plaintiffs have not moved to vacate. Nor have they identified any authority for the proposition that a sanctions motion can serve as a vehicle for overturning final rulings on the pleadings. The Court's inherent power to sanction litigation misconduct is broad, but it does not extend to resurrecting claims the Court has already determined cannot proceed, particularly where those determinations rested on Plaintiffs' own failures of diligence, not on Nathan's representations. In short, the proper vehicle for the relief Plaintiffs seek is a motion for reconsideration under Rule 59(e) or for relief from judgment under Rule 60(b). A sanctions motion is not a substitute for those procedural mechanisms, and Plaintiffs cannot circumvent the law-of-the-case doctrine by relabeling their request for reconsideration as a motion for sanctions.

## IV. JONES IS NOT ENTITLED TO SANCTIONS UNDER RULES 37 OR 26(g)

### A. Jones Is Not Entitled to Sanctions Under Rule 37(b).

Rule 37(b) is plainly captioned "Failure to Comply with a Court Order." "A court may impose sanctions pursuant to Rule 37(b)(2)(A) only when the transgressing party has violated a prior court order." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020). Sanctions under Rule 37(b) are not available to Jones for the simple reason that there was no prior court order for Nathan to disobey. Absent a "clearly articulated order of the court requiring specified discovery," Nathan cannot be sanctioned under Rule 37(b) "for noncompliance with that order." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991); *see also*, *Salahuddin v. Harris,* 782 F.2d 1127, 1133 (2d Cir. 1986) ("Rule 37(b) sanctions require the violation of an explicit court order").

### B. Plaintiffs Are Not Entitled to Sanctions Under Rule 37(c)(1).

1. Plaintiffs Fail to Show a Violation of Rule 37(c)(1).

Plaintiffs contend that Rule 37(c)(1)(C) supports entering judgment against Nathan, striking her defenses, and deeming the core facts of their case established because Nathan failed "to supplement a materially incomplete response" as allegedly required by Rule 26(e). Pls.' Mem. at 21; *see also id.* at 20 n.5, 25.[3] Under Rule 37(c)(1), "[t]he moving party bears the burden of showing that its adversary failed to timely disclose information required by Rule 26." *King v. Wang*, 2021 WL 5495799, at *1 (S.D.N.Y. Nov. 23, 2021). The movant must establish "'(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party

[3] Plaintiffs fail to specify what Case documents were purportedly in Nathan's possession and withheld from discovery by Nathan or at her direction. Plaintiffs rely heavily on Case's allegedly contemporaneous notes as evidence that Nathan was not fully forthright in discovery. However, there is no evidence that Nathan had possession of these notes, knew of their existence or played any role concealing the notes.

that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense.'" *Id.* (quoting *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007)).

Rule 26(e) requires supplementation only where "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Plaintiffs concede that Case testified on September 5, 2025 about "the May 2024 call and Nathan's instructions to write copy for the Websites." Pls.' Mem. at 20. Plaintiffs took that deposition and relied on it in motion practice before this Court. Dkt. No. 188 at 2-3. Rule 26(e) requires a party to correct a response she learns is incorrect; it does not require her to adopt her adversary's version of disputed facts. Plaintiffs cite no authority holding that a party violates Rule 26(e) by maintaining a denial the other side believes is false. *Cf. Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247, 261 (E.D.N.Y. 2011) (supplementation was required because the movant "remained unaware" of the operative facts). Whether Nathan or Case is telling the truth is a merits question for the factfinder upon impeachment and cross-examination are the appropriate alternatives to sanctions. *See Yukos Capital S.A.R.L.*, 977 F.3d at 236 (affirming denial of sanctions for alleged perjury and withholding of documents). Nor can Plaintiffs rely on a record they chose not to build. In *King*, this Court denied sanctions where the movant "did not follow up on these questions or seek additional discovery" while discovery was open and did not "file a motion to compel regarding the supposedly withheld information." *King*, 2021 WL 5495799, at *2. Plaintiffs never moved to compel on Nathan's disclosed search-term limitation.

Even where Rule 37(c)(1) applies, sanctions lie within the court's "wide discretion." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Courts weigh "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the

testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party …; and (4) the possibility of a continuance," and, before imposing a severe sanction, "should inquire more fully into the actual difficulties which the violation causes." *HDI Glob. Ins. Co. v. Kuehne + Nagel, Inc.*, 2024 WL 4987043, at *1 (S.D.N.Y. Dec. 5, 2024) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) and *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988)). Rule 37(c)(1) sanctions are unavailable if the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Harmlessness "means an absence of prejudice" to the movant. *Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012).

Plaintiffs identify one form of prejudice: had Nathan produced the Case documents in response to their March 2025 requests, Plaintiffs say, they "would have known Nathan was the Doe defendant a month before the statute purportedly expired" and timely sued her for defamation. Pls.' Mem. at 23. This Court has already rejected every link in that chain, in rulings that are law of the case and that Plaintiffs never asked the Court to reconsider. Dkt. No. 271 at 2. Further, as noted, Plaintiffs' December 2024 complaint explicitly links Nathan to publication of the Websites. And the Court has already found that Nathan was the party at risk of prejudice, explaining that Nathan "would have had no reason to know that the Jones Parties would seek damages from her in her personal capacity for tortious interference and defamation" when depositions were taken, and that "[i]t would be unfair to make her defend against the Jones Parties' arguments after all fact discovery in this case has closed." Dkt. No. 234 at 10-11. The prejudice the Court identified was procedural, i.e, the unfairness of defending new personal-capacity claims after the close of discovery, not the subjective question of whether Nathan "knew what she had done," as Plaintiffs allege.

Plaintiffs also fail to show that Nathan's conduct is sanctionable. First, the March 2025 requests did not call for the documents. In its March 26, 2026 Opinion and Order, the Court reviewed Plaintiffs' March 6, 2025 requests and found that, although they "touched on the claims in the proposed amendment," they were general requests concerning Jonesworks, its clients and the press. Dkt. No. 234 at 9-10. The Court found that it "was not until July 2025 when [Plaintiffs] served a second request that requested documents relating to the Business Insider article and the Websites," a fact Plaintiffs did "not dispute." *Id.* at 9-10. Plaintiffs nevertheless base their request for sanctions on Request No. 2, which the Court has already found insufficient.

Second, by the time Plaintiffs asked, it was too late for a production to matter. The Court held that "it was not until July 15, 2025 that the Jones Parties asked for documents and communications related to the Websites." Dkt. No. 234 at 12. By then "the statute of limitations for defamation had expired." *Id.* at 12. Even a complete production in response to those requests could not have revived a claim that was already time-barred. Plaintiffs, therefore, could not have been prejudiced by any deficiency in Nathan's responses to the only requests that sought Website documents.

Third, Plaintiffs did not need the Case documents to act. Plaintiffs' original complaint already alleged that Nathan "worked in concert with" the John Doe defendants to publish the Websites. *Id.* at 8; Dkt. No. 1-1 ¶ 92. The Court found that Plaintiffs "ha[d] not demonstrated that they exercised any diligence prior to the April 18, 2025 deadline to identify the John Doe defendants." Dkt. No. 234 at 9. And it found that Plaintiffs did not "persuasively explain why, if they had enough facts to allege that Nathan worked with the John Doe Defendants to publish the Website and knew the content of the Website, they would have had to wait until July 2025 to request documents from Nathan regarding the Website or December 2025 to propose to add

Nathan to the defamation claim." *Id*. at 10. That finding is fatal to Plaintiffs' causation theory: the Court has already determined that Plaintiffs possessed the facts necessary to name Nathan without any document from her.

Fourth, Plaintiffs' own delay after learning Case's account forecloses any claim that Nathan's silence caused their loss. Case testified on September 5, 2025. Pls.' Mem. at 13. *Plaintiffs nonetheless waited until December 8*, 2025—"nearly eight months after the amendment deadline and well after the close of discovery"—to move to amend. Dkt. No. 271 at 2. Nothing Nathan did or failed to do accounts for that delay.

Fifth, the Court has already identified Jones as the cause of the Doe claims' dismissal. Although "Plaintiffs had ample time to attempt to discover the identities of the John Doe Defendants and failed to do so," Plaintiffs "have not identified any other John Doe Defendants," "have not sought reconsideration" of the March 26 ruling, and have not "taken any other action in this Court since then to identify the John Doe Defendants." *Id*. The Court also denied leave to add the tortious interference claim because Plaintiffs "concede[d] that they 'knew … in December 2024 that Nathan fed information to Business Insider,'" and "need not have known that she 'was the ringleader and instigator' … to plead a claim for tortious interference." Dkt. No. 234 at 9-10. That ruling turned on what Plaintiffs knew at the outset of the case, not on anything Nathan produced or withheld.

Taken together, these findings sever any causal link between Nathan's production and the harm Plaintiffs assert. Plaintiffs lost the defamation and tortious interference claims because of when they chose to serve targeted requests and when they chose to move to amend.

2. The Severe Sanctions Plaintiffs Seek Would Be Excessive Even if Rule 37(c)(1) Were Violated.

Plaintiffs seek draconian sanctions under Rule 37(c)(1) for Nathan's alleged failure to disclose or supplement discovery in violation of Rule 26(a) or (e). Pls.' Mem. at 21. Rule 37(c)(1) authorizes the court to impose sanctions for a failure to disclose or supplement an earlier response: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to or instead of this sanction, "the court, on motion and after giving an opportunity to be heard" may order payment of the reasonable expenses, including attorney's fees, caused by the failure, inform the jury of the party's failure or, as appropriate, impose other sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

District courts have "wide discretion" in imposing sanctions. *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 177 (2d Cir. 2008); *Recio v. D'Almonte Enterprises Parking Garage, Inc.,* 2025 WL 959351, at *2 (S.D.N.Y. Mar. 31, 2025). A court generally must consider, in light of the full record of the case, (a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party has been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party. *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2020 WL 7342724, at *18 (S.D.N.Y. Dec. 11, 2020).

Severe Rule 37 sanctions are a "drastic remedy" reserved for "those rare cases where a party's conduct represents flagrant bad faith and callous disregard" of the Federal Rules. *Commercial Data Servers, Inc. v. IBM*, 262 F. Supp. 2d 50, 62 (S.D.N.Y. 2003) (citations omitted).

Sanctions that strike a pleading or enter judgment "are 'pungent, rarely used, and conclusive,'" and a court should use them "only when [it] is sure of the impotence of lesser sanctions." *Lodge*, 787 F. Supp. 2d at 258 (quoting *Ocello v. White Marine, Inc.*, 347 F. App'x 639, 641 (2d Cir. 2009)); *see id.* at 262-64 (refusing to strike a defense under Rule 37(c) even though the defendants were "at best, grossly negligent," withheld central documents "for over five years" and "repeatedly made false and misleading statements to plaintiff and to the court," and instead awarding fees and precluding the late-produced documents); *HDI Glob. Ins. Co.*, 2024 WL 4987043, at *2 (denying preclusion under Rule 37(c)(1) despite an unjustified disclosure failure because the prejudice could "be readily addressed by a remedy short of preclusion").

Sanctions must be narrowly tailored to remedy the specific prejudice that the party seeking discovery would otherwise suffer. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) ("the severity of sanction must be commensurate with the non-compliance"). Lesser remedies fully address any harm here. Nathan is a defendant in only two causes of action: the second cause of action for intentional interference with Abel's employment contract and the third cause of action for intentional interference with Jonesworks' contract with Wayfarer for public relations services. Plaintiffs do not explain how the Case documents—which, according to Plaintiffs link Nathan to the allegedly defamatory Websites—are relevant to either of those claims. For the same reason, Plaintiffs cannot establish the significant prejudice required for preclusion. *Benamou v. Miles*, 2025 WL 2793669, at *6 (E.D.N.Y. Sept. 26, 2025) ("[s]ignificant prejudice to the moving party may counsel for a harsher sanction").

Moreover, Plaintiffs now have the documents, have attached them to this motion, and can use them at summary judgment and trial to the extent that they are relevant. Pls.' Mem. at 2-5; *id.* Exs. D, E, G, I, M. Plaintiffs' assertion that "[n]either monetary penalties, adverse inferences nor

preclusion of specific evidence would remedy the misconduct," *id.* at 22, cannot justify case-ending sanctions for a disclosure failure whose only cognizable consequence is expense.

**C. Plaintiffs Have Not Shown a Violation of Rule 26(g).**

Plaintiffs also seek, as sanctions pursuant to Rule 26(g), their attorneys' fees allegedly "caused by" an "improper certification." Pls.' Mem. at 25.[4] Plaintiffs contend that Rule 26(g) was violated because Nathan's response to an interrogatory was allegedly false and documents were allegedly missing from Nathan's document production. Pls.' Mem. at 16, 19, 20. Plaintiffs have not shown a violation of Rule 26(g). First, a Rule 26(g) certification attests that a discovery response was made "after a reasonable inquiry" and is "consistent with these rules" and "not interposed for any improper purpose." Fed. R. Civ. P. 26(g)(1)(B)(i)-(iii). The test is objective: "An attorney's inquiry satisfies Rule 26(g) if her inquiry, including her investigation and her resulting conclusions, was objectively reasonable under the circumstances." *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 331 F.R.D. 568, 571 (S.D.N.Y. 2019) (quotation marks and citation omitted). Counsel "may rely, when appropriate, on representations by her client," and "Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request." *Id.* Plaintiffs' Rule 26(g) theory, that "[a] sworn answer the party knows to be false is a violation of Rule 33 and Rule 26(g) on the day it is served," (Pls.' Mem. at 20), conflates a party's verification with counsel's certification. Plaintiffs identify nothing unreasonable about counsel's inquiry.

Second, Plaintiffs mistakenly contend counsel had to certify the written discovery responses as "complete and correct." Pls.' Mem. at 19. That language governs only "a disclosure"

[4] Plaintiffs do not request terminating sanctions or an adverse inference based on Rule 26(g). Pls. Mem. at 25.

under Rule 26(g)(1)(A), *i.e*, the initial disclosures required by Rule 26(a)(1). Written discovery responses are governed by Rule 26(g)(1)(B), which "does not call for certification that the discovery response is 'complete.'" *Da Silva Moore v. Publicis Groupe*, 287 F.R.D. 182, 188 (S.D.N.Y. 2012). Indeed, "no lawyer using any search method could honestly certify that its production is 'complete'—but more importantly, Rule 26(g)(1) does not require that." *Id.*

Third, the search methodology was open and agreed. Plaintiffs' own counsel proposed search terms and requested hit reports, Dkt. No. 273-18; Ex. R, and Nathan's responses stated that she would produce documents "located in response to the agreed-upon search terms, if any," Pls.' Mem. at 12. Plaintiffs never moved to compel on that limitation. That is the opposite of the conduct condemned in the case Plaintiffs cite—*Metropolitan Opera Ass'n v. Local 100*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003) (Pls.' Mem. at 19)—where counsel gave no adequate instructions, had no systematic collection process, and "made repeated, baseless representations that all documents had been produced."

Even where a violation is shown, "sanctions under Rule 26(g) are not appropriate when a party has not been harmed." *New York v. U.S. Dep't of Commerce*, 461 F. Supp. 3d 80, 88 (S.D.N.Y. 2020) (quotation omitted). Plaintiffs have not been harmed by a certification of discovery relating to the Websites as such discovery is not relevant to the remaining intentional interference claims. Simply put, as shown above, this Court's own orders foreclose any showing of harm.

### D. Fee Awards Under Rules 37(c) and 26(g) Are Limited to Expenses Caused by a Proven Violation.

Rules 26(g)(3) and 37(c)(1)(A) each permit only expenses "caused by" the violation. The aim is to "restore the parties to the position they would have occupied but for the breach." *Lodge*, 787 F. Supp. 2d at 258 (quoting *In re Sept. 11th*, 243 F.R.D. at 131-32); *see, e.g,*, *HDI Glob. Ins.*

*Co.*, 2024 WL 4987043, at *2, n.1 (limiting sanctions to fees "incurred in the taking of the deposition" and "not those in preparation for the deposition"). Plaintiffs instead seek fees for their expert, the Case and Wallace depositions, the motion to amend, and a separate lawsuit. Pls.' Mem. at 25. Plaintiffs subpoenaed Case in February 2025, before Nathan's responses were due, *id.* at 1, and, as shown in Section III, the motion to amend failed for reasons this Court attributed to Plaintiffs' own lack of diligence, Dkt. No. 234 at 9-12; Dkt. No. 271 at 2. Those expenses were not "caused by" anything Nathan did.

## V. PLAINTIFFS ARE NOT ENTITLED TO THE SEVERE SANCTIONS THEY SEEK PURSUANT TO THE COURT'S INHERENT AUTHORITY

Plaintiffs seek sanctions under the Court's inherent power based on Nathan's alleged perjury and alleged withholding of material evidence, specifically, the documents Case produced. Courts have discretion, in appropriate circumstances, to impose sanctions under their inherent power to protect the integrity of the Court. *Yukos Capital S.A.R.L.,* 977 F.3d at 236. Clear and convincing evidence of bad faith is required for sanctions under the court's inherent power. *Id.* (citing *N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc*., 432 F. App'x 25, 25 (2d Cir. 2011) ("Sanctions for fraud are warranted if it is established by clear and convincing evidence that [a party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action")). Wrongdoing alone is not enough—clear and convincing evidence of bad faith is required—and it is well within the Court's discretion to deny sanctions even if wrongdoing occurred. *Id*. at 234-35.

Rules 37 and 26(g) are the primary means to punish discovery abuse and the Court's inherent power should serve only as a "backstop against discovery abuses that do not clearly violate Rules 26(g) and 37." *Yukos Capital S.A.R.L.,* 977 F.3d at 236. In such cases, "[a] court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party

from perpetrating a fraud on the court. *Beverly Hills Teddy Bear Co.*, 2020 WL 7342724, at *16.[5] Plaintiffs seek sanctions under Rules 37 and 26(g), and the Court should analyze sanctions for alleged shortcomings in Nathan's discovery responses under those rules.

Plaintiffs also seek sanctions pursuant to the Court's inherent power for alleged perjury. Courts should impose sanctions pursuant to their inherent powers only in rare circumstances. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion"). When sanctions are sought in the discovery context, "discretion should be exercised with even more restraint than usual." *Yukos Capital S.A.R.I.*, 977 F.3d at 235. Sanctions pursuant to the court's inherent power implicate due process concerns which are particularly strong when the sanction sought is an outright dismissal. Dismissal is permissible only when the deception relates to matters in controversy in the action, and even then it is so harsh a remedy that it should be imposed only in the most extreme circumstances. *Bower v. Weisman*, 674 F. Supp. 109, 112 (S.D.N.Y. 1987) (denying sanction of dismissal where the testimony had "little effect on the merits of [the] action").

Plaintiffs cannot meet the demanding legal standard for perjury. Plaintiffs contend that Nathan committed perjury, warranting sanctions under the Court's inherent power. The federal perjury statute, 18 U.S.C. § 1621, is violated when a witness testifying under oath "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).

---

[5] Perjury and nondisclosure, standing alone, constitute a fraud or injury to another litigant, not a fraud on the court. *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988).

### A. Plaintiffs Fail to Show an Objectively False Statement of Fact Made with Willful Intent.

Perjury is committed with willful intent only when the false testimony is "made 'with the specific purpose of obstructing justice'" and the false statement must be "material to the proceeding in which it is given." *United States v. Ben-Shimon*, 249 F.3d 98, 102 (2d Cir. 2001). Perjury in a civil matter must be proven with clear and convincing evidence. *ICN Pharm., Inc. v. Khan*, 2 F.3d 484, 493 (2d Cir. 1993) ("a finding as to willfully false testimony (as distinguished from an ordinary credibility determination in the course of resolving a disputed issue of fact) must be made in stated accordance with the 'clear and convincing proof' standard"); *Ricciuti v. New York Transit Authority*, 70 F. Supp. 2d, 300, 315 (S.D.N.Y. 1999) ("[P]erjury is a 'heinous crime,'" accordingly, a party alleging perjury must demonstrate that perjury by "clear and convincing proof"). In *Radecki v. GlaxoSmithKline*, for instance, the Second Circuit affirmed dismissal as a sanction for perjury where the plaintiff falsely claimed he had "Stage III prostate cancer with a metastatic brain lesion," a claim directly and conclusively refuted by his own medical records, which showed he "was aware at the time that he testified that he did not have and had never had such a lesion." *Radecki v.GlaxoSmithKline*, 375 F. App'x 46, 47 (2d Cir. 2010). The falsity in *Radecki* was a matter of objective, documentary fact: a brain lesion either existed in the medical records or it did not. There was no room for confusion, different interpretations, or competing accounts.

These facts are not comparable. Plaintiffs' perjury claim hinges on the conflict between Nathan's and Case's testimony, as allegedly evidenced by documents produced by Case in exchange for a release of Jones' recently filed New York state lawsuit against Case. Discrepancies between the accounts of two witnesses (or between a witness' deposition and trial testimony) are fact and credibility determinations and do not prove perjury. *Yukos Capital S.A.R.L.*, 977 F.3d at

236 ("'questions of fact' and 'credibility determinations'" must be left to the jury); *Ricciuti*, 70 F. Supp. 2d at 315-16 ("discrepancies" in a witness's various accounts of events did not establish that the witness gave perjured testimony and the fact that one party's account "differs from" another witness's account "is insufficient to demonstrate that [the witness] committed perjury"); *Pietrangelo v. Refresh Club, Inc.*, 2022 WL 17616353, at *8 (D.D.C. Dec. 13. 2022) (inconsistent testimony does not support inference of perjury and courts should defer credibility challenges to the trier of fact).

Plaintiffs' perjury allegation hinges on the fact that Case testified one way about Nathan's role, and Nathan testified another. This is a credibility dispute—not perjury. The law does not permit the court to assume that because witnesses disagree, one must be committing perjury. *See Wall v. Constr. & Gen. Laborers' Union*, 2006 WL 197353, at *6 (D. Conn. Jan. 24, 2006) (without clear and convincing evidence of false testimony, accusations of perjury are insufficient). These principles were applied in *Yukos Capital S.A.R.L.* where the Second Circuit found that the trial court did not abuse its discretion in denying a plaintiff's request for sanctions under Rule 37 and the court's inherent authority, noting that "the district court made the acceptable choice to leave 'questions of fact' and 'credibility determinations' to the jury at trial." 977 F.3d at 236 (citing *Miesenbock v. Chase Bank USA N.A.*, 2008 WL 4923182, at *2 (D. Conn. Nov. 14, 2008)).

A denial of guilt is similarly insufficient to establish willful intent. In *Ben-Shimon*, the Second Circuit rejected the lower court's finding that the defendant committed perjury by denying his guilt under oath, rejecting the notion that a party's denial of allegations is "tantamount to obstruction of justice." 249 F.3d at 103-04. The Second Circuit requires a specific finding that the witness gave false testimony "with the specific purpose of obstructing justice," and held that this element of willfulness "has not been met" where it was not independently established. *Id.* at 104.

Plaintiffs are attempting to do precisely what *Ben-Shimon* forbids: treating Nathan's denials as per se perjury, without establishing that her testimony was willfully false rather than the product of a different understanding, perspective, or recollection of events. *United States v. Orelien*, 119 F.4th 217, 230-33 (2d Cir. 2024) (a court cannot simply equate "lie" with the willful intent to obstruct justice required for perjury); *see also, e.g.*, *EB Safe LLC v. Hurley*, 2019 WL 5260581, at *3 (S.D.N.Y. Oct. 18, 2019) (finding inconsistent testimony did "not clearly and convincingly show that [the witness] sought to obstruct justice" because the witness' "later testimony could have been the result of confusion or a mistake made during an adversarial exchange. … Neither of these possibilities amount to intentional obstruction of justice"). Inconsistencies in witnesses' testimony may "provide fertile ground for vigorous impeachment," but do not support a deliberate intention to fabricate testimony, which is required for a finding of perjury. *Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008).

**B. Testimony Concerning the Websites Is Not Material.**

The federal perjury statute requires that a false declaration be "material to the point in question" in the proceeding. 18 U.S.C. § 1623. Materiality requires the capacity to influence the court's decision-making. *United States v. Forde*, 740 F. Supp. 2d 406, 412 (S.D.N.Y. 2010) (a false statement is material only if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it is addressed") (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)); *United States v. Zagari*, 111 F.3d 307, 329 (2d Cir. 1997) (false testimony must be "material to the proceeding in which it is given" and testimony material to a separate or resolved matter does not satisfy the materiality element for the instant

proceeding).[6] In *Polylok Corp. v. Valley Forge Fabrics, Inc.*, 670 F. Supp. 1210, 1212 (S.D.N.Y. 1987), the court declined to impose sanctions even after finding intentionally false testimony, reasoning that it did "not establish the type of egregious falsity and obstructive conduct that can be classified as intentional, deliberate and calculated to impede the judicial process." The court emphasized that "the pretrial discovery record, despite the claims of false swearing and withholding of records, is complete and plaintiff has derived whatever information is necessary under that process to use upon a trial proper." *Id.*

Plaintiffs fail to show that testimony relating to Nathan's role (or lack thereof) in the allegedly defamatory Websites is material. Nathan's testimony about the origin of the Websites may have been relevant to the now-dismissed eighth cause of action for defamation. Nathan, however, was not a defendant in Jones' defamation claim and the Court has already ruled that it is time-barred and futile. The Court denied Plaintiffs' motion to amend to add Nathan to the defamation claim, holding that "the statute of limitations for defamation had expired" under C.P.L.R. § 215(3)'s one-year limitations period. Dkt. No. 234 at 12. The Court further found that Plaintiffs "ha[d] not demonstrated that they exercised any diligence prior to the April 18, 2025 deadline to identify the John Doe defendants" and that "it was not until July 15, 2025 that the Jones Parties asked for documents and communications related to the Websites," by which time the statute had already run. *Id.* at 9-10, 12. The Court subsequently dismissed the eighth cause of action and all John Doe Defendants entirely. Dkt. No. 271. That order is "law of the case." *Id.* at 2 (citing *Quintieri*, 306 F.3d at 1225). Testimony about a futile, time-barred, and dismissed claim is not "material to the proceeding in which it is given." *Ben-Shimon*, 249 F.3d at 102. A false statement

[6] Plaintiffs also rely on allegedly false statements at issue in other, unrelated lawsuits arising from websites targeting third parties. Testimony and evidence in those cases is immaterial to the issues before this Court.

about a matter the Court has already determined is beyond the reach of this litigation cannot potentially influence the Court, impede the proceedings or affect the outcome. *See Zagari*, 111 F.3d at 329 ("[J]ust because perjured testimony is given in a related action, and simply because that testimony is found to have been material to the related proceeding, does not mean that the statements are material to the instant proceeding"); *Forde*, 740 F. Supp. 2d at 416 (Section 1623(a) "is contravened only when the perjury is committed in response to a question which bears upon the matters within the investigation's purview") (quoting *United States v. Berardi*, 629 F.2d 723, 727 (2d Cir. 1980)).

No claim relating to the Websites is pending and there is no live proceeding that could have been "impeded" by any testimony about the Websites. *See Bower*, 674 F. Supp. at 112. Nathan's testimony about the Websites was not material to any pending claim or issue. Testimony about a dismissed, time-barred claim that Plaintiffs themselves failed to diligently pursue does not satisfy the materiality element of perjury. *See Dunnigan*, 507 U.S. at 94; *Ben-Shimon*, 249 F.3d at 102.

### C. Even If Plaintiffs Could Establish Perjury, the Extreme Sanctions They Seek Are Unwarranted.

Like sanctions under Rule 37(c), a court "should impose the least harsh sanction which would serve as an adequate remedy." *Slovin v. Target Corp.*, 2013 WL 840865, at *6 (S.D.N.Y. Mar. 7, 2013); *see also Grammar v. Sharinn & Lipshie, PC,* 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) (courts "should always seek to impose the least harsh sanction that will remedy the discovery violation"). Even assuming Plaintiffs could establish perjury (which they cannot), the extreme sanctions they seek would be disproportionate. Courts consistently require that case-dispositive sanctions be reserved as a "sanction of last resort, to be used only when less onerous methods … will be ineffective or obviously futile." *Klayman v. Judicial Watch, Inc.*, 314 F. Supp. 3d 308, 312 (D.D.C. 2018) (quoting *Webb v. District of Columbia*,



533586.1

146 F.3d 964, 971 (D.C. Cir. 1998)).

## VI. CONCLUSION

For the foregoing reasons, Nathan respectfully requests that the Court enter an Order denying Plaintiffs' sanctions motion in its entirety.

Dated: October 5, 2026
Los Angeles, CA

**LINER FREEDMAN TAITELMAN + COOLEY**

By: */s/ Ellyn S. Garofalo*
Bryan J. Freedman
Ellyn S. Garofalo
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
egarofalo@lftcllp.com

MEISTER SEELIG & SCHUSTER PLLC
Mitchell Schuster
Kevin Fritz
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500
Email: ms@mss-pllc.com
kaf@ mss-pllc.com