**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEPHANIE JONES, JONESWORKS LLC

Plaintiffs,

-v-

JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, and JOHN DOES 1-10

Defendants.

Civil Action No. 1:25-cv-779 (LJL)

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**

The omissions in Nathan's Opposition are glaring. Nathan ***does not deny*** that she: (1) lied under oath during her deposition; (2) possessed documents that were relevant to Plaintiffs' requests for production; and (3) withheld those documents in violation of her discovery obligations.

Nor could she. The Case Documents make clear what happened. Nathan withheld relevant, requested communications with her employee that revealed Nathan's lead role in publishing smear websites and articles about Plaintiffs, designed to drive their clients away from Plaintiffs and into Nathan's arms. Nathan then lied about her involvement during her deposition, called Case a liar for testifying truthfully, and bet she could run out the discovery clock. And her plan almost worked. Until Plaintiffs received the Case Documents, Nathan's involvement was, as she puts it, a "credibility" battle between Nathan and Case. Opp. at 24. But the Case Documents are irrefutable. Nathan was the ringleader of the smear campaign against Plaintiffs. She lied about her involvement under oath. And she withheld relevant documents that would have revealed it. These facts alone justify the sanctions Plaintiffs request.

Now, Nathan's lawyers are in on the act. In her response, Nathan's attorneys deny that they tried to hide the truth on the ground that they did not try to block Mr. Case from producing the Case Documents. In support, they attach the Garofolo Declaration, which swears that (1) Jones served Case with document requests targeting the Case Documents after suing Case in New York Supreme Court; and (2) James Case, Katherine Case's counsel, threatened to produce those documents unless Nathan indemnified Case. Garofalo Decl. at ¶¶ 2-4. These statements are false. When Case's attorney, James Case, read the Garofolo Declaration, he informed Plaintiffs' Counsel that it was false and provided emails that refute the sworn assertions therein.

Those emails prove that Mr. Case reached out to TAG to seek indemnification for Ms. Case. When TAG refused, Mr. Case stated only that she would "take the steps necessary to resolve the lawsuit" and that TAG's refusal "negate[d] any obligation for [Ms. Case] to cooperate with TAG, Ms. Nathan, or their attorneys." *See,* Ex. A, James Case Decl., Ex. 4 at 2-3. TAG's counsel never told Mr. Case he could produce the documents. To the contrary, TAG's counsel threatened that if Ms. Case did not abide by her employment agreement, TAG would sue her and seek damages. *Id.* at 3.

That Nathan's counsel would play fast and loose with the facts in a sworn declaration defending Nathan's own dishonest conduct underscores the apathy with which Nathan and her counsel view their discovery obligations, their obligations under Rule 11, and their ethical obligations of candor. It is also part of a deeply concerning set of facts that is rapidly unfolding in courts and investigative reports across the county. A story in the *New York Times* last week revealed that TAG, Nathan, and Bryan Freedman have been involved in a years-long scheme as guns for hire, who will create smear websites to attack women, ruin their reputations, and exact revenge on them. *See* Ex. B, https://www.nytimes.com/2026/10/06/nyregion/smear-campaigns-blake-lively-bryan-freedman.html. New details of this scheme are coming out almost weekly in litigation across the country. Indeed, in a case filed just last week, it was alleged that Mr. Freedman himself sent harassing text messages to a woman on behalf of one of his clients regarding a smear site. *See Jimenez v. Freedman*, filed October 6, 2026 in Los Angeles County Superior Court.

Rather than address the substance of Plaintiffs' Motion, Nathan instead quibbles over procedure. But her procedural arguments are wrong too. Contrary to Nathan's characterizations, Plaintiffs do not seek reconsideration of prior rulings. Rather, Plaintiffs invoke the Court's authority to remedy Nathan's blatant misconduct, which was designed to deprive Plaintiffs of

evidence that Nathan was plainly required to produce. And both the federal rules and the Court's inherent authority grant the Court discretion to do so. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (inherent power "allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court"); *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 253 (S.D.N.Y. 2012) (Rule 37(b) sanctions should restore "the prejudiced party to the same position he would have been in absent the wrongful conduct").

Nathan's conduct has put the very legitimacy of this process into question. Perjury is perjury. And when it goes to the heart of an injured party's claims, perjury cannot be tolerated. Not by parties. And not by their lawyers. Ever. Indeed, if a party can lie under oath, which is exactly what Nathan did here, then the oath is utterly meaningless and every court reporter, bailiff, courtroom deputy and court who issues that oath is wasting her time as well as that of every juror who will decide the case at issue based upon perjured testimony. This disregard for the very ethical obligations that undergird our judicial system requires a clear reprimand with severe consequences.

## I. Nathan and Her Counsel Have Engaged in a Pattern of Sanctionable Dishonesty.

Nathan does not meaningfully rebut the two central accusations in the Motion: (1) she committed perjury when she denied involvement in creating the Stephanie Jones Leaks websites (the "Websites"); and (2) she possessed, and withheld in the face of targeted requests, documents revealing her role in creating them. Her refusal to deny those accusations is an admission of guilt.

Instead, Nathan argues that Plaintiffs have not identified any perjury, because the perjury allegation "hinges on the fact that Case testified one way about Nathan's role, and Nathan testified another." Opp. at 24-25. Nathan's attempt to frame this as a simple credibility determination is belied by the fact that ***Nathan does not argue that her testimony was truthful.*** It also ignores the Case Documents, which prove that Nathan and Jed Wallace lied under oath. Opp. at 3-4. The

unrebutted documentary evidence shows that Nathan directed the formation of the Websites, told her employee to write the content, and paid her to do so. Nathan does not deny this.

Next Nathan argues she was excused from producing the Case Documents because: (1) the parties agreed to search terms, Opp. at 21, and (2) Plaintiffs' March 2025 requests did not "call for the documents," *id.* at 16. Again, ***Nathan does not deny that she possessed these documents and did not produce them.*** And her arguments for absolution are red herrings.

*First*, Nathan does not argue that her communications with Case were not responsive to the parties' agreed-upon search terms. *See* Opp. at 21. But even if they were not, search terms "***do not replace*** a party's independent obligation to produce electronic … documents that are … responsive within the meaning of Rule 34." *Raine Group LLC v. Reign Capital, LLC*, No. 21CV1898JPCKHP, 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022) (emphasis added).

*Second*, Nathan is wrong that the March 2025 requests did not call for production of these documents. Opp. at 16. Those requests specifically sought "all documents and communications pertaining to Jonesworks LLC," and "relating to any effort by [Nathan] … to obtain the business of any current or former client of Jonesworks." *See* Dkt. 193-3 at 7. And Nathan does not deny that Plaintiffs' ***July 2025*** requests specifically requested these documents. Opp. at 16. Nathan instead argues that by July 2025, Plaintiffs' defamation claim was already time-barred. *Id.* But the Court had not made any such determination in July of 2025. Nathan's argument is that she could withhold responsive documents based on her unilateral determination that the documents were relevant only to a claim that should be (but had not yet been) dismissed as untimely. This is a brazen violation of Nathan's discovery obligations.

## II. Sanctions Are Warranted Under Rules 37(c), 26(g), and the Court's Inherent Power.

Nathan's conduct warrants sanctions under Rules 37, 26(c), and the Court's inherent power. Nathan's procedural arguments to the contrary are wrong and ignore the very purpose of sanctions.

### A. Sanctions Protect the Integrity of the Judicial System

A central purpose of sanctions is to deter conduct that threatens the integrity of the judicial process. *See, Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010). "A lawsuit is supposed to be a search for the truth." *Miller v. Time–Warner Commc'n*s, *Inc.*, No. 97 Civ. 7286, 1999 WL 739528, at *1 (S.D.N.Y. Sept. 22, 1999), and "the tools employed in that search are the rules of discovery." *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003). Rule 26(g) "is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions," and Rule 37 sanctions serve "to deter those who might be tempted to such conduct." *Id.* at 219. Inherent power likewise allows a court to "compensate litigants who are vigilant in exposing litigation fraud," "punish and deter such conduct," and "vindicate itself." *Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-CV-2514 (JMA), 2010 WL 2730748, at *8 (E.D.N.Y. July 6, 2010), *aff'd sub nom. N.Y. Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011).

### B. Nathan's Procedural Arguments Fail.

Nathan devotes much of her opposition to arguing that Plaintiffs were not prejudiced by Nathan's conduct, and thus sanctions are not appropriate. Plaintiffs were prejudiced. They still are. Severely so. But prejudice is not a prerequisite to discovery sanctions. *See Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021). Inherent-power sanctions focus primarily "on the *intent* of the potentially sanctionable conduct, not on its *effect*." *Id.* (emphasis in original).

Likewise, "prejudice is not required for preclusion under Rule 37(c)(1)." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 117 F. Supp. 3d 276, 294 (S.D.N.Y. 2015). And under Rule 26(g), the court "*must* impose an appropriate sanction." Fed. R. Civ. P. 26(g)(3) (emphasis added). Nathan's misconduct is egregious and must be deterred, regardless of prejudice. As detailed in Section III.A, she lied under oath about her role in the Websites after reading Case's testimony, despite knowing her own text messages proved she was lying. *See* Mot., Ex. A at 131:20-132:23, 133:14–21, 135:22–25, 142:16-143:12; Mot., Ex. E. That is perjury, not a "credibility dispute." *See* Opp. at 25.

Nathan also asserts that sanctions under Rule 37 are inappropriate here, because Plaintiffs have not argued a violation of Rule 37(b). Opp. at 7, 13. But Rule 37(c)(1)(C) authorizes the sanctions in Rule 37(b)(2)(A)(i)-(vi) when a party fails to provide or supplement information as required by Rule 26(e). Nathan did exactly that. Nathan also violated Rule 26(g) by certifying discovery responses she ***knew*** were incomplete. And in any event, the Court has inherent power to sanction bad-faith litigation conduct. *See Chambers*, 501 U.S. 32 at 43-46.

### C. Plaintiffs Were and Are Prejudiced by Nathan's Misconduct.

Even if prejudice were required (it is not), Nathan's conduct warrants sanctions. Nathan argues that Plaintiffs were not prejudiced because the Complaint "explicitly links Nathan to publication of the Websites," even without the withheld discovery. But at the time Plaintiffs filed their complaint, they did not then know the extent of Nathan's involvement, and indeed, alleged Nathan's involvement on information and belief (and against Doe defendants), inferring a common scheme because the Websites were published in parallel with the Business Insider article. *See* Compl. at ¶ 92 (alleging "John Does 1-10, who, *on information and belief*, were acting in concert with Abel and Nathan, published two false and defamatory websites" (emphasis added)).

The Court has acknowledged that Plaintiffs' March 2025 requests "touched on" Nathan's communications about the Websites. Dkt. No. 234 at 9. Had Nathan timely produced the Case Documents in response, Plaintiffs could have alleged defamation against her before limitations ran. Nathan faults Plaintiffs for a lack of diligence, while she hindered their efforts. *See* Dkt. No. 219 at 10, 12-14.

Nathan also asserts the concealed information is irrelevant to Plaintiffs' remaining claims. Opp. at 19. Not so. Plaintiffs assert tortious interference with contract against Nathan for interfering with the Abel and Wayfarer Agreements. Compl. ¶¶ 113-21, 131-37. Nathan's scheme to separate Jonesworks from its clients is undoubtedly relevant to those claims. Nathan helped plant stories, including the Business Insider article, to damage Plaintiffs' reputations. *See* Compl. ¶¶ 68, 76-78, 84-86. That article referenced the Websites and lent them credibility. In the wake of that harm, Abel was encouraged to violate her non-compete and non-solicitation obligations, and Wayfarer left Jonesworks and engaged Abel. *See id.* at ¶¶ 102, 115-18, 134-35. Nathan helped create the Websites, knew they were defamatory, and then helped shape and helped disseminate the article. Her role in the Websites is thus evidence of the interference itself and of Nathan's willful, malicious, and bad faith conduct that warrants punitive damages.

Finally, Nathan argues that Plaintiffs "now have the documents . . . and can use them at summary judgment and trial." Opp. at 19. But fact discovery closed September 30, 2025. Had Nathan produced the documents in response to the first requests, Dkt. No. 234 at 9, or the second, which explicitly sought documents on her "involvement in the creation . . . or content" of the Websites, Dkt. No. 193-4, Plaintiffs could have used them in depositions, to guide discovery, and to allege defamation earlier. These opportunities are lost—just as Nathan intended.

## III. The Requested Sanctions Are Proportionate to Nathan's Misconduct

Nathan calls the requested sanctions "draconian." Opp. at 7-8. But Rule 37 permits severe sanctions "commensurate with the non-compliance," *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007), and Nathan's non-compliance is as serious as it gets. She lied under oath about her own conduct, withheld the documents that would have exposed her, and exploited the resulting gap in the record. Measured against that misconduct and the prejudice described above, the requested sanctions are proportionate.

### A. The Relevant Factors Favor Severe Sanctions

In determining what sanctions are just and proportionate, courts consider the *Agiwal* factors, which include "the willfulness of the non-compliant party…, the efficacy of lesser sanctions, [and] the duration of the period of noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009); *see also Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2020 WL 7342724, at *18 (S.D.N.Y. Dec. 11, 2020) (also considering client complicity and prejudice). Nathan concedes that severe sanctions are warranted for "flagrant bad faith and callous disregard of the Federal Rules," Opp. at 18. The factors cut against her.

*First*, Nathan acted willfully and in bad faith. The Case Documents show she was involved in the Websites from start to finish, yet she verified an interrogatory response stating that she "had no involvement in either [Website] to any extent," Mot., Ex. C at 21-22. On September 5, 2025, Case testified to Nathan's role in the websites. Five days later, Plaintiffs asked Nathan to search again for documents about the Websites, including payment records. Nathan insisted her production was complete, even though the texts with Case were on her phone and the Zelle receipt was in her account. Mot. at 13-14. On September 30, 2025, after reading "the entirety" of Case's testimony, Nathan testified that she had no involvement "whatsoever" and that Case would be "lying" to say otherwise. Mot., Ex. A (Nathan Dep.) at 131:20-132:23, 133:14-21. Nathan's

conduct was deliberate: she was confronted with the truth, asked directly to produce the proof, and doubled down on her lie.

*Second*, Nathan's noncompliance was prolonged and repeated. She withheld the Case Documents for roughly seventeen months. Mot. at 21-22. She passed up at least *six* opportunities to correct the record. Mot. at 11-15. She then repeated the same denial under oath in *Ghost v. Wilson* a month after her deposition here. Mot. at 15. That is the exact kind of "history…of noncompliance" that warrants a severe response. Opp. at 18.

*Third*, lesser sanctions would not deter Nathan nor remedy the prejudice. Nathan's misconduct was no isolated lapse. It was a deliberate and repeated litigation strategy to defeat the truth-seeking function of discovery to enhance her own position. ***And it worked.*** Nathan hindered Plaintiffs' discovery efforts and manipulated the record on which Nathan opposed Plaintiffs' motion to amend. *See supra,* Section II.C; Dkt. No. 234 at 9-12. Nathan's Answer and defenses preserve those benefits. Mot. at 21. A fee award alone would signal that perjury is merely a cost of doing business, when Rule 37 sanctions exist precisely "to deter those who might be tempted to such conduct." *Metro. Opera Ass'n*, 212 F.R.D. at 219.

Nathan relies on *Lodge* to argue that even years of withholding and misstatements warrant only fees and evidence preclusion. Opp. at 19 (citing *Lodge v. United Homes, LLC*, 787 F. Supp. 2d 247 (E.D.N.Y. 2011)). But *Lodge* shows why lesser sanctions are inadequate here. The *Lodge* court found defendants' conduct "grossly negligent." 787 F. Supp. 2d at 261. Nathan's is undoubtedly intentional. She denied her own involvement under oath, withheld relevant documents, and accused Case of perjury, when Case told the truth. Moreover, evidence preclusion was appropriate in *Lodge* where the withheld documents were "vital" to the ***offending*** party's defense. Excluding them punished the wrongdoer. *Id.* at 261–64. Here, the concealed documents

are material to ***Plaintiffs'*** case (and harmful to Nathan's). Precluding them would only help Nathan. And a fee award alone would leave in place the rulings Nathan's false denials procured.

"[T]he court should endeavor to impose a sanction that will restore the parties to the position they would have occupied but for the breach of discovery obligations and ***deter future misconduct***." *In re September 11th Liab. Ins. Coverage Cases,* 243 F.R.D. 114, 131-32 (S.D.N.Y. 2007). Striking Nathan's defenses and entering judgment is necessary to restore the balance her misconduct upset, particularly where Nathan's Opposition reveals no remorse.

### B. Alternatively, the Court Should Impose Lesser Sanctions

If the Court finds Plaintiffs' proposed sanctions too severe, it should still impose each of the following sanctions which are tailored to a specific harm Nathan caused:

- Allow Plaintiffs to plead and pursue their defamation and tortious interference with prospective business relations claims against Nathan. Mot. at 22.
- Deem established that Nathan requested, directed the content of, edited, and paid for the copy that became www.stephaniejonesleaks.com, and that she knew, from May 2024 on, that she was among the John Does 1-10 described in the Complaint. Mot. at 24.
- Bar Nathan from offering testimony, declarations, or argument at summary judgment or trial that she had no role in creating, directing, or funding the Websites. *Id.*
- Instruct the jury that Nathan withheld communications concerning her role in the Websites and testified falsely on that subject, and that the jury may infer the withheld evidence was unfavorable to her on the interference claims and punitive damages.
- Award Plaintiffs' counsel reasonable expenses, including attorneys' fees on this motion, the motion to compel Case, the forensic expert retained to trace the Websites, the Case and Wallace depositions, the motion for leave to amend, and *Jonesworks LLC v. Case*. *Id.*
- Reopen discovery to permit Plaintiffs to redepose Nathan and Jed Wallace, now with the benefit of the Case Documents.

## CONCLUSION

For the foregoing reasons, Plaintiffs request the Court grant Plaintiffs' Motion for Sanctions.

Dated: October 12, 2026

Respectfully submitted,

By: */s/ Brad Beckworth*

Bradley E. Beckworth, *pro hac vice*
New York State Bar No. 5151071
Christina Yarnell, *pro hac vice*
Texas State Bar No. 24071973
NIX PATTERSON, LLP
8701 Bee Cave Road
Seven Oaks East, Suite 500
Austin, Texas 78746
Telephone: (512) 328-5333
Telecopier: (512) 328-5335
bbeckworth@nixlaw.com
cyarnell@nixlaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, the foregoing was filed electronically with the Court and served by operation of the Court's ECF notification system upon all counsel of record.

Austin, Texas
October 12, 2026

*/s/ Brad Beckworth*
Brad Beckworth