**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHANIE JONES and JONESWORKS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, and JOHN DOES 1-10,<br><br>Defendants. | Civ. Action No. 1:25-cv-00779-LJL<br>rel. 1:24-cv-10049-LJL |

**THE WAYFARER PARTIES' RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, Defendants Jennifer Abel, Melissa Nathan, Justin Baldoni, and Wayfarer Studios LLC submit this Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

**A. Wayfarer's Agreement with Jonesworks**

1. Effective May 7, 2020, Wayfarer Studios LLC ("Wayfarer") and Jonesworks LLC ("Jonesworks") signed a written agreement under which [redacted] (the "Wayfarer Agreement"). Heath Decl. ¶ 5, Ex. A, JONESWORKS_00041022–26 at 022; Compl. ¶ 35.

2. The Wayfarer Agreement [redacted], was signed by Wayfarer's prior CEO, and provides that "[redacted] Heath Decl. ¶ 5, Ex. A, JONESWORKS_00041022–26 at 022.

3. Justin Baldoni is not a signatory or party to the Wayfarer Agreement. Heath Decl. ¶ 5, Ex.A, JONESWORKS_00041022–26 at 022; Garofalo Decl. Ex. 5 (Dies Dep. 106:11–17).

4. After an initial one-year term ending May 6, 2021, the Wayfarer Agreement [redacted]. Heath Decl. ¶ 5, Ex. A, JONESWORKS_00041022–26 at 022; Compl. ¶¶ 37–39.

5. [redacted] Heath Decl. ¶ 5, Ex. A, JONESWORKS_00041022–26 at 024–25.

6. The Wayfarer Agreement provides that [redacted]



535172.1

[redacted] Heath Decl. ¶ 5, Ex. A, JONESWORKS_00041022–26 at 022.

7. The services Jonesworks agreed to provide under the Wayfarer Agreement included [redacted] Heath Decl. ¶ 5, Ex. A, JONESWORKS_00041022–26 at 026.

8. The Wayfarer Agreement provides that, [redacted] Heath Decl. ¶ 5, Ex. A, JONESWORKS_00041022–26 at 026.

9. The Wayfarer Agreement [redacted]. Heath Decl. ¶ 5, Ex. A, JONESWORKS_00041022–26 at 025; Compl. ¶¶ 25, 38.

**B. Abel's Employment Agreements**

10. On or about July 9, 2020, Jonesworks hired Jennifer Abel, a publicist, as a Vice President in its Los Angeles office and made her the primary point person for Wayfarer and Baldoni. Abel Decl. ¶¶ 3, 6-7; Garofalo Decl. Ex. 11 (Jones Dep. 68:5–9); Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 18:9–25, 143:10–13, 143:15–144:7, 144:9–15); Garofalo Decl. Ex. 3 (Abel Dep. (Sept. 26, 2025) 42:11–15); Garofalo Decl. Ex. 8 (Hanks Dep. 73:25, 74:2–4).

11. When Jonesworks hired her, Abel signed an offer letter and a Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement (the "Abel NDA"). Abel Decl. ¶¶ 3-4, Exs. A (JONESWORKS_00041095–96), B (JONESWORKS_00041839–45).

12. The Abel NDA [redacted]. Abel Decl. ¶ 4, Ex. B (JONESWORKS_00041839–45).

13. On or about November 22, 2021, Jonesworks and Abel entered into a modified employment agreement (the "Abel Employment Agreement"), which [redacted]. Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041084–94) § 11.13.

14. The parties to the Abel Employment Agreement are Abel and Jonesworks; Stephanie Jones signed only in her representative capacity. Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041084–94); Compl. ¶¶ 28, 30, 108, 114; Garofalo Decl. Ex. 11 (Jones Dep. 68:5–9).

15. The Abel Employment Agreement provides for [redacted]. Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041084–94) § 1.

16. The Abel Employment Agreement [redacted]. Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041084–94) §§ 5.3–5.4.

17. Section 6.2 of the Abel Employment Agreement bars Abel, [redacted] Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041084–94) § 6.2; Compl. ¶ 109.

18. [redacted]. Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041084–94) § 6.2.

19. [redacted]. Garofalo Decl. Ex. 11 (Jones Dep. 64:13–17).

20. Section 6.3.1 of the Abel Employment Agreement provides that [redacted]. Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041084–94) § 6.3.1.

21. Section 6.3.2 of the Abel Employment Agreement provides that [redacted] Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041084–94) § 6.3.2.

22. Section 9.2 of the Abel Employment Agreement provides [redacted] Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041084–94) § 9.2; Compl. ¶ 145.

23. The Abel Employment Agreement contains [redacted]. Abel Decl. ¶ 5, Ex. C (JONESWORKS_00041093) § 11.13.

24. Abel's 2020 offer letter and the Abel NDA [redacted]. Abel Decl. ¶¶ 3-5 Exs. A-C §§ 6.2–6.3; Compl. ¶¶ 29, 31.

25. Jones was Abel's supervisor and Jonesworks' President, not Abel's principal or employer. Abel Decl. ¶ 2; Compl. ¶¶ 27, 139–40, 143.

26. Abel was the primary point person for Wayfarer and Baldoni at Jonesworks. Abel Decl. ¶¶ 6-7.

**C. Abel Resigns on Her Own Initiative After Jones' Zoom Call**

27. By the summer of 2024, Abel viewed Jonesworks as a toxic workplace: morale was low, employees were quitting, and dissatisfied clients were taking their business elsewhere. Abel Decl. ¶ 8.

28. Abel worried about what she saw as Jones' "downward spiral," with Jones behaving erratically and pitting employees against one another but Abel had no plans to leave Jonesworks because she ran the Los Angeles office with relative autonomy. Abel Decl. ¶ 8; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 48:12–25).

29. On July 10, 2024, during a business Zoom call with Jones and Matthew Mitchell, a Jonesworks employee who reported to Abel, Jones bullied Mitchell, "making up scenarios" and pressing Abel to corroborate them "in an attempt to diminish [Mitchell's] work," and then turned "increasingly hostile" toward Abel in a call that "resulted in name calling." Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 50:16–23, 51:7–12, 64:19–23, 65:1–7); Garofalo Decl. Ex. 6 (Duren Dep. 67:4–7).

30. Abel described the July 10 call as "a tumultuous, scary conversation" that left her "emotional" and in tears; at her breaking point, she told Jones on the spot that she was resigning.

Abel Decl. ¶ 9; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 48:12–21, 50:16–51:4, 52:2–4, 64:19–23, 65:8–10).

31. That same day, Abel confirmed by email to Jones and Jonesworks leadership that, [redacted]

Abel Decl. ¶ 9, Ex. D (JONESWORKS_00017543); Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 51:18–52:1).

32. Abel's decision to resign was hers alone; no one persuaded her to leave Jonesworks or to start her own company. Abel Decl. ¶ 11; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 48:18–21, 52:2–4).

33. On or about July 24, 2024, Jones begged Abel to stay, apologized for how she had treated her, and told Abel that she was back on her medication and was going to start going to therapy. Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 66:10–17, 168:17–18, 168:20–169:5).

34. On July 26, 2024, Abel reconfirmed her decision in writing and told Jones she planned to start her own business. Abel Decl. ¶ 10; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 63:2–11, 168:6–16 & Dep. Ex. 4 (JONESWORKS_JA_000000309)).

35. Abel offered a six-week transition ending August 23, 2024, so that she could hand off her clients in an orderly way, and Jones accepted. Abel Decl. ¶ 10.

36. Wayfarer, Baldoni, and Melissa Nathan did not know that Abel intended to resign before she gave notice. Heath Decl. ¶ 8; Baldoni Decl. ¶ 5; Nathan Decl. ¶ 6; Abel Decl. ¶ 12; Garofalo Decl. Ex. 8 (Hanks Dep. 46:2–47:3, 70:5–7, 115:13–15).

37. In late July 2024, Wayfarer's CEO, Jamey Heath, Baldoni, and Nathan learned that Abel had given notice of her resignation from Jonesworks and would be leaving at the end of her

transition period. Abel Decl. ¶ 12; Nathan Decl. ¶ 6; Baldoni Decl. ¶ 5; Heath Decl. ¶ 8; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 173:2–10); Garofalo Decl. Ex. 4 (Baldoni Dep. (Oct. 6, 2025) 250:16–21); Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 70:1–15, 74:9–13); Garofalo Decl. Ex. 8 (Hanks Dep. 46:2–47:3, 70:3–8, 115:13–16).

38. Abel did not tell Heath, Baldoni (or anyone else at Wayfarer), or Nathan of her resignation until after Abel provided her notice, and she did not ask them to follow her to a new firm. Abel Decl. ¶ 12; Heath Decl. ¶ 8; Baldoni Decl. ¶ 5; Nathan Decl. ¶ 6.

**D. Jones Authorizes Abel to Take Clients to Her New Firm**

39. Abel started her own public relations company, RWA Communications ("RWA"), which handles public relations principally for entertainment clients. Abel Decl. ¶ 19; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 17:15–23).

40. Jones testified that [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 187:9–10, 187:12–188:6); Garofalo Decl. Ex. 12 (Jonesworks 30(b)(6) Dep. 55:25–56:1, 56:3–24).

41. Before Abel left, Jones told her that she could take Justin with her as a client, which Abel understood to mean both Baldoni and Wayfarer. Abel Decl. ¶ 13, Ex. E; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 128:24–129:20, 130:14–21, 130:23–25); Garofalo Decl. Ex. 11 (Jones Dep. 187:9–10, 187:12–188:9, 188:11–22); Garofalo Decl. Ex. 15 (Nathan Dep. (Sept. 30, 2025) 338:9–12, 338:14–18 & Dep. Ex. 88 (BBKOSLOW-000008776–81)).

42. On July 26, 2024, Jones texted Abel: "[redacted] Garofalo Decl. Ex. 11 (Jones Dep. 187:9–10, 187:12–188:9, 188:11–22); Garofalo Decl.

Ex. 2 (Abel Dep. (Sept. 25, 2025) 128:24–130:2, 130:4–21, 130:23-25); Garofalo Decl. Ex. 22 (JONESWORKS_00012598–603).

43. Jones acknowledged that at the time she sent the text, [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 188:7–9, 188:11–22).

44. [redacted] Abel Decl. ¶¶ 13, 24; Garofalo Decl. Ex. 6 (Duren Dep. 118:25–119:4, 119:6–13, 262:14–18); Garofalo Decl. Ex. 22 (JONESWORKS_00012598–603), Garofalo Decl. Ex. 23 (JONESWORKS_00038596–600); Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 128:24–130:2, 130:4–21, 130:23–25, 132:9–18, 242:22–24, 243:1–6); Garofalo Decl. Ex. 11 (Jones Dep. 187:9–10, 187:12–188:9, 188:11–22); Garofalo Decl. Ex. 12 (Jonesworks 30(b)(6) Dep. 55:25–56:1, 56:3–24).

45. Abel relied on Jones' authorization and told Wayfarer that she had obtained it. Heath Decl. ¶ 10; Baldoni Decl. ¶ 6; Abel Decl. ¶ 13; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 131:5–132:1).

**E. Wayfarer Hires Nathan**

46. Jonesworks' work for Wayfarer and Baldoni included promoting Wayfarer's film, *It Ends With Us*, starring Blake Lively and Baldoni (the "Film"), which premiered on August 6, 2024, and opened on August 9, 2024. Heath Decl. ¶ 11.

47. As the premiere approached, tensions between Lively and Baldoni escalated, and Baldoni and Wayfarer found themselves in a public relations crisis. Heath Decl. ¶12; Garofalo Decl. Ex. 8 (Hanks Dep. 60:13–16); Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 144:16–20, 144:22–145:1).

48. Wayfarer decided to bring in a crisis public relations expert. Heath Decl. ¶¶ 12-13; Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 127:18–128:1, 128:9–16); Garofalo Decl. Ex. 8 (Hanks Dep. 60:10–16); Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 144:16-20, 144:22-145:1).

49. Wayfarer did not seek crisis recommendations until July 24, 2024, and Abel did not call Nathan until late July 2024. Nathan Decl. ¶ 7; Abel Decl. ¶¶ 12, 14; Heath Decl. ¶ 13; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 145:3-14, 173:2–10, 173:16–21, 176:11–12, 176:14-15); Garofalo Decl. Ex. 14 (Nathan Dep. (Sept. 29, 2025) 84:19–85:11).

50. In late July 2024, Heath decided to hire Nathan and her firm, The Agency Group ("TAG"), to work alongside Jonesworks on crisis management. Heath Decl. ¶ 13; Garofalo Decl. Ex. 9 (Heath Dep. (Oct. 8, 2025) 330:22–25, 331:2–16); Garofalo Decl. Ex. 8 (Hanks Dep. 43:8–10, 43:12–24, 57:6–10, 86:10–16, 89:7–18, 91:17-21, 91:23–92:4, 254:19–22).

51. On July 29, 2024, Nathan privately texted Abel to encourage her as a friend to start her business but did not encourage her to breach any obligation owed to Jonesworks. Nathan Decl. ¶ 10; Abel Decl. ¶ 14, Ex. F.

52. TAG was not formally engaged until August 8 or 9, 2024. Garofalo Decl. Ex. 15 (Nathan Dep. (Sept. 30, 2025) 357:15–20); Garofalo Decl. Ex. 11 (Jones Dep. 229:10–230:7 & Dep. Ex. 9); Garofalo Decl. Ex. 8 (Hanks Dep. 57:6–10).

53. After Wayfarer engaged TAG, Jones continued to pursue her own public relations strategy for Wayfarer and Baldoni. Nathan Decl. ¶ 9.

54. Nathan never worked at Jonesworks. Nathan Decl. ¶ 2.

### F. Jonesworks Terminates Abel Before Her Agreed Departure Date

55. Abel worked through the agreed transition. Abel Decl. ¶ 15; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 88:17–20, 155:1–16).

56. In her final week, Abel asked Jonesworks' chief of staff, Gordon Duren, to release her phone number and personal data when she left, and Duren assured her that Jonesworks would. Abel Decl. ¶ 15; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 33:2–23); Garofalo Decl. Ex. 6 (Duren Dep. 115:3–7, 119:17- 121:4, 122:15–18, 123:23–124:3, 233:6–9 & Dep. Ex. 28).

57. On August 19, 2024, Duren and Jones texted about [redacted] Garofalo Decl. Ex. 34 (JONESWORKS_00039444–62_A at 449_A).

58. On August 21, 2024, two days before her last day, Abel was led into a conference room at the Los Angeles office, where Duren, a technical extraction expert, a security guard, and an attorney were waiting; at the attorney's demand, she surrendered her personal laptop and the phone holding her personal data and the number Jonesworks had promised to release, and she was terminated. Abel Decl. ¶ 16; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 34:13–16, 34:18–25, 264:9–21, 264:24–265:10); Garofalo Decl. Ex. 6 (Duren Dep. 156:2–157:12, 161:9–18, 161:20-162:3, 162:5-7, 179:10–181:23, 181:25-182:5, 182:7-183:6, 187:10-13, 196:10–17, 197:15–16, 197:18-198:16, 198:18, 210:23–211:19, 211:24-212:8, 212:10-13 & Dep. Exs. 38, 41); Garofalo Decl. Ex. 11 (Jones Dep. 127:18–25); Garofalo Decl. Ex. 4 (Baldoni Dep. (Oct. 6, 2025) 291:19–22, 291:24–292:7).

59. [redacted] Compl. ¶¶ 13, 19, 100; Pls.' Answer to Abel Countercl. (Dkt. No. 186) ¶ 60; Garofalo Decl. Ex.

18 (Jonesworks LLC's Second Supplemental Responses to Defendants' First Set of Interrogatories, Resp. No. 5); Garofalo Decl. Ex. 11 (Jones Dep. 206:8–9, 213:21–22, 213:24–214:4, 271:19–21, 271:23–272:2); Garofalo Decl. Ex. 12 (Jonesworks 30(b)(6) Dep. 55:25–56:1, 56:3–24, 94:16–95:5).

60. [redacted] Garofalo Decl. Ex. 6 (Duren Dep. 72:16–17, 72:19-22, 96:19-97:14, 97:21-98:25, 99:3-5, 99:7-11, 99:13-18, 99:20-100:3, 100:5, 103:15–104:24, 113:11–114:11, 114:13-19, 114:21, 133:10–134:3, 134:5-11, 134:13-135:7, 243:14–15, 243:17-244:15, 252:14–253:4 & Dep. Ex. 25 (JONESWORKS_00039263–76)).

61. Jonesworks fired Abel, Wayfarer's day-to-day point person, without warning to Wayfarer. Abel Decl. ¶ 16; Heath Decl. ¶¶ 20–21; Garofalo Decl. Ex. 8 (Hanks Dep. 218:12–25).

62. Heath wrote to Jones and Wayfarer's President, Tera Hanks, that "[r]ecent events have left us in the wind without any notice from Jonesworks." Garofalo Decl. Ex. 8 (Hanks Dep. 218:4–25 & Dep. Ex. 24 (HANKS_000004)).

**G. Jones Defies Client Instructions and Aids the Opposing Side**

63. In the run-up to the premiere, Lively's and Baldoni's teams negotiated an informal truce, or "ceasefire," under which neither side would speak to the press about, or take part in negative coverage of, the other. Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 219:18–24, 228:8–16, 234:2–11); Garofalo Decl. Ex. 15 (Nathan Dep. (Sept. 30, 2025) 369:17–370:17, 371:10–24 & Dep. Ex. 91 (JONESWORKS_MN_000000842-63)); Garofalo Decl. Ex. 11 (Jones Dep. 193:25–194:6, 196:4–10).

64. Wayfarer's goal was to quiet the growing public speculation over the dispute, and it told Jones and her team not to engage with the media about Lively and Baldoni. Heath Decl. ¶

14; Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 218:18–22, 218:24–219:4, 219:6–10 & Dep. Ex. 35 (HEATH_000046697–711)); Garofalo Decl. Ex. 8 (Hanks Dep. 108:21–24, 111:7–15); Garofalo Decl. Ex. 15 (Nathan Dep. (Sept. 30, 2025) 366:5–9 & Dep. Ex. 91 (JONESWORKS_MN_000000842-63)).

65. On August 8, 2024, when a Daily Mail reporter called about the Lively-Baldoni dispute, Abel told the Jonesworks team to [redacted] Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 186:1–11, 199:3–12, 199:14-18 & Dep. Ex. 23 (JONESWORKS_JA_000000774)).

66. Jones responded, [redacted] then reported that [redacted]. Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 181:25–182:8, 201:2–8, 202:2–11, 202:13–16 & Dep. Ex. 20 (JONESWORKS_00013943–51)); Garofalo Decl. Ex. 8 (Hanks Dep. 141:13–24, 142:1–10, 142:12–15 & Dep. Ex. 10 (HEATH_000046697–707)).

67. On August 8, 2024, [redacted] Garofalo Decl. Ex. 7 (Greenstein Dep. 176:4–9, 176:21–177:1, 178:2–20, 271:2–17, 271:19-23 & Dep. Ex. 28 (LS_0000325)); Garofalo Decl. Ex. 16 (Sloane Dep. 159:9–24 & Dep. Ex. 14 (LS_0000325–27)).

68. [redacted] Garofalo Decl. Ex. 16 (Sloane Dep. 159:25–160:9 & Dep. Ex. 14 (LS_0000326)).

69. [redacted]

[redacted] Garofalo Decl. Ex. 16 (Sloane Dep. 47:25–48:8, 48:10-13, 118:19–24, 119:3–14, 121:7–9, 121:12–18, 153:22–154:23, Errata at 48:13 & Dep. Exs. 11, 13 (LS_0000223–26, LS_0000314–18)).

70. Greenstein called Heath and told him Jones was "the one reaching out. You gotta get a f***ing hold of these people." Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 205:13–206:1); Garofalo Decl. Ex. 8 (Hanks Dep. 108:25–109:5).

71. On August 8, 2024, Heath wrote to Jones, Hanks, and Abel: [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 208:16–209:11 & Dep. Ex. 7 (JONESWORKS_00040573–86)); Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 221:1–16 & Dep. Ex. 35 (HEATH_000046697–711)); Garofalo Decl. Ex. 8 (Hanks Dep. 121:3–14).

72. [redacted] Garofalo Decl. Ex. 16 (Sloane Dep. 152:22-153:8 & Ex. 13 (LS_0000314–18)).

73. [redacted] Garofalo Decl. Ex. 8 (Hanks Dep. 122:16-123:10, 146:14–24, 147:1-2 & Dep. Ex. 10

(HEATH_000046697–707)); Garofalo Decl. Ex. 11 (Jones Dep. 208:11-209:11 & Dep. Ex. 7 (JONESWORKS_00040573–86)).

74. Later that day, Heath texted again, [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 253:9–24, 254:1–11 & Dep. Ex. 7 (JONESWORKS_00040573 at 80)); Garofalo Decl. Ex. 8 (Hanks Dep. 108:21–24, 111:7–15, 150:2–7).

75. Jones retorted that [redacted] and told her client, [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 204:24, 205:1–25, 254:12–23); Garofalo Decl. Ex. 15 (Nathan Dep. (Sept. 30, 2025) 376:1–20 & Dep. Ex. 92 (JONESWORKS_MN_000000666)).

76. Hanks reported to Heath that she had [redacted] and Heath replied: [redacted] Garofalo Decl. Ex. 8 (Hanks Dep. 151:2–152:7 & Dep. Ex. 12 (HANKS_000000054–55)).

77. The damage, Heath explained, was that [redacted] Garofalo Decl. Ex. 8 (Hanks Dep. 151:24-152:7); Heath Decl. ¶ 16.

78. Wayfarer then directed Jones to cease all work for Wayfarer and Baldoni and to let Abel and another Jonesworks employee handle the crisis alongside Nathan. Heath Decl. ¶ 16; Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 218:18–22, 218:24–219:4, 219:6–10); Garofalo Decl. Ex. 8 (Hanks Dep. 182:14-25, 183:2-4).

79. Wayfarer repeated that instruction on August 9, 2024, and again on August 14, 2024, when Heath wrote: [redacted] Heath Decl. ¶ 18, Ex. C, JONESWORKS_00030241–42 at 241, Ex. D, JONESWORKS_00030166; Garofalo Decl. Ex. 11 (Jones Dep. 204:24, 205:1–22, 251:2–9, 251:11–13); Garofalo Decl. Ex. 8 (Hanks Dep. 178:8–14, 178:16–19, 181:2–4, 181:6–11).

80. Despite the instruction, [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 250:12–251:9, 251:11–16, 251:18–25); Garofalo Decl. Ex. 16 (Sloane Dep. 292:20–25, 294:20–22, 303:20–304:5, Errata at 293:14 & Dep. Ex. 101 (JONESWORKS_00040610–11)).

81. [redacted], by Jones' account. Garofalo Decl. Ex. 16 (Sloane Dep. 292:20–25, 294:23–295:11, 304:6–14); Garofalo Decl. Ex. 11 (Jones Dep. 214:23–216:25, 254:24-25, 255:2-3); Garofalo Decl. Ex. 18 (Jonesworks 2d. Supp. Interrog. Resp. No. 4).

82. [redacted] Garofalo Decl. Ex. 16 (Sloane Dep. 295:12–297:18, 300:6–12).

83. [redacted] Garofalo Decl. Ex. 16 (Sloane Dep. 295:12–297:18, 302:2–4, 302:6–20, 302:21–24, 303:3–7, 308:14–309:10).

84. [redacted] Garofalo Decl. Ex. 16 (Sloane Dep. 300:13–25, 301:15–22, 301:25).

85. [redacted] Garofalo Decl. Ex. 16 (Sloane Dep. 295:12–297:18, 301:2–4).

86. Months later, Jones [redacted] Garofalo Decl. Ex. 16 (Sloane Dep. 297:21–298:19).

87. Jones' conduct undercut Wayfarer's coordinated crisis strategy. Heath Decl. ¶¶ 14, 18–19; Garofalo Decl. Ex. 8 (Hanks Dep. 197:22–198:13, 198:15-20 & Dep. Ex. 21 (BL000003591–94)); Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 232:25–233:12); Garofalo Decl. Ex. 9 (Heath Dep. (Oct. 8, 2025) 72:20–21, 72:24–73:5, 78:25–79:5, 79:8–80:7).

88. On August 14, 2024, Heath objected to the [redacted] Garofalo Decl. Ex. 8 (Hanks Dep. 197:22–198:11 & Dep. Ex. 21 (BL000003591–94)); Compl. ¶ 60.

89. That evening, [redacted] Garofalo Decl. Ex. 16 (Sloane Dep. Ex. 33 (LS_0000234–42)).

90. On August 21, 2024—the day Jonesworks fired Abel and took her phone—Sloane called Nathan, said she had heard about Abel's text messages with Nathan, and warned her to

expect a lawsuit. Nathan Decl. ¶ 11; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 257:25–258:12); Garofalo Decl. Ex. 11 (Jones Dep. 217:15–18, 217:20–218:12); Garofalo Decl. Ex. 6 (Duren Dep. 217:9–219:11 & Dep. Ex. 42 (JONESWORKS_00038892–93)); Garofalo Decl. Ex. 16 (Sloane Dep. 303:8–12, 305:13–306:3).

91. Those messages were stored on Abel's phone, which was in Jonesworks' possession and control. Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 257:25–258:8); Garofalo Decl. Ex. 17 (Vanzan 30(b)(6) Dep. 275:6–15); Garofalo Decl. Ex. 6 (Duren Dep. 217:9–219:11 & Dep. Ex. 42).

### H. Wayfarer Terminates the Wayfarer Agreement

92. Wayfarer could not reach Jones, its own publicist, during that critical period, and for over a week Jonesworks provided no communication or representation strategy while Wayfarer dealt with the fallout of Abel's abrupt termination. Heath Decl. ¶ 21.

93. On August 21, 2024, Heath advised Jones that he was [redacted] about Jonesworks' conduct. Heath Decl. ¶ 20, Ex. F, JONESWORKS_00040618–19 at 619; Garofalo Decl. Ex. 11 (Jones Dep. 76:20–22, 76:24–77:7).

94. That same day, Jones responded to Heath: [redacted] Jones would only communicate via email with legal counsel copied. Heath Decl. ¶ 20, Ex. E, JONESWORKS_00038544–52 at 550; Heath Decl. ¶ 22.

95. On August 29, 2024, Jones wrote: [redacted] Heath Decl. ¶ 22, Ex. E, JONESWORKS_00038544–52 at 548.

96. Heath had "lost faith in what [he] believed Stephanie could provide," and Jones was "not working in a way that was helpful to us." Heath Decl. ¶¶ 17–19; Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 230:15-231:9, 232:25–233:22); Garofalo Decl. Ex. 9 (Heath Dep. (Oct. 8, 2025) 72:20–21, 72:24–73:5); Garofalo Decl. Ex. 8 (Hanks Dep. 200:11–12, 200:14-201:2).

97. Heath made the initial decision to terminate the Wayfarer Agreement because he had lost confidence in Jones' ability to serve Wayfarer's interests and had concerns about her professionalism, judgment, and approach to representing Wayfarer; without Abel, Wayfarer would have been working directly with Jones, with whom it had limited experience." Heath Decl. ¶ 17.

98. Hanks testified that Wayfarer fired Jonesworks because of "Stephanie [Jones] being unprofessional[,] [e]motional instability and undermining what was in the best interest of Wayfarer." Garofalo Decl. Ex. 8 (Hanks Dep. 50:7–12, 212:23–213:3, 214:18–23).

99. Heath alone made the decision to terminate Jonesworks. Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9) 230:15-18); Heath Decl. ¶ 17.

100. Abel did not discuss with Wayfarer or Baldoni what they would do for public relations services once she left and neither Nathan nor Abel suggested that Wayfarer terminate its agreement with Jonesworks. Nathan Decl. ¶ 8; Abel Decl. ¶ 17; Heath Decl. ¶¶ 29, 31–32; Garofalo Decl. Ex. 8 (Hanks Dep. 213:18–20).

101. Abel was not told of Wayfarer's and Baldoni's decisions to terminate Jonesworks until after Jonesworks terminated her employment. Abel Decl. ¶ 18; Heath Decl. ¶ 29.

102. On August 30, 2024, Wayfarer gave written notice of termination of the Wayfarer Agreement, effective September 1, 2024, and Baldoni terminated his relationship with Jonesworks. Heath Decl. ¶ 23, Ex. E, JONESWORKS_00038544–52 at 546–47; Garofalo Decl. Ex. 11 (Jones Dep. 76:20–22, 76:24–77:7); Garofalo Decl. Ex. 8 (Hanks Dep. 49:22–25).

103. Jones replied: [redacted] Heath Decl. ¶ 23, Ex. E, JONESWORKS_00038544–52 at 544–546.

104. While Wayfarer and Baldoni—with Abel and Nathan—kept promoting the Film, Jones threatened to sue, demanded payment for work she had not done, and insisted she had done a good job. Heath Decl. ¶ 24.

105. Wayfarer would not have renewed its agreement with Jonesworks because of Jones' conduct, not Abel's. Heath Decl. ¶ 28.

**I. Jones Offers Abel's Messages to Lively and Jonesworks Produces Them**

106. On August 24, 2024, three days after Jonesworks seized Abel's phone, [redacted] Garofalo Decl. Ex. 1 (Avignone Dep. 20:20–21:13, 22:1–8); Garofalo Decl. Ex. 11 (Jones Dep. 203:8–17, 203:19, 204:8–9, 204:11–23).

107. [redacted] Garofalo Decl. Ex. 1 (Avignone Dep. 21:7–13, 22:15–23:1).

108. A few days later, [redacted] Garofalo Decl. Ex. 1 (Avignone Dep. 24:1–6, 24:25–25:11).

109. [redacted] Garofalo Decl. Ex. 1 (Avignone Dep. 26:5–24, 29:9–15).

110. [redacted] Garofalo Decl. Ex. 13 (Lively Dep. 146:23–24, 147:1-148:15); Garofalo Decl. Ex. 16 (Sloane Dep. 295:12–297:18).

111. [redacted] Garofalo Decl. Ex. 1 (Avignone Dep. 29:20–31:1); Garofalo Decl. Ex. 11 (Jones Dep. 218:20–21, 218:23–219:8, 238:5, 238:7–16); Garofalo Decl. Ex. 13 (Lively Dep. 149:7–20).

112. [redacted] Garofalo Decl. Ex. 13 (Lively Dep. 150:11–17, 150:19).

113. [redacted] Garofalo Decl. Ex. 1 (Avignone Dep. 31:20–32:1); Garofalo Decl. Ex. 11 (Jones Dep. 273:5-6, 273:8–16).

114. [redacted] Garofalo Decl. Ex. 13 (Lively Dep. 149:21–150:10).

115. [redacted] Garofalo Decl. Ex. 17 (Vanzan 30(b)(6) Dep. 62:19-22, 62:25-64:13).

116. [redacted]

[redacted] Garofalo Decl. Ex. 17 (Vanzan 30(b)(6) Dep. 37:12–39:17, 39:22-40:15, 62:19-22, 62:25-64:13, 162:10–18, 275:6–275:18, 275:23-276:7, 277:4-9, 277:13-17).

117. [redacted] Heath Decl. ¶ 25; Garofalo Decl. Ex. 17 (Vanzan 30(b)(6) Dep. 39:2–13, 62:19-22, 62:25-64:13, 162:10–18).

118. [redacted] Garofalo Decl. Ex. 17 (Vanzan 30(b)(6) Dep. 62:19-22, 62:25-64:13, 158:20–159:17, 277:4-9, 277:13-17& Dep. Ex. 2 (VANZAN_000028)).

**J. No Defendant Knew of the Abel Employment Agreement or Its Terms**

119. No Defendant knew that Abel had a written employment agreement with Jonesworks, or that it contained non-compete, non-solicitation, or confidentiality provisions. Heath Decl. ¶ 6; Baldoni Decl. ¶ 5; Nathan Decl. ¶ 3; Garofalo Decl. Ex. 11 (Jones Dep. 185:16–17, 185:19–22, 186:20–21, 186:23–24); Garofalo Decl. Ex. 15 (Nathan Dep. (Sept. 30, 2025) 271:25–272:4, 272:10–12, 272:14–15).

120. No Defendant encouraged Abel to breach any obligation owed to Jonesworks. Heath Decl. ¶ 9; Baldoni Decl. ¶¶ 10–11; Nathan Decl. ¶ 10.

121. [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 186:20–21, 186:23–187:2, 187:4–8); Garofalo Decl. Ex. 6 (Duren Dep. 267:18–268:4, 269:7–9, 269:11-14, 270:16–17, 270:19-22, 270:24).

122. Wayfarer and Baldoni are not in the public relations business. Heath Decl. ¶ 7; Baldoni Decl. ¶ 4.

123. There is no "industry standard" public relations employment contract. Nathan Decl. ¶ 4.

124. Nathan never saw the Abel Employment Agreement and has never seen any Jonesworks contract with Abel. Nathan Decl. ¶ 3.

125. Asked whether Nathan ever saw the Abel Employment Agreement, Jones [redacted] and speculated that because [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 185:16–17, 185:19–22).

126. That earlier contract concerned [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 79:21–80:4); Compl. ¶ 43.

127. Nathan had no knowledge of the Wayfarer Agreement or its terms before this lawsuit was filed. Nathan Decl. ¶ 5.

**K. Wayfarer and Baldoni Engage Abel's New Firm**

128. In an August 19, 2024 exchange, [redacted] Garofalo Decl. Ex. 15 (Nathan Dep. (Sept. 30, 2025) 354:12–355:7 & Dep. Ex. 90 (JONESWORKS_MN_000002208–10)); Compl. ¶ 12.

129. Baldoni had already decided to stay with Abel, because his day-to-day relationship was with her. Baldoni Decl. ¶ 7; Garofalo Decl. Ex. 4 (Baldoni Dep. (Oct. 6, 2025) 288:7–9, 288:11–289:14).

130. Wayfarer and Baldoni did not engage Abel's new company until after she left Jonesworks on August 21, 2024. Heath Decl. ¶¶ 29–30; Abel Decl. ¶ 19; Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 67:11–24, 68:3–17, 68:19–69:2, 69:4, 100:3–7, 100:9–17, 100:19–20 & Dep. Ex. 26 (JONESWORKS_WAYFARER_000003776)); Garofalo Decl. Ex. 8 (Hanks Dep. 47:10–18, 49:22–50:3, 50:17–20, 50:22–23); Garofalo Decl. Ex. 4 (Baldoni Dep. (Oct. 6, 2025) 251:5–252:11, 252:13–14).

131. Wayfarer did not contract with Abel's new firm until September 27, 2024. Heath Decl. ¶ 30; Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 112:19–113:4, 113:6–15 & Dep. Ex. 27 (JONESWORKS_WAYFARER_000003754–64)).

132. Wayfarer and Baldoni engaged Abel's new firm to keep a publicist they knew and trusted, after Jones consented to their following Abel. Baldoni Decl. ¶¶ 2, 6-7; Heath Decl. ¶ 30; Garofalo Decl. Ex. 4 (Baldoni Dep. (Oct. 6, 2025) 288:7–9, 288:11–289:14).

133. [redacted] Garofalo Decl. Ex. 6 (Duren Dep. 268:5–8, 268:10–25, 269:3-4, 269:6, 269:15–17, 269:19-270:5, 270:7-9, 270:11-13, 270:15-17, 270:19-22, 270:24, 270:25–271:3, 271:5-7, 271:9-12, 271:14-16, 271:18-21, 271:23-25, 272:3-5, 272:7-9, 272:11).

134. [redacted] Garofalo Decl. Ex. 11 (Jones Dep. 185:5–6, 185:8–12, 185:14–17, 185:19–22, 186:25–187:2, 187:4–8).

135. [redacted] Garofalo Decl. Ex. 12 (Jonesworks 30(b)(6) Dep. 71:6–72:6).

136. Neither Baldoni, Heath, nor, to Heath's knowledge, anyone at Wayfarer had any role in Abel's alleged taking of Jonesworks documents, any alleged solicitation of Jonesworks employees, or Abel's private communications. Baldoni Decl. ¶ 11; Heath Decl. ¶ 33.

**L. Abel Did Not Solicit Jonesworks Employees or Act Against Its Interests**

137. [redacted] Garofalo Decl. Ex. 19 (Pls.' 2d Am. Initial Discl. § C); Garofalo Decl. Ex. 12 (Jonesworks 30(b)(6) Dep. 71:1–72:6 & Dep. Ex. 2 (Employee Census)); Garofalo Decl. Ex. 20 (Dies Rpt. § 5.D.).

138. Abel did not solicit, induce, or encourage Isaac, Mitchell, Morin, or Zuniga to leave Jonesworks. Abel Decl. ¶¶ 26-27; Mitchell Decl. ¶¶ 1-3.

139. [redacted] Garofalo Decl. Ex. 6 (Duren Dep. 291:21–292:14, 292:16-293:5, 293:7, 294:2–8, 294:10-13, 294:15-18, 294:20-23, 294:25-295:17, 295:19).

140. [redacted] Garofalo Decl. Ex. 6 (Duren Dep. 267:4–5, 267:7–12, 267:14–17).

141. [redacted]



535172.1

[redacted] Garofalo Decl. Ex. 5 (Dies Dep. 65:11-16, 65:18-25, 66:2-9, 66:11-19, 66:21-67:10, 67:13-15, 67:19-68:1, 68:3-7, 72:24-73:5, 73:7-12, 73:24-74:9, 74:17-75:1, 75:3-6); Garofalo Decl. Ex. 20 (Dies Rpt. ¶ 76).

**M. Abel Did Not Solicit Jonesworks Clients**

142. Plaintiffs accuse Abel of [redacted]. Garofalo Decl. Ex. 18 (Jonesworks 2d Supp. Interrog. Resp. No. 8); Garofalo Decl. Ex. 19 (Pls.' 2d Am. Initial Discl. § C); Garofalo Decl. Ex. 5 (Dies Dep. 20:8–21:13 & Dep. Ex. 1 § 5.D).

143. [redacted] Garofalo Decl. Ex. 6 (Duren Dep. 261:14–16, 261:18-262:6, 285:6–8, 285:10, 286:22–24, 287:12, 287:14-288:14, 288:16-20, 288:22-289:16, 289:18-21, 289:23).

144. [redacted] Garofalo Decl. Ex. 25 (JONESWORKS_00041124-28).

145. [redacted] Garofalo Decl. Ex. 30 (JONESWORKS_00041218).

146. [redacted]

Garofalo Decl. Ex. 24 (JONESWORKS_00041117-23).

147. Abel signed Miller to Jonesworks in 2024 and managed his account with almost no involvement from Jones. Abel Decl. ¶ 21; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 133:12–134:11).

148. RWA has never been retained by Jamie Miller Projects, although Abel has done some work for another company associated with Jamie Miller. Abel Decl. ¶ 21.

149. [redacted] Garofalo Decl. Ex. 6 (Duren Dep. 285:6-8, 285:11-14, 285:16).

150. [redacted] Garofalo Decl. Ex. 26 (JONESWORKS_00041192-98).

151. [redacted] Garofalo Decl. Ex. 31 (JONESWORKS_00041226).

152. Since Wilson's departure from Jonesworks, RWA has not been retained by Wilson. Abel Decl. ¶ 22. [redacted] Garofalo Decl. Ex. 6 (Duren Dep. 285:17-24, 286:2).

153. [redacted] Garofalo Decl. Ex. 28 (JONESWORKS_00041208-11), Garofalo Decl. Ex. 27 (JONESWORKS_00041201-07); Abel Decl. ¶ 23; Gines Decl. ¶ 4.

154. Neon Carnival was signed to Jonesworks by former Jonesworks employee Johnny Gines; when Gines left Jonesworks in October 2024, Neon Carnival followed him because it wanted to stay with Gines, not because of any conduct of Abel. Gines Decl. ¶¶ 3-4, 6-9.

155. Since Neon Carnival's departure from Jonesworks, RWA has not been retained by Neon Carnival, although Abel performed freelance work for another public relations agency that was retained for Neon Carnival's 2025 Coachella event. Abel Decl. ¶ 23; Gines Decl. ¶ 8.

156. Jameela Jamil was Abel's client for years before Abel went to work for Jonesworks. Abel Decl. ¶ 24; Jamil Decl. ¶¶ 2, 4; Garofalo Decl. Ex. 2 (Abel Dep. (Sept. 25, 2025) 132:9–18).

157. [redacted]. Garofalo Decl. Ex. 29 (JONESWORKS_00041212-17).

158. Jamil notified Jonesworks she was going on hiatus in May 2024, two months before Abel gave notice of her resignation. Abel Decl. ¶ 24; Jamil Decl. ¶ 10.

159. Jamil left Jonesworks because she was not satisfied with the lack of attention from Jones and the high cost. Jamil Decl. ¶¶ 5–9, 12–13.

160. [redacted]. Garofalo Decl. Ex. 32 (JONESWORKS_00041345-48).

161. [redacted] Garofalo Decl. Ex. 20 (Dies Rpt. ¶ 41); Garofalo Decl. Ex. 33 (JONESWORKS_00041404-81).

162. Abel had almost no involvement with Den of Thieves while at Jonesworks, has not spoken to anyone from the company since she left, and RWA has not been retained by Den of Thieves. Abel Decl. ¶ 25.

**N. Plaintiffs' Claimed Damages**

163. Plaintiffs seek damages from Abel for [redacted] Garofalo Decl. Ex. 19 (Pls.' 2d Am. Initial Discl. § C).

164. Jonesworks seeks [redacted]. Heath Decl. ¶ 23, Ex. E, JONESWORKS_00038544–52 at 544–46; Compl. ¶¶ 124, 128; Garofalo Decl. Ex. 18 (Jonesworks 2d Supp. Interrog. Resp. No. 8); Garofalo Decl. Ex. 19 (Pls.' 2d Am. Initial Discl. at 11–14).

165. The alleged injuries are to Jonesworks—[redacted] any recovery would be to Jonesworks. Garofalo Decl. Ex. 6 (Duren Dep. 265:20–266:10, 287:15–288:8); Garofalo Decl. Ex. 10 (Heath Dep. (Oct. 9, 2025) 47:1–12, 47:14–48:24, 49:1, 232:11–17 & Dep. Ex. 23 (JONESWORKS_00030343–44)); Compl. ¶¶ 35, 124, 129, 132; Garofalo Decl. Ex. 11 (Jones Dep. 69:9–70:6, 76:20–22, 76:24–77:1).

166. [redacted] Garofalo Decl. Ex. 20 (Dies Rpt. ¶ 34), and Ex. 5 (Dies Dep. 20:8–22:3, 22:5-16, 22:18-23:18, 23:20-24:12, 24:14-17, 24:19-25:7, 25:9-12).

167. [redacted] Garofalo Decl. Ex. 5 (Dies Dep. 85:22–23, 85:25-86:9, 90:10-12, 90:14-17).

168. [redacted]

[redacted] Garofalo Decl. Ex. 19 (Pls.' 2d Am. Initial Discl. § C at 12); Garofalo Decl. Ex. 12 (Jonesworks 30(b)(6) Dep. 13:19–15:7, 15:10-18:19, 18:21-19:15, 23:20-25:2, 25:4-25:11, 40:24–45:23, 46:25-53:18, 54:1-5, 54:8-11, 54:13-21, 54:23-55:18, 64:20–65:2 & Dep. Ex. 1); Garofalo Decl. Ex. 5 (Dies Dep. 78:7–13, 78:15-25, 79:3-9, 79:11-14, 79:16-22, 79:24-80:4, 80:6-80:20).

169. [redacted] Garofalo Decl. Ex. 6 (Duren Dep. 290:22–291:2, 291:4).

170. Plaintiffs' reputational-harm expert attributes Plaintiffs' reputational harm and lost profits to [redacted] Garofalo Decl. Ex. 21 (Killeen Rpt. §§ 3.1(c), (f), 6, 12, 13).

171. The Websites and *Business Insider* article predate any statement Abel allegedly made about doctored text messages, which Plaintiffs allege [redacted] Garofalo Decl. Ex. 21 (Killeen Rpt. §§ 5.2, 5.12); Compl. ¶ 149.

Dated: October 15, 2026
Los Angeles, CA

**LINER FREEDMAN TAITELMAN + COOLEY**

By: */s/ Ellyn S. Garofalo*
Bryan J. Freedman
Ellyn S. Garofalo
1801 Century Park West, 5th Floor
Los Angeles, CA 90067
Tel: (310) 201-0005
Email: bfreedman@lftcllp.com
egarofalo@lftcllp.com