UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE JONES and JONESWORKS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, and JOHN DOES 1-10,<br><br>Defendants. | Civ. Action No. 1:25-cv-00779-LJL<br>rel. 1:24-cv-10049-LJL |

**DECLARATION OF JENNIFER ABEL IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I, Jennifer Abel, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a defendant in this action. I submit this declaration in support of the motion for summary judgment. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently to them.

2. I was formerly employed as a publicist by Jonesworks LLC ("Jonesworks"). Stephanie Jones ("Jones") is the President of Jonesworks and was my supervisor while I worked there. Among the clients I serviced at Jonesworks were Justin Baldoni and Wayfarer Studios LLC ("Wayfarer" and collectively with Mr. Baldoni, the "Wayfarer Clients").

3. I was hired by Jonesworks as Vice President in its Los Angeles office on or about July 9, 2020, with a mandate to oversee Jonesworks' talent department and to grow its Los Angeles office, which at the time had only four employees. A true and correct copy of Jonesworks' July 9, 2020 offer letter, which I co-signed (JONESWORKS_00041095–96), is attached as Exhibit A.

[redacted]

4. In connection with and as a condition of my employment, I signed a Non-Disclosure and Intellectual Property Rights and Non-Solicitation Agreement (the "2020 Employment Agreement"). A true and correct copy of the 2020 Employment Agreement (JONESWORKS_00041839–45) is attached as Exhibit B.

5. On or about November 22, 2021, Jonesworks and I entered into a modified employment agreement (the "2021 Employment Agreement"). A true and correct copy of the 2021 Employment Agreement (JONESWORKS_00041084–94) is attached as Exhibit C.

6. I was the primary point person for the Wayfarer Clients while I worked at Jonesworks.

7. I largely managed Jonesworks' work for Wayfarer out of the firm's Los Angeles office and developed a close working relationship with Mr. Baldoni, Wayfarer CEO Jamey Heath, and the rest of the Wayfarer team.

8. By the summer of 2024, I viewed Jonesworks as a toxic workplace: morale was low, employees were quitting, and dissatisfied clients were taking their business elsewhere. I had been unhappy at Jonesworks for some time because of frequent disagreements with Jones and her abusive and erratic behavior, including pitting employees against one another, and I was worried about what I saw as Jones' downward spiral.

9. On July 10, 2024, I participated in a business Zoom call with Jones and Matthew Mitchell, a Jonesworks employee who reported to me. During the call, Jones bullied Mr. Mitchell and became increasingly hostile toward me. I was emotional and in tears, and at my breaking point I told Jones during the call that I was resigning. That same day, I confirmed my resignation by

email to Jones and Jonesworks leadership, stating that [redacted] A true and correct copy of that email (JONESWORKS_00017543) is attached as Exhibit D.

10. On July 26, 2024, I reconfirmed my decision to resign in writing and advised Jones that I would be starting my own public relations firm. I offered a six-week transition period, with an end date of August 23, 2024, so that I could hand off my clients in an orderly way. Jonesworks accepted my resignation and the six-week transition period.

11. I decided on my own to resign from Jonesworks. No one at Wayfarer, Mr. Baldoni, or Melissa Nathan asked, encouraged, persuaded, or induced me to resign or to start my own company. I did not share the existence of the 2021 Employment Agreement, or its terms, with Wayfarer, Mr. Baldoni, Mr. Heath, or Melissa Nathan.

12. I did not tell Mr. Heath, Mr. Baldoni, anyone else at Wayfarer, or Ms. Nathan that I had resigned until after Jonesworks had accepted my resignation. To my knowledge, Mr. Heath, Mr. Baldoni, and Ms. Nathan first learned in late July 2024 that I had resigned and would be leaving at the end of my transition period.

13. On July 26, 2024, Ms. Jones texted me: [redacted] Attached hereto as Exhibit E is a true and correct copy of that text message (JONESWORKS_00012598–603). I understood that to include both Mr. Baldoni and his company, Wayfarer. I relied on Ms. Jones' authorization, and I made the Wayfarer Clients aware that Ms. Jones had told me that I could take them. Before I left, Ms. Jones also gave me permission to take my long-time client Jameela Jamil with me to my new firm, and gave me her blessing to take other clients with me.

14. Attached hereto as Exhibit F is a true and correct copy of a text message I received from Ms. Nathan on July 29, 2024 (JONESWORKS_00009300-514). I understood Ms. Nathan's July 29, 2024 text that [redacted] to be Ms. Nathan being a friend and speculating that we would be able to work together. It was a hopeful, supportive text.

15. I worked through the agreed transition period. My mobile device was Jonesworks' property. During my final week, I asked Jonesworks' chief of staff, Gordon Duren, to have Jonesworks release my phone number and personal data to me when I left, which is what had been promised to me when I was hired. Mr. Duren assured me that Jonesworks would do so.

16. On August 21, 2024, two days before my scheduled departure, I was led into a conference room at Jonesworks' Los Angeles office, where Mr. Duren, a technical extraction expert, a security guard, and an attorney were waiting. At the attorney's demand, I surrendered my personal laptop and the phone that held my personal data and the phone number that Jonesworks had promised to release to me. Jonesworks then terminated my employment. I did not receive advance warning of my termination, and to my knowledge Jonesworks did not notify the Wayfarer clients that it was terminating me.

17. Before Jonesworks terminated my employment, I did not discuss with the Wayfarer Clients what they would do for public relations services once I left Jonesworks. I did not ask the Wayfarer Clients to follow me to a new firm, and I did not ask, encourage, suggest, or induce the Wayfarer Clients to stop paying Jonesworks or to terminate their agreement with Jonesworks.

18. I was not told of the Wayfarer Clients' decisions to terminate Jonesworks until after Jonesworks terminated my employment.

19. After leaving Jonesworks, I started my own public relations company, RWA Communications ("RWA"), which handles public relations principally for entertainment clients. To my knowledge, the Wayfarer Clients did not decide to engage RWA until after Jonesworks terminated my employment on August 21, 2024, and Wayfarer did not enter into an agreement with RWA until September 27, 2024.

20. I understand that Jonesworks claims I solicited certain clients. This is untrue.

21. I signed Jamie Miller Projects as a Jonesworks client in 2024 and managed that account with almost no involvement from Jones. RWA has never been retained by Jamie Miller Projects, although I have done some work for another company associated with Jamie Miller.

22. Since Lainey Wilson's departure from Jonesworks, RWA has not been retained by Ms. Wilson.

23. Jonesworks' engagement by Neon Carnival related to a single event at the Coachella music festival. Since Neon Carnival's departure from Jonesworks, RWA has not been retained by Neon Carnival, although I performed freelance work for another public relations agency that was retained for Neon Carnival's 2025 Coachella event.

24. Jameela Jamil was my client for years before I went to work for Jonesworks. Ms. Jamil went on hiatus with Jonesworks in May 2024, approximately two months before I gave notice of my resignation. Stephanie Jones gave me permission to take Ms. Jamil to my new agency when I resigned from Jonesworks.

25. I had almost no involvement with Den of Thieves while I was at Jonesworks, and I have not spoken to anyone from the company since I left Jonesworks. RWA has not been retained by Den of Thieves.

26. I understand that Jonesworks claims I solicited certain employees. This is also untrue.

27. RWA has never employed Matthew Mitchell, Kaeleah Isaac, Serena Zuniga, or Madisyn Morin, nor have I ever offered them employment.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October ___, 2026
Beverly Hills, CA

______________________________
Jennifer Abel