**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| STEPHANIE JONES and JONESWORKS LLC,<br><br>Plaintiffs,<br><br>– against –<br><br>JENNIFER ABEL, MELISSA NATHAN, JUSTIN BALDONI, WAYFARER STUDIOS LLC, and JOHN DOES 1–10,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-00779 (LJL)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS ABEL AND WAYFARER'S COUNTERCLAIMS** |

# TABLE OF CONTENTS

Page

INTRODUCTION ....1

BACKGROUND ....3

ARGUMENT ....6

I. Abel's Counterclaims Must Be Dismissed ....7

A. Abel's California Penal Code § 502 Claim Fails Because Abel Has No Evidence of Compensable "Damage or Loss" ....7

B. Abel's Conversion Claim Fails Because Abel Has No Evidence of Damages Caused by the Alleged Theft ....9

C. Abel's Promissory Fraud Claim Fails Because Abel Has No Evidence of Recoverable Damages or Causation ....10

II. Wayfarer's Counterclaims Must Be Dismissed ....11

A. Wayfarer Has No Evidence Linking Its Alleged Damages to Plaintiffs' Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing. ....11

B. Wayfarer's Defamation Claim Fails Because It Has No Evidence that Plaintiffs Acted with Actual Malice. ....12

CONCLUSION ....14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adriana Int'l Corp. v. Thoeren*,
913 F.2d 1406 (9th Cir. 1990) ........ 11

*AmTrust N. Am., Inc. v. KF&B, Inc.*,
No. 17-CV-5340 (LJL), 2020 WL 5519197 (S.D.N.Y. Sept. 14, 2020) ........ 6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 13

*Brown v. Google, LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 6

*Copart, Inc. v. Sparta Consulting, Inc.*,
277 F. Supp. 3d 1127 (E.D. Cal. 2017) ........ 7

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 7

*Dunlop-McCullen v. Rogers*,
2002 WL 1205029 (S.D.N.Y. Feb. 21, 2002) ........ 6

*Gonzalez v. Personal Storage, Inc.*,
56 Cal. App. 4th 464 (1997) ........ 9

*Hadami, S.A. v. Xerox Corp.*,
272 F. Supp. 3d 587 (S.D.N.Y. 2017) ........ 12

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 7

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ........ 8

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991) ........ 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........ 6

*Perez v. Harbor Freight Tools*,
698 F. App'x 627 (2d Cir. 2017) .......... 6

*Underwager v. Channel 9 Australia*,
69 F.3d 361 (9th Cir. 1995) .......... 12, 13

*White v. Molfetta*,
64 Cal. App. 5th 628 (2021) .......... 9

Statutes

California Civil Code § 3343 .......... 10

California Penal Code § 502 .......... 2, 6, 7, 8

Rules

Fed. R. Civ. P. 56 .......... *passim*

Plaintiffs Stephanie Jones and Jonesworks, LLC ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**INTRODUCTION**

Defendants Jennifer Abel, Melissa Nathan, Justin Baldoni, and Wayfarer Studios, LLC engaged in a months-long scheme to attack Stephanie Jones, and the PR firm she built, Jonesworks. Defendants' misconduct unfolded in two distinct schemes.

*First*, behind Plaintiffs' backs, Defendants orchestrated an aggressive media smear campaign against Baldoni's film co-star, Blake Lively, and then falsely blamed Jones for it. The blame served a dual purpose: to drive a wedge between Jones and Baldoni, and to position Melissa Nathan to be hired to manage the very crisis she had manufactured. Nathan created the fire so that she could be paid to put it out.

*Second*, and separately, Defendants launched a direct smear campaign against Jones herself. They built a network of untraceable websites and dozens of social media sites filled with lies and deliberately disguised them as the work of a former employee-turned-whistleblower. No such employee existed. The deception was calculated: a purported insider account is far harder to remove for defamation than an anonymous attack site. Defendants then laundered the sites' fabricated content into legitimate-seeming news coverage, completing a coordinated effort to destroy Jones' reputation and business.

Defendants saw Jones's downfall as their opportunity to "steal her clients" and "be rich and happy." Plaintiffs filed this lawsuit to clear their names and hold Defendants accountable.

Defendants Abel and Wayfarer responded to Plaintiffs' well-founded claims with counterclaims of their own. Those counterclaims are a diversion, designed to deflect attention from

Abel's and Wayfarer's own misconduct, and they have no footing in law or fact. After full discovery, including depositions of every principal witness, neither Abel nor Wayfarer can point to admissible evidence supporting the essential elements of their claims. Summary judgment should be entered dismissing all five remaining counterclaims.

Having voluntarily abandoned six counterclaims originally filed against Jonesworks, and lost still others on Plaintiffs' Motion to Dismiss, Abel's three surviving counterclaims, for violations of California Penal Code § 502, conversion, and promissory fraud, share a fatal defect: there is no evidence that Abel suffered any recoverable damages caused by Plaintiffs. Section 502 compensates damage to computer systems and data, and costs incurred to verify their integrity; Abel has no evidence of any such loss. Her conversion claim rests on the alleged loss of her phone number, yet she has offered no evidence of economic harm and no competent evidence of emotional distress. And her promissory fraud claim fails for the same reason the Court previously identified: Jonesworks owned the phone, so nothing about the alleged promise caused the harm she claims, and California law does not permit emotional distress damages for fraud in any event. Abel disclosed no damages expert by the court-ordered deadline. She cannot carry her burden at trial.

Wayfarer's claim for breach of the implied covenant of good faith and fair dealing fares no better. Damages caused by the alleged breach are an essential element, and Wayfarer has none. By its own account, Wayfarer's reputational injuries followed the publication of Blake Lively's Civil Rights Department complaint and the New York Times article that reported it. Neither event was caused by Plaintiffs. Finally, Wayfarer's defamation claim fails at the threshold. The Court has already held that Wayfarer is a limited-purpose public figure, so Wayfarer must prove by clear and

convincing evidence that Plaintiffs made the challenged statements with actual malice. Wayfarer offers no evidence to support the actual malice element, and in fact, the record shows the opposite.

Rule 56 exists to dispose of claims like these, which a party has pleaded but cannot prove. Discovery is closed, and Defendants have had every opportunity to marshal evidence of damages, causation, and actual malice. They have not done so. The Court should grant Plaintiffs' motion and dismiss Defendants' counterclaims in their entirety.

## BACKGROUND

Jonesworks LLC ("Jonesworks") is a public relations agency founded by Stephanie Jones, who is also its CEO. Dkt. 51 ¶ 10. Jonesworks has represented a variety of entertainment clients, including Wayfarer Studios LLC ("Wayfarer") and its co-founder, Justin Baldoni. *Id.* ¶¶ 11, 13, 18. Wayfarer is a movie studio that has produced several widely distributed films and, in 2019, it acquired the film rights to the "explo[sively] popular[]" novel *It Ends With Us*. *Id.* ¶ 19. Wayfarer produced the film, for which Baldoni was the male lead, director, and executive producer, and co-financed and distributed it alongside Sony. *Id.* ¶ 20-21. *It Ends With Us* had a large fan base, largely attributable to the novel's popularity on TikTok. *Id*.

In May 2020, Wayfarer and Jonesworks entered into a written services agreement (the "Agreement"). Dkt 51-1. Wayfarer agreed to pay Jonesworks $20,000 per month in exchange for Jonesworks' PR and communications services, and an additional $5,000 per month for services provided to Baldoni. Dkt. 51 ¶¶ 13, 14; Dkt. 51-1 at 1. The Agreement states that Jonesworks will be Wayfarer's "exclusive public relations counsel to provide strategic communications services," including "[p]osition[ing] and utiliz[ing] Wayfarer Studios key executives as thought-leaders and change agents in the film and television industry," "[c]onduct[ing] proactive feature pitching to top-tier print, broadcast and online media outlets." Dkt. 51-1 at 1, 5. The Agreement further sets

forth that "[Jonesworks] shall provide the Services in a professional manner and in accordance with the goals mutually established by [Wayfarer] and [Jonesworks]." *Id.* at 1.

Jennifer Abel joined Jonesworks in 2020. Dkt. 158 ¶ 17.[1] Upon joining the company and accepting a company-purchased and -owned phone, Abel elected to transfer her phone number to that phone and transfer her number to Jonesworks' company phone plan. *Id.* ¶ 26. Abel elected to configure the Jonesworks-owned phone with her Apple ID/iCloud account and email accounts. *Id.*

In mid-2024, Jonesworks and Jones were providing PR services for Wayfarer and Baldoni in connection with *It Ends With Us*. Dkt. 51 ¶¶ 19, 32. As the premiere drew closer, Wayfarer and Baldoni found themselves in a PR crisis, with news outlets speculating about possible tension between Lively and Baldoni. *Id.* ¶ 32. Jonesworks employee Jennifer Abel was their point person on the Wayfarer account, entrusted with the role due to her seniority and experience. *Id.* ¶ 41. As the PR crisis worsened, Wayfarer and Baldoni engaged crisis PR expert Melissa Nathan. *Id.* ¶ 81. Jones disagreed with the recommendation to retain Nathan, given Jones's past experience with Nathan, and she advised Wayfarer of as much. Ex. 1 (JONESWORKS_WAYFARER_000004651 (Heath Dep. Ex. 32)) at 2.

As press surrounding Baldoni's harassment towards Lively spread—including in an August 14, 2024 TMZ article titled "Blake Lively Felt Justin Baldoni Fat-Shamed Her, Kissed Too Long During Scene"—Jones offered to contact Harvey Levin, the founder of TMZ, "to get this story fixed/removed if [Nathan] cannot" in furtherance of the goal of "work[ing] as [a] team collectively to tackle the influx of stories…." Ex. 2 (JONESWORKS_00030166).

In July 2024, Abel informed Jones of her intent to leave Jonesworks. Dkt. 158 ¶ 53. In August of 2024, Abel requested that her phone number be released from the company's account.

[1] References to Dkt. 158 refer to Abel's Counterclaims (beginning at page 30).

*See id.* at ¶ 54. But in mid-August 2024, Jonesworks learned, after inquiring into suspicious file transfers on its computer systems, that Abel had been downloading dozens of proprietary documents from the company's systems to her personal laptop, which she had no reason or authorization to access let alone surreptitiously misappropriate. *See, e.g.*, Ex. 5 (Abel 9/25/25 Dep.) at 105:5-15. Jonesworks swiftly responded and, on August 21, 2024, with counsel, terminated Abel. Dkt. 158 ¶ 60. Text messages downloaded to Abel's company phone revealed that Abel had been spearheading a campaign to retaliate against Lively for allegations of sexual harassment against Baldoni. *See, e.g.*, Ex. 3 (JONESWORKS_00007440). These messages specifically reference "Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan." Ex. 4 (ABEL_000006072).

In August 2024, Wayfarer purported to unilaterally terminate the Agreement, advising Jonesworks that the termination would be effective "as of the end of August." *Id.* ¶ 52. By September 2024, Wayfarer had formally engaged Abel's new firm to provide PR services. *Id.* ¶ 49.

Plaintiffs filed this lawsuit in January of 2025, alleging claims for breach of contract, tortious interference with contract, faithless servant, breach of fiduciary duty, and defamation against Defendants Jennifer Abel, Melissa Nathan, Justin Baldoni, Wayfarer Studios LLC, and John Does 1-10. Dkt. 1-1. Abel and Wayfarer retaliated by filing their own counterclaims against Plaintiffs. *See* Dkts. 50, 51. Plaintiffs moved to dismiss the counterclaims. Dkts. 54, 56. The Court granted in part and denied in part Plaintiffs' motions, dismissing Abel's federal statutory claims for violations of the Computer Fraud and Abuse Act, the Stored Communications Act, and the Federal Wiretap Act, and state law claims for invasion of privacy, intentional and negligent infliction of emotional distress, and promissory fraud (without prejudice), and dismissing Wayfarer's claims for breach of contract. Dkts. 139, 233. Abel's live counterclaims now include

claims for (1) Violations of the California Penal Code § 502; (2) conversion; and (3) a repleaded claim for promissory fraud. Dkt. 158. Wayfarer's counterclaims now include: (1) breach of the implied covenant of good faith and fair dealing; and (2) defamation. Dkts. 51, 233.

For the following reasons, Defendants cannot meet their burden under Rule 56 and their counterclaims must be dismissed at summary judgment.

## ARGUMENT

A motion for summary judgment must be granted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Perez v. Harbor Freight Tools*, 698 F. App'x 627, 628 (2d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). "The moving party may satisfy this burden by demonstrating to the court that there is an absence of evidence to support the responding party's case on the points for which the responding party has the burden of proof at trial." *AmTrust N. Am., Inc. v. KF&B, Inc.*, No. 17-CV-5340 (LJL), 2020 WL 5519197, at *1 (S.D.N.Y. Sept. 14, 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party meets this initial burden, the responding party "must come forward with specific facts showing that there is a genuine issue for trial by a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial." *Dunlop-McCullen v. Rogers*, 2002 WL 1205029, at *6 (S.D.N.Y. Feb. 21, 2002) (internal citations omitted). Judgment must be entered against any party that fails to establish the existence of any essential element of their case. *Celotex*, 477 U.S. at 322. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Here, neither Abel nor Wayfarer can meet their burden under Rule 56(c), and their counterclaims must be dismissed.

## I. Abel's Counterclaims Must Be Dismissed.

Abel has three remaining counterclaims pending against Plaintiffs: (1) violations of California Penal Code § 502; (2) conversion; and (3) promissory fraud. Abel bears the burden on each, and each claim fails because Abel has not raised a genuine issue of material fact that she suffered recoverable damages due to Plaintiffs' alleged actions.

### A. Abel's California Penal Code § 502 Claim Fails Because Abel Has No Evidence of Compensable "Damage or Loss"

California Penal Code § 502(c) imposes liability on whoever "[k]knowingly accesses and without permission … uses any data, computer, computer system or computer network in order to … wrongfully control or obtain money, property, or data." To recover under Section 502, Abel must show that she "suffer[ed] damage or loss" due to the violation. Cal. Penal Code § 502(e). The statute states that "compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." *Id.* Courts interpreting the scope of Section 502 have made clear that it "contemplates some damage to the computer system, network, program, or data contained on that computer." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020-21 (C.D. Cal. 2023) (collecting cases); *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 845 (E.D. Cal. 2025) (holding that plaintiffs could not recover damages for lost benefit of selling their personal data because statute requires "some damage to the computer system, network, program, or data contained on that computer"). Cases addressing the scope of damages available under Section 502(e) have focused exclusively on economic and computer-related harms. *See Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp.

3d 1127, 1162 (E.D. Cal. 2017) (costs of investigating unauthorized access and to restore or verify data integrity); *Brown v. Google, LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) (loss of value of misappropriated data); *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655-56 (N.D. Cal. 2024) (impairment of device performance).

There is no evidence in the record that Abel suffered any such harms, much less any evidence that quantifies those harms. Abel testified during her deposition that the damages she seeks to recover from Plaintiffs include harm stemming from loss of a "multi-million dollar investment deal," the loss of "multiple clients," "miss[ing] her 20-year high school reunion," and the "stress and just pain [she's] put [her] family through." Ex. 5 (Abel Dep. 9/25/2025) at 277:11-278:5. These are not recoverable under the act. And even assuming these categories of harm could be recoverable under Section 502, there is no evidence suggesting that Plaintiffs' alleged access of Abel's data caused any of these harms.

While the Court relied on Abel's allegations that she "spent time restoring her phone number and iCloud information, and investigating the unauthorized access," Dkt. 139 at 25, there is similarly no evidence in the record to support or quantify these allegations of harm. Abel's Rule 26 disclosures state that "Abel will provide an estimate of damages in an amount to be determined by an expert in accordance with the scheduling order in this case." *See* Ex. 6 (Defendants' Initial Disclosures) at 21. The deadline for disclosing expert witnesses was January 12, 2026. *See Lively v. Wayfarer et al.*, No. 1-24CV10049, Dkt. 1129. Abel did not disclose any damages expert.

Abel cannot meet her burden under Rule 56(c) and the Court should enter judgment against her on her Section 502 claim.

### B. Abel's Conversion Claim Fails Because Abel Has No Evidence of Damages Caused by the Alleged Theft

Abel's conversion claim suffers from similar flaws. The Court sustained Abel's conversion claim on Plaintiffs' Rule 12(b)(6) motion to dismiss, holding that a phone number was "property" under California law such that Abel had a "possessory interest" in it. Dkt. 139 at 34-38. The Court further held Abel's allegations that her inability to access her phone number "cut off her access to critical accounts protected by two-factor authentication" and "it took her over a month to regain control over all her accounts" satisfied the damages element at the pleading stage. *Id.* at 38-39.

At summary judgment, however, Abel must support her allegations with evidence. She has not done so. As discussed *supra* § I.A, there is no record evidence to support her allegations that she suffered any economic harm as a result of the alleged theft of her phone number.

The Court also held that "emotional damages may be available … in appropriate circumstances," on a conversion claim. Dkt. 139 at 39. Even those damages, however, are unsubstantiated here. Abel testified she has not sought therapy, has had no mental health treatments, and confirmed she has produced no medical or treatment records in this case. Ex. 5 (Abel 9/25/25 Dep.) at 275:23-276:10. She testified that she "missed [her] 20-year high school reunion" and had put her family and fiancé through stress and pain. *Id.* at 278:2-5. And there is no evidence that even this alleged harm is connected specifically to the loss of her *phone number*, which is the only harm addressed by her conversion claim. *See* Dkt. 158 ¶ 118. This is insufficient under California law. *Compare White v. Molfetta*, 64 Cal. App. 5th 628, 639 (2021) (mere testimony that plaintiff was "upset" was insufficient to support award of emotional distress damages) *with Gonzalez v. Personal Storage, Inc.*, 56 Cal. App. 4th 464 (1997) (affirming award of emotional distress damages where plaintiff presented evidence that she refused to come out of

her room for a week, lost her business, withdrew from activities, and was medically diagnosed with depression).

The Court should grant summary judgment dismissing Abel's conversion claim.

### C. Abel's Promissory Fraud Claim Fails Because Abel Has No Evidence of Recoverable Damages or Causation

Finally, Abel's promissory fraud claim should be dismissed for two reasons: (1) Abel again fails to support her allegations of harm with any record evidence; and (2) Abel cannot demonstrate any causal link between her alleged harms and the fraudulent conduct she alleges.

Abel's promissory fraud claim is premised on her allegations that Jonesworks induced her to return her company phone by promising her that it would return her personal phone number to her, and that Jonesworks breached that promise. *See* Dkt. 139 at 44; Dkt 158 ¶¶ 124-27. Abel alleges that but for Jonesworks's promise, she would have only returned the phone after removing her personal data from it. Dkt. 139 at 44. In dismissing Abel's promissory fraud claim without prejudice, the Court held that Abel's allegations of harm stemming from loss of two-factor authentication and Jonesworks's access to her personal information were conclusory, and that Abel failed to tie her alleged damages to the "actions she took in reliance on the defendant's misrepresentations"—turning over her phone before wiping her personal data. *Id.* at 46. Those deficiencies remain.

As the Court noted, there is no dispute that Jonesworks owned Abel's physical phone, and "if Jonesworks was not going to return the phone number to Abel promptly, nothing about the promise that induced [Abel] to turn over the physical phone could change that." Dkt. 139 at 46-47. What is more, even assuming Abel could tie the loss of two-factor authentication to Jonesworks's alleged promissory fraud, there is no record of any economic harm she suffered as a result. *See supra* § I.A. And emotional distress damages are not recoverable under California law

for a promissory fraud claim stemming from a transaction involving property. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1415 (9th Cir. 1990) (Cal. Civ. Code § 3343 "does not authorize an award of damages for emotional distress"). Summary judgment dismissing Abel's promissory fraud claim is required.

## II. Wayfarer's Counterclaims Must Be Dismissed.

Wayfarer has two counterclaims remaining against Plaintiffs: (1) breach of the implied covenant of good faith and fair dealing; and (2) defamation per se. *See* Dkt. 51 (Counts III and IV); Dkt. 233 (dismissing claims for breach of contract). Both claims fail.

### A. Wayfarer Has No Evidence Linking Its Alleged Damages to Plaintiffs' Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing.

Wayfarer alleges that Plaintiffs deprived Wayfarer of the benefits of its Agreement with Jonesworks by "maliciously feeding its confidential information to hostile third parties for the specific purpose of harming Wayfarer and Baldoni, acting against Wayfarer's interests, and otherwise depriving Wayfarer of the benefit of its bargain." Dkt. 51 ¶ 84. Wayfarer further alleges that it has been "irrevocably harmed" as a result. *Id.* ¶ 64. Specifically, Wayfarer alleges that "[f]ollowing the coordinated 'drop' of Lively's fantastical Civil Rights Department complaint and an explosive New York Times article, Wayfarer and Baldoni became objects of public scorn and derision." *Id.*

But Wayfarer fails to produce evidence that connects Plaintiffs' alleged actions—sharing confidential information with third parties—to the harms Wayfarer and Baldoni allege, nor does Wayfarer even attempt to quantify those harms. Indeed, Lively's complaints about sexual harassment on set preceded any alleged actions taken by Plaintiffs. *See* Dkt. 51 ¶ 55. Wayfarer itself seems to acknowledge that its alleged harms stem from the publication of Lively's Civil Rights complaint, and the NYTimes article. Dkt. 55 ¶ 64. There is no evidence that Plaintiffs'

actions were either a but-for or proximate cause of the publication of Lively's Civil Rights complaint or the NYTimes article. What is more, significant negative PR regarding Baldoni's harassment of Blake Lively on set predated even the NYTimes article. *See* Ex. 2 (JONESWORKS_00030166) (referencing August 14, 2024 TMZ article titled "Blake Lively Felt Justin Baldoni Fat-Shamed Her, Kissed Too Long During Scene"). Indeed, it was this negative press that precipitated Wayfarer's decision to hire Nathan in the first place.

Damages are an essential element of Wayfarer's claim for breach of the implied covenant of good faith and fair dealing. *See Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017) (citation omitted) ("The elements of a claim of breach of the implied covenant are similar to causes of action for breaches of duties of care, in that it requires the existence of a duty, breach of that duty, causation, and damages."). Wayfarer's breach of implied covenant claim must be dismissed for lack of any such evidence.

### B. Wayfarer's Defamation Claim Fails Because It Has No Evidence that Plaintiffs Acted with Actual Malice.

This Court has already held that Wayfarer is a limited purpose public figure, and that Wayfarer is therefore required to show that Plaintiffs made their allegedly defamatory statements with actual malice. Dkt. 233 at 33. "Actual malice involves making a statement with 'knowledge of falsity or reckless disregard as to truth or falsity.'" *Underwager v. Channel 9 Australia*, 69 F.3d 361, 368 (9th Cir. 1995) (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 511 (1991)). Thus, Wayfarer must show "by clear and convincing evidence that [Plaintiffs] 'in fact entertained serious doubts as to the truth of [their] statements or acted with a high degree of awareness of … probable falsity." *Id.* (quoting *Masson*, 501 U.S. at 510). Wayfarer cannot do so.

Wayfarer's defamation claim is premised on Wayfarer's allegation that Plaintiffs made statements to various third parties that "Wayfarer had retaliated against Lively and others for

reporting alleged sexual misconduct, including orchestrating a 'smear campaign' by propagating false and misleading narratives about Lively for the purpose of damaging her image and reputation." Dkt. 51 ¶ 88. But even assuming Plaintiffs made these statements, there is no evidence that Plaintiffs did so with "knowledge of falsity or reckless disregard as to truth or falsity." *Underwager*, 69 F.3d at 368. Indeed, the only evidence that exists is to the contrary.

The evidence shows that Jones warned Wayfarer about Nathan's "dirty" tactics as early as July of 2024. Ex. 1 (JONESWORKS_WAYFARER_000004651 (Heath Dep. Ex. 32)) at 2. Jones had a consistent, independently held belief that Nathan used improper tactics. Baldoni himself testified that he kept Jones out of the loop on what instructions Wayfarer was giving to TAG in managing the PR fallout related to Lively's sexual assault allegations. *See* Ex. 7 (Baldoni 10/06/2026 Dep.) at 257:13-258:6. And the text messages recovered from Abel's phone that Jones actually reviewed indicate that Nathan and TAG *were* involved in a smear campaign related to Lively, at Baldoni's and/or Wayfarer's request. *See, e.g.*, Ex. 3 (JONESWORKS_00007440). These messages specifically reference "Jed and his team's efforts to shift the narrative towards shining a spotlight on Blake and Ryan." Ex. 4 (ABEL_000006072). And Plaintiffs now know, due to the belated production of the documents from Melissa Nathan's employee, Katherine Case, that Nathan had an established pattern of working with Jed Wallace to orchestrate smear campaigns to take down, in particular, female celebrities. *See generally* Dkt. 279 (Motion for Sanctions).

The Supreme Court has made clear that to defeat a motion for summary judgment in a defamation case, the nonmovant must do more than "merely assert[] that the jury might, and legally could, disbelieve the [movant's] denial of … legal malice." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the law requires clear and convincing evidence that the speaker "in

fact entertained serious doubts" about the statement. *Underwager*, 69 F.3d at 368. Wayfarer can offer no such evidence. Its defamation claim must be dismissed.

**CONCLUSION**

For the foregoing reasons, Plaintiffs Stephanie Jones and Jonesworks, LLC respectfully request that the Court grant Plaintiffs' Motion for Summary Judgment and dismiss Abel's counterclaims for violations of the California Penal Code, conversion, and promissory fraud, and Wayfarer's counterclaims for breach of the implied covenant of good faith and fair dealing and defamation.

Dated: October 15, 2026 | Austin, Texas

Respectfully submitted,

By: */s/ Bradley E. Beckworth*

Bradley E. Beckworth, *pro hac vice*
New York State Bar No. 5151071
Christina Yarnell, *pro hac vice*
Texas State Bar No. 24071973
NIX PATTERSON, LLP
8701 Bee Cave Road
Seven Oaks East, Suite 500
Austin, Texas 78746
Telephone: (512) 328-5333
Telecopier: (512) 328-5335
bbeckworth@nixlaw.com
cyarnell@nixlaw.com

*Attorneys for Plaintiffs Stephanie Jones and Jonesworks LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, I caused a true and correct copy of the foregoing to be served on all counsel of record via ECF.

*/s/ Bradley E. Beckworth*
Bradley E. Beckworth