# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---oOo---

BLAKE LIVELY,
Plaintiff,
vs. CASE NO. 24-CV-10049-LJL (LEAD CASE)
25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

Defendants.

---

JENNIFER ABEL,
Third-party Plaintiff,
vs.
JONESWORKS, LLC,
Third-party Defendant.

---

WAYFARER STUDIOS LLC, et al.
Consolidated Plaintiffs,
vs.
BLAKE LIVELY, et al.
Consolidated Defendants.

---

**CONFIDENTIAL**

VIDEO-RECORDED DEPOSITION OF JUSTIN BALDONI
Los Angeles, California
Monday, October 6, 2025
Stenographically Reported by: Ashley Soevyn, CALIFORNIA CSR No. 12019

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---oOo---

BLAKE LIVELY,
Plaintiff,
vs. CASE NO. 24-CV-10049-LJL (LEAD CASE)
25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

Defendants.

---

JENNIFER ABEL,
Third-party Plaintiff,
vs.
JONESWORKS, LLC,
Third-party Defendant.

---

WAYFARER STUDIOS LLC, et al.
Consolidated Plaintiffs,
vs.
BLAKE LIVELY, et al.
Consolidated Defendants.

---

**CONFIDENTIAL**

Video-recorded Deposition of JUSTIN BALDONI, taken on behalf of the Plaintiff Jonesworks, et al., Pursuant to Notice, at the offices of Willkie Farr & Gallagher, 2029 Century Park East, Los Angeles, California beginning at 9:15 a.m. and ending at 6:46 p.m. on Monday, October 6, 2025, before me, ASHLEY SOEVYN, California Certified Shorthand Reporter No. 12019.

A P P E A R A N C E S:

For the Plaintiffs Stephanie Jones and Jonesworks LLC:

QUINN EMANUEL URQUHART & SULLIVAN
BY: KRISTIN TAHLER
BY: LAURENNE M. BABAYAN
Attorneys at Law
865 S. Figueroa Street
8th Floor
Los Angeles, California 90017
kristintahler@quinnemanuel.com
laurennebabayan@quinnemanuel.com
(212) 849-7000

-AND-

QUINN EMANUEL URQUHART & SULLIVAN
BY: MAAREN A. SHAH
Attorney at Law
51 Madison Avenue
22nd Floor
New York, New York 10010
maarenshah@quinnemanuel.com
(212) 849-7000

A P P E A R A N C E S:

For the Plaintiff Blake Lively:

MANATT PHELPS & PHILLIPS LLP
BY: ESRA A. HUDSON
Attorney at Law
2049 Century Park East
Suite 1700
Los Angeles, California 90067
ehudson@manatt.com
(310) 312-4207

A P P E A R A N C E S:

For the Plaintiff Blake Lively:

WILLKIE FARR & GALLAGHER
BY: MICHAEL GOTTLIEB
Attorney at Law
2029 Century Park East
Los Angeles, California 90067
mgottlieb@willkie.com
(310) 855-3000

-AND-

WILLKIE FARR & GALLAGHER
BY: MICHAELA CONNOLLY
BY: KRISTIN BENDER
Attorneys at Law
1875 K Street
Northwest
Washington, D.C. 20006
mconnolly@willkie.com
kbender@willkie.com
(202) 303-1245

A P P E A R A N C E S:

For the Plaintiff Blake Lively:

WILLKIE FARR & GALLAGHER
BY: AARON E. NATHAN (VIA ZOOM)
Attorney at Law
787 Seventh Avenue
New York, New York 10019
anathan@willkie.com
(212) 728-8000

-AND-

SLOANE OFFER WEBER AND DERN
BY: LINDSEY STRASBERG (VIA ZOOM)
Attorney at Law
10100 Santa Monica Blvd., Ste. 750
Los Angeles, California 90067
(310) 248-5100

A P P E A R A N C E S:

For the Defendants Wayfarer Studios LLC, Jennifer Abel, Melissa Nathan and Justin Baldoni, Jamey Heath and Steve Sarowitz:

LINER FREEDMAN TAITELMAN+COOLEY
BY: BRYAN FREEDMAN
BY: SUMMER BENSON
BY: THERESA TROUPSON (VIA ZOOM)
BY: JASON SUNSHINE (VIA ZOOM)
Attorneys at Law
1801 Century Park West, 5th Floor
Los Angeles, California 90067
bfreedman@lftcllp.com
sbenson@lftcllp.com
ttropson@lftcllp.com
jsunshine@lfcllp.com
(310) 201-0005

A P P E A R A N C E S:

For the Defendants Wayfarer Studios LLC, Jennifer Abel, Melissa Nathan and Justin Baldoni, Jamey Heath and Steve Sarowitz:

AHOURAIAN LAW
BY: MITRA AHOURAIAN
Attorney at Law
2029 Century Park East
Suite 400
Los Angeles, California 90067
mitra@ahouraianlaw.com
(310) 376-7878

For the Witness Justin Baldoni:

SHAPIRO ARATO BACH
BY: ALEXANDRA SHAPIRO
BY: JONATHAN P. BACH
Attorneys at Law
1140 Avenue of the Americas
17th Floor
New York, New York 10036
ashapiro@shapiroarato.com
jbach@shapiroarato.com
(212) 257-4880

A P P E A R A N C E S:

For the Defendants Jed Wallace and Street Relations, Inc.:

JACKSON WALKER LLP
BY: JOEL R. GLOVER
Attorney at Law
1401 McKinney Street
Suite 1900
Houston, Texas 77010
jglover@jw.com
(713) 752-4226

Also Present:
Jennifer Abel
Melissa Nathan
Jamey Heath
Steve Sarowitz (Via Zoom)
Laura Prather, Esq. (Via Zoom)
Alice Butrrick, Esq. (Via Zoom)
Zach Czerenda, Veritext Legal Solutions Concierge (Via Zoom)
Jonathan Hernandez, Videographer

Because you had said earlier she was fired. 04:14:53
Q Well, I will ask you what you understand about that in a little bit. But this text -- let me ask it this way.
Do you have a recollection of discussing and deciding that you were going to go with Jen, like one day before she actually left or like one month before she actually left? 04:15:08
MS. SHAPIRO: Objection.
THE WITNESS: Can you help me with when she actually left? 04:15:25
BY MS. SHAH:
Q Sure. She left on August 21st of 2024.
A I -- I can't give you -- I -- I don't know. I -- I don't know exactly when. 04:15:48
Q Were you aware that she was planning to leave Jonesworks before she actually left?
A I was made aware via Jamey that she had given Stephanie her notice. And so Jamey let me know that she had given notice, and that she would be staying on through the end of the film promotion. 04:16:12
Q Do you have a sense of when Jamey relayed that to you?
A I don't, but I -- all I remember was that she had given notice. She had let Stephanie know. 04:16:43

Q Do you have the impression that you found out about her giving notice shortly after she gave notice? 04:16:46
A I couldn't -- I couldn't answer that.
Q Okay. After you were informed by Jamey that Jen gave notice to Stephanie, did you immediately decide to go with Jen when she left? 04:16:54
A No.
Q How long after you became aware that Jen planned to leave Jonesworks did you make the decision to go with her? 04:17:07
A I think Jamey and I had a conversation about it. I think it was something that we immediately said, oh, this is something we have to figure out. Like -- because we had had Matthew at Jonesworks. But it was really just Jen and Matthew. And Jen had been with us pretty much since the beginning. So -- so it was one of those -- it was on the list of conversations that Jamey and I had to have. Like, whoa, what do we do? Do we stay? I didn't know what she was going to or where she was going at the time, but it was definitely a conversation. I just -- I don't think that was decided immediately. 04:17:34 04:17:51
Q At some point between when you found out 04:18:10

that she had given notice and when she actually walked out the door at Jonesworks, you -- you had decided -- 04:18:11

A Yes.

Q -- that you were going to go with her? 04:18:17

A Yes.

Q Okay. And you had decided that in consultation with Jamie and Tera?

A Yes.

Q Did you make Stephanie Jones aware of that decision when you decided it? 04:18:25

MS. SHAPIRO: Objection.

THE WITNESS: I don't even think we made Jen aware of that decision.

BY MS. SHAH: 04:18:34

Q Did you not?

A No.

MS. SHAPIRO: Objection.

BY MS. SHAH:

Q Okay. When did you make Jen aware of that decision? 04:18:36

A I -- I don't know. I don't remember telling Jen. Probably because I was never asked. I don't -- I don't know when I told Jen I would go with her. 04:19:01

So there was no, like -- this -- if I may, this, to me, looks like more of what I've seen you show me, which is like an exaggeration or inflation of conversations. Maybe her trying to, like, show Jen she has her back. I don't know, but that wasn't what the conversation was exactly. 05:34:00 05:34:21

Q Okay. We discussed this a little bit earlier, but what was behind your decision to leave with Jen Abel when Jen left Jonesworks?

MS. SHAPIRO: Objection. 05:34:44

THE WITNESS: It wasn't any one thing. I think the major thing, it would have been like if I was at William Morris -- maybe I should use a different agency. If I was at an agency and I had an agent for four years or five years and I talked to that agent every day and that agent was soliciting work for me, and the agent called me and said, hey, I'm going to a different agency. My loyalty would be with the agent that I had built the relationship with versus the agency. And that's how I viewed the situation with Jen and Stephanie Jones. 05:35:06 05:35:24

Even if I had a great relationship with the owner of the agency, my day-to-day relationship was with Jen Abel.

BY MS. SHAH: 05:35:37
Q And is what you just relayed to me the reason that you personally decided to go with Jen Abel when she left Jonesworks?
A Yes. 05:35:47
Q And is what you just relayed to me consistent with the reason that you, Jamey Heath, and Tara Hanks collectively made to go with Jen Abel when she left Jonesworks?
A I think that's the biggest -- the biggest 05:36:01 reason. I think we were -- regardless of anything that was happening with the movie or not with the movie. If there would have been no movie, I think that would have been the decision.
Q I don't understand that answer. What do 05:36:20 you mean by that?
A Maybe it's because I didn't understand the question.
Q Sure. You said that you discussed with Jamie Heath and Tera Hanks this conversation around 05:36:28 whether you -- you personally and Wayfarer the studio, should go with Jen Abel as your publicist --
A Yes.
Q -- when she left Jonesworks, right?
A Yes. 05:36:42

The -- just the feeling I got when I had spoken to Steph, Mrs. Jones -- sorry -- during that time with the article and all of that that was going on. Also, just I -- I didn't speak to her very much. Jen was really my point person, or Matthew. It would be like if I was your client. You're a wonderful lawyer and you've been with me -- I'd been your client for four years, and you left your firm to join -- to join Mr. Freedman. And -- and your firm might be great, but I would want to go with you. I mean, that was really the decision. 05:37:45 05:38:10 05:38:37

Q Okay. Is it fair to say that your working relationship with Jen never really changed or was interrupted when she left Jonesworks?

MS. SHAPIRO: Objection. 05:39:04

THE WITNESS: I don't know how to answer that question.

BY MS. SHAH:

Q Okay. You -- you continued to work with Jen Abel as your publicist the day after she left Jonesworks, right? And in the week after she left Jonesworks and the month she left Jonesworks? 05:39:20

MS. SHAPIRO: Objection.

THE WITNESS: My recollection of her leaving Jonesworks was -- was her phone being 05:39:36

confiscated and her being met with, like, security 05:39:46
and an attorney, and she had been, like, texting me
from, like, another number and trying to get her
phone. So from that point on, I know we were still
dealing with the premiere, we continued to work 05:40:02
together. But there was a gap when she didn't have
a phone, and I think she was going through a lot.

BY MS. SHAH:

Q But that gap was a matter of hours or a
day; is that right? 05:40:14

MS. SHAPIRO: Objection.

THE WITNESS: Probably. But -- but I
believe that my -- if my memory serves me correct --
and I could be wrong -- I was told that she would be
staying on with me and Wayfarer until the end of the 05:40:30
press cycle. There's like a date. And I -- I
believe that this incident happened still while we
were within that date. So it was my understanding
that she was fulfilling her promise to us.

BY MS. SHAH: 05:40:48

Q Did you ever feel like she was ever
unavailable to you as a publicist during this period
of time?

A I'm not sure that's something I thought
about. 05:40:56

CERTIFICATE OF DEPONENT

I have read the foregoing transcript of my deposition and except for any corrections or changes noted on the errata sheet, I hereby subscribe to the transcript as an accurate record of the statements made by me.

____________________________

JUSTIN BALDONI

SUBSCRIBED AND SWORN before and to me this ____ day of ________________, 20___.

______________________________

NOTARY PUBLIC

My Commission expires:

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Dated this 7th day of October 2025.

ASHLEY SOEVYN

CSR No. 12019

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC

CASE NAME: Blake Lively v. Wayfarer Studios LLC, Et Al.
DATE OF DEPOSITION: 10/6/2025
WITNESSES' NAME: Justin Baldoni

| PAGE | LINE (S) | CHANGE | REASON |
| --- | --- | --- | --- |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |
| ____ | ________ | __________________________ | ________________________ |

______________________________
Justin Baldoni

SUBSCRIBED AND SWORN TO BEFORE ME
THIS ____ DAY OF ____________, 20__.

_____________________ (NOTARY PUBLIC)

_______________________ MY COMMISSION EXPIRES: