# EXHIBIT 9

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---oOo---

BLAKE LIVELY,
Plaintiff,
vs. CASE NO. 24-CV-10049-LJL (LEAD CASE)
25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

Defendants.

---

JENNIFER ABEL,
Third-party Plaintiff,
vs.
JONESWORKS, LLC,
Third-party Defendant.

---

WAYFARER STUDIOS LLC, et al.
Consolidated Plaintiffs,
vs.
BLAKE LIVELY, et al.
Consolidated Defendants.

---

**CONFIDENTIAL**

VIDEO-RECORDED DEPOSITION OF JAMEY HEATH
Los Angeles, California
Wednesday, October 8, 2025

Stenographically Reported by: Ashley Soevyn,
CALIFORNIA CSR No. 12019

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---oOo---

BLAKE LIVELY,
Plaintiff,
vs. CASE NO. 24-CV-10049-LJL (LEAD CASE)
25-CV-449 (LJL) (MEMBER CASE)

WAYFARER STUDIOS LLC, ET AL.

Defendants.

---

JENNIFER ABEL,
Third-party Plaintiff,
vs.
JONESWORKS, LLC,
Third-party Defendant.

---

WAYFARER STUDIOS LLC, et al.
Consolidated Plaintiffs,
vs.
BLAKE LIVELY, et al.
Consolidated Defendants.

---

**CONFIDENTIAL**

Video-recorded Deposition of JAMEY HEATH, taken on behalf of the Plaintiff Blake Lively, Pursuant to Notice, at the offices of Manatt Phelps & Phillips, 2049 Cenury Park East Los Angeles, California beginning at 9:12 a.m. and ending at 7:41 p.m. on Wednesday, October 8, 2025, before me, ASHLEY SOEVYN, California Certified Shorthand Reporter No. 12019.

A P P E A R A N C E S:

For the Plaintiffs Stephanie Jones and Jonesworks LLC:

QUINN EMANUEL URQUHART & SULLIVAN
BY: KRISTIN TAHLER
BY: OLIVIA HOLMES
Attorneys at Law
865 S. Figueroa Street
8th Floor
Los Angeles, California 90017
kristintahler@quinnemanuel.com
oliviaholmes@quinnemanuel.com
(212) 849-7000

-AND-

QUINN EMANUEL URQUHART & SULLIVAN
BY: MAAREN A. SHAH
Attorney at Law
51 Madison Avenue
22nd Floor
New York, New York 10010
maarenshah@quinnemanuel.com
(212) 849-7000

A P P E A R A N C E S:

For the Plaintiff Blake Lively:

MANATT PHELPS & PHILLIPS LLP
BY: ESRA HUDSON
BY: STEPHANIE ROESER
BY: KATELYN CLIMACO
Attorneys at Law
2049 Century Park East
Suite 1700
Los Angeles, California 90067
ehudson@manatt.com
sroeser@manatt.com
ehudson@manatt.com
(310) 312-4207

A P P E A R A N C E S:

For the Plaintiff Blake Lively:

WILLKIE FARR & GALLAGHER
BY: MICHAEL GOTTLIEB
Attorney at Law
2029 Century Park East
Los Angeles, California 90067
mgottlieb@willkie.com
(310) 855-3000

-AND-

WILLKIE FARR & GALLAGHER
BY: KRISTIN BENDER (Via Zoom)
Attorneys at Law
1875 K Street
Northwest
Washington, D.C. 20006
kbender@willkie.com
(202) 303-1245

A P P E A R A N C E S:

For the Plaintiff Blake Lively:

SLOANE OFFER WEBER AND DERN
BY: LINDSEY STRASBERG (VIA ZOOM)
Attorney at Law
10100 Santa Monica Blvd., Ste. 750
Los Angeles, California 90067
(310) 248-5100

A P P E A R A N C E S:

For the Defendants Wayfarer Studios LLC, Jennifer Abel, Melissa Nathan and Justin Baldoni, Jamey Heath and Steve Sarowitz:


LINER FREEDMAN TAITELMAN+COOLEY
BY: BRYAN FREEDMAN
BY: SUMMER BENSON
BY: JASON SUNSHINE (VIA ZOOM)
Attorneys at Law
1801 Century Park West, 5th Floor
Los Angeles, California 90067
bfreedman@lftcllp.com
sbenson@lftcllp.com
jsunshine@lftcllp.com
(310) 201-0005

A P P E A R A N C E S:

For the Witness Justin Baldoni:

SHAPIRO ARATO BACH
BY: ALEXANDRA SHAPIRO
BY: JONATHAN P. BACH
Attorneys at Law
1140 Avenue of the Americas
17th Floor
New York, New York 10036
ashapiro@shapiroarato.com
jbach@shapiroarato.com
(212) 257-4880

A P P E A R A N C E S:

For the Defendants Wayfarer Studios LLC, Jennifer Abel, Melissa Nathan and Justin Baldoni, Jamey Heath and Steve Sarowitz:

AHOURAIAN LAW
BY: MITRA AHOURAIAN
Attorney at Law
2029 Century Park East
Suite 400
Los Angeles, California 90067
mitra@ahouraianlaw.com
(310) 376-7878

For the Defendants Jed Wallace and Street Relations, Inc.:

JACKSON WALKER LLP
BY: JOEL R. GLOVER
Attorney at Law
1401 McKinney Street
Suite 1900
Houston, Texas 77010
jglover@jw.com
(713) 752-4226

A P P E A R A N C E S:

Also Present:

Blake Reynolds, (Via Zoom)

Justin Baldoni, Defendant

Dan Acosta, Veritext Legal Solutions Concierge (Via Zoom)

Jonathan Hernandez, Videographer

Q Why did you record the call?
A I felt the need to document what I was unsure and felt uneasy with Stephanie's, I don't want to say her state of mind, but what she might or might not say that felt contentious.
Q Were you concerned that she was going to tell Sony that she did not place a story in The Daily Mail?
MS. SHAPIRO: Objection.
THE WITNESS: Well, no, I was not concerned -- why don't you ask the question again because I might need it rephrased.
BY MS. HUDSON:
Q Were you concerned that Ms. Jones was going to contact Sony and tell them that she had not placed an article in The Daily Mail?
MS. SHAPIRO: Objection.
THE WITNESS: No, that wasn't my concern.
BY MS. HUDSON:
Q Why did you feel the need to record the call?
MS. SHAPIRO: Objection.
(Jonathan Bach entering deposition room.)
THE WITNESS: At this point, I had grown concerned with Stephanie's ability to adequately

represent and speak on our behalf. And based on some previous conversations with her, I was losing confidence, and I knew this was a testy situation. And I wanted to document anything she might say to me.

BY MS. HUDSON:

Q Did you tell Ms. Jones that you were recording the call?

A I did not.

Q Why not?

A Simply because I wanted to have documented what she -- where she was or her state of mind was, and I didn't allow her to know.

Q You didn't want her to know?

A I didn't deliberately think I didn't want her to know. I just didn't announce it.

Q Were you planning to use it against her in someway?

A No.

Q And you said you couldn't remember if there was a third person listening in to the call?

A I just don't recall, but if there was, then I'm not saying there wasn't. I just don't recall it.

Q So you don't remember, for example, if at

Q In which you described already?

MS. SHAPIRO: Objection.

THE WITNESS: This was at a time when we were doing everything we can to manage through a really tough situation. And we were trying to keep any fires from developing of speculation and -- and chaos. And at this point there was --

BY MS. HUDSON:

Q So just so you're clear, Mr. Heath --

A I'm sorry.

Q -- my question -- I'm going to -- is not why you recorded the call; it was if you recall what was said.

A Okay.

Q And you said you recall the general sentiment of the call, so --

A I was trying to get there.

Q Okay.

MS. SHAPIRO: Counsel, can you not interrupt him when he is finishing an answer, please?

MS. HUDSON: I -- I wanted to strike the answer because it wasn't responding to my question.

BY MS. HUDSON:

Q My question is, do you recall what was

said on the call?

A Yeah, I'm doing my best to answer it.

Q Okay. Well, I don't need to know all of the background and sentiment. I just need to know what -- if you remember what was said.

MS. SHAPIRO: Objection to the commentary.

THE WITNESS: Okay. I will do my best.

BY MS. HUDSON:

Q Thank you.

A Yes. We were discussing for quite a while that I did not want her to contact anybody, as we were trying to maintain a position of -- of being careful with everyone another so that we did not bolster something. And in that conversation, she was only concerned with any allegation or insinuation that she may have been the -- be the one to make this call.

And while I very much understood her position, by making a call at that time would only add fuel. And I did not want that to happen.

Q And you mean making a call to Sony?

A Making a call to anybody. Sony wasn't really it. I don't recall it was only about Sony. It was about also contacting whoever the person was

from The Daily Mail or doing some investigation. So that is what I was really focused on, was that she was doing her job in that regard, and she was more concerned about herself. And while I may understand that on a personal level, from a business perspective we were not seeming to be aligned. And that was the basis of the call.

Q Okay. And did you record the whole call or did you start recording at some point after the call had begun?

A I believe it was into the call. At some point into the call.

Q And you recorded it on your phone? In other words, you didn't have another recording device, right?

A I don't know how I recorded it. I -- I probably used -- somebody maybe -- maybe I used somebody's phone and asked them if I could use their phone for it. Or maybe I had -- I don't recall how I did it.

Q Okay.

A Because I believe I was on my phone speaking to her, so I may have used something else.

Q Do you have a device that you use for recording calls?

Q Yes.
A I think at that point, it was a -- a quick way to give them a glimpse of a timeline of our experience.
Q Your experience with Ms. Lively?
A Our experience that was outlined in this timeline.
Q Your experience with Ms. Lively?
A That is part of it.
Q Okay. It was a way to give TAG a quick update -- or a summary of the alleged incidents, as you described them, correct?
MS. SHAPIRO: Objection.
THE WITNESS: I wouldn't characterize it as that. I just think it was a quick way to get a little bit of an update of some of the elements.
BY MS. HUDSON:
Q Some of the elements of issues that had arisen with Ms. Lively, correct?
A Of our experience of the set, and some of that included experiences with Ms. Lively for sure.
Q And that's because you had retained TAG at that point to help you with crisis management related to your concerns about Ms. Lively potentially going public, correct?

MS. SHAPIRO: Objection.
THE WITNESS: No, it wasn't about Ms. Lively going public.
BY MS. HUDSON:
Q What was it about?
A We didn't know what would become public. We knew that there was a lot of contention. We knew that Justin was at a point where he had lost the movie. People had unfollowed him. We heard whisperings that she was saying some things about us that were not kind. We didn't know where we stood, and some of this was like, what is this -- if any sort of media or people start looking into why are they unfollowing, what is going on there? We just wanted some guidance and some -- some consultation of how we manage that.
Q And this information that's in this timeline is what you wanted TAG to know if people were speculating about why Mr. Baldoni was being unfollowed, correct?
MS. SHAPIRO: Objection.
THE WITNESS: This was part of it.
BY MS. HUDSON:
Q Did you ever tell someone that you were hiring a crisis management team that was costing you

CERTIFICATE OF DEPONENT

I have read the foregoing transcript of my deposition and except for any corrections or changes noted on the errata sheet, I hereby subscribe to the transcript as an accurate record of the statements made by me.

______________________________
JAMEY HEATH

SUBSCRIBED AND SWORN before and to me this _____ day of ___________________, 20___.

________________________________
NOTARY PUBLIC

My Commission expires:

REPORTER'S CERTIFICATE

I, ASHLEY SOEVYN, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was/ was not requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Dated this 10th day of October 2025.

ASHLEY SOEVYN

CSR No. 12019

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC

CASE NAME: Blake Lively v. Wayfarer Studios LLC
DATE OF DEPOSITION: 10/8/2025
WITNESSES NAME: Jamey Heath

| PAGE | LINE (S) | CHANGE | REASON |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

_______________________________
Jamey Heath

SUBSCRIBED AND SWORN TO BEFORE ME
THIS _____ DAY OF ______________, 20__.

_______________________
(NOTARY PUBLIC) MY COMMISSION EXPIRES: