USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/4/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIE JONES, et al.,

Plaintiffs,

-v-

JENNIFER ABEL, et al.,

Defendants.

25-cv-779 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Stephanie Jones ("Jones") and Jonesworks LLC ("Jonesworks," and with Jones, "Plaintiffs") move, pursuant to Federal Rules of Civil Procedure 26 and 37 and the Court's inherent authority, for an order imposing sanctions on Defendant Melissa Nathan ("Nathan"). Dkt. No. 272. For the reasons that follow, the motion is granted in part.

**BACKGROUND**

Familiarity with this long-running dispute and related proceedings is presumed. *See Lively v. Wayfarer Studios LLC*, No. 24-cv-10049 (S.D.N.Y.) ("*Lively*"). The Court details the facts relevant to the present motion.

On or around May 8, 2024, an anonymous website with the URL of "www.stephaniejonesleaks.com" published disparaging content about Jones.[1] Dkt. No. 1-1

[1] Plaintiffs' complaint offers "summer" 2024 as the post date of www.stephaniejonesleaks.com. Dkt. No. 1-1 ¶ 92. Defendant Jennifer Abel's amended counterclaim allegations assert that the date is May 8, 2024. Dkt. No. 50 at 39 ¶ 37. Plaintiffs' proposed amended complaint alleges that the website was published on May 6, 2024. Dkt. No. 193-1 ¶ 85. At oral argument, Plaintiffs represented the date the website "went live" was May 8, 2024. Transcript of October 28, 2026 Oral Argument ("Oral Arg. Tr.") at 12:8. For present purposes, the Court refers to the date as May 8, 2024; however, the exact date is not consequential to the Court's analysis.

¶¶ 88–92; Dkt. No. 273 at 8. On or around August 17, 2024, Business Insider published an article titled, "Who's Afraid of Stephanie Jones?," reporting that Jones had fostered and enabled an allegedly toxic work environment at her company Jonesworks. *Jones v. Abel*, 2025 WL 2821370, at *2 (S.D.N.Y. Oct. 3, 2025); Dkt. No. 1-1 ¶ 88; Dkt. No. 50 ¶¶ 38, 40. That article amplified and referenced www.stephaniejonesleaks.com. Dkt. No. 1-1 ¶¶ 88–92. Following Business Insider's reporting, media outlets published additional stories concerning Jones's seemingly aggressive tactics as a publicist, and, in September 2024, another anonymous website negatively spotlighting Jones launched with the address of "www.stephaniejoneslies.com." *Id.* On October 21, 2024, one of the websites was updated with more assertions about Jones, including that she tried to "mask the bad press article by trying to do positive press," namely a "comedic pay-to-play fluff" feature published in Hamptons.com. Dkt. No. 273-1 at 26–28.[2]

On December 24, 2024—seven months after the first anonymous website and four months after the first Business Insider article—Plaintiffs filed a complaint in New York State Supreme Court, New York County, contending that Defendant Jennifer Abel ("Abel"), a former employee of Jones, had contrived with Nathan, a competitor of Jones, to have Business Insider—and other publications such as the Daily Mail—publish damaging articles about Jones in an attempt to destabilize Jones's relationship with Defendants Wayfarer Studios LLC ("Wayfarer") and Justin Baldoni ("Baldoni," and with Wayfarer, Nathan, and Abel, collectively, the "Wayfarer Parties") so that Wayfarer and Baldoni would terminate their contract with Plaintiffs for the latter's services. Dkt. No. 1-1 ¶ 76. Plaintiffs further allege that John Does 1–10 acted in concert with Abel and Nathan to publish www.stephaniejonesleaks.com and www.stephaniejoneslies.com (collectively, the "Websites"). *Id.* ¶ 92. Plaintiffs allege that the

[2] Citations to Dkt. Nos. 273-1, 273-2, 273-3, 273-5, 273-8, 273-18 use ECF pagination.

Websites "contain or contained substantially identical false, harassing and defamatory statements about Jones and Jonesworks," *id.* ¶ 93, and, on that basis, brought a defamation claim against John Does 1–10 who had "published the Websites." *Id.* ¶ 156–66. The defamation claim points to five categories of potentially defamatory statements, *id.* ¶ 159(a)–(e) (*e.g.*, that Plaintiffs "leaked confidential client information" and "coerce[d] clients"), and quotes six phrases from the Websites that are assertedly actionable, *id.* ¶ 160(a)–(f) (*e.g.*, claiming as "false statements" that "Jones was 'hacking' the defamatory websites" and that "Jones 'does not fight for her clients, but she does fight with them'").

On March 6, 2025, Plaintiffs served their first set of requests for production of documents ("RFPs") on Nathan. Dkt. Nos. 195-3, 317-4. Request for Production No. 2 ("RFP No. 2") asked for "[a]ll" documents and communications "pertaining to Jonesworks" that were in Nathan's possession, custody, or control. Dkt. No. 195-3 at 7; Dkt. No. 317-4 at 6.

On April 18, 2025, in accordance with the operative case management plan, the window to file a motion to amend or to join additional parties closed. Dkt. No. 21; *see also Lively*, No. 24-cv-10049, Dkt. No. 58. That same day, Nathan served her response and objections ("R&Os") to the first set of RFPs. Dkt. No. 317-4. For nearly all of the RFPs, including RFP No. 2, Nathan stated her objections and that she "will not search for documents responsive to this Request at this time. [Nathan] states that she is willing to meet and confer with [Plaintiffs] regarding" the RFP. Dkt. No. 317-4 at 6–32.[3] She also provided her R&Os to Plaintiffs' first set of interrogatories, which had asked, in Interrogatory No. 11, that Nathan "[i]dentify all persons

[3] Only for Request for Production No. 27, which asked for documents and communications received by Nathan in response to a subpoena issued and served by Nathan in the present action pursuant to Federal Rule of Civil Procedure 45, did Nathan state that she would "conduct a reasonable search for and produce relevant, non-privileged documents responsive to this Request in her possession, custody, or control." Dkt. No. 317-4 at 33.

[Nathan] communicated with regarding the [Websites] . . . including the date, manner and substance of each communication." Dkt. No. 273-2 at 16. To that interrogatory, Nathan listed her objections and stated that, "[i]n light of the foregoing objections, Responding Party Nathan will not respond to this Interrogatory at this time." *Id.* at 17.

On May 19, 2025, Nathan served her amended R&Os to the first set of RFPs. Dkt. No. 317-5. For RFP No. 2, Nathan's updated response stated that she "will conduct a reasonable search for and produce relevant, non-privileged documents responsive to this Request in her possession, custody, or control." *Id.* at 9.

As of July 1, 2025—the deadline for the substantial completion of discovery—Nathan had produced 144 documents. Dkt. No. 193-5 at 2 n.1. On July 16, 2025, Plaintiffs served their second set of RFPs on Nathan. Dkt. No. 195-4. Those discovery requests included RFP No. 32, asking Nathan for all documents and communications "relating to or with any current or former employees of Jonesworks," Dkt. No. 317-6 at 8, and RFP No. 39, asking her to produce all documents and communications "pertaining to the [Websites] . . . including but not limited to [Nathan's] knowledge of or involvement in the creation, operation, or content of the websites or accounts, or any involvement by The Agency Group PR LLC's employees including but not limited to Katherine Case" ("Case"), *id.* at 11.[4] In addition, RFP No. 38 requested documents and communications pertaining to the August 2024 Business Insider article. *Id.*

On July 30, 2025, Nathan provided verified supplemental responses to Plaintiffs' interrogatories. For Interrogatory No. 11, Nathan's updated response read: "Responding Party has no personal knowledge of who was behind the websites www.stephaniejoneslies.com or

---

[4] The Agency Group PR LLC is Nathan's public relations and crisis management firm. Dkt. No. 1-1 ¶ 45.

www.stephaniejonesleaks.com. She had no involvement in either to any extent. However, once they went live, the websites were widely circulated in public relations circles, which includes Responding Party." Dkt. No. 273-3 at 22. On August 6, 2025, Nathan produced documents that indicated her involvement in the Business Insider article. Dkt. No. 194 at 5; *see also* Dkt. Nos. 195-6, 195-7 (March 27–28, 2024 text exchanges between Case, Nathan, and others). Document discovery for non-parties closed on August 15, 2025. *Jones v. Abel*, 2025 WL 3292468, at *1 (S.D.N.Y. Nov. 26, 2025); *see also Lively*, No. 24-cv-10049, Dkt. No. 58 ("All fact discovery is to be completed no later than August 14, 2025.").

On August 18, 2025, Nathan served her initial R&Os to Plaintiffs' second set of RFPs. Those R&Os did not state whether Nathan would produce documents and communications in response to RFP Nos. 32, 38, and 39. Instead, Nathan incorporated her general objections as to each of the three RFPs and then set forth five or six specific grounds for objection, asserting *inter alia* overbreadth and undue burden. Dkt. No. 317-6 at 8, 11–12. On August 22, 2025, Nathan amended her R&Os to the second set of RFPs. For RFP Nos. 32, 38, and 39, Nathan reiterated her objections but added:

> Subject to and without waiver of the foregoing, Responding Party will produce responsive, non-privileged documents in her possession, custody or control located in response to the agreed-upon search terms, if any, except that Responding Party will not make a separate production of documents already produced in *Lively v. Wayfarer Studios LLC et al.*, Civ. Action No. 1:24-cv-10049-LJL (the "Lively Action") which are therefore in Propounding Party's possession, custody or control. See Joint Stipulation on the Use of Discovery in the Jones and Lively Related Actions (Dkt. 498).

Dkt. No. 317-7 at 11–12, 18–20. The referenced agreed-upon search terms were exchanged by counsel over email on August 15, 2025. The parties agreed that Nathan would search for documents that included the following:

> ("Jonesworks" OR Jones OR "SJ" OR Steph* OR "JW") AND (Belloni OR "Matthew Belloni" OR Gardner OR "Eric Gardner" OR Puck OR "James Vituscka"

> OR Styles OR "Ruth Styles" OR Boshoff OR "Alison Boshoff" OR Goldberg OR "Michael Goldberg" OR Keller OR "Elizabeth Keller" OR Dasrath OR "Diana Dasrath" OR Siegel OR "Tatiana Siegel" OR Reslen OR "Eileen Reslen")

Dkt. No. 273-18 at 6; *see also* Dkt. No. 195-5 at 1 (counsel for Wayfarer Parties listing Nathan's "email, mobile device, [and] computer hard drive" as sources for discoverable information and cataloging search terms used for second amended initial disclosures).

Following the close of document discovery, Plaintiffs took depositions of Case and Nathan in September 2025. On September 5, Case testified, under oath at her deposition, that she first became aware of the Websites through a call with Nathan in early May. Dkt. No. 195-8 at 374:6–379:12. According to Case, Nathan told her that a "website had been requested" by a "potential new client" and asked Case to write copy that would include language "[t]hat Stephanie holds clients hostage, that she leaks clients' secrets, and that she treats her employees poorly." *Id.* On September 10, in light of this testimony, Plaintiffs asked Nathan to conduct supplemental searches of her files for documents regarding the Websites, including for any "documents reflecting payments made in connection with the Websites." Dkt. No. 193 ¶ 28. The Wayfarer Parties refused and maintained that Nathan's productions were complete. *Id.*

On September 30, 2025, Nathan testified during her deposition that she had read Case's deposition transcript and asserted that "Katie Case was giving false under-oath testimony" about her. Dkt. No. 195-10 at 136:22–137:10. Nathan denied "any [prior] personal knowledge about whether or not Katie Case did write the copy for the website." *Id.* at 137:11–21. Nathan further testified that she had "no knowledge" of Jed Wallace's "involvement in building or creating or publishing" the Websites.[5] *Id.* at 138:10–139:4. Nathan was asked if she had "any knowledge

[5] Jed Wallace is an individual that Nathan purportedly coordinated and worked with to create social media accounts and websites to proliferate "attack" messages online. Dkt. No. 193-1 ¶¶ 1–6; *see also Lively v. Wayfarer Studios LLC*, 786 F. Supp. 3d 695, 730 (S.D.N.Y. 2025). Wallace was named as a defendant in *Lively v. Wayfarer Studios LLC,* No. 24-cv-10049

as to who was involved in any respect in the website about Stephanie Jones," to which she responded, "I do now"—referencing Case—and otherwise denied knowledge, reiterating, "No, I do not build websites." *Id.* at 142:6–20.

On October 17, 2025, Plaintiffs served a supplemental subpoena on Case, two months after document discovery of non-parties had closed. *Jones*, 2025 WL 3292468, at *1. Case expressed a willingness to confer with counsel for Plaintiffs and produce documents, but the Wayfarer Parties intervened and objected to the production. *Id.* To overcome that objection, the Jones Parties filed a letter motion to compel Case to produce relevant document in response to the subpoena, Dkt. No. 166, which this Court resolved in its November 26, 2025 Memorandum and Order, *Jones*, 2025 WL 3292468, at *1. The Court found that Plaintiffs had not met the good-cause standard to issue the belated subpoena; to make that showing, "at the latest," Plaintiffs should have issued the subpoena after learning from Case's deposition testimony that she had been involved in writing copy for the Websites at Nathan's directions. *Id.* at *2. Instead, Plaintiffs waited six weeks after Case's depositions, demonstrating a lack of diligence. *Id.* at *3. The Court further rejected the contention that the "Wayfarer Parties' delayed and deficient disclosures throughout the course of discovery provide a basis for finding good cause" because "[t]he Jones Parties ha[d] failed to show that any discovery violations by the Wayfarer Parties provide good cause for [Plaintiffs'] failure to serve the [s]ubpoena earlier." *Id.* The Court left open that "nothing . . . would prohibit the Jones Parties from asking Case to voluntarily share the documents at issue." *Id.*

On December 8, 2025, Plaintiffs filed a motion for leave to amend their complaint

---

(S.D.N.Y.), but dismissed for lack of personal jurisdiction. In this proceeding, Wallace testified that he was not "involved at all" in getting the Websites online and could not recall whether he had been in a Signal chat with Case and Nathan in May 2024. Dkt. No. 273-12 at 39:2–41:14.

pursuant to Federal Rules of Civil Procedure 15 and 16. Dkt. No. 191. The proposed amended complaint sought to add a new cause of action against Nathan for tortious interference with prospective business relations in connection with the August 15, 2024 Business Insider article and the Websites, Dkt. No, 195-1 ¶¶ 185–91, and sought to add Nathan to the defamation cause of action in connection with the Websites, *id.* ¶¶ 210–20. The original defamation claim had been pled against only the John Doe defendants. *See Jones v. Abel*, 2026 WL 836798, at *4 (S.D.N.Y. Mar. 26, 2026).

In its March 26, 2026 Opinion and Order, the Court denied Plaintiffs' motion to amend. Dkt. No. 234. In support of their request, Plaintiffs contended that the motion could not have been filed by April 18, 2025, because documents relating to Nathan's involvement with the Business Insider article were not produced until August 6, 2025, and Nathan's involvement with the Websites was unknown until Case's deposition on September 5, 2025. *Jones*, 2026 WL 836798, at *4. But, as the Court found, Plaintiffs' March 6, 2025 request to produce documents included 27 categories of documents, some of which touched on the claims in the proposed amendment but none requested information specific to the Business Insider article. *Id.* (discussing requests for "[a]ll [d]ocuments and [c]ommunications pertaining to Jonesworks LLC," and "[a]ll [c]ommunications with any reporter, journalist, . . . member of the press or media regarding Stephanie Jones"). Beyond that, Plaintiffs "identif[ied] no other factors that would excuse their failure to exercise diligence or to act within the deadlines." *Id.* The Court rejected Plaintiffs' arguments that the Court consider the untimely amendment because of a lack of prejudice, finding instead that Nathan "would have had no reason to know that [Plaintiffs] would seek damages from her in her personal capacity for tortious interference and defamation," and as a result, it would be "unfair to make her defend" against said claims after "all fact

discovery" had closed. *Id.* at *5. The Court also concluded that the motion would be "futile" as to the defamation claim because the statute of limitations had run under New York law, *see* C.P.L.R. 215(3), which provides that such claims must be brought within one year of "when the libelous material first was published, that is, displayed to a third party." *Jones*, 2026 WL 836798, at *5 (internal quotation marks omitted). Thus, at the latest, any defamation claim stemming from the Websites should have been brought by early May 2025.

On September 16 and 17, 2026, Plaintiffs received voluntary productions of documents and an affidavit from Case concerning three of Case's interactions with Nathan, each indicating Nathan's involvement in creating websites, including ones that attacked Jones. Dkt. No. 273 at 2–3; Dkt. No. 273-11 ¶¶ 3–4. First, the documents indicate that Nathan texted Case with an opportunity to "write something" for "three or four grand" on May 6, 2024, at 1:05 p.m. Dkt. No. 273-5 at 2. That text message was followed up shortly by a phone call, memorialized in Case's contemporaneous notes timestamped 2:04 p.m., in which Nathan instructed Case to write website copy asserting that Stephanie Jones takes her "clients hostage" and "leverages the bad information against them" to prevent them from "leaving"—and if clients do so, Jones "lets leaks get out." Dkt. No. 273-7. Case wrote a draft that same day and emailed it to Nathan. Dkt. No. 273 at 8. Nathan sent her feedback at 7:33 p.m, stating, in the gray text bubbles:




Dkt. No. 273-5 at 4 (blue text bubbles corresponding to Case). On that day or shortly thereafter, www.stephaniejonesleaks.com went live, parroting the text from Case's call notes. Dkt. No. 273 at 8 (comparing language); *see also* Dkt. No. 273-1 at 13–18 (copy of website language). Case texted to confirm that "the copy [she] sent won't have [her] name on it," to which Nathan replied with a link that includes "stephaniejones" in the URL, as shown below:




Dkt. No. 273-8 at 14 (blue text bubbles corresponding to Case; grey text replies corresponding to Nathan). Second, following the publication of the Business Insider article, according to Case, Nathan called her in September 2024 requesting an update to the website, which Case provided copy for and went live on October 21, 2024. Dkt. No. 273-1 at 26–29; Dkt. No. 273-13 (Case's call notes). Lastly, on December 27, 2024, Nathan and Case had a conversation concerning the present lawsuit, and Nathan told Case that she had no reason to worry because "the website was created 'for the Rock,' [Dwayne Johnson] and [they] can't be held liable for work products for a client."[6] Dkt. No. 273-11 ¶ 5(b). Nathan "reiterated that what was included in the website was true and was therefore not defamatory." *Id.*

On September 19, 2026, Plaintiffs filed a motion for sanctions against Nathan for discovery misconduct, along with a memorandum of law and various exhibits. *See* Dkt. Nos. 272, 273. On October 5, 2026, Nathan filed a memorandum of law in opposition to the motion

---

[6] Case further attested that she was told that the request originated from Johnson's legal team, which "required a website to act as a tool that would allow them to gather information that they could use as part of their lawsuit without going through a legal process" and could be used "to point journalists towards to highlight such allegations against Ms. Jones." Dkt. No. 273-11 ¶ 3(b)–(c).

for sanctions, Dkt. No. 279, along with the declaration of Ellyn S. Garofalo attaching one exhibit, Dkt. No. 280. On October 12, 2026, Plaintiffs filed a reply memorandum of law in further support of their motion. Dkt. No. 282. On October 28, 2026, the Court held oral argument on the motion. Minute Entry, Oct. 28, 2026.

## DISCUSSION

Plaintiffs have moved for sanctions pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure and the Court's inherent authority. Dkt. No. 273 at 16–17. "Federal Rules of Civil Procedure 26(g) and 37 represent the principal enforcement power to punish discovery abuse." *Taylor v. City of New York*, 2024 WL 342354, at *1 (S.D.N.Y. Jan. 30, 2024) (quoting *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235–36 (2d Cir. 2020)). The Court's "[i]nherent power sanctions . . . serve only as a useful backstop against discovery abuses that do not clearly violate Rules 26(g) and 37." *Yukos Capital S.A.R.L.*, 977 F.3d at 236.

As detailed below, Plaintiffs have identified misconduct by Nathan that is sanctionable pursuant to Rule 37(c)(1) and 26(g). Accordingly, limited sanctions are justified, including vacatur of a portion of the Court's decision denying leave to amend, a second deposition of Nathan with costs of Plaintiffs' examining attorney and one junior attorney to be paid by Nathan, and a limited reopening of document discovery to permit a supplemental accelerated document request to Nathan. The Court also will permit Plaintiffs to file an amended complaint, with the amendment limited to the addition of the defamation claim against Nathan with respect to statements published on the Websites on or after July 30, 2024. These remedial sanctions are also warranted, in the alternative, under the Court's inherent authority to ameliorate the influence of Nathan's discovery misconduct on the Court's prior decisions in this proceeding. However, no sanctions are warranted against Nathan's counsel.

## I. Sanctions Pursuant to the Federal Rules of Civil Procedure

The Federal Rules of Civil Procedure's interlocking provisions for imposing sanctions are collected primarily under Rule 37 and supplemented by Rule 26(g)'s certification requirement for every discovery request, response, or objection. Nathan's failure to meet her discovery obligations touches on the strictures of both rules.

### A. Legal Framework

Rule 37, titled "Failure to Make Disclosure or Cooperate in Discovery; Sanctions," Fed. R. Civ. P. 37, is the core provision that enforces discovery obligations, and "it is ordinarily inappropriate to look beyond [its] clearly delineated procedures . . . for the imposition of sanctions in the discovery context," 8B Wright & Miller's Federal Practice & Procedure § 2282 (3d ed. 2026). Rule 37 contemplates that the liberal discovery system will be self-executing between the parties with only minimal, as-necessary involvement by the judiciary. *See* 7 Moore's Federal Practice § 37.90 (3d ed. 2026). In that spirit, the discovery rules generally contemplate that there will be a two-step progression codified at Rule 37(a)–(b) before a court imposes sanctions. *See, e.g.*, *Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, P.C.*, 2025 WL 41583, at *2 (S.D.N.Y. Jan. 7, 2025); *Cho v. Osaka Zen Spa*, 2024 WL 3360619, at *10 (S.D.N.Y. July 10, 2024). First, the discovery rules specify the deadline and the form for initial disclosures, answers to interrogatories, and responses to document requests. Fed. R. Civ. P. 26(a)(1)(C) (initial disclosures must be served within 14 days after the Rule 26(f) conference); Fed. R. Civ. P. 33(b)(2), (3) (answers to each interrogatory must be served within 30 days); Fed. R. Civ. P. 34(b)(2) (responses to document requests must be served within 30 days). Rule 37(a) provides a means for a party, dissatisfied by discovery responses, to request an "order compelling disclosure or discovery" after "the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it

without court action." Fed. R. Civ. P. 37(a)(1). After a meet and confer, motions to compel may be filed to rectify instances where a party "fails to make a disclosure," "fails to answer an interrogatory," or "fails to produce documents"; any "evasive or incomplete disclosure, answer or response" is treated as equivalent to a "failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3)–(4). If the motion is granted (or if the requested disclosure or discovery is provided after the motion is filed), the court must shift the costs of making the motion to the party "whose conduct necessitated the motion" except if the nondisclosure was substantially justified. Fed. R. Civ. P. 37(a)(1)(5). Rule 37(b) then lists out the sanctions that the court may impose if its orders to provide or permit discovery are not obeyed. It allows the court to "issue further just orders," including to impose sanctions ranging in severity from designating facts admitted and striking pleadings to dismissing the action and rendering default judgment. Fed. R. Civ. P. 37(b)(2)(A). "Although the order compelling discovery need not issue pursuant to Rule 37(a), there must be a valid court order in force before sanctions may be imposed pursuant to Rule 37(b)(2)." *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991) (citing *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986)).

Rule 37(c) and (d) govern the Court's authority to impose sanctions in the absence of a violated order. As relevant here, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by . . . [Rule 26(e)], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(e) addresses supplemental disclosures and responses and mandates that:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1). The evidence-preclusion mechanism of Rule 37(c) enforces Rule 26(e), *see* 7 Moore's Federal Practice § 37.60 (3d ed. 2026), and is intended to "prevent the practice of 'sandbagging' an opposing party with new evidence," *Haas v. Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (summary order) (quoting *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)). For a violation of Rule 26(e), Rule 37(c)(1) authorizes the Court, "on motion and after giving an opportunity to be heard," to "order payment" of expenses, including attorneys' fees, "inform the jury of the party's failure," and impose other sanctions, including those provided for in Rule 37(b)(2)(A)(i)–(vi). Fed. R. Civ. P. 37(c)(1). Alternative sanctions may be especially warranted when "[p]reclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party," Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment, an approach embraced in the Second Circuit, *see Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (holding that Rule 37(c)(1) does not mandate preclusion as a sanction). *See also Kosher Sports, Inc. v. Queens Ballpark Co., LLC*, 2011 WL 3471508, at *14 (E.D.N.Y. Aug. 5, 2011) (noting that, in the Second Circuit, although "Rule 37(c) identifies preclusion as the default remedy, courts treat it as discretionary and disfavored"). Moreover, "[t]he requirement of an 'opportunity to be heard' does not require an evidentiary hearing, but may be satisfied by . . . the filing of a responsive brief in opposition to a motion." 7 Moore's Federal Practice § 37.60[1] (3d ed. 2026).

Rule 37(c) does not establish a strict-liability scheme for any failure to correct or update; rather, it requires a culpable state of mind. For sanctions to be warranted under Rule 37(c), a plaintiff

> must establish "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).[7, 8]

Meanwhile, Rule 37(d), in pertinent part, concerns the failure of a party to "serve its answers, objections, or written responses" to "interrogatories under Rule 33 or a request for inspection under Rule 34." Fed. R. Civ. P. 37(d)(1)(A)(ii). Any "motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). As with Rule 37(c), sanctions may include those listed in Rule 37(b)(2)(A)(i)–(vi). Fed. R. Civ. P. 37(d)(3). Rule 37(d) chiefly concerns scenarios where "a party fails entirely to respond" to a discovery request. *Glencore Denrees Paris v. Dep't of Nat. Store Branch 1*, 2008 WL 4298609, at *4 (S.D.N.Y. Sept. 19, 2008)

---

[7] By contrast, under Rule 37(c)(2), if a party fails to admit a fact that the requesting party later proves to be true, the responding party is liable for the requesting parties' reasonable expenses, including attorneys' fees, incurred in making that proof. Fed. R. Civ. P. 37(c)(2).

[8] Courts apply a similar test for failures to comply with the required disclosures under Rule 26(a), including initial disclosures, often with a focus on determining "whether to exclude [the previously undisclosed] evidence." *Pierce v. Ryder*, 2025 WL 473979, at *3 (E.D.N.Y. Feb. 12, 2025) ("[A] district court considers: (i) the party's explanation for its failure to disclose, (ii) the importance of the evidence, (iii) the prejudice suffered by the opposing party, and (iv) the possibility of a continuance."); *see also Design Strategy, Inc.*, 469 F.3d at 296; *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012).

(Sullivan, J.); *see also* 7 Moore's Federal Practice § 37.90 (3d ed. 2026) ("The misconduct at which subdivision (d) is directed consists of a party's complete failure to respond, by way of appearance, objection, answer, or motion for protective order, to a discovery request.").[9]

Separate to Rule 37, "Rule 26(g) charges all attorneys with a special, 'affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes' of liberal discovery." *Kosher Sports, Inc.*, 2011 WL 3471508, at *7 (quoting Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment); *see also Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003) ("Rule 26(g) imposes on counsel an affirmative duty to engage in pretrial discovery responsibly and is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions." (internal quotation marks omitted)). By its terms, Rule 26(g) requires that "every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name," certifying that the document reflects "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the "discovery request, response, or objection" is "(i) consistent with the[] rules and warranted by the existing law," "(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and "(iii) neither unreasonable nor unduly burdensome or

[9] Though there appears to be a "split in authority" across courts nationwide regarding whether Rule 37(d) can apply to "instances of inadequate responses to requests for production" and interrogatories, *Jindan Wu v. Seoul Garden, Inc.*, 2018 WL 507315, at *11 n.5 (E.D.N.Y. Jan. 22, 2018) (collecting cases on both sides of the split), the Second Circuit has previously recognized that subsection (d)'s reference "to a failure to respond to interrogatories does not cover the submission of some but not all answers, or the submission of all answers, some of which are inadequate," *Flaks v. Koegel*, 504 F.2d 702, 705 n.2 (2d Cir. 1974). *See also id.* (discussing that Rule 37(d) "contemplates only a serious or total failure to respond"); *Wisser v. Vox Media, Inc.*, 2020 WL 1547381, at *5 (S.D.N.Y. Apr. 1, 2020) ("[C]ourts in this Circuit have held that only a complete failure to respond is sufficient for sanctions under Rule 37(d).").

expensive." Fed. R. Civ. P. 26(g)(1). "If a certification violates this rule without substantial justification," the court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). Thus, a party can be liable for violations of Rule 26(g)(3). *See, e.g.*, *Lawrence v. City of New York*, 2018 WL 3611963, at *5 (S.D.N.Y. July 27, 2018) (applying Rule 26(g) sanctions against plaintiff but not counsel where plaintiff misled counsel as to veracity of photographic evidence). But Rule 26(g) does not place attorneys in the shoes of their clients. An attorney satisfies "Rule 26(g) if her inquiry, including her investigation and her resulting conclusions, was objectively reasonable under the circumstances. In making her inquiry, an attorney may rely, when appropriate on representations by her client or by other attorneys." *Kiobel v. Royal Dutch Petroleum Co.*, 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009) (internal citation omitted); *see also Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2020 WL 7342724, at *13 (S.D.N.Y. Dec. 11, 2020) (discussing that "the discovery rules do impose an obligation on counsel to monitor compliance so that all sources of discoverable information are identified and searched" (internal quotation marks omitted)). In other words, Rule 26(g) does not "require the signing attorney to certify to the truthfulness of the client's factual responses to a discovery request." Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment. Unlike sanctions pursuant to Rule 37, sanctions pursuant to Rule 26(g)(3) require a showing of prejudice. *See Wisser v. Vox Media, Inc.*, 2020 WL 1547381, at *3–4 (S.D.N.Y. Apr. 1, 2020).

### B. Application

Plaintiffs argue that Nathan and her counsel should be sanctioned, pursuant to Rules 37 and 26(g), for (1) withholding material evidence that would have been responsive to RFP Nos. 2, 32, and 39; (2) failure to correct Nathan's response to Interrogatory No. 11; and (3) for Nathan's

purported perjury during her deposition. Dkt. No. 273 at 17–20. The Court addresses each of the alleged violations under Rule 37 and then considers the applicability of Rule 26(g).

Nathan's failure to produce text messages that were responsive to RFP Nos. 2, 32, and 39 is sanctionable pursuant to Rule 37. Plaintiffs do not assert Rule 37(d) as a ground for sanctions. Nor could they. Nathan responded to the relevant RFPs. *See Glencore Denrees Paris*, 2008 WL 4298609, at *4. In particular, for RFP No. 2, Nathan responded first with objections and then with an agreement to "conduct a reasonable search for and produce relevant, non-privileged documents." Dkt. No. 317-5 at 9. As for RFP Nos. 32 and 39, Nathan ultimately committed to producing documents in compliance with "agreed-upon search terms." Dkt. No. 317-7 at 11–12, 18–20; *see also* Dkt. No. 273-18 at 6. Likewise, sanctions are not available to Plaintiffs under Rule 37(b). If Plaintiffs wanted the ability to seek sanctions under Rule 37(b), it would have been incumbent on them to attempt to meet and confer with Nathan and then to move for an order compelling productions from Nathan. Plaintiffs did not do so. Instead, on November 13, 2025, Plaintiffs moved only to compel the production of Case's documents, not those of Nathan's, despite testimony from Case that implicated Nathan as a counterparty on communications. Dkt. No. 166. The thrust of Plaintiff's argument, however, is that they are entitled to sanctions under Rule 37(c)(1) for Nathan's failure to supplement her RFP responses, in accordance with Rule 26(e). That argument is well-founded.

For each of three RFPs, Nathan ultimately agreed to search for and produce certain documents, either by conducting a search herself or by utilizing search terms. The text messages were responsive to the requests and thus, if Nathan were true to her responses, should have been produced.[10] RFP No. 2's request for all documents and communications pertaining to Joneswork

[10] Nathan raises the argument that "Plaintiffs fail to specify what Case documents were

unambiguously included the belated text messages at issue, given that Nathan was communicating with Case, a former Joneswork employee, and, in the course of their exchange, Nathan included a URL that contained Jones's name. To be sure, in her May 2025 amended response, Nathan agreed only to conduct a "reasonable search" in produce document responsive to RFP No. 2, *see* Dkt. No. 317-5 at 9, but Nathan does not argue that a reasonable search would not have surfaced these unproduced documents, *see* Dkt. No. 279 at 16–17. It is difficult to understand how the texts would not surface. The text messages contain information central to Plaintiffs' claims against Nathan. Nathan, instead, presses that the "March 2024 requests did not call for the documents" in question. *Id.* at 16. That rationale does not persuade. In its March 26, 2026 Opinion and Order, the Court concluded that RFP No. 2 did, in fact, "touch[] on the claims in the proposed amendment," including as to defamation associated with the Websites. *Jones*, 2026 WL 836798, at *4. In any event, because the text messages were plainly responsive to the request, Nathan was obligated, pursuant to Rule 34(b)(2)(C), to "state whether any responsive materials are being withheld" and on what basis, "specifying the part [withheld] and permit[ting] inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Nathan does not offer any evidence that she followed through on this obligation, such as identifying that documents were withheld and on what basis, which would have placed the onus on Plaintiffs to engage in further motion practice if necessary. *See Passenti v. Veyo, LLC*, 2022 WL 17261411, at *7 (D. Conn. Nov. 29, 2022) ("This requirement is intended to avoid confusion when a producing party states objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections." (quoting 7 Moore's

---

purportedly in Nathan's possession" but focuses that point on "Case's allegedly contemporaneous notes." Dkt. No. 279 at 13 n.3. There is no claim that Nathan did not have possession of the text messages.

Federal Practice § 34.13[2][b] (3d ed. 2021))). Instead, Nathan impermissibly and unilaterally decided not to produce the texts. *Cf.* Fed. R. Civ. P. 34 advisory committee's note to 2015 amendment ("[A]n objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. . . . The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection.").

As for RFP No. 32 and 39, the parties agreed to specific search terms. The text messages "*were* responsive to the agreed search terms." Dkt. 273 at 19. The agreed-upon search terms included any variation of Stephanies Jones's name as well as "Goldberg," *see* Dkt. No. 273-18 at 6, and so should have captured the text thread that includes a URL of one of the Websites (either of which includes the phrase "stephaniejones") and mentions "Goldberg," *see* Dkt. Nos. 273-5, 273-8. Tellingly, Nathan does not press that the "open and agreed" search methodology did not turn up the text messages but rather insists that "Plaintiffs never moved to compel on that limitation." Dkt. No. 279 at 21. However, her obligations under Rule 26(e)—and, transitively, susceptibility for sanctions for its violation under Rule 37(c)(1)—are self-executing and require no court order. *See, e.g.*, *McClarin v. City of New York*, 181 F.4th 260, 285 (2d Cir. 2026) ("Federal Civil Rule 37(c) provides a self-executing sanction for violation of a duty to produce."); *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 631 (2d Cir. 2018) ("The system functions because, in the vast majority of cases, we can rely on each side to preserve evidence and to disclose relevant information when asked (and sometimes even before then) without being forced to proceed at the point of a court order."); *Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-1, Ltd.*, 2026 WL 685730, at *6 (S.D.N.Y. Mar. 11, 2026) ("The duty to supplement and correct disclosures and responses is a continuing duty and no

motion to compel further supplementation is required." (quoting 6 Moore's Federal Practice § 26.131 (3d ed. 2026)). If Nathan wished to withhold documents responsive to RFP Nos. 2, 32, and 39, she was required to indicate that choice in her responses to the RFPs, permitting Plaintiffs then to make a motion to compel. Her failure to do so frustrated the operation of discovery in this action.

Nathan is subject to sanctions under Rule 37(c)(1) for her failure to amend or supplement her responses to RFP Nos. 3, 32, or 39 and failure to produce the responsive texts.[11] There is no doubt that Nathan had an obligation to produce the requested discovery. The first element of the *Residential Funding* test is satisfied. Rule 26(e) imposed an obligation to supplement or correct and, to date, no such supplementations or corrections have occurred. *See also Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011) ("The duty to supplement continues even after the discovery period has closed."). For the second element, culpability is satisfied by a showing that the nonmovant "breached a discovery obligation through bad faith or gross negligence or ordinary negligence." *Health & Happiness (H&H) US LLC v. Nutramax Lab'ys, Inc.*, 2026 WL 836132, at *7 (S.D.N.Y. Mar. 26, 2026) (quoting *Au New Haven, LLC v. YKK Corp.*, 2023 WL 2612204, at *9 (S.D.N.Y. Mar. 23, 2023)). The pattern of Nathan's conduct—*i.e.*, Nathan's insufficient responses to interrogatories and document production failures, coupled with false deposition testimony—reveal a pattern of willful malfeasance intended to run the clock on Plaintiffs' defamation claim and to obscure and hide relevant documents and facts. "[B]ad faith may be inferred only if actions are so

[11] Though *Residential Funding*'s culpability standard is no longer applicable to sanctions requested for lost electronically stored information, *see* Fed. R. Civ. P. 37(e), the Second Circuit reaffirmed "applicability of *Residential Funding* to cases that fall outside the province of Rule 37(e)(2)." *Hoffer v. Tellone*, 128 F.4th 433, 439 (2d Cir. 2025). Therefore, in the context of the non-production of available documents, its reasoning and holding remain good law.

completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Construtora Norbeto Oderbrecht S.A. v. Gen. Elec. Co.*, 2007 WL 3025699, at *13 (S.D.N.Y. Oct. 12, 2007) (internal quotation marks omitted). Nathan's derelictions, taken together, meet the high bar of bad faith.[12] Nathan agreed to conduct a search of her documents, both on her own prerogative and by utilizing specified terms across sources, yet did not produce significant and highly relevant text messages that directly implicated her in the Websites and would reasonably have turned up. Then, in her July 30, 2025 supplemental response to an interrogatory asking whether Nathan had any "personal knowledge" of the Websites, she claimed to have none. Dkt. No. 273-3 at 22. Finally, in her September deposition, she reiterated that she had not been involved in the Websites and claimed that Case's deposition was perjurious to the extent that it claimed Nathan was involved in any manner. Dkt. No. 195-10 at 136:22–137:10. At each step, Nathan had the opportunity to satisfy her obligations but continued to escalate: first, by failing to produce documents; then, by falsely responding to an interrogatory despite a personal verification; and, finally, by not only seemingly perjuring herself but also contending that Case had committed perjury instead. Thus, Nathan's conduct is appropriately deemed willful and intended to obfuscate and hinder the discovery process. *See, e.g.*, *United States v. Med. Grp. Rsch. Assocs., Ltd.*, 586 F. App'x 823, 824 (2d Cir. 2014) (summary order) (affirming district court's finding "that [the litigant] willfully and repeatedly" committed discovery violations where litigant "failed to produce documents[,] . . . failed to explain internal inconsistencies in the documents that it produced[,] . . . [and] failed to

[12] The Court notes that it need not host an "evidentiary hearing at all" to make findings as to the pertinent facts warranting sanctions. *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 138 (2d Cir. 2023). Nonetheless, the Court provided the parties with an opportunity to supplement the record, and both declined. Oral Arg. Tr. at 40:4–24.

make available for deposition an employee who had previously held herself out as an officer"); *Aristidou v. Aviation Port Servs., LLC*, 2020 WL 10317398, at *12 (E.D.N.Y. Feb. 21, 2020) ("[T]he failure of Defendants and their counsel to comply with the most basic discovery requirements set out in the Federal Rules of Civil Procedure can itself demonstrate willfulness that weighs in favor of a dispositive sanction."), *report and recommendation adopted*, 2021 WL 2471269 (E.D.N.Y. June 17, 2021). For the third element, "a finding that a party breached its discovery obligations in bad faith is sufficient to establish the relevance of untimely produced or destroyed evidence as a matter of law; a finding that a party breached its obligations through gross negligence is frequently sufficient." *In re Sept. 11th*, 243 F.R.D. at 125 (internal quotation marks omitted). That element is satisfied not only by the finding of bad faith (and, at the very least, gross negligence), but also by the plain relevance of the withheld evidence to Plaintiffs' defamation claim, as pleaded in the original complaint and in the proposed amended complaint. Pursuant to Rule 37(c), sanctions can be imposed on Nathan.

Nathan's July 2025 verified supplemental response to Interrogatory No. 11 is sanctionable based on the same analysis. Nathan claimed to have "no personal knowledge of who was behind the" Websites and affirmed that she "had no involvement in either to any extent." Dkt. No. 273-3 at 22. Nathan does not dispute that that answer was untrue. The texts Nathan withheld plainly demonstrate that she had some knowledge of who was behind the Websites and had some involvement in them. The answer reveals the same intransigence as her failure to comply with her obligations with respect to the RFPs. Pursuant to Rule 33(b)(3), "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Despite that oath, the text messages directly and undeniably controvert her statements "on [their] face." *See Beverly Hills Teddy Bear Co.*, 2020

WL 7342724, at *7. Sanctions are not available under Rules 37(b) and 37(d). Nathan did respond and therefore sanctions are not available under Rule 37(d), and no court order was in place so sanctions are not available under Rule 37(b). However, sanctions are available under Rule 37(c)(1) because Nathan failed to "correct" a response "to an interrogatory" in a "timely manner" after she "learn[ed] that in some material respect the disclosure or response [wa]s incomplete or incorrect." Fed. R. Civ. P. 26(e)(1).[13] That includes any "failure to supplement where the information was in [Nathan's] possession at the time the [first] incomplete response was made." *See* 8A Wright & Miller's Federal Practice & Procedure § 2049.1 (3d ed. 2026).

The district court's analysis in *Beverly Hills Teddy Bear Company* is instructive. There, Judge Woods found that a party failed to comply with its obligations under Rules 33 and 26(e) where it provided "false responses to interrogatories" such as by answering only a portion of the request and ignoring the rest or by failing to disclose facts that were in its possession as revealed by other documents in the record. 2020 WL 7342724, at *7–8. Nathan contends that "Rule 26(e) requires a party to correct a response she learns is incorrect; it does not require her to adopt her adversary's version of disputed facts," Dkt. No. 279 at 14, but she makes no argument that her interrogatory response is nevertheless true in light of the text messages, which she did not produce but does not disavow as her own. There is no explanation of how the text messages could be reconciled with her response to Interrogatory No. 11 such that no correction is needed. *See* Dkt. No. 318 (post-argument letter brief raising three limited arguments, including that the relevant discovery responses were after the statute of limitations for a defamation claim had expired, but not otherwise contesting falsity or failure to supplement discovery responses); *see*

[13] The Federal Rule of Civil Procedure 26(g) advisory committee's note to the 1983 amendment clarifies that "[t]he term 'response' includes answers to interrogatories and to requests to admit as well as responses to production requests."

*also* Dkt. No. 279 at 20 (single mention of "interrogatory," and only in the context of arguing that counsel should not be sanctioned pursuant to Rule 26(g), not in the context of an argument addressing Rule 37(c)). Moreover, Nathan's argument would subvert the requirements under Rule 26(e) with respect to interrogatories. The rule provides that a party must "correct" an answer to an interrogatory when a party learns that it is "incomplete or incorrect" in some material respect. Fed. R. Civ. P. 26(e)(1). It thus is intended to further the "useful purpose" of the Federal Rule of Civil Procedure's "[m]odern instruments of discovery," to ensure that "pretrial procedures make a trial less a game of blind man's buff and more a fair contest with the basic issues and *facts* disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (emphasis added). If a party is aware that it has answered an interrogatory incorrectly, it must correct it and not simply allow its adversary to rely upon the falsehood.

Sanctions are available under Rule 37(c)(1) because Nathan had an obligation to correct the incorrect information, the evidence establishes that she acted with a culpable state of mind, and the information withheld was centrally relevant to Plaintiffs' defamation claim and would have supported it.

Nathan's deposition testimony, on the other hand, is not sanctionable under any subdivision of Rule 37. Rules 37(b) and (d) do not apply. Rule 37(d) does not apply because that "'[f]ailure to appear' is strictly construed in this Circuit and only occurs where a deponent 'literally fails to show up for a deposition session.'" *Salahuddin*, 782 F.2d at 1131 (quoting *SEC v. Rsch. Automation Corp.,* 521 F.2d 585, 588–89 (2d Cir. 1975)). Nathan did appear for her deposition. Rule 37(b) also does not apply because Nathan's conduct at the deposition did not violate a court order.

As for Rule 37(c), the rule draws a distinction between initial disclosures, interrogatory answers, and responses to requests for production on the one hand, and deposition testimony on the other. "[T]he 1993 amendment to Rule 26(e) 'clarifies that the obligation to supplement responses to formal discovery requests applies to interrogatories, requests for production, and requests for admissions, but not ordinarily to deposition testimony.'" *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 2962197, at *2 (N.D. Cal. Oct. 20, 2025) (quoting Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment). In particular, "[i]nterrogatories are an effective way to obtain simple facts, to narrow the issues by securing admissions from the other party, and to obtain information needed in order to make use of the other discovery procedures." 8B Wright & Miller's Federal Practice & Procedure § 2163 (3d ed. 2026); *see also* 7 Moore's Federal Practice § 33.03 ("[T]he function of interrogatories is to avoid unnecessary depositions, to minimize delay, and to narrow the issues at trial in an inexpensive fashion."). They also are limited in number. Fed. R. Civ. P. 33(a)(1) (limiting a party to "no more than 25 written interrogatories"). If it turns out that an interrogatory has been answered incorrectly, it must be corrected or updated. Fed. R. Civ. P. 26(e). Depositions, by contrast, permit "great[er] flexibility" and a more searching investigation of the truth. 8B Wright & Miller's Federal Practice & Procedure § 2163 (3d ed. 2026). The truth or falsity of a witness's testimony ordinarily is ferreted out "by testing in the crucible of cross-examination," *Crawford v. Washington*, 541 U.S. 36, 61 (2004); *Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."); *California v. Green*, 399 U.S. 149, 158 (1970) (describing cross-examination as "the greatest legal engine ever invented for the discovery of truth" (internal quotation marks omitted)), and in the most egregious cases by referral to the United States

Attorney's Office, 18 U.S.C. § 1621. Were it otherwise, every dispute regarding the accuracy of deposition testimony could give rise to a motion for sanctions, displacing the role of the jury in finding the facts and creating a new font for satellite litigation. Thus, Nathan's deposition testimony, no matter how inconsistent with her contemporaneous text messages, cannot be sanctioned under Rule 37.

Federal Rules of Civil Procedure 37(c)(1)(A)–(C) provide the Court with authority to order payment of expenses and fees, inform the jury of Nathan's failures, and to "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." Fed. R. Civ. P. 37(c)(1)(A)–(C). Plaintiffs specifically ask that the Court strike Nathan's defenses and enter judgment against her. Dkt. No. 282 at 10. In the alternative, as lesser sanctions, Plaintiffs request: (1) the right to plead and pursue their defamation claim and tortious interference with prospective business relations claim against Nathan; (2) deem established that Nathan requested, directed the content of, edited, and paid for the copy that became www.stephaniejonesleaks.com, and that she knew, from May 2024 on, that she was among the John Does 1–10 described in the original complaint; (3) bar Nathan from offering testimony, declarations, or argument at summary judgment or at trial that Nathan had no role in creating, directing, or funding the Websites; (4) instruct the jury that Nathan withheld communications concerning her role in the Websites and testified falsely on that subject such that the jury may infer the withheld evidence was unfavorable to her; (5) award attorneys' fees and expenses as relevant for the efforts undertaken to unravel Nathan's misrepresentations; and (6) reopen discovery for Plaintiff to depose Nathan and Jed Wallace once more. *Id.* "When deciding a proper sanction, a court generally must consider, in light of the full record of the case, (a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of

lesser sanctions; (d) whether the noncompliant party has been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party." *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009).

To determine what is an adequate remedy, the Court is guided by the principle that the "severity of sanction must be commensurate with the non-compliance," *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007), and thus primarily focuses on the factors of prejudice and efficacy of lesser sanctions from *Arista Records*. *See also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) ("[F]actors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion."). As to the other factors, bad faith, the history of noncompliance, and Nathan's complicity favor harsh sanctions. Nathan's conduct was egregious. It betrays an effort at gamesmanship, to hide relevant facts from Plaintiffs and from the Court. As to the warnings, Nathan did not have to be warned not to withhold highly relevant documents from production or to refrain from uttering untruths. However, because the proceedings are at the summary judgment stage and the text messages have been uncovered, albeit after significant time and expense, non-dispositive sanctions will effectively cure the prejudice suffered by Plaintiffs.

The Court will not, and likely cannot, strike Nathan's defenses and enter judgment against her on the defamation claim or tortious interference claim. Dkt. No. 282 at 10. As Nathan points out, the operative complaint does not contain those claims and therefore also does not contain affirmative defenses to those claims. Plaintiffs cite no authority for the proposition that a court can enter a default judgment on a claim that has not been asserted or strike an affirmative defense that has not been interposed. The Court also will not deem established that

Nathan had a role in the Websites or bar Nathan from offering evidence that she had no role in the Websites. Such litigation-ending sanctions are harsher than necessary to serve the corrective and punitive purposes of Rule 37. *See Am. Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999), *aff'd*, 210 F.3d 354 (2d Cir. 2000) (discussing "litigation-ending sanction[s]"); *S. New England Tel. Co.*, 624 F.3d at 147 (noting that "sanctions deeming facts to be taken as established can be tantamount to the imposition of a sanction of dismissal or default in some cases" (internal quotation marks omitted)). Finally, the Court will not deem a claim to be timely that, under the substantive law of New York, is untimely. The Court previously ruled that Plaintiffs' defamation claim was untimely because of a failure to assert it against Nathan within one year of the date that the libelous material was first published. *See* C.P.L.R. 215(3). Even if Nathan had complied with her discovery obligations and answered the interrogatory truthfully, Plaintiffs would not have been able to assert a defamation claim with respect to any material first published prior to July 30, 2024. Put otherwise, Nathan's failure to produce documents or to correct her May 19, 2025 discovery response could only have frustrated Plaintiffs' ability to assert a claim as of the date by which that response was required to be corrected or updated, and Plaintiffs' July 16, 2025 request for production of documents could only have been directed to a defamation claim based on material published on or after July 15, 2024. A sanction that would permit Plaintiffs to pursue a claim that was stale before Nathan's discovery violations occurred would be a disproportionate sanction for those violations. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (Rule 37(b) sanctions "must be specifically related to the particular 'claim' [that] was at issue."). By contrast, Nathan's sanctionable conduct has frustrated Plaintiffs' ability to present to the Court a proposed defamation claim centered on libelous material published on or after July 30, 2024. As

a result of that conduct, Plaintiffs were unable to discover facts that would have been highly relevant to their motion to amend the complaint to assert the defamation claim and to any ensuing defamation claim. Plaintiffs also were frustrated in their ability to ask follow-up questions and to demand follow-up documents from Nathan that might have further supported that claim.

The Court exercises its broad discretion to issue sanctions tailored to the conduct giving rise to the discovery violations. First, because Plaintiffs were deprived of the uncovered documents when they first conducted Nathan's deposition in September 2025, and to ensure that the record is clear for both summary judgment and trial, the Court deems a second deposition of Nathan, at Nathan's expense for one examining attorney and one junior attorney, wherein she may be asked about the belatedly produced documents, an appropriate sanction. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 437–38 (S.D.N.Y. 2004) (ordering the party that failed to produce documents relevant to a deposition prior to the deposition to pay the "costs of any depositions or re-depositions required by the late production . . . [and] the costs of th[e] motion"). Plaintiffs are further permitted to tax the costs of the motion for sanctions against Nathan. *See, e.g.*, *Adler v. Sonotec US Inc.*, 2026 WL 1142554, at *7 (E.D.N.Y. Apr. 28, 2026) ("[A]ttorney[s'] fees are an appropriate sanction for . . . discovery stagnation, blatant misrepresentations to this Court, and failure to timely ensure the accuracy of discovery responses."); *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 2023 WL 3495091, at *16 (S.D.N.Y. May 17, 2023) ("[R]epeated failures to comply with . . . discovery obligations have resulted in a waste of Court time and resources as well as [the movant's] time and resources."), *aff'd*, 143 F.4th 51 (2d Cir. 2025); *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 321 (S.D.N.Y. 2008)

("Courts in this [C]ircuit have often awarded attorneys' fees to sanction a party who disregards her discovery obligations.").

Second, the Court directs Nathan to respond fully and completely to Interrogatory No. 11 within seven days of the date of this Order.

Third, the Court reopens discovery for the limited purpose of permitting Plaintiffs to make an additional document request of Nathan directed to documents in her possession, custody and control relating to Jones or Jonesworks, the Websites, Jed Wallace, and/or any individuals identified by Nathan in her response to Interrogatory No. 11. The Court denies the request to take an additional deposition of Jed Wallace without prejudice to renewal after the production of documents by Nathan as provided in this Order.

Fourth, in order to ensure that the discovery will be effective and to put Plaintiffs in the position that they would have been in had Nathan not violated Rule 26(e), the Court vacates the portion of its March 2026 Order denying Plaintiffs' motion to amend as to the defamation claim against Nathan to the extent that such order would have prohibited Plaintiffs from filing a defamation claim with respect to statements published on the Websites on or after July 30, 2024. *Residential Funding.*, 306 F.3d at 107 ("Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction."). Plaintiffs may file an amended complaint with the amendment limited to a defamation claim against Nathan with respect to statements published on the Websites on or after July 30, 2024. That claim must rest on conduct that would not be time-barred as of July 30, 2025.[14] This sanction will redress the harm caused by Nathan's willful

---

[14] The legal sufficiency of any proposed defamation claim can be tested through further motions practice following Plaintiffs' filing of any amended complaint.

distortion of the record at the time both of the motion to compel and of the motion for leave to amend. As to the operative date, though the first sanctionable violations relate to Nathan's commitment on May 19, 2025 to produce responsive documents to RFP No. 2, which should have included the text messages in question, the record does not show an agreed-upon timeline for the production of any documents responsive to RFP No. 2. Responsive documents could have been produced by the substantial completion deadline of July 1, 2025, Dkt. No. 193-5 at 2 n.1, but Nathan was permitted to complete her productions through August 15, 2025, *Jones*, 2025 WL 3292468, at *1. Moreover, there does not appear to be any significant consideration weighing in favor of any specific date in the range of May 19 to August 15, 2025. The first anonymous website predates that range (May 8, 2024), and the second website and any purported update postdate its end (September and October 2024, respectively), thus not impacting any statute of limitations defense. And since the response to Interrogatory No. 11 was false when made, it provides a clear baseline for any future motion for leave to amend to add a defamation claim predicated on post-May 2024 statements on the Websites. This sanction suffices to cure any prejudice faced by Plaintiffs in briefing their December 2025 motion to amend.

The Court does not grant leave to add Plaintiffs' tortious interference with business relations claim. *See* Dkt. No. 195-1 ¶¶ 185–91. To be sure, that claim would be timely under New York law, since the statute of limitations runs for three years, *see Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 225 (S.D.N.Y. 2013) (Sullivan, J.) (citing C.P.L.R. 214(4)), and the proposed amendment contends that Nathan's activity began "in at least December 2023," Dkt. No. 195-1 ¶ 186. The recently revealed documents would also be relevant since Plaintiffs proposed to allege that Nathan "further created and disseminated derogatory attack websites." *Id.* ¶ 188. But the original complaint did not address tortious

interference with prospective business relationships in any shape or form—it only included tortious interference claims against Abel and Nathan with respect to specific contracts. *See* Dkt. No. 1-1 ¶¶ 113–21, 131–37 (second and fourth causes of action). By the time of the motion to amend in December 2025, the period to add claims had passed, and any tortious interference with business relations claim could have been brought in the first instance, seeing as the original complaint is replete with allegations that Nathan's "misconduct . . . has had a significant negative effect on Jones's and Jonesworks's business and reputation," but no such cause of action was brought then. Dkt. No. 1-1 ¶ 106; *see also id.* ¶¶ 97, 99, 102–3. The belated production of Case's documents does not bear on why the Court decided to deny leave to amend as to the tortious interference claim. Plaintiffs' "late addition . . . [was] the product of undue delay and a lack of diligence," and the recent revelations do not put that conclusion into doubt. *Jones*, 2026 WL 836798, at *3.

Plaintiffs also moved for sanctions pursuant to Rule 26(g). To the extent Plaintiffs request sanctions against Nathan pursuant to Rule 26(g)(3) as either "the signer" or "the party on whose behalf the signer was acting"—with respect to the RFP responses or the verified supplemental interrogatory responses—the request is denied since all potential relief, including reasonable expenses and attorney's fees, has been awarded pursuant to Rule 37(c)(1).[15] Fed. R. Civ. P. 26(g)(3). To the extent Plaintiffs seek sanctions against counsel, Plaintiffs have not

[15] Rule 26(g)(3) primarily contemplates sanctions against attorneys, but "[a party's] conduct [may] also [be] sanctionable under Rule 26(g), which authorizes sanctions for improper certifications of discovery responses" including for "evasive discovery responses . . . made for the improper purpose of covering up . . . willful withholding of documents." *Travel Sentry, Inc. v. Tropp*, 2008 WL 2097613, at *2 n.4 (E.D.N.Y. May 15, 2008) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1372–73 (11th Cir. 1997) (upholding district court's conclusion that party violated Rule 26(g) by withholding "admittedly relevant information, and engag[ing] in dilatory tactics")).

demonstrated that such sanctions are warranted. "A [c]ourt considering sanctions [under Rule 26(g)(3)] must decide if the attorney conducted his investigation in a reasonable manner given the circumstances of the particular case" before certifying a discovery response. *Singh v. Lintech Elec., Inc.*, 2021 WL 3914478, at *5 (E.D.N.Y. July 20, 2021), *report and recommendation adopted*, 2021 WL 3912416 (E.D.N.Y. Sept. 1, 2021). Nathan's counsel rightfully points out that its obligation is not to ensure completeness. Dkt. No. 279 at 21. Under these circumstances, the Court "has not been given sufficient information to conclude that [counsel's] supervision of the discovery process was inadequate to the level that would permit the imposition of sanctions," particularly since there is no indication of "if and how they attempted to ensure their client understood its discovery obligations." *Beverly Hills Teddy Bear Co.*, 2020 WL 7342724, at *16; *see Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 644 (S.D.N.Y. 2019) (discussing "that nothing in Rule 26(g) obligates counsel to disclose the manner in which documents are collected, reviewed and produced in response to a discovery request" (citation modified)). Accordingly, the motion for sanctions pursuant to Rule 26(g)(3) is denied without prejudice.

## II. Sanctions Alternatively Justified by Inherent Authority

In the alternative, the Court finds that its ordered sanctions are warranted under its inherent authority. "[A] court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court," *Yukos Cap. S.A.R.L.*, 977 F.3d at 235, stemming "from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *id.* (quoting *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "A federal court may 'exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023)

(quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)). "Sanctions under the court's inherent power require a showing of bad faith or willfulness." *Arista Recs. LLC*, 633 F. Supp. 2d at 138 (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)). Furthermore, "[s]uch a sanction . . . must be compensatory rather than punitive," and so the complaining party "may recover 'only the portion of [its] fees that [it] would not have paid but for' the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017) (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).

"Clear and convincing evidence of fraud on the court may be established through inconsistencies in the challenged evidence, false testimony, spoliation, credibility findings and the reasonable inferences drawn from the record." *Binh Thanh Imp. Exp. Prod. & Trade Joint Stock Co. v. Amazon.com Servs. LLC*, 2026 WL 1983485, at *6 (S.D.N.Y. July 9, 2026); *see also Fecteau v. Safety Nat'l Cas. Corp.*, 2026 WL 821567, at *24 (S.D.N.Y. Mar. 25, 2026) ("Even 'a single misrepresentation' made in bad faith can form the basis of a court's exercise of its inherent power and permit the court to 'put a stop to the party's chicanery.'" (quoting *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368–69 (2d Cir. 2021)); *Rybner v. Cannon Design, Inc.*, 1996 WL 470668, at *4 (S.D.N.Y. Aug. 20, 1996) (Sotomayor, J.) ("[D]efendants have proven by clear and convincing evidence that [the litigant] acted intentionally . . . and in bad faith in perjuring himself at his deposition and that [the litigant] did so in an attempt to hinder the fair and full adjudication of the case.").

In this case, Nathan's consistent misconduct frustrated the Court's ability to make informed decisions at several critical moments in this litigation. The Court denied Plaintiffs' motion to compel Case to respond to a supplemental subpoena in part because "Nathan and Wallace denied any involvement in the creation of the" Websites, such that there was nothing to

be learned through their depositions that could have justified Plaintiffs' delay in serving the subpoena to Case on October 17, 2025. *Jones*, 2025 WL 3292468, at *3. But that reasoning was at least partly predicated on Nathan's assertions, through counsel in her opposition to the motion, that she had no involvement in the creation of the Websites. Dkt. No. 176 at 2–3. Nathan's opposition was faithful to the record as it stood in November 2025, at the time it was filed, but not faithful to how the record should have stood had Nathan truthfully answered the interrogatory and faithfully discharged her discovery obligations. Had the information now revealed been timely disclosed earlier, Plaintiffs' argument that they wanted to wait for Nathan's deposition testimony before serving the supplemental subpoena on Case would have been placed in significantly different light. And had Nathan testified truthfully, the deposition regarding her interactions with Case would have exposed additional grounds for Plaintiffs' argument for good cause to serve the subpoena when they did.

The same can be said with respect to the motion to amend as to the defamation claim. Nathan resisted the motion on the theory that Plaintiffs did not seek discovery into Nathan's alleged involvement with the Websites until July 16, 2025, after the statute of limitations for defamation had expired. Dkt. No. 217 at 1, 3–4. Nathan argued that Plaintiffs had not shown diligence in connection with their discovery requests. *Id.* at 8–9, 13. She also argued that the amendments would require significant additional discovery. *Id.* at 11. She further argued that Plaintiffs failed to attribute a particular defamatory statement to her. *Id.* at 15. Those arguments had force in light of the record as it existed in January 2026. They would have had significantly less force, and Plaintiffs would have been able to respond to them, had Nathan produced the relevant and responsive text messages, answered the interrogatory truthfully, and been forthright at her deposition.

Because of its potency, an inherent-powers sanction must be tailored to the abuse of the judicial process. *Zama Cap. Advisors LP v. Universal Ent. Corp.*, 2025 WL 3525044, at *6 (S.D.N.Y. Dec. 9, 2025) ("Sanctions under a [c]ourt's inherent authority 'must be exercised with restraint and discretion.'" (quoting *Chambers*, 501 U.S. at 44)). No further sanctions are warranted at this time to cure Nathan's abuses. Instead, the Court's inherent authority provides an independent basis for the sanctions already imposed through Rule 37(c). That authority also addresses Nathan's procedural objection that "Plaintiffs have not moved to vacate" the denial of leave to amend so their desired relief is unavailable, Dkt. No. 279 at 12, since "[t]he Court's inherent power even allows the Court to vacate its own judgments," *Samad Bros., Inc. v. Bokara Rug Co.*, 2012 WL 43613, at *2 (S.D.N.Y. Jan. 9, 2012). Because the Court has made an "explicit finding of bad faith," the Court is permitted to exercise its discretion to partially vacate an order. *See Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 143 (S.D.N.Y. 2007) (quoting *United States v. Seltzer*, 227 F.3d 36, 41 (2d Cir. 2000)); *Zhou v. Peng*, 286 F. Supp. 2d 255, 260 (S.D.N.Y. 2003) ("This Court has the inherent power to modify or vacate its interlocutory orders.").

## CONCLUSION

Plaintiffs' motion for sanctions is GRANTED IN PART. Pursuant to Federal Rule of Civil Procedure 37(c) and the Court's inherent authority, the following sanctions are ordered:

1. Nathan must sit for a second deposition, at Nathan's expense for one examining attorney and one junior attorney, wherein she may be asked about the belatedly produced documents, an appropriate sanction;
2. Nathan must respond fully and completely to Interrogatory No. 11 within seven days of the date of this Order;

3. Discovery is reopened for the limited purpose of permitting Plaintiffs to make an additional document request of Nathan directed to documents in her possession, custody and control relating to Jones or Jonesworks, the Websites, Jed Wallace, and/or to any individuals identified by Nathan in response to Interrogatory No. 11.
4. The portion of the Court's March 2026 Order denying Plaintiffs' motion to amend as to the defamation claim against Nathan is vacated to the extent that the Order would have prohibited Plaintiffs from filing a defamation claim with respect to conduct on or after July 30, 2024.
5. Plaintiffs are granted leave to file an amended complaint with the amendment limited to the addition of a defamation claim against Nathan with respect to statements published on the Websites on or after July 30, 2024.

In addition, the Court orders Nathan to pay for Plaintiffs' attorneys' fees and reasonable expenses incurred in bringing the motion for sanctions.

The parties are further directed to meet and confer and to file by November 11, 2026, a joint letter proposing next steps concerning the timeline for the additional discovery, including the second deposition of Melissa Nathan; a proposal with respect to attorneys' fees and costs; and a proposal with respect to the timing of an amended complaint and any motion practice (either a motion to dismiss or summary judgment) regarding the anticipated defamation claim. *See* Dkt. Nos. 284, 295. The Clerk of Court is respectfully directed to close Dkt. No. 272.

SO ORDERED.

Dated: November 4, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge